IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 05-21207 |
| | § | |
| ASARCO LLC, *et al.*, | § | Chapter 11 |
| | § | |
|     Debtors. | § | (Jointly Administered) |
| | § | |

**ASARCO LLC'S MOTION TO ESTIMATE
DERIVATIVE ASBESTOS LIABILITIES AND FOR
ENTRY OF CASE MANAGEMENT ORDER ESTABLISHING
<u>PROCEDURES FOR SUCH ESTIMATION</u>**

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TWENTY (20) DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREED OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

      Pursuant to Sections 502(c) and 105 of the Bankruptcy Code, ASARCO LLC ("<u>ASARCO</u>" or the "<u>Debtor</u>") respectfully moves the Court to estimate derivative asbestos liabilities and enter a case management order establishing procedures for such estimation, on the following grounds:

<u>SUMMARY OF RELIEF REQUESTED</u>

    1.    The Court on multiple occasions has reiterated the need for ASARCO to formulate a chapter 11 plan as quickly as possible. ASARCO completely agrees. ASARCO's

HOU01:958515.5          1

value is directly influenced by the price of copper, which like any commodity may change, so ASARCO needs to reorganize as expeditiously as possible to capture current all-time high copper prices and favorable market conditions.  Although the first six months of this case were spent closing the DIP loan, settling the labor strike and resolving corporate independence issues involving ASARCO and its parent companies, each of which was critically important, those issues are behind us, and ASARCO must now work to reorganize its business affairs and formulate a chapter 11 plan and disclosure statement as quickly as possible.

2.   Formulating such a plan and disclosure statement, however, is not realistically possible without ASARCO first determining the amount of its contingent environmental and asbestos liability.  The aggregate amount of these claims are alleged to be substantial and the sheer number of claims is overwhelming (94 environmental sites and 95,000 asbestos claims).  Until these liabilities are quantified in some reasonable manner, ASARCO cannot secure new capital or exit financing, determine the size and treatment of an unsecured creditor class or provide meaningful information in a disclosure statement of what creditors can generally expect to receive under a chapter 11 plan.  ASARCO's reorganization will be unduly delayed and at risk of failure if the aggregate amount of such contingent liabilities are determined many years later in the tort system or through traditional litigation.  ASARCO simply cannot afford the delay or expense associated with such mass tort litigation.  This is precisely the situation for which estimation was created.

3.   This motion relates to asbestos claims.  Environmental claims will be addressed separately in subsequent pleadings or procedures after ASARCO has completed its discussions with state and federal regulatory agencies regarding these issues.  As for asbestos, ASARCO is alleged to be liable, under various alter ego and similar veil-piercing theories, for the asbestos

liabilities of certain of its subsidiaries, primarily Lac d'Amiante due Québec Ltée (f/k/a Lake Asbestos of Quebec, Ltd.) ("LAQ") and CAPCO Pipe Company, Inc. (f/k/a Cement Asbestos Products Company ("CAPCO"). Having never manufactured or sold asbestos or asbestos-containing products, ASARCO denies liability, but this issue must be decided and if liability is established, the aggregate amount of the contingent debt must be quantified for plan purposes. ASARCO therefore asks that this Court estimate the amount of its liability, if any, for these derivative asbestos claims. So that the process may move forward in an expeditious fashion, ASARCO has developed a two-tier process for estimating these claims. Phase 1 would determine whether ASARCO has any liability for the derivative asbestos claims. If the Court determines that it does, then in Phase 2, the Court would estimate the amount of the claims, both present and future. ASARCO also seeks approval of the case management procedures described herein for Phase 1 and Phase 2 of the estimation proceedings.

## JURISDICTION AND BACKGROUND

4.     On April 11, 2005, several wholly owned subsidiaries (the "Asbestos Subsidiary Debtors"[1]) of ASARCO filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. On August 9, 2005, ASARCO filed its voluntary petition for relief in this Court. On August 26, 2005, Encycle, Inc. filed a voluntary petition for relief in this Court. On September 1, 2005, ASARCO Consulting, Inc. filed a voluntary petition for relief in this Court. On October 13, 2005, ten additional subsidiaries[2] filed

---

[1] The Asbestos Subsidiary Debtors consist of the following five entities: Lac d'Amiante du Québec Ltée (f/k/a Lake Asbestos of Quebec, Ltd.) ("LAQ"); Lake Asbestos of Quebec, Ltd.; LAQ Canada, Ltd.; CAPCO Pipe Company, Inc. (f/k/a/ Cement Asbestos Products Company) ("CAPCO"); and Cement Asbestos Products Company.

[2] The ten entities that filed on October 13, 2005 are: ALC, Inc.; American Smelting and Refining Company; AR Mexican Explorations Inc.; AR Sacaton, LLC, an Arizona limited liability company; Asarco Master, Inc.; Asarco Oil and Gas Company, Inc.; Bridgeview Management Company, Inc.; Covington Land Company; Government Gulch Mining Company, Limited; and Salero Ranch, Unit III, Community Association, Inc.

voluntary petitions for relief in this Court. This Motion will refer to all of the above-referenced cases collectively as the "Reorganization Cases."[3]

5. The Debtors remain in possession of their property and are operating their businesses as Debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code. An official committee of unsecured creditors was appointed for the Asbestos Subsidiary Debtors (the "Asbestos Subsidiary Committee"), and an official committee of unsecured creditors has also been appointed in ASARCO's case (the "ASARCO Committee" and, together with the Asbestos Subsidiary Committee, the "Committees"). No trustee or examiner has been appointed in any of the Reorganization Cases.

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. This Court may hear and act upon this Motion under the standing order of reference issued by the United States District Court for the Southern District of Texas under 28 U.S.C. § 157. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(B). Venue of this proceeding is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory authority for this Motion is 11 U.S.C. §§ 105 and 502(c).

7. The Debtors' alleged asbestos liabilities relate primarily to historical operations of two of ASARCO's subsidiaries, CAPCO and LAQ. Although LAQ has not mined or milled asbestos since the late 1980s and CAPCO has not produced asbestos cement pipe for over a decade, by the late 1990s, both CAPCO and LAQ had been named in thousands of asbestos lawsuits around the country, and are likely to be subject to future "demands" (as such term is defined in section 524(g) of the Bankruptcy Code).

---

[3]  Encycle/Texas, Inc., an affiliated debtor whose case is pending under chapter 7, is not included within the definition of Reorganization Cases, and nothing in this Motion is intended to apply to Encycle/Texas, Inc.

8.      Having never mined, milled, manufactured or sold asbestos or asbestos-containing products, ASARCO has no direct liability for any materials or products mined, milled, manufactured or sold by CAPCO or LAQ. Nonetheless, ASARCO has been named as a defendant in a large number of the asbestos lawsuits against CAPCO or LAQ. Although ASARCO has been named in a relatively small number of direct premises claims alleging exposure to asbestos at an ASARCO facility in Texas, substantially all of the asbestos claims against ASARCO are derivative of claims against CAPCO or LAQ and seek to hold ASARCO responsible for CAPCO and LAQ products under various alter ego or similar derivative theories (the "Derivative Asbestos Claims"). Such claims are property of the CAPCO and LAQ bankruptcy estates, so on June 15, 2005, ASARCO sued its asbestos-related subsidiaries and Robert C. Pate (the "FCR"), the court appointed legal representative for future asbestos-related claimants (the "Future Claimants"), seeking a declaration that it is not liable for the Derivative Asbestos Claims. *ASARCO LLC v. Lac d'Amiante du Québec Ltée, et al.*, Adv. Proc. No. 05-02048.

9.      ASARCO will, in short order, file a motion (the "Bar Date Motion") seeking (a) a general claims bar date and (b) a separate bar date for asbestos-related claims. With respect to asbestos-related claims, the Bar Date Motion will ask the Court to set a deadline by which holders of asbestos claims (or their counsel) must provide information regarding their claims, which will be used in connection with these estimation proceedings and the formulation of a plan. The relief requested in this Motion and the Bar Date Motion operate jointly to provide information needed to formulate a chapter 11 plan and disclosure statement. Thus, the Bar Date Motion is integral to the estimation proceedings.

10. ASARCO's new board of directors is committed to reorganizing the company both financially and operationally. However, as set forth above, the present uncertainties over which debtors are responsible for the asbestos liabilities and the amount of these claims make it difficult, if not impossible, for ASARCO to formulate a meaningful plan and a disclosure statement. Estimation under 502(c), therefore, is warranted.

## BASIS FOR RELIEF SOUGHT

**I.  This Court Has Authority to Estimate ASARCO's Derivative Asbestos Claims.**

    **A.  *The Bankruptcy Code Provides for Estimation of Unliquidated Claims.***

11. Section 502(c) of the Bankruptcy Code provides, in pertinent part, that "[t]here shall be estimated for purposes of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." 11 U.S.C. § 502(c)(1). Section 502(c) was enacted to "further the requirement that all claims against a debtor be converted into dollar amounts." *In re Interco Inc. v. ILGWU Nat'l Ret. Fund (In re Interco Inc.)*, 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992). Courts use estimation "to facilitate the speedy resolutions of claims in bankruptcy courts." *Id*.

12. According to the Fifth Circuit Court of Appeals, estimation serves at least two purposes. It helps the court "avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions." *First City Beaumont v. Durkay (In re Ford),* 967 F.2d 1047, 1053 (5th Cir. 1992). Estimation also "promote[s] a fair distribution to creditors through a realistic assessment of uncertain claims." *Id*.

13. The principal consideration in an estimation proceeding must be an accommodation of the underlying purposes of the Bankruptcy Code. *Bittner v. Borne Chem.*

*Co.*, 691 F.2d 134, 135 (3d Cir. 1982).  Moreover, the estimating court is bound by the legal rules which may govern the ultimate value of the claim.  *Id.*  In *Owens Corning v. Credit Suisse First Boston*, 322 B.R. 719, 722 (D. Del. 2005), the court ruled in connection with a request to estimate asbestos claims that, because state law would determine the claims' validity and value, "the claims are to be appraised on the basis of what would have been a fair resolution of the claim in the absence of bankruptcy."

14.     Furthermore, consistent with section 502(b) of the Bankruptcy Code, all claims must be valued as of the petition date.  *Addison v. Langston (In re Brints Cotton Mktg., Inc.),* 737 F.2d 1338, 1342 (5th Cir. 1984); *Owens Corning*, 322 B.R. at 722.  Accordingly, in *In re Eagle-Picher Indus., Inc*., 189 B.R. 681, 682-83 (Bankr. S.D. Ohio 1995), the court held that estimated amounts of asbestos claims had to be valued as of the petition date, with future values discounted to present value as of the petition date, and past payments similarly adjusted to the petition date.

    **B.**    ***The Derivative Asbestos Claims Must Be Estimated Because They Are Unliquidated and Their Liquidation Would Unduly Delay Administration of the Reorganization Cases.***

15.     Section 502(c) is drafted in mandatory terms, meaning that any contingent or unliquidated claim "shall" be estimated so long as the "liquidation" of that claim would "unduly delay the administration of the case."  11 U.S.C. § 502(c).  Thus, before a court orders an estimation proceeding, an initial determination must be made that the claims are contingent or unliquidated, and that fixing the claims would unduly delay the bankruptcy case.  *O'Neill v. Continental Airlines, Inc. (In re Continental Airlines*), 981 F.2d 1450, 1461 (5th Cir. 1993); *In re G-I Holdings, Inc*., 323 B.R. 583, 599 (Bankr. D. N.J. 2005).  *See also Ford*, 967 F.2d at 1053 (finding that estimation of a claim that was neither contingent nor unliquidated was "simply inappropriate.").

16. At present, there are more than 95,000 unliquidated and contingent asbestos claims pending against the Debtors, with the prospect of thousands more asbestos-related claims being asserted in the future. Many of these claimants seek recovery from ASARCO on alter ego theories. The liquidation of even one of these claims outside of bankruptcy could take years, with discovery, expert evaluations, and trial proceedings, as well as any appeals that may follow. As was true in the *G-I Holdings* case, if the Debtors "were required to litigate each and every asbestos personal injury claim asserted against it, it would take years, actually lifetimes, before these claims would be litigated." 323 B.R. at 599-600.

17. Moreover, the number of Future Claimants and the amount owed to them must be established through estimation because the actual amount and number of these claims are unknowable by definition. *See* 11 U.S.C. § 524(g)(2)(B)(ii)(II) ("the actual amounts, numbers and timing of such future demands cannot be determined").

18. For these reasons, the Debtors believe that estimation is required by section 502(c)(1) of the Bankruptcy Code.

### C. *The Derivative Asbestos Claims May Be Estimated for Purposes of Formulating a Plan and Determining Its Feasibility.*

19. In regards to the purposes for which claims may be estimated, the only statutory guidance is found in 28 U.S.C. § 157(b)(2)(B), which in effect requires the district court, rather the bankruptcy court, to estimate contingent or unliquidated personal injury tort or wrongful death claims against the estate *for purposes of distribution*. This leaves the estimation of such claims for other purposes within the jurisdiction of the bankruptcy court. *In re UNR Indus., Inc.*, 45 B.R. 322, 326 (N.D. Ill. 1984); *Roberts v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 45 B.R. 823, 826 (S.D.N.Y. 1984).

20. Section 157(b)(2)(B)'s limitation on the bankruptcy courts' ability to enter final orders estimating personal injury tort claims for purposes of distribution does not apply here. While the Derivative Asbestos Claims will ultimately be liquidated for distribution purposes by a claims resolution trust to be established pursuant to the Debtors' plan, the alter ego claims belong to the Asbestos Subsidiary Debtors. *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc*.), 817 F.2d 1142, 1152-53 (5th Cir. 1987). The Court's estimate of the aggregate amount of the claims will not be used for distribution purposes; it will only be used by the Debtors to formulate and obtain confirmation of a plan.

21. It is well-established that bankruptcy courts have the power to proceed with estimation of claims for purposes of formulating a plan of reorganization, *see Kool, Mann, Coffee & Co. v. Coffey*, 300 F.3d 340, 347 (3d Cir. 2002); *In re Poole Funeral Chapel, Inc*., 63 B.R. 527, 533 (Bankr. N.D. Ala. 1986), and determining the feasibility of a plan. *A.H. Robins Co. v. Piccinin (In re A.H. Robins Co.)*, 788 F.2d 994, 1012 (4th Cir. 1986); *Interco*, 137 B.R. at 998; *In re Nova Real Estate Inv. Trust*, 23 B.R. 62, 64 (Bankr. E.D. Va. 1982).

22. As the court in the *Federal-Mogul* case recently stated: "an estimation of asbestos liability for the limited purposes of plan formulation is a fruitful endeavor because it promotes the speed and efficiency goals of the Bankruptcy Code, while not implicating the procedural rights of the individual claimants." *Official Comm. of Asbestos Claimants v. Asbestos Prop. Damage Comm. (In re Federal-Mogul Global Inc.*), 330 B.R. 133, 154-55 (D. Del. 2005).

23. It will be impossible for this Court to hold a meaningful confirmation hearing on the feasibility of a plan of reorganization unless the aggregate amount of these unliquidated claims are quantified. *See, e.g., In re National Gypsum Co.*, 139 B.R. 397, 405 n.19 (N.D. Tex. 1992); *In re MacDonald*, 128 B.R. 161, 164 (Bankr. W.D. Tex. 1991). *See also NLRB v.*

*Greyhound Lines, Inc. (In re Eagle Bus Mfg., Inc.*), 158 B.R. 421, 436 (S.D. Tex. 1993) ("Greyhound's reorganization could not be effected without the NLRB's proof of claim being addressed. However, it is undisputed that a full adjudication of the claims would require several years of litigation.").

24. Estimation of the Derivative Asbestos Claims is therefore necessary and appropriate in order for the Debtors to formulate a plan, and for the Court to evaluate and determine whether such a plan is feasible and confirmable pursuant to sections 524(g) and 1129 of the Bankruptcy Code.

### D. *The Court Selects the Method of Estimation.*

25. The Bankruptcy Code does not establish the manner in which contingent or unliquidated claims are to be estimated. The Fifth Circuit has stated that the bankruptcy court should use "whatever method is best suited to the circumstances" in estimating a claim. *Brints Cotton*, 737 F.2d at 1341. *See also Bittner*, 691 F.2d at 135 (concluding that "Congress intended the procedure to be undertaken initially by the bankruptcy judges, using whatever method is best suited to the particular contingencies at issue."); *Eagle Bus Mfg.,* 158 B.R. at 437 (citing *Brints Cotton*).

26. Because section 502(c) of the Bankruptcy Code does not prescribe any method for estimating claims, the selection is committed to the reasonable discretion of the Court. *See In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 775 (Bankr. S.D.N.Y. 1996). In estimating claims, courts have utilized methods "run[ning] the gamut from summary trials to full-blown evidentiary hearings to mere review of pleadings, briefs, and a one-day hearing involving oral argument of counsel." *In re Windsor Plumbing Supply Co*., 170 B.R. 503, 520 (Bankr. E.D.N.Y. 1994) (citations omitted). *See, e.g., Eagle Bus Mfg*., 158 B.R. at 437 (court conducted a mini-trial; parties were given seven hours each to present evidence and testimony by affidavit with

live cross-examination, and were permitted to introduce into evidence documents, charts, summaries and other visual aids); *MacDonald*, 128 B.R. at 166-67 (court approved a "summary trial" procedure involving proffers of evidence and limited live testimony); *Nova Real Estate Inv. Trust*, 23 B.R. at 65 (court heard 8 days of testimony prior to estimating claim).

      **E.**    ***Other Courts Have Estimated Asbestos Claims for Plan Purposes.***

      27.    In grappling with the manner in which an estimation should be conducted in the context of an asbestos bankruptcy case, the court in the *Armstrong World Industries* case stated that "estimating future claims is more an imprecise art than a science, and the best way anyone can do is to try to find an estimate that is not unreasonable*.*" *In re Armstrong World Indus.*, Case No. 00-04471, slip op. at 48, Docket No. 6255 (Bankr. D. Del. Dec. 19, 2003).  The *Federal-Mogul* court similarly stated: "[A]n estimation by definition, is an approximation and necessarily involves comparing a known or established quantum of data to the thing being estimated." *Federal-Mogul*, 330 B.R. at 155.  *See also In re Baldwin-United Corp.*, 55 B.R. 885, 898 (Bankr. S.D. Ohio 1985) ("[E]stimation does not require that a bankruptcy judge be clairvoyant.  The court need only arrive at a reasonable estimate of the probable value of the claim . . . "); *Nova Real Estate Inv. Trust*, 23 B.R. at 66 ("An estimate necessarily implies no certainty; it is not a finding or a fixing of an exact amount.  It is merely the court's best estimate for the purpose of permitting the case to go forward and thus not unduly delay the matter.").

      28.    The focus in proceedings to estimate the aggregate amount of asbestos claims in earlier bankruptcy cases has been upon the testimony of experts who conducted statistical analyses in order to project the value of present claims and the realistic scope of future demands. Here is a brief summary of some of these estimation proceedings.

- *Federal-Mogul*, 330 B.R. 133.  The court heard the testimony of fact and expert witnesses during a 5-day trial.  *Id*. at 135.  The proceedings were held to estimate

"the aggregate present values of pending and projected future asbestos personal injury and wrongful death claims . . . . " *Id.*

- *Owens Corning*, 322 B.R. 719. The court had to estimate 128,000 present claims, in addition to future claims. *Id.* at 720. The court noted that it was not deciding "how much each claimant will actually be entitled to receive, but the total amount which the claimants, as a group, could legitimately have claimed as compensation, as of the petition date." *Id.* at 722. The estimation hearing lasted 6 days and had testimony from 16 fact and expert witnesses. *Federal-Mogul*, 330 B.R. at 155.

- *Eagle Picher*, 189 B.R. 681. The court had to estimate approximately 65,000 present claims, in addition to the future claims. *Id.* at 683. The court was estimating the asbestos claims "in the aggregate for the purposes of determining the appropriate distributions to creditor classes under the Plan or any other plan that may be proposed in these Chapter 11 cases." *Id.* at 682. The estimation hearing included the testimony of 5 expert witnesses on the value of present asbestos claims and the projected value of future demands. *Id.* at 683.

29. Through the use of streamlined estimation procedures, the Derivative Asbestos Claims can be estimated in a matter of months and after a one to three day hearing for each phase of the estimation, as opposed to litigated over a period of years or perhaps decades. ASARCO therefore believes that all parties in interest, including the asbestos claimants, will greatly benefit from estimation.

30. As the Fourth Circuit Court of Appeals stated in another mass tort bankruptcy case:

> If the bankruptcy court could arrive at a fair estimation of the value of all the claims and submit a fair plan of reorganization based on such estimation, with some mechanism for dispute resolution and acceptable to all interested parties, great benefit to all the claimants could be achieved and the excessive expense of innumerable trials, stretching over an interminable time, could be avoided.

*A.H. Robins*, 788 F.2d at 1013 (footnote omitted). Section 524(g) of the Bankruptcy Code provides a dispute resolution mechanism for asbestos claims in the form of a claims resolution trust that will evaluate and liquidate the claims for distribution purposes post-confirmation. This

ensures that all present and future asbestos claimants are paid and treated equally, and that the amounts available to fund distributions to such claimants (and all other creditors) are maximized.

31. In light of the foregoing, and for the reasons set forth herein, this Court should exercise its authority to estimate ASARCO's Derivative Asbestos Claims.

## II. The Court May Establish Procedures for Estimation of the Derivative Asbestos Claims.

32. As discussed above, the method to be used to estimate the Derivative Asbestos Claims is within this Court's discretion. ASARCO proposes that the Court engage in a two-tier process for estimating the Derivative Asbestos Claims. Phase 1 will determine whether ASARCO has any liability for the Derivative Asbestos Claims. If the Court determines that it does, then in the Phase 2, the Court will estimate the amount of ASARCO's Derivative Asbestos Claims.

33. ASARCO proposes the procedures set forth below for the estimation of its Derivative Asbestos Claims. Similar procedures have been proposed and/or implemented in estimation proceedings in other asbestos bankruptcy cases. *See, e.g., In re W.R. Grace & Co.*, No. 01-1139 (Docket No. 9301) (Bankr. D. Del. Aug. 31, 2005); *In re Federal-Mogul Global, Inc.,* No. 01-10578 (Docket No. 6437) (Bankr. D. Del. Nov. 23, 2004); *In re Owens Corning,* No. 00-03837 (Docket No. 12288, Ex. 1 (proposed case management order)) (Bankr. D. Del. July 30, 2004).

34. ASARCO proposes that it, the Committees, and the FCR (the "Parties") participate in the estimation proceedings. Phase 1 will consist of the exchange of materials to be presented on the issue of whether ASARCO is liable for the Derivative Asbestos Claims, followed by briefing and a hearing on that point. Phase 2, if triggered, will include the

submission of expert reports, legal briefing, and a hearing on the estimated total amount of the Derivative Asbestos Claims and the methodology to be used in arriving at that estimate.

35. ASARCO believes that this two-tier procedure is the most efficient method for estimation of the Derivative Asbestos Claims. If ASARCO is not liable for such claims and CAPCO and LAQ are instead solely responsible for them, the amount of the asbestos claims becomes much less significant. In that event, ASARCO will be able to formulate a plan and disclosure statement, with the asbestos claims against CAPCO and LAQ addressed in a joint plan or dealt with via some other appropriate means.

36. More specifically, ASARCO proposes the following schedule for Phase 1 of the estimation proceedings:

> a) The Parties shall disclose the identity of all witnesses along with a brief description of each witness's expected testimony and all materials, including without limitation affidavits, summaries, prior testimony (trial or deposition), documents, and any other materials on which they will rely on the issue of whether ASARCO is liable for the Derivative Asbestos Claims by May 15, 2006. No party may call more than three live witnesses at the hearing.
>
> b) The Committees shall coordinate with counsel for holders of Derivative Asbestos Claims (or the claimants themselves where not represented by counsel) in making the disclosures required by subparagraph (a).
>
> c) The Parties may conduct oral depositions of any disclosed live witnesses. The depositions will be limited to three hours each and must be completed by June 15, 2006.
>
> d) Any pre-hearing motions and briefs on the issue of ASARCO's liability for Derivative Asbestos Claims shall be filed not later than July 10, 2006, with responses to such motions to be filed not later than 14 days after the filing of any such motion, and replies to be filed not later than 7 days after the filing of the response to the motion.
>
> e) The Parties shall file with the Court a proposed pre-hearing order signed by counsel for each of the Parties, witness lists, copies of all exhibits to be offered and all schedules and summaries to be used at the hearing on the issue of ASARCO's liability for the Derivative Asbestos

Claims by August 10, 2006.

f)   The Court shall hold the hearing on the issue of ASARCO's liability for Derivative Asbestos Claims on a date to be set by Court in August 2006.

37.   If the Court determines that ASARCO has any liability for the Derivative Asbestos Claims, ASARCO proposes that the Court set a status conference on the estimation proceedings, at which it would establish a schedule for the following events in Phase 2 of such proceedings:

a)   The Parties shall disclose the identity of all witnesses along with a brief description of each witness's expected testimony and all materials, including without limitation affidavits, summaries, prior testimony (trial or deposition), documents, and any other materials on which they will rely on the issue of the estimated amount of ASARCO's Derivative Asbestos Claims, with all such fact discovery to be completed by September 15, 2006.  No party may call more than three live witnesses at the hearing.

b)   The Parties shall file and serve opening expert reports regarding the estimated amount of ASARCO's Derivative Asbestos Claims, and exchange all data and/or materials relied upon by the experts in their opening reports, by September 22, 2006.

c)   The Parties shall file and serve rebuttal expert reports regarding the estimated amount of ASARCO's Derivative Asbestos Claims, and exchange all data and/or materials relied upon by the experts in their rebuttal reports, by October 6, 2006.

d)   The Parties may each depose the experts whose reports are submitted, with such expert discovery to be completed by October 20, 2006.

e)   Any pre-hearing motions and briefs on the issue of the estimated amount of ASARCO's Derivative Asbestos Claims shall be filed by October 30, 2006, with responses to such motions to be filed not later than 14 days after the filing of any such motion, and replies to be filed not later than 7 days after the filing of the response to the motion.

f)   The Parties shall file with the Court a proposed pre-hearing order signed by counsel for each of the Parties, witness lists, copies of all exhibits to be offered and all schedules and summaries to be used at the hearing on the issue of the estimated amount of the Derivative Asbestos Claims by November 6, 2006.

   g) The Court shall hold a final pre-trial conference and shall then conduct a hearing on the estimated amount of ASARCO's Derivative Asbestos Claims on a date to be set by the Court in November 2006.

38. This streamlined estimation procedure will not prejudice the holders of the Derivative Asbestos Claims. ASARCO, LAQ and CAPCO have been involved in the traditional tort system for a long time. The asbestos plaintiffs have asserted claims against ASARCO on the basis of various alter ego theories, and have conducted discovery thereon, for many years. Because the Parties to the estimation proceedings can take advantage of this wealth of accumulated information and evidence, discovery in regards to the Derivative Asbestos Claims can proceed quickly and efficiently.

39. Moreover, throughout these Reorganization Cases, ASARCO has been providing corporate records and other information germane to the Derivative Asbestos Claims to counsel for the Committees and other parties in interest. As a consequence, the Parties can begin Phase 1 of the estimation proceedings fairly well-advanced in the discovery process.

40. Further, the information that the Debtors seek regarding asbestos claims in their Bar Date Motion will be valuable in Phase 2 of the estimation proceedings, should the Court determine that ASARCO is liable to the Derivative Asbestos Claims. The Debtors believe that the information inputted into the Asbestos Claims Electronic Database and provided in the asbestos proofs of claim will significantly reduce the amount of discovery that will need to be taken by the Parties in Phase 2.

41. ASARCO therefore respectfully requests that the Court approve its proposed case management order incorporating these procedures.

## CERTIFICATE OF SERVICE

42. In compliance with Bankruptcy Local Rule 9013(f) and contemporaneously with this Motion, ASARCO has filed as a separate document a Certificate of Service containing the

names and addresses of the parties served, the manner of service, the name and address of the server, and the date of service.

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order establishing procedures for estimation of the Derivative Asbestos Claims, (ii) conduct proceedings in accordance with the case management order resulting in an estimation of those claims, and (iii) grant the Debtor such other and further relief as is just and proper.

Respectfully submitted this 24th day of March, 2006.

**BAKER BOTTS L.L.P.**

/s/ Jack L. Kinzie
Jack L. Kinzie
State Bar No. 11492130
James R. Prince
State Bar No. 00784791
2001 Ross Avenue
Dallas, Texas 75201-2980
Telephone:    214.953.6500
Facsimile:    214.661.6503
Email: *jack.kinzie@bakerbotts.com*
          *jim.prince@bakerbotts.com*

and

**BAKER BOTTS L.L.P.**

Tony M. Davis
State Bar No. 05556320
One Shell Plaza
Houston, Texas 77002
Telephone: 713.229.1234
Facsimile: 713.229.1522
Email: *tony.davis@bakerbotts.com*

and

**JORDAN, HYDEN, WOMBLE, CULBRETH, & HOLZER, P.C.**

Shelby A. Jordan
State Bar No. 11016700
Harlin C. Womble
State Bar No. 21880300
Nathaniel Peter Holzer
State Bar No. 00793971
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, Texas 78471
Telephone:     361.884.5678
Facsimile:      361.888.5555
Email: *sjordan@jhwclaw.com*
           *hwomble@jhwclaw.com*
           *pholzer@jhwclaw.com*

**COUNSEL TO DEBTOR AND DEBTOR-IN-POSSESSION**