Sander L. Esserman
State Bar No. 06671500
Robert T. Brousseau
State Bar No. 03087500
Jacob L. Newton
State Bar No. 24046523
**Stutzman, Bromberg, Esserman & Plifka,**
**A Professional Corporation**
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900

**COUNSEL FOR THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS FOR THE SUBSIDIARY DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| **In re:** | § | **Case No. 05-21207** |
| | § | |
| **ASARCO LLC, _et al._,** | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |

## OBJECTION TO DEBTORS' MOTION TO ESTIMATE DERIVATIVE ASBESTOS LIABILITIES AND FOR ENTRY OF CASE MANAGEMENT ORDER ESTABLISHING PROCEDURES FOR SUCH ESTIMATION FILED BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS FOR THE SUBSIDIARY DEBTORS

**To:    The Honorable Richard S. Schmidt,**
**United States Bankruptcy Judge**

The Official Committee of Unsecured Creditors of the Subsidiary Debtors (the "Subsidiary Committee") files its Objection (the "Objection") to Debtors' Motion to Estimate Derivative Asbestos Liabilities and For Entry of Case Management Order Establishing Procedures for Such Estimation (the "Estimation Motion"), and would respectfully represent as follows:

## I.    SUMMARY OF ARGUMENT

1.      Through a pleading that Asarco, LLC ("Asarco") styles as an "Estimation Motion," but which in reality is far beyond the accepted scope of 11 U.S.C. § 502(c),

Asarco attempts to unilaterally impose upon the Subsidiary Committee and its constituency certain procedures designed solely to nullify the pending adversary proceeding 05-2048 (the "<u>Adversary Proceeding</u>") and to keep hidden all relevant evidence relating to the various claims and causes of action collectively referred to as the Alter Ego Theories.[1]

2.      Asarco filed the Alter Ego Adversary Proceeding in June 2005, and Asarco itself affirmed that the prosecution of the pending Adversary Proceeding would "benefit all parties-in-interest in the Debtors' chapter 11 cases and is *essential to the efficient administration of the Debtors' estates*."  *See* Asarco's original Complaint, ¶ 14 (emphasis added).   Now, however, Asarco asks the Court to ignore the pending Adversary Proceeding and instead make a binding and conclusive determination, in the context of an estimation hearing, of whether Asarco has ***any*** liability under the various Alter Ego Theories.

3.      Having already chosen the Adversary Proceeding as the proper procedural vehicle for determining the extent of its liabilities to injured asbestos claimants, Asarco cannot now be allowed to reverse its position and eviscerate that Adversary Proceeding by advancing the summary procedures proposed in Phase I of its so-called Estimation Motion.

---

[1]      Asarco itself, in its original complaint filed in adversary proceeding 05-2048, defined the term "Alter Ego Theories" to include any theory asserted by an asbestos claimant in an attempt to hold Asarco liable for the debts of Capco and LAQ.  According to Asarco's complaint, such theories include, without limitation, "denuding-the-corporation, single business-enterprise, corporate trust funds, breach of fiduciary duty or conspiracy, allegations that LAQ or Capco was the mere instrumentality, agent, or alter ego of Asarco, or that the corporate veil should be pierced, or that as a result of domination and control over any of the [Subsidiary] Debtors, directly or indirectly, Asarco should be liable for asbestos-related claims or any other claims that have origins in acts or omissions of any of the [Subsidiary] Debtors, or any other theories alleging direct or indirect liability for the conduct of, claims against, or demands on the [Subsidiary Debtors] to the extent that such alleged liability arises by reason of any of the other circumstances enumerated in section 524(g)(4)(A)(ii) of the Bankruptcy Code."

4.      Moreover, Asarco's Phase I procedures are patently inconsistent with the terms and provisions of the "Stipulation and Agreement Regarding the Prosecution of Alter Ego Claims On Behalf of the Asbestos Subsidiary Debtors' Estates" (the "Stipulation").  Asarco drafted the Stipulation, Asarco negotiated and ultimately executed the Stipulation, and Asarco filed a Motion to Approve the Stipulation with the Bankruptcy Court.  Asarco even appeared and announced its support for the Stipulation at the April 25, 2006, hearing on its Motion to Approve the Stipulation, and the Court has now signed the Stipulation and entered it on the docket of both the Asarco bankruptcy case and the Adversary Proceeding.  Pursuant to the Stipulation, Asarco specifically agreed that the Subsidiary Committee and the FCR have "the right to prosecute any and all Alter Ego Claims … against Asarco" in the Adversary Proceeding.[2]  Asarco also expressly waived the right to object to the Subsidiary Committee's "standing to prosecute the Alter Ego Claims against Asarco."[3]

5.      Notwithstanding its prior representations to the Subsidiary Committee and to the Bankruptcy Court, however, Asarco now makes a mockery of the Stipulation by proffering Phase I estimation procedures that are utterly inconsistent with the Stipulation. Asarco has stipulated and agreed that the Adversary Proceeding would be used to determine the extent of Asarco's liability under the various Alter Ego Theories, and Asarco should remain bound by that agreement.

6.      The particular details of Asarco's Phase I scheme reveal that its sole purpose is to obscure the relevant evidence relating to the Alter Ego Theories and thereby

---

[2]      *See* Stipulation, p. 3.

[3]      *See* Stipulation, p. 4.

preclude the Subsidiary Committee from fully and fairly presenting the merits of the Alter Ego Theories.  For example, Phase I imposes a truncated, fast track schedule that gives the Subsidiary Committee little or no time for written discovery, restricts the Subsidiary Committee and the FCR to three witnesses, and limits the Subsidiary Committee's depositions of Asarco's witnesses to three short hours.

7.      No justification supports these unreasonable restrictions, which are really just another example of Asarco's longstanding attempts to hinder the Subsidiary Committee's prosecution of the various Alter Ego Theories.  In fact, the limitations and restrictions imposed by Asarco's Phase I scheme expressly conflict with the terms of the Court-approved Stipulation, wherein Asarco agreed that the Subsidiary Committee and the FCR have the authority and are responsible for "conducting all pre-trial discovery deemed advisable … in their sole discretion," and for "conducting the trial of this [A]dversary [P]roceeding as deemed advisable … in their sole discretion."[4]

8.      Asarco's Phase I procedure is even more outrageous given the fact that Asarco has stubbornly refused to produce relevant, non-objectionable documents to the Subsidiary Committee for more than eighteen months.   As discussed below, the Subsidiary Committee made its first request for production of documents in October 2004, and despite Asarco's repeated promises that the documents were forthcoming, the substantial majority of the Subsidiary Committee's original document request remains outstanding.

9.      The Court, therefore, should reject Asarco's misguided Phase I procedure as contravening the fundamental notions of fair play, as violating the terms of a valid and

---

[4]      *See* Stipulation, p. 4.

binding Stipulation, and as being outside the scope of 11 U.S.C. § 502(c).

## II.    FACTUAL BACKGROUND

10.    On June 15, 2005, Asarco filed the Adversary Proceeding seeking a declaratory judgment that Asarco has no liability for the asbestos liabilities of five of its Subsidiary Debtors[5] pursuant to any Alter Ego Theory.

11.    In its complaint, Asarco named as defendants each of the Subsidiary Debtors and the FCR.  Counsel for the Subsidiary Debtors have not taken an active role in this adversary proceeding, and have instead requested that the Subsidiary Committee take responsibility for the representation of the interests of the Subsidiary Debtors.  The Subsidiary Committee and the FCR (collectively, the "Plaintiffs") have agreed to undertake such representation.

12.     In light of that agreement, over the course of several months Asarco, the Subsidiary Committee, and the FCR (collectively, the "Parties") have heavily negotiated and ultimately agreed to the terms of the Stipulation.  Asarco filed the Stipulation, along with a motion seeking approval of such Stipulation, on March 20, 2006.  *See* docket no. 1855.

13.    As set forth in the Stipulation, the Subsidiary Committee and the FCR will be realigned as Plaintiffs, Asarco will be realigned as defendant, and the Plaintiffs will file an Amended Complaint asserting the Alter Ego Theories, together with any other claim or claims against Asarco or any additional defendant that the Plaintiffs deem appropriate to include in this action.  Importantly, Asarco waived all further objection to

---

[5]    As used herein, the term "Subsidiary Debtors" shall refer to Lac d' Amiante du Québec Ltée, Lake Asbestos of Quebec, Ltd., and LAQ Canada, Ltd. (collectively, "LAQ"), and Capco Pipe Company, Inc., and Cement Asbestos Products Company (collectively, "Capco").

the Plaintiffs' prosecution in the Adversary Proceeding of the Alter Ego Theories against Asarco.  *See, e.g.,* Stipulation, p. 3-4.

14.     On Tuesday, April 25, 2006, the Bankruptcy Court held a hearing on Asarco's Motion to Approve the Stipulation.  Asarco voiced to the Court its support for the Motion to Approve the Stipulation, and specifically asked the Court to enter the Stipulation in both the main Asarco bankruptcy case and in the Adversary Proceeding. The Court ultimately complied with Asarco's request.  *See* main case docket no. 2054; Adversary Proceeding docket no. 46.

15.     In the Stipulation, the Subsidiary Committee and the FCR are given the specific responsibility for filing an Amended Complaint against Asarco in the Adversary Proceeding.  The Stipulation also specifies that the Subsidiary Committee and the FCR shall have the responsibility for "conducting all pre-trial discovery deemed advisable" by them in their sole discretion.  Relying on those two provisions of the Stipulation—both of which appeared in the original version of the Stipulation ***drafted by Asarco***—the Subsidiary Committee and the FCR have devoted great attention and numerous hours to preparing their Amended Complaint, which the Subsidiary Committee expects to file soon.  The Subsidiary Committee has also spent considerable time and effort in drafting the extensive discovery requests that are necessary for the prosecution of the Adversary Proceeding.

16.     Hand in hand with the negotiations of the Stipulation, the Subsidiary Committee and Asarco engaged in lengthy discussions over document productions.  The Subsidiary Committee[6] sent its first set of requests for production of documents to Asarco

---

[6]     Prior to Asarco's August 9, 2005, bankruptcy petition, the Subsidiary Committee was involved in this

on October 26, 2004—over eighteen months ago.  While the Subsidiary Committee has received a small percentage of such documents, the vast majority of the original document request still remains outstanding.

17.     Moreover, the Subsidiary Committee has ***repeatedly*** attempted to obtain these and other documents from Asarco.  For example, the Subsidiary Committee and its financial advisors followed up on the original document request by contacting Asarco and/or its financial advisors on October 27, 2004, again on November 16, 2004, and again on November 19, 2004, December 6, 2004, December 17, 2004, January 3, 2005, and January 7, 2005.

18.     After Asarco's bankruptcy proceeding, counsel for the Subsidiary Committee again reiterated and revised the original document requests by sending a formal letter to Asarco's financial advisors (Lehman Brothers) and to Asarco's bankruptcy counsel (Baker Botts) on September 9, 2005.  On October 14, 2005, and again on November 7, 2005, at Asarco's request, the Subsidiary Committee resubmitted their revised document requests to Asarco.  Finally, on January 19, 2006, concerned with the continued failure of Asarco to respond to the document requests, counsel for the Subsidiary Committee once again served a formal letter upon Asarco's counsel, reiterating the prior document requests.

19.     Despite the Subsidiary Committee's repeated efforts, Asarco has refused to cooperate for more than eighteen months.  Asarco's refusal is even more appalling because Asarco has ***never*** asserted that any of the Subsidiary Committee's document requests are objectionable or privileged.  Instead, Asarco has promised the Subsidiary

---

case as an *ad hoc* committee.

Committee on several occasions that the relevant documents had been located in "one or two trucks" and that production would be forthcoming, but still the document requests remain substantially unsatisfied today.   In fact, one of the Subsidiary Committee's financial advisors, with more than 35 years experience dealing with distressed companies, has characterized Asarco's refusal to produce documents as "the worst" he has experienced in his 35 years.

20.    Now, having refused the Subsidiary Committee's discovery requests for more than a year and a half, and having negotiated the terms and provisions of a Stipulation that sets out an appropriate method to resolve the important question of Asarco's liability for exposure to Capco asbestos products and LAQ asbestos fibers, Asarco reverses its position and has filed its Estimation Motion.  The Estimation Motion effectively negates the Stipulation by seeking to curtail all discovery, to remove the Subsidiary Committee and the FCR from their bargained-for role as Plaintiffs in the pending Adversary Proceeding, and to reduce the complex trial of Asarco's Alter Ego liability into a summary hearing that would deny the Subsidiary Committee the rights afforded to it by the Bankruptcy Code, the Bankruptcy Rules, and the United States Constitution.

21.    Because the summary procedures set forth in the Estimation Motion are entirely inconsistent with Asarco's averments in the Stipulation that these matters should be resolved through the Adversary Proceeding, and because the summary procedures deny the Subsidiary Committee's constituents their right to a meaningful day in court, the Subsidiary Committee objects to the Estimation Motion.

### III.    ARGUMENT

## A.    ASARCO'S PROPOSED ESTIMATION PROCEDURE VIOLATES ASBESTOS CLAIMANTS' DUE PROCESS RIGHTS

### 1.    *Phase I Denies Plaintiffs Their Due Process Right to a Meaningful Opportunity to Be Heard*

22.    "The concept of due process is fundamental to our system of laws in the United States."  *In re Farmland Indus., Inc.*, 284 B.R. 111, 116-17 (Bankr. W.D. Mo. 2002).  "There is no argument that the Due Process Clause applies to proceedings under the Bankruptcy Code."  *Farmland Indus.*, 284 B.R. at 116 (*citing Bank of Marin v. England,* 385 U.S. 99, 102, 87 S.Ct. 274, 276, 17 L.Ed.2d 197 (1966)). "The essential element of due process is the right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner."  *Shell Offshore, Inc. v. Director, OWCP,* 122 F.3d 312, 315 (5th Cir. 1997) (*quoting Matthews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976)).

23.    Asarco's Phase I procedures, however, purport to eviscerate the pending Alter Ego Adversary Proceeding and force Plaintiffs to try their complex  and intricate Alter Ego Theories as a mere contested matter under Rule 9014—with no written discovery, limited witnesses, and an unrealistic time schedule.  As one court has noted, due process concerns "become important when a Rule 9014 contested matter is asked to do an adversary proceeding's job."  *See, e.g., In re Loloee*, 241 B.R. 655, 661 (B.A.P. 9th Cir. 1999).   Accordingly, by proposing procedures that are specifically designed to preclude the Subsidiary Committee from presenting the true merits of its case, Asarco seeks to deny the Subsidiary Committee the right to be heard at a meaningful time and in a meaningful manner.  *See, e.g., In re Dow Corning Corp.*, 211 B.R. 545, 563 (Bankr.

E.D. Mich. 1997) ("To begin with, regardless of the estimation method selected, for the process to have any semblance of fairness it will necessarily involve hearings that would be quite lengthy and protracted.  After all, the extremely contentious issues surrounding the tort claims are highly complex and their resolution will require the presentation of many witnesses, many pieces of evidence and extensive oral argument.  Abbreviating the time parties have to present their cases at an estimation hearing would, in the Court's opinion, be ill-advised.   Considering the magnitude of the claims involved and the absolute importance of rendering a fair and accurate decision, *the Court cannot countenance a valuation procedure that would place artificial time constraints on the parties' ability to properly present their cases.*") (emphasis added); *In re The Bible Speaks*, 65 B.R. 415, 427 (Bankr. D. Mass. 1986) (finding that when a claim is of particular importance to a reorganization plan, procedures approaching a complete trial are more appropriate than summary procedures).

24.     Asarco's demand that the Subsidiary Committee present the merits of the intricate Alter Ego Theories[7] in a summary hearing, and without the benefit of written discovery or other factual and legal development, hopelessly restricts Subsidiary Committee's efforts and cannot pass scrutiny under the due process clause.  Based on the importance of these issues to the Subsidiary Debtors' estates, nothing short of a full Adversary Proceeding, with all the procedural protections guaranteed by Fed. R. Bankr. P. 7001—7087, can satisfy the asbestos claimants' due process rights to a full and meaningful trial.  This Court should, therefore, reject Phase I.

---

[7]     As mentioned, these Alter Ego Theories are theories that Asarco itself identified as potentially valid.  *See* Asarco's original Complaint, ¶ 6.

**2.**   ***Phase I Violates Plaintiffs' Due Process Right to the Procedures Embodied in the Bankruptcy Rules Applicable to Adversary Proceedings***

25.    In addition, by structuring its Phase I procedures to determine whether Asarco has *any* liability for the legions of asbestos claims asserted against both Asarco and the Subsidiary Debtors, Asarco essentially asks the Court to determine the merits of this class of claims.  The bankruptcy judge presiding over the *Federal-Mogul* case has observed that a determination of the merits of a class of claims "require[s] that each claimant be afforded the procedural protections of the due process clause of the Fifth Amendment" of the United States Constitution.  *See The Official Committee of Asbestos Claimants v. Asbestos Property Damage Committee (In re Federal-Mogul Global Inc.)*, 330 B.R. 133, 154 (D. Del. 2005) (*citing with approval Owens Corning v. Credit Suisse First Boston, (In re Owens Corning)*, 322 B.R. 719 (D. Del. 2005)).  The *Federal-Mogul* Court made this statement in the context of a contested estimation hearing, finding that the estimation hearing was appropriate because it did ***not*** focus on the merits of a class of claims.  *Id.*

26.    Unlike the *Federal-Mogul* case, however, Asarco asks the Court to consider and rule upon the merits of its asbestos claims *in the context of its Estimation Motion*.  Asarco's scheme thus implicates and infringes upon the asbestos claimants' rights to receive the full procedural protections of the due process clause.  Instead of improperly forcing the Alter Ego determination to be made in the context of an estimation motion, the Court should enforce the Stipulation and proceed to determine the Alter Ego Theories in the pending Adversary Proceeding where this Court can address due process concerns through the rules applicable to adversary proceedings.  *See, e.g., In re Loloee*, 241 B.R. 655, 661 (B.A.P. 9th Cir. 1999) (finding that due process concerns

"become important when a Rule 9014 contested matter is asked to do an adversary proceeding's job"); *In re Graves*, 279 B.R. 266, 274 (B.A.P. 9th Cir. 2002) (referring to the procedural due process protections that are inherent in an adversary proceeding).

27.     The *Federal-Mogul* court also observed that the estimation proceeding in that case "did not involve the discovery of individual claims, but rather an inquiry focused on [debtor's] historical claims-handling practices, and expert testimony on trends and developments in the asbestos tort system. *To do otherwise would eviscerate the purposes of the estimation process*…." *Id.* at 155.  This statement makes the Subsidiary Committee's point—Asarco's Estimation Motion should be limited to an inquiry involving Asarco's historical claims-handling practices and expert testimony on trends and developments in the asbestos tort system.  A so-called estimation hearing is not the proper forum for deciding whether Asarco is liable under the various Alter Ego Theories asserted in the Adversary Proceeding.  To allow Asarco to shoehorn the entire Alter Ego Adversary Proceeding into a truncated hearing on its Estimation Motion would violate asbestos claimants' due process rights and impermissibly expand the scope of 11 U.S.C. § 502(c).

28.     Accordingly, because the estimation procedures proposed by Asarco purport to deny Plaintiffs the procedural protections guaranteed by the due process clause of the Fifth Amendment, the Court should deny the Estimation Motion.

## B.     ASARCO'S PROPOSED ESTIMATION PROCEDURE IS PATENTLY UNFAIR

### 1.     *Asarco's Proposed Phase I Procedure Gives Short Shrift to Issues That Are Far Too Important to the Subsidiary Debtors' Estates to Be Decided In Such a Summary Fashion*

29.     Asarco was originally incorporated in 1899, and is currently an integrated copper mining company.  Throughout most of its corporate history, however, Asarco was a more diversified company with interests in various business segments.  One of Asarco's historic business segments involved both the mining of asbestos fiber—through the LAQ entities—and the production of asbestos-containing pipe products—through the Capco entities.

30.     Because of these prior operations, Asarco and the Subsidiary Debtors have considerable exposure for asbestos-related personal injuries and have incurred significant liabilities in connection therewith.  In fact, asbestos-related claims have been asserted against both Asarco and the Subsidiary Debtors since the late 1970s.  In response to this growing liability, Asarco contrived a scheme to systematically strip the Subsidiary Debtors of their assets, ultimately leaving the Subsidiary Debtors as mere insolvent shells with neither assets nor operations.

31.     Asarco today faces tens of thousands of personal injury claims from individuals who were injured by the asbestos business segment formerly operated by Asarco.  Asarco attempts to avoid these massive liabilities by hiding behind a flimsy corporate veil between it and the Subsidiary Debtors, a veil Asarco itself has frequently ignored.  Because Asarco and its affiliates have stripped the Subsidiary Debtors of their assets and left them as mere inoperating shells—a fact which Asarco has admitted, *see* Complaint, ¶ 2—the prosecution of the Alter Ego Theories against Asarco is one of the most important issues for the Subsidiary Debtors and their estates.

32.     In fact, the Alter Ego Theories asserted against Asarco may be one of the most significant sources of compensation for the Subsidiary Debtors' creditors—

comprised almost exclusively of sickened asbestos claimants.

33.     Given the significance to the Subsidiary Committee's constituency of the Alter Ego Theories against Asarco, the Subsidiary Committee, together with the FCR, is entitled to a full adversarial trial of these key issues.   Asarco cannot be allowed to belatedly abandon the Adversary Proceeding in favor of the monkey trial embodied in Phase I of the Estimation Motion.

   **2.     *Asarco's Phase I Procedure Sets Out An Unreasonable Schedule With Unreasonable Restrictions***

34.     The inequities of Asarco's Phase I procedures are revealed by even the most cursory of reviews.   As currently drafted, the Estimation Motion gives Plaintiffs only three days after the hearing—until May 15, 2006—to (a) identify all witnesses, (b) provide a description of each witness's expected testimony, and (c) compile all affidavits, summaries, prior testimony, depositions, documents, and any other materials upon which Plaintiffs will rely in attempting to establish that Asarco is liable for the asbestos liabilities of the Subsidiary Debtors.   It is ridiculous to even consider, much less to demand in a formal pleading, that three days is a sufficient period for Plaintiffs to accommodate the disclosures unilaterally imposed by Asarco.

35.     Moreover, even if Asarco extends the deadline for making initial disclosures beyond May 15, 2006, Asarco will undoubtedly retain the same basic structure of its proposed schedule—a schedule that effectively gives Plaintiffs *no* time for written discovery, limits the Plaintiffs to only three witnesses at the hearing, and restricts the Plaintiffs' depositions of Asarco's own witnesses to three short hours.   Given the importance of the Alter Ego Theories to the Subsidiary Committee's constituency, and particularly in light of Asarco's protracted bad faith refusal to cooperate with the

Subsidiary Committee's prior document requests, such restrictions are patently unfair and should not be endorsed by this Court.

36.     Phase I suggests giving Plaintiffs only one month to conduct depositions, forcing Plaintiffs to conduct such depositions without the benefit of any meaningful discovery.  Phase I also proposes that all pre-hearing pleadings be filed less than four weeks after the end of the deposition period, with the final hearing to determine Asarco's liability under the Alter Ego Theories to be held in August 2006, less than three months after the hearing on the Estimation Motion.

37.     While Asarco may wish to have the Alter Ego Theories decided on such a truncated, summary basis, the Alter Ego Theories raise issues for the Subsidiary Debtors and their estates that are far more complex and far more important than can be decided in such an abbreviated manner.  This Court, therefore, should reject Phase I as inherently inequitable.

> **3.**    ***Asarco Has Calculatedly Stalled in Producing Documents Requested by the Subsidiary Committee, and Therefore Asarco Cannot Force the Subsidiary Committee to Litigate the Critical Alter Ego Theories Without the Relevant Evidence***

38.     Perhaps even more egregious than Asarco's unreasonably short timeline is that Asarco proposes to give Plaintiffs *no* time to conduct written discovery, an omission that is particularly unfair since Asarco, while assuring the Subsidiary Committee that it would cooperate, has consistently ignored the Subsidiary Committee's numerous attempts to obtain production of documents.  In fact, the Subsidiary Committee[8] sent its first set of requests for production of documents to Asarco on October 26, 2004—over

---

[8]     Prior to Asarco's August 9, 2005, bankruptcy petition, the Subsidiary Committee was involved in this case as an *ad hoc* committee.

eighteen months ago.  While the Subsidiary Committee has received a small percentage of such documents, the vast majority of the original document request still remains outstanding.

39.    The Subsidiary Committee has ***repeatedly*** attempted to obtain these and other documents from Asarco.  For example, in addition to the highly specific and detailed October 26, 2004, request, the Subsidiary Committee and/or its financial advisors followed up by contacting Asarco and/or its financial advisors on October 27, 2004, again on November 16, 2004, and again on November 19, 2004, December 6, 2004, December 17, 2004, January 3, 2005, and January 7, 2005.   Not once did Asarco voice any objection to the Subsidiary Committee's requests.

40.    After Asarco's bankruptcy proceeding, counsel for the Subsidiary Committee again reiterated and revised its original document requests by sending a formal letter to Asarco's financial advisors (Lehman Brothers) and to Asarco's bankruptcy counsel (Baker Botts) on September 9, 2005.  On October 14, 2005, and again on November 7, 2005, at Asarco's request, the Subsidiary Committee resubmitted their revised document requests to Asarco.  Finally, on January 19, 2006, concerned with the continued failure of Asarco to respond to the document requests, counsel for the Subsidiary Committee once again served a formal letter upon Asarco's counsel, reiterating the prior document requests.  Again, Asarco never objected to the requests, but pledged its cooperation.

41.    Nonetheless, despite the Subsidiary Committee's repeated requests, Asarco has stonewalled for more than eighteen months.  Asarco's refusal is even more appalling because Asarco has ***never*** asserted that any of the Subsidiary Committee's

document requests are objectionable or privileged.  Instead, Asarco has promised the Subsidiary Committee on several occasions that the relevant documents would be forthcoming, but still the document requests remain substantially unsatisfied today.  In fact, one of the Subsidiary Committee's financial advisors, with more than 35 years experience dealing with distressed companies, has characterized Asarco's refusal to produce documents as "the worst" he has experienced in his 35 years.

42.     In light of its refusal to produce relevant, non-privileged documents, Asarco's incredible assertion that the Subsidiary Committee has a "wealth of accumulated information and evidence" that allows discovery to "proceed quickly and efficiently" is completely false.  *See* Estimation Motion, ¶ 38.  Such a representation beggars comprehension.  Plaintiffs have no "wealth of accumulated evidence" because Asarco has steadfastly refused to produce the relevant materials.

43.     Contrary to allegations in Asarco's Estimation Motion, the Subsidiary Committee has no source other than Asarco from which to obtain the relevant documents and other evidence.  While the Subsidiary Committee is working closely with a number of law firms that filed pre-petition, asbestos-related lawsuits against Asarco, Asarco consistently settled these cases well before any meaningful discovery could take place. Asarco, therefore, is the only party from which Plaintiffs can obtain the substantial amount of documents and other evidence necessary for a full and complete trial of the Adversary Proceeding, and in fact, Asarco specifically agreed in the Stipulation that the Plaintiffs are entitled to conduct "all pre-trial discovery deemed advisable … in their sole discretion."  *See* Stipulation, p. 4.

44.     Given Asarco's 18-month refusal to provide the Subsidiary Committee

with any meaningful document production, Asarco's scheme to provide Plaintiffs with no time for written discovery—together with the other restrictive limitations imposed by the Phase I procedures—is simply one more example of Asarco's longstanding attempt to keep hidden **all** evidence relating to the Alter Ego Theories.   Asarco, as the parent company of the defunct Subsidiary Debtors, is in the unique position of possessing the documents and other facts that would support the Alter Ego Theories, and Asarco has even admitted that the relevant documents have been located in "one or two trucks." However, Asarco has apparently determined to try and hide from its massive asbestos liabilities by refusing the Subsidiary Committee's repeated document requests and by proffering a Phase I scheme that gives Plaintiffs a wholly futile discovery period. Asarco's scheme is patently unfair, and should not be endorsed by this Court.

> **4.      *Phase I Impermissibly Denies the Subsidiary Committee the Opportunity to Present All of Its Theories of Liability—Theories Which Asarco Itself Has Identified As Potentially Meritorious***

45.      The Phase I procedures are also inherently unreasonable because Asarco itself has recognized, through its definition of "Alter Ego Theories," that Asarco has potential liability to asbestos claimants on an abundance of separate and distinct legal theories, including traditional alter ego/piercing the corporate veil, denuding the corporation, single business enterprise, breach of fiduciary duty, conspiracy, etc.[9]  Each of these theories is an independent legal theory with unique elements, and each theory requires specific discovery, factual proof, and legal argument.  By proposing procedures that give the Subsidiary Committee a laughably short discovery period, Asarco forecloses the Subsidiary Committee from factually developing its case.

---

[9]      *See, e.g.,* Footnote 1 and accompanying text.

46.     Moreover, by providing the Plaintiffs with no time for written discovery, by limiting Plaintiffs to only three witnesses, and by restricting depositions of Asarco's witnesses to three hours, Asarco is effectively forcing Plaintiffs to pick and choose among the various legal theories that Asarco itself has identified as potentially valid.

47.     Accordingly, because Asarco's Phase I procedure would unreasonably restrict Plaintiffs from fully presenting the merits of the vitally important Alter Ego Theories, the Court should deny Asarco's Estimation Motion.

## C.     ASARCO HAS APPARENTLY MISLED THE PLAINTIFFS AND THE BANKRUPTCY COURT BY VIOLATING THE TERMS OF THE STIPULATION

48.     Asarco has represented to the Subsidiary Committee and the FCR for over nine months that Asarco's liability under the Alter Ego Theories would be determined solely through the Adversary Proceeding.  Asarco now reverses its position and urges that its Alter Ego liability should be hastily determined through the token procedures embodied in Phase I of the Estimation Motion.  Asarco's radical shift in position is inherently inequitable, constitutes an impermissible breach of the Court-approved Stipulation, and cannot be endorsed by this Court.

49.     Asarco itself initiated the Adversary Proceeding on June 15, 2005.  Asarco itself sought a full adversary trial of the issue of Asarco's liability under any Alter Ego Theory.  It was Asarco itself that first proposed, in July 2005, the Stipulation realigning parties and granting Plaintiffs standing to prosecute the Adversary Proceeding.  It was Asarco that heavily negotiated the terms and provisions of the Stipulation with the Subsidiary Committee and the FCR before ultimately signing the Stipulation in March 2006.  Asarco has repeatedly agreed with the Subsidiary Committee, both in meetings

and as embodied in the Stipulation, that the Alter Ego determination would be conducted through the Adversary Proceeding. Asarco itself specifically represented to the Subsidiary Committee that the Subsidiary Committee was entitled to "conduct **all** pre-trial discovery deemed advisable" by the Plaintiffs "in their sole discretion."[10] And it was Asarco that filed the Motion for Approval of Stipulation with this Court on or about March 20, 2006.

50.     In fact, all of Asarco's conduct prior to and including March 20, 2006, was consistent with the terms and provisions embodied in the Stipulation—that the Alter Ego Theories would be exclusively prosecuted by the Subsidiary Committee and the FCR *in the pending Adversary Proceeding*, with the Subsidiary Committee and the FCR entitled to utilize the full range of discovery provided for by the Federal Rules of Bankruptcy Procedure.

51.     On March 24, 2006, however, Asarco completely abandoned its prior position by filing its Estimation Motion. Phase I of the Estimation Motion purports to gut the pending Adversary Proceeding and instead require Asarco's liability under the Alter Ego Theories to be determined on a truncated basis with limited witnesses, little or no discovery, and none of the procedural protections guaranteed by the due process clause of the Fifth Amendment. This new position by Asarco is completely incompatible with Asarco's prior representations, both to the Subsidiary Committee and to the Court.

52.     Phase I of the Estimation Motion completely eviscerates the following provisions of the Stipulation:

●     Asarco's liability under the various Alter Ego Theories would be

---

[10]     *See* Stipulation, p. 4 (emphasis added).

determined *through the Adversary Proceeding*.[11]

- The Subsidiary Committee and the FCR shall "take the lead role in the prosecution *of this adversary proceeding*" and shall "prosecute all claims, defenses and/or counterclaims against Asarco related to the Alter Ego Claims."[12]

- The Subsidiary Committee and the FCR are responsible for "conducting the trial *of this adversary proceeding* as deemed advisable … in their sole discretion."[13]

- The Subsidiary Committee and the FCR are responsible for "filing and prosecuting an amended complaint" against Asarco *in the Adversary Proceeding*.[14]

- The Subsidiary Committee and the FCR are authorized to "conduct[] all pre-trial discovery" *in the Adversary Proceeding* "deemed advisable" by the Plaintiffs.[15]

- The Subsidiary Committee and the FCR are authorized to "conduct[] all pre-trial motion practice" *in the Adversary Proceeding* "deemed advisable" by the Plaintiffs.[16]

53.     Asarco drafted, negotiated, and executed the Stipulation.   Asarco then reversed its position and filed its Estimation Motion, espousing a truncated, summary procedure that violates the terms of the Stipulation.  Asarco then reverted to its original position and asked the Court on April 25, 2006, to approve the Stipulation, both in the main case and in the Adversary Proceeding.[17]  Asarco now seeks to reverse its position a

---

[11]   *See* Stipulation, p. 3.

[12]   *See* Stipulation, p. 3 (emphasis added).

[13]   *See* Stipulation, p. 4 (emphasis added).

[14]   *See* Stipulation, p. 4.

[15]   *See* Stipulation, p. 4.

[16]   *See* Stipulation, p. 4.

[17]   That Asarco somehow managed to keep a straight face while asking this Court to approve the Stipulation without ever mentioning its patently inconsistent Estimation Motion is further evidence of Asarco's duplicitous intentions.

third time, asking the Court to ignore the promises and representations Asarco made in the Stipulation, and instead to approve the summary Phase I procedures. Clearly, Asarco's inconsistent position cannot be accepted by this Court.

54. In fact, because the Stipulation is a valid and binding contractual obligation, and because Asarco's purported breach of the Stipulation could not be remedied by the award of money damages, the Subsidiary Committee is entitled to demand specific performance from Asarco. *See, e.g., In re Landmark Holding Co., Ltd.*, 286 B.R. 377, 382 (Bankr. D. Minn. 2002) (holding that a court-approved stipulation was a binding contract, and that non-breaching party was entitled to demand specific performance).

## D. ASARCO IS JUDICIALLY ESTOPPED FROM REVERSING ITS POSITION

55. "Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation." *In re Superior Crewboats, Inc.*, 374 F.3d 330, 334-35 (5th Cir. 2004) (*citing Brandon v. Interfirst Corp.*, 858 F.2d 266, 268 (5th Cir. 1988)). "The purpose of the doctrine is to protect the integrity of the judicial process by preventing parties from playing fast and loose with the courts to suit the exigencies of self interest." *In re Coastal Plains, Inc.*, 179 F.3d 197, 205 (5th Cir. 1999).

56. "Generally, judicial estoppel is invoked where 'intentional self-contradiction is being used as a means of obtaining unfair advantage in a forum provided for suitors seeking justice.'" *Superior Crewboats*, 374 F.3d 335 (*quoting Scarano v. Central R.R. Co.,* 203 F.2d 510, 513 (3d Cir. 1953)). The Fifth Circuit recognizes three particular elements of judicial estoppel: (1) the party is judicially estopped only if its

position is clearly inconsistent with the previous one; (2) the court must have accepted

the previous position; and (3) the non-disclosure must not have been inadvertent.  *Id.*

57.     Examining the three elements, Asarco is clearly judicially estopped from

advancing Phase I of its Estimation Motion.   First, Asarco's position with respect to

Phase I is "clearly inconsistent" with its prior position.  As set forth in more detail above,

*see* ¶ 39, Asarco has previously represented to the Plaintiffs and to this Court that

Asarco's liability under the various Alter Ego Theories would be determined ***through the***

***Adversary Proceeding***, that the Plaintiffs are authorized to conduct all pre-trial discovery

***in the Adversary Proceeding*** deemed advisable by the Plaintiffs, and that the Plaintiffs

shall prosecute, ***in this Adversary Proceeding***, all claims, defenses and/or counterclaims

against Asarco related to the Alter Ego Claims.   In fact, the original complaint filed by

Asarco itself in the Adversary Proceeding states as follows:

> [T]his Adversary Proceeding seeks to collectively resolve all Asbestos
> Actions that assert claims against Asarco based on the Alter Ego Theories.
> ***The unified and orderly resolution of the matters set forth in this***
> ***Complaint will benefit all parties-in-interest in the Debtors' chapter 11***
> ***cases and is essential to the efficient administration of the Debtors'***
> ***estates***, as it will establish the framework for determining Asarco's
> contribution to the trust under section 524(g) of the Bankruptcy Code.

*See* Asarco's original complaint, ¶ 14 (emphasis added).

58.     Through the Estimation Motion, however, Asarco now asks the Court to

approve a procedure that is entirely inconsistent with the representations set forth above.

Notwithstanding its prior position, Asarco asks the Court to ignore both the pending

Adversary Proceeding—which was filed *by Asarco*—and the Stipulation—which was

drafted *by Asarco*, negotiated over several months, and submitted to this Court for

approval *by Asarco*—and instead allow Asarco's liability under the Alter Ego Theories to

be determined in the context of its Estimation Motion, with limited witnesses, little or no

discovery, and none of the procedural protections guaranteed by the due process clause of the Fifth Amendment of the United States Constitution.  Clearly, the Phase I procedures are inconsistent with Asarco's prior representations and the heavily negotiated provisions of the Stipulation.

59.    The second element of the judicial estoppel doctrine—that the Bankruptcy Court must have accepted Asarco's prior position—is also satisfied in this case.  By filing the Motion to Approve the Stipulation on March 20, 2006, Asarco sought Bankruptcy Court approval of the Stipulation and the representations contained therein.  On April 25, 2006, Asarco appeared at the hearing on the Motion to Approve the Stipulation in support of the Stipulation.  In fact, Asarco specifically asked the Bankruptcy Court to sign the Stipulation and to enter it on the docket of both the Asarco bankruptcy case (05-21207) *and on the docket of the Adversary Proceeding (05-2048)*.  By signing the Stipulation and entering it on the docket of both the main case and the Adversary Proceeding, this Court clearly accepted the Stipulation and the numerous representations made by Asarco therein.

60.    The third element of judicial estoppel is also satisfied because Asarco did not inadvertently fail to disclose its true position.   Rather, Asarco knowingly and intentionally led the Plaintiffs and this Court to believe that the Adversary Proceeding was the appropriate forum to determine Asarco's liability under the Alter Ego Theories. This was no mere omission by Asarco; Asarco intentionally concealed its ultimate scheme for more than nine months, and calculatingly misled the Plaintiffs and this Court into accepting the terms of a Stipulation that Asarco apparently had no intention of ever

complying with.[18]

61.    Accordingly, Asarco is judicially estopped from proceeding with Phase I of its Estimation Motion.

## D.    ASARCO IS EQUITABLY ESTOPPED FROM ADOPTING A POSITION CONTRARY TO THE TERMS AND PROVISIONS OF THE STIPULATION

62.    "Equitable estoppel is grounded on notions of fair dealing and good conscience and is designed to aid the law in the administration of justice where injustice would otherwise result."  *In re Nucentrix Broadband Networks, Inc.*, 314 B.R. 581, 588 (Bankr. N.D. Tex. 2004).  "Equitable estoppel is designed to foster justice by preventing a person from taking a position contrary to his prior conduct, which has been detrimentally relied upon by another person."  *American Marine Underwriters, Inc. v. Holloway*, 826 F.2d 1454, 1457 (5th Cir. 1987).  "The three elements of an equitable estoppel claim are: (1) a representation by conduct or word; (2) justifiable reliance thereon; and (3) a change in position to one's detriment because of the reliance."  *See Johnson v. Seacor Marine Corp.*, 404 F.3d 871, 878 (5th Cir. 2005).

63.    Here, Asarco filed the Adversary Proceeding in June 2005, thereby representing that the Adversary Proceeding was the proper procedural vehicle for determining the extent of Asarco's liability under the alter Ego theories.  The Plaintiffs were justified in relying on Asarco's representations contained in the Complaint and in the Stipulation and elsewhere.  Indeed, even this Court relied on Asarco's representation

---

[18]    As the Court is well aware, the judicial estoppel doctrine has no requirement that the victims of the inconsistent positions—here, the Plaintiffs—have detrimentally relied upon the prior inconsistent position.  *Superior Crewboats*, 374 F.3d at 334 ("Importantly, because judicial estoppel is designed to protect the judicial system, not the litigants, detrimental reliance by the party opponent is not required.").  Here, however, Plaintiffs did rely to their detriment upon Asarco's prior representations by, *inter alia*, exhaustively researching and preparing the Amended Complaint asserting claims against Asarco and a number of additional defendants, including Asarco's ultimate parent company, Grupo

less than one week ago that Asarco wanted to go forward with the Stipulation.

64.    The Subsidiary Committee changed its position in reliance upon Asarco's representations by, *inter alia*, (i) exhaustively researching and preparing the Amended Complaint asserting claims against Asarco and a number of additional defendants, including Asarco's ultimate parent company, Grupo Mexico; (ii) negotiating the Stipulation; and (iii) formulating a discovery plan and trial strategy.

65.    The Subsidiary Committee relied upon Asarco's representations that the Alter Ego Theories would be determined through the Adversary proceeding, and has spent considerable time over a period of ten months and incurred substantial attorney's fees in negotiating the terms of the Stipulation and in preparing for the complex litigation to ensue.  This time, effort, and expense establishes beyond doubt the Subsidiary Committee's detrimental change in position.  The purpose for which the doctrine of equitable estoppel exists—to foster justice by preventing a person from taking a position contrary to his prior conduct—requires that Asarco be estopped from its radical, last minute change of position.

66.    Accordingly, having chosen the Adversary Proceeding as the means by which to resolve its asbestos liabilities, Asarco is estopped from now assuming an inconsistent position.

**E.    NEITHER THE BANKRUPTCY CODE NOR THE RELEVANT CASE LAW SUPPORTS ASARCO'S SUMMARY PHASE I PROCEEDING**

*1.    11 U.S.C. § 502(c) Does Not Support Asarco's Phase I Procedure*

67.    Nowhere in the Bankruptcy Code is there any support for Asarco's proposed Phase I procedure.  In fact, even a cursory review of 11 U.S.C. § 502(c) reveals

---

Mexico; negotiating the Stipulation; and formulating a discovery plan and trial strategy.

the lack of support for Asarco's Phase I procedure.  Section 502(c) simply provides for the "estimation" of contingent or unliquidated claims, the fixing or liquidation of which would unduly delay the administration of the case; it is not intended to be an "all or nothing" determination of the underlying merits of a claim.  *In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 521 (Bankr. E.D.N.Y. 1994) (holding that while "a binary approach; *all or nothing …. may be appropriate for a finder of fact, we do not believe that it is appropriate for a claim estimation proceeding*.") (emphasis added).

68.     In the present case, Asarco attempts to insert an entirely new methodology into the limited confines of 11 U.S.C. § 502(c)—a "Phase I" summary proceeding to determine whether the Debtor has **any** asbestos liability.  Phase I does not ask for an estimation at all.  Instead, the proposed Phase I procedure requires the Court to make a binding, "all or nothing" determination on the merits of the Alter Ego Theories.  Clearly, an estimation proceeding under 11 U.S.C. § 502(c) is not the proper forum for deciding the merits of this important issue.

69.     Moreover, Asarco asks the Court to make this crucial determination on an extremely fast track schedule, with restricted depositions, limited witnesses, and without the benefit of thorough discovery and other factual development.  While it is not particularly difficult to comprehend why Asarco might prefer for its liability for asbestos claims to be determined in such a summary fashion, it is equally obvious that the Subsidiary Committee and its constituency could never agree to the truncated procedures in Phase I, much less in the context of an Estimation Motion under 11 U.S.C. § 502(c).

70.     Furthermore, even assuming that an estimation under Section 502(c) could somehow be stretched to fit the extraordinary relief requested in Asarco's Phase I

procedure, Asarco cannot show any prospect of "undue delay," a strict requirement of 11 U.S.C. § 502(c).

71.     "Something is 'undue' if it is 'unjustifiable.'  Inquiry into whether liquidating the tort claims would be unjust, due to any case delay that may result therefrom, dictates that the Court perform a kind of cost-benefit analysis by considering the time, costs and benefits associated with both estimation and liquidation."  *In re Dow Corning Corp.*, 211 B.R. 545, 563 (Bankr. E.D. Mich. 1997) (citation omitted).  Thus, before approving any motion seeking to estimate a proof of claim under 11 U.S.C. § 502(c), the Court must first perform a cost-benefit analysis to determine whether "undue delay" exists to justify the estimation that is sought.

72.     Here, however, Asarco's Phase I seeks not an estimation of the amount of potential asbestos claims (which is to be addressed in Phase II), but rather a determination of alter ego liability.   Asarco has already ***admitted*** that the pending Adversary Proceeding is an efficient procedural vehicle exists for the determination of its liability under the Alter Ego Theories:

> [T]his Adversary Proceeding seeks to collectively resolve all Asbestos Actions that assert claims against Asarco based on the Alter Ego Theories. The ***unified and orderly resolution*** of the matters set forth in this Complaint will benefit all parties-in-interest in the Debtors' chapter 11 cases and is ***essential to the efficient administration of the Debtors' estates***, as it will establish the framework for determining Asarco's contribution to the trust under section 524(g) of the Bankruptcy Code.

*See* Asarco's original complaint, ¶ 14 (emphasis added).

73.     Accordingly, based on Asarco's prior admission, Asarco is precluded from now arguing that the delay associated with that Adversary Proceeding is somehow "undue."  In fact, the Adversary Proceeding would be well on its way to conclusion were

it not for ***Asarco's*** decision to suspend all prosecution of the Adversary Proceeding for the past ten months and ***Asarco's*** eighteen-month refusal to respond to the Subsidiary Committee's relevant, non-objectionable document requests.

74.     Tellingly, Asarco has not even attempted to show "undue delay" with respect to Phase I.  Rather, Asarco has limited its discussion of undue delay to Phase II, asserting that the ***liquidation*** of each and every personal injury asbestos claim would take years to accomplish.  *See* Estimation Motion, ¶ 16.  As just demonstrated, however, Phase I does not deal with the liquidation of asbestos claims.  It deals only with Alter Ego Theories, which Asarco has bindingly committed to the "orderly resolution" of the Adversary Proceeding.  Nowhere has Asarco shown or even alleged that the Phase I procedures are necessary because the prosecution and trial of the pending Adversary Proceeding would unduly delay the administration of Asarco's case.

75.     In light of the foregoing, Asarco's attempt to shoe-horn the alter ego Adversary Proceeding into the confines of Section 502(c) is entirely untenable.

> **2.     The Relevant Case Law Does Not Support Asarco's Phase I Procedure**

76.     Not only is 11 U.S.C. § 502(c) inapplicable on its face, but Asarco cannot cite to any prior case where similar Phase I procedures were adopted.  None of the three cases cited by Asarco in paragraph 33 of its Estimation Motion ask the respective bankruptcy courts to make a determination on the merits of the asserted asbestos claims. *See, e.g., In re W.R. Grace & Co.*, No. 01-1139 (Docket No. 9301) (Bankr. D. Del. Aug. 31, 2005); *In re Federal-Mogul Global, Inc.,* No. 01-10578 (Docket No. 6437) (Bankr. D. Del. Nov. 23, 2004); *In re Owens Corning,* No. 00-03837 (Docket No. 12288, Ex. 1 (proposed case management order)) (Bankr. D. Del. July 30, 2004).  Rather, each of those

cases involves only the typical claims estimation process embodied in Asarco's Phase II—an estimation process utilizing a debtor's prior asbestos claims history and expert testimony to project the current value of present and future asbestos claims.

77. Moreover, the cases cited by Asarco in paragraph 26 of the Estimation Motion as allegedly supporting the imposition of summary procedures are also distinguishable. In *In re Windsor Plumbing Supply Co.*, the court adopted the unusual method of estimating the creditor's proof of claim based only upon submitted papers. 170 B.R. 503, 512 (Bankr. E.D.N.Y. 1994). However, the Court agreed to this unusual method only because both the debtor and the creditor "waived their rights to a hearing, and instead, requested that the court make its decision based upon their written submissions." *Id.* at 517. Thus, because *Windsor* involved a creditor that specifically consented to the summary estimation procedure, it has no application to the current case.

78. In fact, not only does the *Windsor* opinion fail to support Asarco's position, it readily supports the Subsidiary Committee's Objection. Asarco's Phase I scheme asks the Court to make a binding determination of whether Asarco has **any** liability under the Alter Ego Theories. This fact is readily apparent from a careful reading of Asarco's Estimation Motion, where Asarco states that the Court will never move to the actual Phase II estimation unless the Court first determines (through the summary Phase I scheme) that Asarco has liability under the various Alter Ego Theories. *See* Estimation Motion, ¶ 37. Clearly, Asarco asks the Court in Phase I for an "all or nothing" finding on the crucial issue of its liability under the Alter Ego Theories. This very approach, however, was discussed and then rejected by the *Windsor* Court when it held that it is inappropriate for a court to use a "binary approach; all or nothing," in an

estimation proceeding.  *Id.* at 521 ("While such approach may be appropriate for a finder of fact, we do not believe that it is appropriate for a claim estimation proceeding.").

79.     Nor do any of the other cases cited by Asarco support its unilateral imposition of the unreasonable and unprecedented Phase I procedures upon the Subsidiary Committee and its constituency.  The estimation procedure approved by the *In re MacDonald* court did involve what the court described as "a kind of 'summary trial.'" *See* 128 B.R. 161, 166 (Bankr. W.D. Tex. 1991).  However, this procedure was adopted only because the parties agreed to "employ an abbreviated procedure in lieu of a fullblown presentation of witnesses and exhibits."  *Id.* at 166.  Moreover, the parties in *MacDonald* had previously conducted "extensive discovery," including depositions and the production of over 6,000 documents.  *Id.* at 163.  As the Subsidiary Committee has made clear, the Subsidiary Committee does not agree to the summary procedures that Asarco seeks to thrust upon the Subsidiary Committee and the FCR.  Moreover, no discovery has taken place and Asarco has repeatedly ignored the Subsidiary Committee's extensive document requests for more than eighteen months.

80.     Finally, in *In re Nova Real Estate Investment Trust*, 23 B.R. 62, 65 (Bankr. E.D. Va. 1982), the court approved an estimation proceeding because there was insufficient time to await the resolution of state court litigation under certain plan deadlines.  Accordingly, the Court proceeded to hold an extensive hearing, including at least eight days of testimony, and incorporated into the record in open court its finding and conclusions.  *Id.* at 65.  Importantly, no mention was made in the case of any type of discovery limitations, and it appears evident by the protracted hearings that the *Nova* court did not otherwise restrict the claimant's presentation of the full merits of the various

issues relating to disregard of the corporate form.   The *Nova* court even provided claimant with certain procedural protections in the event that the court's estimation proved to be too low—the claimant could proceed to liquidate his claim in state court, and pursuant to 11 U.S.C. § 502(j), claimant could have his claim reconsidered for cause to be upwardly adjusted.  *Id.* at 66.  As with the other cases cited by Asarco, the *Nova* opinion lends no support for Asarco's truncated Phase I procedure.

81.     Indeed, while Asarco has failed to cite to any supporting authority, authority exists for proceeding with an alter ego adversary proceeding and its accompanying full procedural protections, while simultaneously performing a traditional claim amount estimation.  *See In re G-I Holdings, Inc.*, Case No. 01-30135 (Bankr. D.N.J.).

82.     Because neither the Bankruptcy Code nor the relevant case law supports Asarco's Phase I procedure, this Court should deny the Estimation Motion.

### 3.     *Asarco's Filing of Its "Estimation Motion" In the Current Adversary Proceeding Proves Asarco's True Motives*

83.     No legal basis exists for estimation in the context of the pending Alter Ego Adversary Proceeding.  Asarco's filing of its Estimation Motion in both the main case and in the pending Adversary Proceeding, therefore, merely confuses the issues before the Court.  There is no legal justification for "estimating" a pending declaratory judgment Adversary Proceeding, and Asarco's dual filing has no legal effect other than to prove Asarco's intent to nullify the pending Adversary Proceeding.

### 4.     *Asarco Has No Emergency Justifying Depriving the Subsidiary Committee of Its Rights to a Fair Trial of the Alter Ego Theories*

84.     That Asarco would propose, negotiate, execute, and ultimately submit the

Stipulation to the Bankruptcy Court for approval, all the while knowing that its Estimation Motion would be filed a mere four days after the Motion to Approve the Stipulation, is baffling.  Notwithstanding Asarco's statements to the contrary, there is no compelling reason to nullify the pending Adversary Proceeding in favor of the hasty and truncated Phase I procedures.  Asarco has no plan awaiting imminent confirmation with attendant pressing deadlines.  *See, e.g., In re Ralph Lauren Womenswear, Inc.*, 197 B.R. 771, 773 (Bankr. S.D.N.Y. 1996) (approving estimation motion "[b]ecause there [was] inadequate time to liquidate his claim before the scheduled confirmation hearing").  In fact, Asarco does not even have a plan on file, nor to the Subsidiary Committee's knowledge has Asarco been negotiating the terms of a proposed plan with the various parties in interest in this case.  Many important issues must be addressed prior to Asarco's proposing a confirmable plan in addition to the pending Alter Ego Adversary Proceeding, such as the resolution of the numerous claims and causes of action against Asarco's corporate parent, Grupo Mexico (which claims have the potential to be extremely lucrative); a new labor contract to replace the current contract which expires in December 2005; and continued improvements and capital investments to reduce Asarco's historically high cost of production.

85.     Because many significant issues remain in Asarco's bankruptcy case, there is simply no emergency justifying a rush to judgment on the vitally important Alter Ego Theories—particularly a rush to judgment designed solely to foreclose Plaintiffs from presenting the full merits of the Alter Ego Theories.  The Court should therefore deny Asarco's Phase I procedure.

**F.     ASARCO'S   PRIOR   REPRESENTATIONS   CONCERNING   THE**

**PENDING ADVERSARY PROCEEDING DISTINGUISH THIS CASE FROM THE COURT'S *GREYHOUND* OPINION**

86.     In *NLRB v. Greyhound Lines, Inc. (In re Eagle Bus Mfg., Inc.)*, 158 B.R. 421 (S.D. Tex. 1993), the United States District Court for the Southern District of Texas affirmed the estimation procedure utilized by this Court in estimating the National Labor Relations Board's ("NLRB") unliquidated and contingent proof of claim.  In *Greyhound*, the Court found that "undue delay" existed under 11 U.S.C. § 502(c) because "a full trial of the NLRB complaint could take approximately 200 days," *id.* at 424; because "a full adjudication of the claims would require several years of litigation, *id.* at 436; and because "Greyhound's reorganization could not be effected without the NLRB's proof of claim being addressed." *Id.*

87.     In the current case, however, Asarco's initiation of the Adversary Proceeding, together with Asarco's representations that the Adversary Proceeding will result in a "***unified and orderly resolution***" of Asarco's collective liability under the Alter Ego Theories that is "essential to the ***efficient administration*** of the Debtors' estates,"[19] clearly indicates that the motivation for the *Greyhound* decision is not present in the current case.

88.     Moreover, *Greyhound* did not involve allegations of inadequate discovery; instead, the parties apparently presented the full merits of their respective arguments.  In the current context, however, the Alter Ego Theories involve complex corporate misconduct ranging over a period of several years.  Indeed, Asarco itself recognized that the Adversary Proceeding may involve several separate and distinct legal theories,

---

[19]     *See* Asarco's original adversary complaint, ¶ 14 (emphasis added).

including alter ego, other theories of corporate disregard, breach of fiduciary duty, etc. These intricate theories each require specific factual discovery and focused legal research, and the Subsidiary Committee simply cannot be expected to present the full merits of each of its highly-technical and complex theories in the summary procedures belatedly engineered by Asarco.

## G.      PROPOSED SOLUTION

89.      The Subsidiary Committee recognizes Asarco's eventual need to obtain a reliable estimate of its asbestos liabilities prior to confirmation.  The typical asbestos estimation proceeding used by bankruptcy courts, which utilizes the debtor's pre-bankruptcy asbestos history and expert projections of present and future liabilities, is the appropriate method for estimating the scope Asarco's asbestos liabilities.  Indeed, this is the very procedure contemplated by Asarco in Phase II of the Estimation Motion.

90.      To cure the substantial due process and other objections set forth above, the Subsidiary Committee and the FCR jointly propose that the Adversary Proceeding and the Phase II estimation proceeding proceed simultaneously.  This proposal would not only give the Subsidiary Committee a full, fair, and meaningful opportunity to factually develop and then present the Alter Ego Theories on their merits, but would also satisfy Asarco's alleged desire for efficiency and expediency.  This course of action also allows Asarco to comply with its contractual obligations undertaken in the Stipulation, and would avoid the lengthy and expensive appeals that would necessarily follow any order approving Asarco's Phase I procedure.

## IV.      CONCLUSION

91.      As the Court is well aware, the Adversary Proceeding will resolve a

pivotal issue; namely, whether the vast number of individuals sickened by Asarco and its asbestos empire are entitled to obtain recompense directly from Asarco.    This determination is crucially important to the Subsidiary Committee and its sickened and injured constituents who had no voice in Asarco's decision, made with full knowledge of the enormous asbestos liabilities asserted against its Subsidiary Debtors, to shut down operations of the Subsidiary Debtors and to transfer away all of the Subsidiary Debtors' assets.

92.    The Subsidiary Committee and the FCR have been diligently working on the complex Amended Complaint that the Stipulation requires be filed in the Adversary Proceeding.   That Amended Complaint involves a substantial number of legal theories asserted by the Subsidiary Committee against Asarco, theories which are vitally important to the Subsidiary Committee's constituencies.    Along with the Amended Complaint, the Subsidiary Committee has also been preparing the substantial discovery requests necessary for the eventual trial of the Adversary Proceeding.

93.    While the Subsidiary Committee recognizes Asarco's desire to "hurry up and reorganize" while copper prices remain at historic prices, that goal cannot come at the expense of the procedural due process rights of the Subsidiary Committee's and the FCR's respective constituencies.   The asbestos claimants' rights to proceed directly against Asarco are far too important to be decided in the summary and cavalier fashion proposed by Asarco.   This Court should enforce the Stipulation and proceed to the "unified and orderly resolution" of the Alter Ego Theories through the Adversary Proceeding, while simultaneously estimating the total dollar amount of potential asbestos liabilities as provided in Asarco's proposed Phase II, with appropriate adjustments in

various dates and deadlines.

WHEREFORE, the Subsidiary Committee respectfully requests that this Court

deny the Estimation Motion and grant the Subsidiary Committee such other and further

relief as appropriate.

Respectfully submitted this 1st day of May 2006.

**STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,**

**A PROFESSIONAL CORPORATION**

By:    */s/ Jacob L. Newton*
    Sander L. Esserman
    State Bar No. 06671500
    Robert T. Brousseau
    State Bar No. 03087500
    Jacob L. Newton
    State Bar No. 24046523
    Fed. I.D. No. 584393

2323 Bryan Street, Suite 2200
Dallas, Texas  75201-2689
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999

**ATTORNEYS FOR THE
OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR THE
SUBSIDIARY DEBTORS**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 1st day of May 2006, a true and correct copy of the foregoing was transmitted via ECF and/or United States First Class Mail, postage prepaid, to the parties on the Debtors' Limited Service List and on those parties identified below:

John H. Tate, II
Debra L. Innocenti
**Oppenheimer, Blend, Harrison & Tate, Inc.**
711 Navarro Street, Suite 600
San Antonio, Texas 78205
Email: JTate@obht.com
DInnocenti@obht.com

**ATTORNEYS FOR FUTURE CLAIMS
REPRESENTATIVE FOR THE
SUBSIDIARY DEBTORS**

Judge Robert C. Pate
802 American Bank Plaza
Corpus Christi, TX  78475
Email: judgepate@swbell.net

**FUTURE CLAIMS REPRESENTATIVE**

Shelby A. Jordan
Jordan, Hyden, Womble & Culbreth, PC
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, Texas 78471
Email: sjordan@jhwclaw.com

**COUNSEL FOR DEBTORS**

Jack L. Kinzie
James R. Prince
Romina L. Mulloy
Baker Botts LLP
2001 Ross Avenue
Dallas, Texas 75201-2980
Email: jack.kinzie@bakerbotts.com
jim.prince@bakerbotts.com
romina.mulloy@bakerbotts.com

**COUNSEL FOR DEBTORS**

Paul M. Singer
Reed Smith LLP
435 Sixth Ave.
Pittsburgh, Pennsylvania 15219
Facsimile: 412-288-3114
*Email*:  p.singer@reedsmith.com


**COUNSEL TO THE ASARCO
CREDITORS' COMMITTEE**

> _/s/ Jacob L.  Newton_
> Jacob L. Newton