UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

|  |  |  |
|---|---|---|
| In re: | ) ) | CASE NO. 05-21207 |
| ASARCO LLC, *et al.*, | ) ) | Chapter 11 |
| Debtors. | ) ) ) | Jointly Administered |

**RESPONSE OF AD HOC COMMITTEE OF ASARCO NOTEHOLDERS
TO ASARCO LLC'S MOTION TO ESTIMATE DERIVATIVE ASBESTOS
LIABILITIES AND FOR ENTRY OF CASE MANAGEMENT ORDER
ESTABLISHING PROCEDURES FOR SUCH ESTIMATION [DOCKET NO. 1887]**

The Ad Hoc Committee of ASARCO Noteholders (the "Ad Hoc Committee"),[1] by its undersigned counsel, hereby submits this response in support of ASARCO LLC's ("ASARCO" or "Debtor") Motion to Estimate Derivative Asbestos Liabilities and for Entry of a Case Management Order Establishing Procedures for Such Estimation (the "Estimation Motion")[2], and respectfully states as follows:

1.  The Ad Hoc Committee represents the largest single group of holders of liquidated, undisputed pre-petition obligations of ASARCO in this case. By contrast, the asbestos claims are contingent, unliquidated and disputed, and attach to ASARCO assets only by virtue of derivative liability theories that are vigorously contested by the Debtor. The Ad Hoc Committee strongly supports the Debtors' Estimation Motion as a legally appropriate, necessary

---

[1]  As of May 1, 2006, the Ad Hoc Committee consisted of eight members holding corporate and industrial revenue bonds issued by ASARCO prior to the petition date in the aggregate principal amount of approximately $120 million. The bonds consist of ASARCO's (i) 7.875% corporate debentures due April 15, 2013; (ii) 8.50% corporate debentures due May 1, 2025; (iii) Nueces River 5.60% Environmental Bonds due April 1, 2018; (iv) Gila County 5.55% Installment Bonds due January 1, 2027; (v) Lewis & Clark County 5.60% Environmental Bonds due January 1, 2027; (vi) Nueces River 5.60% Environmental Bonds due January 1, 2027; and (vii) Lewis & Clark County 5.85% Environmental Bonds due October 1, 2033.

[2]  Capitalized terms used herein but not otherwise defined shall have the meaning ascribed to such terms in the Estimation Motion.

and pragmatic step in formulating a confirmable plan of reorganization that resolves ASARCO's contingent, disputed asbestos liabilities and, among other things, satisfies the claims of noteholders and other valid pre-petition unsecured claims in full. Because we believe that this process is vitally important to resolving these cases, the Ad Hoc Committee requests that it be permitted the opportunity to fully participate in the estimation proceedings, including, if necessary, the possible presentation of expert testimony.[3] The Ad Hoc Committee does not wish to unnecessarily duplicate any efforts of the Debtor or ASARCO's Creditors' Committee in support of the Estimation Motion, but does wish to ensure that a case fully supportive of the issues that underlie the Estimation Motion is put forward. The Ad Hoc Committee must, therefore, reserve its right to participate in the estimation proceedings if it ultimately deems that necessary.

2. We agree with the Debtor that in all likelihood only after it is determined whether ASARCO has any liability for the derivative asbestos claims (Phase 1 of the Estimation Motion) and, if so, a reasonable estimate of the amount of those claims (Phase 2 of the Estimation Motion), can a realistic plan of reorganization be formulated. The Court has already issued an order setting a bar date for asbestos claims (as well as all other pre-petition claims), which is the logical first step in the process of determining the number and basis for the asbestos claims against ASARCO. The next step is that described in the Estimation Motion, which should likewise be ordered by the Court.

3. It makes perfect sense for the issue of ASARCO's alleged derivative liability for asbestos claims to be resolved as a threshold step to an estimation of the value of

---

[3] The Debtor proposes in the Estimation Motion that it, the Committees and the FCR participate in the estimation process, but the Estimation Motion was filed before the Ad Hoc Committee appeared in these cases. The Debtor has represented to us that it welcomes the Ad Hoc Committee's participation in the estimation proceedings.

those claims. Obviously, if ASARCO is not liable for the asbestos claims, litigation concerning the value of those claims will be unnecessary. The Asbestos Subsidiary Committee and the FCR make much of the fact that this Court has approved a stipulation authorizing the Asbestos Subsidiary Committee to pursue an adversary proceeding against ASARCO to determine its derivative liability for asbestos claims, if any, and claims that the existence of that stipulation bars the estimation of that liability. However, that stipulation was entered into and brought to court by the parties well after the Estimation Motion was filed, and the Asbestos Subsidiary Committee was well aware of the Debtor's intent to resolve the derivative liability issues in the manner described in that Motion. Nothing in the stipulation bars this Court from managing the litigation before it and entering a case management order that expedites consideration of the derivative liability issues. Indeed, as a practical matter, the process of estimating the aggregate value of asbestos claims cannot take place in earnest until after September 30, 2006, the asbestos claims bar date, leaving the parties time to concentrate on the derivative issues in the intervening period. Thus, the parties should have sufficient time to prepare for a hearing on the derivative liability issues in August 2006 (or even September 2006), as proposed by the Debtors.

4.     Assuming Phase 2 becomes necessary, the estimation process proposed by the Debtors is a reasonable approach to litigating the valuation issues. The process of determining the amount of ASARCO's asbestos liability will rest on an evaluation of the asbestos claims submitted pursuant to the bar date (including the electronic submissions), in order to obtain an appropriate count of present claims based upon acceptable legal standards for injury, exposure and product identification. Indeed, an accurate count of valid *present* claims is essential for a reasonable estimate of the *future* claims component of ASARCO's liability. Contrary to the assertions of the Asbestos Subsidiary Committee, the estimation process does not

seek to definitively determine the amount of any given claim, and does not deprive any claimant of due process in the ultimate liquidation of those claims. As the Debtor's motion makes quite clear, it simply seeks to estimate the aggregate amount of asbestos liability, if any, so that a reorganization plan can be effectuated which appropriately allocates values to different classes of creditors.

5. Evaluation of the data received through the bar date process is necessary to, among other things, sort out any claims from the estimation process which are not premised upon appropriate medical proof. Perhaps the best example of this issue is Judge Jack's decision in *In re Silica Prods. Liab. Litig.*, 398 F. Supp. 2d 563 (S.D. Tex. 2005) ("*Silica MDL*") (finding that thousands of alleged personal injury claims based upon exposure to silica were premised upon "mass misdiagnoses" caused by faulty, if not fraudulent, X-ray B-readings and mass screenings). In the *Silica MDL* decision, which involved over 10,000 plaintiffs and over 250 defendants that manufactured or distributed silica-containing products, the district court rejected as unreliable the medical proof submitted on behalf of the majority of the plaintiffs. *Id.* at 567. Each plaintiff was required to submit a "Fact Sheet" (similar to the proof of claim ordered by this Court) that set forth, among other things, the medical proof upon which the claim was premised. Although plaintiffs, in the aggregate, listed over 8,000 different doctors as their treating physicians, all of the 9,000 plaintiffs who submitted fact sheets were diagnosed with silicosis by only 12 physicians. *Id.* at 633. These diagnosing physicians, for the most part, were affiliated with several law firms and mobile x-ray screening companies that were participating in a large "scheme."[4] *Id.* at 580, 636.

---

[4] For example, one screening company, N & M, generated the diagnoses for approximately 6,757 of the MDL plaintiffs: "To place this accomplishment in perspective, in just over two years, N & M found four-hundred times

6. Of particular relevance here, at least 6,000 of the MDL plaintiffs previously had asserted asbestos claims. *Id*. at 628. According to the district court,

> [t]he magnitude of this feat becomes evident when one considers that many pulmonologists, pathologists and B-readers go their entire careers without encountering a single patient with both silicosis and asbestosis. Stated differently, a golfer is more likely to hit a hole-in-one than an occupational medicine specialist is to find a single case of both silicosis and asbestosis. N&M parked a van in some parking lots and found over 4,000 such cases.

*Id*. at 603. One expert testified that these dual diagnoses are "stunning and not scientifically plausible." *Id.* at 629. Indeed, citing Dr. Joseph Gitlin's peer-reviewed study in *American Radiology*, published in 2004, the court noted that the "evidence of the unreliability of the B-reads performed for this MDL is matched by evidence of the unreliability of B-reads in asbestos litigation." *Id*. at 629. The court found that "it is apparent that truth and justice had very little to do with these diagnoses - otherwise more effort would have been devoted to ensuring they were accurate. Instead, these diagnoses were driven by neither health nor justice: they were manufactured for money." *Id*. at 635.

7. The estimation process in this case will have to ensure that the amount of ASARCO's liability—if there is any derivative liability—to asbestos claimants is premised only upon legitimate claims and not the type of claims identified by Judge Jack in the *Silica MDL*. Likewise, the estimation process should take into account that the laws of certain significant states for asbestos litigation have recently changed to require proof of actual impairment. In 2004, Ohio enacted a statute that precludes unimpaired claimants from recovering any compensation and also bans evidence generated by mass-screenings. Ohio Rev. Code Ann. §

---

more silicosis cases than the Mayo Clinic (which sees 250,000 patients a year) treated during the same period." *Id*. at 603.

2307.91 (2005) *et seq*. Other states have since followed suit. Georgia passed a law, effective in April 2005, that requires, among other things, a claimant to prove physical impairment resulting from a medical condition for which exposure to asbestos was a substantial contributing factor. Ga. Code Ann. § 51-14 (2005). Florida and Texas also recently passed laws requiring claimants to prove that they are physically impaired before they may proceed with an asbestos-related lawsuit. Fla. St. Ann. § 774.201 (2006) *et seq*.; Tex. Civ. Prac. & Rem. Code Ann. § 90.001 (2005) *et seq*. All of these factors can be considered by this Court and will impact the amount of ASARCO's liability (if any).

8. Finally, the Ad Hoc Committee agrees with the Debtor that estimation is a contested, core bankruptcy proceeding that may and should proceed in the Bankruptcy Court. The pending bankruptcy case of *In re W.R. Grace*, No. 01-01139, U.S. Bankruptcy Court for the District of Delaware, is but one example of a contested asbestos claims estimation that is taking place in the bankruptcy court. The Ad Hoc Committee believes that the legal standards to be applied to the estimation proceeding should be determined by this Court as part of those proceedings. For example, the Debtor states in the Estimation Motion that "all claims must be valued as of the petition date." Estimation Motion, ¶ 14 at 7. Although we agree with that statement, literally read, it is the Ad Hoc Committee's position that future *demands*, as defined in the Bankruptcy Code, 11 U.S.C. § 524(g), should not be valued as of the petition date because they do not exist on the petition date. Indeed, by definition, future demands do not become claims until some time in the future (when latent injury caused by asbestos exposure manifests), and it is therefore improper to value future demands as of a petition date that occurred in the past. These types of legal issues should be briefed and argued to this Court as part of the estimation process.

6

9.  The Ad Hoc Committee recognizes that the time periods proposed in the Debtor's motion are short, and the discovery procedures curtailed. However, there is no real prejudice to asbestos claimants, as the determination of their ultimate claim amount is not prejudiced by this process. Further, the Debtor's motion asserts that the asbestos claimants have had years of discovery and litigation on the derivative liability theories, and therefore its schedule for Phase I would be reasonable in these circumstances. There can be no question that section 502(c) of the Bankruptcy Code is intended to apply to quantify claims and liabilities that are contingent and unliquidated, and resolution of which will unduly delay this reorganization. ASARCO cannot afford the lengthy proceedings that have impacted other chapter 11 debtors in asbestos bankruptcy cases. ASARCO's employees, customers, and legitimate, liquidated creditors should not pay the price in extra costs, delay, and risk of failure of the reorganization because of the asbestos claimants' attempts to veto any treatment of their claims not to their liking.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

10. For the reasons set forth above and in the Estimation Motion, the Ad Hoc Committee respectfully requests that the Debtor's proposed case management order governing the estimation should be approved by this Court, and that the Ad Hoc Committee should be permitted to participate, through briefing, argument and if necessary, the presentation of expert testimony, in the estimation process.

Dated: May 5, 2006
      New York, New York

                                        **STROOCK & STROOCK & LAVAN LLP**

                                        By:/s/ Robin E. Keller
                                             Robin E. Keller (RK-7302)
                                             (admitted *pro hac vice*)
                                             Kenneth Pasquale (KP-6923)
                                             (*pro hac vice* application pending)
                                             180 Maiden Lane
                                             New York, NY 10038-4982
                                             (212) 806-5400
                                             (212) 806-6006 – fax

                                        *Counsel for the Ad Hoc Committee*
                                        *of ASARCO Noteholders*

SSL-DOCS1 1685913v1