IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 05-21207 |
| | § | |
| ASARCO LLC, <u>et al.</u>, | § | Chapter 11 |
| | § | |
| Debtors. | § | Jointly Administered |

MOTION FOR LEAVE TO APPEAL FROM
ORDER AUTHORIZING PROSECUTION OF DERIVATIVE ACTION
<u>AGAINST DIRECTORS AND OFFICERS ON BEHALF OF THE ESTATE</u>

Upon the Notice of Appeal, dated August 20, 2007, Americas Mining Corporation ("<u>AMC</u>") and ASARCO Incorporated (the "<u>Parent</u>", and together with AMC, the "<u>Appellants</u>") move (the "<u>Motion</u>") before the United States District Court for the Southern District of Texas (the "<u>District Court</u>") for entry of an order pursuant to 28 U.S.C. § 158(a) and Rule 8003 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), each solely to the extent applicable, granting leave to appeal from the Stipulation And Order Authorizing Prosecution of Action Against Directors and Officers on Behalf of the Estate (Docket No. 5480), dated August 8, 2007, as amended and replaced by the Corrected Stipulation and Order Authorizing Prosecution of Action Against Directors and Officers on Behalf of the Estate (Docket No. 5583), approved by the United States Bankruptcy Court for the Southern District of Texas (the "<u>Bankruptcy Court</u>") on August 20, 2007 and effective retroactively to August

8, 2007 (the "Order").  The Order granted the Official Committee of Unsecured Creditors of ASARCO LLC (the "Committee") derivative standing to pursue claims and causes of action against certain former directors and officers (the "Directors and Officers") of ASARCO LLC ("ASARCO").

Pursuant to Bankruptcy Rule 8003(a)(4), a copy of the Order is attached to this Motion as Exhibit A.  Should the District Court believe that it would be necessary or helpful, the Appellants respectfully request a hearing on the matter on a date and time to be determined by the District Court.

## PRELIMINARY STATEMENT

The Bankruptcy Court erred as a matter of law by granting the Committee derivative standing to pursue claims against the Directors and Officers without making the findings required by Fifth Circuit precedent that the underlying claims were colorable or that the Debtors unjustifiably refused to bring the claims.  Therefore, the Appellants seek leave to appeal the Order before the District Court pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8003.  As set forth herein, the Appellants' Motion should be granted because the Order raises a controlling issue of law, substantial precedent indicates error, and an immediate appeal will likely resolve the Derivative Adversary Proceeding (as defined herein) by leading to an

immediate dismissal of all claims and causes of action against the Directors and Officers.

## STATEMENT OF FACTS NECESSARY TO AN
## UNDERSTANDING OF QUESTIONS PRESENTED BY APPEAL

On April 11, 2005, several of the wholly owned direct and indirect subsidiaries of ASARCO filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court.  On August 9, 2005, (the "Petition Date"), ASARCO filed its voluntary petition for relief.  Subsequently, certain other affiliates of ASARCO filed voluntary petitions for relief.  ASARCO and all of the other debtors in these jointly-administered cases are hereinafter referred to as the "Debtors."

The Debtors remain in possession of their property and are operating their businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors (the "Committee") was appointed in ASARCO's case.  Another committee was appointed for the Subsidiary Debtors (the "Subsidiary Committee") and Judge Robert C. Pate was appointed the Future Claims Representative of the Subsidiary Debtors (the "FCR").  No trustee or examiner has been appointed in any of the Debtors' chapter 11 cases.

Pursuant to section 546(a) of the Bankruptcy Code, all avoidance actions must be commenced prior to the two-year anniversary of the date an entity filed its bankruptcy petition.

3

Pursuant to section 108(a) of the Bankruptcy Code, all other types of actions must be commenced by the later of (i) the applicable non-bankruptcy limitations period and (ii) two years from the petition date.

For ASARCO, the two-year anniversary fell on August 9, 2007.  ASARCO and Southern Peru Holdings, LLC presently have pending an adversary proceeding against AMC, alleging a course of conduct of stripping valuable assets from ASARCO, and asserting various causes of action and theories of recovery. This adversary proceeding was transferred to the United States District Court for the Southern District of Texas, as ASARCO LLC & Southern Peru Holdings, LLC v. Americas Mining Corporation (S.D. Tex. Case No. 07-018) (the "AMC Adversary Proceeding").[1] ASARCO did not commence suit against any of the Directors and Officers individually.

On August 6, 2007, just three days before the limitations period expired, the Committee filed an Emergency Motion for Authority to Assert Causes of Action on Behalf of the Estate (Docket No. 5449) (the "Emergency Motion"; copy attached as Exhibit B).  The Committee stated that because "ASARCO has elected not to pursue the claims [against the Directors and Officers]," it should be granted derivative standing to bring

---

[1]     AMC strongly contests every allegation made in the AMC Adversary Proceeding.

the actions.  <u>See</u> Emergency Motion at ¶2.  Nowhere in the
Emergency Motion did the Committee explain why ASARCO was not
pursuing the causes of action, nor did the Emergency Motion meet
the applicable standard for granting derivative standing to a
creditors' committee, nor did it explain why the Committee
waited until just three days before the limitations period
expired to seek derivative standing.

On August 8, 2007, the Bankruptcy Court held oral
argument on the Emergency Motion.[2]  The Appellants pointed out to
the Bankruptcy Court that the Committee presented no case as to
whether the claims it sought to pursue derivatively were
colorable, nor whether the Debtors unjustifiably refused to
pursue action against the Directors and Officers.  The Committee
presented no evidence, either by affidavit or by live witness,
to support the relief requested in the Emergency Motion.  For
that reason, the Bankruptcy Court specifically declined to find
that the claims against the Directors and Officers were

---

[2]      As of the date of this filing, the transcript of the August 8,
2007, oral argument is not available from the Bankruptcy Court.
The Appellants will provide a copy of the transcript as soon as
it becomes available.

colorable, but nonetheless entered the Order granting derivative standing to the Committee.[3]

On August 8, 2007, the Committee filed a complaint commencing an adversary proceeding, pursuant to its purported derivative standing, against the Directors and Officers (Bankr. S.D. Tex. Case No. 07-02077)(the "Derivative Adversary Proceeding").[4]

On August 15, 2007, the Bankruptcy Court entered a Comprehensive Discovery, Mediation and Scheduling Order (Docket

---

[3]   The Bankruptcy Court interlineated the original Order to specify that it was not presented with evidence that the claims were colorable. See Exhibit C. On August 20, 2007, the Court entered a corrected Order, in the form attached as Exhibit A, also deleting the phrase "The Action and the claims asserted therein are colorable" in decretal paragraph 2.

[4]   A comparison of the allegations in the AMC Adversary Proceeding and the Derivative Adversary Proceeding demonstrates that the two actions are largely duplicative. For example, the complaint filed in the Derivative Adversary Proceeding (the "D&O Complaint"), copy attached as Exhibit D, alleges that the board liquidated certain subsidiaries which were a consistent source of revenue for ASARCO. See D&O Complaint at ¶¶ 36-38. The same allegations appear in the complaint filed in the AMC Adversary Proceeding, as amended May 4, 2007 (the "AMC Complaint"), copy attached as Exhibit E, at ¶¶ 20-21. Other examples of overlap include: sale of key mining equipment and assets (D&O Complaint at ¶¶ 39-40; AMC Complaint at ¶¶ 28 & 66); monetization of insurance policies (D&O Complaint at ¶¶ 41-45; AMC Complaint at ¶¶ 29-30), redemption of ASARCO bonds held by insiders (D&O Complaint at ¶¶ 46-51; AMC Complaint at ¶ 32); sale of shares of Southern Peru Copper Company (D&O Complaint at ¶¶ 52-125; AMC Complaint at ¶¶ 34-65); ASARCO's failure to meet its capital calls from Montana Resources, Inc. which diluted its partnership share (D&O Complaint at ¶¶ 126-149; AMC Complaint at ¶ 66); settlement with asbestos plaintiffs' firm law Baron & Budd in order to prevent a fraudulent transfer challenge (D&O Complaint at ¶¶ 150-152; AMC Complaint at ¶ 66); and a salary freeze negatively impacting retention of key personnel (D&O Complaint at ¶¶ 158-159; AMC Complaint at ¶ 66).

No. 2 Case No. 07-02077) setting forth procedures related to the Derivative Adversary Proceeding.

### STATEMENT OF ISSUE PRESENTED ON APPEAL

Did the Bankruptcy Court err, as a matter of law, by granting derivative standing to the Committee to pursue causes of action against the Directors and Officers without first finding that the underlying claims were colorable or that the Debtors unjustifiably refused to bring the claims?

### STANDING TO APPEAL

The Appellants, parties in interest in the underlying bankruptcy cases of ASARCO and the other Debtors, have standing to appeal the Order because the Appellants are persons aggrieved by the Order. See Rohm & Hass Tex., Inc. v. Ortiz Bros. Insulation, Inc., 32 F.3d 205, 210 n. 18 (5th Cir. 1994) ("person aggrieved" has standing to pursue appeal). More specifically, the Appellants have standing because the Order diminishes their property, increases their burdens, and impairs their rights. See Cajun Elec. Power Coop. v. Central La. Elec. Co. (In re Cajun Elec. Power Coop.), 69 F.3d 746, 749 (5th Cir.), withdrawn in part, 74 F.3d 599 (5th Cir. 1995) (person is aggrieved by order that diminishes its property, increases its burdens or impairs its rights); see also Bayoud v. Med. Ctr. Hosp. (In re American Dev. Int'l. Corp.), 188 B.R. 925, 932 (N.D. Tex. 1995) (same).

## STATEMENT OF RELIEF SOUGHT

The Appellants request entry of an order granting them leave to appeal immediately from the Order.

## STANDARD OF REVIEW

The Fifth Circuit has ruled that a decision to allow a committee to pursue causes of action on behalf of the estate is an interlocutory order as it does not "end[] the litigation on the merits and leave[] nothing for the court to do but execute the judgment". In re Moody, 825 F.2d 81, 85 (5th Cir. 1987).[5]

District courts have discretion to hear appeals from interlocutory orders of the bankruptcy courts pursuant to 28 U.S.C. § 158(a)(3).[6] While the United States Court of Appeals for the Fifth Circuit has not expressly adopted criteria for determining whether to grant leave to appeal under 28 U.S.C. § 158(a)(3), it recognizes that most lower courts have adopted the standard applied under 28 U.S.C. § 1292(b) (interlocutory appeals to courts of appeals) for interlocutory appeals from bankruptcy court orders. Ichinose v. Homer Nat'l Bank, 946 F.2d 1169, 1177 (5th Cir. 1991)(affirming district court's grant of an interlocutory appeal).

---

[5]    If this Court nonetheless should determine that the Order is a final order, the Appellants have a right to an immediate appeal of the Order pursuant to 28 U.S.C. § 158 (a)(1).

[6]    The district courts of the United States shall have jurisdiction to hear appeals ". . .(3) with leave of the court, from other interlocutory orders and decrees."  28 U.S.C. § 158(a)(3).

8

To be immediately appealable under 28 U.S.C. § 158(a)(3), an interlocutory order of the bankruptcy court must: (1) involve a controlling issue of law; (2) present a question upon which there is substantial ground for difference of opinion; and (3) be one from which an immediate appeal of the order would materially advance the ultimate termination of the litigation.  Ichinose, 946 F.2d at 1177.  Under this standard, other courts have granted leave to appeal interlocutory orders granting derivative standing.  See In re Sandenhill, Inc., 304 B.R. 692 (E.D. Pa. 2004) (granting leave to pursue interlocutory appeal from bankruptcy court order granting derivative standing to unsecured creditor to pursue avoidance action on behalf of chapter 7 estate).

## ARGUMENT

The question presented by the appeal from the Order is whether the Bankruptcy Court erred as a matter of law in granting derivative standing to the Committee while specifically declining to find that the underlying claims are "colorable" and that the Debtors unjustifiably refused to pursue the claims.  As explained in greater detail below, this issue raises a controlling question of law.  Moreover, the Order contradicts prevailing Fifth Circuit authority.  Finally, a reversal of the Order on appeal would likely terminate the litigation against the Directors and Officers, thus preserving valuable resources.

A. **Appeal Involves Controlling Question of Law**

For purposes of 28 U.S.C. § 1292(b), "An order is said to involve a controlling question of law if, on appeal, a determination that the decision contained error would lead to reversal."  In re Sandenhill, Inc., 304 B.R. at 694.

In the Fifth Circuit, in order to grant a creditors' committee derivative standing, the court must determine that (i) the estate's claims are colorable; (ii) the debtor-in-possession unjustifiably refused to pursue such claims; and (iii) the committee received leave from the bankruptcy court to pursue such claims.  La. World Exposition v. Fed. Ins. Co., 858 F.2d 233, 244-53 (5th Cir. 1988)(hereinafter "La. World Exposition I").  The bankruptcy court holds a "vital gatekeeper role in determining whether derivative standing is appropriate in a given case."  Scott v. Nat'l Century Fin. Enters. (In re Baltimore Emergency Serv. II, Corp.), 432 F.3d 557, 562 (4th Cir. 2005)(holding creditors lacked standing to bring derivative action).  Before granting derivative standing, the court must specifically determine if the action is "likely to benefit the reorganization estate"; a "court's inquiries will involve in the first instance not only a determination of probabilities of legal success and financial recovery in event of success, but also a determination as to whether it would be preferable to appoint a trustee in lieu of the creditors' committee to bring

suit . . . " <u>In re STN Enters.</u>, 779 F.2d 901, 905 (2d Cir. 1985) (quoting in <u>La. World Exposition v. Fed. Ins. Co.</u>, 864 F.2d 1147, 1153 (5th Cir. 1989)("<u>La. World Exposition II</u>")) (holding that district court must properly consider whether allegations of creditors' committee demonstrate that debtor in possession unjustifiably failed to initiate suit).

Other courts hold that a creditors' committee may acquire standing to pursue the debtor's claims only if "the court finds that suit by the committee is (a) in the best interest of the bankruptcy estate, and (b) is 'necessary and beneficial' to the fair and efficient resolution of the bankruptcy proceedings." <u>Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)</u>, 262 F.3d 96, 100 (2d Cir. 2001) (holding committee lacked standing to bring suit); <u>see also</u> <u>Sunbeam Corp. v. Morgan Stanley & Co. (In re Sunbeam Corp.)</u>, 284 B.R. 355 (Bankr. S.D.N.Y. 2002) (dismissing derivative claims brought by creditors' committee because it "has not met the standards set forth in <u>STN</u> and <u>Commodore</u>"). "Even in the absence of objections . . . before finding a committee has standing, courts must ensure that claims brought by a creditors' committee are colorable and of benefit to the estate." <u>Official Comm. of Unsecured Creditors of Grand Eagle Cos. v. Asea Brown Boveri, Inc.</u>, 313 B.R. 219, 225 (N.D. Ohio 2004) (holding that committee

did not assert colorable fraudulent conveyance claim against pre-petition lenders).

The Bankruptcy Court entered the Order granting derivative standing to the Committee while not specifically finding that the claims were colorable.  Moreover, the Committee never asserted, and the Order does not find, that the Debtors unjustifiably refused to pursue such claims.  The Bankruptcy Court was not presented with and therefore did not perform the cost benefit analysis required by La. World Exposition I, and entered the Order without consideration of whether derivative standing was in the best interest of the estate, or whether it was necessary and beneficial to the fair and efficient resolution of the bankruptcy proceedings.

Because the Order contradicts Fifth Circuit precedent, the proposed appeal indisputably presents a "controlling question of law" that would completely resolve the Derivative Adversary Proceeding against the Directors and Officers.[7]

---

[7]   As noted above, the statue of limitation to bring the underlying action against the Directors and Officers expired on August 9, 2007, two years after ASARCO's Petition Date.  If the Appellants prevail in this appeal and obtain reversal of the Order, the Committee will lack standing to pursue the Derivative Adversary Proceeding.  As ASARCO failed to commence an action of its own within the limitations period, it cannot now commence suit against the Directors and Officers.  Therefore a successful appeal would result in a complete dismissal of the underlying litigation against the Directors and Officers.

**B.   Substantial Ground Exists for Difference
      of Opinion on Controlling Question of Law**

In determining whether substantial grounds exist for difference of opinion on the legal issues presented for review, "a court faced with a motion for certification must analyze the strength of the arguments in opposition to the challenged ruling to decide whether the issue is truly one on which there is a substantial ground for dispute." APCC Servs., Inc. v. ESH AT&T Corp., 297 F. Supp. 2d 101, 107 (D.D.C. 2003) (certifying interlocutory appeal of ruling regarding standing of plaintiffs to bring action).

As discussed above, the Fifth Circuit, in La. World Exposition I, laid out a framework to determine the steps a court must follow in order to determine if derivative standing should be granted.  However, the Bankruptcy Court misapplied this framework and entered the Order over the objection of the Appellants.  The Appellants assert that the value of such a framework is rendered meaningless if a bankruptcy court is free to grant derivative standing without making the factual findings mandated by the Fifth Circuit.  As such, there is substantial ground for a difference of opinion concerning the controlling question of law.

**C.    Immediate Appeal from Order Will Materially
        Advance Ultimate Termination of Litigation**

The third and final requirement of 28 U.S.C. § 1292(b)
is that an immediate appeal will materially advance the ultimate
termination of the litigation.  Ichinose, 946 F.2d at 1177.
Courts have placed particular emphasis on the third requirement,
holding that leave to pursue an interlocutory appeal "should be
liberally granted where it can help the expeditious resolution
of the case," particularly where resolution of the disputed
issue "may avoid the expense and delay of a trial."  In re Lady
Madonna Indus., Inc., 76 B.R. 281, 286 (S.D.N.Y. 1987) (internal
quotations omitted) (granting interlocutory appeal); APCC
Services, Inc., 297 F. Supp. 2d at 109 ("In the event that it is
ultimately found that this Court lacks jurisdiction to litigate
these cases, it would be far better for all concerned, including
plaintiffs, to have these matters resolved now, as opposed to
sometime in the distant future").  Thus, the court in Sandenhill
granted leave to appeal immediately from an order granting
derivative standing because reversal of the order "would clearly
lead to the termination of the avoidance action entirely."  In
re Sandenhill, Inc., 304 B.R. at 694.

Pursuing the Derivative Adversary Proceeding to
judgment would be a terrible waste of time, money and judicial
resources.  As noted by the court in Lemery v. Ford Motor Co.,
"It would pain the Court to see both attorneys of this

14

excellence and well motivated Parties proceed to judgment after considerable expense and delay, only to discover that the judgment must be overturned on appeal because the federal judiciary lacks subject matter jurisdiction". Lemery v. Ford Motor Co., 244 F. Supp. 2d 720, 728 (S.D. Tex. 2002) (certifying issue for interlocutory appeal).

An immediate appeal from the Order will materially advance the litigation because it would bring the Derivative Adversary Proceeding to a close.  Should the grant of derivative standing to the Committee be found to have been erroneously granted (as the Appellants contend), the Committee would not have standing to pursue the Derivative Adversary Proceeding. ASARCO is already barred from filing a similar complaint because the two-year statute of limitations on the underlying action expired no later than August 9, 2007.[8]  There is no question that, if the Appellants prevail, an immediate appeal will materially advance the ultimate termination of the litigation against the Directors and Officers.  Termination at this stage would promote judicial economy and save the parties, particularly the Debtors' estate, time and money.

If the Order is not now reviewed, however, the Derivative Adversary Proceeding will go forward in the

---

[8]     However, dismissal of the Derivative Adversary Proceeding would not preclude the Debtors from pursuing the extant cause of action against AMC in the AMC Adversary Proceeding.

Bankruptcy Court without an appellate determination as to its propriety.  Such a course would waste judicial resources and force the parties into unnecessary and costly litigation which should not have been permitted to go forward in the first place.

[Remainder of page intentionally blank.]

## CONCLUSION

For the reasons set forth above, the Appellants respectfully request that the District Court (i) grant leave to appeal from the Order immediately; and (ii) grant such further relief as is just and equitable.

Dated:  August 20, 2007

**HAYNES AND BOONE, LLP**

By:  /s/Charles A. Beckham, Jr.
Charles A. Beckham, Jr.
State Bar No. 02016600
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
(713) 547-2000

and

**MILBANK, TWEED, HADLEY & M$^C$CLOY LLP**

Luc A. Despins (LD 5143)
Robert Winter (RW 9937)
1 Chase Manhattan Plaza
New York, New York 10005
(212) 530-5000

Counsel for ASARCO Incorporated
and Americas Mining Corporation