IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Case No.  05-21207 |
| | § | |
| ASARCO LLC, *et al.*, | § | Chapter 11 |
| | § | |
| Debtors. | § | (Jointly Administered) |

DEBTORS' MOTION TO (I) APPROVE THE ADEQUACY OF THE
DISCLOSURE STATEMENT IN SUPPORT OF DEBTORS' JOINT PLAN
OF REORGANIZATION AND (II) ESTABLISH CERTAIN
PROCEDURES RELATED TO CONFIRMATION

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  THE DEBTORS WILL REQUEST THAT YOU FILE AND SERVE YOUR RESPONSE NO LATER THAN SEPTEMBER 15, 2008.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.  REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**A HEARING ON THIS MOTION WILL BE HELD ON SEPTEMBER 23, 2008 AT 9:00 A.M. BEFORE THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE, 1133 NORTH SHORELINE BLVD., SECOND FLOOR, CORPUS CHRISTI, TEXAS 78401.**

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

ASARCO LLC and certain of its related companies[1] (each a "Debtor" and collectively,

the "Debtors" or "ASARCO") respectfully request that this Court enter an order (the "Disclosure

---

[1] The related debtor entities include Lac d'Amiante du Québec Ltée; Lake Asbestos of Quebec, Ltd.; LAQ Canada, Ltd.; CAPCO Pipe Company, Inc.; Cement Asbestos Products Company; Encycle, Inc.; ASARCO Consulting, Inc.; ASARCO Master, Inc.; ASARCO Oil and Gas Company, Inc.; Bridgeview Management Company, Inc.; ALC, Inc.; American Smelting and Refining Company; AR Mexican Explorations, Inc.; Government Gulch Mining Company, Limited; Covington Land Company; Southern Peru Holdings, LLC; AR Sacaton, LLC; ASARCO Exploration Company, Inc.; Green Hill Cleveland Mining Company; Alta Mining and Development Company; Blackhawk Mining and Development Company, Limited; Peru Mining Exploration and Development Company; Tulipan Company, Inc.; and Wyoming Mining and Milling Company.

1

Order"): (a) approving the adequacy of the "*Disclosure Statement in Support of the Debtors'*
*Joint Plan of Reorganization Under Chapter 11 of the United States Bankruptcy Code*"
(including all exhibits and supplements, the "Disclosure Statement"); (b) establishing a record
date for purposes of voting on any plans of reorganization filed on or before August 26, 2008 in
these Reorganization Cases[2]; (c) establishing procedures for solicitation of the Debtors' Plan,
and notice procedures related thereto; (d) establishing procedures for the tabulation of votes on
the Debtors' Plan (together with the procedures for solicitation, the "Solicitation and Tabulation
Procedures," substantially similar to those attached as Exhibit A) and approving the form of
ballots to be used in connection therewith, substantially similar to those attached as Exhibit B,
and instructions for voting on the Debtors' Plan, the "Voting Instructions" attached as Exhibit C;
(e) approving, except as to Allottees (defined below), the form and manner of notice and
objection procedures relating to confirmation, substantially similar to the proposed forms of
notice attached hereto as Exhibits D and E; and (f) approving, as to Allottees, the form and
manner of notice and objection procedures relating to confirmation, substantially similar to the
proposed forms of notice attached hereto as Exhibits F and G.  In support of this motion (the
"Motion"), the Debtors respectfully state as follows.

## INTRODUCTION

1.      On July 2, 2008, the Court entered an order extending and modifying the Debtors'
exclusive period within which to file a plan of reorganization to allow the Parent to a file a plan.
On July 1, 2008, the Court advised that confirmation of the Debtors' plan and the Grupo Plan
(defined below) would be dual-tracked to avoid a race to confirmation.

---

[2] All capitalized terms used, but not defined herein, shall have the meaning attributed to such terms in the
Solicitation and Tabulation Procedures attached hereto as Exhibit A.  Capitalized terms not defined in the Motion or
the Solicitation and Tabulation Procedures shall have the meaning provided in the "Uniform Glossary of Defined
Terms for Plan Documents" that is attached to the Disclosure Statement as Exhibit A, the Bankruptcy Code, or the
Bankruptcy Rules.

2.      On July 31, 2008, the Court entered its "*Order Establishing Certain Procedures Related to the Disclosure Statement Hearing*" (the "Disclosure Statement Procedures Order") (Docket No. 8562).   The Disclosure Statement Procedures Order establishes, *inter alia*, **September 23, 2008 at 9:00 a.m. (prevailing Central Time)** as the hearing date on approval of any disclosure statements filed on or before August 26, 2008 in these Reorganization Cases and **November 17, 2008 at 9:00 a.m. (prevailing Central Time)[3]** as the date of commencement of the Confirmation Hearing for any plans related to such approved disclosure statements.

3.      On July 31, 2008, the Debtors filed their Plan (the "Debtors' Plan") and Disclosure Statement (Docket Nos. 8568 and 8569).   Prior to filing the Debtors' Plan and Disclosure Statement, the Debtors sought and obtained a chapter 11 plan sponsor to provide capital to fund the Debtors' Plan.   In a nutshell, the Debtors' Plan proposes to sell substantially all of the Debtors' tangible and intangible operating assets to Sterlite (USA), Inc. (the "Plan Sponsor").   Under the Debtors' Plan, the majority of the proceeds from the sale, together with Distributable Cash, shall be paid to holders of Allowed Claims, and ASARCO's liabilities, including its environmental and asbestos-related liabilities, are addressed in a comprehensive and complete manner.   Specifically, with respect to asbestos-related liabilities, the Debtors' Plan establishes an Asbestos Trust to, among other things, liquidate, resolve, pay, and satisfy all Asbestos Personal Injury Claims and Demands and receive, preserve, hold, manage, and maximize Asbestos Trust Assets for use in paying and satisfying Allowed Asbestos Personal Injury Claims and Demands in accordance with the terms of the Asbestos Trust Agreement and the Asbestos Personal Injury Settlement Trust Distribution Procedures.

---

[3] The Court originally set this hearing for 2:00 p.m., but recently informed the parties it would be moved to 9:00 a.m.

4.      On August 26, 2008, the Parent file its chapter 11 plan of reorganization for ASARCO LLC (Docket No. 8864) (the "Grupo Plan").  The Grupo Plan provides that all classes of Claims and Interests are unimpaired and not entitled to vote.  *See* Grupo Plan, Article V.  The Parent has informed the Debtors that it will not solicit votes for the Grupo Plan, and therefore ballots are unnecessary.   The Debtors disagree and reserve their right to argue that the Parent should have solicited votes from creditors because creditors are impaired under the Grupo Plan.

5.      By this Motion, the Debtors seek approval of the adequacy of their Disclosure Statement and the various procedures, notices, and solicitation documents designed by the Debtors to govern and facilitate the solicitation of votes to accept or reject the Debtors' Plan. Further, the Debtors seek approval of ballots which will allow creditors to specify which plan of reorganization they prefer, the Debtors' Plan or the Grupo Plan (collectively, the "Plans").  The Motion also seeks to establish solicitation procedures specific to holders of Class 4 Bondholder Claims, Class 5 Unsecured Asbestos Personal Injury Claims, and Class 7, Class 8, and Class 9 Environmental Claims.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(L).  Venue of this proceeding and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

7.      The statutory bases for the relief requested herein are sections 105(a), 501, 502, 1123(a), 1125, 1126 and 1128 of the Bankruptcy Code and Rules 2002, 3003, 3017, 3018 and 3020 of the Bankruptcy Rules.

## BACKGROUND

8.      On August 9, 2005, ASARCO filed its voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  Affiliated chapter 11 debtors were already operating in

bankruptcy at that time and since that date, several of ASARCO's other wholly-owned direct or indirect subsidiaries have filed similar petitions for relief in this Court.  The Debtors' cases are collectively referred to as the "Reorganization Cases."  The Reorganization Cases are being jointly administered as *In re ASARCO LLC, et al.*, Case No. 05-21207.

9.      The Debtors in the Reorganization Cases remain in possession of their property and are operating their businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Court appointed The Honorable Robert C. Pate as the FCR for the Asbestos Subsidiary Cases on April 19, 2005, an official committee of unsecured creditors for the Asbestos Subsidiary Debtors on April 27, 2005, and an official committee of unsecured creditors in the ASARCO case on August 25, 2005.  No trustee has been appointed in any of the Reorganization Cases.  On April 16, 2008, the Court appointed Michael Dennis Warner as the examiner (the "Examiner") in the Reorganization Cases.  The scope of the Examiner's authority and duties are set forth in the "*Order Establishing the Scope of the Examiner Pursuant to 11 U.S.C. § 1104(b)*" entered on April 8, 2008.  On August 15, 2008, the Court appointed the Honorable Robert C. Pate as the FCR for ASARCO LLC.  On August 26, 2008, the Court appointed the Honorable Robert C. Pate as the FCR for the rest of ASARCO's affiliated debtors and also directed the U.S. Trustee to appoint an official committee of asbestos claimants for all the Debtors.

## RELIEF REQUESTED

I.      *Approving the Disclosure Statement*

10.     Section 1125 of the Bankruptcy Code requires that a disclosure statement be approved by the court as containing "adequate information" prior to the debtor's solicitation of acceptances or rejections of a reorganization plan.   11 U.S.C. § 1125(b).   "Adequate information" is defined in the Bankruptcy Code as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1).  Thus, a debtor's disclosure statement must, as a whole, provide information that is "reasonably practicable" to permit an "informed judgment" by creditors and interest holders, if applicable, to vote on a plan of reorganization.  *See In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994); *see also In re Copy Crafters Quickprint, Inc.*, 92 B.R. 973, 979 (Bankr. N.D.N.Y. 1998) (adequacy of a disclosure statement "is to be determined on a case-specific basis under a flexible standard that can promote the chapter 11 policy of fair settlement through a negotiation process between informed interested parties.").

11.     A court has broad discretion in determining the adequacy of the information contained in a disclosure statement.  *See In re Texas Extrusion Corp.*, 844 F.2d 1142, 1157 (5th Cir. 1988); *see also In re Dakota Rail, Inc.*, 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (court has "wide discretion to determine . . . whether a disclosure statement contains information, without burdensome, unnecessary and cumbersome detail").  This grant of discretion was intended to facilitate the effective reorganization of a debtor in the broad range of businesses in which chapter 11 debtors engage, and the broad range of circumstances in respect of debtors and their chapter 11 cases.  *See* H.R. REP. NO. 595, 95TH CONG., 1ST SESS. 408-09 (1977) ("Precisely what constitutes adequate information in any particular instance will develop on a case-by-base basis.  *Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation* . . . In chapter 11 cases, there is frequently great uncertainty. *Therefore, the need for flexibility is greatest*." (emphasis added)).     Accordingly, the

determination of whether a disclosure statement contains adequate information is to be made on a case by case basis, focusing on the unique facts and circumstances of each case.

12.     The Disclosure Statement in this case is the product of extensive review and negotiations by and between the Debtors and the Creditor Constituents.  The Debtors and other parties to the negotiations also sought the assistance and input of their respective financial and legal advisors.  The Debtors, in accordance with the Plan Sponsor PSA, consulted with and considered in good faith the views of the Plan Sponsor in regards to the Disclosure Statement.

13.     The Debtors believe that the Disclosure Statement contains ample and adequate information to allow parties in interest to make informed judgments about, and, to the extent appropriate, vote on the Debtors' Plan.  The Disclosure Statement sets forth (a) the history of the Debtors, their businesses, and their Reorganization Cases; (b) information concerning the Debtors' Plan and alternatives to the Debtors' Plan; (c) information for the holders of Claims and Interests regarding their rights under the Debtors' Plan; (d) information to assist the holders of Claims and Interests in impaired Classes in making an informed judgment regarding whether they should vote to accept or reject the Debtors' Plan; and (e) information to assist the Court in determining whether the Debtors' Plan complies with the provisions of chapter 11 of the Bankruptcy Code and should be confirmed.

14.     The Disclosure Statement also enumerates a variety of risk factors relating to the implementation of the Debtors' Plan that parties in interest entitled to vote should consider, including the federal income tax consequences of the Debtors' Plan.  Further, the Disclosure Statement explains that Confirmation of the Debtors' Plan is not likely to be followed by the liquidation or need for further reorganization of the Debtors upon their emergence from the Reorganization Cases.

15.     The Debtors will continue to review the Disclosure Statement, and, based upon their ongoing review and further developments in the Reorganization Cases, may make additional changes and disclosures prior to the hearing on the Disclosure Statement (the "Disclosure Statement Hearing").  Any such additional disclosures would only increase the amount of information being provided to holders of Claims and Interests, and consequently, will only enhance the adequacy of information in the Disclosure Statement.

16.     Accordingly, the Debtors respectfully submit that the Disclosure Statement contains adequate information within the meaning of section 1125 of the Bankruptcy Code and as interpreted in relevant case law.  Therefore, the Debtors request that the Court enter an order approving the adequacy of the Disclosure Statement and authorizing its solicitation pursuant to the procedures set forth herein in the Solicitation and Tabulation Procedures.

## II.     *Establishing a Voting Record Date*

17.     Bankruptcy Rule 3017(d) provides that upon approval of a disclosure statement, except to the extent that the court orders otherwise with respect to one or more unimpaired classes of creditors or equity security holders, the debtors shall mail to all creditors and equity security holders, and the United States Trustee, a copy of the plan, the disclosure statement, notice of the voting deadline and such other information as the court may direct.  For the purpose of soliciting votes in connection with the confirmation of a plan, "creditors and equity security holders shall include holders of stocks, bonds, debentures, notes and other securities of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  FED. R. BANKR. P. 3017(d).  Bankruptcy Rule 3018(a) contains a similar provision regarding determination of the record date for voting purposes.

18.     In accordance with the Bankruptcy Rules, the voting record date for claims is typically the date a court enters an order approving a disclosure statement.  *See* FED. R. BANKR. P. 3017(d).  Therefore, the Debtors request that the Court establish the date the order approving the Disclosure Statement is entered as the voting record date (the "Voting Record Date") for determining: (a) the holders of Claims and Interests that are entitled to receive the Solicitation Package pursuant to the solicitation procedures described herein and (b) holders of Claims and Interests entitled to vote to accept or reject the Debtors' Plan.

**III.     *Establishing Solicitation and Notice Procedures***

19.     To solicit acceptances or rejections of the Debtors' Plan effectively and consistently with the requirements of the Bankruptcy Code, the Bankruptcy Rules, and due process, the Debtors seek approval of the solicitation procedures described herein and set forth in the proposed Solicitation and Tabulation Procedures for the Debtors' Plan, attached as Exhibit A. The Solicitation and Tabulation Procedures will allow the Debtors to distribute solicitation materials and tabulate acceptances of the Debtors' Plan effectively.  Furthermore, the Solicitation and Tabulation Procedures, in conjunction with the Debtors' proposed Confirmation Hearing Notice (as defined herein), provide adequate notice to all holders of Claims and Interests regarding the solicitation process as well as the relevant dates associated with the Solicitation and Tabulation Procedures.  The Solicitation and Tabulation Procedures are thus appropriate as they address the particular circumstances of the Reorganization Cases, and therefore should be approved.

**A.     Approval of Debtors' Form of Ballots and Master Ballots**

20.     The Debtors propose approval of their form of Ballots and Master Ballots, which will allow holders of Claims and Interests to vote to accept or reject the Debtors' Plan.  In

accordance with section 1129(c), each Ballot will allow holders of Claims and Interests to rank their preference between the Debtors' Plan and the Grupo Plan.

21.    Bankruptcy Rule 3017(d) requires the Debtors to mail a form of ballot that substantially conforms to Official Form No. 14 only to "creditors and equity security holders entitled to vote on the plan."  FED. R. BANKR. P. 3017(d).  The Debtors will distribute to all holders of Claims and Interests entitled to vote on the Debtors' Plan Ballots or Master Ballots substantially in the forms annexed hereto in Exhibit B-1 through Exhibit B-28 (Exhibits B-1 through B-20 are referred to as the "Ballots."  Exhibits B-21 through B-27 (the "Class 4 Master Ballots") and B-28 (the "Class 5 Master Ballot") are collectively referred to as the "Master Ballots").  The forms for the Ballots and Master Ballots are based on Official Form No. 14 but have been modified to address the particular aspects of these Reorganization Cases and to include certain additional information that the Debtors believe is relevant and appropriate with respect to each Class entitled to vote.  The proposed voting procedures, set forth below in detail and in the Solicitation and Tabulation Procedures, specify when a Ballot or Master Ballot will be used for solicitation of the Bondholder Claims and the Asbestos Personal Injury Claims.

22.    By this Motion, the Debtors seek approval of the form of Ballots and Master Ballots described above and authority to distribute customized Ballots or Master Ballots to all holders of Claims and Interests.  The Debtors also request approval of the Voting Instructions attached as Exhibit C.  The Voting Instructions will be attached to all Ballots and Master Ballots, except that Ballots for Class 5 Unsecured Asbestos Personal Injury Claims contain voting instructions tailored to Asbestos Claimants, and therefore the Solicitation Packages that will be sent to individual holders of Class 5 Unsecured Asbestos Personal Injury Claims will not receive the Voting Instructions.

**B.** <u>**Approval of Form of Solicitation Package and Distribution Thereof**</u>

23.    Bankruptcy Rule 3017(d) sets forth the materials that must be provided to holders of claims and equity interests for purposes of soliciting their votes and providing adequate notice of the hearing on confirmation of a plan of reorganization.  Except as otherwise provided herein or as may be proposed by the Debtors prior to the Disclosure Statement Hearing, the Debtors propose that, after entry of the Disclosure Order and except with respect to the procedures specifically provided for certain Bondholder Claimants and Asbestos Personal Injury Claimants as described below, the following materials (the "<u>Solicitation Package</u>") be distributed to those parties entitled to vote on the Debtors' Plan:

(a)    any order approving a disclosure statement of the Debtors or the Parent in these Reorganization Cases;

(b)    any disclosure statements approved by the Court (and any plan of reorganization attached to such approved disclosure statement);

(c)    the Solicitation and Tabulation Procedures;

(d)    the appropriate form of Ballot and/or Master Ballot with the Voting Instructions;

(e)    notice of the Confirmation Hearing and related matters (the "<u>Confirmation Hearing Notice</u>"), setting forth the date fixed for submitting acceptances and rejections to the Debtors' Plan, the date fixed for filing objections to Confirmation of the Debtors' Plan and the Grupo Plan, and the date, time and place of the Confirmation Hearing;

(f)    a pre-addressed, postage pre-paid return envelope; and

(g)    such other materials as the Court may direct.

24.    The Debtors anticipate commencing the solicitation period, through their Balloting Agent, as soon as possible after approval of the Disclosure Statement and intend to mail all Solicitation Packages on or before a date that is no more than five days after the Court enters the Disclosure Order (the "<u>Solicitation Date</u>").  The Debtors submit that distribution of the Solicitation Packages on or before the Solicitation Date will provide the requisite materials to

holders of Claims and Interests entitled to vote on the Debtors' Plan in compliance with Bankruptcy Rules 3017(d) and 2002(b).  *See* FED. R. BANKR. P. 3017(d) (after approval of disclosure statement, the debtors must transmit the plan, the approved disclosure statement, notice of the time within which acceptances and rejections of such plan may be filed, and any other information that the court may direct to creditors and equity security holders); FED. R. BANKR. P. 2002(b) (requiring twenty-five days notice by mail of the time for filing objections to the confirmation of a plan of reorganization).

        **C.**        <u>**Distribution of Solicitation Packages**</u>

25.      Each holder (or each holder's counsel with respect to Asbestos Personal Injury Claimants) of an Allowed Claim or Interest as determined under the procedures set forth in Section IV. below will receive a Solicitation Package.

26.      With respect to scheduled Claims (other than Bondholder Claimants and Asbestos Personal Injury Claimants, or scheduled Claims as to which there are corresponding timely-filed Proofs of Claim), the Balloting Agent will cause a Solicitation Package to be served upon each holder of a Claim listed in the Schedules as of the Voting Record Date.

27.      With respect to filed Claims (other than Proofs of Claim filed by Asbestos Personal Injury Claimants), the Balloting Agent will cause a Solicitation Package to be served upon each holder of a Claim represented by a Proof of Claim timely filed against the Debtors that has not been withdrawn or disallowed or expunged by order of the Court entered on or before the Voting Record Date.  If the relevant Proof of Claim does not indicate the appropriate classification of a Claim, and such classification cannot be determined from the Schedules, such Claim shall be treated as an Unsecured Claim for voting purposes only.

28.      With respect to holders of record (except as provided below), the Solicitation Package will be served upon the Entity that holds a Claim as of the Voting Record Date.  The

Debtors will have no obligation to cause a Solicitation Package to be served upon any subsequent holder of such Claim (as evidenced by any notice of assignment of such Claim entered on the Court's docket or that only becomes effective after the Voting Record Date).

29.     With respect to Bondholder Claimants and Asbestos Personal Injury Claimants, the Balloting Agent will cause a Solicitation Package to be served in the manner described in Section III.D. below.

30.     With respect to holders of Interests, the Balloting Agent will cause a Solicitation Package to be served upon the holder of record of the Interests in the Debtors.

31.     With respect to other parties, the Balloting Agent will cause a Solicitation Package (excluding Ballots and/or Master Ballots) to be served upon the U.S. Trustee, the attorneys for the Committees, the FCR, and each Entity that filed a notice of appearance and request for service under Bankruptcy Rule 2002 with the Court and has not withdrawn such notice of appearance and request for service as of the Voting Record Date.

D.     **Special Procedures for Distribution of Solicitation Packages to Bondholder and Asbestos Personal Injury Claimants**

*Bondholder Claimants*

32.     With respect to the Bondholder Claimants in Class 4 of the Debtors' Plan, a Nominee may hold the relevant Claims rather than the Beneficial Holders[4] themselves.  To tabulate votes for those parties who are Beneficial Holders in Class 4, the Balloting Agent will deliver Solicitation Packages to Beneficial Holders and Nominees of record as of the Voting Record Date.  Additionally, the Balloting Agent will distribute Class 4 Master Ballots to Nominees.  The Debtors, through the Balloting Agent, will instruct Beneficial Holders to mail

---

[4] A Beneficial Holder is a beneficial owner of a Bondholder Claim, whose Claim has not been satisfied prior to the Voting Record Date pursuant to Court order or otherwise, as reflected in the records maintained by Nominees holding through The Depository Trust Company, or other relevant security depository, and/or one of the Indenture Trustees, as of the Voting Record Date.

their Ballots to the Nominee in sufficient time for Nominees to cast votes to accept or reject the Debtors' Plan and to make elections (if any) on behalf of, and in accordance with, the Ballots cast by the Beneficial Holders through the Class 4 Master Ballots. The Balloting Agent will then tabulate the Class 4 Master Ballots.

### *Asbestos Personal Injury Claimants*

33.     The Solicitation and Tabulation Procedures establish special procedures for the distribution of Solicitation Packages (including Ballots and Master Ballots) with respect to, and the voting of, Asbestos Personal Injury Claims in Class 5 of the Debtors' Plan who are represented by counsel. To the extent that an Asbestos Personal Injury Claimant is unrepresented by counsel, such Claimant will be not be subject to the solicitation and voting procedures in this Section III.D.

34.     More than 102,000 Asbestos Personal Injury Claimants filed asbestos-related Claims against the Debtors. Unless the solicitation of the Asbestos Personal Injury Claimants is carefully controlled and limited, the process will consume significant resources of the Debtors' Estates, which could otherwise be used to pay claims. Accordingly, the Debtors seek approval of solicitation and voting procedures in these Reorganization Cases that are designed to address the unique circumstances of a mass-tort bankruptcy case and that are consistent with the voting procedures adopted by courts in other mass tort bankruptcy cases.

35.     The Debtors propose to serve a single Solicitation Package upon each attorney of record ("Asbestos Counsel") on behalf of all of the Asbestos Personal Injury Claimants represented by such attorney. The Debtors will also provide the Asbestos Counsel with additional Solicitation Packages upon written request. Solicitation Packages will not be served upon the individual Asbestos Personal Injury Claimants except to the extent (a) an individual holder of an Asbestos Personal Injury Claim requests a Solicitation Package or (b) an attorney

advises the Balloting Agent within five business days after the mailing of the Solicitation Package of the names and addresses of individual Asbestos Personal Injury Claimants who should receive their own Solicitation Packages.

36.    Asbestos Counsel will be required to certify that he or she is authorized to vote on behalf of each individual Asbestos Personal Injury Claimant for whom he or she casts a vote.  As part of the Solicitation Package, Asbestos Counsel will be provided with a Class 5 Master Ballot on which he or she can record the votes of the Claimants on whose behalf such Asbestos Counsel is entitled to vote.  Asbestos Counsel will also be required to prepare a summary sheet that will become an exhibit to the Master Ballot listing each individual Asbestos Personal Injury Claimant that the Asbestos Counsel represents by name, the Claimant's social security number, the Debtor that the Claim is asserted against, the Claimant's date of birth, the Claimant's date of death, if applicable, the Claimant's disease type, the plaintiff's law firm, the Claimant's vote on the Debtors' Plan, and the Claimant's preference between the Debtors' Plan and the Grupo Plan.

37.    The Debtors submit that the procedures outlined in this Section III.D. have been implemented in other mass tort bankruptcy cases.  *See, e.g., In re Owens Corning, et al.*, Case No. 00-03837 (Bankr. Del. Dec. 2, 2003); *In re Babcock & Wilcox*, Case No. 00-10992 (Bankr. E.D. La. May 1, 2003).

### E.    Returned Solicitation Packages or Notices

38.    The Debtors anticipate that some of the Solicitation Packages and Confirmation Hearing Notices (as defined below) that are sent to holders of Claims or Interests may be returned by the United States Postal Service or other carrier as undeliverable.  The Debtors seek the Court's approval for a departure from the strict notice rule, excusing the Debtors from re-mailing Solicitation Packages and Confirmation Hearing Notices to those Entities whose addresses differ from the addresses in the claims register or the Debtors' records as of the Voting

Record Date unless such Entities provide the Debtors, by written notice to the Balloting Agent with accurate addresses not less than fifteen Business Days prior to the Solicitation Date at:

ASARCO Balloting
c/o AlixPartners, LLP
2100 McKinney Avenue, Suite 800
Dallas, TX 75201

If a holder of a Claim or an Interest has changed such holder's mailing address after the Petition Date, the burden should be on the holder of Claims or Interests, not the Debtors, to advise the Balloting Agent of the new address.

### IV.   *Establishing Voting and Tabulation Procedures*

#### A.   <u>Establishing the Voting Deadline</u>

39.     Bankruptcy Rule 3017(c) provides that the court shall fix a time within which the holders of claims and interests may accept or reject a plan.  Accordingly, the Debtors propose that to be counted as a vote to accept or reject the Debtors' Plan, each Ballot or Master Ballot must be properly executed, completed and delivered to the Balloting Agent, by (a) first-class mail, (b) overnight courier, or (c) personal delivery, so that it is received by the Balloting Agent no later than 4:00 p.m. (prevailing Central Time) on **October 27, 2008** (the "<u>Voting Deadline</u>"), which is at least 28 days after the Solicitation Date.  The Debtors propose that a certification of Ballots be filed on or before the date of the Confirmation Hearing.

40.     The Debtors submit that this solicitation period is sufficient to allow holders of impaired Claims and Interests to make an informed decision regarding whether to accept or reject the Debtors' Plan.

#### B.   <u>Approval of Procedures for Temporary Allowance of Certain Claims Solely for Voting Purposes</u>

41.     Certain creditors, including any creditor whose Claim is the subject of a pending objection, shall not be entitled to vote on the Debtors' Plan and shall not be counted in

determining whether the requirements of section 1126(e) of the Bankruptcy Code have been met, unless such Claim has been temporarily Allowed for voting purposes by order of this Court pursuant to Bankruptcy Rule 3018(a) entered on or before the Voting Deadline.  Bankruptcy Rule 3018(a) provides that "the court after notice and hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan."  FED. R. BANKR. P. 3018(a).

42.    If any holder of Claim or Interest seeks to challenge the allowance or the allowed amount of its Claim or Interest for voting purposes in accordance with the above rules, the Debtors request that the Court direct such holder of Claim or Interest to serve on the Debtors and file with the Court a motion for an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing such Claim or Interest in a different amount for purposes of voting to accept or reject the Debtors' Plan on or before the tenth day after the later of (a) service of the Confirmation Hearing Notice or (b) service of notice of an objection, if any, to such Claim or Interest (the "Rule 3018(a) Motion Deadline").  The Debtors further propose, in accordance with Bankruptcy Rule 3018, that as to any creditor filing such a motion, such holder's Ballot should not be counted in an amount other than that provided by the Solicitation and Tabulation Procedures unless temporarily Allowed by the Court in another amount for voting purposes.

*Allowance of Claims (except Asbestos Personal Injury Claims in Class 5 and Environmental Claims in Classes 7, 8, and 9 of the Debtors' Plan) and Interests for Voting Purposes*

43.    The Debtors propose that, solely for the purpose of voting on the Debtors' Plan and not for the purpose of allowance of or distribution on account of a Claim or Interest, and without prejudice to the rights of any party in interest in any other context, each Claim or Interest, other than those Claims in Classes 5, 7, 8, and 9 of the Debtors' Plan, shall be temporarily Allowed in an amount equal to (a) the undisputed, liquidated and noncontingent

amount of such Claim as set forth in the Debtors' Schedules; or (b) if a timely Proof of Claim has been filed and has not been objected to on or before the Voting Record Date, the amount of such Claim as set forth in the Proof of Claim; *provided, however*, that the following tabulation rules shall be used to determine the amount of Claim or Interest associated with each holder's vote other than Claims in Classes 5, 7, 8, and 9 of the Debtors' Plan:

(a)     If a Claim or Interest is expressly deemed Allowed in accordance with the Debtors' Plan, such Claim or Interest is Allowed for voting purposes only in the deemed amount set forth in the Debtors' Plan;

(b)     If a Claim has been Allowed by the Court, in whole or in part, such Claim is Allowed for voting purposes in the amount Allowed by the Court;

(c)     If a Claim has been amended, the last filed Claim shall govern (unless it has been objected to);

(d)     If a Claim has been estimated or otherwise Allowed for voting purposes by order of the Court, such Claim is temporarily Allowed in the amount so estimated or Allowed by the Court for voting purposes only, and not for purposes of allowance or distribution;

(e)     If a Claim has been estimated for distribution purposes by order of this Court, the estimated amount of such Claim shall govern;

(f)     Pursuant to Bankruptcy Rule 3003(c)(2), with respect to all Persons or Entities listed on the Debtors' Schedules as having a Claim or a portion of a Claim which is disputed, unliquidated, or contingent or which is scheduled as zero or unknown in amount and such Persons or Entities did not timely file a Proof of Claim, such Person or Entity shall not be entitled to vote such Claim or portion of a Claim unless it is temporarily Allowed for voting purposes by the Court;

(g)     A creditor with duplicate Claims in a Class against multiple Debtors will receive only one Solicitation Package, and will only have one vote for such Claims by Class and will be permitted to only submit one Ballot for purposes of such Claims;

(h)     A creditor with an unliquidated Claim will not be permitted to vote unless such Claim is temporarily Allowed for voting purposes by the Court;

(i)     A creditor with a liquidated Claim will be permitted to vote unless such Claim is the subject of an objection; and

(j)     A creditor whose Claim is the subject of an objection will receive a Solicitation Package, but will not be entitled to vote unless such Claim is temporarily Allowed by the Court for voting purposes or the objection to such Claim is only to a portion of such Claim, in which case the creditor will be permitted to vote the portion of the Claim that is not subject to objection.

### *Allowance of Unsecured Asbestos Personal Injury Claims in Class 5 of the Debtors' Plan for Voting Purposes*

44.     The Debtors also seek approval of certain procedures for estimating the over 102,000 Asbestos Personal Injury Claims for purposes of voting on the Debtors' Plan. Estimating each individual Asbestos Personal Injury Claim would likely take years and be prohibitively expensive.

45.     To avoid such a result, the Debtors propose that the amount of each Asbestos Personal Injury Claim be estimated solely for voting purposes at either $1.00, or alternatively, using the Average Value for each disease category (or, for holders of Asbestos Personal Injury Claims asserting an Other Asbestos Disease – Cash Discount Payment (Level I) asbestos-related disease, the Scheduled Value) as set forth in the Asbestos Personal Injury Settlement Trust Distribution Procedures (the "Asbestos TDP").  To the extent that such claims are estimated for voting purposes using the Asbestos TDP values, pursuant to the proposed Solicitation and Tabulation Procedures, each holder of an Asbestos Personal Injury Claim will be required to indicate on his or her Ballot (or Master Ballot, if counsel votes on behalf of holders of Asbestos Personal Injury Claims) whether the asbestos-related disease the Claimant is suffering from is Mesothelioma (Level VIII), Lung Cancer 1 (Level VII), Lung Cancer 2 (Level VI), Other Cancer (Level V), Severe Asbestosis (Level IV), Asbestosis/Pleural Disease (Level III), Asbestosis/Pleural Disease (Level II), or Other Asbestos Disease – Cash Discount Payment (Level I).  Under the Asbestos TDP, each of the foregoing disease categories is assigned an Average Value or, in the case of Other Asbestos Disease – Cash Discount Payment (Level I), a

Scheduled Value.  If the amount of each Class 5 Unsecured Asbestos Personal Injury Claim is estimated using the Asbestos TDP values, solely for the purpose of tabulating the votes cast by such holders, the Balloting Agent will assign each Claimant in Class 5A (Asbestos Premises Liability Claims) and Class 5B (Unsecured Asbestos Personal Injury Claims other than Asbestos Premises Liability Claims) a Claim amount equal to such Average Value or, for holders of Claims asserting an Other Asbestos Disease – Cash Discount Payment (Level I) asbestos-related disease, such Scheduled Value, based on the disease designated on the Ballot or Master Ballot by the Claimant or his or her counsel, respectively.

46.     Alternatively, if the amount of each Class 5 Unsecured Asbestos Personal Injury Claim is estimated at $1.00, solely for the purpose of tabulating the votes cast by such holders, the Balloting Agent will assign each Claimant in Class 5A (Asbestos Premises Liability Claims) and Class 5B (Unsecured Asbestos Personal Injury Claims other than Asbestos Premises Liability Claims) a Claim amount of $1.00.  Whether each Class 5 Unsecured Asbestos Personal Injury Claim will be estimated solely for voting purposes at $1.00 or whether such claims will be estimated for voting purposes using the Asbestos TDP values will be determined prior to solicitation of the Debtors' Plan.  The Solicitation and Tabulation Procedures explicitly provide that the designation of a disease category on a Ballot or Master Ballot will be used for voting purposes only.

### *Allowance of Class 7, Class 8, and Class 9 Environmental Claims for Voting Purposes*

47.     There are three classes of Environmental Claims under the Debtors' Plan: Classes 7, 8, and 9.  Environmental Claims in Class 7 were settled prior to the filing of the Debtors' Plan. Environmental Claims in Classes 8 and 9 will be allowed pursuant to settlement agreements attached to the Debtors' Plan as Exhibit 12.  The Debtors request that holders of Environmental

Claims in Classes 7 and 8 be allowed to vote in the amounts listed in Exhibit 11 of the Debtors' Plan.  Although holders of Environmental Claims in Class 9 receive $750 million, interests in the Litigation Trust, and a supplemental distribution (if any) under the Debtors' Plan, the Debtors request that these holders be allowed to vote only the $750 million component of their treatment in Class 9.  The Debtors believe that this procedure is fair and reasonable.  *See In re Armstrong*, 294 B.R. 344, 354 (B.A.P. 10th Cir. 2003) (affirming the bankruptcy court's temporary allowance of settled claim for voting purposes even though settlement amount was contingent on entry of confirmation order approving the settlement).

### C.   <u>Approval of Procedures for Vote Tabulation</u>

48.   Section 1126(c) of the Bankruptcy Code governs the voting requirements for the acceptance of a plan of reorganization by a class of impaired claims, and provides in relevant part that:

> [a] class of claims has accepted the plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

### *Ballot Tabulation for Bondholder Claims*

49.   The Debtors further propose that the following additional procedures, as well as the procedures in paragraph 43, shall apply to the Bondholder Claims in Class 4 of the Debtors' Plan:

(a)   the Voting Record Date is the date for determining the identity of Beneficial Holders eligible to vote on the Debtors' Plan;

(b)   the Balloting Agent shall distribute or cause to be distributed the appropriate number of copies of Ballots to each Beneficial Holder holding a Bondholder Claim as of the Voting Record Date, including Nominees

identified by the Balloting Agent as Entities through which Beneficial Holders hold their Claims;

(c)    any Nominee which is a holder of record with respect to a Bondholder Claim shall vote on behalf of Beneficial Holders of such Allowed Claims by (i) immediately distributing the Solicitation Package, including Ballots it receives from the Balloting Agent to all such Beneficial Holders, (ii) promptly collecting Ballots from such Beneficial Holders that cast votes on the Debtors' Plan, (iii) compiling and validating the votes and other relevant information of all such Beneficial Holders on the Class 4 Master Ballot, and (iv) transmitting the Class 4 Master Ballot to the Balloting Agent by the Voting Deadline.  As an alternative, Nominees have the option of prevalidating a Beneficial Holder's Ballot so that such Ballot can be returned by the Beneficial Holder to the Balloting Agent;

(d)    any Beneficial Holder holding an Allowed Claim as a record holder in its own name should vote on the Debtors' Plan by completing and signing a Ballot and returning it directly to the Balloting Agent so that it is received on or before the Voting Deadline;

(e)    the Indenture Trustees (unless otherwise empowered to do so) will not be entitled to vote on behalf of Beneficial Holders; rather, each such Beneficial Holder must submit his or her own Ballot in accordance with the Beneficial Holder voting procedures;

(f)    any Beneficial Holder holding Allowed Claims in "street name" through a Nominee must vote on the Debtors' Plan through such Nominee, unless such Beneficial Holder receives a prevalidated Ballot from the Nominee, by completing and signing the Ballot and returning such Ballot to the appropriate Nominee as promptly as possible and in sufficient time to allow such Nominee to process the Ballot and return the Class 4 Master Ballot to the Balloting Agent prior to the Voting Deadline.  Any Beneficial Holder holding an Allowed Claim in "street name" who submits a Ballot to the Debtors, Debtors' counsel or the Balloting Agent, will not be counted for purposes of accepting or rejecting the Debtors' Plan, unless the Ballot is prevalidated by the Nominee and timely sent to the Balloting Agent;

(g)    any Ballot returned to a Nominee by a Beneficial Holder will not be counted for purposes of accepting or rejecting the Debtors' Plan until such Nominee properly completes and delivers to the Balloting Agent a Class 4 Master Ballot that reflects the vote of such Beneficial Holders by the Voting Deadline, or otherwise validates the Ballot in a manner acceptable to the Balloting Agent.  Nominees shall retain all Ballots returned by Beneficial Holders for a period of one year after the Effective Date of the Debtors' Plan;

(h)     if a Beneficial Holder holds an Allowed Claim through more than one Nominee or through multiple accounts, such Beneficial Holder may receive more than one Ballot, and each such Beneficial Holder should execute a separate Ballot for each block of Allowed Claims that it holds through any Nominee and must return each such Ballot to the appropriate Nominee; and

(i)     if a Beneficial Holder holds a portion of its Allowed Claim through a Nominee or Nominees and another portion in its own name as the record Holder, such Beneficial Holder should follow the procedures described in this paragraph 49 to vote the portion held in its own name and the procedures described in paragraph 50 below to vote the portion held by the Nominee(s).

50.     Moreover, the Debtors propose the following procedures with respect to the tabulation of Class 4 Master Ballots and Ballots cast by Nominees and Beneficial Holders in Class 4:

(a)     votes cast by Beneficial Holders through Nominees will be applied to the positions held by such Nominees in Class 4 as of the Voting Record Date, as evidenced by the record and depository listings.  Votes submitted by a Nominee, whether pursuant to a Class 4 Master Ballot or prevalidated Ballot, will not be counted in excess of the amount of such Allowed Claims held by such Nominee as of the Voting Record Date;

(b)     if conflicting votes or "over-votes" are submitted by a Nominee, whether pursuant to a Class 4 Master Ballot or prevalidated Ballot, the Debtors will attempt to reconcile discrepancies with the Nominees;

(c)     if over-votes on a Class 4 Master Ballot or prevalidated Ballot are not reconciled prior to the preparation of the vote certification, the Balloting Agent will apply the votes to accept and to reject the Debtors' Plan in the same proportion as the votes to accept and reject the Debtors' Plan submitted on the Class 4 Master Ballot or prevalidated Ballots that contained the overvote, but only to the extent of the Nominee's position in Class 4;

(d)     for purposes of tabulating votes, each Nominee or Beneficial Holder will be deemed to have voted the principal amount of its Allowed Claims in Class 4, although any principal amounts may be adjusted by the Balloting Agent to reflect Allowed Claim amounts actually voted, including prepetition interest; and

(e)     a single Nominee may complete and deliver to the Balloting Agent multiple Class 4 Master Ballots.  Votes reflected on multiple Class 4

Master Ballots will be counted, except to the extent they are duplicative of other Class 4 Master Ballots.  If two or more Class 4 Master Ballots are inconsistent, the latest dated Class 4 Master Ballot received prior to the Voting Deadline will, to the extent of such inconsistency, supersede and revoke any prior Class 4 Master Ballot.

*General Tabulation Procedures*

51.     The Debtors propose to use the following procedures and standard assumptions in tabulating the Ballots and Master Ballots, as set forth in the Solicitation and Tabulation Procedures:

(a)     A Ballot or Master Ballot will not be counted if any of the following applies to such Ballot or Master Ballot:

i.      The holder submitting the Ballot or Master Ballot is not entitled to vote, pursuant to the Solicitation and Tabulation Procedures;

ii.     The Ballot or Master Ballot is not actually received by the Balloting Agent by the Voting Deadline, unless the Debtors, in their sole discretion, shall have granted in writing an extension of the Voting Deadline with respect to such Ballot or Master Ballot;

iii.    The Ballot or Master Ballot is returned to the Balloting Agent, indicating acceptance or rejection of the Debtors' Plan, but is unsigned;

iv.     The Ballot or Master Ballot is postmarked prior to the Voting Deadline but is received after the Voting Deadline;

v.      The Ballot or Master Ballot is illegible or contains insufficient information to permit the identification of the holder of the Claim or Interest;

vi.     The Ballot or Master Ballot is transmitted to the Balloting Agent by telecopy, facsimile, or other electronic means, including electronic mail, unless the Debtors, in their sole discretion, have agreed in writing to accept a particular Ballot or Master Ballot delivered by such means;

vii.    The Ballot or Master Ballot is submitted in a form that is not the appropriate Ballot or Master Ballot for such holder; or

viii.   A Ballot or Master Ballot is not completed.

24

(b) The Balloting Agent will date and time-stamp all Ballots and Master Ballots when received. The Balloting Agent, shall retain the original Ballots and Master Ballots and an electronic copy of the same for a period of one year after the Effective Date of the Debtors' Plan, unless otherwise ordered by the Court;

(c) The Debtors will file with the Court, within five days prior to the Confirmation Hearing, a voting report (the "<u>Voting Report</u>"). The Voting Report shall, among other things, delineate every Ballot or Master Ballot that does not conform to the voting instructions or that contains any form of irregularity including, but not limited to, those Ballots that are late or (in whole or in material part) illegible, unidentifiable, lacking signatures or lacking necessary information, received via telecopy, facsimile, or other electronic means including electronic mail unless otherwise permitted herein, or damaged ("<u>Irregular Ballots</u>"). The Voting Report shall indicate the Debtors' intentions with regard to such Irregular Ballots;

(d) The Balloting Agent may, in its sole and absolute discretion, contact voters to cure any Irregular Ballots; *provided, however*, under no circumstances shall the Balloting Agent have any obligation to contact voters to cure Irregular Ballots;

(e) Any voter that delivers a valid Ballot or Master Ballot may withdraw his, her, or its vote by delivering a written notice of withdrawal to the Balloting Agent before the Voting Deadline. To be valid, the notice of withdrawal must (i) be signed by the party who signed the Ballot or Master Ballot to be withdrawn and (ii) be received by the Balloting Agent before the Voting Deadline. The Debtors may contest the validity of any withdrawals;

(f) If multiple ballots are received from different holders purporting to hold the same Claim or Interest, the latest-dated Ballot or Master Ballot that is received prior to the Voting Deadline will be the Ballot or Master Ballot that is counted;

(g) If multiple Ballots are received from a holder of a Claim or Interest and someone purporting to be his, her, or its attorney or agent, the Ballot or Master Ballot received from the holder of the Claim or Interest will be the Ballot or Master Ballot that is counted, and the vote of the purported attorney or agent will not be counted;

(h) If multiple Ballots or Master Ballots are received from the same holder of a Claim or Interest with respect to the same Claim or Interest prior to the Voting Deadline, the last dated Ballot or Master Ballot timely received will be deemed to reflect that voter's intent and will supersede and revoke any prior Ballot or Master Ballot;

(i)     If multiple Master Ballots are received prior to the Voting Deadline from attorneys representing Asbestos Personal Injury Claimants, and any such Master Ballot contains supplemental votes on the Debtors' Plan, such Master Ballot shall be clearly marked as a "Supplemental Master Ballot" and clearly note the changes to the Master Ballot it supersedes;

(j)     There shall be a rebuttable presumption that any holder of a Claim or Interest who submits a properly completed superseding Ballot or Master Ballot on or before the Voting Deadline has sufficient cause, within the meaning of Bankruptcy Rule 3018(a), to change or withdraw such holder's acceptance or rejection of the Debtors' Plan;

(k)     The holder of a Claim or Interest may not split his, her, or its vote. Accordingly, (i) each holder shall have a single vote for the Debtors' Plan within a particular Class, (ii) the full amount of all such holder's Claims (calculated in accordance with these procedures) within a particular Class shall be deemed to have been voted either to accept or reject the Debtors' Plan, and (iii) any Ballot that partially rejects and partially accepts the Debtors' Plan shall not be counted;

(l)     The holder of a Claim or Interest may indicate a preference between the Debtors' Plan and the Grupo Plan in the appropriate spaces provided in the Ballot or Master Ballot.  If no preference is indicated on the Ballot or Master Ballot, the holder will be presumed not to have a preference between the Plans;

(m)     A Ballot that is completed, but on which the holder of a Claim or Interest did not vote to accept or reject the Debtors' Plan shall not be counted as a vote to accept or reject the Debtors' Plan;

(n)     If a Class of Claims or Interests does not have a holder of an Allowed Claim or Interest or a Claim or Interest temporarily Allowed by the Court as of the date of the Confirmation Hearing, such Class shall be deemed eliminated from the Debtors' Plan for purposes of voting to accept or reject the Debtors' Plan and for purposes of determining acceptance or rejection of the Debtors' Plan pursuant to section 1129(a)(8) of the Bankruptcy Code;

(o)     A Person signing a Ballot or Master Ballot in his, her, or its capacity as a trustee, executor, administrator, guardian, attorney in fact, officer of a corporation, or otherwise acting in a fiduciary or representative capacity must indicate such capacity when signing and, if required or requested by the applicable Asbestos Counsel, the Balloting Agent, the Debtors, or the Court, must submit proper evidence to the requesting party to so act on behalf of such holder or Beneficial Holder;

(p)     The Debtors, subject to contrary order of the Court, may waive any defects or irregularities as to any particular Ballot or Master Ballot at any time, either before or after the close of voting, and any such waivers will be documented in the Voting Report;

(q)     Neither the Debtors, the Balloting Agent, nor any other Entity, will be under any duty to provide notification of defects or irregularities with respect to delivered Ballots and Master Ballots other than as provided in the Voting Report, nor will any of them incur any liability for failure to provide such notification;

(r)     Unless waived by the Debtors or ordered otherwise by the Court, any defects or irregularities in connection with delivered Ballots and Master Ballots must be cured prior to the Voting Deadline or such Ballots and Master Ballots will not be counted;

(s)     In the event a designation of lack of good faith is requested by a party in interest under section 1126(e) of the Bankruptcy Code, the Court will determine whether any vote to accept or reject the Debtors' Plan cast with respect to that Claim will be counted for purposes of determining whether the Debtors' Plan has been accepted or rejected; and

(t)     Subject to any contrary order of the Court, the Debtors reserve the right to reject any and all Ballots and Master Ballots not in proper form, the acceptance of which, in the opinion of the Debtors, would not be in accordance with the provisions of the Bankruptcy Code or the Bankruptcy Rules; *provided, however*, that any such rejections will be documented in the Voting Report.

52.     Establishing the Solicitation and Tabulation Procedures described above and set forth in the Solicitation and Tabulation Procedures is necessary to avoid any confusion resulting from incomplete or inconsistently executed Ballots or Master Ballots and will simplify the voting and tabulation process.  The Debtors believe that the proposed procedures embody an orderly and logical method for soliciting and tabulating the Ballots of those Entities entitled to vote as is contemplated by the Bankruptcy Code and the Bankruptcy Rules.  Accordingly, the Debtors request that the Court approve such procedures.

### D. <u>Special Procedures Related to Proposed Substantive Consolidation of ASARCO and the Subsidiary Debtors in the Debtors' Plan</u>

53.     The Debtors' Plan provides for substantive consolidation of ASARCO and the Subsidiary Debtors (other than Covington Land Company) into a single consolidated Estate for all purposes associated with Confirmation and consummation of the Debtors' Plan.  If the Court does not approve substantive consolidation, the Debtors' Plan provides for consolidation of the Subsidiary Debtors (except as to Covington Land Company) into ASARCO pursuant to 11 U.S.C. § 1123(a)(5)(C) as an alternative to substantive consolidation.  The Ballots will list the Debtor that the holder's Claim or Interest is filed or scheduled against.  Thus, holders of Claims and Interests will be able to vote on a Debtor-by-Debtor basis should the Debtors elect voluntary consolidation, rather than substantive consolidation, and the Ballots will allow the Debtors to tabulate the votes on a consolidated and non-consolidated basis for the purpose of determining whether the Debtors' Plan satisfies sections 1129(a)(8) and (10) of the Bankruptcy Code.

54.     Assuming the Court approves substantive consolidation, when tabulating voting results, all Ballots and Master Ballots pertaining to the Debtors, other than Covington Land Company, shall be counted as if filed against a single consolidated Estate, and any obligation of any of the Debtors and all guaranties thereof by or enforceable against any other Debtor and any joint and several liability of the Debtors will be treated as a single obligation in the amount of the obligation of the primary obligor.

V.    *Establishing Notice and Objection Procedures Relating to Confirmation*

    A.    **The Relevant Bankruptcy Rules**

    55.    Bankruptcy Rule 3017(c) provides:

> On or before approval of the disclosure statement, the court shall fix a time within
> which the holders of claims and equity interests may accept or reject the plan and
> may fix a date for the hearing on confirmation.

FED. R. BANKR. P. 3017(c).

    56.    Bankruptcy Rule 2002(b) and (d) require not less than twenty-five (25) days'

notice to all creditors and equity security holders of the time fixed for filing objections to, and

the hearing to consider, confirmation of a chapter 11 plan.  FED R. BANKR. P. 2002(b) and (d).

    57.    Bankruptcy Rule 2002(l) permits the Court to "order notice by publication if it

finds that notice by mail is impracticable or that it is desirable to supplement the notice."  FED. R.

BANKR. P. 2002(l).

    58.    Bankruptcy Rule 3030(b)(1) provides that objections to confirmation of a plan

must be filed and served "within a time fixed by the court."  FED. R. BANKR. P. 3020(b)(1).

    B.    **Approval of the Form of Confirmation Hearing Notice**

    59.    The Disclosure Statement Procedures Order establishes **November 17, 2008 at**

**9:00 a.m. (prevailing Central Time)** as the date that the Confirmation Hearing commences.  In

accordance with Bankruptcy Rules 2002(b) and (d) and 3017(d), the Debtors propose to provide

to all holders of Claims and Interests, simultaneously with the distribution of the Solicitation

Packages, a copy of the notice substantially in the form attached hereto as Exhibit D and

incorporated herein by reference (the "Confirmation Hearing Notice") setting forth, among other

things: (a) the time, date, and place for the Confirmation Hearing; (b) the Voting Record Date;

(c) the Voting Deadline; (d) the time fixed for filing objections to Confirmation of either of the

Plans and the manner in which such objections shall be filed (the "Objection Deadline for the

Plans"); and (e) the procedures for temporary allowance of Claims and Interests. Additionally, the Confirmation Hearing Notice shall inform the parties that the Solicitation Package (excluding Ballots) can be obtained by accessing the Balloting Agent's website or by requesting a copy from the Balloting Agent.

### C.    Publication Notices

60.    In addition to the foregoing written notice of the Confirmation Hearing, the Debtors will also publish the Confirmation Hearing Notice (the "Publication Notice") once in a national publication, the *Wall Street Journal,* and once in the following local publications: *Seattle Times*, *Houston Chronicle*, *Chicago Tribune*, *Denver Post*, *San Francisco Chronicle*, *Arizona Republic*, *Tulsa World*, *Albuquerque Journal*, *Star-Ledger*, *The Kansas City Star*, *The News Tribune*, *The Columbus Dispatch*, *Knoxville News-Sentinel*, *The Salt Lake Tribune and Desert News*, *Omaha World Herald*, *The Evansville Courier & Press*, *Hammond Times*, *Arizona Daily Star*, *El Paso Times*, *El Diario*, *Idaho Statesman*, *Corpus Christi Caller Times*, *Amarillo Globe News*, *The Herald*, *Fort Smith Times Record*, *Coeur D' Alene Press*, *The Missoulian*, *Brownsville Herald*, *Register-Mail*, *Helena Independent Record*, *Grove Sun*, *Daily Journal*, *St. Clair News Aegis*, *Leadville Herald Democrat*, *Columbus Daily Advocate*, and *Copper Basin News* on a date not less than twenty-five days before the Confirmation Hearing. Additionally, the Balloting Agent will post the Confirmation Hearing Notice electronically on its website at www.asarcoreorg.com.

61.    In addition, the Debtor will cause another notice tailored to the holders of Asbestos Personal Injury Claims (the "Asbestos Publication Notice" – a copy of which is attached hereto as Exhibit E) to be published once in the weekday edition of the *Wall Street Journal* on a date not less than twenty-five days before the Confirmation Hearing.

62.     By way of this Motion, the Debtors request approval of (a) the Confirmation Hearing Notice and Asbestos Publication Notice and (b) the manner of their respective publications set forth above.

**D.     Establishing Procedures for Objections to the Plans**

63.     The Confirmation Hearing Notice provides, and the Debtors request that the Court direct, that objections to Confirmation of either of the Plans or proposed modifications to either of the Plans, if any, must:

    (a)     be in writing;

    (b)     conform to the Bankruptcy Rules;

    (c)     state the name of the objecting party;

    (d)     identify the nature of Claims or Interests held or asserted by the objecting party against the Debtors' Estates or property;

    (e)     state the basis for the objection and the specific grounds therefore; and

    (f)     be filed with the clerk of the Bankruptcy Court, together with proof of service, and served upon each of the following so as to be received in the offices of each such Persons no later than **October 27, 2008 at 4:00 p.m. (prevailing Central Time)**: (1) Jack L. Kinzie, Judith Ross, James R. Prince, Baker Botts L.L.P., 2001 Ross Avenue, Dallas, Texas 75201-2980; (2) Tony M. Davis, Mary Millwood Gregory, Baker Botts L.L.P., One Shell Plaza, 910 Louisiana, Houston, Texas 77002-4995; (3) Shelby A. Jordan, Jordan, Hyden, Womble, Culbreth, & Holzer, P.C., Suite 900, Bank of America, 500 North Shoreline, Corpus Christi, Texas 78471; (4) Luc A. Despins, Stacey J. Rappaport, Robert A. Winter, Milbank Tweed, Hadley & McCloy LLP, 1 Chase Manhattan Plaza, New York, New York 10005; (5) Charles A. Beckham, Jr., Trey Monsour, Haynes and Boone LLP, 1 Houston Center, 1221 McKinney, Suite 2100, Houston, Texas 77010; (6) Paul M. Singer, Reed Smith LLP, 435 Sixth Avenue, Pittsburg, PA 15219; (7) Derek J. Baker, Reed Smith LLP, 2500 One Liberty Place, Philadelphia, PA 19103; (8) James C. McCarroll, Reed Smith LLP, 599 Lexington Avenue, New York, NY 10022; (9) Sander L. Esserman, Jacob Newton, Stutzman, Bromberg, Esserman & Plifka, 2323 Bryan Street, Suite 2200, Dallas, TX 75201-2689; (10) John H. Tate, II, Raymond W. Battaglia, Debra L. Innocenti, Oppenheimer, Blend, Harrison & Tate, Inc., 711 Navarro, Sixth Floor, San Antonio, TX 78205; (11) David Dain, Alan Tenenbaum, Department of Justice,

Environmental Enforcement Section, 601 D Street NW, Washington, DC 20004 (overnight mail only); (12) Douglas P. Bartner, Solomon Noh, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022; and (13) Richard M. Seltzer, Cohen, Weiss and Simon LLP, 330 West 42nd Street, New York, NY 10025.

64.     The Debtors believe that the proposed timing for filing and service of objections and proposed modifications, if any, will afford the Court, the Debtors, the Parent, and other parties in interest sufficient time to consider the objections and proposed modifications prior to the Confirmation Hearing and expedite the Confirmation Hearing by resolving certain objections prior to the Confirmation Hearing.  The Debtors request that the Court approve this schedule pursuant to Bankruptcy Rule 3020.

**E.     Special Procedures for Distribution of the Debtors' Plan and Related Notices to Allottees related to the Mission Mine Settlement Agreement**

65.     The Debtors' Plan incorporates the Mission Mine Settlement Agreement, executed between the Tohono O'odham Nation, the San Xavier District, the San Xavier Allottees Association, the United States of America, and ASARCO that was approved by the Court on April 9, 2008.  While individual owners or allottees of the land affected by the Mission Mine Settlement Agreement  ("Allottees") are not entitled to vote on the Debtors' Plan, the Debtors are providing the Allottees with copies of the Debtors' Plan, the Disclosure Statement, and a tailored version of the Confirmation Hearing Notice that also contains a brief description of the Mission Mine Settlement Agreement (the "Mission Mine Confirmation Notice" attached hereto as Exhibit F).  These materials will be provided to the Allottees no later than the Solicitation Date and shall provide that any objections to confirmation of the Plans shall conform to the same requirements set out in paragraph 63 above.

66.     In compliance with Exhibit B to the Mission Mine Settlement Agreement, the Debtors will publish the Mission Mine Confirmation Notice in the *Arizona Daily Star*, the

*Tucson Citizen*, the *Green Valley News* and the *Tohono O'odham Runner* on a date not less than twenty-five days before the Confirmation Hearing.  In addition, the Debtors have prepared a notice that will be advertised on the local radio station on the San Xavier Reservation in the native language of the Tohono O'odham Nation on a date not less than twenty-five days before the Confirmation Hearing.  The radio notice is attached hereto as <u>Exhibit G</u>.  The Debtors believe that these notices are in compliance with the Debtors' obligations to advertise confirmation of the Debtors' Plan under the terms of the Mission Mine Settlement Agreement and that they are objectively reasonable.  The Debtors, therefore, seek approval of these notices and the procedure set forth herein.

### F.    <u>Authority to Make Non-Substantive Modifications</u>

67.    The Debtors request authorization to make non-substantive changes to the Disclosure Statement, Debtors' Plan, Ballots, Master Ballots, Confirmation Hearing Notice, Solicitation and Tabulation Procedures, and related documents without further order of the Court, including, without limitation, changes to correct typographical and grammatical errors and to make conforming changes among the Disclosure Statement, the Debtors' Plan, and any other materials in the Solicitation Package prior to their distribution.

### <u>SUMMARY OF PROPOSED SOLICITATION RELATED DATES</u>

68.    To summarize, the Debtors propose the following key dates related to the Solicitation and Confirmation process:

- **<u>Voting Record Date</u>**:  The date the Disclosure Order is entered;

- **<u>Solicitation Date</u>**:  No later than five days after the Voting Record Date;

- **<u>Objection Deadline for the Plans</u>**: **October 27, 2008**, at 4:00 p.m. (prevailing Central Time);

- **<u>Rule 3018(a) Motion Deadline</u>**:  The tenth day after the later of (a) service of the Confirmation Hearing Notice or (b) service of notice of an objection, if

any, to the subject claim; and

- **<u>Voting Deadline</u>**:  **October 27, 2008**, at 4:00 p.m. (prevailing Central Time).

**<u>NOTICE</u>**

69.     Pursuant to Bankruptcy Rule 2002(b), a notice of the filing of the Motion and of the deadline for objecting to the Motion will be provided to all parties required to receive such notice pursuant to Bankruptcy Rules 2002(b) and 3017(a).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is required.

**<u>NO PRIOR REQUEST</u>**

70.     No prior motion for the relief requested herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the proposed Disclosure Order submitted by the Debtors, approve the Solicitation and Tabulation Procedures and grant the relief sought herein and such other and further relief as is equitable and just.

Respectfully submitted on this 3rd day of September, 2008.

| | |
|---|---|
| **BAKER BOTTS L.L.P.**<br><br>*/s/ Judith Ross*<br>Jack L. Kinzie<br>State Bar No. 11492130<br>Judith Ross<br>State Bar No. 21010670<br>James R. Prince<br>State Bar No. 00784791<br>Omar J. Alaniz<br>State Bar No. 24040402<br>2001 Ross Avenue<br>Dallas, Texas 75201-2980<br>Telephone:   214.953.6500<br>Facsimile:   214.661.6503<br>Email: *jack.kinzie@bakerbotts.com*<br>        *judi.ross@bakerbotts.com*<br>        *james.prince@bakerbotts.com*<br>        *omar.alaniz@bakerbotts.com*<br><br>Tony M. Davis<br>State Bar No. 05556320<br>Mary Millwood Gregory<br>State Bar No. 14168730<br>One Shell Plaza<br>Houston, Texas 77002<br>Telephone: 713.229.1234<br>Facsimile:  713.229.1522<br>Email: *tony.davis@bakerbotts.com*<br>        *mary.gregory@bakerbotts.com*<br>and | **JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**<br><br>Shelby A. Jordan<br>State Bar No. 11016700<br>Harlin C. Womble<br>State Bar No. 21880300<br>Nathaniel Peter Holzer<br>State Bar No. 00793971<br>Suite 900, Bank of America<br>500 North Shoreline<br>Corpus Christi, Texas 78471<br>Telephone:  361.884.5678<br>Facsimile:   361.888.5555<br>Email: *sjordan@jhwclaw.com*<br>        *hwomble@jhwclaw.com*<br>        *pholzer@jhwclaw.com*<br><br><br>**COUNSEL TO DEBTORS-IN-POSSESSION** |