IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Case No.  05-21207 |
| | § | |
| ASARCO LLC, *et al.*, | § | Chapter 11 |
| | § | |
|     Debtors. | § | (Jointly Administered) |
| | § | |

## ASARCO LLC'S SUPPLEMENTAL EXPEDITED MOTION TO ESTIMATE ASBESTOS LIABILITY CLAIMS AND FOR ENTRY OF CASE MANAGEMENT ORDER ESTABLISHING PROCEDURES FOR SUCH ESTIMATION

THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU.  IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE.  IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY.  THE MOVING PARTY HAS REQUESTED EXPEDITED CONSIDERATION OF THIS MOTION, AND YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN TEN (10) DAYS OF THE DATE THIS WAS SERVED ON YOU.  YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED.  IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU.  IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING.  UNLESS THE PARTIES AGREED OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.

REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.

**AN EXPEDITED HEARING HAS BEEN REQUESTED ON THIS MOTION FOR MAY 29, 2009 AT 9:00 A.M. IN CORPUS CHRISTI, TEXAS.**

TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:

Pursuant to Sections 502(c) and 105 of the Bankruptcy Code, ASARCO LLC ("ASARCO") respectfully supplements its Motion of March 24, 2006 to estimate derivative asbestos liabilities.  In this supplement, ASARCO requests that, in addition to estimating its *derivative* asbestos liability, the Court also estimate its *direct* asbestos liability and include this estimation in the same proceedings that are scheduled for June 22, 2009.  This supplement does

not replace ASARCO's original Motion, but merely adds to it, and ASARCO incorporates its March 24, 2006 Motion herein by reference.

### BACKGROUND AND RELIEF REQUESTED

1. ASARCO brings this motion in furtherance of its effort to determine the total amount of its contingent liability and formulate a viable chapter 11 plan. As the Court is aware, ASARCO is alleged to be liable, under various alter ego and similar veil-piercing theories, for the asbestos liabilities of certain of its subsidiaries, primarily Lac d'Amiante due Québec Ltée (f/k/a Lake Asbestos of Quebec, Ltd.) ("LAQ") and CAPCO Pipe Company, Inc. (f/k/a Cement Asbestos Products Company ("CAPCO"). These claims—over 100,000 of them—were the subject of ASARCO's original Motion, and the Court has already set a schedule for their estimation.

2. In addition to these derivative claims, ASARCO is alleged to be directly liable to employees, third-party contractors, and perhaps others for asbestos-related injuries based on premises liability and other theories. Historically, direct claims alleging tortious conduct by ASARCO constituted about one percent of the total claims against ASARCO and its subsidiaries. The electronic claims submissions and asbestos proofs of claim, however, reflect a much higher number of claims against ASARCO.[1] ASARCO believes that true direct claims, such as premises liability claims, should number no more than 2,000 and that a substantial majority of the claimants who submitted proofs or claim or electronic claims data have patently unmeritorious claims, to which ASARCO will soon file objections. Even if ASARCO is successful in significantly reducing the number of direct claims to 2,000, it is still a substantial

---

[1] There are roughly three dozen claimants who assert a premises claim against ASARCO and not a products claim. Conversely, 25,700 claimants assert claims against the subsidiaries, but not against ASARCO. The remaining 76,000 claimants assert some mix of premises and products claims against ASARCO and its subsidiaries.

number of unliquidated asbestos personal injury claims that, if left undecided, will cause undue delay to ASARCO's reorganization and jeopardize the success of the plan proposed by ASARCO and its related debtors (collectively, the "Debtors").

3. The timing of ASARCO raising these issues with the Court is neither strategic nor sinister. Rather, for some time now, ASARCO believed that all asbestos claims (direct and indirect) were resolved pursuant to the agreement-in-principle reached at and following mediation before Judge Magner. However, on April 13, 2009, counsel for Asbestos Claimants' Committee ("ACC") and counsel for the Future Claims Representative ("FCR") repudiated that agreement-in-principle and announced that they would recommend that their clients instead support a prospective plan sponsored by Grupo Mexico. ASARCO is now forced to proceed with having the Court estimate its contingent liability.

4. Estimating the value of both the derivative liability claims and the direct liability claims is critical for the ultimate success of the plan based on how it is currently structured. In order to determine whether sections 1126 and 1129 of the Bankruptcy Code have been satisfied, ASARCO must first know the total value of all claims subject to that plan.

5. Pursuant to the plan of reorganization proposed by the Debtors, an Asbestos Trust will be created. If the plan is confirmed, Debtors anticipate that the liability of all of the Debtors for present and future asbestos liabilities shall be assumed by and channeled to the Asbestos Trust on the effective date of the plan, and all persons shall be permanently enjoined from asserting such liabilities against the Debtors, the reorganized debtors, or other persons entitled to protection pursuant to the plan (who are defined in the plan as the "ASARCO Protected Parties"). The asbestos liabilities will be processed, liquidated and paid pursuant to the terms and provisions of the Asbestos Trust Agreement and the Asbestos Trust Distribution Procedures.

The Asbestos Trust will be funded with, among other things, cash in the amount of the present and future asbestos liabilities against ASARCO, as estimated by the Court.  The Asbestos Trust shall create an Asbestos Premises Liability Claims Fund for payment of present and future premises liabilities, and a separate Asbestos Personal Injury Claims Fund for payment of present and future asbestos liabilities other than premises liabilities.

6.      So that the estimation process may move forward expeditiously, ASARCO requests that the Court estimate its direct asbestos liability — to determine the confirmability and feasibility of the plan—at the same time as the derivative claims.  Indeed, the claims data in the bar date database on which the experts in the alter ego estimation have relied contains claims against multiple entities.  In order to avoid overestimating liability, the total asbestos exposure should be estimated in the same proceeding.  Minimal, if any, new discovery is necessary, as all of the interested parties should already have the relevant claims information.  In addition, each party's expert witnesses have already prepared to testify on the methodology for estimating claims at the estimation hearing.  The parties will not be prejudiced by this expansion of the estimation hearing, and they should have little difficulty preparing this additional information for submission to the Court at the June 22, 2009 hearing.  On the other hand, if the direct liability claims are not estimated, it will cause significant and undue delay to the confirmation process and could jeopardize the plan going forward.

7.      ASARCO, therefore, respectfully requests that the Court perform this estimation concurrently with the estimation already scheduled for June 22, 2009.  In the alternative, ASARCO requests that the Court issue proposed findings of fact and conclusions of law to the District Court regarding the estimated value of the premises liability claims.

**BASIS FOR RELIEF SOUGHT**

**I.      This Court Has Authority to Estimate ASARCO's Premises Liability Claims.**

   **A.      *The Bankruptcy Code Provides for Estimation of Unliquidated Claims.***

   8.      Section 502(c) of the Bankruptcy Code provides, in pertinent part, that "[t]here shall be estimated for purposes of allowance under this section – (1) any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case . . . ." 11 U.S.C. § 502(c)(1). Section 502(c) was enacted to "further the requirement that all claims against a debtor be converted into dollar amounts." *In re Interco Inc. v. ILGWU Nat'l Ret. Fund (In re Interco Inc.)*, 137 B.R. 993, 997 (Bankr. E.D. Mo. 1992). Courts use estimation "to facilitate the speedy resolutions of claims in bankruptcy courts." *Id*. Both of these purposes will be served by estimating the premises liability claims.

   9.      According to the Fifth Circuit Court of Appeals, estimation serves at least two purposes. It helps the court "avoid the need to await the resolution of outside lawsuits to determine issues of liability or amount owed by means of anticipating and estimating the likely outcome of these actions." *First City Beaumont v. Durkay (In re Ford),* 967 F.2d 1047, 1053 (5th Cir. 1992). Estimation also "promote[s] a fair distribution to creditors through a realistic assessment of uncertain claims." *Id*. The estimation process is most efficient for satisfying this requirement.

   10.     Furthermore, consistent with section 502(b) of the Bankruptcy Code, all claims must be valued as of the petition date. *Addison v. Langston (In re Brints Cotton Mktg., Inc.),* 737 F.2d 1338, 1342 (5th Cir. 1984); *Owens Corning*, 322 B.R. at 722. Accordingly, in *In re Eagle-Picher Indus., Inc*., 189 B.R. 681, 682-83 (Bankr. S.D. Ohio 1995), the court held that estimated amounts of asbestos claims had to be valued as of the petition date, with future values discounted to present value as of the petition date, and past payments similarly adjusted to the petition date.

**B.**  *The Direct Asbestos Claims Must Be Estimated Because They Are Unliquidated and Their Liquidation Would Unduly Delay Administration of the Reorganization Cases.*

11.     Section 502(c) is drafted in mandatory terms, meaning that any contingent or unliquidated claim "shall" be estimated so long as the "liquidation" of that claim would "unduly delay the administration of the case." 11 U.S.C. § 502(c). Thus, before a court orders an estimation proceeding, an initial determination must be made that the claims are contingent or unliquidated, and that fixing the claims would unduly delay the bankruptcy case. *O'Neill v. Continental Airlines, Inc. (In re Continental Airlines)*, 981 F.2d 1450, 1461 (5th Cir. 1993); *In re G-I Holdings, Inc.*, 323 B.R. 583, 599 (Bankr. D. N.J. 2005).

12.     At present, the claims data indicates that there are approximately 3,000 unliquidated and contingent asbestos direct liability claims pending against ASARCO, with the prospect of more asbestos-related claims being asserted in the future. The liquidation of even one of these claims outside of bankruptcy could take years, with discovery, expert evaluations, and trial proceedings, as well as any appeals that may follow. As was true in *In re G-I Holdings*, 323 B.R. 583 (Bankr. D.N.J. 2005), if the Debtors "were required to litigate each and every asbestos personal injury claim asserted against it, it would take years, actually lifetimes, before these claims would be litigated." *Id.* at 599-600.

13.     Moreover, the number of future claimants and the amount owed to them must be established through estimation because the actual amount and number of these claims are unknowable by definition. *See* 11 U.S.C. § 524(g)(2)(B)(ii)(II) ("the actual amounts, numbers and timing of such future demands cannot be determined").

14.     For these reasons, the Debtors believe that estimation is required by section 502(c)(1) of the Bankruptcy Code.

6

### C. *The Direct Asbestos Claims May Be Estimated for Purposes of the Proposed Plan.*

15. In regards to the purposes for which claims may be estimated, the only statutory guidance for this Court's jurisdiction is found in 28 U.S.C. § 157(b)(2)(B):

Core proceedings include, but are not limited to –

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11.

28 U.S.C. § 157(b)(2)(B). The only exception to the Court's ability to estimate claims is if the estimation is (1) of personal injury tort or wrongful death claims; and (2) done for purposes of distribution. This leaves the estimation of such claims for other purposes within the jurisdiction of the bankruptcy court. *In re UNR Indus., Inc.*, 45 B.R. 322, 326 (N.D. Ill. 1984); *Roberts v. Johns-Manville Corp. (In re Johns-Manville Corp*.), 45 B.R. 823, 826 (S.D.N.Y. 1984). Indeed, ASARCO requests that the Court estimate the value of the premises liability claims—i.e., personal injury tort claims—but, it requests that the Court do so to determine the confirmability and feasibility of the plan, not for distribution.

16. It is well-established that bankruptcy courts have the power to proceed with estimation of claims for purposes of confirmation of a plan of reorganization. *See, e.g., In re Quigley Co.*, 346 B.R. 647, 653 (Bankr. S.D.N.Y. 2006) (Bankruptcy Court estimating the value of personal injury asbestos claims for purposes of voting on a plan); *In re Farley, Inc.*, 146 B.R. 748, 753 (Bankr. N.D. Ill. 1992) ("The estimation procedure was held merely to allow Farley to proceed to confirmation with an estimate of the size of the claims involved here for purposes of voting and determining plan feasibility. This limited purpose is well within the purview of § 157(b)(2)(B).").

7

17. In fact, just recently, one court set out to estimate personal injury claims for the very purpose advanced by ASARCO in this case. In *In re W.R. Grace & Co., et al.*, Case No. 01-1139 (JKF), In the United States Bankruptcy Court for the District of Delaware, the debtors filed a motion seeking to estimate the amount needed to fund an asbestos personal injury trust to enable the trust to pay in full all allowed asbestos personal injury trust claims. *See* W.R. Grace Disclosure Statement at 67 (attached as **Exhibit A**). The court entered an order establishing procedures for this estimation, including the mailing of detailed questionnaires to the claimants regarding their asbestos exposure and injury, and set the matter for trial. *Id.* at 68. The *W.R. Grace* court actually tried a significant portion of the claims before the parties settled. *Id.* The court in *W.R. Grace* recognized that the most appropriate and efficient way to determine the amount needed to fund the asbestos personal injury trust was to estimate the claims. The same considerations exist for ASARCO in this case. Indeed, the Court is already going to estimate the value of more than 100,000 derivative liability claims for purposes of determining the feasibility of the plan and funding the Asbestos Trust. Doing the same for the premises liability claims would be the most appropriate way to proceed, and this Court should follow the course set by the *W.R. Grace* court.

18. It is, therefore, necessary and appropriate for the Court to estimate the value of the premises liability claims so that the Court can evaluate and determine whether the Debtors' chapter 11 plan is feasible and confirmable pursuant to the Bankruptcy Code.

**D.**     ***The Court May Also Propose Findings of Fact and Conclusions of Law.***

19. Even though ASARCO only seeks estimation of the premises liability claims to determine the confirmability and feasibility of the plan, and not for purposes of distribution, the Court could still issue findings of fact and conclusions of law as they pertain to distribution of funds from the Asbestos Trust for the premises liability claims. While this Court is prevented,

without the claimants' consent, from making a final adjudication of personal injury tort or wrongful death claims, the District Court has such authority. *In re A.H. Robins Co.*, 88 B.R. 742, 746-77 (Bankr. E.D. Va. 1988) (district court conducted estimation of personal injury claims), *aff'd*, 880 F.2d 694 (4th Cir. 1989); *In re Dow Corning Corp.*, 211 B.R. 545, 569-70 (Bankr. E.D. Mich. 1997) ("Although estimation for purposes of distribution is not a core proceeding, that only means that when done, it is a non-core proceeding which is otherwise well within the bankruptcy jurisdiction of the district court"); *In re Poole Funeral Chapel, Inc.*, 79 B.R. 37, 39 (Bankr. N.D. Ala. 1987) ("Liquidation or estimation of [personal injury tort or wrongful death] claims is assigned to the district court . . .").

20.     Pursuant to 28 U.S.C. § 157(c)(1) and Bankruptcy Rule 9033, this Court may submit proposed findings of fact and conclusions of law to the district court:

> A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

28 U.S.C. § 157(c)(1). In the alternative, ASARCO requests that the Court issue proposed findings of fact and conclusions of law to the District Court pertaining to the estimated value of the unliquidated premises liability claims for purposes of distribution by the Asbestos Trust.

## II.    The Court May Establish Procedures for Estimation of the Premises Liability Claims.

21.     As discussed above, ASARCO proposes that the Court engage in the same process for estimating the premises liability claims as it will for the derivative asbestos claims. After hearing the estimation evidence, ASARCO will ask the Court to enter an estimation order that allows ASARCO to assign an estimated value to each category of asbestos claims. The

9

parties already have a complete set of discovery related to these claims and should be able to move forward and present these issues to the Court on June 22, 2009. No additional time or discovery is warranted for the premises liability claims.

22. ASARCO therefore respectfully requests that the Court include ASARCO's premises liability claims in its already-established process for derivative claims and estimate the premises liability claims for purposes of confirmation at the June 22, 2009 hearing.

### CERTIFICATE OF SERVICE

23. In compliance with Bankruptcy Local Rule 9013(f) and contemporaneously with this supplemental Motion, ASARCO has filed as a separate document a Certificate of Service containing the names and addresses of the parties served, the manner of service, the name and address of the server, and the date of service.

WHEREFORE, the Debtor respectfully requests that the Court (i) enter an order establishing procedures for estimation of direct asbestos claims against ASARCO, (ii) in the alternative, issue proposed findings of fact and conclusions of law to the District Court regarding the estimated value of the direct liability claims against ASARCO for purposes of distribution, (iii) conduct proceedings in accordance with the case management order resulting in an estimation of those claims, and (iv) grant the Debtor such other and further relief as is just and proper.

Respectfully submitted this 13th day of May, 2009.

**BAKER BOTTS L.L.P.**

*/s/ Jack L. Kinzie*
Jack L. Kinzie
State Bar No. 11492130
James R. Prince
State Bar No. 00784791
2001 Ross Avenue
Dallas, Texas 75201-2980
Telephone:    214.953.6500
Facsimile:    214.661.6503
Email: *jack.kinzie@bakerbotts.com*
          *jim.prince@bakerbotts.com*

Tony M. Davis
State Bar No. 05556320
One Shell Plaza
Houston, Texas 77002
Telephone: 713.229.1234
Facsimile: 713.229.1522
Email: *tony.davis@bakerbotts.com*

and

**JORDAN, HYDEN, WOMBLE, CULBRETH, & HOLZER, P.C.**

Shelby A. Jordan
State Bar No. 11016700
Harlin C. Womble
State Bar No. 21880300
Nathaniel Peter Holzer
State Bar No. 00793971
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, Texas 78471
Telephone:    361.884.5678
Facsimile:    361.888.5555
Email: *sjordan@jhwclaw.com*
          *hwomble@jhwclaw.com*
          *pholzer@jhwclaw.com*

**COUNSEL TO DEBTOR AND DEBTOR-IN-POSSESSION**

11