**Expert Name: Marianne Horinko**

**Testifying on behalf of ASARCO Incorporated**

**PROFFER OF DIRECT TESTIMONY OF MARIANNE HORINKO REGARDING THE OMAHA LEAD SITE**

### Introduction:

The following information is a true and accurate statement of my testimony if I were called as a witness in open court in this case.  I am still in the process of reviewing the newly available documentation and reserve the right to supplement or change my opinions as appropriate.

### A.  Brief Summary of Opinions

- Having reviewed the record with respect to the Omaha Lead Site ("OLS"), including: Proposed Plan for Residential Yard Soils, Omaha Lead Site Small Park Surface Soil Investigation Report; Large Park Surface Soil Investigation Report; Drip Zone Width Report; and the October 2008 Recontamination Report, it is my opinion that the remedy contemplated by the OLS settlement agreement[1] is technologically ineffective and therefore unreasonable under CERCLA.  The remedial approach EPA is pursuing fails to consider exposure pathways in addition to soil.  The record shows that exposure pathways exist for lead-based paint ("LBP") in homes, which have significant and adverse effects at the OLS.  For this reason, the remedy in question does not serve the purpose of the statute

---

[1] As contained in ASARCO LLC and its subsidiary debtors (the "Debtors") Motion Under Bankruptcy Rule 9019 for Order Approving Settlement of Environmental Claims, filed March 12, 2009 (Docket No. 10534).

under which EPA asserts its authority.

- The proposed remedy is ineffective.  The failure to address other exposure pathways will inevitably result in recontamination at OLS.  Notably, the Recontamination Study has evidenced this very fact.  To implement a remedy that does not address the underlying LBP issue and creates an environment where recontamination occurs is arbitrary and capricious.

- The proposed remedy fails to follow EPA's own guidance as promulgated in the Superfund Lead-Contaminated Residential Sites Handbook ("Lead Handbook"). The Lead Handbook provides that soil remediation should only occur after deteriorating exterior LBP is removed.  The record is quite clear that EPA has disregarded the remedy sequencing guidance provided in the Lead Handbook by remediating soils before addressing the issue of LBP.

- The proposed remedy is inconsistent with the National Contingency Plan's ("NCP") mandate to seek a cost-effective remedy.  By failing to properly address LBP, the proposed remedy ensures that soil remediation dollars will be expended in perpetuity at the OLS.

- Under CERCLA, EPA cannot recover any response costs from potentially responsible parties unless such costs are consistent with the NCP.  Because the response costs at issue in the OLS settlement are largely inconsistent with the

NCP, EPA is not entitled to recover the response costs from the Debtors.

## B.  Expert Qualifications

I served as Acting Administrator of the U.S. Environmental Protection Agency ("EPA")

from July through November, 2003, during the interim between Administrators Christine

Todd Whitman and Michael O. Leavitt.  As Acting Administrator of EPA, I was

responsible for promulgation of rules, policy, and enforcement under all of the federal

environmental statutes, including oversight of delegated state programs.  I exercised final

responsibility for the nation's environmental regulatory regime, which required my

knowledgeable oversight of federal and delegated state waste programs.  From 2001 until

2004, I led the Federal Superfund program.  A more detailed description of my

qualifications are outlined in my expert report.

## C.  Statement of Opinions

**Proposed Remedy is Unreasonable**

1. EPA policy regarding CERCLA settlements follows settled law that dictates all

   proposed remedies must be fair, reasonable, and consistent with the objectives of

   CERCLA.  At OLS, EPA has proposed a remedy that does not address the LBP

   exposure pathway.[2]  The Recontamination Study[3] clearly shows that

   implementing the proposed remedy would only create a temporary "fix," while

   leaving in place the underlying LBP exposure pathways.  This will ultimately

   result in the continued exposure of humans to lead contamination.  The

---

[2] Proposed Plan
[3] Recontamination Study (October 2008).

Recontamination Study thus reveals the technical inadequacy of EPA's proposed remedy at OLS.

2.  The remedial strategy adopted by EPA for the OLS purports to address the exposure of lead at the OLS, but fails to confront the LBP exposure pathways in any meaningful way.  EPA fails to account for lead in soil due to people tracking LBP out of the home into their yards and due to deteriorating external LBP flaking off into the yards.

3.  Because CERCLA does not have jurisdiction to address LBP and because LBP must be addressed to effectively remediate the OLS, a CERCLA-based remedy is not possible under these current circumstances.

4.  The conclusion that the LBP exposure pathway is the substantial cause of lead exposure at OLS is bolstered by the results of the Small Park Surface Soil Investigation Report and the Large Park Surface Soil Investigation Report.[4]  The data from both studies illustrate that in the absence of LBP, the overall contaminant levels at the OLS are not appreciably higher than natural background levels.  Because this conclusion indicates that the EPA's proposed remedy is unreasonable under CERCLA, it is my expert opinion that the proposed OLS remedy should not be approved.

5.  Before any CERCLA remedy at the OLS could be found reasonable, the LBP exposure pathways must first be addressed.  EPA's March 2006 Drip Zone Width Study evidences a correlation between lead-soil contamination levels and proximity to LBP sources.  The Proposed Plan does not address this fact, which

---

[4] Small Park Surface Soil Investigation Report (June 2006); Large Park Surface Soil Investigation Report (November 2006).

indicates that it will not be an effective vehicle for cleansing the environment. The Drip Zone Width Study, especially combined with the park studies, demonstrates the proposed remedy's ineffectiveness.

6. Furthermore, the proposed remedy fails to follow EPA's own guidance as promulgated in the Superfund Lead-Contaminated Residential Sites Handbook ("Lead Handbook"). The Lead Handbook clearly prescribes the removal of deteriorating exterior LBP before implementation of soil remediation activities.[5] EPA did not follow its own policy guidance with respect to addressing exterior LBP prior to beginning soil cleanup.

7. This conspicuous deviation from Lead Handbook guidance is particularly important in the context of the studies performed by the Douglas County Health Department ("DCHD"). The DCHD showed a conclusive linkage between the utilization of LBP in homes and elevated lead levels in children's blood.[6] These studies imply that the proposed remedy leaves in place exposure pathways known to cause elevated blood lead levels in children. This outcome is clearly contrary to the stated purpose of the remedy.

**Proposed Remedy is Inconsistent with Objectives of CERCLA**

8. The primary policy intent behind CERCLA is directed at finding a remedy that protects human health and the environment.

9. Determining whether a proposed remedy will accomplish this objective requires a

---

[5] Lead Handbook at 49.
[6] Douglas County Health Department Presentation of Childhood Blood-Lead Study Results to Omaha Community Advisory Group Meeting (May 2006).

thorough understanding of the underlying causes of contamination.  Without this understanding, any proposed remedy leaves open the possibility of failure to address a source of contamination.  The failure to implement a remedy that addresses the LBP exposure pathway would put the citizens at OLS at risk to continued exposure to lead even after all proposed remedial activity is purportedly complete.  Given that the very objective of CERCLA is to protect human health, following such a proposed remedy seems contrary to that core objective.  Such a proposed remedy is unreasonable and ineffective and therefore inconsistent with CERCLA's objectives.

**Proposed Remedy Not Cost-Effective**

10. The NCP sets forth very specific procedures that the EPA is supposed to follow when making remediation decisions.  The NCP instructs EPA to pursue remedies that are both cost-effective and, to the extent possible, permanent.[7]  As the Recontamination Study shows, the EPA's proposed remedy at the OLS does not offer a permanent solution.  In fact, the Recontamination Study illustrates that the proposed remedy offers at best a temporary solution.  Without addressing the exposure pathway related to LBP at the OLS, any proposed remedy will fail to prevent recontamination.

11. The proposed remedy also fails to follow the NCP's mandate to seek a cost-effective remedy.[8]  According to the proposed plan, the EPA estimates that the

---

[7] 40 C.F.R. § 300.430(f)(6)(D)
[8] *Id.*

soil replacement costs will be approximately $13,000 per home.[9]  The record

shows that implementing an exterior paint stabilization plan would cost only

$3,500 per home.[10]  This disparity is particularly troublesome given that the

Recontamination Study conclusively demonstrates that a dollar spent on soil

replacement prior to exterior paint stabilization is a dollar wasted.  Given these

facts, the resources dedicated to soil replacement under the EPA's proposed

remedy will have to be perpetually dedicated to the same purpose until the

underlying LBP issues are addressed.  This reality is far from cost-effective and in

fact, it is the height of wastefulness.

12. As I have explained before, CERCLA does not provide EPA jurisdiction for LBP

cleanup.  I only mention the cost disparity in this context because the Proposed

Plan makes the comparison and it illustrates the cost-effectiveness issue directly.

Because I believe the Proposed Plan will not be effective, spending any amount of

resources on such a remedy could not be cost-effective.


**Exhibits to be Introduced in Support of Direct Testimony:**

1) October 2008 Recontamination Study
2) Apportionment Study
3) Small Park Surface Soil Investigation Report (June 2006)
4) Large Park Surface Soil Investigation Report (November 2006)
5) Summary of Total Lead Composite Results, Prospect Hill Cemetery
6) EPA's March 2006 Drip Zone Width Study
7) Responsiveness Summary, Omaha Lead Site, Interim Record of Decision (December 2004)
8) Superfund Lead-Contaminated Residential Sites Handbook
9) 40 C.F.R. 300.430(e)(1)

---

[9] Proposed Plan at 18.

[10] Proffer of Direct Testimony of Gayle S. Koch in Connection with OLS Estimation Hearing, at 3-5, ¶¶ 4, 7 (Docket No. 5402).

10) 40 C.F.R. 300.430 (f)(6)(D)
11) OSWER Directive: Clarification to the 1994 Revised Interim Soil Lead (Pb)
Guidance for CERCLA Sites and RCRA Corrective Action Facilities


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct. Executed this 13th day of May, 2009 at Washington, D.C.




_____/s/_____

Expert Witness