IN THE UNITED STATES BANKRUPTCY COURT
OF THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: § | Case No. 05-21207 |
| § | |
| ASARCO LLC, *et al.*, § | Chapter 11 |
| § | |
| Debtors. § | (Jointly Administered) |

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF
ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S
MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS
UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE
AND IN OPPOSITION TO CONFIRMATION OF THE
<u>DEBTORS' PLAN OF REORGANIZATION</u>**

1.  My name is Lisa M. Poulin. The information contained in this Supplemental Proffer ("Supplement") is a true and accurate statement of my direct testimony as if I were called as a witness in open court in this case with respect to this Court's consideration of ASARCO Incorporated and Americas Mining Corporation's ("AMC") (ASARCO Incorporated and AMC are collectively referred to as the "Parent") Modified Sixth Amended Plan of Reorganization for the Debtors Under Chapter 11 of the United States Bankruptcy Code (the "Parent's Plan") as well as the Debtors' Sixth Amended Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, As Modified (the "Debtors' Plan").[1]

2.  Prior to this Supplement, I have submitted the following:

    a)  Proffer dated July 10, 2009 of Lisa M. Poulin in Support of ASARCO Incorporated's and Americas Mining Corporation's Modified Fifth

---

[1] Capitalized terms used in this Supplement that are not defined in this Supplement have the meanings set forth in the Uniform Glossary of Defined Terms for Plan Documents, which is Exhibit A-2 to the Joint Disclosure Statement in Support of the Respective Plans of Reorganization proposed by (1) the Debtors; (2) ASARCO Incorporated and Americas Mining Corporation; and (3) Harbinger Capital Partners Master Fund I, Ltd. ("Joint Disclosure Statement"), as supplemented.

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**                                                                                     Page 1
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S
MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS
UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE
AND IN OPPOSITION TO CONFIRMATION OF THE
<u>DEBTORS' PLAN OF REORGANIZATION</u>**

     Amended Plan of Reorganization of the Debtors Under Chapter 11 of the United States Bankruptcy Code (the "Proffer"); and

  b) Rebuttal Proffer Report dated July 20, 2009 of Lisa Poulin In Support of Asarco Incorporated And Americas Mining Corporation's Modified Fifth Amended Plan Of Reorganization For The Debtors Under Chapter 11 Of The United States Bankruptcy Code And In Opposition To Confirmation Of The Debtors' And Harbinger Plans Of Reorganization (the "Rebuttal Proffer").

3. This document is a Supplement to the Proffer and the Rebuttal Proffer.

4. My Supplement is based upon my individual knowledge, experience, inquiry, and research. This Supplement describes my analysis at this time based on the information currently available to me. To the extent additional or updated information is made available for review, and such additional or updated information impacts my findings, I may further supplement the Proffer, the Rebuttal Proffer or this Supplement.

## BACKGROUND

5. After I submitted the Proffer and the Rebuttal Proffer, the Parent filed, on July 30, 2009, the Modified Sixth Amended Plan of Reorganization for the Debtors under Chapter 11 of the United States Bankruptcy Code. The purpose of this Supplement is to describe the effect, if any, of the modifications to the Parent's Plan (the "Plan Modifications") on my opinions in the Proffer or the Rebuttal Proffer.

## BRIEF SUMMARY OF MY OPINIONS

6. My opinions set forth in the Proffer and the Rebuttal Proffer have not changed.

7. The Parent's Sixth Amended Plan provides additional support for my opinions.[2] The Plan Modifications increase the certainty of closing by adding the Support Agreement, funding the Escrow Account with stock worth $1,300 million, and providing the Parent's

---

[2] For a comparison of Treatments A, B and C to the Debtors' Plan, see Exhibit A hereto.

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**           Page 2
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S**
**MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS**
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**
**AND IN OPPOSITION TO CONFIRMATION OF THE**
<u>**DEBTORS' PLAN OF REORGANIZATION**</u>

agreement to close even if an unstayed appeal of confirmation of the Parent's Plan is pending. The addition of Treatments B and C to Treatment A provides General Unsecured Creditors with three options to be paid depending on their needs, expectations, and perception of value of the litigation claims, as well as including options providing for superior immediate cash recovery and longer term ability to recover 100% of their principal plus Post-Petition Interest:

a) Treatment A provides $2,812.5 million cash to creditors on the Effective Date, which is estimated to be (for non-Asbestos unsecured creditors) 95.4% of the principal amount of their Claims;

b) Treatment B (which includes a $770 million Copper Note guaranteed by the Parent and a pro rata share of the SCC Litigation and the Sterlite Litigation) provides $2,500 million cash to creditors on the Effective Date, which is estimated to be (for non-Asbestos unsecured creditors) 80.1% of the principal amount of their Claims, and recovery of up to 100% of principal plus Post-Petition Interest; and

c) Treatment C (which includes a pro rata share of the SCC Litigation and the Sterlite Litigation) provides $2,808.7 million cash to creditors on the Effective Date , which is estimated to be (for non-Asbestos unsecured creditors) 95.3% of the principal amount of their Claims, and recovery of up to 100% of principal plus Post-Petition Interest.

8. See Exhibit D for the comparison of Parent's Plan cash recoveries at effective date for Alternative B & C of 80.1% to 95.2% verses comparable recovery of Debtor's Plan of 76.2%. The higher and greater certainty is the Parent's Plan.

### STATEMENT OF TESTIMONY

**A.  Plan Modifications**

9. Treatment A for holders of General Unsecured Claims is unchanged by the Parent's Sixth Amended Plan. However, the Parent has increased the certainty of closing by taking the following actions:

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**                    Page 3
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S**
**MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS**
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**
**AND IN OPPOSITION TO CONFIRMATION OF THE**
**DEBTORS' PLAN OF REORGANIZATION**

a)  To ensure that the Parent is capable of meeting its funding requirements under the Parent's Plan on the Effective Date, Grupo and the Parent have entered into a Support Agreement under which Grupo has agreed to promptly provide the Parent with funds in an amount equal to the amount required to permit the Parent to deliver the Parent Contribution in full and fund the Working Capital Facility.

b)  To demonstrate its intention and ability to fully and timely consummate the Parent's Plan, the Parent has established an Escrow Account funded with 67,280,000 shares of stock of SCC with an estimated value of $1,300 million.

c)  Before the Parent's Plan is confirmed, stock in the Escrow Account worth $125 million will act as a forfeitable deposit, ensuring that the Parent's Plan is not withdrawn prior to the conclusion of the Confirmation Hearing. The Unsecured Creditors Committee will have the right to submit a default notice to the escrow agent if it independently determines there is a default.

d)  After the Parent's Plan is confirmed, stock in the Escrow Account worth $1,300 million will act as forfeitable deposit, ensuring that the Parent will timely consummate the confirmed Parent's Plan. The Unsecured Creditors Committee will have the right to submit a default notice to the escrow agent if it independently determines there is a default.

e)  The Parent has agreed to close even if an unstayed appeal of confirmation of the Parent's Plan is pending.

10. By contrast, the Debtors' Plan sponsor has posted only $125 million as a deposit.

11. In addition, the SCC Litigation will be transferred to a separate SCC Litigation Trust, which shall also be funded with a $20 million SCC Litigation Trust Expense Fund, any unused portion of which will be distributed to creditors if needed to achieve payment in full of principal plus Post-Petition Interest. The SCC Litigation Trust will pursue and seek recoveries on the SCC Litigation Trust Claims. Any net recoveries by the SCC Litigation Trust will be distributed to holders of Secured Claims, General Unsecured Claims electing Treatment B or C, and potentially to holders of Late-Filed and Subordinated Claims, until such holders are paid in

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**  Page 4
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S**
**MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS**
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**
**AND IN OPPOSITION TO CONFIRMATION OF THE**
**DEBTORS' PLAN OF REORGANIZATION**

full, including Post-Petition Interest. Under the Parent's Sixth Amended Plan, the SCC Litigation Trust shall be completely independent from Reorganized ASARCO and the Parent, and will be governed by a Trustee and Board, selected by creditor representatives, that will not report to Reorganized ASARCO or the Parent and will have no fiduciary duties to Reorganized ASARCO or the Parent.

12. As reflected on Exhibit B, it is possible that a portion of the Parent's Contribution of $1,462.5 million will not be distributed at the Effective Date based on the number of claimants who select Treatments B or C. The undistributed Parent's Contribution will be made available to claimants selecting Treatment A, creating the possibility that Treatment A claimants could be paid 100% of their Allowed Claims on or immediately after the Effective Date without delay or risk relating to receipt of proceeds from the Designated Litigation Trust Interests or the SCC Litigation.

13. My opinion, as detailed in the Proffer and the Rebuttal Proffer, is unchanged, and in fact is strengthened, that Treatment A is a better option than the Debtors' Plan because Treatment A provides a higher and better recovery to the various constituencies than the Debtors' Plan. Treatment A provides a greater immediate recovery to the holders of General Unsecured Claims, and a reduced portion of the recovery is uncertain. Treatment A also provides higher total recoveries to General Unsecured Creditors than under the Debtors' Plan. In addition to all the other advantages of the Parent's Plan, the Parent's upfront $1,462.5 million Plan Sponsor Contribution and the $200 million Line of Credit exceed the $1,100 million Plan Sponsor Contribution of Sterlite under the Debtors' Plan.

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**  Page 5
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S**
**MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS**
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**
**AND IN OPPOSITION TO CONFIRMATION OF THE**
<u>**DEBTORS' PLAN OF REORGANIZATION**</u>

**B.     Treatment B is a better option than the Debtors' Plan**

14.     Treatment B provides that each holder of an allowed General Unsecured Claim will have the right to elect to receive:

    a)     Cash in the amount of a pro rata share of a pool consisting of the Net Distributable Cash, the Tax Refund and $1,150 million from the Parent Contribution; plus

    b)     a pro rata share of the Parent's Copper Note, guaranteed by the Parent;

    c)     a pro rata share of the Litigation Trust Interests (including interests in the Sterlite Litigation); and

    d)     a pro rata share of the SCC Litigation Trust Interests.

15.     Treatment B is a better option than the Debtors' Plan. Treatment B provides holders with $1,150 million in cash instead of the $1,100 million from Sterlite. In addition, the Debtors' Plan fails to provide Reorganized ASARCO with any cash on the Effective Date. In contrast, if all the Claimants elected Treatment B, in addition to the $200 million Line of Credit and the $50 million Cash Holdback, Treatment B would provide $312.5 million in additional cash for distribution pursuant to Section 10.3 of the Parent's Plan, as set forth in the following table:

| **Post Effective Date Cash** | | **Treatment B** |
|---|---|---|
| Plan Sponsor Cash Contributed | | $1,462.5 |
| Plan Sponsor Cash Paid Out | | (1,150.0) |
| **Est. Post Effective Cash*** | **(000's)** | **$312.5** |

*See Exhibit B for sensitivity of Treatment selection and its impact on Cash.*

16.     In addition, Treatment B offers the various constituencies the same advantages over the Debtors' Plan as detailed in the Proffer and Rebuttal Proffer with respect to Treatment A. For example, the Parent's Plan, unlike the Debtors' Plan, provides a "safety net" for Reorganized ASARCO. The Parent has provided a $50 million holdback for working capital

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**  
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S**  
**MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS**  
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**  
**AND IN OPPOSITION TO CONFIRMATION OF THE**  
**DEBTORS' PLAN OF REORGANIZATION**

Page 6

purposes and the $200 million Working Capital Facility to mitigate copper price fluctuations or operational problems.

### C. Treatment C is a better option than the Debtors' Plan

17. Treatment C provides that each holder of an allowed General Unsecured Claim will have the right to elect to receive:

    a) Cash in the amount of a pro rata share of a pool consisting of the Net Distributable Cash, the Tax Refund, and $1,458.7 million from the Parent Contribution;

    b) a pro rata share of the Distributed Litigation Trust Interests (including Sterlite Litigation); and

    c) a pro rata share of the SCC Litigation Trust Interests.

18. Treatment C is a better option than the Debtors' Plan. Treatment C monetizes the Copper Note so creditors who want greater certainty and higher cash recovery do not have to wait 9 years after payout. Further, Treatment C also preserves both the SEC and Sterlite litigation. Further, this preserves both the SEC and Sterlite litigation. The Debtors' Plan fails to provide Reorganized ASARCO with any cash on the Effective Date. In contrast, if all the Claimants elected Treatment C, in addition to the $200 million Line of Credit and the $50 million Cash Holdback, Treatment C would provide $3.8 million in additional cash for distribution pursuant to Section 10.3 of the Parent's Plan, as set forth in the following table:

| Post Effective Date Cash | | Treatment C |
|---|---|---|
| Plan Sponsor Cash Contributed | (000's) | $1,462.5 |
| Plan Sponsor Cash Paid Out | | (1,458.7) |
| **Est. Post Effective Cash*** | **(000's)** | **$3.8** |

*See Exhibit B for sensitivity of Treatment selection and its impact on Cash.*

19. In addition, like Treatment B, Treatment C offers the various constituencies the same advantages over the Debtors' Plan as detailed in the Proffer and Rebuttal Proffer with

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**     Page 7
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S**
**MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS**
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**
**AND IN OPPOSITION TO CONFIRMATION OF THE**
**DEBTORS' PLAN OF REORGANIZATION**

respect to Treatment A. For example, the Parent's Plan, unlike the Debtors' Plan, provides a "safety net" for Reorganized ASARCO. The Parent has provided a $50 million holdback for working capital purposes and the $200 million Working Capital Facility to mitigate copper price fluctuations or operational problems.

**D.    The Parent's Plan is the best available option**

20.    The Parent's Plan offers creditors the ability to select a treatment that best fits their needs, expectations and perception of value of litigation, as well as options providing for superior immediate cash recovery and longer term ability to recover 100% of their principal plus Post-Petition Interest. The Debtors' Plan, on the other hand, provides significantly smaller initial distributions to creditors on the Effective Date, gives up the claim against Sterlite, provides a lower recovery than the Parent's Plan with greater uncertainty for the recovery of any remaining consideration, has substantial execution risks, and may not be feasible.

21.    In summary, the Parent's Plan is the best available option for the Estate and its stakeholders. Analysis of the Parent's Sixth Amended Plan and a comparison of the financial terms of the Plans demonstrate that (1) the Plan Modifications enhance the Parent's Plan and (2) the Parent's Plan provides the greatest aggregate recovery and greatest immediate recovery to the various constituencies, a lower portion of the recovery is uncertain and it provides the greatest certainty of closing. The Debtors' Plan is not the best available option for the Estate and its stakeholders because it fails to provide the highest and best recovery to the various constituencies as it provides a lower immediate recovery than the Parent's Plan, a higher portion of the recovery than the Parent's Plan is uncertain, it gives up claims against Sterlite, and it fails to demonstrate feasibility.

SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF                                         Page 8
ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S
MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS
UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE
AND IN OPPOSITION TO CONFIRMATION OF THE
DEBTORS' PLAN OF REORGANIZATION

22. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of August, 2009.

<u>/s/ Lisa M. Poulin</u>
Lisa M. Poulin

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**     Page 9
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S**
**MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS**
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**
**AND IN OPPOSITION TO CONFIRMATION OF THE**
<u>**DEBTORS' PLAN OF REORGANIZATION**</u>

**LIST OF EXHIBITS**

| Exhibit A | Plan Comparisons Chart |
|---|---|
| Exhibit B | Example of Additional Treatment A Distribution |
| Exhibit C-1<br><br>Exhibit C-2 | Effect of 8/7/09 LME Curve:<br><br>Comparison of Projected Net Cash – Proffer vs. August 7, 2009 LME<br><br>Comparison Chart of Copper Pricing – Proffer vs. August 7, 2009 LME |
| Exhibit D | Comparison of the Effective Date Cash Recoveries – Debtors' Plan vs. Parent's Plan |
| Exhibit E | Documents Relied Upon |

**SUPPLEMENTAL PROFFER OF LISA M. POULIN IN SUPPORT OF**  Page 10
**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S**
**MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE DEBTORS**
**UNDER CHAPTER 11 OF THE UNITED STATES BANKRUPTCY CODE**
**AND IN OPPOSITION TO CONFIRMATION OF THE**
<u>**DEBTORS' PLAN OF REORGANIZATION**</u>