**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | **Case No.  05-21207** |
| | § | |
| **ASARCO LLC,** *et al.* | § | **Chapter 11** |
| | § | |
| **Debtors.** | § | **(Jointly Administered)** |
| | § | |

**ASARCO INCORPORATED AND AMERICAS MINING CORPORATION'S
MODIFIED SIXTH AMENDED PLAN OF REORGANIZATION FOR THE
DEBTORS UNDER CHAPTER 11 OF THE UNITED STATES
<u>BANKRUPTCY CODE, AS MODIFIED ON AUGUST 14, 2009</u>**

**MILBANK, TWEED, HADLEY &
McCLOY LLP**

Robert Jay Moore (CA 77495)
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
(213) 892-4000
(213) 629-5063 (facsimile)

Robert E. Winter (RW 9937)
1850 K Street, 11th Floor
Washington, DC 20006
(202) 835-7500
(202) 835-7586 (facsimile)

**HAYNES AND BOONE LLP**

Charles A. Beckham, Jr.
State Bar No. 02016600
Trey Monsour
State Bar. No. 14277200
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
Telephone:  (713) 547-2000
Facsimile:  (713) 547-2600

Co-Counsel to ASARCO Incorporated and Americas Mining Corporation

Dated: August 14, 2009

## INJUNCTIONS

**This plan of reorganization provides for the issuance of a channeling injunction regarding asbestos claims and demands asserted against the ASARCO Protected Parties (<u>see</u> Article 11.3(a)) and the issuance of an injunction in favor of Settling Asbestos Insurance Companies (<u>see</u> Article 11.3(b)).**

# TABLE OF CONTENTS

ARTICLE I DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION
OF TIME ................................................................................................... 1

    1.1    Defined Terms ........................................................................................ 1
    1.2    Rules of Interpretation .......................................................................... 1
    1.3    Computation of Time ............................................................................. 1

ARTICLE II TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX
CLAIMS AND DEMANDS ....................................................................... 1

    2.1    Administrative Claims ........................................................................... 1
    2.2    Priority Tax Claims ................................................................................ 2
    2.3    Demands ................................................................................................ 3

ARTICLE III CLASSIFICATION OF CLAIMS AND INTERESTS ......................... 3

    3.1    Generally ............................................................................................... 3
    3.2    Classes .................................................................................................. 3

ARTICLE IV TREATMENT OF CLAIMS AND INTERESTS ................................. 4

    4.1    Unclassified Claims ............................................................................... 4
    4.2    Classes of Claims and Interests ............................................................ 4
    4.3    Cramdown .............................................................................................. 8
    4.4    Post-Petition Interest and Payment in Full Plus Interest ..................... 8

ARTICLE V LITIGATION TRUST AND SCC Litigation Trust .............................. 9

    A.    The Litigation Trust .............................................................................. 9
    5.1    Creation of the Litigation Trust ............................................................ 9
    5.2    Appointment of Litigation Trustee and the Litigation Trust Board ...... 9
    5.3    Purpose of the Litigation Trust ............................................................. 9
    5.4    Transfer of Litigation Trust Claims to the Litigation Trust ................ 10
    5.5    The Litigation Trust. ........................................................................... 10
    5.6    Litigation Trust Interests ..................................................................... 12
    5.7    Distributions of Litigation Proceeds and Other Property ................... 13
    5.8    Termination of the Litigation Trust. ................................................... 13
    5.9    Termination of the Litigation Trustee and the Delaware Trustee ....... 14
    5.10   Claims Against Montana Resources Reserved for Reorganized ASARCO .......... 14
    B.    The SCC Litigation Trust ................................................................... 14
    5.11   Creation of the SCC Litigation Trust ................................................. 14
    5.12   Appointment of Trustees ..................................................................... 14
    5.13   SCC Litigation Trust Board ................................................................ 14

5.14    Purpose of the SCC Litigation Trust......................................................................15
5.15    Transfer of SCC Litigation Trust Claims to the SCC Litigation Trustee .............15
5.16    The SCC Litigation Trust Agreement....................................................................16
5.17    Tax Matters. ..........................................................................................................17
5.18    SCC Litigation Trust Interests. .............................................................................18
5.19    Distributions of SCC Litigation Trust Proceeds and Other Property. ..................19
5.20    Termination of the SCC Litigation Trust...............................................................20

ARTICLE VI SECTION 524(g) TRUST .......................................................................................20

6.1     Establishment and Purpose of the Section 524(g) Trust.......................................20
6.2     Section 524(g) Trust Agreement............................................................................20
6.3     Transfers and Assignments to the Section 524(g) Trust.......................................21
6.4     Control of the Asbestos Insurance Actions and Asbestos Insurance
        Recoveries..............................................................................................................21
6.5     Assumption of Liabilities by the Section 524(g) Trust..........................................21
6.6     Tax Matters ............................................................................................................21
6.7     Section 524(g) Trust Expenses .............................................................................21
6.8     Initial Section 524(g) Trustees ..............................................................................22
6.9     The FCR .................................................................................................................22
6.10    Section 524(g) Trust Advisory Committee ............................................................22
6.11    Asbestos Books .....................................................................................................22
6.12    Cooperation with Respect to Insurance Matters ..................................................23
6.13    Indemnification by the Section 524(g) Trust. .......................................................24
6.14    Section 524(g) Trust Reporting Requirements. ....................................................24

ARTICLE VII ENVIRONMENTAL CUSTODIAL TRUSTS.....................................................25

7.1     Environmental Custodial Trusts ...........................................................................25
7.2     Environmental Custodial Trustees .......................................................................25
7.3     Tax Matters ............................................................................................................25

ARTICLE VIII OTHER MATTERS..............................................................................................26

8.1     Assumption or Rejection of Unexpired Leases and Executory Contracts............26
8.2     Approval of Assumption or Rejection of Executory Contracts and
        Unexpired Leases...................................................................................................26
8.3     Inclusiveness ..........................................................................................................26
8.4     Rejection Damages ................................................................................................26
8.5     Rejection Damages Bar Date.................................................................................26
8.6     Payments Related to Assumption of Executory Contracts and Unexpired
        Leases.....................................................................................................................27
8.7     Employee Benefit Plans and Other Benefits.........................................................27

8.8    Surety Bonds ....................................................................................28
8.9    Defined Benefit Plans .......................................................................28

ARTICLE IX CONDITIONS PRECEDENT ...........................................................28

9.1    Conditions to Confirmation ..............................................................28
9.2    Waiver of Conditions to Confirmation .............................................31
9.3    Conditions to Effectiveness ..............................................................31
9.4    Closing Obligation. ...........................................................................32
9.5    Notice of Effective Date ...................................................................32
9.6    Non-Occurrence of Effective Date ...................................................32
9.7    Collective Bargaining Agreement Not a Condition ...........................32

ARTICLE X IMPLEMENTATION OF THE PARENT'S PLAN .............................32

10.1    Sources of Cash and Other Consideration for Distributions ..............32
10.2    Support Agreement, Escrow Agreement and Deposit .......................33
10.3    Appointment of Parent's Plan Administrator and Funding of
         Miscellaneous Parent's Plan Administration Accounts. ....................33
10.4    Distributions To Allowed Claims ......................................................34
10.5    Release of Litigations .......................................................................34
10.6    Prepetition ASARCO Environmental Trust........................................35
10.7    Operations and Settlements Between the Confirmation Date and the
         Effective Date ...................................................................................35
10.8    Tax Refund........................................................................................35
10.9    Limited Liability Company Agreement.............................................35
10.10  Management of Reorganized ASARCO ..............................................36
10.11  Issuance of New Equity Interests in Reorganized ASARCO ...............36
10.12  Revesting...........................................................................................36
10.13  Vesting and Enforcement of Causes of Action...................................36
10.14  Further Authorizations ......................................................................36
10.15  Effectuating Documents and Further Transactions.............................37
10.16  Corporate Action...............................................................................37
10.17  Execution of Parent's Plan Documents...............................................37
10.18  Approval of Section 524(g) Trust Documents....................................37
10.19  Option to Create Work Trusts ...........................................................37
10.20  Approval of Mission Mine Settlement Agreement..............................37
10.21  Deemed Consolidation of Debtors for Plan Purposes Only.................37
10.22  Wind Down of Subsidiary Debtors....................................................38
10.23  Approval of Asbestos Insurance Settlement Agreements.....................38

ARTICLE XI INJUNCTIONS, RELEASES, AND DISCHARGE .............................38

11.1   Discharge and Release .................................................................38
11.2   Discharge Injunction ....................................................................39
11.3   The Permanent Channeling Injunction and the Asbestos Insurance
       Company Injunction.....................................................................39
11.4   Limitation of Injunctions .............................................................43
11.5   Exoneration and Reliance ............................................................43
11.6   Post-524(g) Indemnity .................................................................43
11.7   Additional Releases .....................................................................43
11.8   Exculpation .................................................................................44
11.9   Release of Fraudulent Transfer Claims Against Settling Asbestos
       Insurance Companies ...................................................................44
11.10  No Release With Respect to Pension Plans and Other Employee Benefit
       Plans............................................................................................44

ARTICLE XII MATTERS INCIDENT TO PARENT'S PLAN CONFIRMATION ..................45

12.1   Term of Certain Injunctions and Automatic Stay ..................................45
12.2   No Liability for Tax Claims..........................................................45
12.3   No Successor Liability .................................................................45
12.4   Insurance Neutrality ....................................................................46

ARTICLE XIII PROVISIONS GOVERNING DISTRIBUTIONS ............................................49

13.1   Plan Distributions........................................................................49
13.2   Delivery of Distributions .............................................................49
13.3   Distribution Record Date ..............................................................49
13.4   Unclaimed Property .....................................................................50
13.5   Compliance with Tax Requirements................................................50
13.6   Setoffs and Recoupments .............................................................51
13.7   No Distribution Pending Allowance ...............................................51
13.8   Disputed Claims Reserve .............................................................51
13.9   Surrender of Bondholder Certificates; Lost Certificates ....................52
13.10  Cancellation of Instruments .........................................................53

ARTICLE XIV PROCEDURES FOR TREATING DISPUTED CLAIMS ................................54

14.1   Objections to Claims....................................................................54
14.2   Objection Deadline ......................................................................54
14.3   Disallowance of Improperly Filed Claims .......................................54

ARTICLE XV MISCELLANEOUS.................................................................................54

15.1   General Retention of Jurisdiction ..................................................54
15.2   Jurisdiction Over the Section 524(g) Trust......................................55

15.3     Specific Purposes ............................................................................................55
15.4     Exclusive Jurisdiction of District Court for Certain Matters ...............................58
15.5     Post-Effective Date Status of the Committees and the FCR.................................58
15.6     Modification of Parent's Plan ...........................................................................59
15.7     Non-Consummation ..........................................................................................59
15.8     Entire Agreement .............................................................................................59
15.9     Rules Governing Conflicts Between Documents ..................................................59
15.10    Severability ....................................................................................................59
15.11    Headings ........................................................................................................60
15.12    Bar Date for Compensation and Reimbursement Claims .....................................60
15.13    Subsequent Administrative Claims Bar Date .....................................................60
15.14    Indenture Trustee Fee Claims. .........................................................................60
15.15    Governing Law ...............................................................................................61
15.16    Consent to Jurisdiction.....................................................................................61
15.17    Transfer Taxes ................................................................................................61
15.18    Recordable Order .............................................................................................61
15.19    Successors and Assigns.....................................................................................61
15.20    Waiver of Rights..............................................................................................61
15.21    Notices ..........................................................................................................62

## EXHIBITS TO THE PARENT'S PLAN

| **Exhibit Designation** | **Exhibit Title** |
|---|---|
| Parent's Plan Exhibit 1 | Schedule of ASARCO Protected Non-Debtor Affiliates |
| Parent's Plan Exhibit 2 | Schedule of Released Litigation |
| Parent's Plan Exhibit 3 | Schedule of Executory Contracts and Unexpired Leases to be Rejected Under the Parent's Plan |
| Parent's Plan Exhibit 4 | Form of Parent's Plan Administration Agreement |
| Parent's Plan Exhibit 5 | Schedule of Subsidiary Debtor Assets To Be Transferred to Reorganized ASARCO |
| Parent's Plan Exhibit 6 | Schedule of Asbestos Insurance Policies |
| Parent's Plan Exhibit 7 | Schedule of Class 2 Secured Claims |
| Parent's Plan Exhibit 8 | Schedule of Directors, Officers &Administrators |
| Parent's Plan Exhibit 9 | Schedule of Litigation Trust Claims |

Parent's Plan Exhibit 10    Form of Working Capital Facility

Parent's Plan Exhibit 11    Form of Section 524(g) Trust Agreement

Parent's Plan Exhibit 12    Form of ASARCO Security Agreement

Parent's Plan Exhibit 13    Form of ASARCO Deed of Trust

Parent's Plan Exhibit 14    Form of Parent Pledge Agreement

Parent's Plan Exhibit 15    Schedule of Owned Strategic Properties

Parent's Plan Exhibit 16    Form of Litigation Trust Agreement

Parent's Plan Exhibit 17    Amended Agreement in Principle

Parent's Plan Exhibit 18    List of Designated Properties to be Transferred to Environmental Custodial Trusts and Schedule of Environmental Custodial Trust Funding

Parent's Plan Exhibit 19    List of Sites Related to Environmental Claims

Parent's Plan Exhibit 20    List of Previously Settled Environmental Claims and Miscellaneous Federal and State Environmental Claims

Parent's Plan Exhibit 21    List of Asbestos Insurance Settlement Agreements

Parent's Plan Exhibit 22    Mission Mine Settlement Agreement

Parent's Plan Exhibit 23    Form of ASARCO Note and Guarantee

Parent's Plan Exhibit 24    Form of SCC Litigation Trust Agreement

Parent's Plan Exhibit 25    [omitted]

Parent's Plan Exhibit 26    Support Agreement

ASARCO Incorporated and Americas Mining Corporation ("AMC" and, together with ASARCO Incorporated, the "Parent") respectfully propose the following joint plan of reorganization (the "Parent's Plan") for the Debtors pursuant to section 1121(a) of the Bankruptcy Code.

## ARTICLE I

## DEFINITIONS, RULES OF INTERPRETATION, AND COMPUTATION OF TIME

1.1     Defined Terms.  Capitalized terms used in the Parent's Plan have the meanings set forth in the Uniform Glossary of Defined Terms for Plan Documents (the "Glossary"), which is **DS Exhibit A-2**.  Capitalized terms used in the Parent's Plan which are not defined in the Glossary but which are defined in the Bankruptcy Code shall have the respective meanings specified in the Bankruptcy Code.

1.2     Rules of Interpretation.  Unless otherwise provided herein for purposes of the Parent's Plan:  (a) whenever it is appropriate from the context, each term, whether stated in the singular or the plural, will include both the singular and the plural; (b) any reference in the Parent's Plan to a contract, instrument, release, or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (c) any reference in the Parent's Plan to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified, or supplemented pursuant to the Parent's Plan; (d) any reference to any Entity as a holder of a Claim includes that Entity's successors and assigns; (e) all references in the Parent's Plan to sections, Articles, and exhibits are references to sections, Articles, and exhibits of or to the Parent's Plan; (f) the words "herein," "hereof," "hereunder," "hereto" and others of similar import refer to the Parent's Plan in its entirety rather than to a particular portion of the Parent's Plan; (g) captions and headings to Articles and sections are inserted for convenience of reference only and are not intended to be a part of, or to affect the interpretation of, the Parent's Plan; and (h) the rules of construction set forth in section 102 of the Bankruptcy Code will apply.  Notwithstanding anything in the Parent's Plan to the contrary, any Claim against any Debtor asserted by an Affiliate of any Debtor shall be deemed disallowed in its entirety upon entry of the Confirmation Order.

1.3     Computation of Time.  In computing any period of time prescribed or allowed by the Parent's Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE CLAIMS, PRIORITY TAX CLAIMS AND DEMANDS

2.1     Administrative Claims.  Each holder of an Allowed Administrative Claim (except any holder that agrees to lesser or otherwise different treatment) shall be Paid in Full, in Cash, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, on the later of the Effective Date or the date on which such Administrative Claim becomes an Allowed Claim; provided, however, that (a) Allowed Administrative Claims representing

1

(1) post-petition liabilities incurred in the ordinary course of business by any Debtor or (2) post-petition contractual liabilities arising under loans or advances to any Debtor, whether or not incurred in the ordinary course of business, shall be paid by Reorganized ASARCO in accordance with the terms and conditions of the particular transactions relating to such liabilities and any agreements relating thereto; and (b) the Allowed Administrative Claims of Professional Persons shall be paid pursuant to a Final Order of the Bankruptcy Court.  Chase shall receive the Allowed Amount of any Administrative Claim under the Credit Facility in Cash, on the Effective Date, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim.  The Settled Asbestos Insurance Companies shall each have an Allowed Administrative Claim for the Pre-524(g) Indemnity, in accordance with the terms and conditions of the Asbestos Insurance Settlement Agreement.

The Environmental Custodial Trust Agreements and the trust created by the Residual Environmental Settlement Agreement shall be implemented exactly in accordance with the Debtors' Environmental 9019 Motion and orders approving such motion except for ministerial non-substantive changes.  By way of example but not limitation, the Parent shall have no standing to challenge any disbursements by the trustees, nor shall the Parent have standing to challenge the sale or disposition of any of the properties by the trustees.  On the Effective Date, title to the Designated Properties shall be conveyed and transferred into the Environmental Custodial Trusts and the trust created by the Residual Environmental Settlement Agreement for the sole benefit of the beneficiaries thereof and on the Effective Date the trusts shall be fully funded; (ii) the Environmental Custodial Trust Claims and the Administrative Claim under the Residual Environmental Settlement Agreement shall be treated as Administrative Claims and the trusts shall be funded in cash in full in such amount as set forth in the orders approving the environmental settlement agreements as incorporated into the Debtors' Plan and the environmental settlement agreements; and (iii) the Parent shall withdraw its objections to, and/or any then pending appeals of, the Debtors' Environmental 9019 Motion and the District Court Order denying withdrawal of the reference to the Bankruptcy Court as to the Residual Superfund Settlement Agreement and the Custodial Trust Settlement Agreements; it being understood that any such appeal shall be stayed as soon as possible pending confirmation.  If the Parent's Plan is confirmed, the appeals shall continue to be stayed until the Effective Date at which time the appeals shall be dismissed with prejudice.  Any stay of the appeals shall be without prejudice as to the rights of any of the parties to reserve all arguments including but not limited to the argument that confirmation of any plan other than the Parent Plan shall cause such appeals to become moot.  The Administrative Claims of the United States or any individual state under civil Environmental Laws relating to the Designated Properties shall, as contemplated by and to the same extent set forth in the Environmental 9019 Motion, be addressed through the Environmental Custodial Trust Settlement Agreements, the Environmental Custodial Trust Funding, and the Environmental Custodial Trust Administration Funding, which funding shall be paid by the Parent's Plan Administrator to the Environmental Custodial Trusts.

2.2    Priority Tax Claims.  Each holder of an Allowed Priority Tax Claim (except any holder that agrees to lesser or otherwise different treatment), at the election of the Parent, shall (1) be Paid in Full, in Cash, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, on the later of the Effective Date or the date upon which such Priority Tax Claim becomes an Allowed Claim, or (2) receive treatment in any other manner such that its Allowed Priority Tax Claim shall not be impaired pursuant to section 1124 of the

Bankruptcy Code, including, but not limited to, payment in accordance with the provisions of section 1129(a)(9)(C) of the Bankruptcy Code.

2.3     Demands.    Demands shall be accorded the Section 524(g) Treatment provided to Class 4 Asbestos Personal Injury Claims, and shall be determined, processed, liquidated and paid pursuant to the terms and conditions of the Section 524(g) Trust Distribution Procedures and the Section 524(g) Trust Agreement.

The FCR is entitled to make an election regarding whether to accept or reject the Section 524(g) Treatment, provided, however, that, under the Amended Agreement in Principle, the FCR and the Asbestos Claimants' Committee have agreed to support the Parent's Plan including the Section 524(g) Treatment.

ARTICLE III

CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     Generally.    Pursuant to section 1122 of the Bankruptcy Code, Claims and Interests, other than Administrative Claims and Priority Tax Claims, shall be divided into the Classes set forth in Article 3.2 of the Parent's Plan.   A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest falls within the description of that Class and is classified in a different Class to the extent that the Claim or Interest is within the description of that different Class.

3.2     Classes.    The following constitute the Classes of Claims and Interests addressed by the Parent's Plan.  All Classes of Claims shall be deemed divided into Subclasses (and sub-Subclasses, as applicable) of Claims against each of the Debtors.

(a)     Class 1 – Priority Claims.   Class 1 consists of all Priority Claims against each of the Debtors.

(b)     Class 2 – Secured Claims.   Class 2 consists of all Secured Claims against each of the Debtors.

(c)     Class 3 – General Unsecured Claims.   Class 3 consists of all General Unsecured Claims, including Bondholder Claims and Environmental Unsecured Claims, against each of the Debtors.

(d)     Class 4 – Asbestos Personal Injury Claims.   Class 4 consists of all Asbestos Personal Injury Claims against each of the Debtors.

(e)     Class 5 – Convenience Claims.   Class 5 consists of all Convenience Claims against each of the Debtors.

(f)     Class 6 – Late-Filed Claims.   Class 6 consists of all Late-Filed Claims against each of the Debtors.

(g)     Class 7 – Subordinated Claims.   Class 7 consists of all Subordinated Claims against each of the Debtors.

(h)     Class 8 – Environmental Reinstated Claims.   Class 8 consists of all Environmental Reinstated Claims against each of the Debtors.

(i)     Class 9 – Interests in ASARCO.   Class 9 consists of all Interests in ASARCO.

ARTICLE IV

TREATMENT OF CLAIMS AND INTERESTS

4.1     Unclassified Claims.  Each holder of an Allowed Administrative Claim, an Allowed Priority Tax Claim, or a Demand shall receive the treatment set forth respectively for each such category in Article II of the Parent's Plan.

4.2     Classes of Claims and Interests.

(a)     *Class 1 – Priority Claims.*

Each holder of an Allowed Priority Claim (except any holder that agrees to lesser or otherwise different treatment), in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, shall receive (i) Cash in an amount equal to the principal amount of such Allowed Priority Claim plus Post-Petition Interest on such Claim.

This Class is unimpaired.  Class 1, and holders of Priority Claims in Class 1, are conclusively presumed to have accepted the Parent's Plan and, accordingly, are not entitled to vote on the Parent's Plan.

(b)     *Class 2 – Secured Claims.*

Each holder of an Allowed Secured Claim, at the election of the Parent, in full satisfaction, settlement, release, extinguishment and discharge of such Claim, shall either (1) receive (i) Cash in an amount equal to the principal amount of such Allowed Secured Claim, and (ii) a Pro Rata share in recoveries realized by the Litigation Trust and the SCC Litigation Trust until the holder of such Allowed Secured Claim has received payment in full of Post-Petition Interest on such Claim; (2) be Reinstated; (3) receive from Reorganized ASARCO all Collateral securing such Allowed Secured Claim; or (4) receive such other treatment as may be agreed upon between the Parent and the holder of such Allowed Secured Claim.

The Secured Claims of the United States relating to the East Helena, Montana facility and the Globe, Colorado facility, and any Secured Claims relating to the Prepetition ASARCO Environmental Trust shall be satisfied by having the holders of such Claims retain the Liens securing such Claims, unless a holder agrees to different treatment.  In addition, upon the Effective Date, the causes of action asserted by the

4

Debtors against the United States of America on behalf of the EPA, the USDA, the Interior, and the International Boundary and Water Commission in Adversary Proceeding No. 07-02076 (and only those causes of action) shall be dismissed without prejudice.

No Secured Asbestos Personal Injury Claims have been filed against the Debtors or scheduled by the Debtors; therefore, all of the Asbestos Personal Injury Claims are Unsecured. This Plan nonetheless provides, out of an abundance of caution, the following treatment for Secured Asbestos Personal Injury Claims. Except as otherwise provided herein, any Asbestos Personal Injury Claimant with a Lien against any property of the Debtors, other than proceeds of an Asbestos Insurance Policy, shall retain the Lien securing such Claim, subject to the Parent's election in this Article 4.2(b). Secured Asbestos Personal Injury Claims which are secured by Liens against proceeds of an Asbestos Insurance Policy shall be included in the treatment accorded Class 4 Asbestos Personal Injury Claims, as set forth in Article 4.2(d) of the Parent's Plan, and shall be determined, processed, liquidated, and paid pursuant to the terms and conditions of the Asbestos TDP and the Asbestos Trust Agreement; provided, however, that the Asbestos Trust may assert any rights (including, but not limited to, avoidance rights and rights of setoff and recoupment), defenses (including, but not limited to, affirmative defenses), and objections that the Debtors have against or with respect to such Claims, which rights, defenses, and objections are transferred to the Asbestos Trust pursuant to the Parent's Plan.

Each Secured Claim shall be deemed to be in a separate sub-Class of Class 2 for all purposes hereunder, and treated as a separate sub-Class for voting and solicitation purposes. **Parent's Plan Exhibit 7** attached hereto lists the Class 2 Secured Claims (as such list may be amended, supplemented, or modified up to and including the Confirmation Date).

The Parent shall make its election on or before the Confirmation Date. The Parent shall solicit the votes of each sub-Class of Secured Claims. If the Parent elects to Reinstate a particular Secured Claim, that sub-Class shall be unimpaired, and that sub-Class's vote shall not be counted. If the Parent elects a payment option as to a particular Secured Claim, that sub-Class shall be deemed impaired, and that sub-Class's vote shall be counted.

(c)     *Class 3 – General Unsecured Claims.*

Each holder of an Allowed General Unsecured Claim (except any holder that agrees to lesser or otherwise different treatment), in full satisfaction, settlement, release, extinguishment, and discharge of such Claim, on the later of the Effective Date or the date on which such General Unsecured Claim becomes an Allowed Claim, shall receive (i) Cash in the amount of a Pro Rata share of a pool consisting of the Net Distributable Cash, the Tax Refund and $1.720 billion, (ii) a Pro Rata share of the Distributed Litigation Trust Interests to which such holder is entitled pursuant to Article 5.6 hereunder; and (ii) the SCC Litigation Trust Interests to which such holder is entitled pursuant to Article 5.18 hereunder; provided, that in no event shall a holder of a Claim in

Class 3 receive more than an amount equal to the principal Allowed Amount of such Claim plus Post-Petition Interest determined as set forth in Article 4.4.

In this sub-article, "Net Distributable Cash" means the Distributable Cash remaining after the Parent's Plan Administrator has made all distributions required under the Parent's Plan on account of Administrative Claims, Priority Tax Claims, Class 1 Claims and Class 2 Claims, and fully funded the Section 524(g) Trust, the Environmental Custodial Trust, the SCC Litigation Trust Expense Fund,  and the Working Capital Reserve.

Any objection by the Parent to the ability of a holder of an Environmental Unsecured Claim to receive Post-Petition Interest or to share in the SCC Litigation Trust Proceeds is waived.

This Class is impaired.  Holders of Allowed General Unsecured Claims in Class 3 are entitled to vote to accept or reject the Parent's Plan.

(d)      *Class 4 – Asbestos Personal Injury Claims*.

Asbestos Personal Injury Claims and Demands against any of the Debtors shall together be allowed in the aggregate amount of one billion dollars ($1.0 billion). On the Effective Date, the Section 524(g) Trust shall be established and funded with the Section 524(g) Trust Assets, and liability of the Debtors for all Asbestos Personal Injury Claims and Demands shall be assumed by, and channeled to, the Section 524(g) Trust without further act or deed, and satisfied as set forth herein.  The Section 524(g) Trust is described in Article VI below.  All Asbestos Personal Injury Claims and Demands shall be processed, liquidated and paid pursuant to the terms and provisions of the Section 524(g) Trust Distribution Procedures and the Section 524(g) Trust Agreement. With respect to any ASARCO Protected Party only, the sole recourse of the holder of an Unsecured Asbestos Personal Injury Claim or Demand shall be to the Section 524(g) Trust and the Section 524(g) Trust Distribution Procedures, and such holder shall have no rights whatsoever at any time to assert such holder's Claim or Demand against any ASARCO Protected Party.  Without limiting the foregoing, on the Effective Date, all Persons shall be permanently and forever stayed, restrained and enjoined from taking any enjoined actions against any ASARCO Protected Party (or against the property or interest in property of the Debtors and their Estates or of any ASARCO Protected Party, or against any Designated Property) for the purpose of, directly or indirectly, collecting, recovering, or receiving payment of, on or with respect to any Asbestos Personal Injury Claim or Demand.

This Class is impaired.  Holders of Allowed Asbestos Personal Injury Claims in Class 4 are entitled to vote to accept or reject the Parent's Plan.

(e)      *Class 5 – Convenience Claims*.

On the Effective Date, each holder of a Convenience Claim shall receive the Allowed Amount of such holder's Claim, in Cash, in full satisfaction, settlement, release, extinguishment, and discharge of such Claim.  Election by the holder of an

Allowed General Unsecured Claim otherwise treated under Class 3 of this Plan to reduce the Claim of such holder to $1,000 and to receive distribution as a Class 5 Convenience Claim shall constitute acceptance of the Parent's Plan and a waiver of the right to recover any amount in excess of $1,000 from any of the Debtors.

This Class is unimpaired.  Class 5, and holders of Convenience Claims in Class 5, are conclusively presumed to have accepted the Parent's Plan and, accordingly, are not entitled to vote on the Parent's Plan.

(f)    *Class 6 – Late-Filed Claims.*

Each holder of a Late-Filed Claim shall not receive or retain any property under the Parent's Plan on account of such Claim, except to the extent that Distributed Litigation Trust Interests are distributed to such holder pursuant to Article 5.6(a) hereunder, SCC Litigation Trust Proceeds are distributed to such holder pursuant to Article 5.19 hereunder, and/or funds from the Disputed Claims Reserve are distributed to such holders pursuant to Article 13.8(f) hereunder; provided, however, that in no event shall any holder of a Class 6 Claim receive distributions in excess of the principal Allowed Amount of such Late-Filed Claim plus Post-Petition Interest on such Claim.

This Class is impaired.  Class 6 is deemed to have rejected the Parent's Plan and, accordingly, holders of Claims in Class 6 are not entitled to vote on the Parent's Plan.

(g)    *Class 7 – Subordinated Claims.*

Each holder of a Subordinated Claim shall not receive or retain any property under the Parent's Plan on account of such Claim, except to the extent that Distributed Litigation Trust Interests are distributed to such holder pursuant to Article 5.6(a) hereunder, SCC Litigation Trust Proceeds are distributed to such holder pursuant to Article 5.19 hereunder, and/or funds from the Disputed Claims Reserve are distributed to such holders pursuant to Article 13.8(f) hereunder; provided, however, that in no event shall any holder of a Class 7 Claim receive distributions in excess of the principal Allowed Amount of such Subordinated Claim plus Post-Petition Interest on such Claim.

This Class is impaired.  Class 7 is deemed to have rejected the Parent's Plan and, accordingly, holders of Claims in Class 7 are not entitled to vote on the Parent's Plan.

(h)    *Class 8 – Environmental Reinstated Claims.*

On the Effective Date, Environmental Reinstated Claims shall be Reinstated and, from and after the Effective Date, Reorganized ASARCO shall assume, pay, perform and discharge when due all of its Assumed Environmental Liabilities.  For the avoidance of doubt, any claims of Montana Resources, Inc. arising as a result of adversary proceeding no. 07-02024 shall be classified as Environmental Reinstated Claims and receive the treatment hereunder.

This Class is unimpaired.   Class 8, and holders of Environmental Reinstated Claims in Class 8, are conclusively presumed to have accepted the Parent's Plan and, accordingly, are not entitled to vote on the Parent's Plan.

(i)      *Class 9 – Interests in ASARCO.*

The Interests in ASARCO shall be deemed cancelled, and the holder of such Interests shall not receive or retain any property under the Parent's Plan on account of such Interests.

In exchange for the Parent Contribution, ASARCO USA Incorporated or its designee shall receive the New Equity Interests on the Effective Date.

This Class is impaired.  Class 9 is deemed to have rejected the Parent's Plan and, accordingly, is not entitled to vote on the Parent's Plan.

4.3      Cramdown.   If all applicable requirements for Confirmation of the Parent's Plan are met as set forth in section 1129(a)(1) through (13) of the Bankruptcy Code except subsection (8) thereof, the Parent's Plan shall be treated as a request by the Parent for Confirmation of the Parent's Plan in accordance with the "cramdown" provisions of section 1129(b) of the Bankruptcy Code, notwithstanding the failure to satisfy the requirements of section 1129(a)(8), on the basis that the Parent's Plan is fair and equitable and does not discriminate unfairly with respect to each Class of Claims and Interests that is impaired under, and has not accepted, the Parent's Plan.  In addition, in the event Class 3 votes to reject the Parent's Plan, the Parent reserves the right to modify the Parent's Plan to the extent necessary to render the Parent's Plan confirmable.

4.4      Post-Petition Interest and Payment in Full Plus Interest.

Under the Parent's Plan, "Post-Petition Interest" shall mean interest on the Allowed Amount of a Claim from August 10, 2005 to and including five business days immediately prior to the date a distribution is made on account of such Claim, and after the Effective Date, interest on any unpaid portion of such Allowed Amount and any unpaid post-petition interest ("Post-Petition Interest").  Except as established pursuant to the procedure set forth in the following paragraph, Post-Petition Interest on Claims other than Class 2 Secured Claims shall be calculated at the federal judgment rate in accordance with section 1961 of title 28 of the United States Code (the "Plan Rate") and on Claims in Class 2 at the rate provided by section 506(b) of the Bankruptcy Code.

Any Claimant seeking (a) payment of Post-Petition Interest on such holder's Claim at a rate other than the Plan Rate or (b) reimbursement of attorneys' fees and other costs and expenses associated with such holder's Claim (or both) shall file a motion seeking such relief within 30 days after the Effective Date.  Any such motion must include all of the documentation upon which the Claimant relies to establish the Claimant's entitlement to (a) Post-Petition Interest at a rate other than the Plan Rate and (b) attorneys' fees and other costs and expenses. **THE INCLUSION OF THE ENTITLEMENT TO THESE TYPES OF CLAIMS IN PROOFS OF CLAIM SHALL NOT BE SUFFICIENT TO ESTABLISH SUCH CLAIMS WITHOUT A SUPPLEMENTAL FILING BY A CLAIMANT WITHIN THE SPECIFIED**

**TIME PERIOD.**  The Parent's Plan Administrator shall have 60 days after the Effective Date to resolve any such objection without need of Bankruptcy Court approval in which case the Parent's Plan Administrator shall file with the Bankruptcy Court a notice that the matter has been resolved; *provided, however*, that the Bankruptcy Court retains jurisdiction to resolve such matters in the event the Parent's Plan Administrator and the Claimant cannot reach an agreement.

<div align="center">

ARTICLE V

LITIGATION TRUST AND SCC LITIGATION TRUST

</div>

A.  The Litigation Trust.

  5.1 Creation of the Litigation Trust.  On the Effective Date, the Litigation Trust shall be created as provided in the Litigation Trust Agreement.  Prior to the Effective Date, the Litigation Trust Agreement may be amended to include new or different terms in order to comply with the requirements of the Bankruptcy Code, including, without limitation, section 1129(a) and (b) thereof.

  5.2 Appointment of Litigation Trustee and the Litigation Trust Board.

  (a) The Litigation Trustee shall be selected by the Parent.  Upon approval in the Confirmation Order, the Litigation Trustee shall be appointed.

  (b) The Parent (if prior to the Effective Date) or Reorganized ASARCO (if after the Effective Date) shall designate the Person who shall initially serve as Delaware Trustee of the Litigation Trust.

  (c) The Litigation Trustee shall report to and consult with the Litigation Trust Board, which shall consist of three members selected by the Parent.  Successors to the members of the Litigation Trust Board shall be selected by Reorganized ASARCO.

  (d) The Litigation Trustee and the Delaware Trustee shall each have and perform all of the rights, powers, and duties set forth in the Litigation Trust Agreement.

  5.3 Purpose of the Litigation Trust.  The Litigation Trust shall be established as a statutory trust for the purpose of pursuing the Litigation Trust Claims, liquidating all assets of the Litigation Trust for the benefit of the Litigation Trust Beneficiaries, receiving all Litigation Trust Claim recoveries, and distributing the resulting proceeds and other Cash of the Litigation Trust to the Litigation Trust Beneficiaries after payment of all expenses of the Litigation Trust.  The primary purpose of the Litigation Trust is to liquidate its assets, and the Litigation Trust shall have no objective or authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Litigation Trust.  Accordingly, the Litigation Trustee shall, in an expeditious but orderly manner, prosecute, settle, or otherwise dispose of Litigation Trust Claims, make timely distributions in accordance with the terms of the Litigation Trust Agreement, and not unduly prolong the Litigation Trust's duration.

5.4     Transfer of Litigation Trust Claims to the Litigation Trust.   On the Effective Date, Reorganized ASARCO shall transfer to the Litigation Trust, for the benefit of the Litigation Trust Beneficiaries, (a) all of the Debtors' and Reorganized ASARCO's respective rights, title, and interests in the Litigation Trust Claims free and clear of any and all Liens, Claims, encumbrances, or interests of any kind in such property of any other Person or Entity, other than Liens or encumbrances arising under the Bankruptcy Code or other applicable law; and (b) all of the Debtors' and Reorganized ASARCO's respective Privileges associated with the Litigation Trust Claims.  The Litigation Trust Claims are listed on **Parent's Plan Exhibit 9**; the Parent expressly reserves the right to amended such list from time to time up until the Effective Date of the Parent's Plan.  As soon as practicable after the Effective Date, Reorganized ASARCO shall transfer or make available to the Litigation Trustee, for the benefit of the Litigation Trust Beneficiaries, all documents in Reorganized ASARCO's possession, custody, or control in connection with the Litigation Trust Claims. For the avoidance of doubt, all of the causes of action arising under chapter 5 of the Bankruptcy Code are included as Litigation Trust Claims, with the exception of those avoidance actions against the Parent and its Affiliates that are specifically identified on **Parent's Plan Exhibit 2**, which are released by Article 10.5 of the Parent's Plan.  Such avoidance causes of action shall continue to be pursued by the Litigation Trust unless the Litigation Trustee determines that the costs of pursuing a particular avoidance action are not warranted.

5.5     The Litigation Trust.

(a)     The Litigation Trust Agreement, substantially in the form of **Parent's Plan Exhibit 16**, contains provisions customary to trust agreements utilized in comparable circumstances, including, without limitation, provisions to ensure the continued existence of the Litigation Trust as a grantor trust and the Litigation Trust Beneficiaries as grantors and owners thereof for federal income tax purposes.  Reorganized ASARCO, the Litigation Trustee, the Litigation Trust Beneficiaries, and the Delaware Trustee shall execute any document or other instrument as necessary to cause all of Reorganized ASARCO's respective rights, title, and interests in and to the Litigation Trust Claims to be transferred to the Litigation Trust.

(b)     The Litigation Trustee shall have full authority to take any steps necessary to administer the Litigation Trust Claims, including, without limitation, the duty and obligation to liquidate the Litigation Trust Claims.  Without limitation, the Litigation Trustee may object pursuant to section 502(d) of the Bankruptcy Code to any Proof of Claim filed by a defendant in any of the Litigation Trust Claims.  Both Reorganized ASARCO and the Litigation Trustee have the right to prosecute objections to any Proof of Claim filed by a defendant in any of the Litigation Trust Claims.

(c)     All costs and expenses associated with the administration of the Litigation Trust shall be advanced by Reorganized ASARCO in the ordinary course, provided, however, that Reorganized ASARCO shall be reimbursed for such funds from the proceeds of the Litigation Trust, if any.  Reorganized ASARCO, the Parent's Plan Administrator, and the Parent shall cooperate with the Litigation Trustee in pursuing the Litigation Trust Claims and shall provide reasonable access to personnel and books and records of Reorganized ASARCO, the Parent's Plan Administrator, and the Parent relating to the Litigation Trust Claims to representatives of the Litigation Trust to enable the Litigation Trustee to perform the Litigation

Trustee's tasks under the Litigation Trust Agreement and the Parent's Plan; provided, however, that any requests to obtain access to the Parent's personnel or books and records shall be made through Reorganized ASARCO or its representatives.

(d)    The Litigation Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, agents, employees, or other professionals and third parties as he may deem necessary or appropriate, with the prior approval of Reorganized ASARCO, to aid in the performance of the Litigation Trustee's responsibilities pursuant to the terms of the Parent's Plan, including, without limitation, the liquidation and distribution of Litigation Trust Claims.

(e)    Solely for tax purposes, it is intended that the Litigation Trust be classified as a liquidating trust under section 301.7701-4(d) of the Treasury Regulations, and the Litigation Trust Beneficiaries will be treated as the owners of their proportionate share of the assets of the Litigation Trust.  Accordingly, for federal income tax purposes, the Parent intends that all parties (including, without limitation, the Litigation Trustee, the Litigation Trust Beneficiaries, and the transferors, for tax purposes, of any assets transferred to the Litigation Trust) will take the position, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, that the transfer of assets to the Litigation Trust is a deemed transfer to the Litigation Trustee for the benefit of the Litigation Trust Beneficiaries (as of the Initial Distribution Date), and all income and gain of the Litigation Trust which is earned after such deemed transfer will be taxed to the Litigation Trust Beneficiaries on a current basis.  In addition, the investment powers of the Litigation Trustee will be limited to those powers that are consistent with the treatment of the Litigation Trust as a liquidating trust.

(f)    The fair market value of the portion of the Litigation Trust assets that is treated for federal income tax purposes as having been transferred for the benefit of each Litigation Trust Beneficiary as described in the preceding paragraph, and the fair market value of the portion of the Litigation Trust assets that is treated for federal income tax purposes as having been transferred to the Litigation Trustee for the benefit of any Litigation Trust Beneficiary as a result of a distribution of Litigation Trust Interests from the Disputed Claims Reserve, will be determined by the Litigation Trustee, and all parties (including, without limitation, the Litigation Trustee, the Litigation Trust Beneficiaries, and the transferors, for tax purposes, of any assets transferred to the Litigation Trust) will utilize such fair market value determined by the Litigation Trustee for all federal income tax purposes.

(g)    The Litigation Trustee will be responsible for filing all federal, state, and local tax returns for the Litigation Trust and paying any taxes imposed on the Litigation Trust. The Litigation Trustee will comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the Litigation Trustee will be subject to any such withholding and reporting requirements.  Any amount so withheld from a distribution to a Claimant or other distributee of the Litigation Trust will be treated as having been paid to, and received by, such distributee for purposes of the Parent's Plan and the Parent's Plan Documents.

(h)    Any items of income, deduction, credit, or loss of the Litigation Trust will be allocated by the Litigation Trustee for federal income tax purposes among current or former

11

Litigation Trust Beneficiaries, such allocation will be binding on all parties for all federal, state, local, and foreign income tax purposes, and such current or former Litigation Trust Beneficiaries will be responsible for the payment of any federal, state, local, and foreign income tax due on the income and gain so allocated to them.

(i)      In the event that one or more of the Debtors obtains approval, pursuant to Bankruptcy Rule 9019, of a settlement prior to the Effective Date of a cause of action that would have been transferred to the Litigation Trust on the Effective Date, the proceeds of the settlement shall be distributed to the Litigation Trust Beneficiaries in the same manner as the Litigation Trust Interests.  In the event of such a settlement, the Debtors that are parties to the settlement shall hold the proceeds in escrow for distribution on the Effective Date.  If the First L/C is collected, the proceeds of that First L/C will be contributed to the Litigation Trust and available for distribution pursuant to Article 5.7.

(j)      The Litigation Trust shall be deemed a "successor to the debtor" for purposes of section 1145 of the Bankruptcy Code and not necessarily for any other purpose.

   5.6 <u>Litigation Trust Interests</u>.

(a)      *Distributions of Litigation Trust Interests*.

On the Effective Date, the Litigation Trustee shall distribute 100% of the Litigation Trust Interests (the "<u>Distributed Litigation Trust Interests</u>"), Pro Rata, to holders of Claims in Classes 2 and 3.

Upon Payment in Full of all Allowed Claims in Classes 2 and 3, whether from the Litigation Trust or otherwise (and the resolution of all Disputed Claims in such Classes), the Litigation Trustee shall remove such Class 2 and 3 Claimants from the Trust Register and shall redistribute the Distributed Litigation Trust Interests, Pro Rata, to the holders of Allowed Class 6 Claims (and, pending resolution of Disputed Claims in Class 6, the Disputed Claims Reserve). Upon Payment in Full of all Allowed Claims in Class 6, the Litigation Trustee shall remove Class 6 Claimants from the Trust Register and redistribute the Distributed Litigation Trust Interests, Pro Rata, to the holders of Allowed Class 7 Claims (and, pending resolution of Disputed Claims in Class 7, the Disputed Claims Reserve).  Upon Payment in Full of all Allowed Claims in Class 7, the Litigation Trustee shall remove Class 7 Claimants from the Trust Register and redistribute the Distributed Litigation Trust Interests to Reorganized ASARCO.

(b)      *Interests Beneficial Only*.

The ownership of a Litigation Trust Interest shall not entitle any Litigation Trust Beneficiary to (1) any title in or to the assets of the Litigation Trust as such (which title shall be vested in the Litigation Trustee) or to any right to call for a partition or division of the assets of the Litigation Trust or to require an accounting; or (2) any voting rights with respect to the administration of the Litigation Trust and the actions of the Litigation Trustee in connection therewith.

(c)      *Maintenance of Register*.

The Litigation Trustee shall at all times maintain a Trust Register of the names, addresses, and number of Litigation Trust Interests of the Litigation Trust Beneficiaries.

(d)     *Evidence of Litigation Trust Interests.*

The Litigation Trustee shall have full power, authority, and discretion to determine whether ownership of any Litigation Trust Interest shall be represented by physical certificates, by book entries in lieu of physical certificates, or in any other form or manner. Regardless of such determination, the record holders of the Litigation Trust Interests shall be recorded and set forth in the Trust Register.

(e)     *Inapplicability of the Securities Exchange Act and the Trust Indenture Act.*

Beneficial interests in the Litigation Trust either (1) are not "securities" within the meaning of the federal and state securities laws or (2) may be issued without securities registration or licensing in reliance upon the exemption afforded by section 1145(a)(1) of the Bankruptcy Code. Without limitation to the foregoing, beneficial interests in any such Litigation Trust do not constitute "a class of equity securities" within the meaning of the Securities Exchange Act of 1934, as amended, and such Litigation Trust Interests shall not be subject to registration under such act. Without limitation to the foregoing, beneficial interests in the Litigation Trust are not "evidences of indebtedness" within the meaning of the Trust Indenture Act of 1939, as amended, and may be issued without qualification of an indenture under such act.

5.7     <u>Distributions of Litigation Proceeds and Other Property</u>.  The Litigation Trustee shall apply all proceeds of the litigations transferred to the Litigation Trust, and any other Cash of the Litigation Trust in the following order:  <u>first</u>, to pay all costs and expenses of the Litigation Trust, including, without limitation, compensation payable to the Litigation Trustee; <u>second</u>, to reimburse Reorganized ASARCO for any funds provided to the Litigation Trust or paid on its behalf by Reorganized ASARCO; <u>third</u>, to the Litigation Trust Beneficiaries. In no event shall any holder of an Allowed Claim in Class 2, 3, 6, or 7 receive distributions from the Litigation Trust which, when combined with Available Parent's Plan Funds or other forms of consideration provided to such holder with respect such Claim, exceed the Allowed amount of such Claim together with Post-Petition Interest.  Upon Payment in Full of all Allowed Claims in Classes 2, 3, 6, and 7, all remaining proceeds or other Cash of the Litigation Trust, if any, shall be distributed to Reorganized ASARCO.

5.8     <u>Termination of the Litigation Trust</u>.

(a)     The Litigation Trust shall terminate on the earlier of:  (1) 30 days after the distribution of all of the assets of the Litigation Trust in accordance with the terms of the Litigation Trust Agreement and the Parent's Plan; or (2) the fifth anniversary of the Effective Date; <u>provided</u>, <u>however</u>, that, on or prior to a date less than six months (but not less than three months) prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the Litigation Trust for a finite period if, based on the facts and circumstances, the Bankruptcy Court finds that such extension is necessary to the liquidating purpose of the Litigation Trust.  The Bankruptcy Court may approve multiple extensions of the term of the

Litigation Trust, provided that (i) any such extension is so approved on or prior to a date less than six months (but not less than three months) prior to termination of the immediately preceding extended term, and (ii) the Litigation Trustee receives an opinion of counsel or a favorable ruling from the IRS that any further extension would not adversely affect the status of the Litigation Trust as a grantor trust for federal income tax purposes.

(b)     The Litigation Trustee shall not unduly prolong the duration of the Litigation Trust and shall at all times endeavor to resolve, settle, or otherwise dispose of all of the Litigation Trust Claims and to effect the distribution of the assets of the Litigation Trust to the holders of the Litigation Trust Interests in accordance with the terms hereof and terminate the Litigation Trust as soon as practicable.

5.9     Termination of the Litigation Trustee and the Delaware Trustee.   The duties, responsibilities, rights, and obligations of the Litigation Trustee and the Delaware Trustee for the Litigation Trust shall terminate in accordance with the terms of the Litigation Trust Agreement.

5.10     Claims Against Montana Resources Reserved for Reorganized ASARCO. The Debtors' claims against Montana Resources, Inc., including those asserted in Adv. No. 07-02024, pending in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, are not Litigation Trust Claims under the Parent's Plan, and shall not be transferred to the Litigation Trust.  Rather, the Debtors' claims against Montana Resources, Inc., are expressly reserved for Reorganized ASARCO to pursue in the ordinary course.

B.   The SCC Litigation Trust.

5.11     Creation of the SCC Litigation Trust.   In accordance with the SCC Litigation Trust Agreement (the form of which is attached hereto as **Parent's Plan Exhibit 24**, the "SCC Litigation Trust Agreement"), the SCC Litigation Trust shall be established on the Effective Date.  Prior to the Effective Date, the SCC Litigation Trust Agreement may be amended to include new or different terms in order to comply with the requirements of the Bankruptcy Code, including, without limitation, section 1129(a) and (b) of the Bankruptcy Code. In the event of any discrepancies between Articles 5.11 through 5.20 of the Parent's Plan and the SCC Litigation Trust Agreement, the SCC Litigation Trust Agreement shall govern.

5.12     Appointment of Trustees.  The SCC Litigation Trustee shall be selected by the SCC Litigation Trust Board and appointed upon approval in the Confirmation Order, in accordance with the SCC Litigation Trust Agreement.

The duties, responsibilities, rights, and obligations of the SCC Litigation Trustee are set forth in the SCC Litigation Trust Agreement and shall terminate in accordance with the terms of the SCC Litigation Trust Agreement.  The SCC Litigation Trustee shall report to the SCC Litigation Trust Board.  For the avoidance of doubt, the SCC Litigation Trustee shall not report to the Parent or Reorganized ASARCO and shall have no fiduciary duties to the Parent or Reorganized ASARCO.

5.13     SCC Litigation Trust Board.  The SCC Litigation Trust Board shall consist of three members initially selected as follows: (1) one member selected by the ASARCO

Committee; (2) one member selected by the DOJ (in consultation with the states that have Allowed Unsecured Environmental Claims); and (3) one member jointly selected by the other two members.

The duties, responsibilities, rights, and obligations of the SCC Litigation Trust Board are set forth in the SCC Litigation Trust Agreement and shall terminate in accordance with the terms of the SCC Litigation Trust Agreement.  For the avoidance of doubt, the SCC Litigation Trust Board shall not report to the Parent or Reorganized ASARCO and shall have no fiduciary duties to the Parent or Reorganized ASARCO.

Successors to the members of the SCC Litigation Trust Board shall be selected as follows: (1) in the case of the member originally selected by the DOJ, by the DOJ (in consultation with the states that have Allowed Unsecured Environmental Claims); and (2) in the case of either of the other two members, by the remaining members.

5.14    Purpose of the SCC Litigation Trust.  The SCC Litigation Trust shall be established as a statutory trust for the purpose of pursuing the SCC Litigation Trust Claims, liquidating all assets of the SCC Litigation Trust for the benefit of the SCC Litigation Trust Beneficiaries, receiving all SCC Litigation Trust Claims recoveries not in excess of the Maximum Recovery (defined below), and distributing the resulting SCC Litigation Trust Proceeds and other Cash of the SCC Litigation Trust to the SCC Litigation Trust Beneficiaries after payment of all expenses of the SCC Litigation Trust.  The primary purpose of the SCC Litigation Trust is to liquidate its assets, and the SCC Litigation Trust shall have no objective or authority to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the SCC Litigation Trust.

5.15    Transfer of SCC Litigation Trust Claims to the SCC Litigation Trustee. On the Effective Date, the Reorganized Debtors shall transfer, assign, and deliver to the SCC Litigation Trustee for the benefit of the SCC Litigation Trust Beneficiaries (1) all of the Debtors' respective rights, title, and interests in the SCC Litigation Trust Claims, subject to the Maximum Recovery, free and clear of any and all Liens, Claims, encumbrances, or interests of any kind in such property of any Person or Entity, other than Liens or encumbrances arising under the Bankruptcy Code or other applicable law; (2) all of the Debtors' respective rights, title, and interest in the Debtors' Privileges associated with the SCC Litigation Trust Claims; and (3) the $20 million SCC Litigation Trust Expense Fund.  The SCC Litigation Trust shall not be entitled to recover from the defendants named in the SCC Litigation Trust Claims or any ASARCO Protected Party any amount in connection with the SCC Litigation Trust Claims in excess of the amount necessary to provide, as of any date of determination, Payment in Full to all holders of Allowed Claims in Classes 1, 2, 3, 6, and 7 plus the SCC Litigation Trust's aggregate administrative expenses minus the SCC Litigation Trust Expense Fund (the "Maximum Recovery").  If the SCC Litigation Trust sells, transfers or otherwise disposes of its interests in the SCC Litigation Trust Claims, any purchaser, transferee and/or successor-in-interest shall not be entitled to recover from the defendants named in the SCC Litigation Trust Claims or any ASARCO Protected Party in connection with the SCC Litigation Trust Claims any amount in excess of the Maximum Recovery.  For the avoidance of doubt, no purchaser, transferee, or successor-in-interest of the SCC Litigation Trust's interests in the SCC Litigation Trust Claims shall be entitled to recover from the defendants named in the SCC Litigation Trust Claims or any

ASARCO Protected Party any fees, costs or expenses including, without limitation, attorney's fees or litigation costs and expenses.

The Parent's Plan Administrator shall calculate the Maximum Recovery, initially no later than thirty days after the Effective Date, and thereafter quarterly, and shall provide such calculation to the SCC Litigation Trust Board and the DOJ, and shall make a good faith effort to consensually resolve any disagreements with the SCC Litigation Trust Board or the DOJ regarding the amount of the Maximum Recovery.  Any disputes regarding the Maximum Recovery shall be presented to the Bankruptcy Court for resolution.

The SCC Litigation Trustee shall be granted the rights and powers of a debtor in possession under section 1107 of the Bankruptcy Code, including, without limitation, the duty to prosecute the SCC Litigation Trust Claims and distribute the proceeds of such claims, and such other rights and powers as set forth in the SCC Litigation Trust Agreement; subject to the Maximum Recovery.  All decisions of the SCC Litigation Trustee and the SCC Litigation Trust Board with respect to the pursuit or settlement of the SCC Litigation Trust Claims shall be taken in good faith.

5.16    The SCC Litigation Trust Agreement.    The SCC Litigation Trust Agreement shall contain provisions customary to trust agreements utilized in comparable circumstances. The Reorganized Debtors, the SCC Litigation Trustee, the SCC Litigation Trust Beneficiaries, and the Delaware Trustee shall execute any document or other instrument as necessary to cause all of the Debtors' respective rights, title, and interests in pursuing the SCC Litigation Trust Claims to be transferred to the SCC Litigation Trust, subject to the Maximum Recovery.

The SCC Litigation Trustee shall have full authority (subject, in certain instances, to approval by the SCC Litigation Trust Board) to take any steps necessary to administer the SCC Litigation Trust Claims, subject to the Maximum Recovery, including, without limitation, the duty and obligation to liquidate the SCC Litigation Trust Claims.

All costs and expenses associated with the administration of the SCC Litigation Trust shall be the responsibility of and paid by the SCC Litigation Trust.  Notwithstanding the foregoing, each of Reorganized ASARCO and the Parent's Plan Administrator shall cooperate with the SCC Litigation Trustee in pursuing the SCC Litigation Trust Claims and shall provide reasonable access to their respective personnel and books and records relating to the SCC Litigation Trust Claims to representatives of the SCC Litigation Trust for the purpose of enabling the SCC Litigation Trustee to perform the SCC Litigation Trustee's tasks under the SCC Litigation Trust Agreement and this Plan.

The SCC Litigation Trustee may retain such law firms, accounting firms, experts, advisors, consultants, investigators, appraisers, agents, employees, or other professionals and third parties as the SCC Litigation Trustee and the SCC Litigation Trust Board may deem necessary or appropriate, and at the sole expense of the SCC Litigation Trust, to aid in the performance of the SCC Litigation Trustee's responsibilities pursuant to the terms of this Plan, including, without limitation, the liquidation and distribution of SCC Litigation Trust Claims.

Except as otherwise provided herein, the SCC Litigation Trust shall be deemed a "successor to the debtor" for purposes of sections 1123(b)(3) and 1145 of the Bankruptcy Code and not necessarily for any other purpose.

The SCC Litigation Trustee and the SCC Litigation Trust Beneficiaries shall agree that the escrow agreement between the Debtors and Parent with respect to the SCC Stock subject of the SCC Final Judgment (the "SCC Litigation Escrow Agreement"), save and except the requirements of ¶ 3(c) in the SCC Litigation Escrow Agreement, is and shall be adequate security to stay execution of the SCC Final Judgment for so long as the SCC Litigation Trust shall remain unliquidated, it being expressly agreed and understood that the Parent may seek, from a court having jurisdiction with respect to the SCC Final Judgment, relief from the obligations in ¶ 3(c) of the Escrow Agreement including, without limitation, the posting of a supersedeas bond, and the SCC Litigation Trust Beneficiaries shall be deemed to have consented to such relief.

5.17   Tax Matters.   Solely for tax purposes, it is intended that the SCC Litigation Trust be classified as a liquidating trust under section 301.7701-4(d) of the Treasury Regulations, and the SCC Litigation Trust Beneficiaries will be treated as the owners of their proportionate share of the assets of the SCC Litigation Trust. Accordingly, for federal income tax purposes, the Reorganized Debtors intend that all parties (including, without limitation, the SCC Litigation Trustee, the SCC Litigation Trust Beneficiaries, and the transferors, for tax purposes, of any assets transferred to the SCC Litigation Trust) shall take the position, subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, that the transfer of assets to the SCC Litigation Trust is a deemed transfer to the SCC Litigation Trust Beneficiaries (as of the Initial Distribution Date), followed by a deemed transfer by such SCC Litigation Trust Beneficiaries to the SCC Litigation Trust, and all income and gain of the SCC Litigation Trust which is earned after such deemed transfer shall be taxed to the SCC Litigation Trust Beneficiaries on a current basis. In addition, the investment powers of the SCC Litigation Trustee shall be limited to those powers that are consistent with the treatment of the SCC Litigation Trust as a liquidating trust.

The fair market value of the portion of the SCC Litigation Trust assets that is treated for federal income tax purposes as having been transferred to each SCC Litigation Trust Beneficiary as described in the preceding paragraph, and the fair market value of the portion of the SCC Litigation Trust assets that is treated for federal income tax purposes as having been transferred to the SCC Litigation Trustee for the benefit of any SCC Litigation Trust Beneficiary as a result of a distribution of SCC Litigation Trust Interests from the Disputed Claims Reserve, shall be determined by the SCC Litigation Trustee, and all parties (including, without limitation, the SCC Litigation Trustee, the SCC Litigation Trust Beneficiaries, and the transferors, for tax purposes, of any assets transferred to the SCC Litigation Trust) shall utilize such fair market value determined by the SCC Litigation Trustee for all federal income tax purposes.

The SCC Litigation Trustee shall be responsible for filing all federal, state, and local tax returns for the SCC Litigation Trust and paying any taxes imposed on the SCC Litigation Trust. The SCC Litigation Trustee shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all distributions made by the SCC Litigation Trustee shall be subject to any such withholding and reporting requirements.

Any amount so withheld from a distribution to an SCC Litigation Trust Beneficiary (or its designee) shall be treated as having been paid to, and received by, such SCC Litigation Trust Beneficiary for purposes of the Parent's Plan and the Parent's Plan Documents.

Any items of income, deduction, credit, or loss of the SCC Litigation Trust shall be allocated by the SCC Litigation Trustee for federal income tax purposes among current or former SCC Litigation Trust Beneficiaries, such allocation shall be binding on all parties for all federal, state, local, and foreign income tax purposes, and such current or former SCC Litigation Trust Beneficiaries shall be responsible for the payment of any federal, state, local, and foreign income tax due on the income and gain so allocated to them.

5.18   <u>SCC Litigation Trust Interests</u>.

(1)   *Issuance of SCC Litigation Trust Interests.*

On the Effective Date, the SCC Litigation Trustee shall distribute 100% of the SCC Litigation Trust Interests, Pro Rata, to holders of Claims in Classes 2 and 3 (the "<u>SCC Litigation Trust Initial Beneficiaries</u>").

Upon Payment in Full of all Allowed Claims of the SCC Litigation Trust Initial Beneficiaries, whether from the SCC Litigation Trust or otherwise (and the resolution of all Disputed Claims held by SCC Litigation Trust Initial Beneficiaries), the SCC Litigation Trustee shall remove such SCC Litigation Trust Initial Beneficiaries from the SCC Litigation Trust Register and shall redistribute the SCC Litigation Trust Interests, Pro Rata, to the holders of Allowed Class 6 Claims (and, pending resolution of Disputed Claims in Class 6, the Disputed Claims Reserve). Upon Payment in Full of all Allowed Claims in Class 6, the SCC Litigation Trustee shall remove Class 6 Claimants from the SCC Litigation Trust Register and redistribute the Distributed Litigation Trust Interests, Pro Rata, to the holders of Allowed Class 7 Claims (and, pending resolution of Disputed Claims in Class 7, the Disputed Claims Reserve). Upon Payment in Full of all Allowed Claims in Class 7, the Litigation Trustee shall remove Class 7 Claimants from the SCC Litigation Trust Register.

Thereafter, or otherwise after distribution of all SCC Litigation Trust Proceeds in accordance with article 5.19 and the SCC Litigation Trust Agreement, the SCC Litigation Trust shall cease to be entitled to pursue recovery upon the SCC Litigation Trust Claims; all causes of action relating to the SCC Litigation Trust Claims shall be deemed, without any notice, the entry of any other order, or any other action by any party to have been released and dismissed or withdrawn with prejudice; and any surplus funds in the SCC Litigation Trust shall be returned to Parent or other applicable defendant.

(2)   *Interests Beneficial Only.*

The ownership of a SCC Litigation Trust Interest shall not entitle any SCC Litigation Trust Beneficiary to any title in or to the assets of the SCC Litigation Trust as such (which title shall be vested in the SCC Litigation Trustee) or to any right to call for a partition or division of the assets of the SCC Litigation Trust or to require an accounting.

(3)   *Maintenance of SCC Litigation Trust Register.*

18

The SCC Litigation Trustee shall appoint an SCC Litigation Trust Registrar, which may be the SCC Litigation Trustee, for the purpose of recording ownership of the SCC Litigation Trust Interests. The SCC Litigation Trust Register shall contain the names, addresses for payment and notice, and class and number of SCC Litigation Trust Interests of each of the SCC Litigation Trust Beneficiaries. The SCC Litigation Trust Registrar, if other than the SCC Litigation Trustee, may be such other institution acceptable to the SCC Litigation Trustee and shall be entitled to receive reasonable compensation from the SCC Litigation Trust as an expense of the SCC Litigation Trust.

 (4) *Evidence of SCC Litigation Trust Interests.*

 The SCC Litigation Trustee shall have full power, authority, and discretion to determine whether ownership of any SCC Litigation Trust Interest shall be represented by physical certificates, by book entries in lieu of physical certificates, or in any other form or manner. Regardless of such determination, the record holders of the SCC Litigation Trust Interests shall be recorded and set forth in the SCC Litigation Trust Register.

 5.19 <u>Distributions of SCC Litigation Trust Proceeds and Other Property</u>. The SCC Litigation Trustee shall apply all SCC Litigation Trust Proceeds, any proceeds therefrom, and any other Cash of the SCC Litigation Trust (other than the SCC Litigation Trust Expense Fund) in the following order:

 (1) first, to pay all costs and expenses of the SCC Litigation Trust to the extent not paid by or from the SCC Litigation Trust Expense Fund, including, without limitation, compensation payable to the SCC Litigation Trustee, to satisfy other liabilities incurred or assumed by the SCC Litigation Trust (or to which the assets are otherwise subject) in accordance with the Parent's Plan or the SCC Litigation Trust Agreement, to hold such amounts in reserve as the SCC Litigation Trustee deems reasonably necessary to meet future expenses and contingent liabilities, to maintain the value of the SCC Litigation Trust Assets (including the SCC Litigation Trust Expense Fund), and to pay the Plan Administrator such amounts as the Plan Administrator designates from time to time for the purpose of paying, or indemnifying Reorganized ASARCO for, any taxes incurred or expected to be incurred by Reorganized ASARCO in connection with the SCC Litigation Trust as a result of the allocation of tax items by the SCC Litigation Trustee or the allowance or disallowance of Disputed Claims; and

 (2) second, to pay any remaining amounts to the SCC Litigation Trust Beneficiaries (including to the Plan Administrator for deposit into the Disputed Claims Reserve on account of the Claims of any Claimant that would be an SCC Litigation Trust Beneficiary absent such objection) Pro Rata based on their SCC Litigation Trust Interests; <u>provided</u>, <u>however</u>, that (a) in no event shall any holder of a Claim in Class 2, 3, 6 or 7 receive aggregate distributions in excess of Payment in Full on account of such Claim. If the Plan Administrator holds proceeds of the SCC Litigation Trust in the Disputed Claims Reserve on account of a Disputed Claim that is finally determined adversely to such Claimant, in whole or in part, the Plan Administrator shall return to the SCC Litigation Trust the disallowed portion that the Plan Administrator received from the SCC Litigation Trust on account of such Claim and shall pay any Allowed portion to such Claimant.

(3)     Third, upon termination of the SCC Litigation Trust, if the SCC Litigation Trust Expense Fund has funds remaining after the payment of all of the SCC Litigation Trust's expenses, such remaining funds shall be distributed as set forth in clause (2).

(4)     Fourth, any funds remaining after all Claims entitled to share in the SCC Litigation Trust have been Paid in Full and all expenses of the SCC Litigation Trust have been satisfied, shall be distributed to Parent or other applicable defendant.

5.20     Termination of the SCC Litigation Trust.  The SCC Litigation Trust shall terminate on the earlier of: (1) 30 days after the distribution of all of the assets of the SCC Litigation Trust in accordance with the terms of the SCC Litigation Trust Agreement and the Parent's Plan; or (2) the fifth anniversary of the Effective Date; provided, however, that, on or prior to a date less than six months (but not less than three months) prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term of the SCC Litigation Trust for a finite period if, based on the facts and circumstances, the Bankruptcy Court finds that such extension is necessary to the liquidating purpose of the SCC Litigation Trust.  The Bankruptcy Court may approve multiple extensions of the term of the SCC Litigation Trust; provided that any such extension is so approved on or prior to a date less than six months (but not less than three months) prior to termination of the immediately preceding extended term.

The SCC Litigation Trustee shall not unduly prolong the duration of the SCC Litigation Trust and shall endeavor to resolve, settle, or otherwise dispose of all of the SCC Litigation Trust Claims and to effect the distribution of the assets of the SCC Litigation Trust to the holders of SCC Litigation Trust Interests in accordance with the terms hereof and terminate the SCC Litigation Trust as soon as practicable.

ARTICLE VI

SECTION 524(G) TRUST

6.1     Establishment and Purpose of the Section 524(g) Trust.  On the Effective Date, the Section 524(g) Trust shall be established in accordance with the Parent's Plan Documents.  When established, the Section 524(g) Trust shall be empowered in accordance with the Parent's Plan and the Parent's Plan Documents.  The Section 524(g) Trust will be a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1.  The purposes of the Section 524(g) Trust shall be to, among other things, (i) liquidate, resolve, pay, and satisfy all Asbestos Personal Injury Claims and Demands in accordance with the Parent's Plan, the Section 524(g) Trust Distribution Procedures, the Section 524(g) Trust Agreement, and the Confirmation Order, (ii) receive, preserve, hold, manage, and maximize the Section 524(g) Trust Assets for use in paying and satisfying Allowed Asbestos Personal Injury Claims and Demands in accordance with the terms of the Section 524(g) Trust Agreement, and (iii) take other actions deemed by the Section 524(g) Trustees to be in the best interests of the holders of the Asbestos Personal Injury Claims and Demands, who are the sole beneficiaries of the Section 524(g) Trust.

6.2     Section 524(g) Trust Agreement.  The Section 524(g) Trust Agreement shall be substantially in the form of the "Section 524(g) Trust Agreement" attached as **Parent's**

**Plan Exhibit 11** to the Parent's Plan, which contains provisions customary to documents utilized in comparable circumstances, and shall be subject to the reasonable approval of the FCR and the Asbestos Claimants' Committee.

6.3     Transfers and Assignments to the Section 524(g) Trust.  On the Effective Date, the Parent's Plan Administrator shall transfer and assign to the Section 524(g) Trust for the benefit of the Section 524(g) Trust Beneficiaries the Section 524(g) Trust Assets.

6.4     Control of the Asbestos Insurance Actions and Asbestos Insurance Recoveries.  The right to control the Asbestos Insurance Actions and all Asbestos Insurance Recoveries, including negotiations relating thereto and settlements thereof, shall be vested in the Section 524(g) Trust on and after the Effective Date.   Notwithstanding the foregoing, Reorganized ASARCO, the Parent's Plan Administrator and the Parent shall cooperate with the Section 524(g) Trustees in pursuing the Asbestos Insurance Actions through such means, and shall provide reasonable access to personnel and books and records of Reorganized ASARCO relating to the Asbestos Insurance Actions to representatives of the Section 524(g) Trust, to enable the Section 524(g) Trustees to perform the Section 524(g) Trustees' tasks under the Section 524(g) Trust Agreement and the Parent's Plan, as set forth in the Section 524(g) Trust Cooperation Agreement and as is discussed below in Article 6.11 in regards to Reorganized ASARCO.

Notwithstanding the foregoing, Reorganized ASARCO reserves the right to retain the Asbestos Insurance Recoveries and pay the net proceeds of such recoveries (after the deduction of the reasonable and necessary unreimbursed costs and expenses associated with obtaining such proceeds) to the Section 524(g) Trust if, after consultation with the Section 524(g) Trust, it is determined that such retention better preserves these assets.

6.5     Assumption of Liabilities by the Section 524(g) Trust.  On the Effective Date, in exchange for funding in accordance with Article 6.3 of the Parent's Plan, the Section 524(g) Trust shall be deemed, without need for further action, to have assumed responsibility and liability for all Asbestos Personal Injury Claims and Demands.

6.6     Tax Matters.  No election will be made to treat the Section 524(g) Trust as a grantor trust for U.S. federal income tax purposes.  The Section 524(g) Trust is intended to be treated as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1, and hence as a taxable entity for federal income tax purposes, and the Section 524(g) Trustees shall be the "administrators" of the Section 524(g) Trust pursuant to Treasury Regulation section 1.468B-2(k)(3).  The Section 524(g) Trustees shall cause all taxes imposed on the Section 524(g) Trust to be paid using assets of the Section 524(g) Trust and shall comply with all tax reporting and withholding requirements imposed on the Section 524(g) Trust under applicable tax laws, and in particular the rules applicable to a qualified settlement fund.

6.7     Section 524(g) Trust Expenses.  The Section 524(g) Trust shall initially be funded in the amount of $27.5 million, which amount shall be deemed an Administrative Expense, to pay Section 524(g) Trust Expenses (including applicable taxes).  Following such initial funding, neither the Debtors, the Parent, the Parent's Plan Administrator, nor Reorganized ASARCO shall have any obligation to pay or reimburse any Section 524(g) Trust Expenses.

However, nothing shall preclude the Section 524(g) Trustees from seeking reimbursement of such expenses from any Asbestos Insurance Company.

6.8     _Initial Section 524(g) Trustees_.  The initial Section 524(g) Trustees shall be those Persons nominated by the Asbestos Claimants' Committee and the FCR, if the Asbestos Claimants' Committee and the FCR are willing to make such nominations, or otherwise nominated by the Parent, and designated in the Confirmation Order.

6.9     _The FCR_.  On and after the Effective Date, Judge Robert C. Pate shall serve as the FCR, as such term is defined in the Section 524(g) Trust Agreement, and shall have and exercise the functions, rights, duties, powers and privileges provided in the Section 524(g) Trust Documents, if Judge Robert C. Pate is willing to so serve.  If not, the Bankruptcy Court will appoint his replacement.

6.10    _Section 524(g) Trust Advisory Committee_.  The initial members of the Section 524(g) Trust Advisory Committee shall be those Persons nominated by the Asbestos Claimants' Committee if the Asbestos Claimants' Committee is willing to make such nominations, or otherwise nominated by the Parent, and designated in the Confirmation Order. They shall consult with and advise the Section 524(g) Trustees regarding the administration of the Section 524(g) Trust and the liquidation and resolution of Asbestos Personal Injury Claims and Demands in accordance with the provisions of the Parent's Plan and the Section 524(g) Trust Documents.

6.11    _Asbestos Books_.

(a)     Subject to the conditions set forth herein and as more fully described in the Section 524(g) Cooperation Agreement, the Section 524(g) Trust, through its duly authorized representatives, shall have the right, upon reasonable prior written notice to Reorganized ASARCO, to either, at the election of Reorganized ASARCO in its sole discretion: (i) have Reorganized ASARCO transfer into the Section 524(g) Trust's possession all or part of the Asbestos Books in their current condition upon request of the Section 524(g) Trust and on the condition that the Section 524(g) Trust will incur all costs and expenses of the transfer; or (ii) to inspect and, at the sole expense of the Section 524(g) Trust, make copies of the Asbestos Books on any Business Day and as often as may reasonably be desired; _provided_ that, if so requested, the Section 524(g) Trust shall have entered into a reasonable confidentiality agreement satisfactory in form and substance to Reorganized ASARCO.  All costs and expenses associated with the storage of and access to any Asbestos Books that remain in the possession of Reorganized ASARCO shall be the responsibility of, and paid by, Reorganized ASARCO.  All costs and expenses associated with the storage of and access to any Asbestos Books that are transferred to the Section 524(g) Trust shall be the responsibility of, and paid by, the Section 524(g) Trust.  Reorganized ASARCO, the Parent's Plan Administrator and the Parent shall cooperate with the Section 524(g) Trust in transferring or providing access to the Asbestos Books in their current condition, and shall also provide reasonable access to necessary or appropriate personnel and the Asbestos Books as contemplated herein and in the Section 524(g) Cooperation Agreement.  Subject to the conditions set forth herein and in the Section 524(g) Cooperation Agreement, the Section 524(g) Trust, through its duly authorized representatives, shall also have the right, upon reasonable prior written notice, to conduct reasonable interviews

of employees and other representatives of Reorganized ASARCO concerning matters reasonably related to the Asbestos Books. Reorganized ASARCO shall provide the Section 524(g) Trust with advance notice of any proposed disposition of any of the Asbestos Books and a reasonable opportunity to segregate and remove such Asbestos Books as the Section 524(g) Trust may select.

(b)     If the Section 524(g) Trust obtains from Reorganized ASARCO or its representatives any documents or communications (whether written or oral) to which any attorney-client, work-product privilege or other privilege or immunity attaches, the Section 524(g) Trust shall be deemed a privilege holder for purposes of preserving the privilege, shall be required to take all reasonable steps to maintain any such privilege, and may not waive any such privilege without the consent of Reorganized ASARCO, which consent shall not be unreasonably withheld. Production of materials to the Section 524(g) Trust does not constitute a waiver or an impairment of any privilege held by Reorganized ASARCO or ASARCO. Unless otherwise ordered by the Bankruptcy Court, in processing and determination of, objection to, or otherwise in connection with Asbestos Personal Injury Claims or in connection with any Asbestos Insurance Recovery, as determined by the Section 524(g) Trust, the information contained in the Asbestos Books shall be treated as confidential. Except as otherwise provided herein, in the event that any third party challenges any such privilege or confidentiality, Reorganized ASARCO may seek protection from a court of competent jurisdiction. References in this Article 6.11 to Reorganized ASARCO shall also include its successors in interest.

6.12     Cooperation with Respect to Insurance Matters. Reorganized ASARCO and the Parent shall cooperate with the Section 524(g) Trust and use commercially reasonable efforts to take or cause to be taken all appropriate actions and to do or cause to be done all things necessary or appropriate to effectuate all transfers and assignments identified herein to the Section 524(g) Trust. By way of enumeration and not of limitation, Reorganized ASARCO and ASARCO each shall be obligated, without limitation, (a) to provide the Section 524(g) Trust with copies of insurance policies and settlement agreements included within or relating to the Asbestos Personal Injury Claims and Demands; (b) to provide the Section 524(g) Trust with information necessary or helpful to the Section 524(g) Trust in connection with its efforts to obtain insurance coverage for the Asbestos Personal Injury Claims and Demands as well as other recoveries, including, without limitation, recoveries of extracontractual damages; (c) to execute assignments or allow the Section 524(g) Trust to pursue claims in its own name (subject to appropriate disclosure of the fact that the Section 524(g) Trust is doing so and the reasons why it is doing so), including by means of arbitration, alternative dispute resolution proceedings or litigation, to the extent necessary or helpful to the efforts of the Section 524(g) Trust to obtain insurance coverage for the Asbestos Personal Injury Claims and Demands as well as other recoveries, including, without limitation, recoveries of extracontractual damages; and (d) to pursue and recover insurance coverage for the Asbestos Personal Injury Claims and Demands as well as other recoveries, including, without limitation, recoveries of extracontractual damages, in its own name or right to the extent that any or all of the transfers, assignments and assumptions identified herein are not able to be fully effectuated, with any and all recoveries therefrom to be turned over to the Section 524(g) Trust. The Section 524(g) Trust shall be obligated to compensate Reorganized ASARCO and ASARCO for all costs and expenses reasonably incurred in connection with providing assistance to the Section 524(g) Trust under this Article 6.12,

including, without limitation, out-of-pocket costs and expenses, consultant fees and attorneys' fees.

### 6.13    Indemnification by the Section 524(g) Trust.

(a)    The Section 524(g) Trust shall indemnify, defend (and, where applicable, pay the defense costs for), and hold harmless each of the ASARCO Protected Parties from any and all liabilities associated with an Asbestos Personal Injury Claim or Demand that a third party seeks to impose upon any of the ASARCO Protected Parties, or that are imposed upon any of the ASARCO Protected Parties.

(b)    In the event that the Section 524(g) Trust makes a payment to any of the ASARCO Protected Parties hereunder, and the liability on account of which such payment was made is subsequently diminished, either directly or through a third-party recovery, the applicable ASARCO Protected Party shall promptly repay the Section 524(g) Trust the amount by which the payment made by the Section 524(g) Trust exceeds the actual cost of such indemnified liability.

### 6.14    Section 524(g) Trust Reporting Requirements.

Notwithstanding anything to the contrary in the Parent's Plan or the Section 524(g) Trust Distribution Protocol, the Section 524(g) Trust shall provide, in accordance with the Confidential Settlement Agreement & Release (the "LMI Agreement") dated July 13, 2006, by and between ASARCO and certain Participating London Market Companies (the "Participating LMI"), to the Participating LMI or their representative, detailed reports concerning Asbestos Claims (as defined in the LMI Agreement) in the form and manner required by the LMI Agreement (the "Reports") on at least a quarterly basis, with the first Report to be provided to the Participating LMI or their representative within 90 days of the Effective Date.

Alternatively, the Section 524(g) Trust may provide the Participating LMI or their representative with access to any database(s) that the 524(g) Trust maintains for asbestos-related bodily injury claims provided that such databases(s) contain the data required to be contained in the Reports and provided further that such database(s) can be operated by the Participating LMI or their representative to produce data reports reasonably equivalent to the Reports.

The Participating LMI and their representative shall exercise their reasonable best efforts to maintain the confidentiality of the Reports, including, without limitation, seeking a confidentiality pledge from any auditor, regulator or reinsurer to which they provide the Reports and seeking a protective order in any proceeding in which they use the Reports, but the Participating LMI's right to disclose any portion of the Reports to their auditors, regulators or reinsurers shall not be affected if their reasonable best efforts do not result in a confidentiality pledge being given or a confidentiality order being entered.  A Report or information contained in any Report shall only be disclosed to another party by a Participating LMI for the purpose of seeking reimbursement from reinsurers in connection with the LMI Agreement or to respond to inquiries made by its auditor or by a regulatory authority in connection with the LMI Agreement; provided, that nothing herein shall prevent the Participating LMI from using the Reports for their own internal purposes, so long as such purposes relate to ASARCO and/or the Subject Insurance

Polices (as defined in the LMI Agreement) but shall not be used in relation to other insureds of the Participating LMI.

<div align="center">ARTICLE VII</div>

<div align="center">ENVIRONMENTAL CUSTODIAL TRUSTS</div>

7.1     Environmental Custodial Trusts.  The Environmental Custodial Trusts and the trust created by the Residual Environmental Settlement Agreement shall be implemented on or before the Effective Date exactly in accordance with the Debtors' Environmental 9019 Motion and orders approving such motion except for ministerial non-substantive changes.  By way of example but not limitation, the Parent shall have no standing to challenge any disbursements by the trustees, nor shall the Parent have standing to challenge the sale or disposition of any of the properties by the trustees.  In particular, the organization, operative documents and funding amounts of the Environmental Custodial Trusts and the trust created by the Residual Environmental Settlement Agreement under the Parent's Plan shall be identical to those which the Debtors and the applicable governmental agencies agreed upon and obtained approval of in connection with the Environmental 9019 Motion, except for ministerial non-substantive changes. The forms of the Trust Agreements as agreed to by the Debtors and the applicable government agencies, including the Montana Custodial Trust Settlement Agreement filed March 13, 2009 (Docket No. 10539-4), the Texas Custodial Trust Agreement filed March 19, 2009 (Docket No. 10567-4), the Multi-State Custodial Trust Settlement Agreement filed March 13, 2009 (Docket No. 10542-4), and the Residual Environmental Settlement Agreement shall be implemented with only such ministerial non-substantive changes as are required to reflect the Parent's Plan.  All environmental settlement agreements approved by the Court, including but not limited to the Environmental Custodial Trust Settlement Agreements, the Residual Environmental Settlement Agreement, and the Miscellaneous Site Settlement Agreements shall be recognized and adhered to under the Parent Plan.  This article 7.1 and article 2.1 of the Parent's Plan may be subsequently modified by written agreement signed by all of the affected states, the United States Department of Justice and the Parent.

7.2     Environmental Custodial Trustees.  Not less than the commencement of the Confirmation Hearing, the DOJ, if it is so willing, and in consultation with the states that have Allowed Environmental Trust Claims with respect to any Designated Elected Properties, shall designate the Persons who shall initially serve as the Environmental Custodial Trustees. The Environmental Custodial Trustees shall be appointed upon approval in the Confirmation Order.

7.3     Tax Matters.  The Environmental Custodial Trusts are intended to be treated as qualified settlement funds (for which no grantor trust election has been made) within the meaning of Treasury Regulation section 1.468B-1, and hence as taxable entities for federal income tax purposes, and each respective Custodial Trustee will be the "administrator" of its respective Environmental Custodial Trust pursuant to Treasury Regulation section 1.468B-2(k)(3).  Each Custodial Trustee will cause all taxes imposed on the relevant Environmental Custodial Trust to be paid using assets of the Environmental Custodial Trust and will comply with all tax reporting and withholding requirements imposed on the Environmental Custodial

Trust under applicable tax laws, and in particular the rules applicable to a qualified settlement fund.

## ARTICLE VIII

## OTHER MATTERS

8.1     Assumption or Rejection of Unexpired Leases and Executory Contracts. On the Effective Date, except as otherwise provided in the Parent's Plan, any unexpired lease or executory contract that has not been previously assumed or rejected by any Debtor pursuant to an order of the Bankruptcy Court shall be deemed assumed by such Debtor under sections 365(a) and 1123 of the Bankruptcy Code, other than those executory contracts and unexpired leases that are (a) listed on **Parent's Plan Exhibit 3** hereto (as such list may be amended, supplemented or modified on or before the Effective Date) or (b) subject to a motion to reject that is pending on the Effective Date.   Entry of the Confirmation Order shall constitute approval of such assumptions, and the rejection of the executory contracts or unexpired leases listed in **Parent's Plan Exhibit 3** hereto (as such list may be amended, supplemented or modified on or before the Effective Date), pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Any motions to reject executory contracts and unexpired leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order.

8.2     Approval of Assumption or Rejection of Executory Contracts and Unexpired Leases.  Entry of the Confirmation Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the approval, pursuant to sections 365(a), 365(f) and 1123 of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to Article 8.1 of the Parent's Plan; (b) the extension of time, pursuant to section 365(d)(4) of the Bankruptcy Code, within which the Debtors or Reorganized ASARCO may assume, assume and assign, or reject the unexpired leases specified in Article 8.1 of the Parent's Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired leases; and (c) the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Article 8.1 of the Parent's Plan.

8.3     Inclusiveness.  Unless otherwise specified on **Parent's Plan Exhibit 3** hereto, each executory contract and unexpired lease listed or to be listed on **Parent's Plan Exhibit 3** shall include modifications, amendments, supplements, restatements or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed on **Parent's Plan Exhibit 3**.

8.4     Rejection Damages.  The Bankruptcy Court shall determine the amount, if any, of the Claim of any Entity seeking damages by reason of the rejection of any executory contract or unexpired lease to which it is a counterparty.

8.5     Rejection Damages Bar Date.  If the rejection by a Debtor, pursuant to Article 8.1 of the Parent's Plan, of an executory contract or unexpired lease results in a Claim, then such Claim shall be forever barred and discharged and shall not be enforceable against the

Debtors, Reorganized ASARCO, or their respective properties, unless a Proof of Claim is filed and served upon the Parent's Plan Administrator within thirty days after the later of the Effective Date or the date of entry of an order approving such rejection. To the extent any such Claim is Allowed by the Bankruptcy Court by Final Order, such Claim shall become, and shall be treated for all purposes under the Parent's Plan as, a General Unsecured Claim, and the holder thereof shall receive distributions as a holder of an Allowed General Unsecured Claim, pursuant to the Parent's Plan.

8.6     __Payments Related to Assumption of Executory Contracts and Unexpired Leases__. To the extent that Cure Amount Claims constitute monetary defaults, such Cure Amount Claims shall be satisfied by Reorganized ASARCO, pursuant to section 365(b)(1) of the Bankruptcy Code: (1) by payment of the Cure Amount Claim on the Effective Date; or (2) on such other terms as are agreed to by the Parent and the non-debtor parties to the executory contract or unexpired lease. In the event of a dispute regarding (A) the amount of any Cure Amount Claim or (B) any other matter pertaining to assumption and assignment of such contract or lease, the payment of any Cure Amount Claim required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving the dispute and approving the assumption and assignment.

8.7     __Employee Benefit Plans and Other Benefits__.

(a)     Effective as of the Effective Date, Reorganized ASARCO shall be responsible for all benefits and liabilities with respect to the Employee Benefit Plans.

(b)     All of the applicable Debtors' liabilities and obligations arising under the Employee Benefit Plans and workers' compensation benefits, even if such liability or obligation relates to Claims incurred (whether or not reported or paid) prior to the Effective Date, shall be deemed to be, and shall be treated as though they are, executory contracts that are deemed assumed under the Parent's Plan pursuant to sections 365(a), 365(f) and 1123 of the Bankruptcy Code.

(c)     Reorganized ASARCO shall be responsible for all of each Debtor's obligations under the Coal Act, including the obligations (1) to provide retiree health benefits to eligible beneficiaries and their dependents pursuant to section 9711 of the Coal Act, 26 U.S.C. § 9711; (2) to pay the annual prefunding premium and the monthly per beneficiary premium required pursuant to section 9712(d)(1)(A) and (B) of the Coal Act, 26 U.S.C. § 9712(d)(1)(A) and (B); and (3) to provide security to the UMWA 1992 Benefit Plan pursuant to section 9712(d)(1)(C) of the Coal Act, 26 U.S.C. § 9712(d)(1)(C).

(d)     Reorganized ASARCO shall assume and be responsible for all of the Debtors' obligations to pay retiree benefits, as defined in section 1114 of the Bankruptcy Court, for the duration of the period the applicable Debtor has obligated itself to provide such benefits. After the Effective Date, Reorganized ASARCO shall retain their rights to amend, modify or terminate retiree benefits in accordance with all relevant agreements and applicable law, including any collective bargaining agreement that may be entered into between the USW and Reorganized ASARCO.

8.8    Surety Bonds.  All Surety Bonds shall be retained or deemed Reinstated, as the case may be, on the Effective Date and shall revest to the benefit of Reorganized ASARCO.

8.9    Defined Benefit Plans.  ASARCO sponsors two defined benefit pension plans, the Retirement Income Plan for Hourly-Rated Employees of ASARCO, Inc. and the Retirement Income Plan for Salaried Employees of ASARCO, Inc. (collectively, the "Pension Plans"), which are covered by Title IV of the Employee Retirement Income Security Act of 1974 ("ERISA").  The Parent understands that ASARCO will satisfy its legal obligations to the Pension Plans during the pendency of this proceeding, and through the Effective Date.  The Parent further understands that ASARCO does not intend to terminate the Pension Plans prior to the Effective Date.  After the Effective Date, Reorganized ASARCO shall continue to sponsor the Pension Plans.  Accordingly, after the Effective Date, Reorganized ASARCO shall continue to be required to make contributions to the Pension Plans in the amounts necessary to meet the minimum funding standards prescribed by 29 U.S.C. § 1082 and 26 U.S.C. § 412, and for the payment of any PBGC premiums prescribed by 29 U.S.C. §§ 1306 and 1307.

ARTICLE IX

CONDITIONS PRECEDENT

9.1    Conditions to Confirmation.  Notwithstanding any other provision of the Parent's Plan or any order entered in connection with the Reorganization Cases, the Confirmation Date shall not occur until and unless each of the following conditions to effectiveness has been satisfied or waived pursuant to Article 9.2:

(a)    Disclosure Statement.

The Bankruptcy Court has approved the Disclosure Statement.

(b)    Confirmation Findings and Conclusions.

The District Court makes or affirms the following findings of fact and conclusions of law:

(1)    As of the Petition Date, one or more of the Debtors has been named as a defendant in personal injury, wrongful death, or property damage actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products;

(2)    The Section 524(g) Treatment has been approved by creditors in Class 4 under the Parent's Plan in the requisite numbers and amounts required by sections 524(g), 1126, and 1129 of the Bankruptcy Code and by the FCR;

(3)    On the Effective Date, the Section 524(g) Trust shall assume the liabilities of the Debtors with respect to the Asbestos Personal Injury Claims and Demands and shall receive all transfers and assignments set forth herein;

28

(4)      As of the Effective Date, there were no pending or known property damage actions seeking damages as a result of property damage allegedly caused by or arising out of asbestos or asbestos-containing products;

(5)      The Section 524(g) Trust is to be funded in part by securities of Reorganized ASARCO and by the obligation of Reorganized ASARCO to make future payments;

(6)      The Section 524(g) Trust shall be entitled to own, if specified contingencies occur, a majority of the voting shares of Reorganized ASARCO;

(7)      The Section 524(g) Trust shall use its assets and income to pay the Asbestos Personal Injury Claims and Demands;

(8)      The Debtors are likely to be subject to substantial future Demands for payment arising out of the same or similar conduct or events that gave rise to the Asbestos Personal Injury Claims, which are addressed by the Permanent Channeling Injunction and the Asbestos Insurance Company Injunction;

(9)      The actual amounts, numbers, and timing of future Demands cannot be determined;

(10)     Pursuit of Demands outside the procedures prescribed by the Parent's Plan is likely to threaten the Parent's Plan's purpose to deal equitably with Claims and future Demands;

(11)     The terms of the Permanent Channeling Injunction and the Asbestos Insurance Company Injunction, including any provisions barring actions against third parties, are set out in the Parent's Plan and in the Disclosure Statement;

(12)     The Section 524(g) Trust shall operate through mechanisms such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of Asbestos Personal Injury Claims and Demands, or other comparable mechanisms, that provide reasonable assurance that the Section 524(g) Trust will value, and be in a financial position to pay, all Asbestos Personal Injury Claims and Demands in substantially the same manner;

(13)     The FCR was appointed by the Bankruptcy Court as part of the proceedings leading to the issuance of the Permanent Channeling Injunction and the Asbestos Insurance Company Injunction for the purpose of, among other things, protecting the rights of persons that might subsequently assert Demands of the kind that are addressed in the Permanent Channeling Injunction and/or the Asbestos Insurance Company Injunction and that are to be assumed and paid by the Section 524(g) Trust in accordance with the Section 524(g) Trust Documents;

(14)     In light of the respective benefits provided, or to be provided, to the Section 524(g) Trust by, or on behalf of, each ASARCO Protected Party, the

Permanent Channeling Injunction is fair and equitable with respect to the persons that might subsequently assert Demands against any ASARCO Protected Party;

(15)    In light of the respective benefits provided, or to be provided, to the Section 524(g) Trust by a Settling Asbestos Insurance Company in order to receive the benefits of the Asbestos Insurance Company Injunction, the Asbestos Insurance Company Injunction is fair and equitable with respect to the persons who might subsequently assert Demands against any Settling Asbestos Insurance Company;

(16)    The Settling Asbestos Insurance Companies are alleged to be directly or indirectly liable for the Asbestos Personal Injury Claims and Demands for one or more of the reasons set forth in section 524(g)(4)(A)(ii) of the Bankruptcy Code;

(17)    The Permanent Channeling Injunction and the Asbestos Insurance Company Injunction are integral parts of the Parent's Plan and may not be vacated, amended or modified after Confirmation except to the extent expressly provided in Article 11.3(a)(2) and 11.3(b)(2) of the Parent's Plan;

(18)    The Parent's Plan complies with all applicable sections of the Bankruptcy Code, including, to the extent the Section 524(g) Treatment goes into effect, section 524(g) of the Bankruptcy Code;

(19)    The Parent's Plan Documents which relate to the Section 524(g) Treatment are approved in all respects, and all parties thereto are authorized and directed to perform all their obligations thereunder; and

(20)    Approval of all settlements and compromises embodied in the Section 524(g) Treatment is appropriate under Bankruptcy Rule 9019 and applicable law governing approval of such settlements and compromises and shall be ordered as part of the Confirmation Order.

(c)    *Confirmation Order*.

(1)    The Bankruptcy Court shall have submitted to the District Court no later than August 31, 2009, a recommendation that the District Court confirm the Parent's Plan, except as may be otherwise agreed by the Parent, the Asbestos Representatives and the ASARCO Committee.

(2)    The Confirmation Order entered or affirmed by the District Court is acceptable to the Parent.  Within two business days after entry of the Confirmation Order, the Parent will notify the ASARCO Committee, the Asbestos Representatives and the DOJ of whether or not the Confirmation Order is acceptable to the Parent.

(d)    *Parent's Plan Documents*.

(1)    The Parent's Plan Documents necessary or appropriate to implement the Parent's Plan, other than those which relate to the Section 524(g) Treatment, shall be in a form acceptable to the Parent, and the Parent shall have so

30

notified the ASARCO Committee and the DOJ prior to the Bankruptcy Court's recommendation to the District Court that the District Court confirm the Parent's Plan, and the Confirmation Order shall so provide.

(2)     The Bankruptcy Court has approved the Parent's Plan Documents, other than those which relate to the Section 524(g) Treatment, in all respects and authorized and directed all parties thereto to perform all their obligations thereunder.

(e)     *Approval of Parent's Plan Settlements.*

The Bankruptcy Court has approved all settlements and compromises embodied in the Parent's Plan, and has found that such settlements and compromises are appropriate under Bankruptcy Rule 9019 and applicable law governing such approval and such settlements and compromises shall be approved as part of the Confirmation Order.

9.2     Waiver of Conditions to Confirmation.  The Parent, in its sole discretion, may waive any condition to confirmation in Article 9.1 of the Parent's Plan by filing a notice of such waiver with the clerk of the Bankruptcy Court and by serving a copy of such notice on the U.S. Trustee, the Debtors, the Committees, the FCR, and the DOJ.

9.3     Conditions to Effectiveness.  Notwithstanding any other provision of the Parent's Plan or any order entered in connection with the Reorganization Cases, the Effective Date shall not occur until and unless each of the following conditions to effectiveness has been satisfied:

(a)     *No Stay.*

The Confirmation Order is not stayed pursuant to an order issued by a court of competent jurisdiction.

(b)     *Parent's Plan Documents.*

The Parent's Plan Documents necessary or appropriate to implement the Parent's Plan, other than those which relate to the Section 524(g) Treatment, have been executed, delivered and, where applicable, filed with the appropriate governmental or supervisory authorities; provided, that the Parent may waive this condition in its sole discretion.

(c)     *Funding and New Equity Interests.*

The Parent has delivered the Parent Contribution to the Parent's Plan Administrator, ASARCO has transferred the Distributable Cash to the Parent's Plan Administrator, all interests in the Debtors have been canceled, and the New Equity Interests have been delivered to ASARCO USA Incorporated or its designee.  It is understood that the failure of the Parent to provide the Parent Contribution will not relieve the Parent of its funding obligations under the Parent's Plan.

(d)     *U.S. Trustee's Fees.*

31

Any fees owed to the U.S. Trustee by the Debtors as of the Effective Date have been paid in full.

9.4     Closing Obligation.

The Parent's Plan shall close and become effective within thirty days after the Parent's Plan is Confirmed if no stay of the Confirmation Order is then in effect; provided, however, that if the Parent has not received executed, delivered or filed Parent's Plan Documents from a third party because of circumstances beyond the reasonable control of the Parent, the Parent shall use its best efforts to obtain such Parent's Plan Documents to close as expeditiously as possible upon receipt of such executed Parent's Plan Documents.

9.5     Notice of Effective Date.  Reorganized ASARCO shall give notice of the Effective Date within five (5) Business Days after its occurrence.

9.6     Non-Occurrence of Effective Date.  In the event that the Effective Date does not occur, all parties shall be returned to the position they would have held had the Confirmation Order not been entered except as set forth in Article 10.2, and nothing in the Parent's Plan, Disclosure Statement, or any Parent's Plan Document, or any pleading or statement in court shall be deemed to constitute an admission or waiver of any sort or in any way to limit, impair, or alter the rights of any Entity.

9.7     Collective Bargaining Agreement Not a Condition.  For the avoidance of doubt, it is not a condition to Confirmation of the Parent's Plan nor to Consummation of the Parent's Plan that the Parent and Reorganized ASARCO have entered into a CBA for the period following the Effective Date.

ARTICLE X

IMPLEMENTATION OF THE PARENT'S PLAN

10.1     Sources of Cash and Other Consideration for Distributions.  On the Effective Date, (i) the Parent Contribution shall be delivered to the Parent's Plan Administrator; (ii) Reorganized ASARCO shall transfer the Distributable Cash to the Parent's Plan Administrator; and (iii) the Environmental Custodial Trusts shall be established and funded pursuant to Article 7.1.

On the Effective Date or as soon thereafter as practicable (i) the Tax Refund shall be delivered to the Parent's Plan Administrator in accordance with Article 10.8; (ii) Reorganized ASARCO shall deliver the ASARCO Note, the ASARCO Security Agreement and the ASARCO Deed of Trust to the Section 524(g) Trust; (iii) the Parent shall deliver its guarantee of the ASARCO Note; and (iv) ASARCO USA Incorporated or its designee that holds the equity interests in Reorganized ASARCO shall deliver the Parent Pledge Agreement to the Section 524(g) Trust.

On the Effective Date, as further consideration for the New Equity Interests, the Parent and the Parent's Affiliates shall waive all Administrative and General Unsecured Claims held by the Parent or the Parent's Affiliates against the Debtors through the Effective Date,

32

including, for the avoidance of doubt, Claims for reimbursement pursuant to the Tax Sharing Agreement for any period prior to the Effective Date.

On the Effective Date, the Parent and Reorganized ASARCO shall enter into the Working Capital Facility.  Proceeds drawn from the Working Capital Facility and the Working Capital Reserve, and proceeds of Reorganized ASARCO's Litigation Trust Interests, if any, shall be used to fund Reorganized ASARCO's working capital needs.

Claims that will be Reinstated under the Parent's Plan shall be paid out of Reorganized ASARCO's operating cash flows unless otherwise provided in the Parent's Plan. For the avoidance of doubt, it is not a condition to the confirmation or effectiveness of the Parent's Plan that any particular Claim or Class has been Allowed by Final Order.

10.2    Support Agreement, Escrow Agreement and Deposit.

To ensure that the Parent is capable of meeting its funding requirements under the Parent's Plan on the Effective Date,  Grupo and the Parent have entered into a Support Agreement under which Grupo has agreed to promptly provide the Parent with funds in an amount equal to the amount required to permit the Parent to deliver the Parent Contribution in full and fund the Working Capital Facility (attached hereto as **Parent's Plan Exhibit 26**, the "Support Agreement").

Furthermore, to demonstrate its intention and ability to fully and timely consummate the Parent's Plan, the Parent has established an Escrow Account funded with 67,280,000 shares of stock of SCC (the "SCC Shares") and has put in place that certain Amended and Restated Escrow Agreement (attached, in final form, to the Disclosure Statement Supplement as **DS Exhibit S**, the "Escrow Agreement") with respect to the Escrow Account. Notwithstanding anything to the contrary in the Parent's Plan, in the event of any inconsistency(s) between the Parent's Plan and the Escrow Agreement, the Escrow Agreement shall govern.

10.3    Appointment of Parent's Plan Administrator and Funding of Miscellaneous Parent's Plan Administration Accounts.

(a)    On or prior to the Confirmation Date, the Parent shall designate the Entity that shall initially serve as the Parent's Plan Administrator.  Upon approval in the Confirmation Order, the Parent's Plan Administrator shall be appointed.  The Parent's Plan Administrator shall have and perform all of the duties, responsibilities, rights and obligations set forth in the Parent's Plan Administration Agreement.  The Parent's Plan Administrator shall serve without bond, may employ or contract with other Persons to assist in the performance of the Parent's Plan Administrator's duties, which shall be set forth in the Parent's Plan Administration Agreement. The Parent's Plan Administrator shall receive, without further Bankruptcy Court approval, reasonable compensation for such services and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services.

(b)    On the Effective Date (or as soon thereafter as is reasonably practicable), the Parent's Plan Administrator shall establish and fund the Parent's Plan Administration Account with sufficient Cash to pay the Parent's Plan Administrator's estimated compensation and expenses, and all other anticipated costs of administration of the Parent's Plan.  The Parent's

Plan Administrator shall also establish and fund Miscellaneous Parent's Plan Administration Accounts, including the Disputed Claims Reserve, and the Undeliverable and Unclaimed Distribution Reserve, and may also establish such general accounts as the Parent's Plan Administrator deems necessary and appropriate.

(c)     On the Effective Date (or as soon thereafter as is reasonably practicable), the Parent's Plan Administrator shall (i) fund the Section 524(g) Trust with the Section 524(g) Trust Assets, (ii) fund the Environmental Custodial Trusts with the Environmental Custodial Trust Assets, (iii) fund the Disputed Claims Reserve as provided for in Article 13.8 hereof, (iv) fund the Litigation Trust with the Litigation Trust Assets; and (v) fund the SCC Litigation Trust with the SCC Litigation Trust Expense Fund.

(d)     The Parent's Plan Administrator shall allocate the funds in the Parent's Plan Administration Account to subaccounts corresponding to the enumerated functions of the Parent's Plan Administrator.   Until the Parent's Plan Administrator has discharged its obligations, the funds in those subaccounts and the Miscellaneous Parent's Plan Administration Accounts may only be used for the purpose designated for that particular account or subaccount.

(e)     To the extent there are any excess funds in the Parent's Plan Administration Account (or any subaccount thereof) or any Miscellaneous Parent's Plan Administration Account, the Parent's Plan Administrator shall distribute such funds, Pro Rata, *first* to holders of Claims in Class 3 until such holders are Paid in Full, *second* to holders of Claims in Class 6 until such Claims are Paid in Full, *third* to holders of Claim in Class 7 until such Claims are Paid in Full, and *fourth* to Reorganized ASARCO to fund its working capital needs.

10.4     <u>Distributions To Allowed Claims</u>.   On the Effective Date, the Parent's Plan Administrator shall pay the Allowed Claims that are to be paid on the Effective Date.   No later than ten days prior to the anticipated Effective Date, the Parent's Plan Administrator shall distribute to the ASARCO Committee a schedule of anticipated distributions on the Effective Date.   The Parent, the Parent's Plan Sponsor, the Debtors and the ASARCO Committee shall attempt to resolve any discrepancies or disputes.   No later than five days prior to the anticipated Effective Date, the Parent's Plan Administrator shall file such report with the Bankruptcy Court. Any disputes shall be present to the Bankruptcy Court for resolution.

10.5     <u>Release of Litigations</u>.   On the Effective Date, all causes of action identified in the Schedule of Released Litigation (attached hereto as **Parent's Plan Exhibit 2**, which Schedule may be amended or modified by the Parent prior to the Confirmation Date, <u>provided</u> that in no event shall the SCC Litigation Trust Claims be added to the Schedule of Released Litigation) shall be deemed, without any notice, the entry of any other order, or any other action by any party to have been released and dismissed or withdrawn with prejudice.   All other causes of action or counts thereof of the Debtors and their estates, including, without limitation, those under chapter 5 of the Bankruptcy Code (or similar state or federal law), and the Asbestos Insurance Actions, shall continue and be pursued as provided in Article 10.13 but subject to Article 6.4 and 5.17 as applicable.

10.6    Prepetition ASARCO Environmental Trust.

(a)    The Prepetition ASARCO Environmental Trust shall remain in existence, and shall be unaffected by the Reorganization Cases or any related settlements.  The Parent's Plan Administrator shall succeed to ASARCO's administrative role, and will, in its sole discretion, act as Performing Entity (as defined in the Prepetition ASARCO Environmental Trust) from time to time, but will assume no affirmative liabilities or obligations associated with that role.  In accordance with the documents governing it, the funds in the Prepetition ASARCO Environmental Trust shall continue to be available for, among other things, (i) identified work sites; (ii) interim costs prior to the effectiveness of the Parent's Plan; and (iii) any shortfalls or unanticipated costs or any other use permitted by the terms of the Prepetition ASARCO Environmental Trust (it being understood that the terms of certain environmental settlements were based on the assumption that certain previously identified, additional environmental response actions to be performed by ASARCO, the Parent's Plan Administrator or the United States would be reimbursed from the Prepetition ASARCO Environmental Trust).  The Parent will make any remaining required contributions to the Prepetition ASARCO Environmental Trust in the ordinary course.

(b)    The funds remaining in the Prepetition ASARCO Environmental Trust shall be separate from and without prejudice to the distributions to be made to holders of Claims, as described in Article IV of the Parent's Plan.

10.7    Operations and Settlements Between the Confirmation Date and the Effective Date.  Except as set forth herein with respect to the appointment of the Parent's Plan Administrator, during the period from the Confirmation Date through and until the Effective Date, the Debtors shall continue to operate as debtors-in-possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.  During the period from the Confirmation Date through and until the Effective Date, the Debtors shall not enter into or seek approval of any settlement(s) of any Claim(s) where the amount of such settlement, or the Allowed amount of such Claims, individually or in the aggregate, would be in excess of $10 million, without prior written approval of the Parent.

10.8    Tax Refund.  Unless the Tax Refund Adversary Proceeding has been determined by Final Order prior to the Effective Date, on the Effective Date or as soon thereafter as reasonably practicable, the Tax Refund shall be transferred to the Plan Administrator.  For the avoidance of doubt, the Parent will, on the Effective Date, waive its claim to collect the Tax Refund for its own account and shall cooperate with Reorganized ASARCO to cause the Internal Revenue Service to pay the Tax Refund to the Plan Administrator for distribution to holders of Allowed Claims.  To the extent that, on the Effective Date, the DOJ or any agency represented by the DOJ maintains a claim that it is entitled to setoff environmental claims held by such agency against the Tax Refund, then the Plan Administrator shall include the Tax Refund in the Environmental Custodial Trust Assets, releasing an equivalent amount of Cash to fund other distributions required under the Parent's Plan.

10.9    Limited Liability Company Agreement.  On or as soon as reasonably practicable after the Effective Date, Reorganized ASARCO shall file an amended LLC

Agreement (the "Amended LLC Agreement") with the Secretary of State of the State of Delaware. The Amended LLC Agreement shall, in compliance with section 1123 of the Bankruptcy Code, prohibit the issuance of nonvoting equity securities and provide for an appropriate distribution of voting powers among classes of securities.

10.10   Management of Reorganized ASARCO. Pursuant to section 1129(a)(5) of the Bankruptcy Code, the Parent shall disclose, by filing, on or prior to the Confirmation Date, a document disclosing the identity and affiliations of any person proposed to serve on the initial board of directors of Reorganized ASARCO or as an officer of Reorganized ASARCO. To the extent any such person is an insider, the nature of any compensation payable to such person shall be disclosed at such time. Reorganized ASARCO shall have a five-person board of directors, each of them nominated by the Parent. Each director and officer shall serve from and after the Effective Date pursuant to the terms of the amended Limited Liability Company Agreement, and applicable law.

10.11   Issuance of New Equity Interests in Reorganized ASARCO. On the Effective Date, in exchange for the Parent Contribution, the New Equity Interests shall be issued and delivered to ASARCO USA Incorporated or its designee. Except as otherwise provided in this Article X, Reorganized ASARCO shall continue its existence after the Effective Date.

10.12   Revesting. Except as otherwise expressly provided in the Parent's Plan, on the Effective Date, all of ASARCO's and its Estate's property and assets shall vest in Reorganized ASARCO, free and clear of all Liens, Claims, charges and other encumbrances.

10.13   Vesting and Enforcement of Causes of Action. Any and all claims and causes of action that were owned by ASARCO or its Estate as of the Effective Date, other than the Asbestos Insurance Actions, the Litigation Trust Claims and the SCC Litigation Trust Claims, including, without limitation, for indemnity and contribution for environmental damages, harm or injury, which PRP claims have not been discharged or settled as of the Effective Date, shall vest in Reorganized ASARCO on the Effective Date, and Reorganized ASARCO shall be the only Entity entitled to pursue such claims or causes of action. The Asbestos Insurance Actions shall vest in the Section 524(g) Trust and may be pursued or compromised as deemed fit by the Section 524(g) Trustees, in their sole discretion, without need for approval of the Bankruptcy Court. The Litigation Trust Claims, including, without limitation, all rights and interests in actions and/or claims against third parties ("potentially responsible parties" or "PRP"), shall vest in the Litigation Trust and may be pursued or compromised as deemed fit by the Litigation Trustee, in its sole discretion, without need for approval of the Bankruptcy Court. The SCC Litigation Trust Claims shall vest in the SCC Litigation Trust subject to the Maximum Recovery and in accordance with the SCC Litigation Trust Agreement and may be pursued or compromised as deemed fit by the SCC Litigation Trustee and the SCC Litigation Trust Board without need for approval of the Bankruptcy Court.

10.14   Further Authorizations. Reorganized ASARCO, the Parent's Plan Administrator, or the Parent may seek such orders, judgments, injunctions, and rulings as any one or more of them deem necessary to further carry out the intentions and purposes of, and give full effect to the provisions of, the Parent's Plan.

10.15   Effectuating Documents and Further Transactions.   The chief executive officer, president, chief financial officer, general counsel, secretary, treasurer, any vice president, or managing member (if applicable) of Reorganized ASARCO shall be authorized, to the extent consistent with Reorganized ASARCO's constituent documents, to execute, deliver, file, or record such contracts, instruments, settlement agreements, releases, indentures, and other agreements or documents and to take or direct such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Parent's Plan.   The secretary or any assistant secretary of each Debtor and Reorganized ASARCO shall be authorized to certify or attest to any of the foregoing actions.

10.16   Corporate Action.   All matters provided for under the Parent's Plan involving the corporate structure of the Debtors or Reorganized ASARCO, or any corporate action to be taken by, or required of the Debtors or Reorganized ASARCO, shall be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement for further action by the holders of Interests in, or directors of, any of such entities.

10.17   Execution of Parent's Plan Documents.   On the Effective Date, Reorganized ASARCO and other parties thereto shall execute and deliver the Parent's Plan Documents, as applicable.

10.18   Approval of Section 524(g) Trust Documents.   Confirmation of the Parent's Plan shall constitute approval pursuant to Bankruptcy Rule 9019 of the Section 524(g) Trust Documents, as evidenced by entry of the Confirmation Order.

10.19   Option to Create Work Trusts.   The DOJ may at its option elect to establish work trusts for the purpose of receiving distributions made with respect to Allowed Claims that relate to specified environmental sites.

10.20   Approval of Mission Mine Settlement Agreement.   Confirmation of the Parent's Plan shall cause the Mission Mine Settlement Agreement to be binding upon all landowners and allottees who own interests in the lands affected by the Mission Mine Settlement Agreement.   Nothing in this Parent's Plan, including any provisions of Article XI hereunder, shall in any way limit or affect the rights or obligations of any party to the Mission Mine Settlement as provided therein.

10.21   Deemed Consolidation of Debtors for Plan Purposes Only.   Subject to the occurrence of the Effective Date, the Debtors shall be deemed consolidated under the Parent's Plan, solely for the limited purposes of voting and distribution under the Parent's Plan.   Each and every Claim filed or to be filed against any of the Debtors shall be deemed filed against the deemed consolidated Debtors and shall be deemed one Claim against all Debtors and (a) any obligation of any Debtor and all guarantees thereof executed by one or more of the Debtors shall be deemed to be one obligation of all of the consolidated Debtors; (b) any Claims filed or to be filed in connection with any such obligation and such guarantees shall be deemed one Claim against the consolidated Debtors; (c) all duplicative Claims (identical in amount and subject matter) filed against one or more of the Debtors will be automatically expunged so that only one Claim survives against the consolidated Debtors; and (d) the consolidated Debtors will be

deemed, for purposes of determining the availability of the right of set-off under section 553 of the Bankruptcy Code, to be one entity, so that, subject to other provisions of section 553 of the Bankruptcy Code, the debts due to a particular Debtor may be offset against the Claims against such Debtor or Debtors. Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under this Plan and as set forth above in this section) affect: (i) any guarantees, liens, and security interests that are required to be maintained under this Plan; or (ii) distributions out of any insurance policies or proceeds of such policies.

10.22   Wind Down of Subsidiary Debtors. On the Effective Date (or as soon thereafter as is reasonably practicable) and concurrently with payment of all Allowed Claims that are to be paid on the Effective Date and funding of the Disputed Claims Reserve, (a) the Subsidiary Debtor Assets shall be transferred to Reorganized ASARCO free and clear of any and all Liens, Claims, encumbrances, or interests of any kind in such property of any Person or Entity except as provided in the Parent's Plan, (b) all assets of the Subsidiary Debtors other than the Subsidiary Debtor Assets shall be transferred to the Plan Administrator for the benefit of Reorganized ASARCO, free and clear of any and all Liens, Claims, encumbrances, or interests of any kind in such property of any Person or Entity except as provided in the Parent's Plan, and (c) all Interests in the Subsidiary Debtors shall be canceled. As soon as practicable after the Effective Date, the Plan Administrator shall liquidate all assets of the Subsidiary Debtors other than the Subsidiary Debtor Assets and shall transfer the proceeds of such liquidation to Reorganized ASARCO free and clear of any and all Liens, Claims, encumbrances, or interests of any kind in such proceeds of any Person or Entity except as provided in the Parent's Plan. For avoidance of doubt, the wind down of the Subsidiary Debtors shall not affect the treatment of Claims against the Subsidiary Debtors provided by the Parent's Plan.

10.23   Approval of Asbestos Insurance Settlement Agreements. Confirmation of this Plan shall constitute approval pursuant to Bankruptcy Rule 9019 of all Asbestos Insurance Settlement Agreements executed as of the Confirmation Date (which are listed in **Parent's Plan Exhibit 21**, which may be amended, supplemented, or modified at any time prior to the Confirmation Date) and shall cause such Asbestos Insurance Settlement Agreements, and all terms within such agreements, to be fully binding upon all parties to such agreements (including, without limitation, their successors and assigns), as evidenced by entry of the Confirmation Order.

ARTICLE XI

INJUNCTIONS, RELEASES, AND DISCHARGE

11.1   Discharge and Release. Except as otherwise expressly provided in the Parent's Plan, the rights afforded in the Parent's Plan and the treatment of all Claims, Demands, and Interests shall be in exchange for and in complete satisfaction, discharge, and release of all Claims, Demands, and Interests of any nature whatsoever, against any Debtor or its Estate, assets, properties or interests in property. Except as otherwise provided herein, on the Effective Date, all Claims and Demands against and Interests in the Debtors shall be satisfied, discharged, and released in full. The ASARCO Protected Parties shall not be responsible for any obligations

38

of the Debtors except those expressly assumed by them in the Parent's Plan, provided, however, that if the Parent and Grupo México do not receive all protections provided for in the Parent's Plan, including, without limitation, those described in this Article and Article 11.9, then the protections in this Article with respect to ASARCO Protected Parties other than Reorganized ASARCO shall not go into effect.

       11.2   Discharge Injunction.  Except as otherwise expressly provided in the Parent's Plan, the discharge and release set forth in Article 11.1 shall also operate as an injunction permanently prohibiting and enjoining the commencement or continuation of any action or the employment of process with respect to, or any act to collect, recover from, or offset (a) any Claim or Demand discharged and released in Article 11.1 and (b) any cause of action, whether known or unknown, based on the same subject matter as any Claim or Demand discharged and released in Article 11.1.  Except as otherwise expressly provided in the Parent's Plan, all Persons and Entities shall be precluded and forever barred from asserting against the ASARCO Protected Parties, their successors or assigns, or their assets, properties, or interests in property any other or further Claims or Demands, or any other right to legal or equitable relief regardless of whether such right can be reduced to a right to payment, based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not the facts of or legal bases therefor were known or existed prior to the Effective Date, provided, however, that if the Parent and Grupo México do not receive all protections provided for in the Parent's Plan, including, without limitation, those described in this Article and Article 11.9, then the protections in this Article with respect to ASARCO Protected Parties other than Reorganized ASARCO shall not go into effect.

       11.3   The Permanent Channeling Injunction and the Asbestos Insurance Company Injunction.  In order to supplement the injunctive effect of the Discharge Injunction, and pursuant to the exercise of the legal and equitable jurisdiction and power set forth in section 524(g) of the Bankruptcy Code, the Confirmation Order shall provide for issuance of the following injunctions to take effect as of the Effective Date:

       (a)   *Permanent Channeling Injunction.*

       (1)   Terms.  In order to induce, preserve and promote the settlements contemplated by and provided for in the Parent's Plan, and pursuant to section 524(g) of the Bankruptcy Code, all Asbestos Personal Injury Claims and Demands shall be channeled to the Section 524(g) Trust for a remedy under the Section 524(g) Trust Distribution Procedures, and all holders of Asbestos Personal Injury Claims and Demands and all Entities which have held or asserted, which hold or assert, or which may in the future hold or assert, any Asbestos Personal Injury Claim or Demand shall be permanently and forever stayed, restrained, and enjoined from taking any action against any ASARCO Protected Party (or any property or interest in property of an ASARCO Protected Party) with respect to such Asbestos Personal Injury Claim or Demand, including, without limitation, for the purpose of directly or indirectly obtaining a judgment, collecting, recovering, or receiving payments, satisfaction, or recovery with respect to such Asbestos Personal Injury Claim or Demand, including, without limitation:

(A)     commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any Asbestos Personal Injury Claim or Demand against any of the ASARCO Protected Parties, or against the property or interests in property of any ASARCO Protected Parties;

(B)     enforcing, levying, attaching (including by prejudgment attachment), collecting, or otherwise recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or other order against any of the ASARCO Protected Parties, or against the property or interests in property of any ASARCO Protected Parties, with respect to any Asbestos Personal Injury Claim or Demand;

(C)     creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien of any kind against any ASARCO Protected Parties, or the property or interests in property of any ASARCO Protected Parties, with respect to any Asbestos Personal Injury Claim or Demand;

(D)     except as otherwise specifically provided in the Parent's Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, reimbursement, or recoupment of any kind and in any manner, directly or indirectly against any obligation due any ASARCO Protected Parties, or against the property or interests in property of any ASARCO Protected Parties, with respect to any Asbestos Personal Injury Claim or Demand; and

(E)     proceeding or taking any action, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Parent's Plan, the Parent's Plan Documents or the Section 524(g) Trust Documents relating to any Asbestos Personal Injury Claim or Demand.

(2)     Reservations.  Notwithstanding anything to the contrary above or in the Parent's Plan, neither this Permanent Channeling Injunction nor the Parent's Plan shall enjoin, alter, diminish, or impair:

(A)     the rights of Entities to the treatment accorded them under Articles II and IV of the Parent's Plan, as applicable, including the rights of Entities with Asbestos Personal Injury Claims or Demands to assert such Asbestos Personal Injury Claims or Demands in accordance with the Section 524(g) Trust Distribution Procedures;

(B)     the rights of Entities to assert any Claim, Demand, debt, obligation, or liability for payment of Section 524(g) Trust Expenses against the Section 524(g) Trust;

(C)     the enforceability of any of the Asbestos Insurance Policies or any Asbestos Insurance Settlement Agreement;

(D)     the rights of the Section 524(g) Trust, if any, with regard to any Asbestos Insurance Company that is not a Settling Asbestos Insurance Company (with the Section 524(g) Trust being, and deemed to be, for all purposes of insurance and indemnity, the successor to the Debtors in respect of all Asbestos Personal Injury Claims and Demands and other recoveries from an Asbestos Insurance Company, in its capacity as such); or

(E)     the rights of Entities to assert any Claim, Demand, debt, obligation, or liability for payment against an Asbestos Insurance Company that is not an ASARCO Protected Party unless otherwise enjoined by order of the Bankruptcy Court or the District Court or estopped by a provision of the Parent's Plan.

(b)     *Asbestos Insurance Company Injunction.*

(1)     <u>Terms</u>.   In order to preserve and promote the property of the Estate, as well as the settlements contemplated by and provided for in the Parent's Plan, and to supplement where necessary the injunctive effect of the discharge and releases provided for in the Parent's Plan, pursuant to sections 524(g) and 105(a) of the Bankruptcy Code, all Entities which have held or asserted, which hold or assert, or which may in the future hold or assert any Claim, Demand or cause of action (including, without limitation, any Asbestos Personal Injury Claim or Demand or any Claim for or respecting any Section 524(g) Trust Expense) against a Settling Asbestos Insurance Company based upon, relating to, arising out of, attributable to, or in any way connected with any Asbestos Personal Injury Claim or Demand, Asbestos In-Place Insurance Coverage or an Asbestos Insurance Policy, shall be permanently and forever stayed, restrained, and enjoined from taking any action against such Settling Asbestos Insurance Company for the purpose of directly or indirectly collecting, recovering, or receiving payments, satisfaction, or recovery with respect to any such Claim, Demand or cause of action, including, without limitation:

(A)     commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, Demand or cause of action against any Settling Asbestos Insurance Company, or against the property or interests in property of any Settling Asbestos Insurance Company;

(B)     enforcing, levying, attaching, collecting, or otherwise recovering, by any manner or means, whether directly or indirectly, any judgment, award, decree, or order against any Settling Asbestos Insurance Company or against the property or interests in property of any Settling Asbestos Insurance Company with respect to any such Claim, Demand or cause of action;

(C)     creating, perfecting, or otherwise enforcing, in any manner, directly or indirectly, any Lien of any kind against any Settling Asbestos Insurance Company or the property or interests in property of any Settling

41

Asbestos Insurance Company with respect to any such Claim, Demand or cause of action;

(D)     except as otherwise specifically provided in the Parent's Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, reimbursement, or recoupment of any kind and in any manner, directly or indirectly, against any obligation due any Settling Asbestos Insurance Company or against the property or interests in property of any Settling Asbestos Insurance Company with respect to any such Claim, Demand or cause of action; and

(E)     taking any act, in any manner, in any place whatsoever, that does not conform to, or comply with, the provisions of the Parent's Plan Documents relating to such Claim, Demand or cause of action.

(2)     Reservations.  Notwithstanding anything to the contrary above or in the Parent's Plan, neither this Asbestos Insurance Company Injunction nor the Parent's Plan shall enjoin, alter, diminish or impair:

(A)     the rights of Entities to the treatment accorded them under Articles II and IV of the Parent's Plan, as applicable, including the rights of Entities with Asbestos Personal Injury Claims or Demands to assert Asbestos Personal Injury Claims or Demands against the Section 524(g) Trust in accordance with the Section 524(g) Trust Distribution Procedures;

(B)     the rights of Entities to assert any Claim, Demand, debt, obligation, or liability for payment of Section 524(g) Trust Expenses against the Section 524(g) Trust;

(C)     the enforceability of any of the Asbestos Insurance Policies or any Asbestos Insurance Settlement Agreement;

(D)     the rights of the Section 524(g) Trust, if any, with regard to any Asbestos Insurance Company that is not a Settling Asbestos Insurance Company (with the Section 524(g) Trust being, and deemed to be, for all purposes of insurance and indemnity, the successor to the Debtors in respect of all Asbestos Personal Injury Claims, Demands, and other recoveries from an Asbestos Insurance Company, in its capacity as such);

(E)     the rights of Entities to assert any Claim, Demand, debt, obligation or liability for payment against an Asbestos Insurance Company that is not an ASARCO Protected Party unless otherwise enjoined by order of the Bankruptcy Court or the District Court or estopped by a provision of the Parent's Plan; or

(F)     the rights of the Section 524(g) Trust or the Section 524(g) Trustees to seek relief from the Asbestos Insurance Company Injunction should a

42

Settling Asbestos Insurance Company fail to fulfill all obligations under an Asbestos Insurance Settlement Agreement.

11.4    <u>Limitation of Injunctions</u>.   Notwithstanding any other provision of the Parent's Plan to the contrary, the releases set forth in Article 11.1 and the Injunctions set forth in Articles 11.2 and 11.3, respectively, shall not serve to satisfy, discharge, release, or enjoin Claims by any Entity against the Section 524(g) Trust for payment of (a) Asbestos Personal Injury Claims and Demands in accordance with the Section 524(g) Trust Distribution Procedures, or (b) Section 524(g) Trust Expenses, and such releases and/or Injunctions shall not enjoin Reorganized ASARCO or the Section 524(g) Trust from enforcing any Asbestos Insurance Policy or any Asbestos Insurance Settlement Agreement.

11.5    <u>Exoneration and Reliance</u>.   To the extent allowable by law, none of the ASARCO Protected Parties shall be liable (other than for criminal liability, willful misconduct or bad faith, or <u>ultra</u> <u>vires</u> acts) to any holder of a Claim, Demand, or Interest or any other Entity with respect to any action, omission, forbearance from action, decision, or exercise of discretion taken from the Petition Date through the Effective Date in connection with (a) the management or operation of any of the Debtors or the discharge of its duties under the Bankruptcy Code, (b) the solicitation, negotiation, or implementation of any of the transactions provided for, or contemplated in, the Parent's Plan or other Parent's Plan Documents, (c) any action taken in connection with either the enforcement of the rights of the Debtors against any Entities or the defense of Claims or Demands asserted against the Debtors with regard to the Reorganization Cases, (d) any action taken in the negotiation, formulation, preparation, development, proposal, solicitation, disclosure, Confirmation, or implementation of the Parent's Plan, other Parent's Plan Documents, or related agreements, instruments or other documents, (e) the administration of the Parent's Plan or the assets and property to be distributed pursuant to the Parent's Plan or (f) the administration of any of the Debtors' Estates.  The ASARCO Protected Parties shall be deemed to have participated in each of the Reorganization Cases in good faith and in compliance with all applicable provisions of the Bankruptcy Code.   Nothing in this Article shall prevent the enforcement of the terms of the Parent's Plan.

11.6    <u>Post-524(g) Indemnity</u>.   The Post-524(g) Indemnity (as such term is defined in the Asbestos Insurance Settlement Agreement) shall go into effect on the Effective Date.  Reorganized ASARCO shall indemnify and hold harmless, but not defend, the Settled Asbestos Insurance Companies, as provided in paragraph III.C of the Asbestos Insurance Settlement Agreement.

11.7    <u>Additional Releases</u>.   Other than the SCC Litigation Trust Claims (which are not released except as specifically set forth in compliance with Article V hereunder), to the extent allowable by law, on, and as of, the Effective Date and for good and valuable consideration, the receipt and sufficiency of which are acknowledged, the ASARCO Protected Parties (acting in any capacity whatsoever) shall be forever released and discharged from any and all Claims, Demands, obligations, actions, suits, rights, debts, accounts, causes of action, remedies, avoidance actions, agreements, promises, damages, judgments, demands, defenses, or claims in respect of equitable subordination, and liabilities through the Effective Date (including all Claims and Demands based on or arising out of facts or circumstances that existed as of or prior to the Parent's Plan in any of the Reorganization Cases, including Claims and Demands

based on negligence or strict liability, and further including any derivative claims asserted on behalf of any of the Debtors, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity or otherwise, that any of the Debtors, their respective Estates, or Reorganized ASARCO would have been legally entitled to assert in its own right, whether individually or collectively) which any of the Debtors, their respective Estates, Reorganized ASARCO, Claimants, holders of Demands or other Persons receiving or who are entitled to receive distributions under the Parent's Plan may have against any of them in any way related to the Reorganization Cases or any of the Debtors (or their respective predecessors or Affiliates); provided, however, the releases provided for in this paragraph shall not extend to any claims by any governmental agency with respect to criminal liability, willful misconduct or bad faith, or ultra vires acts; and provided further, that if the Parent and Grupo México do not receive all protections provided for in the Parent's Plan, including, without limitation, those described in this Article and Articles 11.1 and 11.9, then the protections in this Article with respect to ASARCO Protected Parties other than the Debtors and Reorganized ASARCO shall not go into effect.

11.8    Exculpation.  Other than the SCC Litigation Trust Claims (which are not released except as specifically set forth in compliance with Article V hereunder), to the extent allowable by law, except in the case of a judicial finding by a Final Order of willful misconduct or bad faith, or any criminal liability or liability for ultra vires acts asserted by any Governmental Unit, no ASARCO Protected Party (acting in any capacity whatsoever) shall be liable to any Person or Entity for any action, failure or omission to act or other matter related to the Debtors or any of the Reorganization Cases, including those activities described in Article 11.5 of the Parent's Plan, through and including the Effective Date.  All parties are permanently enjoined from initiating a suit against any ASARCO Protected Party, except in the case of a judicial finding by a Final Order of actions for willful misconduct or bad faith, or any criminal liability or liability for ultra vires acts asserted by any Governmental Unit.  Any such action by a non-Governmental Unit shall be brought in the Bankruptcy Court within 90 days after the Effective Date; provided, however, that if the Parent and Grupo México do not receive all protections provided for in the Parent's Plan, including, without limitation, those described in Article 11.8, then the protections in Article 11.8 with respect to ASARCO Protected Parties other than the Debtors and Reorganized ASARCO will not go into effect.  Nothing in Article 11.8 will prevent the enforcement of the terms of the Parent's Plan.

11.9    Release of Fraudulent Transfer Claims Against Settling Asbestos Insurance Companies.  All fraudulent transfer claims against any Settling Asbestos Insurance Company arising under sections 544(b), 548, 549, or 550 of the Bankruptcy Code or otherwise with respect to the Claims, rights or interests released under the Asbestos Insurance Settlement Agreement shall be released, and the Section 524(g) Trust shall have no authority to bring any fraudulent transfer actions arising under any applicable state or other non-bankruptcy law against any Settling Asbestos Insurance Company with respect to the Claims, rights and interests released under the Asbestos Insurance Settlement Agreement.  This Article does not apply to any of the existing Avoidance Actions against certain Asbestos Insurance Companies that entered into prepetition settlement agreements.

11.10    No Release With Respect to Pension Plans and Other Employee Benefit Plans.  Notwithstanding any provision in this Article, or otherwise in the Parent's Plan, or in the

44

Confirmation Order, no claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities whatsoever against any entity with respect to statutory liabilities arising under ERISA concerning the Pension Plans or fiduciary liabilities arising under ERISA concerning other Employee Benefit Plans shall be released, exculpated, discharged, enjoined, or otherwise affected by the Parent's Plan, nor shall the entry of the Confirmation Order constitute the approval of any release, exculpation, discharge, injunction, or other impairment of any claims obligations, suits, judgments, damages, demands, debts, rights, cause of action or liabilities whatsoever against any entity with respect to statutory liabilities arising under ERISA concerning the Pension Plans or fiduciary liabilities arising under ERISA concerning other Employee Benefit Plans.

<center>ARTICLE XII</center>

<center>MATTERS INCIDENT TO PARENT'S PLAN CONFIRMATION</center>

12.1     <u>Term of Certain Injunctions and Automatic Stay</u>.

(a)     All of the injunctions and/or stays provided for in or in connection with these Reorganization Cases, whether pursuant to section 105, section 362, section 524, or any other provision of the Bankruptcy Code, other applicable law, or court order, in effect immediately prior to Confirmation shall remain in full force and effect until the Injunctions become effective and thereafter if so provided by the Parent's Plan, the Confirmation Order, or by their own terms.  In addition, on and after the Confirmation Date, the Parent may seek such further orders as it may deem necessary to preserve the status quo during the time between the Confirmation Date and the Effective Date.

(b)     Each of the Injunctions shall become effective on the Effective Date and shall continue in effect at all times thereafter, and may not be vacated, amended or modified after the Effective Date, except as otherwise provided herein.  Notwithstanding anything to the contrary contained in the Parent's Plan, all actions in the nature of those to be enjoined by the Injunctions shall be enjoined during the period between the Confirmation Date and the Effective Date.

12.2     <u>No Liability for Tax Claims</u>.  Unless a taxing authority has asserted a Claim against any of the Debtors prior to the applicable Bar Date, no Claim of such taxing authority shall be Allowed against such Debtor or Reorganized ASARCO for taxes, penalties, interest, additions to tax, or other charges arising out of the failure, if any, of the applicable Debtor or Reorganized ASARCO, or any other Entity to have paid taxes or to have filed any tax return (including, without limitation, any income tax return or franchise tax return) in or for any taxable period ending before the Petition Date or arising out of an audit of any return for a taxable period ending before the Petition Date.

12.3     <u>No Successor Liability</u>.

(a)     Except as otherwise expressly provided in the Parent's Plan, none of the ASARCO Protected Parties shall be deemed a successor or successor-in-interest to any of the Debtors or to any Entity for which the Debtors may be held legally responsible, by reason of any

<center>45</center>

theory of law or equity, and none shall be responsible for any successor or transferee liability of any kind or character, except to the extent that the Section 524(g) Trust, Reorganized ASARCO, or both, is or are the successor or successor in interest to ASARCO solely with regard to the Asbestos Insurance Policies, the Asbestos Insurance Settlement Agreements, the Asbestos In-Place Insurance Coverage, the Asbestos Insurance Actions, or the Asbestos Insurance Recoveries.

       (b)    Except as otherwise expressly provided in the Parent's Plan, none of the ASARCO Protected Parties shall have any obligations to perform, pay, indemnify creditors for, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or Reorganized ASARCO, whether arising before, on, or after the Confirmation Date.

       12.4    <u>Insurance Neutrality</u>.

       (a)    Confirmation of the Parent's Plan shall not be binding upon, and shall not have any <u>res judicata</u> or collateral estoppel effect on or against, any Asbestos Insurance Company that is subject to insurance neutrality under the Bankruptcy Court's May 29, 2008 Order Extending Scope of Insurance Neutrality Addendum Attached to Order Approving Compromise and Settlement Regarding Resolution of Derivative Asbestos Claims (the "<u>Insurance Neutrality Order</u>") regarding its insurance coverage obligations in any pending or subsequent insurance coverage litigation, arbitration, ADR-type proceeding or other dispute concerning the existence and/or scope of its rights and/or obligations regarding asbestos-related liabilities, if any, and shall not have any impact, effect or consequence in any such other context.

       (b)    Neither the Debtors, the Asbestos Subsidiary Debtors, the Asbestos Claimants' Committee, the ASARCO Committee, the FCR, an Asbestos Insurance Company nor the Section 524(g) Trust may argue or assert, in any court proceeding, arbitration, ADR-type proceeding or other dispute involving an Asbestos Insurance Company that is subject to insurance neutrality under the Bankruptcy Court's Insurance Neutrality Order and concerning issues related to insurance coverage, that any findings or conclusions concerning 11 U.S.C. § 524(g) and/or constituting any estimation of asbestos-related liabilities contained in or referenced in any decision, order, finding, conclusion or judgment of the Bankruptcy Court relating to Confirmation of the Parent's Plan:  (1) constitutes a "judgment," "adjudication," "final order," "settlement," or "finding of liability" related to, based on or relying on the principles enunciated in *UNR Indus., Inc. v. Continental Cas. Co.*, 942 F.2d 1101 (7th Cir. 1991) and/or *Fuller-Austin Insulation Co. v. Fireman's Fund Ins. Co.*, 2002 WL 31005090 (Cal. Super. Ct. Aug. 6, 2002); and (2) is binding upon such an Asbestos Insurance Company for any purpose concerning insurance coverage under any policies issued to any of the Debtors and transferred to the Section 524(g) Trustees in accordance with the provisions hereof. Nothing herein shall limit the ability of the Debtors, the Asbestos Subsidiary Debtors, the Asbestos Claimants' Committee, the ASARCO Committee, the FCR, an Asbestos Insurance Company or the Section 524(g) Trust to offer the Parent's Plan, any of the Parent's Plan Documents, the Confirmation Order or any part of the confirmation process (including, without limitation, any evidentiary hearings or any findings or conclusions therein) in any court, including any court resolving any insurance coverage litigation, as evidence that the Debtors, Reorganized ASARCO, or the Section 524(g) Trust are so bound.

(c)      Nothing in the Parent's Plan shall operate to expand the rights of the Debtors, any of the Asbestos Subsidiary Debtors, the Asbestos Claimants' Committee, the ASARCO Committee, the FCR, an Asbestos Insurance Company or the Section 524(g) Trust, or diminish any of their respective duties and obligations as to those rights, duties and obligations that exist under any policies issued by an Asbestos Insurance Company that is subject to insurance neutrality under the Bankruptcy Court's Insurance Neutrality Order as of the Petition Date except as set out in Article 12.4(f) below.  Moreover, nothing in the Confirmation process shall in any way operate to, or have the effect of, impairing, prejudicing or expanding such Asbestos Insurance Company's legal, equitable, or contractual rights in any respect, or of increasing, accelerating, creating, or triggering such Asbestos Insurance Company's insurance coverage obligations, if any, in comparison to what those respective rights or obligations would have been if the Parent's Plan had not been confirmed except as set out in Article 12.4(f) below; and all of such Asbestos Insurance Company's rights are expressly reserved and preserved.  Such Asbestos Insurance Company's rights shall be determined pursuant to its insurance policies with the applicable Debtors, and under applicable law.  Such Asbestos Insurance Company's rights to conduct discovery, either written or oral, in any future proceeding in any insurance coverage litigation relating to the Debtors' asbestos-related liabilities for or such Asbestos Insurance Company's obligations to indemnify the applicable Debtors on account of any or all of such asbestos-related liabilities, if any, shall not be affected, restricted, expanded, altered or modified by anything in or part of the Parent's Plan or the Confirmation process.  An Asbestos Insurance Company shall have no such discovery rights in any of the Reorganization Cases; provided, however, that such Asbestos Insurance Company shall have rights to conduct discovery in the Reorganization Cases on any issue that does not relate to an Asbestos Insurance Company's alleged obligations, if any, to indemnify the applicable Debtors on account of any asbestos-related liabilities.  Without limiting the foregoing, except as set out in Article 12.4(f) below, no proceedings undertaken pursuant to or otherwise as part of the Confirmation process (including without limitation, any evidentiary hearings or any findings or conclusions constituting or relating to the determination of any Alter Ego Theories, contained in or referenced in any decision, order, finding, conclusion or judgment of the Bankruptcy Court) shall constitute a trial or hearing on the merits, or an adjudication, Final Order, settlement, or finding of liability binding on such Asbestos Insurance Company for any purpose concerning insurance coverage for asbestos-related liability, or be used as evidence or offered into evidence in any proceeding to prove that such Asbestos Insurance Company participated in and/or consented to the procedures undertaken pursuant to the Parent's Plan.  Any ruling by the Bankruptcy Court on any issue upon which such Asbestos Insurance Company does not involve itself and the Confirmation Order shall not be binding on such Asbestos Insurance Company in any insurance coverage litigation. While the court and the finder of fact in any insurance coverage litigation may be advised of any of the proceedings in the Bankruptcy Court and Confirmation Order and while the Debtors, the Asbestos Subsidiary Debtors, the Asbestos Claimants' Committee, the ASARCO Committee, the FCR, an Asbestos Insurance Company or the Section 524(g) Trust may offer the Parent's Plan, any of the Parent's Plan Documents, any of the Confirmation proceedings, or the Confirmation Order as evidence of the reasonableness of a settlement between or among the Debtors, the ASARCO Committee, and the FCR, the court and the finder of fact in any insurance coverage litigation shall be informed or instructed that such proceedings in the Bankruptcy Court and the Confirmation Order are not binding on such Asbestos Insurance Company and that it is up to the court or the finder of fact in any insurance coverage litigation to make its own independent

determination as to the reasonableness of that settlement as to such Asbestos Insurance Company.

(d)     With regard to any Asbestos Insurance Company that is subject to insurance neutrality under the Bankruptcy Court's Insurance Neutrality Order, nothing in or part of the Parent's Plan and the Confirmation process shall be deemed to be an "adversarial process" as that concept was enunciated in *Gandy v. State Farm Fire & Cas. Co.*, 925 S.W.2d 696 (Tex. 1996).  To the extent of any insurance coverage obligation under any policies issued by such Asbestos Insurance Company, all such Asbestos Insurance Companies reserve all of their rights, if any, to adjudicate in a fully "adversarial" trial or hearing on the merits any or all of the Debtors' asbestos-related liabilities, including, without limitation, any liability with respect to any individual asbestos claim; and any other party reserves all of its rights, if any, to oppose such Asbestos Insurance Company's assertion of any such right.

(e)     That an Asbestos Insurance Company that is subject to insurance neutrality under the Bankruptcy Court's Insurance Neutrality Order does not participate in the negotiation, nor the Confirmation, of the Parent's Plan shall not be held against or in favor of any person or entity in any pending or subsequent insurance coverage litigation, arbitration, ADR-type proceeding, or other dispute concerning the existence and/or scope of such Asbestos Insurance Company's rights and/or obligations regarding asbestos-related liabilities, if any, except to rebut any argument affirmatively raised by such Asbestos Insurance Company that such Asbestos Insurance Company's absence from the reorganization proceedings reflects collusion against and/or a lack of cooperation with such Asbestos Insurance Company. Notwithstanding the foregoing, such Asbestos Insurance Company may assert in any such pending or subsequent insurance coverage litigation, arbitration, ADR-type proceeding, or other dispute concerning the existence and/or scope of such Asbestos Insurance Company's rights and/or obligations regarding asbestos-related liabilities, if any, any coverage defenses based on collusion against and/or lack of cooperation with such Asbestos Insurance Company on any basis other than such Asbestos Insurance Company's absence from the Reorganization Cases.

(f)     Any of the Debtors, the Asbestos Subsidiary Debtors, the Asbestos Claimants' Committee, the ASARCO Committee, the FCR, an Asbestos Insurance Company, or the Section 524(g) Trust may offer in any court, including any court resolving any insurance coverage litigation, any relevant portion of the Parent's Plan and any of the Parent's Plan Documents and/or the Confirmation Order for any purpose, including, without limitation, that the Parent's Plan was a reasonable settlement; provided, however, such offer shall be subject to the rights, defenses (including affirmative defenses) and objections, if any, of the Debtors, the Asbestos Subsidiary Debtors, the Asbestos Claimants' Committee, the ASARCO Committee, the FCR, an Asbestos Insurance Company and the Section 524(g) Trust.

(g)     Notwithstanding the foregoing Article 12.4, to the extent of any conflict between this provision and Article XI, the Permanent Channeling Injunction, the Asbestos Insurance Company Injunction, the provisions of the Asbestos Trust Agreement or the Asbestos TDP, the provisions of Article XI, the Permanent Channeling Injunction, the Asbestos Insurance Company Injunction, the provisions of the Asbestos Trust Agreement or the Asbestos TDP shall govern.

# ARTICLE XIII

## PROVISIONS GOVERNING DISTRIBUTIONS

13.1     Plan Distributions.  All distributions or payments required or permitted to be made on the Effective Date under the Parent's Plan, other than to holders of Asbestos Personal Injury Claims and Demands and/or Professional Persons, shall be made by the Parent's Plan Administrator on the Effective Date and thereafter by the Parent's Plan Administrator at the time or times and in the manner provided herein, unless otherwise ordered by the Bankruptcy Court.  Distributions to holders of Asbestos Personal Injury Claims and Demands shall be made by the Section 524(g) Trust in accordance with the Section 524(g) Trust Documents. Distributions to Professional Persons shall be made by the Parent's Plan Administrator on the Effective Date and thereafter by the Parent's Plan Administrator pursuant to order of the Bankruptcy Court.  Distributions to be made on the Effective Date shall be deemed actually made on the Effective Date if made either (a) on the Effective Date or (b) as soon as reasonably practicable thereafter.

13.2     Delivery of Distributions.  Except as otherwise expressly provided in the Parent's Plan, distributions to holders of Allowed Claims shall be made at the address of the holder of such Claim as indicated in the claims register maintained by the Claims Agent. Nonetheless, if such holder holds such Claims through a Nominee, distributions with respect to such Claims shall be made to such Nominee, and such Nominee shall, in turn, make appropriate distributions and book entries to reflect such distributions to such holders.

All Cash distributions on account of Allowed Bondholder Claims shall be made to the appropriate Indenture Trustee and further distributions on account of such Claims by the Indenture Trustee to the record holders of Bondholder Claims shall be accomplished in accordance with the Indentures and the policies and procedures of the Depository Trust Company.

13.3     Distribution Record Date.  Reorganized ASARCO and the Parent's Plan Administrator shall have no obligation to recognize the transfer of, or the sale of any participation in, any Allowed Claim that occurs after the Distribution Record Date and shall be entitled for all purposes herein to recognize and make distributions only to those holders of Allowed Claims that are holders of such Claims or participants therein, as of the Distribution Record Date.  As of the close of business on the Distribution Record Date, each transfer register for the Bonds, as maintained by the applicable Indenture Trustee, shall be closed.  Reorganized ASARCO and the Parent's Plan Administrator shall have no obligation, and are not permitted, to recognize the transfer or sale of any Bondholder Claim that occurs after the close of business on the Distribution Record Date and shall be entitled for all purposes herein to recognize and make distributions only to those holders who are holders of such Claims as of the close of business on the Distribution Record Date; provided, however, that with respect to Bondholder Claims, further distributions on account of such Claims by the Indenture Trustees to the record holders of the Bondholder Claims shall not be made as of the Distribution Record Date but rather shall be

49

accomplished in accordance with the respective Indentures and the policies and procedures of DTC.

       13.4    <u>Unclaimed Property</u>.

       (a)    *Distributions by the Section 524(g) Trust.*

       Any Cash, assets, or other property to be distributed under the Parent's Plan by the Section 524(g) Trust that remains unclaimed (including by a Claimant's failure to draw upon a check issued to such Claimant) or otherwise is not deliverable to the Claimant entitled thereto one year after the initial distribution is made or attempted shall become vested in, and shall be transferred and delivered to, the Section 524(g) Trust for use in accordance with the terms of the Section 524(g) Trust Documents.

       (b)    *Distributions by the Parent's Plan Administrator.*

       (1)    If the distribution to any holder of an Allowed Claim is returned to Reorganized ASARCO or the Parent's Plan Administrator as undeliverable or is otherwise unclaimed (including by a Claimant's failure to draw upon a check issued to such Claimant), no further distributions shall be made to such holder unless the Parent's Plan Administrator is timely notified in writing of the holder's then current address, at which time, all missed distributions shall be made to such holder without interest. The amounts in respect of such undeliverable and/or unclaimed distributions shall be returned to the Parent's Plan Administrator until such distributions are claimed. The Parent's Plan Administrator shall segregate and deposit into an escrow account (the "<u>Undeliverable and Unclaimed Distribution Reserve</u>") all undeliverable and/or unclaimed distributions for the benefit of all such similarly situated Persons until such time as a distribution becomes deliverable or is claimed or such Claimant's right to the distribution is waived pursuant to Article 13.4(b)(2) below. Nothing contained in the Parent's Plan shall require Reorganized ASARCO or the Parent's Plan Administrator to attempt to locate any holder of an Allowed Claim.

       (2)    Any funds in the Undeliverable and Unclaimed Distribution Reserve that remain unclaimed (including by a Claimant's failure to negotiate a check issued to such Claimant) or otherwise are not deliverable to the Claimant entitled thereto one year after the initial distribution is made or attempted (the "<u>Forfeited Distributions</u>") shall become vested in, and shall be transferred and delivered to, the Parent's Plan Administrator. In such event, such Claimant shall be deemed to have waived its rights to such payments or distributions under the Parent's Plan pursuant to section 1143 of the Bankruptcy Code, shall have no further Claim in respect of such distribution, and shall not participate in any further distributions under the Parent's Plan with respect to such Claim. The Parent's Plan Administrator shall distribute the Forfeited Distributions to Reorganized ASARCO as a Subsequent Distribution.

       13.5    <u>Compliance with Tax Requirements</u>. Reorganized ASARCO, the Parent's Plan Administrator and the Section 524(g) Trust shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authorities, and

all distributions hereunder or under any Parent's Plan Document shall be subject to such withholding and reporting requirements, if any.  Notwithstanding any other provision of the Parent's Plan, each Person receiving a distribution pursuant to the Parent's Plan, or any other Parent's Plan Document, shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Authority, including income and other tax obligations, on account of that distribution.

13.6   <u>Setoffs and Recoupments</u>.   Subject to the limitations provided in section 553 of the Bankruptcy Code, Reorganized ASARCO or the Parent's Plan Administrator, as the case may be, may, but shall not be required to, offset against or recoup from the holder of any Allowed Claim on which payments or other distributions are to be made pursuant to the Parent's Plan any Claims of any nature whatsoever the Estate of the applicable Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Reorganized ASARCO or the Parent's Plan Administrator, as the case may be, of any such Claim against such holder or right of setoff or recoupment that the applicable Estate may have against the holder of such Allowed Claim.

13.7   <u>No Distribution Pending Allowance</u>.  If a Claim or any portion of a Claim is disputed, no payment or distribution will be made on account of the disputed portion of such Claim (or the entire Claim, if the entire Claim is disputed), unless such Disputed Claim becomes an Allowed Claim.  No estate funds will be expended by the Parent's Plan Administrator to support or defend settlements achieved by the Debtors prior to the Effective Date where the order approving such settlement has not become a final order.

13.8   <u>Disputed Claims Reserve</u>.

(a)     The Parent's Plan Administrator shall maintain, in accordance with its powers and responsibilities under the Parent's Plan, a Disputed Claims Reserve.

(b)     On the Effective Date (or as soon thereafter as is reasonably practicable), Reorganized ASARCO or the Parent's Plan Administrator, as the case may be, shall deposit Cash and/or other forms of consideration in the Disputed Claim Reserve that would have been distributed to the holders of Disputed Claims if such Disputed Claims had been Allowed Claims on the Effective Date.  This amount will be determined based on the lesser of (1) the asserted amount of the Disputed Claims in the applicable Proofs of Claim, (2) the amount, if any, estimated by the Bankruptcy Court for purposes of distribution pursuant to section 502(c) of the Bankruptcy Code, or (3) the amount otherwise agreed to by the applicable Debtor and the holders of such Disputed Claims.

(c)     The Parent, Reorganized ASARCO, and/or the Parent's Plan Administrator may seek Bankruptcy Court approval to reduce the size of the Disputed Claims Reserve based upon the amount of the remaining Disputed Claims or other changed circumstances.

(d)     In the case of objections to allegedly Secured Claims, any Lien asserted by the holder of such a Claim against assets that revest in or is transferred to Reorganized ASARCO shall remain in place, pending resolution of the objection to the allegedly Secured Claim.

(e)     The Parent's Plan Administrator (at such time as determined to be practicable by the Parent's Plan Administrator) shall distribute from the Disputed Claims Reserve to the holder of any Disputed Claim that has become an Allowed Claim, not later than the tenth Business Day after the end of the calendar month in which such Disputed Claim becomes an Allowed Claim, an amount equal to such Claim as if such Claim had been an Allowed Claim on the Effective Date.

(f)     If a Disputed Claim is disallowed, in whole or in part, the Parent's Plan Administrator shall (at such time as determined to be practicable by the Parent's Plan Administrator) distribute the Cash reserved in respect of such disallowed Disputed Claim, Pro Rata: first, to holders of Claims in Class 3 (and, pending resolution of Disputed Claims in Class 3, the Disputed Claims Reserve); second, upon Payment in Full of Claims in Class 3, to holders of Claims in Class 6 (and, pending resolution of Disputed Claims in Class 6, the Disputed Claims Reserve); third, upon Payment in Full of Claims in Class 6, to holders of Claims in Class 7 (and, pending resolution of Disputed Claims in Class 7, the Disputed Claims Reserve); and fourth, upon payment in Full of Claims in Class 7, to Reorganized ASARCO; provided that, in no event shall any holder of an Allowed Claim in Class 3, 6, or 7 receive distributions which exceed the Allowed amount of such Claim.  To the extent there are any excess funds in Disputed Claims Reserve after all distributions required by the Parent's Plan have been made, the Parent's Plan Administrator shall make a Subsequent Distribution of such funds to Reorganized ASARCO.

(g)     The Disputed Claims Reserve is intended to be treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9(b)(1), and hence as a taxable entity for federal income tax purposes, and the Parent's Plan Administrator will be the "administrator" of the Disputed Claims Reserve pursuant to Treasury Regulation section 1.468B-9(b)(2).  In general, the Disputed Claims Reserve will be treated in the same manner as a "qualified settlement fund" for federal income tax purposes.  The Parent's Plan Administrator will cause all taxes imposed on the Disputed Claims Reserve to be paid using assets of the Disputed Claims Reserve and will comply with all tax reporting and withholding requirements imposed on the Disputed Claims Reserve under applicable tax laws, and in particular the rules applicable to a disputed ownership fund.

13.9     Surrender of Bondholder Certificates; Lost Certificates.  With respect to each Allowed Bondholder Claim, each holder of an instrument evidencing such Allowed Bondholder Claim (a "Certificate") shall surrender such Certificate to the Indenture Trustee or the Parent's Plan Administrator, as the case may be, and such Certificate shall be cancelled solely with respect to the Debtors and such cancellation shall not alter the obligations or rights of any non-Debtor parties as between or among such persons pursuant to such instruments.  No distribution of property hereunder shall be made to such holder unless and until such Certificate is received by the Indenture Trustee or the Parent's Plan Administrator, as the case may be, or the unavailability of such Certificate is established to the reasonable satisfaction of such Indenture Trustee or the Parent's Plan Administrator.  Any holder who fails to surrender or cause the surrender of such Certificate, or fails to execute and deliver an affidavit of loss and indemnity reasonable satisfactory to the Indenture Trustee or the Parent's Plan Administrator, as the case may be, prior to the second anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims in respect of such Certificate and shall not participate in any distribution under the Parent's Plan, and all property in respect of such forfeited distribution shall be subject

to distribution to all other holders of Claims under such Indenture who have duly surrendered or caused the surrender of their Certificates or reasonably established the unavailability thereof.

Any holder of an Allowed Bondholder Claim with respect to which the underlying Certificate has been lost, stolen, mutilated or destroyed must, in lieu of surrendering such Certificate, deliver to the Indenture Trustee or the Parent's Plan Administrator, as the case may be: (i) evidence satisfactory to the Indenture Trustee or the Parent's Plan Administrator, as the case may be, of the loss, theft, mutilation or destruction; and (ii) such security or indemnity as may be required by the Indenture Trustee or the Parent's Plan Administrator, as the case may be, to hold it and the Debtors harmless from any damages, liabilities or costs incurred in treating such individual as a holder of such Certificate. Upon compliance with this Article by a holder of an Allowed Bondholder Claim, such holder shall, for all purposes under the Parent's Plan, be deemed to have surrendered the applicable Certificate.

Any holder of a Certificate that fails to surrender or is deemed not to have surrendered the applicable Certificate within the time prescribed in the second subparagraph of this Article shall be deemed to have had its right to distributions pursuant to the Parent's Plan on account thereof discharged, and shall be forever barred from asserting any such Claim against any of the Parent, the Debtors, Reorganized ASARCO, the Parent's Plan Administrator, the Indenture Trustees, or any of the foregoing's respective property.

Notwithstanding the foregoing, if the record holder of a Bondholder Claim is the Depository Trust Company or its nominee or such other securities depository or custodian thereof, or if a Bondholder Claim is held in book-entry or electronic form pursuant to a global security held by the Depository Trust Company, then the beneficial holder of such an Allowed Bondholder Claim shall be deemed to have surrendered such holder's security, note, debenture or other evidence of indebtedness upon surrender of such global security by the Depository Trust Company or such other securities depository or custodian thereof.

13.10   Cancellation of Instruments.  When all Allowed Bondholder Claims with respect to any Bond Issuance are satisfied by the payment under the Parent's Plan, then, on the Effective Date, all promissory notes, instruments, indentures, bonds, agreements, or other documents evidencing, giving rise to, or governing any Claim against any Debtor (including the applicable Indenture and the Bonds) with respect to such Bond Issuance shall be deemed cancelled and shall represent only the right to participate in the distributions hereunder. Notwithstanding the foregoing and anything else contained in the Parent's Plan, the Indentures for each Bond Issuance will continue in effect solely for the purposes of (i) allowing distributions to be made under the Parent's Plan pursuant to the Indentures and the Indenture Trustees to perform such other necessary functions with respect thereto and to have the benefit of all the protections and other provisions of the applicable Indentures in doing so; (ii) permitting an Indenture Trustee to maintain or assert any right or Charging Lien it may have with respect to distributions pursuant to the terms of the Parent's Plan for Indenture Trustee Fee Claims; (iii) permitting the Indenture Trustees to assert, in accordance with the terms of the Parent's Plan and Confirmation Order, any right to indemnification, contribution or other Claim any one of them may have under the applicable Indentures, subject to any and all defenses the Debtors may have under the Parent's Plan and applicable law to any such asserted right or Claims; and (iv) permitting each Indenture Trustee to exercise, in accordance with the terms of the Parent's

Plan and Confirmation Order, its rights and obligations relating to the interests of the holders of Bondholder Claims and its relationship with the holders of Bondholder Claims pursuant to the applicable Indenture, including its right to appear and be heard in these chapter 11 cases and any appeals.

ARTICLE XIV

PROCEDURES FOR TREATING DISPUTED CLAIMS

14.1    Objections to Claims.  After the Effective Date, Reorganized ASARCO and the Parent's Plan Administrator shall have the exclusive right to file objections to Claims (other than objections to Asbestos Personal Injury Claims and Demands, and objections to Claims that have been Allowed by Final Order) and litigate to judgment, settle, or withdraw such objections to Disputed Claims (including any Claims subject to a pending estimation motion). Without limiting the preceding, Reorganized ASARCO and the Parent's Plan Administrator shall have the right to litigate any Disputed Claim either in the Bankruptcy Court or in any court of competent jurisdiction.  After the Effective Date, only the Section 524(g) Trust shall have the authority to file objections to Asbestos Personal Injury Claims and Demands and litigate to judgment, settle, or withdraw such objections, and Asbestos Personal Injury Claims and Demands, whether or not a Proof of Claim is filed, shall be satisfied exclusively in accordance with the Parent's Plan, the Section 524(g) Trust Agreement, and the Section 524(g) Trust Distribution Procedures.  For the avoidance of doubt, no objection to Asbestos Personal Injury Claims or Demands shall be filed in the Bankruptcy Court.

14.2    Objection Deadline.  Within the later of (a) 90 days after the Confirmation Date or (b) 90 days after a Proof of Claim is filed, objections to Claims (other than Asbestos Personal Injury Claims and Demands, which shall be Allowed or disallowed as provided in the Section 524(g) Trust Distribution Procedures) shall be filed with the Bankruptcy Court; provided, however, that Reorganized ASARCO and/or the Parent's Plan Administrator may seek to extend such period (or any extended period) for cause.

14.3    Disallowance of Improperly Filed Claims.  Any Administrative Claim or other Claim (except for an Asbestos Personal Injury Claim or a Demand) for which the filing of a motion for allowance is required shall be disallowed if such filing is not timely and properly made, subject to the right of the Claimant to seek permission under applicable law to file a late claim.  Any Administrative Claim timely filed on the Proof of Administrative Claim (found in Exhibit B to Docket #8549) pursuant to Docket #8549 shall not require a motion for allowance.

ARTICLE XV

MISCELLANEOUS

15.1    General Retention of Jurisdiction.   Until the Reorganization Cases are closed, the Bankruptcy Court (and, with respect to the Permanent Channeling Injunction and the Asbestos Insurance Company Injunction, the District Court) shall retain the fullest and most extensive jurisdiction permissible, including, without limitation, that necessary (a) to ensure that the purposes and intent of the Parent's Plan are carried out, (b) to enforce and interpret the terms

and conditions of the Parent's Plan Documents, and (c) to enter such orders or judgments, including, without limitation, injunctions necessary to enforce the rights, title, and powers of the Debtors, Reorganized ASARCO, a Settling Asbestos Insurance Company, the Parent and/or other ASARCO Protected Party.  Except as otherwise provided in the Parent's Plan, the Bankruptcy Court shall retain jurisdiction to hear and determine all Claims against and Interests in the Debtors and to adjudicate and enforce all other causes of action that may exist on behalf of the Debtors.  Nothing contained herein shall prevent Reorganized ASARCO, the Parent's Plan Administrator, the Parent, the Section 524(g) Trustees, the Litigation Trustees, or the Environmental Custodial Trustee (as appropriate) from taking such action as may be necessary in the enforcement of any cause of action that such Entity has or may have and that may not have been enforced or prosecuted by the applicable Debtor, which cause of action shall survive entry of the Confirmation Order and occurrence of the Effective Date and shall not be affected thereby except as specifically provided herein.

15.2    Jurisdiction Over the Section 524(g) Trust.  The Section 524(g) Trust shall be subject to the continuing jurisdiction of the Bankruptcy Court in accordance with the requirements of section 468B of the Internal Revenue Code and the regulations issued pursuant thereto.

15.3    Specific Purposes.  Without limiting the effect of Articles 15.1 and 15.2, the Bankruptcy Court shall retain jurisdiction after Confirmation to:

(a)    modify the Parent's Plan after entry of the Confirmation Order, pursuant to the provisions of the Parent's Plan, the Bankruptcy Code, and the Bankruptcy Rules;

(b)    correct any defect, cure any omission, reconcile any inconsistency, or make any other necessary changes or modifications in or to the Parent's Plan, the Parent's Plan Documents, or the Confirmation Order as may be necessary to carry out the purposes and intent of the Parent's Plan;

(c)    hear and determine any cause of action, and to enter and implement such orders as may be necessary or appropriate, to execute, interpret, implement, consummate, or enforce the Parent's Plan, the Parent's Plan Documents and the transactions contemplated thereunder;

(d)    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the Parent's Plan, including, without limitation, the Parent's Plan Documents, and to enforce, including by specific performance, the provisions of the Parent's Plan and the Parent's Plan Documents;

(e)    hear and determine disputes arising in connection with the execution, interpretation, implementation, consummation, or enforcement of the settlement agreements, asset purchase agreements or other agreements entered into by any of the Debtors during the Reorganization Cases (the "Other Agreements"), or to enforce, including by specific performance, the provisions of the Other Agreements;

(f)    enter and implement orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation or implementation of

the Parent's Plan, including, without limitation, to issue, administer, and enforce injunctions, releases, assignments, transfers of property or property rights, or other obligations contained in the Parent's Plan and the Confirmation Order;

(g)     assure the performance by Reorganized ASARCO, the Parent's Plan Administrator and the Trustees of their respective obligations to make distributions under the Parent's Plan and other Parent's Plan Documents;

(h)     enter such orders or judgments, including injunctions, as necessary to enforce the title, rights, and powers of any of the Debtors, Reorganized ASARCO, the Parent, the Parent's Plan Administrator or the Trusts;

(i)     hear and determine any and all motions, applications or adversary proceedings brought by or against the Trusts related to (1) enforcement or interpretation of the Trust Documents and (2) amendment, modification, alteration or repeal of any provision of the Trust Documents, if such hearing and determination by the Bankruptcy Court is required pursuant to the Parent's Plan;

(j)     hear and determine any and all motions, applications or adversary proceedings brought by Reorganized ASARCO against Sterlite and Sterlite's affiliates;

(k)     hear and determine any and all adversary proceedings, applications, and contested matters, including any remands after appeal;

(l)     ensure that distributions to holders of Allowed Claims and Demands are accomplished as provided herein;

(m)     alter the size of the Disputed Claims Reserve based upon the amount of the remaining Disputed Claims or other changed circumstances;

(n)     hear and determine any timely objections to or motions or applications concerning Claims or the allowance, classification, priority, compromise, setoff, estimation, or payment of any Claim, to the fullest extent permitted by the provisions of section 157 of title 28 of the United States Code;

(o)     enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed, or vacated;

(p)     hear and determine any motions, contested matters or adversary proceedings involving taxes, tax refunds, tax attributes, tax benefits, and similar or related matters with respect to any of the Debtors, Reorganized ASARCO, the Parent's Plan Administrator and/or the Trusts arising on or prior to the Effective Date, arising on account of transactions contemplated by the Parent's Plan Documents, or relating to the period of administration of the Reorganization Cases;

(q)     hear and determine all applications for compensation of Professional Persons and reimbursement of expenses under sections 330, 331, or 503(b) of the Bankruptcy Code;

(r)     hear and determine any causes of action relating to any of the Debtors, Reorganized ASARCO or the Trusts to the fullest extent permitted by section 157 of title 28 of the United States Code;

(s)     hear and determine any cause of action in any way related to the Parent's Plan Documents or the transactions contemplated thereby, against the ASARCO Protected Parties;

(t)     recover all assets of each of the Debtors and property of their Estates, wherever located, including actions under chapter 5 of the Bankruptcy Code;

(u)     hear and determine any and all motions pending as of the Confirmation Date for the rejection, assumption, or assignment of executory contracts or unexpired leases and the allowance of any Claim resulting therefrom;

(v)     hear and determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(w)     consider and act on the compromise and settlement of any Claim against, or Interest in, any of the Debtors or their respective Estates including, without limitation, any disputes relating to any Administrative Claims, any Bar Date, or Bar Date Order;

(x)     hear and determine all questions and disputes regarding title to the assets of any of the Debtors, their respective Estates or the Trusts;

(y)     hear and determine any other matters related hereto, including the implementation and enforcement of all orders entered by the Bankruptcy Court in the Reorganization Cases;

(z)     retain continuing jurisdiction with regard to the Section 524(g) Trust sufficient to satisfy the requirements of Treasury Regulation section 1.468B;

(aa)     hear and determine any and all applications brought by the Section 524(g) Trustees to amend, modify, alter, or repeal any provision of the Section 524(g) Trust Agreement or the Section 524(g) Trust Distribution Procedures pursuant to the Section 524(g) Trust Agreement and to declare or resolve all issues or disputes contemplated by the Section 524(g) Trust Agreement;

(bb)     enter and implement orders extending the Asbestos Insurance Company Injunction to insurance companies that become Settling Asbestos Insurance Companies after the Effective Date;

(cc)     enter such orders as are necessary to implement and enforce the Injunctions;

(dd)     hear and determine any other matter in connection with the SCC Litigation Trust including, without limitation, resolving disputes regarding the Maximum Recovery and the

amount of recovery to which any purchaser, transferee or successor-in-interest of the SCC Litigation Trust's interests in the SCC Litigation Trust Claims is entitled; and

(ee)     hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or are related to the Parent's Plan.

15.4     Exclusive Jurisdiction of District Court for Certain Matters.

(a)     The District Court shall, without regard to the amount in controversy, retain exclusive jurisdiction after Confirmation over matters relating to section 524(g) of the Bankruptcy Code and the Permanent Channeling Injunction and the Asbestos Insurance Company Injunction, including, without limitation, the validity, application, or construction of the Permanent Channeling Injunction and the Asbestos Insurance Company Injunction, or of section 524(g) of the Bankruptcy Code with respect to the Permanent Channeling Injunction and the Asbestos Insurance Company Injunction; provided, however, that, from and after the Effective Date, the jurisdiction of the District Court shall be non-exclusive with respect to any Asbestos Insurance Action or Asbestos Insurance Recovery.  Nothing contained herein shall be deemed a finding or conclusion that:  (i) the Bankruptcy Court or District Court in fact have jurisdiction with respect to any Asbestos Insurance Action or Asbestos Insurance Recovery; (ii) any such jurisdiction is exclusive with respect to any Asbestos Insurance Action or Asbestos Insurance Recovery; or (iii) abstention or dismissal or reference of actions effecting the transfer of jurisdiction of any Asbestos Insurance Action or Asbestos Insurance Recovery pending in the Bankruptcy Court or District Court to another court is precluded, inadvisable or unwarranted.  Any court other than the Bankruptcy Court or the District Court that has or is capable of having jurisdiction over any Asbestos Insurance Action or Asbestos Insurance Recovery shall have the right to exercise such jurisdiction.

(b)     Notwithstanding entry of the Confirmation Order and/or the occurrence of the Effective Date, the reference to the Bankruptcy Court pursuant to the Reference Order shall continue, but subject to this Article 15.4 and any other modifications or withdrawals of the reference specified in the Confirmation Order, the Reference Order, any case management order or other order of the District Court.

15.5     Post-Effective Date Status of the Committees and the FCR.   The Committees and the position of the FCR shall continue in existence until the Effective Date, with ASARCO to pay the reasonable fees and expenses of the Committees and the FCR through the Effective Date in accordance with the fee and expense procedures promulgated during the Reorganization Cases.  The Committees and the FCR shall have standing to participate in proceedings brought by their respective professionals or, if applicable, members, for allowance of fees and/or reimbursement of expenses as permitted by law.  On and after the Effective Date, Judge Robert C. Pate shall serve as the FCR, as such term is defined in the Section 524(g) Trust Agreement, and shall have and exercise the functions, rights, duties, powers and privileges provided in the Section 524(g) Trust Documents, if Judge Robert C. Pate is willing to so serve. If not, the Bankruptcy Court will appoint his replacement.  Except as provided in this subsection or above, the Committees shall be dissolved on the Effective Date, and the members, attorneys, accountants, and other professionals thereof shall be released and discharged of and from all

further authority, duties, responsibilities, liabilities, and obligations related to, or arising from, the Reorganization Cases.

        15.6   <u>Modification of Parent's Plan</u>.  The Parent may alter, amend or modify the Parent's Plan under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date, the Parent or Reorganized ASARCO, as the case may be, may, under section 1127(b) of the Bankruptcy Code, seek Bankruptcy Court approval to remedy any defects or omissions or reconcile any inconsistencies in the Parent's Plan or the Confirmation Order in such manner as may be necessary to carry out the purposes and intent of the Parent's Plan, so long as the proposed alteration, amendment or modification does not adversely affect the treatment of Claims or Interests under the Parent's Plan.

        15.7   <u>Non-Consummation</u>.  If the Parent's Plan is not Confirmed, or if the Parent's Plan is Confirmed and does not become effective, the rights of all parties in interest in the Debtors' chapter 11 cases, including the Parent, are and will be reserved in full.  Any concessions or settlements reflected herein (if any), are made for purposes of the Parent's Plan only, and if the Parent's Plan does not become effective, then (i) no party in interest shall be bound or deemed prejudiced by any such concession or settlement, (ii) the Parent's Plan shall be null and void in all respects other than Article 10.2, (iii) any settlement or compromise embodied in the Parent's Plan, assumption or rejection of executory contracts or leases affected by the Parent's Plan, and any document or agreement executed pursuant to the Parent's Plan shall be deemed null and void, (iv) nothing contained in the Parent's Plan, and no acts taken in preparation for consummation of the Parent's Plan, shall prejudice in any manner the rights of the Parent or constitute an admission or waiver of any sort by the Parent, and (v) the structure of the Parent's Plan and the classification of creditors or groups of creditors within one Class contained herein shall have no evidentiary or precedential effect.

        15.8   <u>Entire Agreement</u>.  Except as otherwise expressly provided in the Parent's Plan or the Parent's Plan Documents, the Parent's Plan and the Parent's Plan Documents set forth the entire agreement and undertakings relating to the subject matter thereof and supersede all prior discussions and documents.

        15.9   <u>Rules Governing Conflicts Between Documents</u>.  In the event of a conflict between the terms or provisions of the Parent's Plan and the Parent's Plan Documents, the terms of the Parent's Plan shall control over the Parent's Plan Documents.  In the event of a conflict between the terms of the Parent's Plan or the Parent's Plan Documents, on the one hand, and the terms of the Confirmation Order, on the other hand, the terms of the Confirmation Order shall control.

        15.10  <u>Severability</u>.  In the event any provision in the Parent's Plan should be determined to be unenforceable either on its face or as applied to any Claim, Demand, Interest or transaction, the Parent may modify the Parent's Plan in accordance with Article 15.6 hereof so that such provision shall not be applicable to the holder of any Claim, Demand, Interest, or transaction.  Such determination of unenforceability shall not (a) limit or affect the enforceability and operative effect of any other provision of the Parent's Plan or (b) require the re-solicitation of any acceptance or rejection of the Parent's Plan.

15.11  Headings.  Headings are utilized in the Parent's Plan for convenience and reference only and shall not constitute a part of the Parent's Plan for any other purpose.

15.12  Bar Date for Compensation and Reimbursement Claims.  All applications for final allowances of compensation or reimbursement of expenses under section 330 of the Bankruptcy Code or applications for allowance of Administrative Claims arising under subsections (b)(2) through (b)(6) of section 503(b) of the Bankruptcy Code must be filed on or before 90 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court; save and except that any application under section 503(b)(3)(D) of the Bankruptcy Code or any application for a fee enhancement or success fee under the Bankruptcy Code must be filed on or before 60 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Objections to applications of such Professionals Persons or other Entities for compensation or reimbursement of costs and expenses or for substantial contribution Claims must be filed within twenty days after the applicable application for compensation or reimbursement was filed.

15.13  Subsequent Administrative Claims Bar Date.  Claimants, other than Professionals Persons, holding Administrative Claims against any of the Debtors that arise after the Initial Administrative Claims Bar Date (a "Subsequent Administrative Claim") that remain unpaid on the Effective Date must file a request for payment of Subsequent Administrative Claim on or before 45 days after the Effective Date, unless otherwise ordered by the Bankruptcy Court. Any holder of a Subsequent Administrative Claim that is required to file a request for payment of such Claim and that does not file such request prior to the Subsequent Administrative Claims Bar Date will be forever barred from asserting such Subsequent Administrative Claim against any of the Debtors, Reorganized ASARCO or their respective properties, and such Subsequent Administrative Claim will be deemed discharged as of the Effective Date. Objections to Subsequent Administrative Claims must be filed with the Bankruptcy Court within 20 days after the applicable Subsequent Administrative Claim was filed, unless such objection deadline is extended by the Bankruptcy Court. Any Subsequent Administrative Claims of the United States or any individual state under civil Environmental Laws relating to the Designated Properties shall be addressed through the Environmental Custodial Trusts.

15.14  Indenture Trustee Fee Claims.

(a) If, at least 20 days prior to the commencement of the Confirmation Hearing, the Parent receives from the Indenture Trustees statement(s) of their respective Indenture Trustee Fee Claims incurred through such date and projected to be incurred through the Effective Date, together with such detail as may be reasonably requested by the Parent, the Parent or Reorganized ASARCO, as appropriate, shall pay, on the Effective Date, the Indenture Trustee Fee Claims, in full, in Cash. Notwithstanding the foregoing, to the extent that the Parent disputes any portion of the Indenture Trustee Fee Claims, prior to the Effective Date the Debtors and/or the Parent shall file with the Bankruptcy Court and serve on the appropriate Indenture Trustee an objection to such Indenture Trustee Fee Claim stating with specificity the Parent's objections to such Indenture Trustee Fee Claim. On the Effective Date, the Parent or Reorganized ASARCO, as appropriate, shall reserve an amount equal to the amount of disputed Indenture Trustee Fee Claims and such dispute shall be consensually resolved by the parties or presented to the Bankruptcy Court for adjudication. The Parent reserves the right to object to any such amounts on any applicable grounds.

(b) Subject to the payment of the non-disputed portion of the Indenture Trustee Fee Claims and the establishment of the reserve with respect to any disputed portion of the Indenture Trustee Fee Claims, and the payment of all other fees and expenses (including fees and expenses of counsel and other professionals) incurred by the Indenture Trustees in administering distributions to the Bondholders or responding to any objection by the Parent to an Indenture Trustee Fee Claim, to the extent payment of the foregoing fees and expenses is permitted by the Indentures, all Charging Liens of the Indenture Trustees in any distributions shall be forever released and discharged. Once the Indenture Trustees have completed performance of all of their duties set forth in this Plan or in connection with any distributions to be made under this Plan, if any, the Indenture Trustees, and their successors and assigns, shall be relieved of all obligations as Indenture Trustees effective as of the Effective Date.

15.15   <u>Governing Law</u>.  Except to the extent that federal law (including, without limitation, the Bankruptcy Code and the Bankruptcy Rules) is applicable or the Parent's Plan provides otherwise, the rights and obligations arising under the Parent's Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its conflicts of law principles.

15.16   <u>Consent to Jurisdiction</u>.   Except for the matters within the exclusive jurisdiction of the District Court as described in Article 15.4 hereof, the Debtors, the Parent, Reorganized ASARCO, the Parent's Plan Administrator, the Trustees, the Trusts, the Section 524(g) Trust Advisory Committee, and the FCR consent to the jurisdiction of the Bankruptcy Court, or any successor thereto, for all proceedings relating to the enforcement of the Parent's Plan and/or the Parent's Plan Documents, the Confirmation Order and the Asbestos Insurance Company Injunction.  As to the matters within the exclusive jurisdiction of the District Court as described in Article 15.4 hereof, the Debtors, Reorganized ASARCO, the Parent's Plan Administrator, the Section 524(g) Trustees, the Section 524(g) Trust, the Section 524(g) Trust Advisory Committee, and the FCR consent to the jurisdiction of the District Court, or any successor thereto, and agree that it shall be the preferred forum for all matters within the exclusive jurisdiction of the District Court as described in Article 15.4.

15.17   <u>Transfer Taxes</u>.   The issuance, transfer, or exchange of any of the securities issued under, or the transfer of any other assets or property pursuant to, or in connection with, the Parent's Plan or the making or delivery of an instrument of transfer under, or in connection with, the Parent's Plan shall not, pursuant to section 1146 of the Bankruptcy Code, be taxed under any law imposing a stamp tax, transfer tax, or other similar tax.

15.18   <u>Recordable Order</u>.   The Confirmation Order shall be deemed to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further or additional orders, certifications, or other supporting documents.

15.19   <u>Successors and Assigns</u>.   The rights, duties, and obligations of any Entity named or referred to in the Parent's Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Entity.

15.20   <u>Waiver of Rights</u>.  Holders of Claims, Demands or Interests shall have the right voluntarily to waive any rights, benefits or protections that are afforded to them under the

provisions of the Parent's Plan or any order issued in furtherance of the Parent's Plan, and such waiver shall supersede such rights, benefits or protections.  Any such waiver shall only be effective if such party expressly and specifically waives in writing one or more of such rights, benefits or protections.

   15.21 <u>Notices</u>.  All notices, requests, elections, or demands in connection with the Parent's Plan or the Parent's Plan Documents shall be in writing and shall be delivered by registered or certified mail, return receipt requested, by facsimile, by email, or by overnight mail to the following addresses unless a different address is designated in a notice served in accordance with this provision:

**The Parent**

> Americas Mining Corporation
> ASARCO Incorporated
> Attn:  Jorge Lazalde Psihas
> 11811 North Tatum Blvd.
> Suite 2500
> Phoenix, AZ 85028
>
> Robert Jay Moore
> Milbank, Tweed, Hadley & M$^c$Cloy LLP
> 601 South Figueroa Street, 30th Floor
> Los Angeles, CA 90017
> Telephone:  (213) 892-4000
> Facsimile:  (213) 629-5063
>
> Robert E. Winter
> Milbank, Tweed, Hadley & M$^c$Cloy LLP
> 1850 K Street, 11th Floor
> Washington, DC 20006
> Telephone:  (202) 835-7500
> Facsimile:  (202) 835-7586
>
> Charles A. Beckham, Jr.
> Haynes and Boone, LLP
> 1 Houston Center
> 1221 McKinney, Suite 2100
> Houston, Texas 77010
> Telephone:  (713) 547-2000
> Facsimile:  (713) 547-2600

**The Debtors**

> Jack L. Kinzie
> Baker Botts L.L.P.
> 2001 Ross Avenue

Dallas, TX 75201-2980
Facsimile: (214) 661-4727
Email: jack.kinzie@bakerbotts.com


Shelby A. Jordan
Jordan, Hyden, Womble, Culbreth, & Holzer, P.C.
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, TX 78471
Facsimile: (361) 888-5555
Email: sjordan@jhwclaw.com

**Counsel for the ASARCO Committee**

Paul M. Singer
Reed Smith LLP
435 Sixth Avenue Pittsburgh, PA 15219
Facsimile: (412) 288-3063
Email: psinger@reedsmith.com

James C. McCarroll
Reed Smith LLP
599 Lexington Ave.
29th Floor
New York, NY 10022
Facsimile: (212) 521-5450
Email: jmccarroll@reedsmith.com

Derek J. Baker
Reed Smith LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103
Facsimile: (215) 851-1420
Email: dbaker@reedsmith.com

**Counsel for the Asbestos Claimants' Committee**

Sander L. Esserman
Steven A. Felsenthal
Stutzman, Bromberg, Esserman & Plifka, PC
2323 Bryan Street, Suite 2200
Dallas, TX 75201-2689
Facsimile: (214) 969-4999
Email: esserman@sbep-law.com
          felsenthal@sbep-law.com

**The FCR**

Judge Robert C. Pate
Frost Bank Plaza
802 North Carancahua, Suite 1350
Corpus Christi, TX 78470-0165
Facsimile: (361) 887-6207
Email: judgepate@swbell.net

John H. Tate, II
Oppenheimer, Blend, Harrison & Tate, Inc.
711 Navarro Street, Sixth Floor
San Antonio, TX 78205
Facsimile: (210) 224-7540
Email: jtate@obht.com

**The DOJ**

David L. Dain
Alan S. Tenenbaum
United States Department of Justice
Environmental Enforcement Section
Regular Mailing Address:
Ben Franklin Station
P.O. Box 7611
Washington, DC 20044
Overnight Mailing Address:
601 D Street NW
Washington, DC 20004
Facsimile:       (202) 514-4180 (Mr. Dain)
                 (202) 514-0097 (Mr. Tenenbaum)
Email: david.dain@usdoj.gov
        alan.tenenbaum@usdoj.gov

**[Remainder of page intentionally blank.]**

The undersigned have executed this Modified Sixth Amended Plan of Reorganization as of the 13 day of August, 2009.

<div style="margin-left:3em">

Respectfully submitted,


ASARCO INCORPORATED, a Delaware corporation


By:       /s/ Jaime P. Collazo Gonzales
              Name: Jaime P. Collazo Gonzales
              Title: CEO and President


By:       /s/ Jorge Lazalde Psihas
              Name: Jorge Lazalde Psihas
              Title: Vice President and General Counsel


AMERICAS MINING CORPORATION, a Delaware corporation


By:       /s/ Alberto de la Parra Zavala
              Name: Alberto de la Parra Zavala
              Title: General Counsel


By:       /s/ Jorge Lazalde Psihas
              Name: Jorge Lazalde Psihas
              Title: Assistant Secretary

</div>