UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 05-21207 |
| | § | |
| ASARCO LLC, et al., | § | Chapter 11 |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**MOTION PURSUANT TO §§ 105, 501, AND 502 AND FED. R. BANKR. P. 9019
FOR ORDER APPROVING BONDHOLDER SETTLEMENT**

**THIS MOTION SEEKS AN ORDER THAT MAY ADVERSELY AFFECT YOU. IF YOU OPPOSE THE MOTION, YOU SHOULD IMMEDIATELY CONTACT THE MOVING PARTY TO RESOLVE THE DISPUTE. IF YOU AND THE MOVING PARTY CANNOT AGREE, YOU MUST FILE A RESPONSE AND SEND A COPY TO THE MOVING PARTY. YOU MUST FILE AND SERVE YOUR RESPONSE WITHIN 20 DAYS OF THE DATE THIS WAS SERVED ON YOU. YOUR RESPONSE MUST STATE WHY THE MOTION SHOULD NOT BE GRANTED. IF YOU DO NOT FILE A TIMELY RESPONSE, THE RELIEF MAY BE GRANTED WITHOUT FURTHER NOTICE TO YOU. IF YOU OPPOSE THE MOTION AND HAVE NOT REACHED AN AGREEMENT, YOU MUST ATTEND THE HEARING. UNLESS THE PARTIES AGREE OTHERWISE, THE COURT MAY CONSIDER EVIDENCE AT THE HEARING AND MAY DECIDE THE MOTION AT THE HEARING.**

**REPRESENTED PARTIES SHOULD ACT THROUGH THEIR ATTORNEY.**

**TO THE HONORABLE RICHARD S. SCHMIDT, UNITED STATES BANKRUPTCY JUDGE:**

ASARCO LLC ("<u>ASARCO</u>" or the "<u>Debtor</u>") respectfully files this *Motion Pursuant to §§ 105, 501, and 502 and Fed. R. Bankr. P. 9019 for an Order Approving Bondholder Settlement* (the "<u>Motion</u>"), and in support thereof respectfully states as follows:

### I. PARTIES, JURISDICTION, AND VENUE

1.  ASARCO filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on August 9, 2005. Affiliated chapter 11 debtors were already operating in bankruptcy at the time ASARCO filed, and additional affiliates have

DAL02:542584.6

filed since the ASARCO filing.[1]  This Motion will refer to all of the affiliated chapter 11 debtor cases, with the exception of Encycle/Texas, Inc.,[2] collectively as the "Reorganization Cases."  The Debtors comprise twenty-eight different business entities.

2.  The Debtors in the Reorganization Cases remain in possession of their property and are operating their businesses as debtors-in-possession, pursuant to sections 1107 and 1108 of the Bankruptcy Code.  The Court appointed The Honorable Robert C. Pate as the future claims representative ("FCR") for the Asbestos Subsidiaries' Cases on April 19, 2005, an official committee of unsecured creditors for the Asbestos Subsidiaries[3] (the "Asbestos Committee"), and an official committee of unsecured creditors in the ASARCO case (the "ASARCO Committee") on August 25, 2005.  No trustee has been appointed in any of the Reorganization Cases.  In August 2008, the Court appointed The Honorable Robert C. Pate as the FCR for ASARCO and the rest of ASARCO's affiliated debtors and also directed the U.S. Trustee to appoint an official committee of asbestos claimants for all the Debtors.  The Asbestos Committee

---

[1] On April 11, 2005, Lac d'Amiante du Québec Ltée (f/k/a Lake Asbestos of Quebec, Ltd.); Lake Asbestos of Quebec, Ltd.; LAQ Canada, Ltd.; CAPCO Pipe Company, Inc. (f/k/a Cement Asbestos Products Company); and Cement Asbestos Products Company filed voluntary petitions for relief in this Court.  On August 26, 2005, two more of ASARCO's subsidiaries—Encyle/Texas, Inc. and Encyle, Inc.—filed voluntary petitions for relief in this Court.  On September 1, 2005, ASARCO'S subsidiary ASARCO Consulting, Inc. filed a voluntary petition for relief in this Court.  On October 13, 2005, ten additional ASARCO subsidiaries, ALC, Inc.; American Smelting and Refining Company; AR Mexican Explorations Inc.; AR Sacaton, LLC, an Arizona limited liability company; ASARCO Master, Inc.; ASARCO Oil and Gas Company, Inc.; Bridgeview Management Company, Inc.; Covington Land Company; Government Gulch Mining Company, Limited; and Salero Ranch, Unit III, Community Association, Inc. filed voluntary petitions for relief in this Court.  On December 12, 2006, AR Sacaton LLC (a Delaware LLC); ASARCO Exploration Company, Inc.; and Southern Peru Holdings, LLC filed voluntary petitions for relief in this court.  Finally, on April 21, 2008, Alta Mining and Development Company; Blackhawk Mining and Development Company, Limited; Green Hill Cleveland Mining Company; Tulipan Company, Inc.; Peru Mining and Exploration and Development Company; and Wyoming Mining and Milling Company filed voluntary petitions for relief in this Court.

[2] The case of Encycle/Texas, Inc. has been converted to Chapter 7.

[3] The Asbestos Subsidiaries are Lac d'Amiante du Québec Ltée (f/k/a Lake Asbestos of Quebec, Ltd.); Lake Asbestos of Quebec, Ltd.; LAQ Canada, Ltd.; CAPCO Pipe Company, Inc. (f/k/a Cement Asbestos Products Company); and Cement Asbestos Products Company.

has now been expanded to represent all asbestos claimants asserting Claims against all of the Debtors.

3. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334. Consideration of this Motion is a core proceeding under 28 U.S.C. § 157(b). Venue of this proceeding is proper in this district under 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 105, 501, and 502 of the Bankruptcy Code and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II. BACKGROUND

4. Before the commencement of these Reorganization Cases, ASARCO issued the following unsecured long term bond debt: (i) $150 million in original principal amount of CSFB Corporate Debentures at 8.5% due 2025 (the "2025 Bonds"); (ii) $100 million in original principal amount of CSFB JP Morgan Sec. Debentures at 7.875% due 2013 (the "2013 Bonds"); (iii) $34.8 million in original principal amount of Lewis and Clark County, Montana Env. Bonds (IRB) at 5.85% due 2033 (the "Montana 2033 Bonds"); (iv) $27.74 million in original principal amount of Nueces River Env. Bonds (IRB) at 5.6% due 2027; (the "Nueces 2027 Bonds"); (v) $33.16 million in original principal amount of Lewis and Clark County, Montana Env. Bonds (IRB) at 5.6% due 2027 (the "Montana 2027 Bonds"); (vi) $71.9 million in original principal amount of Gila County Installment Bonds at 5.55% due 2027 (the "Gila Bonds"); and (vii) $22.2 million in original principal amount of Nueces River Env. Bonds (IRB) Series 1998A at 5.6% due 2018 (the "Nueces 2018 Bonds," and together with the 2025 Bonds, the 2013 Bonds, the Montana 2033 Bonds, the Nueces 2027 Bonds, the Montana 2027 Bonds and the Gila Bonds, the "Bonds").

5. Harbinger Capital Partners Master Fund I, Ltd. ("Harbinger") and CitiGroup Global Markets, Inc. ("CitiGroup"), together, are holders of a majority of the Bonds (the "Majority Bondholders").

6. Wilmington Trust Company ("Wilmington"), Wells Fargo Bank, National Association ("Wells"), and Deutsche Bank Trust Company Americas ("Deutsche Bank," and together with Wilmington and Wells, the "Indenture Trustees") are each indenture trustees under one or more Indentures governing the Bonds.

7. On behalf of all the Bondholders,[4] the Indenture Trustees filed over 200 proofs of claim, asserting, among other things, damages for principal, prepetition accrued interest, post-petition interest, interest on prepetition and post-petition interest, prepayment "no-call" damages, and prepayment premiums in connection with the Bonds (collectively, the "Bondholder Claims"), including the following:

    (a) Wilmington filed proof of claim no. 18575 (including proof of claim nos. 10415 and 18291 incorporated therein) (together, the "Wilmington Proof of Claim");

    (b) Wells filed proof of claim no. 18576 (including proof of claim nos. 189 and 18293 incorporated therein) (together, the "Wells Proof of Claim");

    (c) Deutsche Bank filed proof of claim no. 18590 (including proof of claim no. 10222 incorporated therein), proof of claim no. 18589 (including proof of claim no. 10219 incorporated therein), proof of claim no. 18588 (including proof of claim no. 10221 incorporated therein), proof of claim no. 18587 (including proof of claim no. 10218 incorporated therein), proof of claim no. 18591 (including proof of claim no. 10220 incorporated therein), and certain other proofs of claim relating to the Bonds to which the Debtors have objected as being duplicative of the foregoing claims (together, the "Deutsche Bank Proofs of Claim"); and

    (d) all other proofs of claim relating the Bonds.

---

[4] Capitalized terms not otherwise defined herein shall have the same meaning ascribed to them in the Glossary of Defined Terms for the Debtors' Plan Documents, which is Exhibit A-1 to the Disclosure Statement (Docket No. 11899).

8.     ASARCO, the Bondholders, specifically including the Majority Bondholders, and other parties in interest—through multiple objections, responses, and resulting negotiations—have widely contested the rights and interests of the Bondholders in the Bondholder Claims.[5] Both the Bondholders and ASARCO, and their respective representatives, have spent hours researching and analyzing the propriety of these claims and arguing their respective positions. As a result of extensive negotiations and consultation with counsel, the parties reached an agreement, subject to court approval, which amicably resolves all matters relating to the Bondholder Claims and settles such claims for the amounts and treatments specified herein.

9.     To avoid the cost and uncertainty of further litigation, and without admitting any liability, ASARCO, the Bondholders, and the Indenture Trustees desire to settle the Bondholder Claims.

### III.  RELIEF REQUESTED

10.    The Debtors, pursuant to sections 105, 501, and 502 of the Bankruptcy Code and Rule 9019 of the Bankruptcy Rules seeks entry of an order approving its compromise and settlement with the Bondholders in connection with the Bondholders Claims.

### IV.  SUMMARY OF PROPOSED SETTLEMENT

11.    The parties negotiated a comprehensive settlement with regard to the treatment of the Bondholder Claims (the "Settlement Agreement"), which is attached hereto as **Exhibit A** and incorporated herein for all purposes. The Settlement Agreement generally contains the following terms, among others:[6]

    (a)    Principal and Prepetition Interest.  The Bondholders shall receive an Allowed Claim in the approximate aggregate amount of $447.6 million on

---

[5] The Debtors filed their objections to the Bondholder Claims at Docket No. 10275 and the Asbestos Committee and the FCR joined with limited objections at Docket Nos. 10323 and 10345, respectively.

[6] To the extent there are inconsistencies between the summary set forth in this Motion and the terms of the Settlement Agreement, the Settlement Agreement shall govern.

        account of the principal amounts of the Bonds and all accrued but unpaid prepetition interest; provided that such Allowed Claims will be payable *pari passu* with the Allowed General Unsecured Claims for principal and prepetition interest.

(b) <u>Post-Petition Interest</u>. The Bondholders shall receive Allowed Claims in the approximate aggregate amount of $162 million for post-petition interest, calculated at the non-default contract rate, compounded based on the dates that interest payments were due under the contracts; provided that such Allowed Claims will only be payable after all General Unsecured Claims for principal and prepetition interest have been Paid in Full, and such payment for post-petition interest will be *pari passu* with Allowed General Unsecured Claims for post-petition interest.

(c) <u>Prepayment Premiums</u>. Holders of the Montana 2033 Bonds, Nueces 2027 Bonds, Montana 2027 Bonds, Gila Bonds, and Nueces 2018 Bonds shall receive Allowed Claims in the amount specified under the Indenture governing such Bonds on account of prepayment premiums (estimated at $1,898,000, in the aggregate); provided that such Allowed Claims will only be payable after the all General Unsecured Claims for post-petition interest have been Paid in Full, and such payment will be *pari passu* with the Allowed Claims for prepayment damages of the holders of the 2013 Bonds and the 2025 Bonds set forth in the following paragraph.

(d) <u>Prepayment Damages</u>. Holders of the 2013 Bonds shall receive Allowed Claims in the aggregate amount of $5 million, calculated as 5 percent of the original principal amount, for alleged prepayment damages. Holders of the 2025 Bonds shall receive Allowed Claims in the aggregate amount of $15 million, calculated as 10 percent of the original principal amount, for alleged prepayment damages. These Allowed Claims will be payable after Allowed General Unsecured Claims for post-petition interest have been Paid In Full, and such payments will be *pari passu* with the Allowed Claims of the holders of the Montana 2033 Bonds, the Nueces 2027 Bonds, the Montana 2027 Bonds, the Nueces 2018 Bonds and the Gila Bonds set forth in the immediately preceding paragraph.

(e) <u>Substantial Contribution Claim</u>. In recognition of the contribution of the Harbinger Plan, the Debtors shall support an administrative expense claim by the Majority Bondholders for attorneys' fees and expenses reasonably incurred in connection with the Harbinger Plan, up to a maximum of $6 million.

(f) <u>Indenture Trustee Fees</u>. The Indenture Trustee shall receive an Allowed administrative expense claim for fees and expenses incurred under the Bonds (approximately $5.2 million in the aggregate, as of July 20, 2009).

(g) The Bondholders shall release and discharge any and all of their claims or rights against all the Debtors in these Reorganization Cases, including, without limitations, all the proofs of claims filed by or on behalf of the Bondholders.

12. ASARCO hereby seeks authority to enter into the Settlement Agreement to compromise and settle its controversy with the Indenture Trustees and the Bondholders.

## V. LAW AND ARGUMENT

13. Rule 9019(a) of the Bankruptcy Rules permits this Court, following notice and a hearing as provided by Bankruptcy Rule 2002, to approve a compromise of controversy. Rule 9019(a) provides:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a). Approval of a compromise is within the sound discretion of the bankruptcy court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984); *Rivercity v. Herpel (In re Jackson Brewing Co.),* 624 F.2d 599, 602-03 (5th Cir. 1980) (decided under the Bankruptcy Act). Settlements are considered a "normal part of the process of reorganization" and "desirable and wise method of bringing to a close proceedings otherwise lengthy, complicated and costly." *Jackson Brewing*, 624 F.2d at 602 (citations omitted).

14. Neither Bankruptcy Rule 9019(a) nor any section of the Bankruptcy Code explicitly sets forth the standards by which a court is to evaluate a proposed settlement for approval. However, the standards for approval of settlements in bankruptcy cases are well-established and focus upon whether the proposed settlement is reasonable and in the best interests of creditors. In *Protective Comm. for Independent Stockholders of TMT Trailer Ferry,*

*Inc. v. Anderson*, 390 U.S. 414 (1968), the seminal case on approval of settlements in bankruptcy cases, the United States Supreme Court held that the trial court must make an informed, independent judgment as to whether a settlement is fair and equitable, and explained as follows:

> There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

309 U.S. at 424. *See also AWECO*, 725 F.2d at 298-99 (reversing settlement with unsecured litigation claimant due to insufficiency of facts to determine whether settlement was fair and equitable to other creditors); *American Can Co. v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 605, 608 (5th Cir. 1980) (noting that "there must be a substantial factual basis for the approval of a compromise.").

15. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. Instead, the court should determine whether the settlement is fair and equitable as a whole. *TMT Trailer*, 390 U.S. at 424; *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993).

16. In deciding whether to approve a settlement, the following factors must be considered:

    (a) the probability of success in the litigation, with due consideration of the uncertainty in fact and law;

    (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and

   (c)  all other factors bearing on the wisdom of the compromise.

*Jackson Brewing*, 624 F.2d at 602 (citing *TMT Trailer*).

  17.  Under the rubric of the third, catch-all provision, the Fifth Circuit has specified two additional factors that bear on the decision to approve a proposed settlement. First, the court should consider "the paramount interest of creditors with proper deference to their reasonable views." *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.*), 68 F.3d 914, 917 (5th Cir. 1995). Second the court should consider "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *Id.* at 918 (citations omitted).

  18.  ASARCO believes that the Settlement Agreement meets these standards and is reasonable, fair, and equitable. The Settlement Agreement resolves ASARCO's liabilities relating to the Bondholder Claims, and ASARCO believes that this represents a reasonable resolution of the amount of such claims in light of the relevant facts relating thereto.

  **Probability of Success in the Litigation**

  19.  The compromise and settlement eliminates litigation risk faced by both sides. The Settlement Agreement resolves millions of dollars of claims and avoids the expenses and risks inherent with continued litigation. With respect to the prepayment damages Claims outlined in Paragraph 11(d) and (e) above, for example, ASARCO, on the one hand, recognizes that a number of courts have allowed damage claims based on terms more generous to bondholders than those detailed above, and the Bondholders, on the other hand, recognize that a number of courts have also rejected such damage claims particularly when they represent unreasonably high percentages of the principal amount of a claim. Moreover, the parties understand that if the Bondholder Claims prevailed through litigation, the resulting damage amounts would be allowed as General Unsecured Claims which would dilute the recovery of

other unsecured creditors. Pursuant to this compromise, however, the Bondholders only recover certain distributions after holders of General Unsecured Claims are Paid in Full. Accordingly, the Settlement Agreement avoids litigating these and other related issues, dismisses all proofs of claim filed by or on behalf of the Bondholder Claims, and benefits creditors with General Unsecured Claims by avoiding potential claim dilution.

### Complexity, Likely Duration of the Litigation, and Expense

20. Over the course of litigation and extended negotiations regarding the propriety of the Bondholder Claims, the parties have raised numerous factual and legal issues which demonstrate and add to their complexity. This settlement resolves claims which may otherwise be contested for an extended period of time, including post-trial briefing and appeals, which further increase delay and expense.

### Other Factors Weigh in Favor of Approving the Settlement.

21. ASARCO believes that settlement of the Bondholder Claims is in the best interests of the Debtors and their estates, as it (i) saves significant attorneys' fees and expenses that would otherwise be expended in litigating the validity and amount of the Bondholder Claims and (ii) eliminate the risks, uncertainties, and delay in connection to continued litigation. Entering into the Settlement Agreement will also allow valuable court time to be allocated to other contested matters arising in these Reorganization Cases.

22. The Settlement Agreement is the product of arms-length bargaining between ASARCO, the Bondholders, and other parties in interest, and with the participation of and input from counsel. In fact, contentious bargaining and negotiations continued all the way through the confirmation hearing.

23. For these reasons, ASARCO believes that approval of the Settlement Agreement is in the best interests of its creditors and all the Debtors' estates.

## VI.  CERTIFICATE OF SERVICE

24. In compliance with Bankruptcy Local Rule 9013(f), ASARCO will file or cause to be filed as a separate document a Certificate of Service containing the names and addresses of the parties served, the manner of service, the name and address of the server, and the date of service.

WHEREFORE, ASARCO respectfully requests that the Court enter an order in the form attached as Exhibit A to the Settlement Agreement (i) approving the Settlement Agreement and (ii) granting such other and further relief as is just and proper.

| | |
|---|---|
| Dated:  August 24, 2009 | Respectfully submitted, |

BAKER BOTTS L.L.P.

*/s/ Martin Green*
Jack L. Kinzie
State Bar No. 11492130
Martin Green
State Bar No. 08351500
Romina L. Mulloy
State Bar No. 24037156
2001 Ross Avenue
Dallas, Texas 75201-2980
Telephone:  214.953.6500
Facsimile:  214.661.6503
Email:  *jack.kinzie@bakerbotts.com*
           *martin.green@bakerbotts.com*
           *romina.mulloy@bakerbotts.com*

Tony M. Davis
State Bar No. 05556320
One Shell Plaza
Houston, Texas 77002
Telephone:  713.229.1234
Facsimile:  713.229.1522
Email:  *tony.davis@bakerbotts.com*

and

**JORDAN, HYDEN, WOMBLE, CULBRETH & HOLZER, P.C.**

Shelby A. Jordan
State Bar No. 11016700
Nathaniel Peter Holzer
State Bar No. 00793971
Suite 900, Bank of America
500 North Shoreline
Corpus Christi, Texas 78471
Telephone:  361.884.5678
Facsimile:  361.888.5555
Email:  *sjordan@jhwclaw.com*
           *pholzer@jhwclaw.com*

**COUNSEL TO DEBTORS AND DEBTORS-IN-POSSESSION**

# **EXHIBIT A**