**Exhibit A**

<u>PLAN ADMINISTRATION AGREEMENT</u>

This Plan Administration Agreement (this "<u>Administration Agreement</u>"), dated as of _____, 2009, by and between ASARCO LLC ("<u>ASARCO</u>") and its subsidiaries that are debtors under chapter 11 of the Bankruptcy Code (the "<u>Subsidiary Debtors</u>" and together with ASARCO, the "<u>Debtors</u>"), Sterlite (USA), Inc., a Delaware corporation ("<u>Sterlite</u>"), and Joseph F. Lapinsky as Plan Administrator, is executed in connection with the Sixth Amended Joint Plan of Reorganization for the Debtors Under chapter 11 of the United States Bankruptcy Code, As Modified (the "<u>Plan</u>"), filed by the Debtors in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division (the "<u>Bankruptcy Court</u>") including any subsequent amendments, modifications or supplements filed by the Debtors.  Except with respect to the terms defined herein, all capitalized terms contained herein shall have the meanings ascribed to them in the Uniform Glossary of Defined Terms for Plan Documents, which is <u>Exhibit A</u> to the Disclosure Statement.

WITNESSETH

WHEREAS, on their respective Petition Dates, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court;

WHEREAS, on _____ ___, 2009, the Debtors filed the Plan;

WHEREAS, on _____ __, 2009, the Bankruptcy Court entered the Confirmation Order;

WHEREAS, on the Effective Date, (a) the current directors and officers of the Debtors shall be removed and (b) the Subsidiary Debtors (other than Covington Land Company ("<u>Covington</u>")) shall be merged with and into Reorganized ASARCO, with the surviving entity being Reorganized ASARCO;

WHEREAS, Reorganized ASARCO shall continue to exist after the Effective Date in accordance with the laws of the State of Delaware and pursuant to its applicable organizational documents;

WHEREAS, the Plan Administrator shall serve as the sole holder of membership interests in Reorganized ASARCO and as the presiding officer and sole director of Reorganized ASARCO until and unless the Plan Administrator, in the Plan Administrator's sole discretion, appoints other Persons to serve as officers or directors of Reorganized ASARCO;

NOW, THEREFORE, in consideration of the premises and the mutual covenants and agreements contained herein and in the Plan, the Debtors and the Plan Administrator agree as follows:

# ARTICLE I

## ACCEPTANCE OF POSITIONS, OBLIGATION TO
## PAY CLAIMS, FIDUCIARY OF THE ESTATE

Section 1.1    Acceptance.    Joseph F. Lapinsky (a) accepts appointment as the Plan Administrator and the Plan Administrator, or the Plan Administrator's designee, accepts the duty of serving as the presiding officer and sole director of  Reorganized ASARCO, and (b) agrees to observe and perform all duties and obligations imposed upon the Plan Administrator under this Administration Agreement, the Plan, all orders of the Bankruptcy Court (including the Confirmation Order), and applicable law.

Section 1.2    Distribution of Funds.    The Plan Administrator, in the Plan Administrator's capacity as the Plan Administrator, agrees to make distributions or payments required or permitted to be made by the Plan Administrator under the Plan at the times and in the manner provided therein, unless otherwise ordered by the Bankruptcy Court.

Section 1.3    Fiduciary.    The Plan Administrator shall be a fiduciary of each of the Debtors prior to the Effective Date and of Reorganized ASARCO after the Effective Date and shall perform the Plan Administrator's obligations in a manner consistent with the Plan, the Administration Agreement, the Confirmation Order, and other applicable orders.

Section 1.4    Plan Administration Committee.

(a)    The initial members of the Plan Administration Committee shall consult with and advise the Plan Administrator regarding the operations and administration of Reorganized ASARCO and the performance of the Plan Administrator's obligations under this Administration Agreement, the Plan, the Confirmation Order, or other applicable orders.  The Plan Administration Committee shall have the rights and powers set forth herein.

(b)    The Plan Administration Committee shall consist of three members initially selected as follows: (i) one selected by the ASARCO Committee; (ii) one selected by the DOJ (in consultation with the states that have Allowed environmental Claims); and (iii) one selected by the Asbestos Claimants' Committee and the FCR, each of whom shall serve for an initial term of two years.   Thereafter, the successor members of the Plan Administration Committee shall be appointed by the existing Plan Administration Committee.  Members of the Plan Administration Committee may be nominated for and serve successive terms.

(c)    In the event that a member of the Plan Administration Committee resigns prior to the expiration of such member's term, or is otherwise unable to serve out such member's term, the remaining members of the Plan Administration Committee shall select the successor to serve the remainder of such term.

(d)    Unless otherwise specified herein, approval of a majority of the members of the Plan Administration Committee shall be required for the Plan Administration Committee to act, provided that the Plan Administration Committee may delegate responsibility for discrete issues or decisions to one or more of its members.

(e)     In the event that a Plan Administration Committee shall not be formed or continue to exist under this Administration Agreement, all references herein to required approval or other action of such Plan Administration Committee shall be of no force or effect.

(f)     In performance of their duties hereunder, members of the Plan Administration Committee shall be entitled to receive (i) reimbursement of reasonable expenses, (ii) indemnification as set forth in Section 4.6 hereof, and (iii) compensation as provided for in Section 4.4(b) hereof.

(g)     The members of the Plan Administration Committee may serve on the board of directors or as an officer of Reorganized ASARCO at the sole discretion of the Plan Administrator.

Section 1.5     Rights of Plan Sponsor.

(a)     Notwithstanding anything else contained herein, the Plan Administration Committee and the Plan Administrator shall undertake all actions hereunder in consultation with the Plan Sponsor and shall act in good faith at all times.

(b)     The Plan Administration Committee and the Plan Administrator shall provide the Plan Sponsor any documents, projections, or other materials reasonably requested by the Plan Sponsor and shall make themselves available as reasonably requested by the Plan Sponsor.

(c)     Consistent with the terms of the Plan and subject to the provisions of this Agreement, the Plan Administrator shall return within a reasonable period of time to the Plan Sponsor any funds not required, in the reasonable discretion of the Plan Administrator, to pay the amounts contemplated to be paid pursuant to the terms of the Plan or incident to the administration of the Plan.

(d)     All of the Plan Sponsor's rights and obligations hereunder shall be enforceable upon motion or other application to the Bankruptcy Court.

Section 1.6     Obligations of Guarantor.  All obligations of the Plan Sponsor hereunder shall be subject to the guaranty of the Guarantor to the same extent as the obligations under the New Plan Sponsor PSA.

## ARTICLE II

## OBLIGATIONS OF THE PLAN ADMINISTRATOR

Section 2.1     Conduct of Businesses of Reorganized ASARCO and Prosecution of Causes of Action and Claim Objections.  The Plan Administrator shall exercise all power and authority necessary to conduct the business of Reorganized ASARCO and shall observe and perform all duties imposed upon the Plan Administrator under the Plan, the Confirmation Order, this Administration Agreement, other orders of the Bankruptcy Court, and applicable law.

Section 2.2   <u>Establishment and Maintenance of Accounts, Reserves, and Escrows</u>. Subject to the Plan Sponsor's rights under all relevant provisions of the Plan including, without limitation, Article 15.23 thereof, on the Effective Date or as soon thereafter as is reasonably practicable, if not previously established and funded by the Debtors on or before the Effective Date, the Plan Administrator, after consultation with and approval by the Plan Administration Committee, shall establish one or more of the following accounts and reserves:

(a)   *General Account(s)*.   One or more general accounts (the "<u>General Account(s)</u>") (i) into which shall be deposited all funds not required or permitted to be deposited into any other account, subaccount, reserve, or escrow described in or contemplated by this Administration Agreement or the Plan and which are not otherwise required to be returned to the Plan Sponsor pursuant to the terms of the Plan, and (ii) from which may be made distributions to be made by the Plan Administrator, not otherwise payable out of any other account, subaccount, reserve or escrow, in accordance with the terms of the Plan or by order of the Bankruptcy Court. The Plan Administrator may establish such general accounts, subaccounts, reserves, or escrows as the Plan Administrator determines from time to time to be necessary to carry out the intent and purposes of this Administration Agreement.

(b)   *Plan Administration Account*.   An account designated as "Plan Administration Account," as described more fully in Section 2.3 below (the "<u>Plan Administration Account</u>").

(c)   *Disputed Claims Reserve*.   To the extent the Plan Administrator determines appropriate, an account designated as "Disputed Claims Reserve," as described more fully in Section 2.4 below (the "<u>Disputed Claims Reserve</u>").

(d)   *Disputed Secured Claims Reserve*.   An account or accounts designated as "Disputed Secured Claims Reserve," as described more fully in Section 2.4 below (the "<u>Disputed Secured Claims Reserve</u>").

(e)   *Prepetition ASARCO Environmental Trust Escrow*.   An account designated as "Prepetition ASARCO Environmental Trust Escrow" as described more fully in Section 2.5 below (the "<u>Prepetition ASARCO Environmental Trust Escrow</u>").

(f)   *Undeliverable and Unclaimed Distribution Reserve*.   An account designated as "Undeliverable and Unclaimed Distribution Reserve," as described more fully in Section 2.6 below (the "<u>Undeliverable and Unclaimed Distribution Reserve</u>").

(g)   *Indemnification Escrow*.   An account designated as "Indemnification Escrow," as described more fully in Section 2.7 below (the "<u>Indemnification Escrow</u>").

(h)   *Unpaid Cure Claims Reserve*.   An account designated as "Unpaid Cure Claims Reserve," as described more fully in Section 2.8 below (the "<u>Unpaid Cure Claims Reserve</u>").

(i)     *Vested Causes of Action Escrow*. An account designated as "Vested Causes of Action Escrow," as described more fully in Section 2.9 below (the "Vested Causes of Action Escrow").

(j)     *Liquidation Trust Reserve*.  An account designated as "Liquidation Trust Reserve," as described more fully in Section 2.10 below (the "Liquidation Trust Reserve").

(k)     *SCC Litigation Trust Reserve*.  An account designated as "SCC Litigation Trust Reserve," as more fully described in Section 2.11 below (the "SCC Litigation Trust Reserve" and, together with the Disputed Claims Reserve, the Disputed Secured Claims Reserve, the Prepetition ASARCO Environmental Trust Escrow, the Undeliverable and Unclaimed Distribution Reserve, the Indemnification Escrow, the Unpaid Cure Claims Reserve, the Vested Causes of Action Escrow, and the Liquidation Trust Reserve, the "Miscellaneous Plan Administration Accounts").

Section 2.3     Plan Administration Account.

(a)     On or prior to the Effective Date, the Plan Administrator shall establish the Plan Administration Account. On the Effective Date (or as soon thereafter as is reasonably practicable), the Plan Administration Account shall be funded by ASARCO, Reorganized ASARCO, or the Plan Administrator, as the case may be, with Cash in the amount of $8 million to be used to pay (i) the estimated costs and expenses of the Plan Administrator; (ii) the costs of plan administration; and (iii) Reorganized ASARCO's costs of operations (including, without limitation, taxes).  The Plan Administrator, after consultation with and approval by the Plan Administration Committee, shall determine the amount of Cash required to adequately maintain the Plan Administration Account on and after such date and maintain a reserve of Cash in such amount.  The Plan Administrator shall allocate the funds in the Plan Administration Account to subaccounts corresponding to the enumerated functions of the Plan Administrator.  In the event that the Plan Administrator, after consultation with and approval of the Plan Administration Committee, determines that additional Cash is required to discharge the Plan Administrator's obligations hereunder, the Plan Sponsor, at the request of the Plan Administrator, shall be obligated to fund such additional amounts as are determined necessary.

(b)     Until the Plan Administrator has discharged the Plan Administrator's obligations with respect to the purpose for which a particular subaccount or Miscellaneous Plan Administration Account was established, the funds in those subaccounts and the Miscellaneous Plan Administration Accounts may only be used for the purpose designated for that particular account or subaccount. Notwithstanding the foregoing, if at any time the Plan Administrator determines that the Plan Administration Account (or any subaccount thereof) or any Miscellaneous Plan Administration Account (i) contains Cash in excess of the amount required to adequately maintain such account, the Plan Administrator shall, after consultation with and approval by the Plan Administration Committee, transfer such excess funds, first, to any underfunded subaccount or Miscellaneous Plan Administration Account (but only to the extent of any underfunding), and then distribute such funds to the Plan Sponsor or (ii) does not contain Cash in an amount sufficient to adequately maintain any subaccount of the Plan Administration Account, then the Plan Administrator, after consultation with and approval by the Plan Administration Committee, shall transfer Cash from any General Account until the deficit in

such subaccount is eliminated. Notwithstanding the foregoing or anything herein to the contrary, in no event shall any funds held in the Prepetition ASARCO Environmental Trust Escrow or the Indemnification Escrow be transferred to any other subaccount or Miscellaneous Plan Administration Account prior to fulfillment of the obligations for which each such account is established.

Section 2.4    Disputed Claims Reserve.

(a)    On or prior to the Effective Date, to the extent the Plan Administrator determines appropriate, the Plan Administrator may establish and maintain the Disputed Claims Reserve. Except as otherwise provided in the Plan, the Plan Administrator shall not be required to reserve Cash on account of any Disputed Claims.  To the extent the Plan Administrator does not have adequate funds to pay in accordance with the Plan such Claims upon any such Claim becoming an Allowed Claim, the Plan Sponsor shall be required to pay to the Plan Administrator for distribution to the holder of such Claim the amount necessary for such Claim to be paid in accordance with the Plan.  On the Effective Date (or as soon thereafter as is reasonably practicable), the Plan Administrator shall deposit in the Disputed Claims Reserve (i) the Liquidation Trust Interests and the SCC Litigation Trust Interests that would have been distributed to the holders of Disputed Claims (other than Secured Claims to the extent Disputed Secured Claims Reserves are established with respect to such Claims) if such Disputed Claims had been Allowed Claims on the Effective Date and (ii) SCC Litigation Trust Interests on account of contingent obligations used in computing the allocation of SCC Litigation Trust Interests on account of Class 3 under the Plan (the "Contingency Deposit").  This amount shall be determined based on the lesser of (i) the asserted amount of the Disputed Claims in the applicable Proofs of Claim; (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to (1) section 502(c) of the Bankruptcy Code or (2) the Plan if, after the Effective Date, a motion is filed by the Plan Administrator to estimate such claims; or (iii) the amount otherwise agreed to by the Debtors (or the Plan Administrator, if after the Effective Date) and the holders of such Disputed Claims.  The Plan Administrator may, from time to time, contribute to the Disputed Claims Reserve additional assets received from the Liquidation Trustee or the SCC Litigation Trustee in respect of Disputed Claims.

(b)    In the case of objections to allegedly Secured Claims, any Lien asserted by the holder of such a Claim against the ASARCO Residual Assets shall remain in place, pending resolution of the objection to the allegedly Secured Claim.  Any Lien asserted by the holder of an allegedly Secured Claim against an asset that is sold to the Plan Sponsor or transferred to Reorganized Covington or one of the Trusts shall attach to Cash held by the Plan Administrator in an amount equal to the lesser of (i) the amount of the allegedly Secured Claim; (ii) the amount, if any, estimated by the Bankruptcy Court pursuant to section 502(c) of the Bankruptcy Code; (iii) the fair market value of such assets, net of any Liens senior to the applicable Liens; or (iv) the amount otherwise agreed to by the Debtors and the holders of such allegedly Secured Claims, which Cash shall be held by the Plan Administrator in a Disputed Secured Claims Reserve, pending resolution of the objection to the allegedly Secured Claim.

(c)    Subject to this Administration Agreement, if a Claim that remains a Disputed Claim as of the Effective Date is thereafter Allowed in whole or in part, (i) in the case

of a Disputed Secured Claim, the Plan Administrator shall (at such time as determined to be practicable by the Plan Administrator) distribute from a Disputed Secured Claims Reserve to the holder of such Claim the Cash that such holder would have received on account of such Claim if such Claim had been an Allowed Claim on the Effective Date to the extent thereafter Allowed and (ii) in the case of a Disputed Unsecured Claim, the Plan Sponsor shall pay to the Plan Administrator for distribution to the holder of such Claim the Cash that such holder would have received on account of such Claim if such Claim had been an Allowed Claim on the Effective Date to the extent thereafter Allowed.

(d)    If a Disputed Claim is disallowed, in whole or in part, or if the Plan Administrator determines that a contingent obligation used in computing the allocation of SCC Litigation Trust Interests on account of Class 3 under the Plan will not be incurred, the Plan Administrator shall (at such time as determined to be practicable by the Plan Administrator) cancel the portion of the Liquidation Trust Interests, SCC Litigation Trust Interests or Contingency Deposit held in the Disputed Claims Reserve in respect of such disallowed Disputed Claim or contingent obligation, or portion thereof, in accordance with the terms and conditions of this Administration Agreement. When a contingency obligation is incurred and paid, the SCC Litigation Trust Interests held by the Plan Administrator on account of such contingency shall be issued to the Plan Sponsor.

(e)    The Plan Administrator and Reorganized ASARCO will take the position that the Disputed Claims Reserve and the Disputed Secured Claims Reserves do not qualify as disputed ownership funds within the meaning of Treasury Regulations section 1.468B-9(b)(1). The Plan Administrator and Reorganized ASARCO will take the position for tax purposes that the Disputed Claims Reserve and any Disputed Secured Claims Reserves are grantor trusts owned by Reorganized ASARCO.  The Plan Administrator and Reorganized ASARCO shall comply with all tax-reporting requirements accordingly, and shall cause taxes attributable to the earnings of the Disputed Claims Reserve or a Disputed Secured Claims Reserve (as well as any taxes directly imposed on the Disputed Claims Reserve or a Disputed Secured Claims Reserve) to be paid out of the assets of the Disputed Claims Reserve or the Disputed Secured Claims Reserve, respectively.

(f)    Any Claim asserted by or on behalf of AMC or the Parent, whether Administrative Claims or Unsecured Claims, are disallowed  under the Plan pursuant to section 502(d) of the Bankruptcy Code and no reserves shall be established on account of such Claims.

Section 2.5    Prepetition ASARCO Environmental Trust Escrow.  On or before the Effective Date, (a) the Plan Administrator shall establish the Prepetition ASARCO Environmental Trust Escrow, and (b) Reorganized ASARCO shall hold back from distributions under the Plan the amount that the Prepetition ASARCO Environmental Trust would receive if AMC were to have made the required payment (i.e., $12.5 million plus accrued interest in accordance with the note) to fund the Prepetition ASARCO Environmental Trust Escrow to allow for the possibility that AMC may fail to make a required payment due under the note that funds the Prepetition ASARCO Environmental Trust.  In the event that AMC fails to make the payment remaining due under such note, the Plan Administrator shall pay a corresponding amount to the Prepetition ASARCO Environmental Trust Escrow, and the Plan Administrator,

the trustee of the Prepetition ASARCO Environmental Trust, and the United States shall reasonably cooperate in determining the most efficient mechanism to recover the amount owed by AMC. Upon AMC's payment of the amount due under the note, the Plan Administrator may (at such time as determined to be practicable by the Plan Administrator) release a corresponding amount from the Prepetition ASARCO Environmental Trust Escrow and distribute such funds in accordance with the terms and conditions of the Plan and the Confirmation Order (i.e., to the Plan Sponsor if all claims and other obligations payable under the Plan, including obligations incident to administration of the Plan, have been satisfied in full).

Section 2.6    Undeliverable and Unclaimed Distributions Reserve.

(a)    If the distribution to any holder of an Allowed Claim (other than the holder of an Unsecured Asbestos Personal Injury Claim or Demand) is returned to Reorganized ASARCO or the Plan Administrator as undeliverable or is otherwise unclaimed (including by a Claimant's failure to draw upon a check issued to such Claimant), no further distributions shall be made to such holder unless the Plan Administrator is timely notified in writing of such holder's then-current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of any undeliverable or unclaimed distributions shall be returned to the Plan Administrator until such distributions are claimed. The Plan Administrator shall segregate and deposit into the Undeliverable and Unclaimed Distribution Reserve all undeliverable or unclaimed distributions for the benefit of all such similarly situated Persons until such time as a distribution becomes deliverable or is claimed or such Claimant's right to the distribution is waived pursuant to Section 2.6(b) below. Nothing contained in the Plan or this Administration Agreement shall require Reorganized ASARCO or the Plan Administrator to attempt to locate any holder of an Allowed Claim.

(b)    Any funds in the Undeliverable and Unclaimed Distribution Reserve that remain unclaimed (including by a Claimant's failure to draw upon a check issued to such Claimant) or otherwise are not deliverable to the Claimant entitled thereto for one year after the initial distribution is made or attempted shall be Forfeited Distributions and shall become vested in, and shall be transferred and delivered to, the Plan Administrator. In such event, such Claimant shall be deemed to have waived its rights to such payments or distributions under the Plan pursuant to section 1143 of the Bankruptcy Code, shall have no further Claim in respect of such distribution, and shall not participate in any further distributions under the Plan with respect to such Claim. The Plan Administrator shall (at such time as determined to be practicable by the Plan Administrator) allocate the Forfeited Distributions in accordance with the terms and conditions of this Administration Agreement (i.e., to the Plan Sponsor if all claims and other obligations payable under the Plan, including obligations incident to administration of the Plan, have been satisfied in full).

Section 2.7    Indemnification Escrow.    On or before the Effective Date, the Plan Administrator shall establish an escrow account that shall be used to address the anticipated indemnification obligations of Reorganized ASARCO under Article 11.8(b) of the Plan. On the Effective Date (or as soon thereafter as is reasonably practicable), the Indemnification Escrow shall be funded in the amount of $20 million by ASARCO, Reorganized ASARCO, or the Plan Administrator, as the case may be. As soon as practicable after the sixth year anniversary of the

Effective Date or upon such later date as the Plan Administrator deems appropriate, the Plan Administrator shall allocate the remaining funds in the Indemnification Escrow to the Plan Sponsor.

Section 2.8      Intentionally Omitted.

Section 2.9      Vested Causes of Action Escrow.  On or before the Effective Date, the Plan Administrator shall establish an escrow account for the Vested Causes of Action Proceeds, if any.  Any proceeds from the prosecution, compromise, or settlement of the Vested Causes of Action after the Effective Date shall be placed in the Vested Causes of Action Escrow.  The Plan Administrator shall (at such time as determined to be practicable by the Plan Administrator) allocate any funds in the Vested Causes of Action Escrow in accordance with the terms and conditions of this Administration Agreement.

Section 2.10     Liquidation Trust Reserve.  On the Effective Date, (a) the Liquidation Trust shall be created and the Liquidation Trust Expense Fund shall be established; and (b) the Debtors' respective rights, title, and interests in the Liquidation Trust Claims and the Debtors' Privileges associated therewith shall be transferred to the Liquidation Trust.

Section 2.11     SCC Litigation Trust Reserve.  On the Effective Date, (a) the SCC Litigation Trust shall be created and the SCC Litigation Trust Expense Fund shall be established; (b) the Debtors' respective rights, title, and interests in the SCC Litigation Trust Claims and the Debtors' Privileges associated therewith shall be transferred to the SCC Litigation Trust; and (c) ASARCO, Reorganized ASARCO, or the Plan Administrator, as the case may be, shall deposit Cash in the amount of $15 million in the SCC Litigation Trust Reserve.  The Plan Administrator shall maintain the SCC Litigation Trust Reserve and shall from time to time, when requested to do so by the SCC Litigation Trustee, transfer funds from the SCC Litigation Trust Reserve to the SCC Litigation Trustee for the SCC Litigation Trust Expense Fund as the SCC Litigation Trustee deems reasonably necessary to the continued operations of the SCC Litigation Trust, up to an aggregate amount of $15 million. Upon a determination by the SCC Litigation Trustee that no additional funds will be needed from the SCC Litigation Trust Reserve, the Plan Administrator shall allocate the remaining funds in the SCC Litigation Trust Reserve in accordance with the terms and conditions of this Administration Agreement.

Section 2.12     Transactions with Related Persons.  Notwithstanding any other provisions of this Administration Agreement, the Plan Administrator shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of any assets of Reorganized ASARCO to, or contract with, (a) any relative, employee, or agent (acting in their individual capacities) of the Plan Administrator or (b) any Person of which any employee or agent of the Plan Administrator is an affiliate by reason of being a trustee, director, officer, partner, or direct or indirect beneficial owner of five percent or more of the outstanding capital stock, shares, or other equity interest of such Persons unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Plan Administration Committee after determination that the terms of such transaction are fair and reasonable and no less favorable than terms available for a comparable transaction with unrelated Persons.

Section 2.13    Use of Assets.  All Cash or other property held or collected by the Plan Administrator shall be used solely for the purposes contemplated by the Plan, Confirmation Order (or another order of the Bankruptcy Court), or this Administration Agreement.

Section 2.14    Books and Records.  In accordance with Article 15.22 of the Plan, on the Effective Date, the Plan Administrator shall take possession of the Retained Books and Records of the Debtors, and shall make all reasonable efforts to preserve such Retained Books and Records in the same order, format, and condition in which they exist on the Effective Date for 180 days after the Effective Date.  After this 180-day period, the Plan Administrator, in consultation with the Trustees, may, in the Plan Administrator's discretion and without liability or recourse, dispose of any such Retained Books and Records which the Plan Administrator determines are appropriate for disposal.  The Plan Administrator shall provide the Trustees with a reasonable opportunity to segregate and remove, at the expense of the applicable trust, such Retained Books and Records as they may select.  Any requests by parties-in-interest for copies or originals of any of the Retained Books and Records must be made in writing to the Reorganized Debtors on or before 60 days after the Effective Date.  All such parties-in-interest shall reasonably cooperate with the Reorganized Debtors in regards to such requests for copying or permanent retention of any such Retained Books and Records.  Any requests by multiple parties-in-interest for originals of the same Retained Books and Records of the Debtors shall be resolved by the Plan Administrator and such parties-in-interest.   In the event such parties are unable to resolve a dispute as to such Retained Books and Records, the Plan Administrator may elect to submit such dispute to the Bankruptcy Court. Procedures for retention and disposal of Asbestos Books are set forth in Article 7.13 of the Plan.

Section 2.15    Taxes.

(a)    The Plan Administrator shall use all reasonable commercial efforts to assure that any tax returns and all other appropriate or necessary documents related to municipal, state, federal, or other tax law that are required by law to be filed after the Effective Date by Reorganized ASARCO, the Debtors (other than Covington), or any account or subaccount established pursuant to this Administration Agreement are timely prepared and filed.

(b)    The Plan Administrator shall comply with all applicable withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authorities. Any amount so withheld from a distribution or payment to a Claimant or other payee shall be treated as having been paid to, and received by, such payee for purposes of the Plan and this Administration Agreement.

(c)    Notwithstanding anything to the contrary in this Administration Agreement, any taxes attributable to the earnings of the Plan Administration Account, a General Account, a subaccount, or a Miscellaneous Plan Administration Account (as well as any taxes directly imposed on such account or subaccount) shall be paid out of the assets of such account or subaccount.

Section 2.16    Reports.  The Plan Administrator shall be responsible for preparing, filing, and serving (if applicable) all reports required by the Plan, this Administration Agreement, or applicable law.

Section 2.17     Withholdings and Manner of Payments.

(a)     Subject to all of the Plan Sponsor's rights and obligations under the Plan including, without limitation, Article 15.23, notwithstanding anything to the contrary in this Article II, prior to making any distribution pursuant to the terms of this Administration Agreement, the Plan Administrator, after consultation with and approval by the Plan Administration Committee, may retain such amounts from any such distribution (i) as are reasonably necessary to meet contingent liabilities, (ii) to pay reasonable estimated administrative expenses, or (iii) as the Plan Administrator may deem necessary to provide further funding to the Plan Administration Account of any of the Miscellaneous Plan Administration Accounts.

(b)     If a distribution shall be in Cash, the Plan Administrator may distribute such Cash by wire, check, or such other method as the Plan Administrator deems appropriate under the circumstances.

Section 2.18     Final Distributions Upon Completion of Plan Administration.  As soon as practicable after all of the Vested Causes of Action and Disputed Claims are resolved, the Plan Administrator shall (a) make a final distribution consisting of the sales proceeds and any other remaining Cash, in accordance with the terms and conditions of the Plan and the Confirmation Order, (b) close ASARCO's bankruptcy case, (c) resign as director and officer of Reorganized ASARCO, and obtain resignations from any other directors and officers of Reorganized ASARCO who may have been appointed to serve in such capacity by the Plan Administrator, and (d) and return any remaining funds to the Plan Sponsor.

## ARTICLE III

## AUTHORITY AND LIMITATIONS

Section 3.1     Powers of the Plan Administrator.  The Plan Administrator shall have the following specific powers in addition to any powers conferred upon the Plan Administrator by the Plan Administration Committee, any other section or provision of this Administration Agreement, or by the Plan, the Confirmation Order, or another order of the Bankruptcy Court; *provided, however*, that the enumeration of the following powers shall not be considered in any way to limit or control the power of the Plan Administrator to act as specifically authorized by any other section or provision of this Administration Agreement, the Plan, the Confirmation Order, or any further order of the Bankruptcy Court; *provided further, however*, that the Plan Administrator, in the Plan Administrator's or the Plan Administrator's designee's capacity as the presiding officer and sole director of Reorganized ASARCO, shall have the power and authority to act for Reorganized ASARCO (without Bankruptcy Court approval, unless such approval is explicitly required herein or in the Plan) and shall exercise such powers and authority in the Plan Administrator's reasonable discretion:

(a)     to exercise all power and authority that may be exercised, and take all proceedings and acts that may be taken, by any officer, director, or member of Reorganized ASARCO, including, without limitation, the amendment of the organizational documents of Reorganized ASARCO; *provided, however*, that the Plan Administrator shall not amend the

articles of formation of Reorganized ASARCO to change the fundamental purpose of such company without first obtaining the approval of the Plan Administration Committee or make amendments which would adversely affect the Plan Sponsor in any material manner without the Plan Sponsor's consent (not to be unreasonably withheld, conditioned, or delayed);

(b)     after consultation with and approval by the Plan Administration Committee, to invest the Cash (including, without limitation, Cash in accounts, subaccounts, reserves, and escrows) in direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, including funds consisting solely or predominantly of such securities;

(c)     to calculate and, after consultation with and approval from the Plan Administration Committee, pay all distributions required or permitted to be made by the Plan Administrator under the Plan, this Administration Agreement, the Confirmation Order, and other orders of the Bankruptcy Court;

(d)     after consultation with and approval by the Plan Administration Committee, and subject to Article II and Article III hereof, to establish, fund, and administer the Disputed Claims Reserve, Disputed Secured Claims Reserve, the Plan Administration Account, the Undeliverable and Unclaimed Distribution Reserve, the Indemnification Escrow, the Prepetition ASARCO Environmental Trust Escrow, the Vested Causes of Action Escrow, the Liquidation Trust Reserve, the SCC Litigation Trust Reserve, and the General Account(s), and such other reserves, accounts, subaccounts, and escrows as may be authorized by this Administration Agreement, the Plan, the Confirmation Order, or other order of the Bankruptcy Court;

(e)     after consultation with and approval by the Plan Administration Committee, to employ, supervise, and compensate the professionals and other Persons retained to represent the interests and serve on behalf of Reorganized ASARCO;

(f)     after consultation with and approval by the Plan Administration Committee, to make and file (or to cause to be made and filed) tax returns, forms, and reports that are required by law to be filed after the Effective Date by Reorganized ASARCO, the Debtors (other than Covington), or any account or subaccount established pursuant to this Administration Agreement;

(g)     after consultation with and approval by the Plan Administration Committee, to file objections to Claims (other than Unsecured Asbestos Personal Injury Claims and Demands and Claims that have been Allowed by Final Order) and litigate to judgment, settle, or withdraw such objections to Disputed Claims;

(h)     after consultation with and approval by the Plan Administration Committee, to seek estimation of contingent or unliquidated claims (other than Unsecured Asbestos Personal Injury Claims) under 11 U.S.C. § 502(c);

(i)	after consultation with and approval by the Plan Administration Committee, to seek determination of tax liability under 11 U.S.C. § 505 or Section 6501(d) of the Internal Revenue Code;

(j)	after consultation with and approval by the Plan Administration Committee, to evaluate, prosecute, settle, dismiss, abandon, release, or otherwise dispose of turnover actions under 11 U.S.C. §§ 542 and 543;

(k)	after consultation with and approval by the Plan Administration Committee, to evaluate, prosecute, settle, dismiss, abandon, release, or otherwise dispose of any claims and causes of action owned by Reorganized ASARCO;

(l)	after consultation with and approval by the Plan Administration Committee, to close one or more of the Reorganization Cases;

(m)	after consultation with and approval by the Plan Administration Committee, to perform any and all acts necessary or appropriate for the conservation and protection of the assets of Reorganized ASARCO;

(n)	after consultation with and approval by the Plan Administration Committee, to pursue the sale, liquidation, or recovery of any and all assets of Reorganized ASARCO;

(o)	to exercise all powers and rights, and taking all actions, contemplated by or provided for in this Administration Agreement, subject to any applicable limitations set forth herein;

(p)	to conduct the businesses of Reorganized ASARCO, subject to any applicable limitations set forth herein;

(q)	after consultation with and approval by the Plan Administration Committee, to take any action necessary to prosecute, settle, or otherwise resolve the Vested Causes of Action and place the Vested Causes of Action Proceeds (if any) in the Vested Causes of Action Escrow; and

(r)	to take any and all other actions necessary or appropriate to implement or consummate the Plan and the provisions of this Administration Agreement, subject to any applicable limitations set forth herein.

Section 3.2	Authority to Operate Business on Behalf of Reorganized ASARCO.  The Plan Administrator shall have authority to operate the business of Reorganized ASARCO as contemplated by this Administration Agreement, the Plan, the Confirmation Order, or other order of the Bankruptcy Court.  The Plan Administrator shall consult with, and obtain the approval of, the Plan Administration Committee as necessary or as required by the terms of this Administration Agreement.  The Plan Administrator or the Plan Administrator's designee shall serve as presiding officer and sole director of Reorganized ASARCO (unless and until additional officers and directors are appointed) and is empowered to make all determinations with respect

to employment of any other directors, officers and employees of Reorganized ASARCO on and after the Effective Date.

Section 3.3    Authority to Pursue or Compromise Causes of Action on Behalf of Reorganized ASARCO.   The Vested Causes of Action shall vest in Reorganized ASARCO, pursuant to Article 10.20 of the Plan.  From and after the Effective Date the Plan Administrator shall be authorized to prosecute, compromise and settle, abandon, release, or dismiss for the benefit of Reorganized ASARCO the Vested Causes of Action (whether such suits are brought in Reorganized ASARCO's name or otherwise), without the need for approval by the Bankruptcy Court, and may, in the Plan Administrator's discretion, file a notice of discharge with a copy of the Confirmation Order in any lawsuits in which ASARCO or any other Debtor was named as a defendant prior to the Effective Date.  Notwithstanding the foregoing, the Plan Administrator shall, prior to entering into any proposed settlement of a Vested Cause of Action for an amount in excess of $[**500,000**], procure the approval of the Plan Administration Committee.

Section 3.4    Authority to Object to Claims and to Settle Disputed Claims.  From and after the Effective Date the Plan Administrator shall:

(a)    be exclusively authorized to object to any Claims filed against any of the Debtors (other than Unsecured Asbestos Personal Injury Claims and Demands and Claims that have been Allowed by Final Order).

(b)    to the extent the Plan Administrator objects to any Claims or to the extent an objection to any Claim is otherwise pending on the Effective Date, be empowered to and take all appropriate action with respect to resolution of the Disputed Claims consistent with the purpose of the Disputed Claims Reserve, including, without limitation, the prosecution, settlement, or other resolution of such Disputed Claims (in consultation with the Plan Sponsor and with the Plan Sponsor's consent, which shall not be unreasonably withheld, conditioned or delayed; provided, however, the Plan Sponsor shall be deemed to have authorized the Plan Administrator to litigate such claims to judgment, subject to the Plan Sponsor providing written notice to the Plan Administrator of its withdrawal of such consent).  Notwithstanding the foregoing, the Plan Administrator shall, prior to entering into any proposed settlement of a Disputed Claim for an amount in excess of $[**500,000**], procure the approval of the Plan Administration Committee.

(c)    file and serve a copy of each objection upon the holder of the Disputed Claim to which an objection is made as soon as practicable, but in no event later than (i) 90 days after the Confirmation Date, (ii) 90 days after a Proof of Claim is filed, or (iii) such other time as may be fixed or extended by the order of the Bankruptcy Court; *provided, however*, that Reorganized ASARCO, the Plan Administrator or the Plan Sponsor may seek to extend such period (or any extended period) for cause.

(d)    be authorized to object to any motion seeking (i) payment of post-petition interest on such holder's claim at a rate other than the Plan Rate or (ii) reimbursement of attorneys' fees and other costs and expenses associated with such holder's Claim (or both).

Notwithstanding anything contained in this Administration Agreement to the contrary, the Plan Administrator may, but is not required to, submit a proposed action to a court of competent jurisdiction, including the Bankruptcy Court, for its approval, on notice to the Plan Administration Committee and any party affected by the proposed action, and may comply with any action approved by such court.

Section 3.5    Limitation of Plan Administrator's Authority.   The Plan Administrator shall take such actions consistent with the resolution of Disputed Claims as are required by applicable law, and such actions permitted hereunder.

Section 3.6    Authority Regarding Certain Ongoing Response Actions.   The Plan Administrator shall have the authority, and the obligation, to enter into agreements with third party contractors to conduct and complete the following ongoing response actions to the extent funded by the Prepetition ASARCO Environmental Trust or the Prepetition ASARCO Environmental Trust Escrow: the uncompleted portion of residential yard cleanups required under the El Paso Stipulation or included in the "Ongoing Obligation" portion of the East Helena Soils Settlement Agreement; *provided, however,* that any agreement entered into by the Plan Administrator and any third party with respect to such response actions shall not include any indemnification obligation by ASARCO, any other Debtor, Reorganized ASARCO, or the Plan Administrator.  In the event that the Plan Administrator is unable to enter into an agreement with a third party contractor in respect of such response actions without providing indemnification to the third party, the Plan Administrator shall be excused from any and all obligations with respect to the performance of such response actions.

Section 3.7    Additional Powers.   Except as otherwise set forth in this Administration Agreement or in the Plan, and subject to the retained jurisdiction of the Bankruptcy Court as provided for in the Plan, but without prior or further authorization, the Plan Administrator may control and exercise authority over the property or other assets in the accounts, subaccounts, reserves, and escrows and over the protection, conservation, and disposition thereof.  No person dealing with the Plan Administrator shall be obligated to inquire into the authority of the Plan Administrator in connection with the protection, conservation, or disposition of any property or other assets in such accounts, subaccounts, reserves, or escrows.

Section 3.8    Compliance with Laws.   Any and all distributions of Cash shall be made in compliance with applicable laws.

Section 3.9    Dissolution of Reorganized ASARCO.   As soon as practicable after the Plan Administrator exhausts the assets of Reorganized ASARCO by making the final distributions of Cash under the Plan, the Plan Administrator, after consultation with and approval by the Plan Administration Committee, shall (a) effectuate the dissolution of Reorganized ASARCO in accordance with the laws of the State of Delaware, and (b) resign as sole member and as an officer and director of Reorganized ASARCO. The Plan Administrator shall act as the authorized signatory to execute on behalf of Reorganized ASARCO any and all documents necessary to accomplish such dissolution.

# ARTICLE IV

## THE PLAN ADMINISTRATOR

Section 4.1     Reliance by Plan Administrator.  Except as otherwise provided in Sections 4.5 or 4.6 hereof:

(a)     the Plan Administrator may rely, and shall be protected in acting upon, any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order, or other paper or document believed by the Plan Administrator to be genuine and to have been signed or presented by the proper party or parties;

(b)     the Plan Administrator may consult with any and all professionals to be selected by the Plan Administrator, and shall not be liable for any action taken or omitted to be taken by the Plan Administrator in accordance with the advice of such professionals; and

(c)     Persons dealing with the Plan Administrator shall look only to the Cash or other property in the accounts, subaccounts, reserves, or escrows established hereunder to satisfy any liability incurred by the Plan Administrator to such Person in carrying out the terms of this Administration Agreement, and the Plan Administrator shall have no personal obligation to satisfy any such liability.

Section 4.2     Investment and Safekeeping of Assets.  Investments of any moneys held by the Plan Administrator shall be administered in view of the manner in which individuals of ordinary prudence, discretion, and judgment would act in the management of their own affairs; *provided, however,* that the right and power of the Plan Administrator to invest the Cash, the proceeds thereof, or any income earned by any account, subaccount, reserve, or escrow shall be limited to the right and power to invest such Cash (pending periodic distributions in accordance with the terms of this Administration Agreement) in direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, consistent with the purpose of such account, subaccount, reserve, or escrow.  The Plan Administrator shall be under no liability or obligation for interest or producing income on any monies received hereunder and held for distribution or payment to the holders of Disputed Claims that become Allowed Claims, except as such interest shall actually be received by the Plan Administrator (net of applicable taxes actually paid with respect to such interest or income).  Any interest or other income earned on the investments of the Cash in any given reserve, account, subaccount, or escrow established pursuant to this Administration Agreement, the Plan, or any order of the Bankruptcy Court (net of applicable taxes actually paid with respect to such interest or income) shall constitute a part of such reserve, account, subaccount, or escrow unless and until transferred or distributed pursuant to the terms of this Administration Agreement, the Plan, or any order of the Bankruptcy Court.

Section 4.3     Authorization to Expend Cash.  The Plan Administrator may expend Cash (a) as reasonably necessary to meet liabilities and to maintain the value of the property in any account, subaccount, reserve, or escrow; (b) to pay all taxes and administrative expenses; (c) to fund the costs and expenses of the Plan Administrator; and (d) to satisfy all other liabilities

incurred or assumed by any account, subaccount, reserve, or escrow in accordance with this Administration Agreement or the Plan.

> Section 4.4    Compensation.

> (a)    The Plan Administrator shall be entitled to receive (i) for a period of three years following the Effective Date, the compensation and reimbursement for expenses set forth in **Exhibit A** hereto and (ii) thereafter, as may be mutually agreed upon by the Plan Administrator and Plan Administration Committee.

> (b)    Each of the members of the Plan Administration Committee shall be paid $[_____] per annum for attendance at six meetings per calendar year and such other amounts as negotiated by the Plan Administrator and each member of the Plan Administration Committee for any additional meetings.

> Section 4.5    Standard of Care; Exculpation.  Neither the Plan Administrator (in the Plan Administrator's capacity as such and as officer and director of Reorganized ASARCO), the Plan Administration Committee members, nor any of the Plan Administrator's duly designated agents or representatives or professionals (the "Indemnified Parties") shall be liable for any act or omission taken or omitted to be taken by such Indemnified Party in good faith, other than acts or omissions resulting from such Indemnified Party's own bad faith, willful misconduct, gross negligence, or knowing violation of law.  The Plan Administrator may, in connection with the performance of the Plan Administrator's functions, and in the Plan Administrator's sole and absolute discretion, consult and be entitled to rely on such documents and professionals as set forth in Section 4.1 above and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance the Plan Administrator's reliance on such document or with the advice or opinions rendered by such Persons.  Notwithstanding such authority, the Plan Administrator shall be under no obligation to consult with such professionals, and the Plan Administrator's good faith determination not to do so shall not result in the imposition of liability on the Plan Administrator, unless such determination is based on bad faith, willful misconduct, gross negligence, or knowing violation of law.

> Section 4.6    Indemnification.  To the fullest extent permitted by law, Reorganized ASARCO, to the extent of its assets legally available for that purpose, shall indemnify and hold harmless the Indemnified Parties from and against any and all losses, liabilities, costs, damages, and reasonable expenses they or their agents may incur in good faith and without gross negligence, recklessness, willful misconduct, breach of fiduciary duty, or knowing violation of law, in the exercise and performance of any of their powers and duties under this Administration Agreement.

> Section 4.7    No Bond.  The Plan Administrator shall serve without bond.

> Section 4.8    Confidentiality.  The Plan Administrator and each successor Plan Administrator and each member of the Plan Administration Committee and each successor member of the Plan Administration Committee (each a "Covered Person") shall, during the period that they serve in such capacity under this Administration Agreement and following either the termination of this Administration Agreement or such individual's removal, incapacity, or

resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any Debtor or to Reorganized ASARCO or of which such Covered Person has become aware in such Covered Person's capacity (the "Information"), except to the extent disclosure is required by applicable law, order, regulation, or legal process. In the event that any Covered Person is required (by oral questions, interrogatories, requests for information, or documents, subpoena, civil investigation, demand, or similar legal process) to disclose any Information, such Covered Person shall notify the Plan Administrator and the Plan Administration Committee reasonably promptly (unless prohibited by law) so that the Plan Administrator and the Plan Administration Committee may seek an appropriate protective order or other appropriate remedy or, in their discretion, waive compliance with the terms of this section (and if the Plan Administrator and the Plan Administration Committee seek such an order, the relevant Covered Person shall provide cooperation as the Plan Administrator and the Plan Administration Committee shall reasonably request).  In the event that no such protective order or other remedy is obtained, or that the Plan Administrator and the Plan Administration Committee waive compliance with the terms of this section and that Covered Person is nonetheless legally compelled to disclose the Information, the Covered Person shall furnish only that portion of the Information which the Covered Person, advised by counsel, is legally required and shall give the Plan Administrator and the Plan Administration Committee written notice (unless prohibited by law) of the Information to be disclosed as far in advance as practicable and exercise all reasonable efforts to obtain reliable assurance that confidential treatment shall be accorded the Information.

Section 4.9    Insurance.  The Plan Administrator, after consultation with and approval with and approval by the Plan Administration Committee, shall be authorized to obtain all insurance coverage that is reasonably necessary for the Plan Administrator, the Plan Administration Committee, Reorganized ASARCO, the officers and directors of  Reorganized ASARCO, and the professionals of any of them, including, without limitation, coverage with respect to (a) any property that is or may in the future become the property of Reorganized ASARCO and (b) the liabilities, duties, or obligations of the Plan Administrator, the Plan Administration Committee, Reorganized ASARCO, any other directors and officers of Reorganized ASARCO, and their professionals (in the form of an errors-and-omissions policy or otherwise), the latter of which insurance coverage may remain in effect for a reasonable period after the conclusion of the Plan Administrator's service.

## ARTICLE V

## SUCCESSOR PLAN ADMINISTRATOR

Section 5.1    Removal.  At any time upon the request of a majority of the members of the Plan Administration Committee for any reason or upon the request of any party in interest for cause, the Bankruptcy Court may remove the Plan Administrator.  For purposes of this Section 5.1, "cause" shall mean (a) an act of fraud, embezzlement, or theft in connection with the Plan Administrator's duties or in the course of the Plan Administrator's employment in such capacity; (b) the intentional wrongful damage to the property of Reorganized ASARCO; (c) the intentional wrongful disclosure of confidential information of Reorganized ASARCO resulting in material harm to Reorganized ASARCO; (d) gross negligence, recklessness, breach of fiduciary duty, bad

faith, willful misconduct, or a knowing violation of law by the Plan Administrator in connection with the performance of the Plan Administrator's duties under this Administration Agreement; or (e) intentional and material breach by the Plan Administrator of the provisions of this Administration Agreement, the Plan, the Confirmation Order, or any other order of the Bankruptcy Court.  Unless the Bankruptcy Court orders immediate removal, subject to Section 5.2 hereof, the Plan Administrator shall continue to serve until a successor Plan Administrator is appointed, and such appointment becomes effective, in accordance with Section 5.3 hereof.

Section 5.2       Resignation.  The Plan Administrator may resign by giving not less than 90 days prior written notice thereof to the Plan Administration Committee.  Such resignation shall become effective on the later to occur of (a) the day specified in such notice or (b) the appointment of a successor by the Plan Administration Committee and the acceptance by such successor of such appointment.  If a successor Plan Administrator is not appointed or does not accept the Plan Administrator's appointment within 90 days following delivery of notice of resignation, the Plan Administrator may petition any court of competent jurisdiction, including the Bankruptcy Court, for the appointment of a successor Plan Administrator and officer and director of  Reorganized ASARCO.

Section 5.3       Appointment of Successor Upon Removal, Resignation or Death.  If the Plan Administrator is removed pursuant to Section 5.1, resigns pursuant to Section 5.2, or dies, the Plan Administration Committee may appoint a successor Plan Administrator.  If a successor Plan Administrator is not appointed or does not accept the Plan Administrator's appointment pursuant to the preceding sentence of this Section 5.3 within 75 days following such action for removal, delivery of notice of resignation, or the death of the predecessor Plan Administrator, as the case may be, any member of the Plan Administration Committee may petition any court of competent jurisdiction, including the Bankruptcy Court, for the appointment of a successor Plan Administrator and officer and director of Reorganized ASARCO.

Section 5.4       Acceptance of Appointment by Successor Plan Administrator.  Any successor Plan Administrator appointed hereunder shall execute and deliver to the Bankruptcy Court and the retiring Plan Administrator, if any, an instrument accepting such appointment hereunder.  Thereupon, such successor Plan Administrator shall, without any further act, (a) become vested with all the estates, properties, rights, powers, trusts, and duties of the Plan Administrator's predecessor with like effect as if originally named herein and (b) become the sole holder of membership interests in, and an officer and director of, Reorganized ASARCO; *provided, however*, that if other Persons have been appointed to serve as directors or officers of Reorganized ASARCO, those appointments shall continue in effect until their expiration or removal according to the provisions of the governing documents of Reorganized ASARCO; *and provided further, however*, that no Plan Administrator shall be liable for the acts or omissions of any prior or later Plan Administrator.

Section 5.5       Continuity.  Unless otherwise ordered by the Bankruptcy Court, the resignation or removal of the Plan Administrator shall not operate to terminate any agency or employment created by this Administration Agreement or invalidate any action therefore taken by the Plan Administrator.  In the event of a resignation or removal of the Plan Administrator, such Plan Administrator shall (a) execute and deliver by the effective date of resignation or

removal such documents, instruments, and other writings as may be reasonably required to effect the termination of Plan Administrator's capacity under this Administration Agreement and (b) assist and cooperate in effecting the assumption of such Plan Administrator's obligations and functions by the successor Plan Administrator. If for any reason the Plan Administrator fails to execute the documents described in section (a) of the preceding sentence, the Bankruptcy Court may enter such orders as are necessary to effect termination of such Plan Administrator's capacity under this Administration Agreement.

## ARTICLE VI

## TERMINATION

Section 6.1     Termination.  This Administration Agreement shall terminate upon the later of (a) 30 days after the exhaustion of the assets of Reorganized ASARCO or (b) the filing of a certificate of termination with the Bankruptcy Court, signed by the Plan Administrator, which certificate shall not be filed until all distributions required to be made pursuant to the Plan, this Administration Agreement, and any order of the Bankruptcy Court have been made.

Section 6.2     Other Obligations of the Plan Administrator Upon Termination.  Prior to filing a certificate of termination, the Plan Administrator shall (a) provide for the retention and storage of any remaining books, records, and files that shall have been delivered to or created by the Plan Administrator until such time as all such books, records, and files are no longer required to be retained under applicable law, (b) file a certificate informing the Bankruptcy Court of the location at which such books, records, and files are being stored, and (c) provide books, records, and files to the Plan Sponsor if so requested.  Except as otherwise specifically provided herein, after termination of this Administration Agreement pursuant to Section 6.1 above, the Plan Administrator shall have no further duties hereunder.  Section 2.15(a) above shall survive the termination of this Administration Agreement.

## ARTICLE VII

## MISCELLANEOUS PROVISIONS

Section 7.1     Cooperation.  The Debtors shall provide the Plan Administrator with copies of such of their books and records as the Plan Administrator shall reasonably require for the purpose of performing the Plan Administrator's duties and exercising the Plan Administrator's powers hereunder.  The officers and directors of the Debtors shall cooperate with the Plan Sponsor and the Plan Administrator and shall provide information reasonably requested by the Plan Administrator.

Section 7.2     Amendment.  This Administration Agreement may not be amended except by an instrument executed by (a) the Debtors, the Plan Sponsor, and the Plan Administrator on or before the Effective Date and (b) the Plan Sponsor and the Plan Administrator with the approval of the Plan Administration Committee following the Effective Date.

Section 7.3     Laws as to Construction.     This Administration Agreement shall be governed and construed in accordance with the laws of the State of Texas, without giving effect to rules governing the conflict of laws.

Section 7.4     Severability.     If any provision of this Administration Agreement or the application thereof to any Person or circumstance shall be finally determined by a court of competent jurisdiction to be invalid or unenforceable to any extent, the remainder of this Administration Agreement, or the application of such provision to Persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and such provision of this Administration Agreement shall be valid and enforced to the fullest extent permitted by law.

Section 7.5     Notices.     Any notices, requests, or other communication to the parties hereto shall be in writing and shall be deemed to have been sufficiently given only if (a) delivered in person; (b) sent by facsimile, as evidenced by a confirmed fax transmission report; (c) sent by registered or certified mail, return receipt required; (d) sent by commercial delivery service or courier; or (e) sent by electronic mail.   Until a change of address is communicated, as provided below, all notices, requests, and other communications shall be sent to the parties at the following addresses or facsimile numbers:

If to the Debtors:

[Name
Address
Facsimile
Attn:  ]

with copies to:

[Name
Address
Facsimile
Attn:  ]

If to Sterlite:

[Name
Address
Facsimile
Attn:  ]

with copies to:

[Name
Address
Facsimile
Attn:  ]

If to the Plan Administrator:

[Name
Address
Facsimile]
Attn:  ]

with copies to:

[Name
Address
Facsimile
Attn:  ]

If to the Plan Administration Committee:

[Name
Address
Facsimile]

[Name
Address
Facsimile]

[Name
Address
Facsimile]

Section 7.6     <u>Headings</u>.   The section headings contained in this Administration Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Administration Agreement or of any term or provision hereof.

Section 7.7     <u>Relationship to the Plan</u>.

(a)     The principal purpose of this Administration Agreement is to aid in the implementation of the Plan and therefore this Administration Agreement incorporates the provisions of the Plan.  To that end, the Plan Administrator shall have full power and authority to take any action consistent with the purpose and provisions of the Plan, and to seek any orders from the Bankruptcy Court in furtherance of implementation of the Plan and this Administration Agreement.  To the extent that there is conflict between the provisions of this Administration Agreement, the provisions of the Plan, and/or the Confirmation Order, each such document shall have controlling effect in the following rank order: (1) the Confirmation Order; (2) the Plan; and (3) this Administration Agreement.

(b)     Sterlite, as a party hereto and as the Plan Sponsor, shall (i) have all consultation and approval rights set forth in the Plan with respect to the subject matter hereof and

(ii) be obligated to pay all amounts set forth in the Plan, including, without limitation, the amounts set forth in <u>Section 10.1(d)</u> of the Plan.

Section 7.8    <u>Certain Limitations Regarding Governmental Units</u>.  As provided in Article 11.11 of the Plan, the releases, discharges, satisfactions, exonerations, exculpations, and injunctions provided under the Plan and the Confirmation Order shall not apply to any liability to a Governmental Unit arising after the Effective Date; *provided, however*, that no Governmental Unit shall assert any Claim or other cause of action under Environmental Law against the entities administering the Plan for the benefit of the creditors, the assets or funds being held by the entities administering the Plan for the benefit of the creditors, or the Reorganized Debtors based on or arising from acts, omissions, or conduct of the Debtors prior to February 1, 2009 (including, without limitation, continuing releases related to acts, omissions, or conduct prior to February 1, 2009); *except provided further, however*, that nothing in the Plan or the Confirmation Order (a) precludes the enforcement of the Hayden Settlement Agreement, the Mission Mine Settlement Agreement, or the Arizona NRD Settlement Agreement as provided therein; (b) shall prevent the governments or Environmental Custodial Trusts from recovering under any confirmed plan on any Allowed Claim or payment due with respect to any site listed on **<u>Exhibit 12</u>** to the Plan or for any Allowed Claim for a permit fee or similar assessment or charge owed to the governments under Environmental Law; (c) releases, discharges, precludes, or enjoins the enforcement of any liability to a Governmental Unit under Environmental Law that any Entity is subject to as the current owner or current operator of property after the Effective Date; (d) releases, discharges, precludes, or enjoins any Allowed Claim or liability of a Debtor's Estate as the current owner or current operator of property between February 1, 2009 and the Effective Date; (e) for sites covered by an approved Environmental Custodial Trust Settlement Agreement, permits the governments or Environmental Custodial Trusts to recover more than permitted under the approved Environmental Custodial Trust Settlement Agreement, nor does it affect the covenants not to sue in the Environmental Custodial Trust Settlement Agreements or the reservation of rights; (f) releases, discharges, precludes, or enjoins any on-site liability of a Debtor's Estate as the owner, operator, or lessee of the Ray Mine, the Mission Mine, the Amarillo copper smelter, the Tucson office, or the Ventura Warehouse; (g) precludes enforcement by the United States or a state of any requirements under an Environmental Custodial Trust Agreement against an Environmental Custodial Trustee; or (h) releases, discharges, precludes, or enjoins the enforcement of any liability to a Governmental Unit under Environmental Law for criminal liability (except to the extent that such liabilities are dischargeable).

Section 7.9    <u>Counterparts; Execution and Delivery by Facsimile</u>.  For the purposes of facilitating the execution of this Administration Agreement, as herein provided and for other purposes, this Administration Agreement may be executed simultaneously in counterparts, each of which counterpart shall be deemed to be an original, and all such counterparts shall constitute but one and the same instrument.  Any original counterpart when executed and transmitted by electronic facsimile shall be deemed duly delivered to the other party upon confirmed receipt thereof by such other party.

Section 7.10    <u>Retention of Jurisdiction</u>.  As provided in Article XV of the Plan, until the Reorganization Cases are closed, the Bankruptcy Court shall retain the fullest and most extensive

jurisdiction possible, including, without limitation, for the purposes of interpreting and implementing the provisions of this Administration Agreement.

REMAINDER OF PAGE INTENTIONALLY LEFT BLANK

IN WITNESS WHEREOF, the parties hereto have either executed and acknowledged this Administration Agreement or caused it to be executed and acknowledged on their behalf by their duly authorized officers all as of the date first above written.

**ASARCO LLC,** *et al.*,
**Debtors and Debtors in Possession**

By: _____
    Name:
    Title:

**STERLITE (USA), INC.**

By: _____
    Name:
    Title:

**STERLITE INDUSTRIES (INDIA) LTD**

By: _____
    Name:
    Title:

**PLAN ADMINISTRATOR**

_____
Joseph F. Lapinsky

**AGREED AND ACKNOWLEDGED**
**as of the date first above written:**

_____
Name:
Title: Plan Administration Committee Member

_____
Name:
Title: Plan Administration Committee Member

_____
Name:
Title: Plan Administration Committee Member

<u>Exhibit A</u>

I.      <u>Fee</u>.

        (a)      In consideration for the services of the Plan Administrator under this Administration Agreement, the Plan, the Confirmation Order, or other applicable order of the Bankruptcy Court, during the three year period beginning on the Effective Date, the Debtors shall pay to the Plan Administrator a fee (the "<u>Fee</u>") in the amount of **[$_____]** per month (pro rated for partial months).

        (b)      The Fee (which the Plan Administrator may cause to be withdrawn from the Plan Administration Account) shall be payable monthly in arrears on or before the fifth business day of each calendar month.

        (c)      Neither the Plan Administrator nor any of the Plan Administrator's personnel shall be entitled to any additional compensation of any nature for their services set forth under the Administration Agreement, the Plan, the Confirmation Order, or other applicable order of the Bankruptcy Court.

II.     <u>Expenses</u>.

        During the term of this Administration Agreement, the Plan Administrator shall be reimbursed for reasonable out-of-pocket expenses incurred by the Plan Administrator and any personnel in connection with performing the duties provided hereunder.  The expenses for which the Plan Administrator is entitled to be reimbursed may include, without limitation, travel, lodging, duplicating, postage, computer research, messenger service and telephone service and the reasonable fees and expenses of the agents, financial advisors, attorneys, accountants, consultants, independent contractors, representatives, and other professionals retained by the Plan Administrator.  The Plan Administrator shall provide an itemized monthly report with narrative description of such expenses to, and provide supporting documents as reasonably requested by the Debtors or the Plan Administration Committee.  If the Debtors (prior to the Effective Date) or the Plan Administration Committee (on or after the Effective Date) reasonably objects to any portion of such requests for expense reimbursement within twenty days of the receipt of such monthly report because the incurrence of such expense was not reasonable, the Plan Administrator shall not be entitled to reimbursement for the portion of the expenses objected to until resolved with the Person objecting to such expenses.  In the event the parties are unable to resolve a dispute as to an expense reimbursement, the Debtors or the Plan Administration Committee, as applicable, or the Plan Administrator may elect to submit any such dispute to the Bankruptcy Court.