# PARENT'S PLAN EXHIBIT 4

# FORM OF PARENT'S PLAN ADMINISTRATION AGREEMENT

## PARENT'S PLAN ADMINISTRATION AGREEMENT

THIS PARENT'S PLAN ADMINISTRATION AGREEMENT is made this _____ day of _____, 2009, by and among [_____] (the **"Parent's Plan Administrator"**) and ASARCO Incorporated, a Delaware corporation, Americas Mining Corporation, a Delaware corporation (**"AMC,"** and, together with ASARCO Incorporated, the **"Parent"**) and Reorganized ASARCO (as such term is defined in the Parent's Sixth Amended Plan of Reorganization for the Debtors under Chapter 11 of the United States Bankruptcy Code, dated as of July 26, 2009 (as the same may be modified or amended from time to time, the **"Parent's Plan"**)). Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Parent's Plan.

### RECITALS

WHEREAS, a voluntary petition for reorganization under chapter 11 of the Bankruptcy Code was filed by each Debtor in the Bankruptcy Court; and

WHEREAS, the Parent's Plan contemplates that certain specified rights and powers of Reorganized ASARCO will be exercised in certain specified circumstances by and through the Parent's Plan Administrator; and

WHEREAS, on [_____], 2009, the Bankruptcy Court confirmed the Parent's Plan; and

WHEREAS, effective upon the Effective Date, the Parent desires to appoint [_____] to serve as the Parent's Plan Administrator under the Parent's Plan, and [_____] is willing to serve in such capacity, in each case upon the terms set forth herein and pursuant to the Parent's Plan;

NOW, THEREFORE, in consideration of the foregoing and the covenants and agreements set forth herein, the parties hereto agree as follows:

### ARTICLE I.

### PARENT'S PLAN ADMINISTRATOR'S ACCEPTANCE OF POSITION

1.1     <u>Acceptance</u>. [_____] accepts the appointment as Parent's Plan Administrator and agrees to observe and perform all duties and obligations imposed upon it by this Agreement, the Parent's Plan, orders of the Bankruptcy Court, and applicable law.

### ARTICLE II.

### GENERAL OBLIGATIONS OF
### THE PARENT'S PLAN ADMINISTRATOR

2.1     <u>General</u>.  The Parent's Plan Administrator shall comply with the Parent's Plan and the Confirmation Order in connection with the performance of its duties hereunder and under the Parent's Plan.  On the Effective Date, (i) the Parent's Contribution shall be delivered to

the Parent's Plan Administrator and (ii) Reorganized ASARCO shall transfer the Distributable Cash to the Parent's Plan Administrator.

      2.2    <u>Establish Accounts</u>.  On the Effective Date (or as soon thereafter as is reasonably practicable), the Parent's Plan Administrator shall establish and fund the Parent's Plan Administration Account with sufficient Cash to pay the Parent's Plan Administrator's estimated compensation and expenses, and all other anticipated costs of administration of the Parent's Plan.  The Parent's Plan Administrator shall also establish and fund Miscellaneous Parent's Plan Administration Accounts, including the Disputed Claims Reserve, the Disputed Secured Claims Escrow Account, and the Undeliverable and Unclaimed Distribution Reserve, and may also establish such general accounts as the Parent's Plan Administrator deems necessary and appropriate.  The Parent's Plan Administrator shall allocate the funds in the Parent's Plan Administration Account to subaccounts corresponding to the enumerated functions of the Parent's Plan Administrator.  Until the Parent's Plan Administrator has discharged its obligations, the funds in those subaccounts and the Miscellaneous Parent's Plan Administration Accounts may only be used for the purpose designated for that particular account or subaccount.

      2.3    <u>Initial Distributions</u>.  On the Effective Date (or as soon thereafter as is reasonably practicable), in accordance with the Parent's Plan, the Parent's Plan Administrator shall (i) pay the Allowed Claims that are to be paid on the Effective Date, (ii) fund the Section 524(g) Trust with the Section 524(g) Trust Assets, (iii) either fund the Environmental Liquidation Trust with the Environmental Liquidation Trust Assets or, to the extent unanimously elected by the applicable federal and state agencies holding an Allowed Environmental Trust Claim with respect to a Designated Property, fund the Environmental Custodial Trust(s) with the Environmental Custodial Trust Assets, and (iv) fund the Disputed Claims Reserve as provided for in Article 13.8 of the Parent's Plan.

      2.4    <u>Resolution of Disputed Claims</u>.  The Parent's Plan Administrator shall maintain, in accordance with its powers and responsibilities under the Parent's Plan, a Disputed Claims Reserve.

      a)    On the Effective Date (or as soon thereafter as is reasonably practicable), Reorganized ASARCO or the Parent's Plan Administrator, as the case may be, shall deposit Cash and/or other forms of consideration in the Disputed Claim Reserve that would have been distributed to the holders of Disputed Claims if such Disputed Claims had been Allowed Claims on the Effective Date.  This amount will be determined based on the lesser of (1) the asserted amount of the Disputed Claims in the applicable Proofs of Claim, (2) the amount, if any, estimated by the Bankruptcy Court for purposes of distribution pursuant to section 502(c) of the Bankruptcy Code, or (3) the amount otherwise agreed to by the applicable Debtor and the holders of such Disputed Claims.

      b)    The Parent, Reorganized ASARCO, and/or the Parent's Plan Administrator may seek Bankruptcy Court approval to reduce the size of the Disputed Claims Reserve based upon the amount of the remaining Disputed Claims or other changed circumstances.

   c) In the case of objections to allegedly Secured Claims, any Lien asserted by the holder of such a Claim against assets that revest in or are transferred to Reorganized ASARCO shall remain in place, pending resolution of the objection to the allegedly Secured Claim.

   d) The Parent's Plan Administrator (at such time as determined to be practicable by the Parent's Plan Administrator) shall distribute from the Disputed Claims Reserve to the holder of any Disputed Claim that has become an Allowed Claim, an amount equal to the Allowed Claim as if such Claim had been an Allowed Claim on the Effective Date. With respect to Claims that are Reinstated, the Parent's Plan Administrator will distribute from the Disputed Claims Reserve to the holder of any Disputed Claim that is allowed by an unstayed order of a court of competent jurisdiction, not later than the tenth Business Day after the end of the calendar month in which such order is entered, an amount equal to such Claim as if such Claim had been an Allowed Claim on the Effective Date.

   e) If a Disputed Claim is disallowed, in whole or in part, the Parent's Plan Administrator shall (at such time as determined to be practicable by the Parent's Plan Administrator) distribute as a Subsequent Distribution the Cash reserved in respect of such disallowed Disputed Claim in accordance with the terms and conditions of the Parent's Plan and the Confirmation Order.

   f) the Disputed Claims Reserve is intended to be treated as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B 9(b)(1), and hence as a taxable entity for federal income tax purposes, and the Parent's Plan Administrator will be the "administrator" of the Disputed Claims Reserve pursuant to Treasury Regulation section 1.468B-9(b)(2). In general, the Disputed Claims Reserve will be treated in the same manner as a "qualified settlement fund" for federal income tax purposes. The Parent's Plan Administrator shall (i) timely file such income tax and other returns and statements and timely pay all taxes required to be paid by the Disputed Claims Reserve using assets of the Disputed Claims Reserve; (ii) satisfy all requirements necessary to qualify and maintain qualification of the Disputed Claims Reserve as a disputed ownership fund within the meaning of Treasury Regulations; (iii) take no action that could cause the Disputed Claims Reserve to fail to qualify as a disputed ownership fund within the meaning of Treasury Regulations; (iv) take no action that could cause the Disputed Claims Reserve to be treated as a grantor trust for federal income tax purposes; and (v) within seventy-five (75) days (or earlier if required by law) after the end of each calendar year, cause to be prepared and mailed information as required by law to enable payees to complete and file each of their respective federal, state and local income and other tax returns.

   g) Reorganized ASARCO will make an election on a protective basis to treat the Disputed Claims Reserve as a grantor trust all of which is owned by Reorganized ASARCO for federal and, to the extent permitted, state and local tax purposes (pursuant to section 671 et seq. of the Code, the Treasury Regulations promulgated thereunder and the comparable provisions of any applicable state and local laws) in the event that the IRS were to successfully assert that the Disputed Claims Reserve is treated as a qualified

settlement fund within the meaning of Treasury Regulation section 1.468B-1. If the Disputed Claims Reserve were so treated as a grantor trust, any items of income, gain, deduction, loss and credit relating to the assets of the Disputed Claims Reserve shall be reported on Reorganized ASARCO's U.S. federal income tax return and, to the extent required, state and local tax returns and Reorganized ASARCO shall be responsible for the taxes due on such returns. The Disputed Claims Reserve will be liable for and pay any other taxes that may be imposed on it. For any calendar year for which the Disputed Claims Reserve is determined to be a grantor trust with respect to Reorganized ASARCO, the Parent's Plan Administrator will distribute to Reorganized ASARCO from the Disputed Claims Reserve within 30 days following the close of such calendar year (or with respect to calendar years prior to the Parent's Plan Administrator becoming aware that the Disputed Claims Reserve is so treated, promptly upon demand of Reorganized Asarco) an amount equal to the product of (x) the taxable income for such calendar year of the Disputed Claims Reserve (computed as if the Disputed Claims Reserve were a corporation for U.S. federal income tax purposes) and (y) the sum of (1) highest rate of tax imposed by section 11 of the Internal Revenue Code with respect to such calendar year and (2) five percent.

2.5     **Excess Funds in Parent's Plan Administration Account or Miscellaneous Parent's Plan Administration Accounts**. To the extent there are excess funds in the Parent's Plan Administration Account (or any sub-account thereof) or any Miscellaneous Parent's Plan Administration Account, the Parent's Plan Administrator shall make a Subsequent Distribution of such funds to Reorganized ASARCO.

2.6     **Investments**. The Parent's Plan Administrator shall invest the Cash held in the accounts established under Section 2.2 hereof in (a) direct obligations of the United States of America or obligations of any agency or instrumentality thereof which are guaranteed by the full faith and credit of the United States of America, (b) money market deposit accounts, checking accounts, savings accounts or certificates of deposit, or other time deposit accounts that are issued by a commercial bank or savings institution organized under the laws of the United States of America or any state thereof, or (c) any other investments that may be permissible under Section 345 of the Bankruptcy Code or any order of the Bankruptcy Court. Such investments shall mature in such amounts and at such times as the Parent's Plan Administrator shall deem appropriate to provide funds when needed to transfer funds or make payments in accordance with the Parent's Plan and this Agreement. The interest or other income earned on the investments of the Cash in any given reserve, account or escrow established pursuant to this Agreement, the Parent's Plan or any order of the Bankruptcy Court shall constitute a part of such reserve, account or escrow unless and until transferred or distributed pursuant to the terms of the Parent's Plan, this Agreement, or order of the Bankruptcy Court.

2.7     **Books and Records**. The Parent's Plan Administrator shall maintain appropriate books and records. On the Effective Date, the Parent's Plan Administrator shall have access to such books and records of the Debtors and Reorganized ASARCO (as applicable) useful or necessary to implement the Parent's Plan or this Agreement. Until the termination of this Agreement pursuant to Section 5.1 hereof (the **"Termination Date"**), the Parent's Plan Administrator shall retain the books, records and files which shall have been delivered to or created by the Parent's Plan Administrator. At any time after 180 days from the Termination

4

Date the Parent's Plan Administrator may give written notice to the Bankruptcy Court, the Parent, and any other parties-in-interest entitled to notice under the Confirmation Order that it intends to destroy the books, records and files delivered to or created by the Parent's Plan Administrator.  If, within 20 days thereafter, one of those parties-in-interest advises the Parent's Plan Administrator in writing that it objects to the proposed destruction of such books, records and files and such party-in-interest undertakes to pay the costs and expenses of transfer, then the Parent's Plan Administrator shall transfer the records to such party as may be directed by the Bankruptcy Court.  If no such party-in-interest makes a timely objection to the proposed destruction of such books, records and files as provided in the preceding sentence, then the Parent's Plan Administrator may destroy such books, records and files (unless such records and documents are necessary to fulfill any remaining obligations of the Parent's Plan Administrator pursuant to this Agreement).

      2.8     <u>Compliance with Tax Requirements</u>.

      a)     Reorganized ASARCO and the Parent's Plan Administrator shall comply with all applicable tax payments, withholding or reporting requirements imposed by any federal, state, local, or foreign taxing authorities.  All distributions hereunder or under any Parent's Plan Document shall be subject to applicable withholding and reporting requirements, if any.  Notwithstanding any provision of the Parent's Plan, each Person receiving a distribution pursuant to the Parent's Plan, or any other Parent's Plan Document, shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Authority, including income and other tax obligations, on account of that distribution.

      b)     The Parent's Plan Administrator will cooperate with Reorganized ASARCO in connection with the filing of any tax return or information return relating to the protective grantor trust election and the treatment of the Disputed Claims Reserve as a grantor trust as described in Section 2.4(g).  Further, as soon as practicable after the end of each calendar year, and as soon as practicable upon the termination of the Disputed Claims Reserve, the Parent's Plan Administrator shall submit to Reorganized ASARCO a statement setting forth, for federal income tax purposes, the items of income, gain, loss, deduction and credit of the Disputed Claims Reserve for such calendar year

      2.9     <u>Reports</u>.  Unless otherwise ordered by the Bankruptcy Court, the Parent's Plan Administrator shall be responsible for preparing, filing and serving (if applicable) all reports required by [the Parent's Plan,] this Agreement or applicable law, including:

      a)     <u>Reports to the Parent and Reorganized ASARCO</u>.  The Parent's Plan Administrator shall provide written reports on a monthly basis, or such other information as may be reasonably requested, to the Parent and Reorganized ASARCO as to budgets, Cash receipts and disbursements, asset sales or other dispositions, Claims reconciliations and Parent's Plan distributions.

      b)     <u>Reports to the U.S. Trustee</u>.  The Parent's Plan Administrator shall file and serve on the U.S. Trustee such periodic financial reports as may be

5

required by the U.S. Trustee until such time as a final decree is entered closing the Reorganization Cases or the Reorganization Cases are dismissed.

      c)      <u>Status Reports</u>.  The Parent's Plan Administrator shall file and serve upon the U.S. Trustee any periodic status report, closing report, application for final decree or other reports or applications in accordance with any postconfirmation order entered in the Reorganization Cases pursuant to Rule 3021-1 of the Local Bankruptcy Rules for the Southern District of Texas.

      2.10      <u>Fees</u>.  On the Effective Date, and thereafter as may be required, the Parent's Plan Administrator shall cause Reorganized ASARCO to pay all fees payable pursuant to Section 1930 of chapter 123 of title 28 of the United States Code through the entry of a final decree closing the applicable Debtors' and Reorganized ASARCO's cases.

      2.11      <u>Transactions with Related Persons</u>.  Notwithstanding any other provisions of this Agreement, the Parent's Plan Administrator shall not knowingly, directly or indirectly, sell or otherwise transfer all or any part of the assets that are placed in the Disputed Claims Reserve to, or contract with, (a) any relative, employee, or agent (acting in their individual capacities) of the Parent's Plan Administrator or the Parent or (b) any Person of which any employee or agent of the Parent's Plan Administrator or either Parent is an affiliate by reason of being a trustee, director, officer, partner, or direct or indirect beneficial owner of five percent (5%) or more of the outstanding capital stock, shares, or other equity interest of such persons unless, in each such case, after full disclosure of such interest or affiliation, such transaction is approved by the Bankruptcy Court and the Bankruptcy Court determines that the terms of such transaction are fair and reasonable to Reorganized ASARCO and no less favorable to Reorganized ASARCO than terms available for a comparable transaction with unrelated Persons.

      2.12      <u>Wind Down of Subsidiary Debtors</u>.  On the Effective Date, all assets of the Subsidiary Debtors other than the Subsidiary Debtor Assets shall be transferred to the Plan Administrator for the benefit of Reorganized ASARCO, free and clear of any and all Liens, Claims, encumbrances, or interests of any kind in such property of any Person or Entity except as provided in the Parent's Plan.  As soon as practicable after the Effective Date, the Plan Administrator shall liquidate all such assets of the Subsidiary Debtors other than the Subsidiary Debtor Assets and shall transfer the proceeds of such liquidation to Reorganized ASARCO free and clear of any and all Liens, Claims, encumbrances, or interests of any kind in such proceeds of any Person or Entity except as provided in the Parent's Plan.

      2.13      <u>No Other Duties</u>.  Other than the obligations of the Parent's Plan Administrator enumerated herein, under the Parent's Plan, under the Confirmation Order, and by operation of law, the Parent's Plan Administrator shall have no duties or obligations of any kind or nature respecting implementation of the Parent's Plan or this Agreement.

**ARTICLE III.**

**POWERS AND RIGHTS OF THE PARENT'S PLAN ADMINISTRATOR**

      3.1      <u>General</u>.  The Parent's Plan Administrator shall have all powers and rights enumerated below and in the Parent's Plan, including those rights and powers enumerated in

Articles X and XIII of the Parent's Plan. The enumeration of the following powers or those listed in Articles X and XIII of the Parent's Plan shall not be considered in any way to limit or control the power of the Parent's Plan Administrator to act as specifically authorized by any other section or provision of this Agreement, the Parent's Plan, the Confirmation Order or another Bankruptcy Court order.

3.2    Employees and Agents.  The Parent's Plan Administrator is empowered, subject to the oversight of the Parent: (a) to elect, appoint, engage, retain and employ any persons as agents, representatives, employees, professionals or independent contractors in one or more capacities as is reasonably necessary to enable the Parent's Plan Administrator to implement this Agreement and the Parent's Plan; (b) subject to Article 10.2 of the Parent's Plan, to pay fees to and to reimburse the expenses of those employees, agents or independent contractors elected, appointed, engaged, retained or employed by the Parent's Plan Administrator; (c) to indemnify the Parent's Plan Administrator's agents, professionals and employees from any loss (including reasonable attorneys' fees) incurred in connection with the execution and implementation of the Parent's Plan other than a loss due to the indemnified party's willful misconduct, gross negligence, recklessness or fraud; (d) to authorize the creation or assumption of employee benefits plans and arrangements for employees of the Parent's Plan Administrator to act as sponsor for and pay for any employee benefits under such plans or arrangements; and (e) to prescribe the titles, powers and duties, terms of service and other terms and conditions of the election, appointment, engagement, retention, or employment of such persons as are reasonable and appropriate.  The Parent's Plan Administrator shall serve without bond.

3.3    Insurance.  The Parent's Plan Administrator is hereby authorized to obtain all reasonably necessary insurance coverage for itself, its agents, representatives, employees or independent contractors, or Reorganized ASARCO, including, but not limited to, coverage with respect to (i) appropriate directors and officers liability insurance and other insurance coverage appropriate to the business in which Reorganized ASARCO is to be engaged, (ii) any property that is or may in the future become the property of the Disputed Claims Reserve and (iii) the liabilities, duties, and obligations of the Parent's Plan Administrator and its agents, representatives, employees or independent contractors under the Parent's Plan and this Agreement.

3.4    Protection of Assets.  The Parent's Plan Administrator is hereby authorized to do and to perform any and all acts necessary or appropriate for the conservation and protection of the assets of Reorganized ASARCO that are placed in the Disputed Claims Reserve, including acts or things necessary or appropriate to maintain assets held pending sale or other disposition or distribution thereof.

3.6    Additional Powers.  The Parent's Plan Administrator is hereby authorized, subject to the oversight of the Parent, to do all other acts and things not inconsistent with the provisions of the Parent's Plan or this Agreement that the Parent's Plan Administrator deems reasonably necessary or desirable with respect to implementing the Parent's Plan and this Agreement.

**ARTICLE IV.**

7

**THE PARENT'S PLAN ADMINISTRATOR**

4.1     Resignation; Removal.  The Parent's Plan Administrator may resign as Parent's Plan Administrator hereunder upon delivery of 30 days' written notice to Reorganized ASARCO and the Parent.  Any successor Parent's Plan Administrator shall be selected by Reorganized ASARCO and the Parent.  If a successor Parent's Plan Administrator has not been appointed by the end of such 30-day period, the Parent's Plan Administrator shall continue as Parent's Plan Administrator for up to an additional 30 days if so requested by Reorganized ASARCO and the Parent.  The Parent's Plan Administrator may be removed as Parent's Plan Administrator and its powers and responsibilities hereunder may be terminated at any time, with or without cause, upon delivery to it by Reorganized ASARCO and the Parent of written notice of such removal.  In such event, the Parent's Plan Administrator shall immediately begin transitioning responsibilities to the new Parent's Plan Administrator on a schedule approved by Reorganized ASARCO and the Parent.  If a new Parent's Plan Administrator has not been appointed prior to removal of the existing Parent's Plan Administrator, the existing Parent's Plan Administrator shall continue to serve as Parent's Plan Administrator for a period of up to 30 days until a new Parent's Plan Administrator is appointed, but shall take no actions on behalf of Reorganized ASARCO without the consent of Reorganized ASARCO and the Parent or an order of the Bankruptcy Court.  The removed Parent's Plan Administrator shall be compensated for services rendered during a transition to a new Parent's Plan Administrator.

4.2     Continuity.  Unless otherwise ordered by the Bankruptcy Court, the death, resignation, incompetence or removal of the Parent's Plan Administrator shall not operate to terminate, dissolve or remove any existing agency created pursuant to the terms of this Agreement or invalidate any action theretofore taken by the Parent's Plan Administrator.  In the event of the resignation or removal of the Parent's Plan Administrator, the Parent's Plan Administrator shall promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the Bankruptcy Court or the successor Parent's Plan Administrator.

4.3     Compensation.  The Parent's Plan Administrator shall be entitled to receive the compensation set forth in Schedule A hereto and shall be entitled to reimbursement of reasonable out-of-pocket expenses incurred in connection with performing its duties hereunder.  The Parent's Plan Administrator shall provide the Parent and its counsel with monthly bills for services performed and expenses to be reimbursed.  In the event the Parent or its counsel objects to the compensation or reimbursement being sought within ten (10) Business Days of service of the monthly bill, the matter shall be presented to the Bankruptcy Court for determination.  Upon the request of any party-in-interest or the Parent's Plan Administrator, the Bankruptcy Court after notice and hearing may, on a prospective basis, alter the amount, terms or conditions of the Parent's Plan Administrator's compensation.

4.4     Standard of Care, Indemnification and Exculpation.  The Parent's Plan Administrator shall be a fiduciary for Reorganized ASARCO, subject to the provisions hereof.  The Parent's Plan Administrator, its professionals and its employees shall not be personally liable to the holder of any Claim or Interest or to any other Person except for such of its or their own acts as shall constitute willful misconduct, gross negligence, recklessness or fraud.  Reorganized ASARCO shall indemnify and hold the Parent's Plan Administrator harmless from

8

and against any loss, claim, damages or expense incurred by it as a result of and in connection with serving as Parent's Plan Administrator, except to the extent resulting from its own willful misconduct, gross negligence, recklessness or fraud.  No indemnification payments shall be made to the Parent's Plan Administrator pursuant hereto, however, without the prior consent of the Parent and Reorganized ASARCO or pursuant to an order of the Bankruptcy Court.

> 4.5     Reliance by Parent's Plan Administrator.  The Parent's Plan Administrator may conclusively rely, and shall be fully protected personally in acting upon, any statement, instrument, opinion, report, notice, request, consent, order or other instrument or document which it believes to be genuine and to have been signed or presented by the proper party or parties.  The Parent's Plan Administrator may also conclusively rely on information provided to it by agents and employees of Reorganized ASARCO as applicable.  The Parent's Plan Administrator may consult with legal counsel and shall be fully protected from any liability except as set forth in Section 4.4 above in respect of any action taken or suffered by it in accordance with the opinion of legal counsel.  The Parent's Plan Administrator shall have the right at any time to seek instructions from the Bankruptcy Court concerning the acquisition, management or disposition of the assets of Reorganized ASARCO.

> 4.6     Reliance by Persons Dealing with the Parent's Plan Administrator.  In the absence of actual knowledge to the contrary, any person dealing with Reorganized ASARCO shall be entitled to rely on the authority of the Parent's Plan Administrator to act on behalf of Reorganized ASARCO with respect to the subject matter of this Agreement, and shall have no obligation to inquire into the existence of such authority.

## ARTICLE V.

## TERMINATION

> 5.1     Subject to further order of the Bankruptcy Court, this Agreement shall terminate on the earlier of (i) thirty (30) days after: (a) the final Subsequent Distribution under the Parent's Plan or (b) the date the order granting the final decree closing the last Reorganization Case that has not yet been closed becomes a Final Order, whichever is later; and (ii) the date any order dismissing the last Reorganization Case that has not yet been closed becomes a Final Order.

## ARTICLE VI.

## MISCELLANEOUS

> 6.1     Notices.  All notices, requests or other communications required or permitted to be made in accordance with this Agreement shall be in writing and shall be mailed by first class mail, or delivered by such other means that might be reasonable and appropriate under the circumstances:

        a)        Parent's Plan Administrator:
                  [_____]
                  [_____]
                  [_____]

b) Parent:
Americas Mining Corporation
ASARCO Incorporated
Attn: Jorge Lazalde Psihas
11811 North Tatum Blvd.
Suite 2500
Phoenix, AZ 85028

with a copy to:

Robert Jay Moore
Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP
601 South Figueroa Street, 30th Floor
Los Angeles, CA 90017
Telephone: (213) 892-4000
Facsimile: (213) 629-5063

Robert E. Winter
Milbank, Tweed, Hadley & M<sup>c</sup>Cloy LLP
1850 K Street, 11th Floor
Washington, DC 20006
Telephone: (202) 835-7500
Facsimile: (202) 835-7586

Charles A. Beckham, Jr.
Haynes and Boone, LLP
1 Houston Center
1221 McKinney, Suite 2100
Houston, Texas 77010
Telephone: (713) 547-2000
Facsimile: (713) 547-2600

c) Reorganized ASARCO:
[_____]
[_____]
[_____]

with a copy to:

[_____]
[_____]
[_____]

6.2 <u>Change of Address</u>. Any entity may change the address at which it is to receive notices under this Agreement by furnishing written notice to the parties listed in Section 6.1. Such change of address shall be effective ten (10) Business Days after service of such notice.

10

6.3     Effectiveness.  This Agreement shall become effective on the Effective Date.

6.4     Governing Law.  This Agreement shall be governed by, construed under and interpreted in accordance with the laws of the State of New York and, to the extent applicable, the Bankruptcy Code, without giving effect to any contrary result required under applicable conflict or choice of law rules.

6.5     Headings.  Sections, subheadings and other headings used in this Agreement are for convenience only and shall not affect the construction of this Agreement.

6.6     Amendments.  This Agreement may be amended from time to time by the Parent's Plan Administrator with the approval of the Bankruptcy Court after notice to the Parent and the U.S. Trustee and such hearing (if any) as the Bankruptcy Court may hold.

6.7     Meaning of Terms.  Except where the context otherwise requires, words importing the masculine gender include the feminine and the neuter, if appropriate, and words importing the singular number include the plural number and vice versa.

6.8     Conflict.  In the event of a conflict between the provisions of this Agreement and the provisions of the Parent's Plan, the provisions of the Parent's Plan shall govern.

6.9     Jurisdiction.  The Bankruptcy Court shall retain exclusive jurisdiction to hear and determine all conflicts concerning this Agreement and all matters related to the interpretation and implementation of this Agreement.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their authorized representatives effective for all purposes as of the Effective Date.

Parent's Plan Administrator

By: _____
    Name:
    Title:

ASARCO Incorporated

By: _____
    Name:
    Title:

Americas Mining Corporation

By: _____
    Name:
    Title:

Reorganized ASARCO

By: _____
    Name:
    Title:

## SCHEDULE A

**TERMS OF COMPENSATION AND REIMBURSEMENT OF EXPENSES OF [_____], AS PARENT'S PLAN ADMINISTRATOR (THE "PARENT'S PLAN ADMINISTRATOR") UNDER THE PARENT'S PLAN ADMINISTRATION AGREEMENT BETWEEN THE PARENT'S PLAN ADMINISTRATOR, ASARCO INCORPORATED, AMERICAS MINING CORPORATION AND REORGANIZING ASARCO**

**1.      COMPENSATION**

Beginning at the Effective Date, the Parent's Plan Administrator shall be compensated at the rate of $[_____] [per _____].

**2.      COMPUTATION OF HOURS; RECORDKEEPING**

The Parent's Plan Administrator shall maintain a record of its time expended in its capacity as Parent's Plan Administrator which shall include a brief description for such activities.  The record shall be available for inspection and copying by the Parent.  Beginning with the calendar month ending after the Effective Date, the Parent's Plan Administrator shall report to the Parent as to the amount of time so expended during the month and each month thereafter.

**3.      REIMBURSEMENT OF EXPENSES**

The Parent's Plan Administrator shall be entitled to reimbursement for reasonable expenses incurred in performing its duties as the Parent's Plan Administrator, and shall submit a report of said expenses with each report under Section 2 above.