**PARENT'S PLAN EXHIBIT 11**

**FORM OF SECTION 524(G) TRUST AGREEMENT**

**ASARCO LLC and certain related Debtors**

**ASBESTOS PERSONAL INJURY SETTLEMENT
TRUST AGREEMENT**

**ASARCO LLC and certain related Debtors**

**ASBESTOS PERSONAL INJURY SETTLEMENT TRUST AGREEMENT**

**TABLE OF CONTENTS**

SECTION 1 — Agreement of Trust ................................................................ 3

    1.1    Creation and Name ................................................................ 3
    1.2    Purpose ................................................................ 4
    1.3    Transfer of Assets ................................................................ 4
    1.4    Acceptance of Assets and Assumption of Liabilities ................................................................ 5
    1.5    Beneficial Owners ................................................................ 6

SECTION 2 — Powers and Trust Administration ................................................................ 7

    2.1    Powers ................................................................ 7
    2.2    General Administration ................................................................ 11
    2.3    Claims Administration ................................................................ 16

SECTION 3 — Accounts, Investments, and Payments ................................................................ 17

    3.1    Accounts ................................................................ 17
    3.2    Investments ................................................................ 18
    3.3    Source of Payments ................................................................ 20

SECTION 4 — Trustees; Delaware Trustee ................................................................ 20

    4.1    Number ................................................................ 20
    4.2    Term of Service ................................................................ 21
    4.3    Appointment of Successor Trustees ................................................................ 22
    4.4    Liability of Trustees, Members of the TAC and the FCR ................................................................ 22
    4.5    Compensation and Expenses of Trustees ................................................................ 24
    4.6    Indemnification ................................................................ 24
    4.7    Trustees' Lien ................................................................ 26
    4.8    Trustees' Employment of Experts; Delaware Trustee's Employment of Counsel ................................................................ 26
    4.9    Trustees' Independence ................................................................ 27
    4.10    Bond ................................................................ 27
    4.11    Delaware Trustee ................................................................ 27

SECTION 5 — Trust Advisory Committee ..................................................... 29

    5.1     Members ....................................................................... 29
    5.2     Duties .......................................................................... 29
    5.3     Term of Office .............................................................. 30
    5.4     Appointment of Successor ............................................. 30
    5.5     TAC's Employment of Professionals ............................. 31
    5.6     Compensation and Expenses of the TAC ...................... 33
    5.7     Procedures for Consultation With and Obtaining the
            Consent of the TAC ..................................................... 33
          (a)     Consultation Process ............................................. 33
          (b)     Consent Process .................................................... 34


SECTION 6 — The Future Claims' Representative ..................................... 35

    6.1     Duties .......................................................................... 35
    6.2     Term of Office .............................................................. 36
    6.3     Appointment of Successor ............................................. 36
    6.4     FCR's Employment of Professionals ............................. 37
    6.5     Compensation and Expenses of the Futures Representative .................. 38
    6.6     Procedures for Consultation with and Obtaining the
            Consent of the Futures Representative ........................... 39
          (a)     Consultation Process ............................................. 39
          (b)     Consent Process .................................................... 39

SECTION 7 — General Provisions ............................................................ 41

    7.1     Irrevocability ............................................................... 41
    7.2     Term; Termination ....................................................... 41
    7.3     Amendments ................................................................ 43
    7.4     Meetings ...................................................................... 43
    7.5     Severability ................................................................. 44
    7.6     Notices ........................................................................ 44
    7.7     Successors and Assigns ................................................ 46
    7.8     Limitation on Claim Interests for Securities Laws Purposes ................. 46
    7.9     Entire Agreement; No Waiver ...................................... 46
    7.10    Headings ...................................................................... 47
    7.11    Governing Law ............................................................ 47
    7.12    Settlors' Representative and Cooperation ...................... 48
    7.13    Dispute Resolution ....................................................... 48
    7.14    Enforcement and Administration .................................. 49
    7.15    Effectiveness ............................................................... 49
    7.16    Counterpart Signatures ................................................. 49

**ASARCO LLC and certain related Debtors**

**ASBESTOS PERSONAL INJURY SETTLEMENT TRUST AGREEMENT**

This ASARCO LLC Asbestos Personal Injury Settlement Trust Agreement (this "**Asbestos Trust Agreement**"), dated the date set forth on the signature page hereof and effective as of the Effective Date, is entered pursuant to the [ASARCO Incorporated and Americas Mining Corporation's Fifth Amended Plan of Reorganization for the Debtors Under Chapter 11 of the United States Bankruptcy Code dated June 22, 2009 (as it may be amended or modified, the "**Plan**")[1],] by ASARCO LLC, Lac d'Amiante du Québec Ltée, Lake Asbestos of Quebec, Ltd., LAQ Canada, Ltd., CAPCO Pipe Company, Inc., Cement Asbestos Products Company, Encycle, Inc., ASARCO Consulting, Inc., ALC, Inc., American Smelting and Refining Company, AR Mexican Explorations Inc., Asarco Master, Inc., Asarco Oil and Gas Company, Inc., Bridgeview Management Company, Inc., Covington Land Company, Government Gulch Mining Company, Limited, Southern Peru Holdings, LLC, AR Sacaton, LLC, a Delaware limited liability company, ASARCO Exploration Company, Inc.,  Wyoming Mining and Milling Company, Alta Mining and Development Company, Tulipan Company, Inc., Blackhawk Mining and Development Company, Limited, Peru Mining Exploration and Development Company, and Green Hill Cleveland Mining Company (collectively referred to as the "**Debtors**" or "**ASARCO**"), the debtors and debtors-in-possession whose Chapter 11 cases are jointly administered under Case No. 05-21207 in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division; the Future Claims' Representative (the "**FCR**"), and ASARCO Incorporated

---

[1] All capitalized terms not otherwise defined herein or in the TDP shall have their respective meanings as set forth in the Plan, and such definitions are incorporated herein by reference; *provided, however,* that unless otherwise stated, Unsecured Asbestos Personal Injury Claims shall include Demands and the definitions in the TDP of Unsecured Asbestos Personal Injury Claims and Asbestos Premises Liability Claims shall apply to this Asbestos Trust Agreement. All capitalized terms not defined herein or defined in the Plan, but defined in the Bankruptcy Code or Rules, shall have the meanings ascribed to them by the Bankruptcy Code and Rules, and such definitions are incorporated herein by reference.

and Americas Mining Corporation ("**Parent**" and collectively with the Debtors, "**Settlors**"); the Official Committee of the Subsidiary Debtors (the "**Asbestos Subsidiary Committee**"); the Official Committee of Asbestos Claimants (the "**Asbestos Claimants' Committee**"); the Trustees (the "**Trustees**"); Wilmington Trust Company (the "**Delaware Trustee**"); and the members of the Trust Advisory Committee (the "**TAC**") identified on the signature page hereof.

WHEREAS, as of the Petition Date, one or more of the Debtors had been named as a defendant in personal injury and/or wrongful death actions seeking recovery for damages allegedly caused by the presence of, or exposure to, asbestos or asbestos-containing products.

WHEREAS, the Debtors have reorganized under the provisions of Chapter 11 of the United States Bankruptcy Code in cases pending in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, jointly administered and known as In re ASARCO LLC *et al.*, Case No. 05-21207.

WHEREAS, on _____, the Bankruptcy Court entered an order confirming the Plan (the "Confirmation Order").

WHEREAS, on _____, the United States District Court for the Southern District of Texas, Corpus Christi Division, entered an order affirming the Confirmation Order and issuing the Permanent Channeling Injunction and the Asbestos Insurance Company Injunction.

WHEREAS, the Plan provides, *inter alia*, for the creation of the ASARCO Asbestos Personal Injury Settlement Trust ("**Asbestos Trust**").

WHEREAS, all Asbestos Personal Injury Claims are channeled to the Asbestos Trust pursuant to the Permanent Channeling Injunction.

WHEREAS, pursuant to the Plan, the Asbestos Trust is to use its assets and income to satisfy all Asbestos Personal Injury Claims.

- 2 -

WHEREAS, pursuant to the Plan, the Asbestos Trust shall be funded with the consideration described in [Article ___] of the Plan.

WHEREAS, it is the intent of ASARCO, the Parent, the Trustees, the Asbestos Subsidiary Committee, the Asbestos Claimants' Committee, the TAC, and the FCR that the Asbestos Trust be administered, maintained, and operated at all times as a QSF (as defined below) through mechanisms that provide reasonable assurance that the Asbestos Trust will satisfy all Asbestos Personal Injury Claims pursuant to the Plan and the ASARCO Asbestos Personal Injury Settlement Trust Distribution Procedures (the "**TDP**") that are attached hereto as Exhibit 1 in substantially the same manner, and in strict compliance with the terms of this Asbestos Trust Agreement and the TDP.

WHEREAS, any rights of the holders of Asbestos Personal Injury Claims arising under this Asbestos Trust Agreement and the TDP shall vest on the Effective Date.

WHEREAS, pursuant to the Plan, the Asbestos Trust is intended to qualify as a "qualified settlement fund"  ("QSF") within the meaning of section 1.468B-1 *et seq.* of the Treasury Regulations promulgated under section 468B of the Internal Revenue Code (the "**QSF Regulations**"), for which no grantor trust election has been made.

WHEREAS, the Bankruptcy Court has determined that the Asbestos Trust and the Plan satisfy all the prerequisites for the injunctions pursuant to Section 524(g) of the Bankruptcy Code, and the injunctions have been entered in connection with the Confirmation Order;

NOW, THEREFORE, it is hereby agreed as follows:

# SECTION I

## AGREEMENT OF TRUST

**1.1**  **Creation and Name.**  The Settlors hereby create a trust known as the "ASARCO Asbestos Personal Injury Settlement Trust," which is the Asbestos Trust provided for and referred to in the Plan.  The Trustees of the Asbestos Trust may transact the business and affairs of the Asbestos Trust in the name of the ASARCO Asbestos Trust or the Asbestos Trust, and references herein to the Asbestos Trust shall include a Trustee or Trustees acting on behalf of the Trust.  It is the intention of the parties that the trust created hereby constitutes a statutory trust under Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. § 3801 et seq. (the "**Act**") and that this document, the TDP and the Asbestos Trust Bylaws described herein constitute the governing instruments of the Asbestos Trust.  The Trustees and the Delaware Trustee are hereby authorized and directed to execute and file a Certificate of Trust with the Delaware Secretary of State in the form attached hereto.

**1.2**  **Purpose.**  The purpose of the Asbestos Trust is to assume all liabilities and responsibility for all Asbestos Personal Injury Claims and, among other things to:  (a) direct the processing, liquidation and payment of all Asbestos Personal Injury Claims in accordance with the Plan, the TDP and the Confirmation Order; (b) preserve, hold, manage and maximize the assets of the Asbestos Trust for use in paying and satisfying Asbestos Personal Injury Claims; and (c) qualify at all times as a QSF (for which no grantor trust election has been made).  The Asbestos Trust is to use the Asbestos Trust's assets and income to pay the holders of Asbestos Premises Liability Claims from applicable Asbestos Insurance Policies to the extent of coverage and to pay the holders of all other Asbestos Premises Liability Claims and all Unsecured Asbestos Personal Injury Claims in accordance with this Asbestos Trust Agreement and the TDP in such a way that

- 4 -

the holders of  Asbestos Personal Injury Claims are treated fairly, equitably and reasonably in light of the finite assets available to satisfy such claims, and to otherwise comply in all respects with the requirements of a trust set forth in Section 524(g)(2)(B) of the Bankruptcy Code.

**1.3**     **Transfer of Assets.**  Pursuant to [Article ____] of the Plan, the Reorganized Debtors have transferred the Asbestos Trust Assets to fund the Asbestos Trust and to settle, discharge or channel all Asbestos Personal Injury Claims.  Pursuant to the Plan, Reorganized ASARCO, from and after the Effective Date, may transfer and assign additional assets to the Asbestos Trust.  In all events, the Asbestos Trust Assets or any other assets to be transferred to the Asbestos Trust under the Plan will be transferred to the Asbestos Trust free and clear of any liens or other claims by the Debtors, Reorganized Debtors, the Parent, any creditor, or other entity.  The Debtors, the Reorganized Debtor, the Parent, and any other transferors shall also execute and deliver such documents to the Asbestos Trust as the Trustees reasonably request to transfer and assign any Asbestos Trust Assets to the Asbestos Trust.

**1.4**     **Acceptance of Assets and Assumption of Liabilities.**

        (a)     In furtherance of the purposes of the Asbestos Trust, the Asbestos Trust expressly accepts the transfer to the Asbestos Trust of the Asbestos Trust Assets and any other transfers contemplated by the Plan in the time and manner as contemplated in the Plan.

        (b)     In furtherance of the purposes of the Asbestos Trust, the Asbestos Trust expressly assumes all liabilities and responsibility for all Asbestos Personal Injury Claims, and, except as otherwise provided in the Plan or Confirmation Order, neither the Reorganized Debtors, the Debtors nor the Parent shall have any further financial or other responsibility or liability therefor.  Notwithstanding the foregoing, the Reorganized Debtors and the Parent retain their financial and other responsibility and liability, if any, to the Asbestos Trust as provided in

the Plan. Except as otherwise provided in this Asbestos Trust Agreement and the TDP, the Asbestos Trust shall have all defenses, cross-claims, offsets, and recoupments, as well as rights of indemnification, contribution, subrogation, and similar rights, regarding such claims that the Debtors or the Reorganized Debtors have or would have had under applicable law. Regardless of the foregoing, however, a claimant must meet otherwise applicable federal, state and foreign statutes of limitations and repose, except as otherwise provided in Section 5.1(a)(2) of the TDP.

(c)     No provision herein or in the TDP shall be construed or implemented in a manner that would cause the Asbestos Trust to fail to qualify as a QSF under the QSF Regulations (for which no grantor trust election has been made).

(d)     The Asbestos Trust shall protect, defend, indemnify and hold harmless, to the fullest extent permitted by applicable law, each ASARCO Protected Party from and against any Asbestos Personal Injury Claims and any related damages, including indemnification from the Asbestos Trust for any expenses, costs, and fees (including attorneys' fees and costs, but excluding any such expenses, costs, and fees incurred prior to the Effective Date), judgments, settlements, or other liabilities arising from or incurred in connection with any action related to Asbestos Personal Injury Claims, including, but not limited to, indemnification or contribution for such claims prosecuted against the Reorganized Debtor. The foregoing shall not apply or constitute a limitation on coverage under any Asbestos Insurance Policies.

(e)     Nothing in this Asbestos Trust Agreement shall be construed in any way to limit (i) the scope, enforceability, or effectiveness of the Permanent Channeling Injunction issued under Section 524(g) in connection with the Plan or (ii) subject to the provisions of Section 1.4(b) above, the Asbestos Trust's assumption of all liability for Unsecured Asbestos Personal Injury Claims and Asbestos Premises Liability Claims.

### 1.5    Beneficial Owners

To the extent required by the Act, the beneficial owners (within the meaning of the Act) of the Asbestos Trust shall be deemed to be the holders of Asbestos Personal Injury Claims (the "Beneficial Owners of the Asbestos Trust"); *provided* that the holders of  Asbestos Premises Liability Claims, as such Beneficial Owners of the Asbestos Trust, shall have only the rights with respect to the Asbestos Trust and its assets as are set forth in the TDP, and no greater or other rights, including upon dissolution, liquidation or winding up of the Asbestos Trust, shall be deemed to apply or be available to the holders of Asbestos Personal Injury Claims in their capacity as Beneficial Owners of the Asbestos Trust.

**SECTION II**

**POWERS AND TRUST ADMINISTRATION**

**2.1    Powers.**

(a)    The Trustees are and shall act as the fiduciaries to the Asbestos Trust in accordance with the provisions of this Asbestos Trust Agreement and the Plan.  The Trustees shall, at all times, administer the Asbestos Trust and the Asbestos Trust Assets in accordance with the purposes set forth in Section 1.2.  Subject to the limitations set forth in this Asbestos Trust Agreement and the TDP, the Trustees shall have the power to take any and all actions that, in the reasonable judgment of the Trustees, are necessary or proper to fulfill the purposes of the Asbestos Trust, including, without limitation, each power expressly granted in this Section 2.1, any power reasonably incidental thereto, and any trust power now or hereafter permitted under the laws of the State of Delaware.

(b)       Except as required by applicable law or otherwise specified herein, the Trustees need not obtain the order or approval of any court in the exercise of any power or discretion conferred hereunder.

(c)       Without limiting the generality of Section 2.1(a), and except as limited below, the Trustees shall have the power to:

(i)       receive and hold the Asbestos Trust Assets and exercise all rights with respect thereto, including the right to vote and sell any securities that are included in the Asbestos Trust Assets;

(ii)       invest the monies held from time to time by the Asbestos Trust;

(iii)       sell, transfer, or exchange any or all of the Asbestos Trust Assets at such prices and upon such terms as the Trustees may consider proper, consistent with the other terms of this Asbestos Trust Agreement, the Plan and Plan Documents;

(iv)       exercise all rights and powers granted to the Trustees and/or the Asbestos Trust by, under or pursuant to the TDP,  the Plan Administration Agreement, if any, or any other applicable Plan Document;

(v)       enter into leasing agreements with third parties to the extent such agreements are reasonably necessary to permit the Asbestos Trust to operate;

(vi)       pay liabilities and expenses of the Asbestos Trust;

(vii)       establish such funds, reserves and accounts within the Asbestos Trust estate, as deemed by the Trustees to be necessary or useful in carrying out the purposes of the Asbestos Trust;

(viii)       sue and be sued and participate, as a party or otherwise, in any judicial, administrative, arbitrative, or other proceeding;

(ix)     establish, supervise and administer the Asbestos Trust in accordance with this Asbestos Trust Agreement and the TDP and the terms thereof;

(x)     appoint officers, hire employees and engage legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors and agents as the purposes of the Asbestos Trust require, and delegate to such persons the powers and authorities as the fiduciary duties of the Trustees permit and as the Trustees, in their discretion, deem advisable or necessary in order to carry out the terms of this Asbestos Trust;

(xi)     pay employees, legal, financial, accounting, investment, auditing, forecasting, and other consultants, advisors, and agents, including those engaged by the Asbestos Trust in connection with its alternative dispute resolution activities, reasonable compensation;

(xii)     compensate the Trustees, the Delaware Trustee, the TAC members, and the FCR as provided below, and their employees, legal, financial, accounting, investment and other advisors, consultants, independent contractors, and agents for services rendered in connection with the performance of the duties of the Trustees, Delaware Trustee, the TAC members and the FCR hereunder, and reimburse the Trustees, the Delaware Trustee, the TAC members and the FCR for all reasonable out-of-pocket costs and expenses incurred by them in connection with the performance of their duties hereunder;

(xiii)     execute and deliver instruments as the Trustees consider proper in administering the Asbestos Trust;

(xiv)     enter into other arrangements with third parties as are deemed by the Trustees to be useful in carrying out the purposes of the Asbestos Trust, provided the arrangements do not conflict with any other provision of this Asbestos Trust Agreement or the TDP;

(xv)     in accordance with Section 4.6, defend, indemnify and hold harmless (and purchase insurance indemnifying) (A) the Trustees, the Delaware Trustee, the members of the TAC and the FCR, and (B) the officers and employees of the Asbestos Trust, and any legal, financial, accounting, investment, auditing, forecasting, and other agents, advisors and consultants of the Asbestos Trust, the TAC or the FCR (the "**Additional Indemnitees**"), to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and/or insure its directors, trustees, officers, employees, agents, advisors, consultants and representatives;

(xvi)    delegate any or all of the authority herein conferred with respect to the investment of all or any portion of the Asbestos Trust Assets to any one or more reputable individuals or recognized institutional investment advisors or investment managers without liability for any action taken or omission made because of any delegation, except as provided in Section 4.4;

(xvii)   consult with the TAC and the FCR, from time to time, on issues relating to the conduct of the Asbestos Trust as the Trustees consider desirable; and

(xviii)  make, pursue (by litigation or otherwise), collect, compromise or settle, in the name of the Asbestos Trust or in the name of Reorganized ASARCO, any claim, right, action, or cause of action included in the Asbestos Trust Assets, including, but not limited to, insurance recoveries, before any court of competent jurisdiction.

(d)     The Trustees shall not have the power to guarantee any debt of other persons.

(e)     The Trustees agree to take the actions of the Asbestos Trust required hereunder.

(f)     The Trustees shall give the TAC and the FCR prompt notice of any act performed or taken pursuant to Sections 2.1(c)(i), (iii), (iv), (viii), or (xvi), and any act proposed to be performed or taken pursuant to Section 2.2(f).

**2.2     General Administration.**

(a)     The Trustees shall act in accordance with the Asbestos Trust Agreement. The Trustees shall adopt and act in accordance with the Asbestos Trust Bylaws.  To the extent not inconsistent with the terms of this Asbestos Trust Agreement, the Asbestos Trust Bylaws shall govern the affairs of the Asbestos Trust.  In the event of an inconsistency between the Asbestos Trust Bylaws and this Asbestos Trust Agreement, this Asbestos Trust Agreement shall govern.

(b)     The Trustees shall be the "administrator" of the Asbestos Trust, within the meaning of Treasury Regulation Section 1.468B-2(k)(3) and shall (i) timely file income tax and other returns and statements and timely pay all taxes required to be paid by the Asbestos Trust using assets of the Asbestos Trust; (ii) comply with all applicable tax reporting and withholding obligations imposed on the Asbestos Trust or the Trustees (in their capacity as Trustees); (iii) satisfy all requirements necessary to qualify and maintain qualification of the Asbestos Trust as a qualified settlement fund within the meaning of the QSF Regulations; (iv) take no action that could cause the Asbestos Trust to fail to qualify as a QSF within the meaning of the QSF Regulations; (v) take no action that could cause the Asbestos Trust to be treated as a grantor trust for federal income tax purposes; and (vi) within seventy-five (75) days (or earlier if required by law) after the end of each calendar year, cause to be prepared and mailed information as required by law to enable payees to complete and file each of their respective federal, state and local

income and other tax returns. The Trustees also shall provide a copy of any filed tax return of the Asbestos Trust to the TAC and the FCR when the return is filed.

(c)     The Trustees shall timely account to the Bankruptcy Court as follows:

(i)     The Trustees shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "**Annual Report**") containing financial statements of the Asbestos Trust (including, without limitation, a balance sheet of the Asbestos Trust as of the end of the fiscal year and a statement of operations for the fiscal year) audited by a firm of independent certified public accountants selected by the Trustees and accompanied by an opinion of the firm as to the fairness of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles or, at the option of the Trustees on advice of the independent certified public accountants, with special purpose accounting methods.  Special purpose accounting methods may be adopted to communicate to the beneficiaries of the Trust the net claimants' equity and the related operating expenses of the Trust.  In the event of the use of special purpose accounting methods, the independent certified public accountants may include a statement to the effect that since the financial statements and transactions are not based on generally accepted accounting principles, accounting treatment by other parties for the same transactions may differ as to timing and amount. In addition, the financial statements should contain by note the Trustees' best estimate of future liability for Unsecured Asbestos Personal Injury Claims.  The Trustees shall provide a copy of the Annual Report to the TAC and the FCR when the Annual Report is filed with the Bankruptcy Court.

(ii)     Simultaneously with the filing of the Annual Report, the Trustees shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary of the number and type of claims and the amount paid in respect to the claims disposed of during the period covered by the financial statements.  The Trustees shall provide a copy of the report to the TAC and the FCR when the report is filed.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court.

(d)     The Trustees shall cause to be prepared as soon as practicable prior to the commencement of each fiscal year a budget and cash flow projections covering the fiscal year and the succeeding four fiscal years.  The budget and cash flow projections shall include a determination of the Maximum Annual Payment pursuant to Section 2.4 of the TDP and the Claims Payment Ratio pursuant to Section 2.5 of the TDP.  The Trustees shall provide a copy of the budget and cash flow projections to the TAC and the FCR.

(e)     The Trustees shall consult with the TAC and the FCR (i) on the general implementation and administration of the Asbestos Trust; (ii) on the general implementation and administration of the TDP; and (iii) on other matters as may be required under this Asbestos Trust Agreement and the TDP.

(f)     The Trustees shall be required to obtain the consent of the TAC and the FCR pursuant to the Consent Process set forth in Sections 5.7(b) and 6.6(b), in addition to any other instances elsewhere enumerated, in order to take any of the following actions:

(i)     to redetermine the Payment Percentage described in Section 2.3 of the TDP and as provided in Section 4.2 of the TDP;

- 13 -

(ii)      to change the Claims Payment Ratio described in Section 2.5 of the TDP in the event that the requirements for a change as set forth in Section 2.5 of the TDP have been met;

(iii)      to change the Disease Levels, Scheduled Values and/or Medical/Exposure Criteria set forth in Section 5.3(a)(3) of the TDP, and/or the Average Values and/or Maximum Values set forth in Section 5.3(b)(3) and Section 5.4(a) of the TDP;

(iv)      to establish and/or to change the Claims Materials to be provided to holders of  Asbestos Personal Injury Claims under Section 6.1 of the TDP;

(v)      to require that claimants provide additional kinds of medical evidence pursuant to Section 7.1 of the TDP;

(vi)      to change the form of release to be provided pursuant to Section 7.8 of the TDP;

(vii)      to terminate the Asbestos Trust pursuant to Section 7.2;

(viii)      to settle the liability of any insurer under any insurance policy or legal action related thereto;

(ix)      to change the compensation and/or per diem of the members of the TAC, the FCR, the Delaware Trustee or the Trustees, other than to reflect cost-of-living increases or changes provided under this Asbestos Trust Agreement or approved by the Bankruptcy Court;

(x)      to take actions to minimize any tax on the Asbestos Trust Assets; provided that no such action prevents the Asbestos Trust from qualifying as a QSF within the meaning of the QSF Regulations or requires an election for the Asbestos Trust to be treated as a grantor trust for tax purposes;

- 14 -

(xi)     to adopt the Asbestos Trust Bylaws in accordance with Section 2.2(a) or thereafter to amend the Asbestos Trust Bylaws in accordance with the terms thereof;

(xii)    to amend any provision of this Asbestos Trust Agreement or the TDP in accordance with the terms thereof;

(xiii)   to vote the stock, if any, of a Reorganized Debtor for purposes of appointing members of the Board of Directors of a Reorganized Debtor or to appoint members of the Plan Administration Committee, if any;

(xiv)    to acquire an interest in or to merge any claims resolution organization formed by the Asbestos Trust with another claims resolution organization that is not specifically created by this Asbestos Trust Agreement or the TDP, or to contract with another claims resolution organization or other entity that is not specifically created by this Asbestos Trust Agreement or the TDP, or permit any other party to join in any claims resolution organization that is formed by the Asbestos Trust pursuant to the Asbestos Trust Agreement or the TDP; provided that a merger, acquisition, contract or joinder shall not (a) subject the Reorganized Debtors, or any successors in interest thereto, to any risk of having any Asbestos Personal Injury Claim asserted against it or them, or (b) otherwise jeopardize the validity or enforceability of the Permanent Channeling Injunction issued pursuant to Section 524(g); and provided further that the terms of a merger will require the surviving organization to make decisions about the allowability and value of claims in accordance with Section 2.1 of the TDP which requires that decisions be based on the provisions of the TDP; or

(xv)     to disclose any information, documents, or other materials to preserve, litigate, resolve, or settle coverage, or to comply with an applicable obligation under an insurance policy or settlement agreement pursuant to Section 6.5 of the TDP.

- 15 -

(g)    The Trustees shall meet with the TAC and the FCR no less often than quarterly.  The Trustees shall meet in the interim with the TAC and the FCR when requested by either.

(h)    The Trustees, upon notice from either the TAC or the FCR, if practicable in view of pending business, shall at their next meeting with the TAC or the FCR or, if appropriate, at a specially called meeting, place on the agenda and consider issues submitted by the TAC or the FCR.

(i)    For all purposes of this Asbestos Trust Agreement and the Act, the consent of the TAC and the FCR shall be deemed the consent of the Beneficial Owners of the Asbestos Trust.

(j)    Periodically, but not less often than once a year, the Trustees shall make available to Asbestos Personal Injury Claimants and other interested parties the number of Asbestos Personal Injury Claims by Disease Level that have been resolved both by individual review and by alternative dispute resolution procedures, as well as by trial, indicating the amounts of the awards and the averages of the awards by jurisdiction.

(k)    The Asbestos Trust shall be subject to the continuing jurisdiction of the Bankruptcy Court, within the meaning of the QSF Regulations.

(l)    Notwithstanding anything to the contrary in this Asbestos Trust Agreement, the Asbestos Trust and the Trustees are not authorized to engage in any trade or business, for federal income tax purposes, with respect to the Asbestos Trust or the assets thereof except to the extent reasonably necessary (in the good faith judgment of the Trustees) to effect the processing, liquidation, and payment of the Asbestos Personal Injury Claims.

**2.3    <u>Claims Administration</u>.**  The Trustees shall promptly proceed to implement the TDP.

## SECTION III

## ACCOUNTS, INVESTMENTS, AND PAYMENTS

**3.1**    **Accounts.**

(a)    The assets of the Asbestos Trust shall be used to pay Asbestos Personal Injury Claims.  The Asbestos Trust may, from time to time, create funds, accounts and reserves within the Asbestos Trust estate as the Trustees may deem necessary, prudent, or useful in order to provide for the payment of Asbestos Trust Expenses and Asbestos Personal Injury Claims and may, with respect to any other fund, account or reserve, restrict the use of monies therein.  To the extent of coverage, Asbestos Premises Liability Claims shall be paid pursuant to the applicable terms and conditions of the Asbestos Insurance Policies that are the subject of CIP Agreements and the TDP.

(b)    The Trustees shall include a reasonably detailed description of the creation of any account or reserve in accordance with this Section 3.1 and, with respect to any account, the transfers made to the account, the proceeds of or earnings on the assets held in each account and the payments from each account in the reports to be filed with the Bankruptcy Court and provided to the TAC and the FCR pursuant to Section 2.2(c)(i).

**3.2**    **Investments.**  Investment of monies held in the Asbestos Trust shall be administered in a manner consistent with the standards set forth in the Uniform Prudent Investor Act drafted by the National Conference of Commissioners on Uniform State Laws and approved by the American Bar Association on February 14, 1995, subject to the following limitations and provisions:

(a)    The Asbestos Trust shall not acquire or hold any equity securities unless the equity portfolio is invested in either or a combination of the following:  (i) diversified equity funds of large capitalization companies which may be included in, but not necessarily limited to,

- 17 -

such indices as the S&P 500, Russell 1000, FTSE 100, DAX 100, and MSCI EAFE with no rating criteria, or (ii) any individual company or business enterprise preferred stock or convertible securities if such stock or securities are rated "Baa1" or higher by Moody's Investor Services, Inc. ("**Moody's**"), "BBB+" or higher by Standard & Poor's ("**S&P**"), or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency.  Provided, however, the Asbestos Trust shall not acquire, directly or indirectly, equity in any entity (other than a Reorganized Debtor or any successor to a Reorganized Debtor) or business enterprise if, immediately following the acquisition, the Asbestos Trust would hold more than 5% of the equity in the entity or business enterprise, and further provided that the Asbestos Trust shall not hold, directly or indirectly, more than 10% of the equity in any entity (other than a Reorganized Debtor or any successor to a Reorganized Debtor) or business enterprise.

(b)     The Asbestos Trust shall not acquire or hold any long-term debt securities, including promissory notes unless (i) the securities are Asbestos Trust Assets under the Plan, (ii) the securities, including promissory notes, are rated "Baa1" or higher by Moody's, "BBB+" or higher by S&P and are not on "negative watch" (or other appellation indicating that the debt is under review for a possible downgrade) at the applicable agency, or have been given an equivalent investment grade rating by another nationally recognized statistical rating agency, or (iii) the securities have been issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(c)     The Asbestos Trust may acquire any issue which is a direct or indirect obligation of any state, county, city or other qualifying government entity.  A short term issue

may be rated no lower than "MIG 1" or "SP-1"; a long-term issue may be rated no lower than "A" by Moody's or S&P.

(d)     The Asbestos Trust shall not acquire or hold any commercial paper unless the commercial paper is rated "Prime-1" or higher by Moody's or "A-1" or higher by S&P, or has been given an equivalent rating by another nationally recognized statistical rating agency.

(e)     The Asbestos Trust may invest in a money market fund if the fund has the highest rating obtained from either Moody's or S&P.

(f)     The Asbestos Trust shall not acquire any debt securities, equity or other instruments issued by any entity if, following the acquisition, the aggregate fair market value of all debt securities, equity and instruments issued by the entity held by the Asbestos Trust would exceed 5% of the then current aggregate value of the Asbestos Trust's assets.  There is no limitation on holding debt securities or other instruments issued or fully guaranteed as to principal and interest by the United States of America or any agency or instrumentality thereof.

(g)     The Asbestos Trust shall not acquire or hold any certificates of deposit, time deposits, bankers' acceptances or other instruments unless all publicly held, long-term debt securities, if any, of the financial institution issuing the certificate of deposit, time deposit, banker's acceptance or other instrument and the holding company, if any, of which the financial institution is a subsidiary, meet the standards set forth in Section 3.2(b).

(h)     The Asbestos Trust may acquire and hold any securities or instruments issued by a Reorganized Debtor or any successor to a Reorganized Debtor or obtained as proceeds of litigation or otherwise to resolve disputes, without regard to the limitations set forth in Subsections (a)-(g).

(i)     The Asbestos Trust shall not acquire or hold any repurchase obligations unless, in the opinion of the Trustees, they are adequately collateralized.

(j)     The Asbestos Trust may allow its investment managers to acquire prudently or hold derivative instruments, including, but not limited to, options, futures and swaps in the normal course of portfolio management.  Specifically, the Asbestos Trust may acquire or hold derivatives to help manage or mitigate portfolio risk, including but not limited to, interest rate risk and equity market risk.  Using derivative instruments to leverage a portfolio to enhance returns (at a much greater risk to the portfolio) is prohibited.

(k)     The Asbestos Trust may lend securities on a short-term basis, subject to adequate, normal and customary collateral arrangements.

(l)     Notwithstanding Section 3.2(a), the Asbestos Trust may acquire and hold an equity interest in a claims resolution organization without limitation as to the size of the equity interest acquired and held if prior to the acquisition, the Asbestos Trust complies with the provisions of Section 2.2(f)(xv) with respect to the acquisition.

**3.3     Source of Payments.**

(a)     Asbestos Trust Expenses and payments with respect to Asbestos Personal Injury Claims shall be payable solely by the Trustees out of the Asbestos Trust Assets or investments and proceeds therefrom.  Neither the Debtors, the Reorganized Debtors, the Parent, their subsidiaries, any successor in interest, the present or former directors, officers, employees or agents of the Debtors or the Reorganized Debtors, the Parent,, nor the Trustees, the TAC or FCR, or any of their officers, agents, advisors, or employees shall be liable for the payment of any Asbestos Trust Expense or any other Liability of the Asbestos Trust.

(b)     The Trustees shall include in the Annual Report a reasonably detailed description of any payments made in accordance with this Section 3.3.

## SECTION IV

## TRUSTEES; DELAWARE TRUSTEE

**4.1     Number.**  In addition to the Delaware Trustee appointed pursuant to Section 4.11, there shall be three (3) Trustees who shall be those persons named on the signature page hereof.

**4.2     Term of Service.**

(a)     The initial Trustees named pursuant to Article 4.1 shall serve  staggered terms of three (3), four (4) and five (5) years shown on the signature pages hereof.  Thereafter each term of service shall be five (5) years.  The initial Trustees shall serve from the Effective Date until the earlier of (i) the end of his or her term, (ii) his or her death, (iii) his or her resignation pursuant to Section 4.2(b), (iv) his or her removal pursuant to Section 4.2(c), or (v) the termination of the Asbestos Trust pursuant to Section 7.2.

(b)     A Trustee may resign at any time by written notice to the remaining Trustees, the TAC and the FCR.  The notice shall specify a date when the resignation shall take effect, which shall not be less than ninety (90) days after the date notice is given, where practicable.

(c)     A Trustee may be removed (i) by unanimous vote of the remaining Trustees with the consent and approval of the TAC and FCR or (ii) at the recommendation of the remaining Trustees or the TAC and the FCR with the approval of the Bankruptcy Court, in the event that the Trustee becomes unable to discharge the Trustee's duties hereunder due to accident or physical or mental deterioration, or for other good cause.  Good cause shall be deemed to include, without limitation, any substantial failure to comply with the general

- 21 -

administration provisions of Section 2.2, a consistent pattern of neglect and failure to perform or participate in performing the duties of the Trustees hereunder, or repeated non-attendance at scheduled meetings.  Removal under (i) shall take effect at the time the remaining Trustees, the TAC and the FCR jointly determine. Removal under (ii) shall take effect as determined by the Bankruptcy Court.

**4.3**     **Appointment of Successor Trustees.**

(a)     In the event of a vacancy in the position of a Trustee, whether by death, term expiration, resignation or removal, the remaining Trustees shall consult with the TAC and the FCR concerning appointment of a successor Trustee.  The vacancy shall be filled by the unanimous vote of the remaining Trustees with the consent of the TAC and the FCR.  In the event that the remaining Trustees cannot agree on a successor Trustee, or the TAC or the FCR does not consent to the appointment of a successor Trustee, the Bankruptcy Court shall make the appointment.  Nothing shall prevent the reappointment of a Trustee for an additional term or terms, and there shall be no limit on the number of terms that a Trustee may serve.

(b)     Immediately upon the appointment of any successor Trustee, all rights, titles, duties, powers and authority of the predecessor Trustee hereunder shall be vested in, and undertaken by, the successor Trustee without any further act.  No successor Trustee shall be liable personally for any act or omission of the predecessor Trustees.

(c)     Each successor Trustee shall serve until the earlier of (i) the end of a  full term of five (5) years if the predecessor Trustee completed the Trustee's term, (ii) the end of the remainder of the term of the predecessor Trustee if the predecessor Trustee did not complete the term, (iii) the Trustee's death, (iv) the Trustee's resignation pursuant to Section 4.2(b), (v) the

Trustee's removal pursuant to Section 4.2(c), or (vi) the termination of the Asbestos  Trust pursuant to Section 7.2.

**4.4**      <u>**Liability of Trustees, Members of the TAC and the Futures Representative.**</u>

    (a)      The Trustees, the members of the TAC and the FCR shall not be liable to the Asbestos Trust, to any individual holding an Unsecured Asbestos Personal Injury Claim or an Asbestos Premises Liability Claim, or to any other person, except for the individual's own breach of trust committed in bad faith or willful misappropriation.  This protection from liability may, in the discretion of the Trustees, be extended to the legal, financial, accounting, investment, auditing, forecasting, and other agents, advisors or consultants of the Asbestos Trust, TAC and FCR.

    (b)      To the extent that, at law or in equity, the Trustees, the Delaware Trustee, a member of the TAC or the FCR, in his or her capacity as such, has duties (including fiduciary duties) and liabilities to the Asbestos Trust, any Beneficial Owner of the Asbestos Trust or any other Person (as defined in the Act), the Trustee, the Delaware Trustee, TAC member or the FCR acting under this Asbestos Trust Agreement shall not be liable to the Asbestos Trust, any Beneficial Owner of the Asbestos Trust or any other Person (as defined in the Act) for his or her good faith reliance on the provisions of the Asbestos Trust Agreement except as provided in Section 4.4(a).  The provisions of the Asbestos Trust Agreement, to the extent that they restrict or eliminate the duties and liabilities of the Trustees, the Delaware Trustee, the members of the TAC or the FCR otherwise existing at law or equity, are agreed by the parties hereto to replace the other duties and liabilities of the Trustees, the Delaware Trustee, the members of the TAC and the FCR.

(c)     Notwithstanding any other provision of the Asbestos Trust Agreement or otherwise applicable law, whenever in the Asbestos Trust Agreement the Trustees, the Delaware Trustee, the TAC members and the FCR are permitted or required to make a decision in their "*good faith*" or under another express standard, the actions of the Trustees, the Delaware Trustee, the TAC members and the FCR shall be evaluated under the express standard and shall not be subject to any other or different standard.

**4.5     Compensation and Expenses of Trustees.**

(a)     Each Trustee shall receive compensation from the Asbestos Trust for services as a Trustee in the amount of $60,000.00 per annum, which amount shall be payable in quarterly installments on January 1st, April 1st, July 1st and October 1st, or as soon thereafter as practicable, beginning with the first such date after the Effective Date.  In addition, for all time expended attending Trust meetings, preparing for Trust meetings, and working on Trust business or authorized Trust projects, the Trustees shall receive the sum of $550 per hour, computed on a quarter-hour basis.  The Trustees shall record all hourly time to be charged to the Trust on a daily basis.  The per annum and hourly compensation payable to the Trustees hereunder shall be reviewed every year by the Trustees and, after consultation with the members of the TAC and the FCR, appropriately adjusted by the Trustees for changes in the cost of living.  Any changes in compensation of the Trustees other than cost of living adjustments shall be made subject to the approval of the Bankruptcy Court.  The Delaware Trustee shall be paid compensation pursuant to a separate fee agreement.

(b)     The Asbestos Trust will promptly reimburse the Trustees and the Delaware Trustee for all reasonable out-of-pocket costs and expenses incurred by the Trustees or

the Delaware Trustee in connection with the performance of their duties hereunder, following submission of appropriate documentation evidencing payment of costs or expenses.

(c)    The Asbestos Trust shall include a description of the amounts paid under this Section 4.5 in the Annual Report.

**4.6    <u>Indemnification</u>.**

(a)    The Asbestos Trust shall indemnify and defend the Trustees, the Delaware Trustee, the members of the TAC and the FCR in the performance of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment, or funding of the Asbestos Trust.  The Asbestos Trust may indemnify any of the Additional Indemnitees in the performance of their duties hereunder to the fullest extent that a statutory trust organized under the laws of the State of Delaware is from time to time entitled to indemnify and defend such persons against any and all liabilities, expenses, claims, damages or losses incurred by them in the performance of their duties hereunder or in connection with activities undertaken by them prior to the Effective Date in connection with the formation, establishment or funding of the Asbestos Trust. Notwithstanding the foregoing, no individual shall be indemnified or defended in any way for any liability, expense, claim, damage, or loss for which the individual is ultimately liable under Section 4.4.

(b)    Reasonable expenses, costs and fees (including attorneys' fees and costs) incurred by or on behalf of a Trustee, the Delaware Trustee, a member of the TAC, the FCR or

Additional Indemnitee in connection with any action, suit, or proceeding, whether civil, administrative or arbitrative, from which they are indemnified by the Asbestos Trust pursuant to Section 4.6(a), shall be paid by the Asbestos Trust in advance of the final disposition thereof upon receipt of an undertaking, by or on behalf of the Trustee, the Delaware Trustee, the members of the TAC, the FCR or Additional Indemnitee, to repay the amount in the event that it shall be determined ultimately by final order that the Trustee, the Delaware Trustee, member of the TAC, the FCR or Additional Indemnitee is not entitled to be indemnified by the Asbestos Trust.

(c)     The Trustees may purchase and maintain reasonable amounts and types of insurance on behalf of an individual who is or was a Trustee, the Delaware Trustee, member of the TAC, the FCR or Additional Indemnitee, including against liability asserted against or incurred by the individual in that capacity or arising from the individual's status as a Trustee, the Delaware Trustee, TAC member, FCR, an officer or an employee of the Asbestos Trust, or an advisor, consultant or agent of the Asbestos Trust, the TAC or the FCR.

**4.7**     **Trustees' Lien.**  The Trustees, the Delaware Trustee, the members of the TAC, the FCR and the Additional Indemnitees shall have a first priority lien upon the Asbestos Trust assets to secure the payment of any amounts payable to them pursuant to Section 4.6.  The Asbestos Trust shall take actions as may be necessary or reasonably requested by any of the Trustees, the Delaware Trustee, members of the TAC, the FCR and any of the other Additional Indemnitees to evidence the first priority lien, including, without limitation, filing appropriate financing statements.

**4.8**     **Trustees' Employment of Experts; Delaware Trustee's Employment of Counsel.**

(a)     The Trustees may, but shall not be required to, retain and/or consult with counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors and other persons deemed by the Trustees to be qualified as experts on the matters submitted to them (the "**Trust Professionals**"), and in the absence of gross negligence, the written opinion of or information provided by any Trust Professional deemed by the Trustees to be an expert on the particular matter submitted to the Trust Professional shall be full and complete authorization and protection in respect of any action taken or not taken by the Trustees hereunder in good faith and in accordance with the written opinion of or information provided by any Trust Professional.

(b)     The Delaware Trustee shall be permitted to retain counsel as required in the exercise of its obligations hereunder and compliance with the advice of counsel shall be full and complete authorization and protection for actions taken or not taken by the Delaware Trustee in good faith in compliance with the advice.

**4.9**     **Trustees' Independence.**  The Trustees shall not, during the term of their service, hold a financial interest in, act as attorney or agent for, or serve as any other professional for a Reorganized Debtor.  Notwithstanding the foregoing, any Trustee may serve, without any additional compensation other than the hourly compensation to be paid by the Asbestos Trust pursuant to Section 4.5(a), as a director of the Litigation Trust, if any,, or pursuant to the Plan Administration Agreement, if any, or other Plan Document.  No Trustee shall act as an attorney for any person who holds an Asbestos Personal Injury Claim.  For the avoidance of doubt, this Section 4.9 shall not be applicable to the Delaware Trustee.

**4.10**     **Bond.**  The Trustees and the Delaware Trustee shall not be required to post any bond or other form of surety or security unless otherwise ordered by the Bankruptcy Court.

**4.11**     **Delaware Trustee.**

(a)     There shall at all times be a Delaware Trustee.  The Delaware Trustee shall either be (i) a natural person who is at least 21 years of age and a resident of the State of Delaware or (ii) a legal entity that has its principal place of business in the State of Delaware, otherwise meets the requirements of applicable Delaware law and shall act through one or more persons authorized to bind the entity.  If at any time the Delaware Trustee shall cease to be eligible in accordance with the provisions of this Section 4.11, it shall resign immediately in the manner and with the effect hereinafter specified in Section 4.11(c).  For the avoidance of doubt, the Delaware Trustee will only have the rights and obligations expressly provided by reference to the Delaware Trustee hereunder.

(b)     The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Trustees set forth herein.  The Delaware Trustee shall be one of the trustees of the Asbestos Trust for the sole and limited purpose of fulfilling the requirements of Section 3807 of the Act and for taking actions required to be taken by a Delaware Trustee under the Act.  The duties (including fiduciary duties), liabilities and obligations of the Delaware Trustee shall be limited to (i) accepting legal process served on the Asbestos Trust in the State of Delaware and (ii) the execution of any certificates required to be filed with the Secretary of State of the State of Delaware that the Delaware Trustee is required to execute under Section 3811 of the Act and there shall be no other duties (including fiduciary duties) or obligations, express or implied, at law or in equity, of the Delaware Trustee.

(c)     The Delaware Trustee shall serve until removed by the Trustees or the Delaware Trustee resigns and a successor Delaware Trustee is appointed by the Trustees in accordance with the terms of Section 4.11(d).  The Delaware Trustee may resign at any time

- 28 -

upon the giving of at least sixty (60) days advance written notice to the Trustees; provided, that any resignation shall not become effective unless and until a successor Delaware Trustee shall have been appointed by the Trustees in accordance with Section 4.11(d).  If the Trustees do not act within the 60-day period, the Delaware Trustee may apply to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee.

(d)     Upon the resignation or removal of the Delaware Trustee, the Trustees shall appoint a successor Delaware Trustee by delivering a written instrument to the outgoing Delaware Trustee.  Any successor Delaware Trustee must satisfy the requirements of Section 3807 of the Act.  Any resignation or removal of the Delaware Trustee and appointment of a successor Delaware Trustee shall not become effective until a written acceptance of appointment is delivered by the successor Delaware Trustee to the outgoing Delaware Trustee and the Trustees and any fees and expenses due to the outgoing Delaware Trustee are paid.  Following compliance with the preceding sentence, the successor Delaware Trustee shall become fully vested with all of the rights, powers, duties and obligations of the outgoing Delaware Trustee under this Asbestos Trust Agreement, with like effect as if originally named as the Delaware Trustee, and the outgoing Delaware Trustee shall be discharged of its duties and obligations under this Asbestos Trust Agreement.

## SECTION V

## TRUST ADVISORY COMMITTEE

**5.1     Members.**  The TAC shall consist of five (5) members, who shall initially be the persons named on the signature page hereof.

**5.2     Duties.**  The members of the TAC shall serve in a fiduciary capacity representing all holders of present Unsecured Asbestos Personal Injury Claims and Asbestos Premises Liability

Claims.  The Trustees must consult with the TAC on matters identified in Section 2.2(e) and in other provisions herein, and must obtain the consent of the TAC on matters identified in Section 2.2(f).  Where provided in the TDP, certain other actions by the Trustees are also subject to the consent of the TAC.

**5.3**      **Term of Office.**

(a)      The initial members of the TAC appointed in accordance with Section 5.1 shall serve the staggered three-, four-, or five-year terms shown on the signature pages hereof.  Thereafter, each term of office shall be five (5) years.  Each member of the TAC shall serve until the earlier of (i) the member's death, (ii) the member's resignation pursuant to Section 5.3(b), (iii) the member's removal pursuant to Section 5.3(c), (iv) the end of the member's term as provided above, or (v) the termination of the Asbestos Trust pursuant to Section 7.2.

(b)      A member of the TAC may resign at any time by written notice to the other members of the TAC, the Trustees and the FCR.  The notice shall specify a date when the resignation shall take effect, which shall not be less than ninety (90) days after the date notice is given, where practicable.

(c)      A member of the TAC may be removed in the event that the member becomes unable to discharge the member's duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties of the member hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.  Removal shall be made at the recommendation of the remaining members of the TAC with the approval of the Bankruptcy Court.

**5.4**      **Appointment of Successor.**

(a)     If, prior to the termination of service of a member of the TAC other than as a result of removal, the member has designated in writing an individual to succeed the member as a member of the TAC, the designated individual shall be the member's successor. If the member of the TAC did not designate an individual to succeed the member prior to the termination of the member's service as contemplated above, the member's law firm may designate the member's successor. If (i) a member of the TAC did not designate an individual to succeed the member prior to the termination of the member's service and the member's law firm does not designate the member's successor as contemplated above or (ii) the member is removed pursuant to Section 5.3(c), the member's successor shall be appointed by a majority of the remaining members of the TAC or, if a majority of the remaining members of the TAC cannot agree on a successor, the Bankruptcy Court.  Nothing in this Asbestos Trust Agreement shall prevent the reappointment of an individual serving as a member of the TAC for an additional term or terms, and there shall be no limit on the number of terms that a TAC member may serve.

(b)     Each successor TAC member shall serve until the earlier of (i) the end of the full term of five (5) years for which the member was appointed if the member's immediate predecessor member of the TAC completed the predecessor member's term, (ii) the end of the term of the predecessor member if the predecessor member did not complete the term (iii)  the member's death, (iv) the member's resignation pursuant to Section 5.3(b), (v) the member's removal pursuant to Section 5.3(c), or (vi) the termination of the Asbestos Trust pursuant to Section 7.2.

**5.5     TAC's Employment of Professionals.**

(a)     The TAC may but is not required to retain and/or consult counsel, accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and

other persons deemed by the TAC to be qualified as experts on matters submitted to the TAC (the "**TAC Professionals**").  The TAC and the TAC Professionals shall at all times have complete access to the Asbestos Trust's officers, employees and agents, as well as to the Trust Professionals, and shall also have complete access to all information generated by them or otherwise available to the Asbestos Trust or the Trustees except that any information provided by the Trust Professionals shall not constitute a waiver of any applicable privilege.  In the absence of gross negligence, the written opinion of or information provided by any TAC Professional or Trust Professional deemed by the TAC to be qualified as an expert on the particular matter submitted to the TAC shall be full and complete authorization and protection in support of any action taken or not taken by the TAC in good faith and in accordance with the written opinion of or information provided by the TAC Professional or Trust Professional.

(b)     The Asbestos Trust shall promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of legal counsel pursuant to this provision in connection with the TAC's performance of its duties hereunder.  The Asbestos Trust shall also promptly reimburse, or pay directly if so instructed, the TAC for all reasonable fees and costs associated with the TAC's employment of any other TAC Professional pursuant to this provision in connection with the TAC's performance of its duties hereunder; provided, however, that (i) the TAC has first submitted to the Asbestos Trust a written request for reimbursement setting forth the reasons (A) why the TAC desires to employ the TAC Professional, and (B) why the TAC cannot rely on Trust Professionals to meet the need of the TAC for the expertise or advice, and (ii) the Asbestos Trust has approved the TAC's request for reimbursement in writing.  If the Asbestos Trust agrees to pay for the TAC Professional, the reimbursement shall be treated as an Asbestos Trust Expense.  If the Asbestos

Trust declines to pay for the TAC Professional, it must set forth its reasons in writing.  If the TAC still desires to employ the TAC Professional at Trust expense, the TAC and/or the Trustees shall resolve their dispute pursuant to Section 7.13.

**5.6**     **Compensation and Expenses of the TAC.**

The members of the TAC shall receive compensation from the Asbestos Trust for their services as TAC members at the rate of [$____ ] per hour for attendance at Asbestos Trust meetings and for the conduct of other Asbestos Trust business.  The Asbestos Trust will promptly reimburse the members of the TAC for all reasonable out-of-pocket costs and expenses incurred by the members of the TAC in connection with the performance of their duties hereunder.  The members of the TAC shall record all hourly time to be charged to the Trust on a daily basis.  The hourly compensation payable to the members of the TAC hereunder shall be reviewed every year by the Trustees and, after consultation with the members of the TAC and the FCR, appropriately adjusted by the Trustees for changes in the cost of living.  Any changes in compensation of the TAC other than cost of living adjustments shall be subject to the approval of the Bankruptcy Court. The reimbursement or direct payment provided hereunder shall be deemed an Asbestos Trust Expense.  The Asbestos Trust shall include a description of the amounts paid under this Section 5.6 in the Annual Report to be filed with the Bankruptcy Court and provided to the FCR and the TAC pursuant to Section 2.2(c)(i).

**5.7**     **Procedures for Consultation With and Obtaining the Consent of the TAC.**

(a)     **Consultation Process.**

(i)     In the event the Trustees are required to consult with the TAC pursuant to Section 2.2(e) or on other matters as provided herein or in the TDP, the Trustees shall provide the TAC with written advance notice of the matter under consideration and with

all relevant information concerning the matter as is reasonably practicable under the circumstances.  The Trustees shall also provide the TAC with reasonable access to the Trust Professionals and other experts retained by the Asbestos Trust and its staff (if any) as the TAC may reasonably request during the time that the Trustees are considering the matter, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on the matter with the Trustees.

(ii)    In determining when to take definitive action on any matter subject to the consultation procedures set forth in this Section 5.7(a), the Trustees shall take into consideration the time required for the TAC, if its members so wish, to engage and consult with its own independent financial or investment advisors as to the matter.  In any event, the Trustees shall not take definitive action on any matter subject to the consultation procedures set forth in this Section 5.7(a) until at least thirty (30) days after providing the TAC with the initial written notice that the matter is under consideration by the Trustees, unless the time period is waived or reduced by the TAC.

(b)    **Consent Process.**

(i)    In the event the Trustees are required to obtain the consent of the TAC pursuant to Section 2.2(f) or on any other matters specified herein or in the TDP, the Trustees shall provide the TAC with a written notice stating that their consent is being sought, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take the action.  The Trustees shall provide the TAC as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustees shall also provide the TAC with reasonable access to the Trust Professionals and other experts retained by the Asbestos Trust and

its staff (if any) as the TAC may reasonably request during the time that the Trustees are considering the action, and shall also provide the TAC the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on the action with the Trustees.

(ii)     The TAC must consider in good faith and in a timely fashion any request for its consent by the Trustees, and must in any event advise the Trustees in writing of its consent or its objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustees, unless the period is waived or reduced by the TAC or the TAC advises the Trustees of its consent or objection at a duly noticed Trust meeting with the TAC and FCR.  The TAC may not withhold its consent unreasonably.  If the TAC decides to withhold its consent, it must explain in detail its objections to the proposed action.  If the TAC does not advise the Trustees in writing of its consent or its objections to the action within thirty (30) days of receiving notice regarding the request, the TAC's consent to the proposed action shall be deemed to have been affirmatively granted.

(iii)     Except as otherwise provided in this Asbestos Trust Agreement or in the TDP, the TAC shall act by majority vote.

(iv)     If, after following the procedures specified in this Section 5.7(b), the TAC continues to object to the proposed action and to withhold its consent to the proposed action, the Trustees and the TAC shall resolve their dispute pursuant to Section 7.13.  However, the burden of proof with respect to the validity of the TAC's objection and withholding of its consent shall be on the TAC.

## SECTION VI

## THE FUTURE CLAIMS REPRESENTATIVE

**6.1**     **Duties.**   The initial FCR shall be the individual identified on the signature pages hereto.  The FCR shall serve in a fiduciary capacity, representing the interests of the holders of future Unsecured Asbestos Personal Injury Claims and Asbestos Premises Liability Claims for the purpose of protecting the rights of those persons.  The Trustees must consult with the FCR on matters identified in Section 2.2(e) and on certain other matters provided herein, and must obtain the consent of the FCR on matters identified in Section 2.2(f).  Where provided in the TDP, certain other actions by the Trustees are also subject to the consent of the FCR.

**6.2**     **Term of Office.**

(a)     The FCR shall serve until the earlier of (i) the FCR's death, (ii) the FCR's resignation pursuant to Section 6.2(b), (iii) the FCR's removal pursuant to Section 6.2(c), or (iv) the termination of the Asbestos Trust pursuant to Section 7.2.

(b)     The FCR may resign at any time by written notice to the Trustees.  The notice shall specify a date when the resignation shall take effect, which shall not be less than ninety (90) days after the date notice is given, where practicable.

(c)     The FCR may be removed by the Bankruptcy Court in the event the FCR becomes unable to discharge the FCR's duties hereunder due to accident, physical deterioration, mental incompetence, or a consistent pattern of neglect and failure to perform or to participate in performing the duties hereunder, such as repeated non-attendance at scheduled meetings, or for other good cause.

**6.3**     **Appointment of Successor.**  A vacancy caused by death or resignation shall be filled with an individual nominated prior to the effective date of the resignation or the death by the

resigning or deceased FCR, and a vacancy caused by removal of the FCR or by death or

resignation without pre-selection shall be filled with an individual nominated by the Trustees in

consultation with the TAC, subject, in each case, to the approval of the Bankruptcy Court.  In the

event a majority of the Trustees cannot agree, the successor shall be chosen by the Bankruptcy

Court.

      6.4    **FCR's Employment of Professionals.**

      (a)    The FCR may, but is not required to, retain and/or consult counsel,

accountants, appraisers, auditors, forecasters, experts, financial and investment advisors, and such

other parties deemed by the FCR to be qualified as experts on matters submitted to the FCR (the

"**FCR Professionals**").  The FCR and the FCR Professionals shall at all times have complete

access to the Asbestos Trust's officers, employees and agents, as well as to the Trust

Professionals, and shall also have complete access to all information generated by them or

otherwise available to the Asbestos Trust or the Trustees provided that any information provided

by the Trust Professionals shall not constitute a waiver of any applicable privilege.  In the absence

of gross negligence, the written opinion of or information provided by any FCR Professional or

Trust Professional deemed by the FCR to be qualified as an expert on the particular matter

submitted to the FCR shall be full and complete authorization and protection in support of any

action taken, or not taken, by the FCR in good faith and in accordance with the written opinion of

or information provided by the FCR Professional or Trust Professional.

      (b)    The Asbestos Trust shall promptly reimburse, or pay directly if so

instructed, the FCR for all reasonable fees and costs associated with the FCR's employment of

legal counsel pursuant to this provision in connection with the FCR's performance of the FCR's

duties hereunder.  The Asbestos Trust shall also promptly reimburse, or pay directly if so

instructed, the FCR for all reasonable fees and costs associated with the FCR's employment of any other FCR Professionals pursuant to this provision in connection with the FCR's performance of the FCR's duties hereunder; provided, however, that (i) the FCR has first submitted to the Asbestos Trust a written request for reimbursement setting forth the reasons (A) why the FCR desires to employ the FCR Professional, and (B) why the FCR cannot rely on Trust Professionals to meet the need of the FCR for the expertise or advice, and (ii) the Asbestos Trust has approved the FCR's request for reimbursement in writing.  If the Asbestos Trust agrees to pay for the FCR Professional, the reimbursement shall be treated as an Asbestos Trust Expense. If the Asbestos Trust declines to pay for the FCR Professional, it must set forth its reasons in writing.  If the FCR still desires to employ the FCR Professional at Trust expense, the FCR and/or the Trustees shall resolve their dispute pursuant to Section 7.13.

      **6.5**    **Compensation and Expenses of the Future Claims Representative.**  The FCR shall receive compensation from the Asbestos Trust for services as the FCR at the rate of [$\_\_\_\_] per hour for attendance at Asbestos Trust meetings or for the conduct of other Asbestos Trust business.  The Asbestos Trust will promptly reimburse the FCR for all reasonable out-of-pocket costs and expenses incurred by the FCR in connection with the performance of the FCR's duties hereunder. The FCR shall record all hourly time to be charged to the Trust on a daily basis.  The hourly compensation payable to the FCR hereunder shall be reviewed every year by the Trustees and, after consultation with the members of the TAC and the FCR, appropriately adjusted by the Trustees for changes in the cost of living.  Any changes in compensation of the FCR other than cost of living adjustments shall be made subject to the approval of the Bankruptcy Court.  The reimbursement or direct payment provide hereunder shall be deemed an Asbestos Trust Expense.  The Asbestos Trust shall include a description of the amounts paid

under this Section 6.5 in the Annual Report to be filed with the Bankruptcy Court and provided to the FCR and the TAC pursuant to Section 2.2(c)(i).

      **6.6**    **Procedures for Consultation with and Obtaining the Consent of the Future Claims Representative.**

      (a)    **Consultation Process.**

      (i)    In the event the Trustees are required to consult with the FCR pursuant to Section 2.2(e) or on any other matters specified herein or in the TDP, the Trustees shall provide the FCR with written advance notice of the matter under consideration, and with all relevant information concerning the matter as is reasonably practicable under the circumstances. The Trustees shall also provide the FCR with reasonable access to the Trust Professionals and other experts retained by the Asbestos Trust and its staff (if any) as the FCR may reasonably request during the time that the Trustees are considering the matter, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on the matter with the Trustees.

      (ii)    In determining when to take definitive action on any matter subject to the consultation process set forth in this Section 6.6(a), the Trustees shall take into consideration the time required for the FCR, if the FCR so wishes, to engage and consult with the FCR's own independent financial or investment advisors as to the matter.  In any event, the Trustees shall not take definitive action on the matter until at least thirty (30) days after providing the FCR with the initial written notice that the matter is under consideration by the Trustees, unless the period is waived or reduced by the FCR.

      (b)    **Consent Process.**

      (i)    In the event the Trustees are required to obtain the consent of the FCR pursuant to Section 2.2(f) or on any other matters specified herein or in the TDP, the

Trustees shall provide the FCR with a written notice stating that the FCR's consent is being sought pursuant to that provision, describing in detail the nature and scope of the action the Trustees propose to take, and explaining in detail the reasons why the Trustees desire to take the action.  The Trustees shall provide the FCR as much relevant additional information concerning the proposed action as is reasonably practicable under the circumstances.  The Trustees shall also provide the FCR with reasonable access to the Trust Professionals and other experts retained by the Asbestos Trust and its staff (if any) as the FCR may reasonably request during the time that the Trustees are considering the action, and shall also provide the FCR the opportunity, at reasonable times and for reasonable periods of time, to discuss and comment on the action with the Trustees.

    (ii)  The FCR must consider in good faith and in a timely fashion any request for the FCR's consent by the Trustees, and must in any event advise the Trustees in writing of the FCR's consent or objection to the proposed action within thirty (30) days of receiving the original request for consent from the Trustees, unless the period is waived or reduced by the FCR or the FCR advises the Trustees of the FCR's consent or objection at a duly noticed Trust meeting with the TAC and FCR.  The FCR may not withhold the FCR's consent unreasonably.  If the FCR decides to withhold consent, the FCR must explain in detail the FCR's objections to the proposed action.  If the FCR does not advise the Trustees in writing of the FCR's consent or objections to the proposed action within thirty (30) days of receiving the notice from the Trustees regarding the proposed action, the FCR's consent shall be deemed to have been affirmatively granted.

    (iii)  If, after following the procedures specified in this Section 6.6(b), the FCR continues to object to the proposed action and to withhold the FCR's consent to the

proposed action, the Trustees and the FCR shall resolve their dispute pursuant to Section 7.13. However, the burden of proof with respect to the validity of the FCR's objection and withholding of his or her consent shall be on the FCR.

**SECTION VII**

**GENERAL PROVISIONS**

**7.1**     **Irrevocability.**  To the fullest extent permitted by applicable law, the Asbestos Trust is irrevocable.

**7.2**     **Term; Termination.**

(a)     The term for which the Asbestos Trust is to exist shall commence on the date of the filing of the Certificate of Trust and shall terminate pursuant to the provisions of Section 7.2.

(b)     The Asbestos Trust shall automatically dissolve on the date (the "**Dissolution Date**") ninety (90) days after the first to occur of the following events:

(i)     the date on which the Trustees decide to dissolve the Asbestos Trust because (A) they deem it unlikely that new asbestos claims will be filed against the Asbestos Trust, (B) all Asbestos Personal Injury Claims duly filed with the Asbestos Trust have been liquidated and paid to the extent provided in this Asbestos Trust Agreement and the TDP or have been disallowed by Final Orders, to the extent possible based upon the funds available through the Plan, and (C) twelve (12) consecutive months have elapsed during which no new asbestos claim has been filed with the Asbestos Trust; or

(ii)     if the Trustees have procured and have in place irrevocable insurance policies and have established claims handling agreements and other necessary arrangements with suitable third parties adequate to discharge all expected remaining obligations

- 41 -

and expenses of the Asbestos Trust in a manner consistent with this Asbestos Trust Agreement and the TDP, the date on which the Bankruptcy Court enters an order approving the insurance and other arrangements and the order of the Bankruptcy Court becomes a Final Order; or

(iii)     to the extent that any rule against perpetuities shall be deemed applicable to the Asbestos Trust, the date on which twenty-one (21) years less ninety-one (91) days pass after the death of the last survivor of all of the descendants of the late Joseph P. Kennedy, Sr., father of the late President John F. Kennedy, living on the date hereof.

(c)     On the Dissolution Date or as soon as reasonably practicable, after the wind-up of the Asbestos Trust's affairs by the Trustees and payment of all the Asbestos Trust's liabilities (including without limitation Asbestos Trust Expenses) has been provided for as required by applicable law including Section 3808 of the Act, all monies remaining in the Asbestos Trust estate shall be given to organization(s) exempt from federal income tax under section 501(c)(3) of the Internal Revenue Code, which tax-exempt organization(s) shall be selected by the Trustees using their reasonable discretion; provided, however, that (i) if practicable, the activities of the selected tax-exempt organization(s) shall be related to the treatment of, research on, or the relief of suffering of individuals suffering from asbestos related lung disease or disorders, and (ii) the tax-exempt organization(s) shall not bear any relationship to the Reorganized Debtors, AMC, ASARCO USA Incorporated, the Parent, their successors, or their Affiliates within the meaning of section 468B(d)(3) of the Internal Revenue Code. Notwithstanding any contrary provision of the Plan and related documents, this Section 7.2(c) cannot be modified or amended.

(d)     Following the dissolution and distribution of the assets of the Asbestos Trust, the Asbestos Trust shall terminate and the Trustees, or any one of them, shall execute and

cause a Certificate of Cancellation of the Certificate of Trust of the Asbestos Trust to be filed in accordance with the Act.  Notwithstanding anything to the contrary contained in this Asbestos Trust Agreement, the existence of the Asbestos Trust as a separate legal entity shall continue until the filing of such Certificate of Cancellation.

**7.3**     **Amendments.**  The Trustees, after consultation with the TAC and the FCR, and subject to the unanimous consent of the TAC and the FCR, may modify or amend this Asbestos Trust Agreement and the Asbestos Trust Bylaws.  The Trustees, after consultation with the TAC and the FCR, and subject to the consent of the TAC and the FCR, may modify or amend the TDP; provided, however, that no amendment to the TDP shall be inconsistent with the provisions limiting amendments to that document provided therein, and in particular the provisions limiting amendment of the Claims Payment Ratio set forth in Section 2.5 of the TDP and of the Payment Percentage set forth in Section 4.2 of the TDP.  Any modification or amendment made pursuant to this Section 7.3 must be done in writing.  Notwithstanding anything contained in this Asbestos Trust Agreement or the TDP to the contrary, neither this Asbestos Trust Agreement, the Asbestos Trust Bylaws, the TDP, nor any document annexed to the foregoing shall be modified or amended in any way that could jeopardize, impair, or modify the applicability of section 524(g) of the Bankruptcy Code to the Plan and the Confirmation Order, the efficacy or enforceability of the injunctions entered thereunder, or the status of the Asbestos Trust as a QSF under the QSF Regulations for which no grantor trust election has been made.

**7.4**     **Meetings.**  The Delaware Trustee shall not be required nor permitted to attend meetings of the Asbestos Trust.

**7.5**     **Severability.**  Should any provision in this Asbestos Trust Agreement be determined to be unenforceable, that determination shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this Asbestos Trust Agreement.

**7.6**     **Notices.**  Notices to persons asserting Asbestos Personal Injury Claims shall be given by first class mail, postage prepaid, at the address of the claimant, or, where applicable, the claimant's legal representative, in each case as provided on the claim form submitted to the Asbestos Trust or on the complaint served on the Asbestos Trust with respect to the UAsbestos Personal Injury Claim or by such other means, including electronic notice, as may be agreed between the Asbestos Trust and the Unsecured Asbestos Personal Injury Claimant.

(a)     Any notices or other communications required or permitted hereunder to the following parties shall be in writing and delivered at the addresses designated below, or sent by e-mail or facsimile pursuant to the instructions listed below, or mailed by registered or certified mail, return receipt requested, postage prepaid, addressed as follows, or to another address or addresses as may hereafter be furnished in writing to each of the other parties listed below in compliance with the terms hereof.

To the Asbestos Trust through the Trustees:

[TO COME]

To the Delaware Trustee:

Wilmington Trust Company
1100 N. Market Street
Wilmington, DE 19890-1625
Attention:  Corporate Custody

[presumes Wilmington Trust retained as Delaware Trustee—place holder]

To the TAC:

[TO COME]

To the FCR:

Hon. Robert C. Pate
Frost Bank Plaza
802 North Carancahua, Suite 1350
Corpus Christi, Texas 78470-0165
Telephone:  (361) 888-8413
Facsimile:  (361) 887-6207
Email:  judgepate@swbell.net

With a copy to:

John H. Tate, II
Oppenheimer, Blend, Harrison, & Tate, Inc.
711 Navarro, Sixth Floor
San Antonio, Texas 78205
Telephone:  (210) 224-2000
Facsimile:  (210) 224-7540
Email:  JTate@obht.com

To the Reorganized Debtors:

c/o Plan Administrator

[Any corporate person?]


With a copy to:

Shelby A. Jordan
Jordan, Hyden, Womble, Culbreath & Holzer, P.C.
Bank of America, Suite 900
500 North Shoreline
Corpus Christi, Texas 78471
Telephone:  (361) 884-5678
Facsimile:  (361) 888-5555
Email:  sjordan@jhwclaw.com

and

Jack L. Kinzie
Baker Botts L.L.P.
2001 Ross Avenue
Dallas, Texas 75201-2980

Telephone:  (214) 953-6500
Facsimile:  (214) 661-6503
Email:  jack.kinzie@bakerbotts.com

To the Parent: [INSERT]

(b)      All notices and communications if mailed shall be effective when physically delivered at

the designated addresses or, if electronically transmitted, when the communication is received at

the designated addresses and confirmed by the recipient by return transmission or by electronic

delivery confirmation.

**7.7      Successors and Assigns.**  The provisions of this Asbestos Trust Agreement shall be

binding upon and inure to the benefit of the Debtors, the Parent, the Asbestos Trust, the Trustees

and the Reorganized Debtors, and their respective successors and assigns, except that neither the

Debtors, the Parent, the Asbestos Trust, the Trustees nor the Reorganized Debtors may assign or

otherwise transfer any of its, or their, rights or obligations, if any,  under this Asbestos Trust

Agreement except, in the case of the Asbestos Trust and the Trustees, as contemplated by

Section 2.1.

**7.8      Limitation on Claim Interests for Securities Laws Purposes.**  Asbestos Personal

Injury Claims, and any interests therein, (a) shall not be assigned, conveyed, hypothecated,

pledged or otherwise transferred, voluntarily or involuntarily, directly or indirectly, except by

will or under the laws of descent and distribution; (b) shall not be evidenced by a certificate or

other instrument; (c) shall not possess any voting rights; and (d) shall not be entitled to receive

any dividends or interest; provided, however, that clause (a) of this Section 7.8 shall not apply to

the holder of a claim that is subrogated to an  Asbestos Personal Injury Claim to the extent of its

satisfaction of the Asbestos Personal Injury Claim.

**7.9**   **Entire Agreement; No Waiver.**  The entire agreement of the parties relating to the subject matter of this Asbestos Trust Agreement is contained herein and in the documents referred to herein, and this Asbestos Trust Agreement and such documents supersede any prior oral or written agreements concerning the subject matter hereof.  No failure to exercise or delay in exercising any right, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, power or privilege hereunder preclude any further exercise thereof or of any other right, power or privilege.  The rights and remedies herein provided are cumulative and are not exclusive of rights under law or in equity.

**7.10**   **Headings.**  The headings used in this Asbestos Trust Agreement are inserted for convenience only and do not constitute a portion of this Asbestos Trust Agreement, nor in any manner affect the construction of the provisions of this Asbestos Trust Agreement.

**7.11**   **Governing Law.**  This Asbestos Trust Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware, without regard to Delaware conflict of law principles; *provided, however,* that any provision of the laws (common or statutory) of the State of Delaware pertaining to trusts that relate to or regulate the following, in a manner inconsistent with the terms hereof, shall not apply to this Asbestos Trust Agreement or to the parties performing under this Asbestos Trust Agreement:  (a) the filing with any court or governmental body or agency of trustee accounts or schedules of trustee fees and charges, (b) affirmative requirements to post bonds for trustees, officers, agents or employees of a trust, (c) the necessity for obtaining court or other governmental approval concerning the acquisition, holding or disposition of real or personal property, (d) fees or other sums payable to trustees, officers, agents or employees of a trust, (e) the allocation of receipts and expenditures to income or principal, (f) restrictions or limitations on the permissible nature, amount or concentration of

trust investments or requirements relating to the titling, storage or other manner of holding or investing trust assets or (g) the establishment of fiduciary or other standards of responsibility or limitations on the acts or powers of trustees that are inconsistent with the limitations or authorities and powers of the trustees hereunder as set forth or referenced in this Asbestos Trust Agreement.  Section 3540 of Title 12 of the Delaware Code shall not apply to the Trust.

**7.12** **Settlors' Representative and Cooperation.**  The Debtors and the Parent are hereby irrevocably designated as the Settlors, and they are hereby authorized to take any action required of the Settlors in connection with the Asbestos Trust Agreement.  The Reorganized Debtors agree to cooperate in implementing the goals and objectives of this Asbestos Trust Agreement.

**7.13** **Dispute Resolution.**  Any disputes that arise under this Asbestos Trust Agreement or under the TDP among the parties hereto, other than the liquidation of Asbestos Personal Injury Claims, shall be resolved by submission of the matter to mediation with a mediator mutually agreeable to the parties involved.  In the event the mediation does not resolve the dispute, any party to the mediation may apply to the Bankruptcy Court for a judicial determination of the matter.  Any review conducted by the Bankruptcy Court shall be *de novo*.  In any case, if the dispute arose pursuant to the consent provision set forth in Section 5.7(b) (in the case of the TAC) or Section 6.6(b) (in the case of the FCR), the burden of proof shall be on the party or parties who withheld consent to show that the objection was valid.  Should the dispute not be resolved by mediation within thirty (30) days after  the commencement of the mediation process as defined in the Asbestos Trust Bylaws, the parties are relieved of the requirement to pursue mediation prior to application to the Bankruptcy Court.  If the Trustees determine that the matter in dispute involves a determination of their fiduciary duties, requires the direction of the supervisory court over the Trust or is exigent and cannot await the completion of mediation, the

Trustees have the right to elect out of the mediation altogether or at any stage of the process and seek resolution of the dispute in the Bankruptcy Court.  Notwithstanding anything else herein contained, to the extent any provision of this Asbestos Trust Agreement is inconsistent with any provision of the Plan or the TDP, the Plan or the TDP, as the case may be, shall control.

7.14   **Enforcement and Administration.**  Except in the event that the Delaware Trustee applies to the Court of Chancery of the State of Delaware for the appointment of a successor Delaware Trustee pursuant to Section 4.11(c), the provisions of this Asbestos Trust Agreement and the TDP attached hereto shall be enforced by the Bankruptcy Court pursuant to the Plan. The parties hereby further acknowledge and agree that the Bankruptcy Court shall have exclusive jurisdiction over the settlement of the accounts of the Trustees and over any disputes hereunder not resolved by mediation in accordance with Section 7.13.

7.15   **Effectiveness.**  This Asbestos Trust Agreement shall not become effective until it has been executed and delivered by all the parties hereto.  Thereafter, the Asbestos Trust shall be established upon the filing of the Certificate of Trust with the Delaware Secretary of State.  The rights and powers under this Asbestos Trust Agreement shall not otherwise become effective until the Effective Date of the Plan has occurred.

7.16   **Counterpart Signatures.**  This Asbestos Trust Agreement may be executed in any number of counterparts, each of which shall constitute an original, but such counterparts shall together constitute but one and the same instrument.

IN WITNESS WHEREOF, the parties have executed this Asbestos Trust Agreement this

_____ day of _____, 2009.

**SETTLORS:**

**ASARCO LLC,**
**a Delaware limited liability company**


By:_____
Name:_____
Title:  _____


**LAC D'AMIANTE DU QUÉBEC LTÉE,**
**a Delaware corporation**


By:_____
Name:_____
Title:  _____


**CAPCO PIPE COMPANY, INC.,**
**a Delaware company**


By:_____
Name:_____
Title:  _____


**CEMENT ASBESTOS PRODUCTS COMPANY,**
**an Alabama corporation**


By:_____
Name:_____
Title:_____

**LAKE ASBESTOS OF QUEBEC, LTD.,**
**a Delaware corporation**


By:_____
Name:_____
Title:_____


**[ADD NAMES OF ANY OTHER DEBTORS]**


By:_____
Name:_____
Title:_____


**THE PARENT:**

**TRUSTEES**

                                      **ASBESTOS CLAIMANTS' COMMITTEE**

_____

Name:                                 By:_____

Expiration Date of Initial Term: _____

Anniversary of the date of this Trust Agreement          Sander L. Esserman, Counsel to the Asbestos Claimants' Committee

_____

Name:

Expiration Date of Initial Term: _____          **ASBESTOS SUBSIDIARY COMMITTEE**

Anniversary of the date of this Trust Agreement

                                        By:_____

_____

Name:                                   Sander L. Esserman, Counsel to the Asbestos Subsidiary Committee

Expiration Date of Initial Term: _____

Anniversary of the date of this Trust Agreement

                                        **DELAWARE TRUSTEE**

                                        By:_____

                                        **TRUST ADVISORY COMMITTEE [number to be determined]**

                                        _____

                                        Name:

                                        Expiration Date of Initial Term: _____ Anniversary of the date of this Trust Agreement

                                        _____

                                        Name:

                                        Expiration Date of Initial Term: _____ Anniversary of

the date of this Trust Agreement

_____
Name:
Expiration Date of Initial Term:  _____ Anniversary of
the date of this Trust Agreement

_____
Name:
Expiration Date of Initial Term:  _____ Anniversary of
the date of this Trust Agreement

_____
Name:
Expiration Date of Initial Term:  _____ Anniversary of
the date of this Trust Agreement

**FUTURE CLAIMS  REPRESENTATIVE**

_____
Robert C. Pate

**TRUST ADVISORY COMMITTEE [number to be
determined]**

_____
Name:

Expiration Date of Initial Term:  _____ Anniversary
of the date of this Trust Agreement

_____
Name:

Expiration Date of Initial Term:  _____ Anniversary
of the date of this Trust Agreement

- 4 -

_____
Name:

Expiration Date of Initial Term: _____ Anniversary
of the date of this Trust Agreement


_____
Name:

Expiration Date of Initial Term: _____ Anniversary
of the date of this Trust Agreement


_____
Name:

Expiration Date of Initial Term: _____ Anniversary
of the date of this Trust Agreement

**FUTURE CLAIMS REPRESENTATIVE**


_____
Robert C. Pate

## EXHIBIT 1

**ASARCO LLC and certain related Debtors**

**ASBESTOS PERSONAL INJURY SETTLEMENT TRUST
DISTRIBUTION PROCEDURES**

**ASARCO LLC and certain related Debtors**

**ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES**

*TABLE OF CONTENTS*

Page

SECTION I — Introduction ............................................................................................... 2

    1.1   Purpose ................................................................................................................. 2
    1.2   Interpretation ........................................................................................................ 2
    1.3   Definitions ............................................................................................................ 2

SECTION II —  Overview .............................................................................................. 3

    2.1   Asbestos Trust Goals ........................................................................................... 3
    2.2   Claims Liquidation Procedures ........................................................................... 5
    2.3   Application of the Payment Percentage ............................................................... 7
    2.4   Asbestos Trust's Determination of the Maximum Annual Payment .................... 8
    2.5   Claims Payment Ratio ......................................................................................... 9
    2.6   Indirect Asbestos Personal Injury Claims ........................................................... 12

SECTION III —  TDP Administration ............................................................................ 12

    3.1   Trust Advisory Committee and Future Claims' Representative ........................... 12
    3.2   Consent and Consultation Procedures ................................................................. 12

SECTION IV  — Payment Percentage; Periodic Estimates ............................................ 13

    4.1   Uncertainty of ASARCO's Personal Injury Asbestos Liabilities ....................... 13
    4.2   Computation of Payment Percentage ................................................................... 13
    4.3   Applicability of the Payment Percentage ............................................................ 14

SECTION V — Resolution of Asbestos Personal Injury Claims .................................... 16

    5.1   Ordering, Processing and Payment of Claims ..................................................... 16
         (a)   Ordering of Claims .................................................................................. 16
             (1)   Establishment of the FIFO Processing Queue ................................ 16
             (2)   Effect of Statutes of Limitations and Repose ................................. 18
         (b)   Payment of Claims ................................................................................... 19
         (c)   Effect of Claims Filed in the Bankruptcy Case .............................................. 20

5.2     Resolution of Pre-Petition Liquidated Asbestos Personal Injury Claims ...................20
    (a)     Processing and Payment – ASARCO Identified ........................................... 20
    (b)     Processing and Payment – Claimant Identified ........................................... 21
5.3     Resolution of Unliquidated Asbestos Personal Injury Claims ...................................23
    (a)     Expedited Review Process ........................................................................... 24
        (1)     In General ....................................................................................... 24
        (2)     Claims Processing Under Expedited Review ................................. 25
        (3)     Disease Levels, Scheduled Values and Medical/Exposure
              Criteria ............................................................................................ 26
    (b)     Individual Review Process ........................................................................... 29
        (1)     In General ....................................................................................... 29
            (A)     Review of Medical/Exposure Criteria ................................ 31
            (B)     Review of Liquidated Value ............................................... 31
        (2)     Valuation Factors to Be Considered in Individual Review ............. 32
        (3)     Scheduled, Average and Maximum Values ................................... 34
        (4)     Claims Processing Under Individual Review ................................. 35
    (c)     Handling, Litigation and Payment of Asbestos Premises Liability
        Claims .......................................................................................................... 35
5.4     Categorizing Claims as Extraordinary and/or Exigent Hardship...............................38
    (a)     Extraordinary Claims .................................................................................. 38
    (b)     Exigent Claims ............................................................................................ 39
        (1)     Exigent Health Claims ................................................................... 39
        (2)     Exigent Hardship Claims ............................................................... 40
5.5     Secondary Exposure Claims ......................................................................................40
5.6     Indirect Asbestos Personal Injury Claims .................................................................40
5.7     Evidentiary Requirements ..........................................................................................43
    (a)     Medical Evidence ........................................................................................ 43
        (1)     In General ....................................................................................... 43
            (A)     Disease Levels I–IV ........................................................... 43
            (B)     Disease Levels V–VIII ....................................................... 44
            (C)     Exception to the Exception for Certain Pre-Petition
                 Claims ................................................................................. 44
        (2)     Credibility of Medical Evidence .................................................... 45
    (b)     Exposure Evidence ...................................................................................... 46
        (1)     In General ....................................................................................... 46
        (2)     Significant Occupational Exposure ............................................... 47
    (3)     ASARCO Exposure ..................................................................................... 47
5.8     Claims Audit Program ................................................................................................49
5.9     Second Disease (Malignancy) Claims .......................................................................50
5.10    Arbitration ..................................................................................................................50
    (a)     Establishment of ADR Procedures .............................................................. 50
    (b)     Claims Eligible for Arbitration .................................................................... 51
    (c)     Limitations on and Payment of Arbitration Awards..................................... 52

5.11   Litigation .................................................................................................52

      (a)   In General ................................................................................. 52

      (b)   Asbestos Personal Injury Claims Covered by Asbestos Insurance
            Policies .................................................................................... 52

      (c)   The Right to Establish Certain Procedures ................................... 53

**SECTION VI — Claims Materials** ...................................................................... 53

6.1   Claims Materials .................................................................................53

6.2   Content of Claims Materials ...............................................................54

6.3   Withdrawal or Deferral of Claims ......................................................54

6.4   Filing Requirements and Fees.............................................................55

6.5   Confidentiality of Claimants' Submissions ..........................................55

**SECTION VII — General Guidelines for Liquidating and Paying Claims**.................. 56

7.1   Costs Considered ................................................................................56

7.2   Discretion to Vary the Order and Amounts of Payments in Event of Limited
      Liquidity...........................................................................................57

7.3   Punitive Damages ..............................................................................57

7.4   Sequencing Adjustment ......................................................................58

      (a)   In General ................................................................................. 58

      (b)   Unliquidated Asbestos Personal Injury Claims ............................. 59

      (c)   Pre-Petition Liquidated Asbestos Personal Injury Claims............... 59

7.5   Suits in the Tort System.....................................................................59

7.6   Payment of Judgments for Money Damages ........................................60

7.7   Releases.............................................................................................61

7.8   Third-Party Services ..........................................................................61

7.9   Asbestos Trust Disclosure of Information ...........................................62

**SECTION VIII — Miscellaneous**........................................................................ 62

8.1   Amendments .....................................................................................62

8.2   Severability .......................................................................................62

8.3   Governing Law ..................................................................................63

**ASARCO LLC**

## ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

The ASARCO LLC Asbestos Personal Injury Settlement Trust Distribution Procedures (the "**TDP**") contained herein provide for resolving all Asbestos Personal Injury Claims, including all asbestos-related personal injury and death claims caused by the conduct of and/or the exposure to fibers or products for which ASARCO LLC and/or Lac d'Amiante du Québec Ltée, Lake Asbestos of Quebec, Ltd., LAQ Canada, Ltd., CAPCO Pipe Company, Inc., Cement Asbestos Products Company, Encycle, Inc., ASARCO Consulting, Inc., ALC, Inc., American Smelting and Refining Company, AR Mexican Explorations Inc., Asarco Master, Inc., Asarco Oil and Gas Company, Inc., Bridgeview Management Company, Inc., Covington Land Company, Government Gulch Mining Company, Limited, Southern Peru Holdings, LLC, AR Sacaton, LLC, a Delaware limited liability company, ASARCO Exploration Company, Inc., Wyoming Mining and Milling Company, Alta Mining and Development Company, Tulipan Company, Inc., Blackhawk Mining and Development Company, Limited, Peru Mining Exploration and Development Company, and Green Hill Cleveland Mining Company (collectively referred to as "**ASARCO**"), and their predecessors, successors, and assigns, have legal responsibility as provided in and required by the ASARCO Incorporated and Americas Mining Corporation's Fifth Amended Plan of Reorganization for the Debtors Under Chapter 11 of the United States Bankruptcy Code dated June 22, 2009 (as it may be amended or modified, the "**Plan**")[1] and the ASARCO LLC Asbestos Personal Injury Settlement Trust Agreement (the

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the Asbestos Trust Agreement, *provided, however,* that, unless otherwise stated, ASARCO shall have the meaning described in the preamble to this TDP.  Demands channeled to the Asbestos Trust by the Plan shall only be eligible to become an Asbestos Trust Determined Claim if and when they become an Asbestos Personal Injury Claim.

"**Asbestos Trust Agreement**").  The Plan and the Asbestos Trust Agreement establish the Asbestos Trust (the "**Asbestos Trust**").  The Trustees of the Asbestos Trust (the "**Trustees**") shall implement and administer this TDP in accordance with the Asbestos Trust Agreement.

## SECTION I

### Introduction

**1.1**     **Purpose.**  This TDP has been adopted pursuant to the Asbestos Trust Agreement. It is designed to provide fair, equitable and substantially similar treatment for all Asbestos Personal Injury Claims.

**1.2**     **Interpretation.**  Nothing in this TDP shall be deemed to create a substantive right for any claimant.  The rights and benefits provided herein to holders of Asbestos Personal Injury Claims shall vest in the holders of Asbestos Personal Injury Claims as of the Effective Date.

**1.3**     **Definitions.**  The following capitalized terms used herein shall have the meanings set forth below:

"Asbestos Trust Determined Claim" means an Asbestos Personal Injury Claim liquidated pursuant to this TDP.

"Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, jointly administered and known as In re ASARCO LLC _et al._, Case No. 05-21207.

"CIP Agreements" means Asbestos In-Place Insurance Coverage regarding Asbestos Premises Liability Claims.

"Pre-Petition Liquidated Asbestos Personal Injury Claim" means an Asbestos Personal Injury Claim that was liquidated by (i) a binding settlement agreement for the particular claim entered prior to the Petition Date that is judicially enforceable by the claimant, (ii) a jury verdict

or non-final judgment in the tort system obtained prior to the Petition Date, or (iii) a judgment that became final and non-appealable prior to the Petition Date.

## SECTION II

### Overview

**2.1     Asbestos Trust Goals.**  The goal of the Asbestos Trust is to treat all claimants similarly and equitably and in accordance with the requirements of section 524(g) of the Bankruptcy Code.  This TDP furthers that goal by setting forth procedures for resolving Asbestos Premises Liability Claims either in the tort system or by the TDP, depending on insurance coverage, and for processing and paying all other Asbestos Personal Injury Claims on an impartial, first-in-first-out ("**FIFO**") basis, with the intention of paying all holders of Asbestos Trust Determined Claims over time as equivalent a share as possible of the value of their claims based on historical values for substantially similar claims in the tort system.[2]  To this end, the TDP establishes a schedule of eight asbestos-related diseases ("**Disease Levels**"), seven of which have presumptive medical and exposure requirements ("**Medical/Exposure Criteria**") and specific liquidated values ("**Scheduled Values**"), and six of which have anticipated average values ("**Average Values**") and caps on their liquidated values ("**Maximum Values**").  The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values and Maximum Values, which are set forth in Sections 5.3 and 5.4, have been selected and derived from the best available information considering the settlement histories of ASARCO and the rights claimants would have in the tort system absent the bankruptcy, with the intention of achieving a fair allocation of the Asbestos Trust Assets among claimants suffering from different diseases.

---

[2]     As used in this TDP, the phrase "in the tort system" shall not include claims asserted against a trust established for the benefit of asbestos personal injury claimants pursuant to Section 524(g) and/or Section 105 of the Bankruptcy Code.

**2.1 (a)  Asbestos Premises Liability Claims.**  Asbestos Premises Liability Claims shall be liquidated pursuant to Section 5.3(c) of this TDP.

**2.1(b)  Asbestos Personal Injury Claims.**  Except as provided in Sections 2.1(a) and 5.3(c), to establish a valid Asbestos Personal Injury Claim, a claimant must meet the requirements set forth in this TDP.  Asbestos Personal Injury Claims shall be processed, liquidated and paid based on the procedures provided in this TDP.

Because the assets expected to be contributed to the Asbestos Trust are estimated to be less than the value of all Asbestos Personal Injury Claims that are expected to be filed with the Asbestos Trust over its life, the holders of Asbestos Personal Injury Claims shall receive a pro rata portion of the liquidated value of their claims (a "**Payment Percentage**") that shall be established pursuant to Sections 2.3 and 4.2.  To the extent that the Asbestos Trust has liability for an Asbestos Trust Determined Claim, the Asbestos Trust shall pay the Asbestos Trust Determined Claim subject to the Maximum Annual Payment, Claims Payment Ratio and Payment Percentage.

**2.2     Claims Liquidation Procedures.**  Asbestos Personal Injury Claims shall be processed based on their place in the FIFO Processing Queue to be established pursuant to Section 5.1(a).  The Asbestos Trust shall take all reasonable steps to resolve Asbestos Personal Injury Claims as efficiently and expeditiously as possible at each stage of claims processing, including pro bono evaluation, mediation and arbitration, which steps may include, in the Asbestos Trust's sole discretion, conducting settlement discussions with claimants' representatives with respect to more than one claim at a time, provided that the claimants' respective positions in the FIFO Processing Queue are maintained, and each claim is individually evaluated pursuant to the valuation factors set forth in Section 5.3(b)(2).  The Asbestos Trust

shall make every effort to resolve each year at least that number of Asbestos Personal Injury Claims required to exhaust the Maximum Annual Payment for Category A Claims and Category B Claims, as those terms are defined below.

The Asbestos Trust shall liquidate all Asbestos Personal Injury Claims except Foreign Claims (as defined below) that meet the presumptive Medical/Exposure Criteria of Disease Levels I–V, VII and VIII under the Expedited Review Process described in Section 5.3(a). Claims involving Disease Levels I–V, VII and VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the Asbestos Trust's Individual Review Process described in Section 5.3(b).  In such a case, notwithstanding that the claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level, the Asbestos Trust may offer the claimant an amount up to the Scheduled Value of that Disease Level if the Asbestos Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

Claimants holding claims involving Disease Levels III-VIII may alternatively seek to establish a liquidated value for the claim that is greater than its Scheduled Value by electing the Asbestos Trust's Individual Review Process.  However, the liquidated value of a claim that undergoes the Individual Review Process for valuation purposes may be determined to be less than the Scheduled Value for the applicable Disease Level, and in any event shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3), unless the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a), in which case its liquidated value cannot exceed the maximum extraordinary value specified in Section 5.4(a) for such claims.  Disease Level VI (Lung Cancer 2) claims and all Foreign Claims may be liquidated only pursuant to the Asbestos Trust's Individual Review Process.

Based on ASARCO's claims settlement histories, applicable tort law, and current projections of present and future unliquidated claims, the Scheduled Values and Maximum Values set forth in Section 5.3(b)(3) have been established for each of the Disease Levels that are eligible for Individual Review of their liquidated values, with the expectation that the combination of settlements at the Scheduled Values and those resulting from the Individual Review Process should result in the Average Values also set forth in that provision.

All unresolved disputes over a claimant's medical condition, exposure history and/or the liquidated value of the claim may be submitted to pro bono evaluation and/or mediation and shall be subject to binding or non-binding arbitration as set forth in Section 5.10, at the election of the claimant, under the ADR Procedures that are provided in Attachment A hereto or that will be attached as an exhibit to the Claims Materials to be prepared by the Asbestos Trust pursuant to Section 6.1.  Asbestos Personal Injury Claims that are the subject of a dispute with the Asbestos Trust that are not resolved by the ADR Procedures may enter the tort system as provided in Sections 5.11 and 7.5.  However, if and when a claimant obtains a judgment in the tort system, the judgment shall be payable (subject to the Payment Percentage, Maximum Annual Payment, and Claims Payment Ratio provisions set forth below) as provided in Section 7.6.

Asbestos Premises Liability Claims shall be handled pursuant to the procedures set forth in Section 5.3(c) of this TDP.

**2.3    Application of the Payment Percentage.**  After the liquidated value of an Asbestos Personal Injury Claim other than a claim involving Other Asbestos Disease (Disease Level I – Cash Discount Payment), as defined in Section 5.3(a)(3), is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, pro bono evaluation, mediation, arbitration, or litigation in the tort system, the claimant shall ultimately receive a pro-

rata share of that value based on a Payment Percentage described in Section 4.2.  The Payment Percentage shall also apply to all Pre-Petition Liquidated Asbestos Personal Injury Claims as provided in Section 5.2 and to all sequencing adjustments paid pursuant to Section 7.4.

The initial Payment Percentage (the "**Initial Payment Percentage**") has been set at twenty-two percent (22%) for Asbestos Personal Injury Claims other than Asbestos Premises Liability Claims covered by an applicable Asbestos Insurance Policy.  The Initial Payment Percentage has been calculated on the assumption that the Average Values set forth in Section 5.3(b)(3) shall be achieved with respect to existing present claims and projected future claims involving Disease Levels III–VIII.

The Payment Percentage may be adjusted upwards or downwards from time to time by the Asbestos Trust with the consent of the Asbestos Trust Advisory Committee (the "**TAC**") and the FCR to reflect then-current estimates of the Asbestos Trust's assets and its liabilities, as well as then-estimated values of then-pending and future claims.  Any adjustment to the Initial Payment Percentage shall be made only pursuant to Section 4.2.  If the Payment Percentage is increased over time, claimants whose claims were liquidated and paid in prior periods under the TDP shall receive additional payments as provided in Section 4.3.  Because there is uncertainty in the prediction of both the number and severity of future Asbestos Personal Injury Claims, and the amount of the Asbestos Trust's assets, no guarantee can be made of any Payment Percentage of an Asbestos Personal Injury Claim's liquidated value.

**2.4    Asbestos Trust's Determination of the Maximum Annual Payment .** The Asbestos Trust, in consultation with its advisors and with the consent of the TAC and FCR, shall estimate the amount of cash flow anticipated to be necessary over  the life of the Asbestos Trust by year and prepare a schedule setting forth the maximum annual payment (the "**Maximum**

**Annual Payment**") to be distributed by the Asbestos Trust annually for the life of the Asbestos Trust to ensure that funds shall be available to treat all present and future holders of Asbestos Personal Injury Claims as similarly as possible, and taking into account the Payment Percentage provisions set forth in Sections 2.3, 4.2 and 4.3. The initial Maximum Annual Payment for each year of the life of the Asbestos Trust is **[TO BE DETERMINED]**. The Maximum Annual Payment may be adjusted annually by the Trustees with the consent of the TAC and the FCR. The Asbestos Trust's distributions to all claimants for a particular year shall not exceed the Maximum Annual Payment determined for that year plus any excess funds rolled over from earlier years as provided in Section 2.5.

In the event there are insufficient amounts in any year to pay the Asbestos Trust Determined Claims, the available funds shall be paid to the maximum extent to the holders of such claims based on their place in the FIFO Payment Queue. Asbestos Trust Determined Claims for which there are insufficient amounts shall maintain their place in the FIFO Payment Queue and shall be carried to the next year.

The Maximum Annual Payment does not apply to (i) Asbestos Personal Injury Claims that arose prior to the entry of the Confirmation Order; (ii) Asbestos Personal Injury Claims involving Other Asbestos Disease (Disease Level I – Cash Discount Payment); (iii) Pre-Petition Liquidated Asbestos Personal Injury Claims where the claimant has elected to retain the liquidated value as provided in Section 5.2; and (iv) Asbestos Premises Liability Claims covered by an applicable Asbestos Insurance Policy.

**2.5     Claims Payment Ratio.** Based on ASARCO's claims settlement histories and analysis of present and future claims, a Claims Payment Ratio for Asbestos Personal Injury Claims that arise after the entry of the Confirmation Order has been determined which, as of the

Effective Date, has been set at 90% for Category A Claims and at 10% for Category B Claims. Category A Claims consist of Asbestos Personal Injury Claims involving severe asbestosis and malignancies (Disease Levels IV–VIII).  Category B Claims consist of Asbestos Personal Injury Claims involving Nonmalignant Asbestos Disease (Disease Levels II and III).  The Claims Payment Ratio does not apply to (i) Asbestos Personal Injury Claims that arose prior to the entry of the Confirmation Order; (ii) Asbestos Personal Injury Claims involving Other Asbestos Disease (Disease Level I – Cash Discount Payment); (iii) Pre-Petition Liquidated Asbestos Personal Injury Claims where the claimants have elected to retain the liquidated value as provided in Section 5.2; and (iv) Asbestos Premises Liability Claims covered by an applicable Asbestos Insurance Policy.

In each year, after the determination of the Maximum Annual Payment described in Section 2.4, 90% of that amount shall be available to pay Category A Claims and 10% shall be available to pay Category B Claims that have been placed in the FIFO Payment Queue described in Section 5.1(b).  In the event there are insufficient funds in any year to pay the liquidated claims within either or both of the Categories, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in that Category based on their place in the FIFO Payment Queue.  Claims for which there are insufficient funds allocated to the relevant Category shall be carried over to the next year where they shall maintain their places in the FIFO Payment Queue.  If there are excess funds in either or both Categories, because there is an insufficient amount of Asbestos Trust Determined Claims to exhaust the respective Maximum Annual Payment allocated amount for that Category, then the excess funds for either or both Categories shall roll into the next year, remain dedicated to the respective Category to which

they were originally allocated, and added to the Maximum Annual Payment for such next year subject to the Claims Payment Ratio.

The 90%/10% Claims Payment Ratio and its rollover provision shall apply to all Asbestos Personal Injury Claims (except (i) Asbestos Personal Injury Claims that arose prior to the entry of the Confirmation Order; (ii) Asbestos Personal Injury Claims involving Other Asbestos Disease (Disease Level I – Cash Discount Payment); (iii) Pre-Petition Liquidated Asbestos Personal Injury Claims where the claimants have elected to retain the liquidated value as provided in Section 5.2; and (iv) Asbestos Premises Liability Claims covered by an applicable Asbestos Insurance Policy) and shall not be amended until the third anniversary of the date the Asbestos Trust first accepts for processing proof of claim forms and other materials required to file a claim with the Asbestos Trust.  Thereafter, both the Claims Payment Ratio and its rollover provision shall be continued absent circumstances, such as a significant change in law or medicine, necessitating amendments to the Claims Payment Ratio to avoid a manifest injustice. The accumulation, rollover and subsequent delay of payment of claims resulting from the application of the Claims Payment Ratio shall not, in and of itself, constitute such circumstances. In addition, an increase in the numbers of Category B Claims beyond those predicted or expected at the time of entry of the Confirmation Order shall not be considered as a factor in deciding whether to reduce the percentage allocated to Category A Claims.

In considering whether to amend the Claims Payment Ratio and/or its rollover provisions, the Trustees shall consider the reasons for which the Claims Payment Ratio and its rollover provisions were adopted, the settlement histories that gave rise to its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be any need to make an

amendment.  In that regard, the Trustees should keep in mind the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to claimants.

In any event, no amendment to the Claims Payment Ratio to reduce the percentage allocated to Category A Claims may be made without the unanimous consent of the TAC members and the consent of the FCR, and the percentage allocated to Category A Claims may not be increased without the consent of the TAC and the FCR.  The consent process set forth in Sections 5.7(b) and 6.6(b) of the Asbestos Trust Agreement shall apply in the event of any amendments to the Claims Payment Ratio.  The Trustees, with the consent of the TAC and the FCR, may offer the option of a reduced Payment Percentage to holders of claims in either Category A or Category B in return for prompter payment (the "**Reduced Payment Option**").

2.6   **Indirect Asbestos Personal Injury Claims.**  As set forth in Section 5.6, indirect Asbestos Personal Injury Claims, if any, shall be subject to the same categorization, evaluation, and payment provisions of this TDP as Asbestos Personal Injury Claims.

**SECTION III**

**<u>TDP Administration</u>**

3.1   **Trust Advisory Committee and Future Claims' Representative.**  Pursuant to the Plan and the Asbestos Trust Agreement, the Asbestos Trust and this TDP shall be administered by the Trustees in consultation with the TAC, which represents the interests of holders of present Asbestos Personal Injury Claims, and the FCR, who represents the interests of holders of Asbestos Personal Injury Claims that may be asserted in the future.  The Trustees shall obtain the consent of the TAC and the FCR on any amendments to this TDP pursuant to Section 8.1, on other matters required by the TDP and on matters provided by Section 2.2(f) of the Asbestos Trust Agreement.  The Trustees shall also consult with the TAC and the FCR on such

matters as are provided in the TDP and in Section 2.2(e) of the Asbestos Trust Agreement.  The initial Trustees, the initial members of the TAC and the initial FCR are identified in the Asbestos Trust Agreement.

**3.2    Consent and Consultation Procedures.**  In those circumstances in which consultation or consent is required, the Trustees shall provide written notice to the TAC and the FCR of the specific amendment or other action that is proposed.  The Trustees shall not implement the amendment nor take action unless and until the Trustees, TAC and FCR have engaged in the Consultation Process described in Sections 5.7(a) and 6.6(a), or the Consent Process described in Sections 5.7(b) and 6.6(b), of the Asbestos Trust Agreement, respectively.

### SECTION IV

### Payment Percentage; Periodic Estimates

**4.1    Uncertainty of ASARCO's Personal Injury Asbestos Liabilities.**  As discussed above, there is inherent uncertainty regarding ASARCO's total asbestos-related tort liabilities, as well as the total value of the assets available to the Asbestos Trust to pay Asbestos Personal Injury Claims.  Consequently, there is inherent uncertainty regarding the amounts that holders of Asbestos Personal Injury Claims shall receive.  To seek to ensure substantially equivalent treatment of all present and future Asbestos Personal Injury Claims, the Trustees must determine from time to time the percentage of full liquidated value that holders of present and future Asbestos Personal Injury Claims shall be likely to receive, *i.e.*, the "Payment Percentage" described in Sections 2.3 and 4.2.

**4.2    Computation of Payment Percentage.**  As provided in Section 2.3, the Initial Payment Percentage shall be twenty-two percent (22**%**) for Asbestos Personal Injury Claims other than Asbestos Premises Liability Claims covered by an applicable Asbestos Insurance

Policy, unless the Trustees, with the consent of the TAC and the FCR, determine that the Initial Payment Percentage should be changed to assure that the Asbestos Trust shall be in a financial position to pay holders of claims in substantially the same manner.  Notwithstanding the foregoing, in no event shall the holder of an Asbestos Personal Injury Claim that is liquidated by the Asbestos Trust receive a payment less than the product of the application of the Initial Payment Percentage to the liquidated value of the claim, if the claimant voted on the Plan pursuant to the voting procedures approved by the Bankruptcy Court.

The Payment Percentage shall be subject to change pursuant to the terms of this TDP and the Asbestos Trust Agreement if the Trustees with the consent of the TAC and FCR determine that an adjustment is required.  No less frequently than once every three (3) years, commencing with the first day of January occurring after the third anniversary of the Effective Date, the Trustees shall reconsider the then applicable Payment Percentage to assure that the Payment Percentage is based on accurate and current information.  After such reconsideration, the Trustees may, if necessary, change the Payment Percentage with the consent of the TAC and the FCR.  The Trustees shall also reconsider the then applicable Payment Percentage at shorter intervals if they deem reconsideration to be appropriate or if requested to do so by the TAC or the FCR.

The Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future Asbestos Personal Injury Claims, the value of the assets then available to the Asbestos Trust for payment of Asbestos Trust Determined Claims, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of Asbestos Personal Injury Claims.  When making these

determinations, the Trustees shall exercise common sense and flexibly evaluate all relevant factors.  The Payment Percentage applicable to Category A Claims or Category B Claims may not be reduced to alleviate delays in payments of claims in the other Category; both Categories of claims shall receive the same Payment Percentage, but the payment may be deferred as needed, and a Reduced Payment Option may be instituted as described in Section 2.5.

**4.3    Applicability of the Payment Percentage.**  Except as otherwise provided in Section 5.1(b) for Asbestos Trust Determined Claims involving deceased or incompetent claimants for which approval of the Asbestos Trust's offer by a court or through a probate process is required, no holder of any Asbestos Trust Determined Claim, other than an Asbestos Trust Determined Claim for Other Asbestos Disease (Disease Level I – Cash Discount Payment), shall receive a payment that exceeds the liquidated value of the claim times the Payment Percentage in effect at the time of payment. Asbestos Trust Determined Claims involving Other Asbestos Disease (Disease Level I – Cash Discount Payment) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in Section 5.3(a)(3).

If a redetermination of the Payment Percentage has been proposed in writing by the Trustees to the TAC and the FCR but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage.  However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount.  Conversely, if the proposed Payment Percentage was the higher amount and was subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

There is uncertainty surrounding the amount of the Asbestos Trust's future assets.  There is also uncertainty surrounding the totality of the Asbestos Personal Injury Claims to be paid over time, as well as the extent to which changes in existing federal and state law could affect the Asbestos Trust's liabilities under this TDP.  If the value of the Asbestos Trust's future assets increases significantly and/or if the value or volume of Asbestos Personal Injury Claims actually filed with the Asbestos Trust is significantly lower than originally estimated, the Asbestos Trust shall use those proceeds and/or claims savings, as the case may be, first to maintain the Payment Percentage then in effect.

If the Trustees, with the consent of the TAC and the FCR, make a determination to increase the Payment Percentage due to a material change in the estimates of the Asbestos Trust's future assets and/or liabilities, the Trustees shall also make supplemental payments to all claimants who have previously been paid by the application of the lower Payment Percentage to the liquidated amount of their claims.  The amount of any supplemental payment shall be the liquidated value of the claim plus any sequencing adjustment paid under Section 7.4 times the newly adjusted Payment Percentage, less all amounts previously paid to the claimant with respect to the claim.

The Trustees' obligation to make a supplemental payment to a claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment that was also suspended because it would have been less than $100.00.  However, the Trustees' obligation shall resume and the Trustees shall pay any aggregate supplemental payments due the claimant when the total exceeds $100.00.

## SECTION V

### Resolution of Asbestos Personal Injury Claims.

**5.1     Ordering, Processing and Payment of Claims.**

**5.1(a) Ordering of Claims.**

**5.1(a)(1)  Establishment of the FIFO Processing Queue.**  The Asbestos Trust shall order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis except as otherwise provided herein (the "**FIFO Processing Queue**").  For all claims filed on or before the date that is six (6) months after the date that the Asbestos Trust first makes available the proof of claim forms and other claims materials required to file a claim with the Asbestos Trust (such six month anniversary being referred to herein as the "**Initial Claims Filing Date**"), a claimant's position in the FIFO Processing Queue shall be determined as of the earliest of (i) the date prior to April 11, 2005 (the **"Petition Date of the Subsidiary Debtors"**) that the specific claim was either filed against ASARCO in the tort system or was actually submitted to ASARCO pursuant to an administrative settlement agreement; (ii) the date before the Petition Date of the Subsidiary Debtors that the asbestos claim was filed against another defendant in the tort system if at the time the claim was subject to a tolling agreement with ASARCO; (iii) the date after the Petition Date of the Subsidiary Debtors but before the date that the Asbestos Trust first makes available the proof of claim forms and other claims materials required to file a claim with the Asbestos Trust that the asbestos claim was filed against another defendant in the tort system; (iv) the date after the Petition Date of the Subsidiary Debtors but before the Effective Date that a proof of claim was filed by the claimant against ASARCO in this Chapter 11 proceeding; or (v) the date a ballot was submitted on behalf of the claimant for purposes of voting to accept or reject the Plan pursuant to the voting procedures approved by the

Bankruptcy Court.  The Initial Claims Filing Date shall not apply to holders of Pre-Petition Liquidated Asbestos Personal Injury Claims who elect to retain the liquidated values of their claims nor shall it apply to holders of Asbestos Premises Liability Claims.

Following the Initial Claims Filing Date, the claimant's position in the FIFO Processing Queue shall be determined by the date the claim is filed with the Asbestos Trust.  If any claims are filed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the date of the diagnosis of the asbestos-related disease.  If any claims are filed and diagnosed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the claimant's date of birth, with older claimants given priority over younger claimants.

### 5.1(a) (2)  Effect of Statutes of Limitations and Repose.  All Asbestos

Personal Injury Claims other than Pre-Petition Liquidated Asbestos Personal Injury Claims must meet either (i) for claims first filed in the tort system against ASARCO prior to the Petition Date, the applicable federal, state or foreign statute of limitations or repose that was in effect at the time of the filing of the claim in the tort system, or (ii) for claims not filed against ASARCO in the tort system prior to the Petition Date, the applicable federal, state or foreign statute of limitations or repose that was in effect at the time of the filing of the claim with the Asbestos Trust.  However, the running of the relevant statute of limitations shall be tolled as of the earliest of (A) the actual filing of the claim against ASARCO prior to the Petition Date of the Subsidiary Debtors or the Petition Date of ASARCO LLC, as the case may be, whether in the tort system or by submission of the claim to ASARCO pursuant to an administrative settlement agreement; (B) the tolling of the claim against ASARCO prior to the Petition Date of the Subsidiary Debtors or the Petition Date of ASARCO LLC, as the case may be, by an agreement or otherwise, provided

the tolling agreement was still in effect on the relevant Petition Date; or (C) the Petition Date of the Subsidiary Debtors or the Petition Date of ASARCO LLC, as the case may be.

If an Asbestos Personal Injury Claim meets any of the tolling provisions described in the preceding sentence and the claim was not barred by the applicable federal, state or foreign statute of limitations or repose at the time of the tolling event, it shall be treated as timely filed if it is actually filed with the Asbestos Trust within three (3) years after the Initial Claims Filing Date. In addition, any claims that were first diagnosed after the Petition Date, irrespective of the application of any relevant federal, state or foreign statute of limitations or repose, may be filed with the Asbestos Trust within three (3) years after the date of diagnosis or within three (3) years after the Initial Claims Filing Date, whichever occurs later.  The processing of any Asbestos Personal Injury Claim by the Asbestos Trust may be deferred at the election of the claimant pursuant to Section 6.3.

**5.1(b)  Payment of Claims.**  Asbestos Personal Injury Claims that have been liquidated by the Expedited Review Process as provided in Section 5.3(a), by the Individual Review Process as provided in Section 5.3(b), by pro bono evaluation, mediation or arbitration as provided in Section 5.10, or by litigation in the tort system provided in Section 5.11, shall be paid in FIFO order based on the date their liquidation became final (the "**FIFO Payment Queue**"), all payments being subject to the applicable Payment Percentage, the Maximum Annual Payment, the Claims Payment Ratio, and the sequencing adjustment provided for in Section 7.4, except as otherwise provided herein.

Where the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the Asbestos

Trust on the claim shall remain open so long as proceedings before that court or in that probate process remain pending, provided that the Asbestos Trust has been furnished with evidence that the settlement offer has been submitted to the court or in the probate process for approval.  If the offer is ultimately approved by the court or through the probate process and accepted by the claimant's representative, the Asbestos Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

If any claims are liquidated on the same date, the claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease.  If any claims are liquidated on the same date and the respective holders' asbestos-related diseases were diagnosed on the same date, the position of those claims in the FIFO Payment Queue shall be determined by the Asbestos Trust based on the dates of the claimants' birth, with older claimants given priority over younger claimants.  For purposes of placement in the FIFO Payment Queue, the date of final liquidation shall be the date the Trustees of the Asbestos Trust approve the Asbestos Personal Injury Claim for payment or as otherwise provided for in the ADR Procedures or litigation.

This Section 5.1(b) shall not apply to Asbestos Premises Liability Claims covered by an applicable Asbestos Insurance Policy.

**5.1(c)  Effect of Claims Filed in the Bankruptcy Case.**   Regardless of whether a claimant filed a proof of claim against ASARCO in the Chapter 11 Cases, a claimant must file a claim with the Asbestos Trust in accordance with this TDP in order to be compensated.  Proofs of claim filed against ASARCO in the Chapter 11 Cases shall not be processed and paid by the Asbestos Trust.  Failure to have filed a proof of claim against ASARCO in the Chapter 11 Cases shall not, in and of itself, bar or prohibit liquidation of a claim filed with the Asbestos Trust.

**5.2     Resolution of Pre-Petition Liquidated Asbestos Personal Injury Claims.**

**5.2(a)  Processing and Payment – ASARCO Identified.**  The holder of a Pre-Petition Liquidated Asbestos Personal Injury Claim may file a claim with the Asbestos Trust for the liquidated value of the Pre-Petition Liquidated Asbestos Personal Injury Claim or for a value to be determined under this TDP.

On or before the Effective Date, ASARCO shall deliver to the Asbestos Trust a schedule of the Pre-Petition Liquidated Asbestos Personal Injury Claims with the supporting database (the **"Approved Pre-Petition Liquidated Asbestos Personal Injury Claims"**).  The Asbestos Trust shall provide each claimant on the schedule of Approved Pre-Petition Liquidated Asbestos Personal Injury Claims notice of (i) the liquidated amount of the claim, (ii) the right of the claimant to make the election provided in this Section 5.2(a), and (iii) instructions for making the election, and, if electing to retain the liquidated amount of the claim, instructions for executing and delivering the release provided under Section 7.7.

If the holder of the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim elects to retain the liquidated value of the claim, the Asbestos Trust shall pay the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim as soon as practical upon receipt by the Asbestos Trust of a release executed by the claimant.  Payment of the liquidated value of the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim shall be subject to the Payment Percentage and the sequencing adjustment provided in Section 7.4, except as otherwise provided herein, but shall not be subject to the Maximum Annual Payment and the Claims Payment Ratio and shall not be subject to Section 5.3.

If the holder of the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim elects to file a claim with the Asbestos Trust to be liquidated under this TDP, the holder shall be

deemed to waive the liquidated value of the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim, and the claim shall be processed under Section 5.3.

**5.2(b)  Processing and Payment – Claimant Identified.**  If the holder of an Asbestos Personal Injury Claim files a claim with the Asbestos Trust for a Pre-Petition Liquidated Asbestos Personal Injury Claim that was not scheduled by ASARCO as an Approved Pre-Petition Liquidated Asbestos Personal Injury Claim, the claimant must submit all documentation necessary to demonstrate to the Asbestos Trust that the claim was liquidated in the manner described in the definition of Pre-Petition Liquidated Asbestos Personal Injury Claim above, which documentation shall include (A) a court authenticated copy of the jury verdict (if applicable), a non-final judgment (if applicable), a final judgment (if applicable), or an executed settlement agreement (if applicable) and (B) the name, social security number and date of birth of the claimant and the name and address of the claimant's lawyer.

The liquidated value of a Pre-Petition Liquidated Asbestos Personal Injury Claim shall be the unpaid portion of the agreed amount in the binding settlement agreement, the unpaid portion of the amount awarded by the jury verdict or non-final judgment, or the unpaid portion of the amount of the final judgment, as the case may be, plus interest, if any, that has accrued on that amount in accordance with the terms of the agreement, if any, or under applicable state law for settlements or judgments as of the Petition Date of the Subsidiary Debtors; however, except as otherwise provided in Section 7.3, the liquidated value of a Pre-Petition Liquidated Asbestos Personal Injury Claim shall not include any punitive or exemplary damages.  Payments of the liquidated values of Pre-Petition Liquidated Asbestos Personal Injury Claims shall be subject to the Payment Percentage and the sequencing adjustment provided in Section 7.4, except as otherwise provided herein, but shall not be subject to the Maximum Annual Payment and the

Claims Payment Ratio.  In the absence of a Final Order of the Bankruptcy Court determining whether a settlement agreement is binding and judicially enforceable, a dispute between the claimant and the Asbestos Trust over this issue shall be resolved pursuant to the same procedures in this TDP that are provided for resolving the validity and/or liquidated value of an Asbestos Personal Injury Claim (*i.e.*, pro bono evaluation, mediation, arbitration and litigation in the tort system as set forth in Sections 5.10 and 5.11).

Pre-Petition Liquidated Asbestos Personal Injury Claims filed by the claimants and not scheduled as an Approved Pre-Petition Liquidated Asbestos Personal Injury Claim shall be processed and paid in accordance with their order in the FIFO Processing Queue and the FIFO Payment Queue.  Pre-Petition Liquidated Asbestos Personal Injury Claims shall be placed in the FIFO Payment Queue upon a determination by the Asbestos Trust of the unpaid amount of a binding settlement, jury verdict, non-final judgment or final judgment or upon a resolution by mediation, arbitration or litigation. If any Pre-Petition Liquidated Asbestos Personal Injury Claims are filed on the same date, the claimants' position in the FIFO Processing Queue shall be determined by the date of the settlement agreement, jury verdict or judgment, as the case may be. If any Pre-Petition Liquidated Asbestos Personal Injury Claims are placed in either the FIFO Processing Queue or the FIFO Payment Queue on the same dates, the position of the claimants in the respective queue shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

Pre-Petition Liquidated Asbestos Premises Liability Claims shall be tendered by the Asbestos Trust to the relevant insurer or insurers for handling as provided in the CIP Agreements or in the applicable Asbestos Insurance Policy.

**5.3     Resolution of Unliquidated Asbestos Personal Injury Claims.**  Within six (6) months after the establishment of the Asbestos Trust, the Trustees, with the consent of the TAC and the FCR, shall adopt procedures for reviewing and liquidating all Asbestos Personal Injury Claims other than Pre-Petition Liquidated Asbestos Personal Injury Claims, which shall include deadlines for processing the claims.  The procedures shall also require that claimants seeking resolution of unliquidated Asbestos Personal Injury Claims must file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of Sections 6.1 and 6.2.  It is anticipated that the Asbestos Trust shall provide an initial response to the claimant within six (6) months of receiving a completed proof of claim form.

The proof of claim form shall require the claimant to assert his or her claim for the highest Disease Level for which the claim qualifies at the time of filing, and to select Expedited Review or Individual Review as provided below.  Irrespective of the Disease Level alleged on the proof of claim form, all claims shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, and all lower Disease Levels for which the claim may also qualify at the time of filing or in the future shall be treated as subsumed into the higher Disease Level for both processing and payment purposes.

Upon filing of a valid proof of claim form with the required supporting documentation, the claimant shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Section 5.1(a).

**5.3(a)  Expedited Review Process.**

**5.3(a)(1)  In General.**  The Asbestos Trust's Expedited Review Process is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating Asbestos Personal Injury Claims (except those involving Lung Cancer 2 – Disease Level VI and

all Foreign Claims (as defined below), which shall only be liquidated pursuant to the Asbestos

Trust's Individual Review Process), where the claim can easily be verified by the Asbestos Trust

as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level.  Expedited

Review thus provides claimants with a substantially less burdensome process for pursuing

Asbestos Personal Injury Claims than does the Individual Review Process described in Section

5.3(b).  Expedited Review is also intended to provide qualifying claimants with fixed and certain

claims payments.

Claims that undergo Expedited Review and meet the presumptive Medical/Exposure

Criteria for the relevant Disease Level shall be paid the Scheduled Value for the relevant Disease

Level set forth in Section 5.3(a)(3).  However, except for claims involving Other Asbestos

Disease (Disease Level I – Cash Discount Payment), all claims liquidated by Expedited Review

shall be subject to the applicable Payment Percentage.  Except for claims involving Other

Asbestos Disease (Disease Level I – Cash Discount Payment), Asbestos Personal Injury Claims

that arose prior to the entry of the Confirmation Order, and Pre-Petition Liquidated Asbestos

Personal Injury Claims when the claimant has elected to retain the liquidated value, all claims

liquidated by Expedited Review shall be subject to the applicable Maximum Annual Payment,

and the Claims Payment Ratio limitations set forth above.  Claimants holding claims that cannot

be liquidated by Expedited Review because they do not meet the presumptive Medical/Exposure

Criteria for the relevant Disease Level may elect the Asbestos Trust's Individual Review Process

set forth in Section 5.3(b).

Subject to the provisions of Section 5.8, the claimant's eligibility to receive the

Scheduled Value for his or her Asbestos Personal Injury Claim pursuant to the Expedited Review

Process shall be determined solely by reference to the Medical/Exposure Criteria set forth below for each of the Disease Levels eligible for Expedited Review.

        **5.3(a)(2)  Claims Processing Under Expedited Review.**  All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the Asbestos Trust's proof of claim form.  As a proof of claim form is reached in the FIFO Processing Queue, the Asbestos Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review, and shall advise the claimant of its determination.  If the Medical and Exposure Criteria for a Disease Level are determined to have been met, the Asbestos Trust shall tender to the claimant an offer of payment of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos Trust.  If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Asbestos Trust shall disburse payment subject to the limitations of the Maximum Annual Payment and Claims Payment Ratio, if any.

        **5.3(a)(3)  Disease Levels, Scheduled Values and Medical/Exposure Criteria.**  The eight Disease Levels covered by this TDP, together with the Medical/Exposure Criteria for each and the Scheduled Values for the seven Disease Levels eligible for Expedited Review, are set forth below.  These Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all Asbestos Personal Injury Claims filed with the Asbestos Trust (except for a Pre-Petition Liquidated Asbestos Personal Injury Claim where the claimant has elected to retain the liquidated value) on or before the Initial Claims Filing Date provided in Section 5.1 for which the claimant elects the Expedited Review Process.  Thereafter, for purposes of administering the Expedited Review Process and with the consent of the TAC and the FCR, the

Trustees may add to, change, or eliminate Disease Levels, Scheduled Values, or

Medical/Exposure Criteria; develop subcategories of Disease Levels, Scheduled Values or

Medical/Exposure Criteria; or determine that a novel or exceptional asbestos personal injury

claim is compensable even though it does not meet the Medical/Exposure Criteria for any of the

then current Disease Levels.

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| Mesothelioma<br>(Disease Level VIII) | $170,000 | (1) Diagnosis[3] of mesothelioma; and (2) ASARCO Exposure as defined in Section 5.7(b)(3). |
| Lung Cancer 1<br>(Disease Level VII) | $60,000 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos- |

---

[3] The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 5.7.

[4] Evidence of "Bilateral Asbestos-Related Nonmalignant Disease," for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader or other Qualified Physician, (y) a CT scan read by a Qualified Physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification. Evidence submitted to demonstrate (i) or (ii) above must be in the form of a written report stating the results (e.g., an ILO report, a written radiology report or a pathology report). Solely for asbestos claims filed against ASARCO or another defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a Qualified Physician, or (ii) pathology, in each case showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels I, II, III, V and VII. Pathological proof of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982). For all purposes of this TDP, a "Qualified Physician" is a physician who is board-certified (or in the case of Foreign Claims, a physician who is certified or qualified under comparable medical standards or criteria of the jurisdiction in question) in one or more relevant specialized fields of medicine such as pulmonology, radiology, internal medicine or occupational medicine; provided, however, subject to the provisions of Section 5.8, that the requirement for board certification in this provision shall not apply to otherwise qualified physicians whose X-

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| | | Related Nonmalignant Disease[4], (2) six months ASARCO Exposure, (3) Significant Occupational Exposure[5] to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Disease Level VI) | None | (1) Diagnosis of a primary lung cancer; (2) ASARCO Exposure, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |

Lung Cancer 2 (Disease Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer 1 (Disease Level VII) claims. All claims in this Disease Level shall be individually evaluated. The estimated likely average of the individual evaluation awards for this category is $15,000, with such awards capped at $35,000 unless the claim qualifies for Extraordinary Claim treatment.

Disease Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Nonmalignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims shall be treated as having any significant value, especially if the claimant is also a Smoker.[6] In any event, no presumption of validity shall be available for any claims in this

---

ray and/or CT scan readings are submitted for deceased holders of Asbestos Personal Injury Claims.

[5]       The term "Significant Occupational Exposure" is defined in Section 5.7(b)(2).

[6]       There is no distinction between Non-Smokers and Smokers for either Lung Cancer 1 (Disease Level VII) or Lung Cancer 2 (Disease Level VI), although a claimant who meets the more stringent requirements of Lung Cancer 1 (Disease Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the Asbestos Trust. In such a case, absent circumstances that would otherwise reduce the value of the claim, it is anticipated that the liquidated value of the claim might well exceed the $60,000 Scheduled Value for Lung Cancer 1 (Disease Level VII) shown above. "Non-Smoker" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| | | category. |
| Other Cancer (Disease Level V) | $20,000 | (1) Diagnosis of a primary colorectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months ASARCO Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Disease Level IV) | $50,000 | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos, plus (a) TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months ASARCO Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Nonmalignant Asbestos Disease (Disease Level III) | $7,500 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months ASARCO Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Nonmalignant Asbestos Disease (Disease Level II) | $3,000 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, (2) six months ASARCO Exposure, and (3) five years cumulative occupational exposure to asbestos. |
| Other Asbestos Disease (Disease Level I – Cash Discount Payment) | $400 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy other than mesothelioma, and (2) ASARCO Exposure. |

**5.3(b)  Individual Review Process.**

       **5.3(b)(1)  In General.**  Subject to the provisions set forth below, a claimant may elect to have his or her Asbestos Personal Injury Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in Section 5.3(a)(3).  In addition or alternatively, a claimant may elect to have a claim undergo the Individual Review Process for purposes of determining whether the liquidated value of a claim involving Disease Levels III, IV, V, VII or VIII exceeds the Scheduled Value for the relevant Disease Level also set forth in said provision.  However, until the Asbestos Trust has made an offer on a claim pursuant to Individual Review, the claimant may change his or her Individual Review election and have the claim liquidated pursuant to the Asbestos Trust's Expedited Review Process.  In the event of a change in the processing election, the claimant shall nevertheless retain his or her place in the FIFO Processing Queue.

       The liquidated value of all Foreign Claims payable under this TDP shall be established only under the Asbestos Trust's Individual Review process.  A "**Foreign Claim**" is an Asbestos Personal Injury Claim with respect to which the claimant's exposure to an asbestos-containing product or conduct for which ASARCO has legal responsibility occurred outside of the United States and its Territories and Possessions.

       In reviewing Foreign Claims, the Asbestos Trust shall take into account all relevant procedural and substantive legal rules to which the claims would be subject in the Claimant's Jurisdiction as defined in Section 5.3(b)(2), including the remedies available in the Claimant's Jurisdiction.  The Asbestos Trust shall determine the liquidated value of Foreign Claims based

on historical settlements and verdicts in the Claimant's Jurisdiction as well as the other valuation factors set forth in Section 5.3(b)(2).

For purposes of the Individual Review process for Foreign Claims, the Trustees, with the consent of the TAC and the FCR, may develop separate Medical/Exposure Criteria and standards, as well as separate requirements for physician and other professional qualifications, which shall be applicable to all Foreign Claims channeled to the Asbestos Trust; provided however, that the criteria, standards or requirements shall not effectuate substantive changes to the claims eligibility requirements under this TDP, but rather shall be made only for the purpose of adapting those requirements to the particular physician or other professional licensing provisions and/or medical customs or practices of the foreign country in question.

When the Asbestos Trust has sufficient historical settlement, verdict and other valuation data for claims from a particular foreign jurisdiction, the Trustees, with the consent of the TAC and the FCR, may establish a separate valuation matrix for the particular Foreign Claims based on that data.

### 5.3(b)(1)(A)  Review of Medical/Exposure Criteria.  The

Asbestos Trust's Individual Review Process provides a claimant with an opportunity for individual consideration and evaluation of an Asbestos Personal Injury Claim that fails to meet the presumptive Medical/Exposure Criteria for Disease Levels I–V, VII or VIII.  In such a case, the Asbestos Trust shall either deny the claim or, if the Asbestos Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the Asbestos Trust may offer the claimant a liquidated value amount up to the Scheduled Value for that Disease Level.

**5.3(b)(1)(B)  Review of Liquidated Value.**  Claimants holding claims in Disease Levels III–VIII shall also be eligible to seek Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence.  The Individual Review Process is intended to result in payments equal to the full liquidated value for each claim multiplied by the Payment Percentage; however, the liquidated value of any Asbestos Personal Injury Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review.  Moreover, the liquidated value for a claim involving Disease Levels III–VIII shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3), unless the claim meets the requirements of an Extraordinary Claim described in Section 5.4(a), in which case its liquidated value cannot exceed the maximum extraordinary value set forth in Section 5.4(a) for such claims.  Because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants electing to undergo the Individual Review Process may be paid the liquidated value of their Asbestos Personal Injury Claims later than would have been the case had the claimant elected the Expedited Review Process.  Subject to the provisions of Section 5.8, the Asbestos Trust shall devote reasonable resources to the review of all claims to ensure that there is a reasonable balance maintained in reviewing all classes of claims.

**5.3(b)(2)  Valuation Factors to Be Considered in Individual Review.**  The Asbestos Trust shall liquidate the value of each Asbestos Personal Injury Claim that undergoes Individual Review based on the historic liquidated values of other similarly situated claims in the tort system for the same Disease Level.  The Asbestos Trust shall take into consideration all of the factors that affect the severity of damages and values within the tort system including, but not limited to, credible evidence of (i) the degree to which the

characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability, employment status, disruption of household, family or recreational activities, dependencies, special damages, and pain and suffering; (iii) whether the claimant's damages were (or were not) caused by asbestos exposure, including exposure to an asbestos-containing product, or to conduct that exposed the claimant to an asbestos-containing product, for which ASARCO has legal responsibility (for example, alternative causes, and the strength of documentation of injuries); (iv) the industry of exposure; (v) settlement and verdict histories and other law firms' experience in the Claimant's Jurisdiction for similarly situated claims; and (vi) settlement and verdict histories for the claimant's law firm for similarly situated claims.

For these purposes, the "**Claimant's Jurisdiction**" is the jurisdiction in which the claim was filed (if at all) against ASARCO in the tort system prior to the Petition Date of the Subsidiary Debtors.  If the claim was not filed against ASARCO in the tort system prior to the Petition Date of the Subsidiary Debtors, the claimant may elect as the Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the Asbestos Trust; or (ii) a jurisdiction in which the claimant experienced exposure to an asbestos-containing product or to conduct for which ASARCO has legal responsibility.

With respect to the "Claimant's Jurisdiction," in the event a personal representative or authorized agent makes a claim under this TDP for wrongful death where the governing law of the Claimant's Jurisdiction could only be the Alabama Wrongful Death Statute, the Claimant's Jurisdiction for the claim shall be the Commonwealth of Pennsylvania.  In this situation, the claimant's damages shall be determined pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles.  This choice of

law provision shall only govern the rights between the Asbestos Trust and the claimant including, but not limited to, suits in the tort system pursuant to Section 7.5.  To the extent the Asbestos Trust seeks recovery from any entity that provided insurance coverage to ASARCO, the Alabama Wrongful Death Statute shall govern.

With respect to the "Claimant's Jurisdiction," in the event a claimant makes a claim for compensatory damages that would otherwise satisfy the criteria for payment under this TDP, where the claimant would have been foreclosed from payment because the governing law of the Claimant's Jurisdiction (the "**Foreclosed Jurisdiction**") describes the claim as a claim for "exemplary" or "punitive" damages and the claimant would have no other remedy for compensation under the law of the Foreclosed Jurisdiction, the claimant may elect the Commonwealth of Pennsylvania as the Claimant's Jurisdiction.  In this situation, the claimant's damages shall be determined pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles.  This choice of law provision shall govern only the rights between the Asbestos Trust and the claimant including, but not limited to, suits in the tort system pursuant to Section 7.5.  To the extent the Asbestos Trust seeks recovery from any entity that provided insurance coverage to ASARCO, the law of the Foreclosed Jurisdiction shall govern.

**5.3(b)(3)  Scheduled, Average and Maximum Values.**  The Scheduled, Average and Maximum Values for claims involving Disease Levels I–VIII are the following.

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Mesothelioma (Disease Level VIII) | $170,000 | $280,000 | $900,000 |
| Lung Cancer 1 (Disease Level VII) | $60,000 | $90,000 | $150,000 |

| Scheduled Disease | Scheduled Value | Average Value | Maximum Value |
|---|---|---|---|
| Lung Cancer 2 (Disease Level VI) | None | $15,000 | $35,000 |
| Other Cancer (Disease Level V) | $20,000 | $32,000 | $75,000 |
| Severe Asbestosis (Disease Level IV) | $50,000 | $70,000 | $125,000 |
| Nonmalignant Asbestos Disease (Disease Level III) | $7,500 | $8,000 | $25,000 |
| Nonmalignant Asbestos Disease (Disease Level II) | $3,000 | None | None |
| Other Asbestos Disease – Cash Discount Payment (Disease Level I) | $400 | None | None |

These Scheduled Values, Average Values and Maximum Values shall apply to all Asbestos Personal Injury Claims filed with the Asbestos Trust (except for a Pre-Petition Liquidated Asbestos Personal Injury Claim where the claimant has elected to retain the liquidated value) on or before the Initial Claims Filing Date as provided in Section 5.1. Thereafter, the Asbestos Trust, with the consent of the TAC and the FCR pursuant to Sections 5.7(b) and 6.6(b) of the Asbestos Trust Agreement, may change these valuation amounts for good cause and consistent with other restrictions on the amendment power.

**5.3(b)(4)      Claims Processing Under Individual Review**.  At the conclusion of the Individual Review Process, the Asbestos Trust shall:  (1) determine the liquidated value, if any, of the claim; and (2) advise the claimant of its determination.  If the Asbestos Trust establishes a liquidated value, it shall tender to the claimant an offer of payment of the aforementioned determined value multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos Trust.  If the claimant accepts the offer of payment and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following

which the Asbestos Trust shall disburse payment subject to the limitations of the Maximum Annual Payment and Claims Payment Ratio, if any.

       **5.3(c)  Handling, Litigation and Payment of Asbestos Premises Liability Claims.**  Notwithstanding anything to the contrary in this TDP or the Asbestos Trust Agreement, unless otherwise approved by the TAC and the FCR, this paragraph Section 5.3(c), shall govern the handling of the Asbestos Premises Liability Claims.

       Claimants holding Asbestos Premises Liability Claims who wish to recover on such claims must file a lawsuit against the Asbestos Trust in the federal or state court of the claimant's choosing as permitted under applicable federal or state law. All lawsuits brought against the Asbestos Trust involving Asbestos Premises Liability Claims must be filed by the claimant in his or her own right and name and not as a member of a class.  Service of process on the Asbestos Trust may be made, pursuant to applicable federal or state law where the lawsuit is filed, on the following: **[insert when available]**.

       Where a lawsuit was pending against ASARCO LLC prior to the Petition Date of ASARCO LLC, the lawsuit may proceed, subject, however, to all defenses, including those based on venue, forum non conveniens and jurisdiction; provided, however, that within 180 days of the Effective Date, the plaintiff in the lawsuit must file and serve an amendment to the lawsuit substituting the Asbestos Trust as successor to ASARCO LLC as party defendant.

       The Asbestos Trust shall tender the lawsuit to the applicable Asbestos Insurance Company for defense and indemnification, pursuant to the terms and conditions of the Asbestos In-Place Insurance Coverage and/or CIP Agreements.  The time within which the Asbestos Trust is required to answer or otherwise respond to any summons or complaint involving an Asbestos

Premises Liability Claim that is served on the Asbestos Trust shall automatically be extended by twenty (20) days.

In the event that the Asbestos Insurance Company does not respond to the tender consistent with the terms and conditions of the Asbestos In-Place Insurance Coverage and/or CIP Agreements, the claimant may proceed against the Asbestos Trust for the entry of a judgment provided the claimant covenants not to execute on the judgment.

In exchange for the covenant not to execute on the judgment, the claimant may file a claim with the Asbestos Trust to be processed under Section 5.3(a) or 5.3(b). The claimant shall file a proof of claim with supporting material as provided under Section 6.1, with the claim placed in the FIFO Processing Queue as of the date of the filing of the lawsuit against the Asbestos Trust. The claim will be paid in the order of the FIFO Payment Queue. The Payment Percentage shall apply to the payment of the claim.

In the situation where the Asbestos Insurance Company does not respond to the tender consistent with the terms and conditions of the Asbestos In-Place Insurance Coverage and/or CIP Agreements, the Asbestos Trust will assess the good faith of the Asbestos Insurance Company. If the Asbestos Trust concludes that the Asbestos Insurance Company did not act in good faith, the Asbestos Trust shall provide the claimant with written notice of a right of the claimant to proceed against the Asbestos Insurance Company in accordance with any applicable dispute resolution procedures set forth in the Asbestos In-Place Insurance Coverage and/or CIP Agreements, with the Asbestos Trust subrogated to any recovery by the claimant from the Asbestos Insurance Company to the extent of a payment by the Asbestos Trust to the claimant under this Section 5.3(c). Within ninety (90) days of such written notice but, in no event, not later than six (6) months before the running of the applicable statute of limitations, the claimant

shall provide written notice to the Asbestos Trust of whether the claimant will proceed with mediation, to the extent that mediation is required by any applicable Asbestos In-Place Insurance Coverage and/or CIP Agreements.  The Asbestos Trust shall cooperate with the claimant in the prosecution of the mediation and/or litigation.  In any litigation or mediation arising out of a dispute over the response to a tender of a lawsuit, the Asbestos Insurance Company may assert any right, claim or defense it may have under any applicable Asbestos In-Place Insurance Coverage and/or CIP Agreements. If the claimant elects not to proceed with the mediation, or elects not to pursue litigation that is otherwise permitted under any Asbestos In-Place Insurance Coverage and/or CIP Agreements, the Asbestos Trust reserves the right to commence and prosecute the mediation and/or litigation against the Asbestos Insurance Company.

In the event that the Asbestos Insurance Company accepts the tender of the lawsuit but there is a subsequent determination that the Asbestos Premises Liability Claim is not covered or only partially covered by the CIP Agreements or any other Asbestos Insurance Policy covering Asbestos Premises Liability Claims, the claimant may file a claim with the Asbestos Trust.  The claim shall be placed in the FIFO Processing Queue as of the date of the filing of the lawsuit provided herein, processed under Section 5.3(a) or (b), and paid in the order of the FIFO Payment Queue.  The Payment Percentage shall apply to the payment of the claim.

Notwithstanding any judgment obtained by a claimant in the tort system, no punitive or exemplary damages may be recovered from the Asbestos Trust.

The Asbestos Trust shall define or specify in the Claims Materials to be adopted pursuant to Section 6.1 the procedural mechanisms for the determinations to be made by the Asbestos Trust hereunder.

The holder of both an Asbestos Premises Liability Claim and another Asbestos Personal Injury Claim may proceed under this Section 5.3(c) or under Section 5.3(a) or (b), at the option of the holder of the claim.  An election to proceed under Section 5.3(a) or (b) shall constitute an irrevocable waiver of the right to proceed under Section 5.3(c).  This Section 5.3(c) shall not be amended without the approval of the TAC and the FCR.

    **5.4**    **Categorizing Claims as Extraordinary and/or Exigent Hardship.**

    **5.4(a)  Extraordinary Claims.**  "**Extraordinary Claim**" means an Asbestos Personal Injury Claim that otherwise satisfies the Medical Criteria for Disease Levels II–VIII, and that is held by a claimant whose exposure to asbestos was at least 75% the result of exposure to an asbestos-containing product or to conduct for which ASARCO has legal responsibility, and there is little likelihood of a substantial recovery elsewhere.  All such Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to an award of up to a maximum extraordinary value of five (5) times the Scheduled Value set forth in Section 5.3(b)(3) for claims qualifying for Disease Levels II–V, VII and VIII, and five (5) times the Average Value for claims in Disease Level VI, multiplied by the applicable Payment Percentage.

Any dispute as to Extraordinary Claim status shall be submitted to a special panel established by the Asbestos Trust with the consent of the TAC and the FCR (the "Extraordinary Claims Panel").  All decisions of the Extraordinary Claims Panel shall be final as to the Asbestos Trust and not subject to any further administrative or judicial review by the Asbestos Trust.  A claimant may either accept or reject the decision of the Extraordinary Claims Panel.  In the event the claimant rejects the decision of the Extraordinary Claims Panel, the claimant may proceed under the ADR Procedures provided in Section 5.10.  An Extraordinary Claim, following its liquidation, shall be placed in the FIFO Payment Queue ahead of all other Asbestos Personal

Injury Claims except Disease Level I Claims and Exigent Claims, which shall be paid first in that order in the FIFO Payment Queue, based on the date of liquidation, subject to the Maximum Annual Payment and Claims Payment Ratio described above. For purposes of clarification, holders of Pre-Petition Liquidated Asbestos Personal Injury Claims who have elected to retain the liquidated values will be maintained and paid separately from the FIFO Payment Queue for Asbestos Personal Injury Claims as provided in Section 5.2(a).

**5.4(b)  Exigent Claims.** At any time the Asbestos Trust may liquidate and pay Asbestos Personal Injury Claims that qualify as Exigent Health Claims or Exigent Hardship Claims as defined below ("Exigent Claim"). Exigent Claims may be considered separately no matter what the order of processing otherwise would have been under this TDP. An Exigent Claim, following its liquidation, shall be placed first in the FIFO Payment Queue ahead of all other liquidated Asbestos Personal Injury Claims except Disease Level I Claims and shall be subject to the Maximum Annual Payment and Claims Payment Ratio described above.

**(1)    Exigent Health Claims.** An Asbestos Personal Injury Claim qualifies as an Exigent Health Claim if the claim meets the Medical/Exposure Criteria for Mesothelioma (Disease Level VIII) and the claimant is living when the claim is filed. A claim in Disease Levels IV–VII qualifies as an Exigent Health Claim if the claim meets the Medical/Exposure Criteria for the Disease Level, and the claimant provides a declaration or affidavit, made under penalty of perjury by a physician who has examined the claimant within one hundred twenty (120) days of the date of declaration or affidavit, stating (a) that there is substantial medical doubt that the claimant will survive beyond six (6) months from the date of the declaration or affidavit, and (b) that the claimant's terminal condition is caused by the relevant asbestos-related disease.

(2) **Exigent Hardship Claims**. An Asbestos Personal Injury Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V–VIII), and the Asbestos Trust, in its sole discretion, determines (i) that the claimant needs immediate financial assistance based on the claimant's expenses and all sources of available income, and (ii) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

**5.5    Secondary Exposure Claims.** If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant must seek Individual Review of his or her claim pursuant to Section 5.3(b). In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the Asbestos Trust. In addition, the claimant with secondary exposure must establish that he or she is suffering from one of the eight Disease Levels described in Section 5.3(a)(3) or an asbestos-related disease otherwise compensable under this TDP, that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person was exposed to asbestos mined by ASARCO or products manufactured, produced or distributed by ASARCO or to conduct for which ASARCO has legal responsibility, and that the secondary exposure was a cause of the claimed disease. All other liquidation and payment rights and limitations under this TDP shall be applicable to the claims.

**5.6    Indirect Asbestos Personal Injury Claims.** Indirect Asbestos Personal Injury Claims asserted against the Asbestos Trust based on theories of contribution or indemnification under applicable law shall be treated as valid and paid by the Asbestos Trust subject to the

applicable Payment Percentage if (a) the claim satisfied the requirements of any applicable Bar Date established by the Bankruptcy Court, and is not otherwise disallowed by Section 502(e) of the Bankruptcy Code or subordinated under Section 509(c) of the Bankruptcy Code, and (b) the holder of the claim (the "**Indirect Claimant**") establishes to the satisfaction of the Trustees that (i) the Indirect Claimant has paid the liability and obligation of the Asbestos Trust to the individual claimant to whom the Asbestos Trust would otherwise have had a liability or obligation under this TDP (the "**Direct Claimant**"), (ii) the Direct Claimant and the Indirect Claimant have released the Asbestos Trust from all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitations or repose or by other applicable law.  In no event shall any Indirect Claimant have any rights against the Asbestos Trust superior to the rights of the related Direct Claimant against the Asbestos Trust, including any rights with respect to the timing, amount or manner of payment.  In addition, no indirect Asbestos Personal Injury Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has actually paid the related Direct Claimant.

To establish a presumptively valid indirect Asbestos Personal Injury Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim must also have been fixed, liquidated and paid fully by the Indirect Claimant by settlement (with an appropriate full release in favor of the Asbestos Trust) or a Final Order provided that the claim is valid under the applicable state law.  In any case where the Indirect Claimant has satisfied the claim of a Direct Claimant against the Asbestos Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Asbestos Trust a release in form and substance satisfactory to the Trustees.

If an Indirect Claimant cannot meet the presumptive requirements set forth above, the Indirect Claimant may request that the Asbestos Trust review the indirect Asbestos Personal Injury Claim individually to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has paid all or a portion of a liability or obligation that the Asbestos Trust had to the Direct Claimant as of the Effective Date.  If the Indirect Claimant can show that it has paid all or a portion of a liability or obligation, the Asbestos Trust may reimburse the Indirect Claimant the amount of the liability or obligation so paid, times the then applicable Payment Percentage.  However, in no event shall the reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled.  Further, the liquidated value of any indirect Asbestos Personal Injury Claim paid by the Asbestos Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any Asbestos Personal Injury Claim that might be subsequently asserted by the Direct Claimant against the Asbestos Trust.

Any dispute between the Asbestos Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the ADR Procedures provided in Section 5.10. If the dispute is not resolved pursuant to the ADR Procedures, the Indirect Claimant may litigate the dispute in the tort system pursuant to Sections 5.11 and 7.5.

The Trustees may develop and approve a separate proof of claim form for indirect Asbestos Personal Injury Claims.  Indirect Asbestos Personal Injury Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures to be developed and implemented by the Trustees consistent with the provisions of this Section 5.6, which procedures (a) shall determine the

validity, allowability and enforceability of the claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of the claims as the Asbestos Trust would have afforded the holders of the underlying valid Asbestos Personal Injury Claims.

**5.7     Evidentiary Requirements.**

**5.7(a)  Medical Evidence.**

**5.7(a)(1)  In General.**  All diagnoses of a Disease Level shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least ten (10) years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year latency period.  A finding by a physician after the Effective Date that a claimant's disease is "consistent with" or "compatible with" asbestosis shall not alone be treated by the Asbestos Trust as a diagnosis.[7]

**5.7(a)(1)(A)  Disease Levels I–IV.**  Except for asbestos claims filed against ASARCO or any other defendant in the tort system prior to the Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I–IV) shall be based in the case of a claimant who was living at the time the claim was filed on a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease.  All living claimants must also provide (i) for Disease Levels I–III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above); (ii) for Disease Level IV, an

---

[7]     All diagnoses of Nonmalignant Asbestos Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy.  However, the Asbestos Trust may rebut these presumptions.

ILO reading of 2/1 or greater or pathological evidence of asbestosis, and (iii) for Disease Levels III and IV, pulmonary function testing.[8]

In the case of a claimant who was deceased at the time the claim was filed, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I–IV) shall be based upon (i) either (a) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; (b) pathological evidence of the non-malignant asbestos-related disease; or (c) in the case of Disease Levels I–III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above), and for Disease Level IV, either an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (ii) for either Disease Level III or IV, pulmonary function testing.

**5.7(a)(1)(B)  Disease Levels V–VIII.**  All diagnoses of an asbestos-related malignancy (Disease Levels V–VIII) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease, or (ii) a diagnosis of a malignant Disease Level by a board-certified pathologist or by a pathology report prepared at or on behalf of a hospital accredited by the Joint Commission on Accreditation of Healthcare Organizations ("**JCAHO**").

**5.7(a)(1)(C)  Exception to the Exception for Certain Pre-Petition Claims.**  If the holder of an Asbestos Personal Injury Claim that was filed against

---

[8]  "Pulmonary function testing" or "PFT" shall mean testing that is in material compliance with the quality criteria established by the American Thoracic Society ("**ATS**") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration. PFT performed in a hospital accredited by the JCAHO, or performed, reviewed or supervised by a board certified pulmonologist or other Qualified Physician shall be presumed to comply with ATS standards, and the claimant may submit a summary report of the testing. If the PFT was not performed in an JCAHO-accredited hospital, or performed, reviewed or supervised by a board certified pulmonologist or other Qualified Physician, the claimant must submit the full report of the testing (as opposed to a summary report); provided, however, that if the PFT was conducted prior to the Effective Date and the full PFT report is not available, the claimant must submit a declaration signed by a Qualified Physician or other qualified party, in the form provided by the Asbestos Trust, certifying that the PFT was conducted in material compliance with ATS standards.

ASARCO or any other defendant in the tort system prior to the Petition Date has available a report of a diagnosing physician engaged by the holder or his or her law firm who conducted a physical examination of the holder as described in Sections 5.7(a)(1)(A), or if the holder has filed that medical evidence and/or a diagnosis of the asbestos-related disease by a physician not engaged by the holder or his or her law firm who conducted a physical examination of the holder with another asbestos-related personal injury settlement trust that requires such evidence, without regard to whether the claimant or the law firm engaged the diagnosing physician, the holder shall provide that medical evidence to the Asbestos Trust notwithstanding the exception in Section 5.7(a)(1)(A).

   **5.7(a)(2)  Credibility of Medical Evidence.**  Before making any payment to a claimant, the Asbestos Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The Asbestos Trust may require the submission of X-rays or other diagnostic imaging, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedures to assure that the evidence is reliable.  Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence submitted to ASARCO to settle for payment similar disease cases prior to the Petition Date, or (iii) that is a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge using the same methodology and standard, is presumptively reliable, although the Asbestos Trust may seek to rebut the presumption.  Notwithstanding the foregoing or any other provision of this

TDP, any medical evidence submitted by a physician or entity that the Asbestos Trust has determined, after consulting with the TAC and FCR, to be unreliable shall not be acceptable as medical evidence in support of any Asbestos Personal Injury Claim.

In addition, claimants who otherwise meet the requirements of this TDP for payment of an Asbestos Personal Injury Claim shall be paid irrespective of the results in any litigation at any time between the claimant and any other defendant in the tort system.  However, any relevant evidence submitted in a proceeding in the tort system, other than any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by either the claimant or the Asbestos Trust in any Individual Review proceeding conducted pursuant to 5.3(b) or any Extraordinary Claim proceeding conducted pursuant to 5.4(a).

**5.7(b)  Exposure Evidence.**

**5.7(b)(1)  In General.**  As set forth above in Section 5.3(a)(3), to qualify for any Disease Level, the claimant must demonstrate a minimum exposure to any products or materials containing asbestos that were mined, manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by ASARCO (or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products or operations ASARCO allegedly has liability or is otherwise liable). Claims based on conspiracy theories that involve no exposure to such products or materials are not compensable under this TDP.  To meet the presumptive exposure requirements of Expedited Review set forth in Section 5.3(a)(3), the claimant must show (i) for all Disease Levels, ASARCO Exposure as defined in Section 5.7(b)(3); (ii) for Nonmalignant Asbestos Disease Level II, six (6) months ASARCO Exposure, plus five years cumulative occupational asbestos exposure; and (iii) for Nonmalignant Asbestos

Disease (Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level V) or Lung Cancer 1 (Disease Level VII), the claimant must show six (6) months ASARCO Exposure, plus Significant Occupational Exposure to asbestos as defined below.  If the claimant cannot meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited Review, the claimant may seek Individual Review pursuant to Section 5.3(b) of his or her claim based on exposure to an asbestos-containing product or to conduct for which ASARCO has legal responsibility.

**5.7(b)(2)  Significant Occupational Exposure**.  "**Significant Occupational Exposure**" means employment for a cumulative period of at least five (5) years with a minimum of two (2) years in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) and/or (c).

**5.7(b)(3)  ASARCO Exposure.**  The claimant must demonstrate meaningful and credible exposure:  (A) to any products or materials containing asbestos that were mined, manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by CAPCO or ASARCO (or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products or operations ASARCO allegedly has liability or is otherwise liable) ("**CAPCO Exposure**"); (B) to any products or materials containing asbestos mined, sold

or distributed by LAQ or ASARCO (or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products or operations ASARCO allegedly has liability or is otherwise liable) ("**LAQ Exposure**"); or (C) to asbestos or asbestos-containing materials at premises owned, leased, rented, occupied or controlled by ASARCO (or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products or operations ASARCO allegedly has liability or is otherwise liable) ("**Premises Exposure**").  A holder of an Asbestos Personal Injury Claim attempting to establish Premises Exposure must demonstrate 30 days exposure to asbestos or asbestos-containing materials at premises owned, leased, rented, occupied or controlled by ASARCO.  The holder of an Asbestos Personal Injury Claim asserting more than one category of ASARCO Exposure (as defined below) may only recover on one claim under the TDP.  For purposes of clarification, a claimant demonstrating both CAPCO Exposure and LAQ Exposure may only recover one Asbestos Personal Injury Claim.  A claimant demonstrating CAPCO Exposure or LAQ Exposure and Premises Exposure must make the election provided under Section 5.3(c).  A claimant demonstrating Premises Exposure may proceed with a claim pursuant to Section 5.3(c).

Meaningful and credible exposure evidence under (A), (B) or (C) of this Section 5.7(b)(3) ("**ASARCO Exposure**") may be established by an affidavit or sworn statement of the claimant, by an affidavit or sworn statement of a co-worker or the affidavit or sworn statement of a family member in the case of a deceased claimant (providing the Asbestos Trust finds the evidence reasonably reliable), by invoices, employment, construction or similar records, or by other credible evidence.  The specific exposure information required by the Asbestos Trust to

process a claim under either Expedited or Individual Review shall be set forth on the proof of claim form to be used by the Asbestos Trust.  The Asbestos Trust may also require submission of other or additional evidence of exposure when deemed necessary.

Evidence submitted to establish proof of ASARCO Exposure is for the sole benefit of the Asbestos Trust, not third parties or defendants in the tort system.  The Asbestos Trust has no need for, and therefore claimants are not required to furnish the Asbestos Trust with, evidence of exposure to specific asbestos products other than those for which ASARO has legal responsibility, except to the extent such evidence is required elsewhere in this TDP.  Similarly, failure to identify ASARCO Exposure in the claimant's underlying tort action, or to other bankruptcy trusts, does not preclude the claimant from recovering from the Asbestos Trust, provided the claimant otherwise satisfies the medical and exposure requirements of this TDP.

**5.8    Claims Audit Program.**  The Asbestos Trust, with the consent of the TAC and the FCR, may develop methods for auditing the reliability of medical evidence, including additional reading of X-rays and other diagnostic imaging, and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products mined, manufactured or distributed by ASARCO prior to April 11, 2005.  In the event that the Asbestos Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Asbestos Trust, it may decline to accept additional evidence from the provider in the future.

Further, in the event that an audit reveals that fraudulent information has been provided to the Asbestos Trust, the Asbestos Trust may penalize any claimant or claimant's attorney by disallowing the Asbestos Personal Injury Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and

any future audit or audits, reordering the priority of payment of all affected claimants' Asbestos Personal Injury Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152, and seeking sanctions from the Bankruptcy Court.

**5.9     Second Disease (Malignancy) Claims.**  The holder of an Asbestos Personal Injury Claim involving a non-malignant asbestos-related disease (Disease Levels I–IV) may assert a new Asbestos Personal Injury Claim against the Asbestos Trust for a malignant disease (Disease Levels V–VIII) that is subsequently diagnosed.  Any additional payments to which the claimant may be entitled with respect to the malignant asbestos-related disease shall not be reduced by the amount paid for the non-malignant asbestos-related disease, provided that the malignant disease had not been diagnosed by the time the claimant was paid with respect to the original claim involving the non-malignant disease.

**5.10    Arbitration.**

**5.10(a)  Establishment of ADR Procedures.**  The Asbestos Trust, with the consent of the TAC and the FCR, shall institute pro bono evaluation, mediation and binding and non-binding arbitration procedures in accordance with the Alternative Dispute Resolution Procedures ("**ADR Procedures**"), included in Attachment A hereto or to be attached as an exhibit to the Claims Materials to be prepared by the Asbestos Trust under Section 6.1, for resolving disputes concerning whether a settlement agreement with ASARCO is binding and judicially enforceable in the absence of a Final Order of the Bankruptcy Court; determining whether the Asbestos Trust's rejection or denial of a claim was proper; determining whether the claimant's medical condition or exposure history meets the requirements of this TDP for purposes of

- 1 -

categorizing a claim involving Disease Levels I–VIII; or determining any other dispute expressly made eligible for ADR Proceedings by this TDP.  Pro bono evaluation, mediation, binding and non-binding arbitration shall also be available for resolving disputes over the liquidated value of a claim involving Disease Levels II–VIII, as well as disputes over the unpaid portion of a Pre-Petition Liquidated Asbestos Personal Injury Claim described in Section 5.2 and disputes over the validity of an indirect Asbestos Personal Injury Claim.

In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in Section 5.7.  In the case of an arbitration involving the liquidated value of a claim involving Disease Levels II–VIII, the arbitrator shall consider the same valuation factors that are set forth in Section 5.3(b)(2).  In order to facilitate the Individual Review Process, the Asbestos Trust may from time to time develop a valuation model that enables the Asbestos Trust to efficiently make initial liquidated value offers on those claims in the Individual Review Process.  In an arbitration involving any such claim, the Asbestos Trust shall neither offer into evidence or describe any such model nor assert that any information generated by the model has any evidentiary relevance or should be used by the arbitrator in determining the presumed correct liquidated value in the arbitration.  The underlying data that was used to create the model may be relevant and may be made available to the arbitrator but only if provided to the claimant or his or her counsel ten days prior to the arbitration proceeding.  With respect to all claims eligible for arbitration, the claimant, but not the Asbestos Trust, may elect either non-binding or binding arbitration.  The ADR Procedures set forth in Attachment A hereto or to be attached as an exhibit to the Claims Materials may be modified by the Asbestos Trust with the consent of the TAC and the FCR.

5.10(b)  **Claims Eligible for Arbitration**.  Except as otherwise provided herein, in order to be eligible for arbitration, the claimant must first complete the Individual Review Process with respect to the disputed issue. The claimant may elect to submit to pro bono evaluation or to mediate the disputed issue prior to arbitration as set forth in the ADR Procedures.  Individual Review shall be treated as completed for these purposes when the claim has been individually reviewed by the Asbestos Trust, the Asbestos Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the Asbestos Trust of the rejection in writing.  Individual Review shall also be treated as completed if the Asbestos Trust has rejected the claim.

5.10(c)  **Limitations on and Payment of Arbitration Awards**.  In the case of a claim involving Disease Levels I and II, the arbitrator shall not return an award in excess of the Scheduled Value for such claim.  In the case of a non-Extraordinary Claim involving Disease Levels III–VIII, the arbitrator shall not return an award in excess of the Maximum Value for the appropriate Disease Level as set forth in Section 5.3(a)(3), and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the maximum extraordinary value for the claim as set forth in Section 5.4(a).  The claim of a claimant who submits to arbitration and who accepts the arbitral award shall be placed in the FIFO Payment Queue as of the date of the arbitral award, and paid subject to the application of the Maximum Annual Payment, Claims Payment Ratio and Payment Percentage, as applicable.

5.11     **Litigation.**

5.11(a)  **In General.**  Claimants who elect non-binding arbitration and then reject the arbitral award retain the right to institute a lawsuit in the tort system against the Asbestos Trust pursuant to Section 7.5.  The holder of an Asbestos Premises Liability Claim may recover

any judgment from the Asbestos Insurance Company to the extent of coverage.  All other claimants shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the Asbestos Trust's available cash only as provided in Section 7.6.

**5.11(b)  Asbestos Personal Injury Claims Covered by Asbestos Insurance Policies.**  Notwithstanding any provision of this TDP, the holder of an Asbestos Personal Injury Claim who contends that the claim is covered by an Asbestos Insurance Policy may request that the Asbestos Trust suspend processing of the claim pending liquidation of the value of the claim by litigation in the tort system and the Asbestos Trust, with the consent of the TAC and the FCR, shall deal with that request appropriately.

**5.11(c)  The Right to Establish Certain Procedures.**  The Asbestos Trust has the right to establish procedures for claimants who hold direct action rights against an Asbestos Insurance Company other than a Settling Asbestos Insurance Company to pursue such rights in the tort system with the consent of the TAC and the FCR.

## SECTION VI

### Claims Materials

**6.1     Claims Materials.**  The Asbestos Trust shall prepare suitable and efficient claims materials ("**Claims Materials**") for all Asbestos Personal Injury Claims, and shall provide the Claims Materials to the claimants upon written request.  The proof of claim form shall require the claimant to assert the highest Disease Level for which the claim qualifies at the time of filing. The proof of claim form shall also include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.  In developing its claim filing procedures, the Asbestos Trust shall make every effort to provide claimants with the opportunity to utilize currently available technology at their discretion,

including filing claims and supporting documentation over the internet or by other electronic means.  The proof of claim form to be used by the Asbestos Trust shall be developed by the Asbestos Trust and submitted to the TAC and the FCR for approval; it may be changed by the Asbestos Trust with the consent of the TAC and the FCR.  The Asbestos Trust shall also prepare procedures as otherwise mandated by this TDP.

       **6.2**    **Content of Claims Materials.**  The Claims Materials shall include a copy of this TDP, instructions adopted by the Trustees, and a detailed proof of claim form.  If feasible, the forms used by the Asbestos Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations.  The claimant may, but shall not be required to, provide the Asbestos Trust with evidence of recovery from other defendants and claims resolution organizations.

       **6.3**    **Withdrawal or Deferral of Claims.**  A claimant can withdraw an Asbestos Personal Injury Claim at any time upon written notice to the Asbestos Trust and file another claim subsequently, provided, however, that the subsequent claim must be filed within the applicable statute of limitations in effect at the time the claim was initially filed.  A claim filed after withdrawal shall be given a place in the FIFO Processing Queue based on the date of the subsequent filing.  A claimant can also request that the processing of his or her Asbestos Personal Injury Claim by the Asbestos Trust be deferred for a period not to exceed two (2) years without affecting the status of the claim for statute of limitations purposes, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue.  During the period of deferral, a sequencing adjustment on the claimant's Asbestos Personal Injury Claim as provided in Section 7.4 shall not accrue and payment of a sequencing adjustment shall be deemed waived by the claimant.  Except for Asbestos Personal Injury Claims held by

representatives of deceased or incompetent claimants for which court or probate approval of the Asbestos Trust's offer is required, or an Asbestos Personal Injury Claim for which deferral status has been granted, a claim shall be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates ADR Procedures within six (6) months of the Asbestos Trust's written offer of payment or rejection of the claim.  Upon written request and good cause, the Asbestos Trust may extend the withdrawal or deferral period for an additional six (6) months.

      **6.4**    **Filing Requirements and Fees.**  The Trustees shall have the discretion to determine, with the consent of the TAC and the FCR, (a) whether a claimant must have previously filed an asbestos-related personal injury claim in the tort system to be eligible to file the claim with the Asbestos Trust and (b) whether a filing fee should be required for any Asbestos Personal Injury Claims.

      **6.5**    **Confidentiality of Claimants' Submissions.**  All submissions to the Asbestos Trust by a holder of an Asbestos Personal Injury Claim or a proof of claim form and materials related to the claim shall be treated as made in the course of settlement discussions between the holder and the Asbestos Trust, and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including but not limited to those directly applicable to settlement discussions.  The Asbestos Trust will preserve the confidentiality of the claimant's submissions, and shall disclose the contents thereof only with the permission of the holder to another trust established for the benefit of asbestos personal injury claimants pursuant to Section 524(g) and/or Section 105 of the Bankruptcy Code or other applicable law, to such other persons as authorized by the holder, or in response to a valid subpoena.  Furthermore, the Asbestos Trust shall provide counsel for the holder a copy of any subpoena as soon as practical. The Asbestos Trust shall on its own initiative or on request of the claimant take all necessary and

appropriate steps to preserve the privileges.  Notwithstanding anything in the foregoing to the contrary, with the consent of the TAC and the FCR, the Asbestos Trust may, in specific limited circumstances, disclose information, documents or other materials reasonably necessary in the Asbestos Trust's judgment to preserve, litigate, resolve or settle coverage, or to comply with an applicable obligation under an insurance policy or settlement agreement within the Asbestos Insurance Policies or the Asbestos Insurance Settlement Agreements; provided, however, that the Asbestos Trust shall take any and all steps reasonably feasible in its judgment to preserve the further confidentiality of such information, documents and materials, and prior to the disclosure of such information, documents or materials to a third party, the Asbestos Trust shall receive from the third party a written agreement of confidentiality that (a) ensures that the information, documents and materials provided by the Asbestos Trust shall be used solely by the receiving party for the purpose stated in the agreement and (b) prohibits any other use or further dissemination of the information, documents and materials by the third party.

**SECTION VII**

**<u>General Guidelines for Liquidating and Paying Claims</u>**

**7.1**     **Costs Considered.**  Notwithstanding any provisions of this TDP to the contrary, the Trustees shall give appropriate consideration to the cost of investigating and uncovering invalid Asbestos Personal Injury Claims so that the payment of valid Asbestos Personal Injury Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting an Asbestos Personal Injury Claim.  The Trustees shall have discretion regarding the amount of transaction costs to be expended by the Asbestos Trust so that valid Asbestos Personal Injury Claims are not unduly further impaired by the costs of additional investigation.  Nothing herein shall prevent the Trustees, in appropriate circumstances, from

contesting the validity of any claim against the Asbestos Trust whatever the costs, or declining to accept medical evidence from sources that the Trustees have determined to be unreliable pursuant to Section 5.7(a)(2) or to the Claims Audit Program described in Section 5.8.

**7.2     Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.**  Consistent with the provisions hereof and subject to the FIFO Processing and Payment Queues, the Maximum Annual Payment and the Claims Payment Ratio requirements set forth above, the Trustees shall proceed as quickly as possible to liquidate valid Asbestos Personal Injury Claims, and shall make payments to holders of claims in accordance with this TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner.

Because the Asbestos Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, payments may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants.  However, the Trustees shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Trustees, the purposes of the Asbestos Trust, the established allocation of funds to claims in Categories A and B, and the practical limitations imposed by the inability to predict the future with precision.

In the event that the Asbestos Trust faces temporary periods of limited liquidity, the Trustees may, with the consent of the TAC and the FCR, suspend the normal order of payment and may temporarily limit or suspend payments altogether, and may offer a Reduced Payment Option as described in Section 2.5.

**7.3     Punitive Damages.**  In determining the value of any liquidated or unliquidated Asbestos Personal Injury Claim, punitive or exemplary damages, *i.e.*, damages other than

compensatory damages, shall not be considered or allowed, notwithstanding their availability in the tort system.

Similarly, no punitive or exemplary damages shall be payable with respect to any claim litigated against the Asbestos Trust in the tort system pursuant to Sections 5.11 and 7.5. The only damages that may be awarded pursuant to this TDP to Alabama claimants who are deceased and whose personal representatives pursue their claims only under the Alabama Wrongful Death Statute shall be compensatory damages determined pursuant to the statutory and common law of the Commonwealth of Pennsylvania, without regard to its choice of law principles. Claims asserted by a claimant for compensatory damages that satisfy the criteria for payment under this TDP, where the claimant would have been foreclosed from payment because the governing law of the Foreclosed Jurisdiction defines the claim as "exemplary" or "punitive" damages and the claimant would have no other remedy for compensation under the law of the Foreclosed Jurisdiction, shall be treated as compensatory damages determined pursuant to the statutory and common law of the Commonwealth of Pennsylvania, without regard to its choice of law principles.

### 7.4 Sequencing Adjustment.

**7.4(a) In General.** Except for any Asbestos Personal Injury Claim involving Other Asbestos Disease (Disease Level I – Cash Discount Payment) and subject to the limitations set forth below, a sequencing adjustment shall be paid on all Asbestos Personal Injury Claims with respect to which the claimant has had to wait a year or more for payment following the date the claim was placed in the FIFO Processing Queue, or, with respect to certain holders of Pre-Petition Liquidated Asbestos Personal Injury Claims, the Petition Date, provided, however, that no claimant shall receive a sequencing adjustment for a period in excess of seven

(7) years.  The sequencing adjustment factor shall be three percent (3%) per annum for each of the first five (5) years after the Effective Date; thereafter, the Asbestos Trust shall have the discretion to change the sequencing adjustment factor with the consent of the TAC and the FCR.

**7.4(b)  Unliquidated Asbestos Personal Injury Claims**.  A sequencing adjustment shall be payable on the Scheduled Value of any Asbestos Personal Injury Claim that meets the requirements of Disease Levels II–V, VII and VIII, liquidated under this TDP by Expedited Review, Individual Review, or the ADR Procedures.  No sequencing adjustment shall be paid on any claim involving Disease Level I or on any claim liquidated in the tort system pursuant to Sections 5.3(c), 5.11 and 7.5.  The sequencing adjustment on an Asbestos Personal Injury Claim liquidated under this TDP that meets the requirements of Disease Level VI shall be based on the Average Value for that Disease Level.  Sequencing adjustments on all claims under this Section 7.4(b) shall be measured from the date of payment back to the date that is one year after the date the claim was placed in the FIFO Processing Queue.

**7.4(c)  Pre-Petition Liquidated Asbestos Personal Injury Claims.**  A sequencing adjustment shall be payable on the liquidated value of a Pre-Petition Liquidated Asbestos Personal Injury Claim where the claimant has elected to retain the liquidated value as described in Section 5.2(a).  The sequencing adjustment shall be measured from the date of payment back to the date that is one year after the Petition Date.

**7.5     Suits in the Tort System.**  If the holder of a disputed claim disagrees with the Asbestos Trust's determination regarding the Disease Level of the claim, the claimant's exposure history or the liquidated value of the claim, and if the holder has first submitted the claim to non-binding arbitration as provided in Section 5.10, the claimant may file a lawsuit in the Claimant's Jurisdiction as defined in Section 5.3(b)(2).  Any lawsuit must be filed by the claimant in her or

her own right and name and not as a member or representative of a class, and no lawsuit may be consolidated with any other lawsuit.  All defenses (including, with respect to the Asbestos Trust, all defenses which could have been asserted by ASARCO) shall be available to both sides at trial; however, the Asbestos Trust may waive any defense and/or concede any issue of fact or law.  If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim form was filed with the Asbestos Trust, the case shall be treated as a personal injury case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim.

      **7.6**     **Payment of Judgments for Money Damages.**  If and when a claimant obtains a judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the date on which the judgment became final.  Thereafter, the claimant shall receive from the Asbestos Trust an initial payment (subject to the applicable Payment Percentage, the Maximum Annual Payment and the Claims Payment Ratio provisions set forth above) of an amount equal to the greater of (i) the Asbestos Trust's last offer to the claimant or (ii) the award that the claimant declined in non-binding arbitration; provided, however, that in no event shall the payment amount exceed the amount of the judgment obtained in the tort system.  The claimant shall receive the balance of the judgment, if any, in five (5) equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the applicable Payment Percentage, the Maximum Annual Payment and the Claims Payment Ratio provisions above in effect on the date of the payment of the subject installment).

      In the case of a claim involving Disease Levels I and II, the total amounts paid with respect to the claim shall not exceed the Scheduled Value for that Disease Level.  In the case of non-Extraordinary Claims involving Disease Levels III–VIII, the total amounts paid with respect to the

claims shall not exceed the Maximum Values for the Disease Levels set forth in Section 5.3(b)(3). In the case of Extraordinary Claims, the total amounts paid with respect to the claims shall not exceed the maximum extraordinary values for the claims set forth in Section 5.4(a). Under no circumstances shall (a) sequencing adjustments be paid pursuant to Section 7.4 or (b) interest paid under any statute on any judgments obtained in the tort system.

A judgment on an Asbestos Premises Liability Claim entered under Section 5.3(c) shall not be subject to this Section 7.6.

**7.7**    **Releases.**  The Trustees shall have the discretion to determine the form and substance of the releases to be provided to the Asbestos Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the Asbestos Trust.  As a condition to making any payment to a claimant, the Asbestos Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law.  If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant may, in the discretion of the Asbestos Trust, constitute such a release.  Holders of Asbestos Premises Liability Claims paid by an Asbestos Insurance Company shall also execute any releases required by the Insurer.

**7.8**    **Third-Party Services.**  Nothing in this TDP shall preclude the Asbestos Trust from contracting with another asbestos claims resolution organization to provide services to the Asbestos Trust so long as decisions about the categorization and liquidated value of Asbestos Personal Injury Claims are based on the relevant provisions of this TDP, including the Disease Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

**7.9** **Asbestos Trust Disclosure of Information**.  Periodically, but not less often than once a year, the Asbestos Trust shall make available to claimants and other interested parties, the number of claims by Disease Levels that have been resolved by the Individual Review Process and by the ADR Procedures as well as by litigation in the tort system indicating the amounts of the awards and the averages of the awards by jurisdiction.

# SECTION VIII

### Miscellaneous

**8.1** **Amendments.**  Except as otherwise provided herein and in the CIP Agreements, the Trustees may amend, modify, delete, or add to any provisions of this TDP (including, without limitation, amendments to conform this TDP to advances in scientific or medical knowledge or other changes in circumstances), provided they first obtain the consent of the TAC and the FCR pursuant to the Consent Process set forth in Sections 5.7(b) and 6.6(b) of the Asbestos Trust Agreement, except that the right to amend the Claims Payment Ratio is governed by the restrictions in Section 2.5, and the right to adjust the Payment Percentage is governed by Section 4.2.  Nothing herein is intended to preclude the TAC or the FCR from proposing to the Trustees, in writing, amendments to this TDP.  Any amendment proposed by the TAC or the FCR shall remain subject to Section 7.3 of the Asbestos Trust Agreement.

**8.2** **Severability.**  A determination that any provision contained in this TDP is unenforceable shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TDP.  Should any provision contained in this TDP be determined to be inconsistent with or contrary to ASARCO's obligations to any insurance company providing insurance coverage to ASARCO in respect of claims for personal injury based on exposure to an asbestos-containing product or to conduct for which ASARCO has legal responsibility, the

Asbestos Trust with the consent of the TAC and the FCR may amend this TDP and/or the

Asbestos Trust Agreement to make the provisions of either or both documents consistent with

the duties and obligations of ASARCO to the insurance company.

**8.3    Governing Law.**  Except for purposes of determining the liquidated value of any

Asbestos Personal Injury Claim, administration of this TDP shall be governed by, and construed

in accordance with, the laws of the State of Delaware.  The law governing the liquidation of

Asbestos Personal Injury Claims in the case of Individual Review, pro bono evaluation,

mediation, arbitration or litigation in the tort system shall be the law of the Claimant's

Jurisdiction as described in Section 5.3(b)(2).

**ASARCO LLC and certain related Debtors**

**ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION
PROCEDURES**

*TABLE OF CONTENTS*

Page

SECTION I — Introduction..................................................................................................... 2

    1.1    Purpose...........................................................................................................2
    1.2    Interpretation..................................................................................................2
    1.3    Definitions......................................................................................................2

SECTION II — Overview ...................................................................................................... 3

    2.1    Asbestos Trust Goals .....................................................................................3
    2.2    Claims Liquidation Procedures......................................................................5
    2.3    Application of the Payment Percentage .........................................................7
    2.4    Asbestos Trust's Determination of the Maximum Annual Payment ............8
    2.5    Claims Payment Ratio....................................................................................9
    2.6    Indirect Asbestos Personal Injury Claims...................................................12

SECTION III — TDP Administration .......................................................................... 12

3.1    Trust Advisory Committee and Future Claims' Representative .................................12
3.2    Consent and Consultation Procedures ...................................................................12

SECTION IV  — Payment Percentage; Periodic Estimates .......................................... 13

4.1    Uncertainty of ASARCO's Personal Injury Asbestos Liabilities ..............................13
4.2    Computation of Payment Percentage ....................................................................13
4.3    Applicability of the Payment Percentage ...............................................................14

SECTION V — Resolution of Unsecured Asbestos Personal Injury Claims ............................. 16

5.1    Ordering, Processing and Payment of Claims ........................................................16
       (a)    Ordering of Claims ..................................................................................... 16
              (1)    Establishment of the FIFO Processing Queue ................................... 16
              (2)    Effect of Statutes of Limitations and Repose ................................... 18
       (b)    Payment of Claims ..................................................................................... 19
       (c)    Effect of Claims Filed in the Bankruptcy Case ............................................ 20
5.2    Resolution of Pre-Petition Liquidated Asbestos Personal Injury Claims ...................20
       (a)    Processing and Payment – ASARCO Identified ........................................... 20
       (b)    Processing and Payment – Claimant Identified ........................................... 21
5.3    Resolution of Unliquidated Unsecured Asbestos Personal Injury Claims ..................23
       (a)    Expedited Review Process ........................................................................... 24
              (1)    In General ..................................................................................... 24
              (2)    Claims Processing Under Expedited Review ..................................... 25
              (3)    Disease Levels, Scheduled Values and Medical/Exposure
                     Criteria ......................................................................................... 26
       (b)    Individual Review Process ........................................................................... 29
              (1)    In General ..................................................................................... 29
                     (A)    Review of Medical/Exposure Criteria............................... 31
                     (B)    Review of Liquidated Value .............................................. 31
              (2)    Valuation Factors to Be Considered in Individual Review ............. 32
              (3)    Scheduled, Average and Maximum Values ...................................... 34
              (4)    Claims Processing Under Individual Review .................................. 35
       (c)    Handling, Litigation and Payment of Asbestos Premises Liability
              Claims ....................................................................................................... 35
5.4    Categorizing Claims as Extraordinary and/or Exigent Hardship................................38
       (a)    Extraordinary Claims.................................................................................. 38
       (b)    Exigent Claims........................................................................................... 39
              (1)    Exigent Health Claims ................................................................... 39
              (2)    Exigent Hardship Claims ............................................................... 40
5.5    Secondary Exposure Claims .................................................................................40
5.6    Indirect Asbestos Personal Injury Claims ..............................................................40
5.7    Evidentiary Requirements.....................................................................................43

| | | (a) | Medical Evidence ................................................... | 43 |
|---|---|---|---|---|
| | | | (1) | In General............................................... | 43 |
| | | | | (A) | Disease Levels I–IV ................................ | 43 |
| | | | | (B) | Disease Levels V–VIII ............................. | 44 |
| | | | | (C) | Exception to the Exception for Certain Pre-Petition Claims | 44 |
| | | | (2) | Credibility of Medical Evidence | 45 |
| | | (b) | Exposure Evidence ................................................ | 46 |
| | | | (1) | In General............................................... | 46 |
| | | | (2) | Significant Occupational Exposure................. | 47 |
| | | (3) | ASARCO Exposure ............................................... | 47 |
| | 5.8 | Claims Audit Program ...................................................... | 49 |
| | 5.9 | Second Disease (Malignancy) Claims ............................... | 50 |
| | 5.10 | Arbitration....................................................................... | 50 |
| | | (a) | Establishment of ADR Procedures ............................. | 50 |
| | | (b) | Claims Eligible for Arbitration ................................. | 51 |
| | | (c) | Limitations on and Payment of Arbitration Awards....... | 52 |
| | 5.11 | Litigation......................................................................... | 52 |
| | | (a) | In General ............................................................ | 52 |
| | | (b) | Unsecured Asbestos Personal Injury Claims Covered by Asbestos Insurance Policies | 52 |
| | | (c) | The Right to Establish Certain Procedures ................... | 53 |

**SECTION VI — Claims Materials** ......................................................... 53

| | 6.1 | Claims Materials ............................................................. | 53 |
|---|---|---|---|
| | 6.2 | Content of Claims Materials .............................................. | 54 |
| | 6.3 | Withdrawal or Deferral of Claims ...................................... | 54 |
| | 6.4 | Filing Requirements and Fees............................................ | 55 |
| | 6.5 | Confidentiality of Claimants' Submissions .......................... | 55 |

**SECTION VII — General Guidelines for Liquidating and Paying Claims**.................. 56

| | 7.1 | Costs Considered ............................................................. | 56 |
|---|---|---|---|
| | 7.2 | Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity | 57 |
| | 7.3 | Punitive Damages ............................................................ | 57 |
| | 7.4 | Sequencing Adjustment .................................................... | 58 |
| | | (a) | In General ............................................................ | 58 |
| | | (b) | Unliquidated Unsecured Asbestos Personal Injury Claims ............... | 59 |
| | | (c) | Pre-Petition Liquidated Asbestos Personal Injury Claims................ | 59 |
| | 7.5 | Suits in the Tort System.................................................... | 59 |
| | 7.6 | Payment of Judgments for Money Damages ......................... | 60 |
| | 7.7 | Releases........................................................................... | 61 |

7.8     Third-Party Services ..................................................................................61

7.9     Asbestos Trust Disclosure of Information ..................................................62

SECTION VIII — Miscellaneous.............................................................................. 62

8.1     Amendments .............................................................................................62

8.2     Severability ...............................................................................................62

8.3     Governing Law ..........................................................................................63

# ASARCO LLC

## ASBESTOS PERSONAL INJURY SETTLEMENT TRUST DISTRIBUTION PROCEDURES

The ASARCO LLC Asbestos Personal Injury Settlement Trust Distribution Procedures (the "**TDP**") contained herein provide for resolving all "Unsecured Asbestos Personal Injury Claims" and "Asbestos Premises Liability Claims" as defined herein, including all asbestos-related personal injury and death claims caused by the conduct of and/or the exposure to fibers or products for which ASARCO LLC and/or Lac d'Amiante du Québec Ltée, Lake Asbestos of Quebec, Ltd., LAQ Canada, Ltd., CAPCO Pipe Company, Inc., Cement Asbestos Products Company, Encycle, Inc., ASARCO Consulting, Inc., ALC, Inc., American Smelting and Refining Company, AR Mexican Explorations Inc., Asarco Master, Inc., Asarco Oil and Gas Company, Inc., Bridgeview Management Company, Inc., Covington Land Company, Government Gulch Mining Company, Limited, Southern Peru Holdings, LLC, AR Sacaton, LLC, a Delaware limited liability company, ASARCO Exploration Company, Inc., Wyoming Mining and Milling Company, Alta Mining and Development Company, Tulipan Company, Inc., Blackhawk Mining and Development Company, Limited, Peru Mining Exploration and Development Company, and Green Hill Cleveland Mining Company (collectively referred to as "**ASARCO**"), and their predecessors, successors, and assigns, have legal responsibility as provided in and required by the ASARCO Incorporated and Americas Mining Corporation's Fifth Amended Plan of Reorganization for the Debtors Under Chapter 11 of the United States Bankruptcy Code dated June 22, 2009 (as it may be amended or modified, the "**Plan**")[9] and the

---

[9] Capitalized terms used herein and not otherwise defined shall have the meanings assigned to them in the Plan and the Asbestos Trust Agreement, *provided, however,* that, unless otherwise stated, ASARCO shall have the meaning described in the preamble to this TDP.  Demands channeled to the Asbestos Trust by the Plan shall only be eligible to become an Asbestos Trust Determined Claim if and when they become an Asbestos Personal Injury Claim.

ASARCO LLC Asbestos Personal Injury Settlement Trust Agreement (the "**Asbestos Trust Agreement**").  The Plan and the Asbestos Trust Agreement establish the Asbestos Trust (the "**Asbestos Trust**").  The Trustees of the Asbestos Trust (the "**Trustees**") shall implement and administer this TDP in accordance with the Asbestos Trust Agreement.

## SECTION I

### Introduction

**1.1     Purpose.**  This TDP has been adopted pursuant to the Asbestos Trust Agreement. It is designed to provide fair, equitable and substantially similar treatment for all Unsecured Asbestos Personal Injury Claims and Asbestos Premises Liability Claims.

**1.2     Interpretation.**  Nothing in this TDP shall be deemed to create a substantive right for any claimant.  The rights and benefits provided herein to holders of  Asbestos Personal Injury Claims shall vest in the holders of Asbestos Personal Injury Claims as of the Effective Date.

**1.3     Definitions.**  The following capitalized terms used herein shall have the meanings set forth below:

"Asbestos Premises Liability Claim(s)" means any and all Asbestos Personal Injury Claims against ASARCO that result from exposure to asbestos or asbestos-containing materials at premises owned, leased, rented, occupied or controlled by ASARCO(or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products and operations ASARCO allegedly has liability or is otherwise liable), including but not limited to claims that are covered under the terms and conditions of the Asbestos Insurance Policies,  and specifically including such policies that are subject to prepetition settlement agreements for premises claims, to the extent of the coverage thereunder. **[PLACEHOLDER DEFINITION]**

"Asbestos Trust Determined Claim" means an Asbestos Personal Injury Claim liquidated pursuant to this TDP.

"Chapter 11 Cases" means the cases under chapter 11 of the Bankruptcy Code pending in the United States Bankruptcy Court for the Southern District of Texas, Corpus Christi Division, jointly administered and known as In re ASARCO LLC et al., Case No. 05-21207.

"CIP Agreements" means Asbestos In-Place Insurance Coverage regarding Asbestos Premises Liability Claims.

"Pre-Petition Liquidated Asbestos Personal Injury Claim" means an Unsecured Asbestos Personal Injury Claim that was liquidated by (i) a binding settlement agreement for the particular claim entered prior to the Petition Date that is judicially enforceable by the claimant, (ii) a jury verdict or non-final judgment in the tort system obtained prior to the Petition Date, or (iii) a judgment that became final and non-appealable prior to the Petition Date.

"Unsecured Asbestos Personal Injury Claim" means any Asbestos Personal Injury Claim that is an Unsecured Claim, other than an Asbestos Premises Liability Claim.

## SECTION II

### Overview

**2.1    Asbestos Trust Goals.**  The goal of the Asbestos Trust is to treat all claimants similarly and equitably and in accordance with the requirements of section 524(g) of the Bankruptcy Code.  This TDP furthers that goal by setting forth procedures for resolving Asbestos Premises Liability Claims either in the tort system or by the TDP, depending on insurance coverage, and for processing and paying Unsecured Asbestos Personal Injury Claims on an impartial, first-in-first-out ("**FIFO**") basis, with the intention of paying all holders of Asbestos Trust Determined Claims over time as equivalent a share as possible of the value of

their claims based on historical values for substantially similar claims in the tort system.[10]  To this end, the TDP establishes a schedule of eight asbestos-related diseases ("**Disease Levels**"), seven of which have presumptive medical and exposure requirements ("**Medical/Exposure Criteria**") and specific liquidated values ("**Scheduled Values**"), and seven of which have anticipated average values ("**Average Values**") and caps on their liquidated values ("**Maximum Values**").  The Disease Levels, Medical/Exposure Criteria, Scheduled Values, Average Values and Maximum Values, which are set forth in Sections 5.3 and 5.4, have been selected and derived from the best available information considering the settlement histories of ASARCO and the rights claimants would have in the tort system absent the bankruptcy, with the intention of achieving a fair allocation of the Asbestos Trust Assets among claimants suffering from different diseases.

  **2.1 (a)  Asbestos Premises Liability Claims.**  Asbestos Premises Liability Claims shall be liquidated pursuant to Section 5.3(c) of this TDP.

  **2.1(b)  Unsecured Asbestos Personal Injury Claims.**  To establish a valid Unsecured Asbestos Personal Injury Claim, a claimant must meet the requirements set forth in this TDP.  Unsecured Asbestos Personal Injury Claims shall be processed, liquidated and paid based on the procedures provided in this TDP.

  Because the assets expected to be contributed to the Asbestos Trust are estimated to be less than the value of all Unsecured Asbestos Personal Injury Claims that are expected to be filed with the Asbestos Trust over its life, the holders of Unsecured Asbestos Personal Injury Claims shall receive a pro rata portion of the liquidated value of their claims (a "**Payment Percentage**")

---

[10]  As used in this TDP, the phrase "in the tort system" shall not include claims asserted against a trust established for the benefit of asbestos personal injury claimants pursuant to Section 524(g) and/or Section 105 of the Bankruptcy Code.

that shall be established pursuant to Sections 2.3 and 4.2.  To the extent that the Asbestos Trust has liability for an Asbestos Trust Determined Claim, the Asbestos Trust shall pay the Asbestos Trust Determined Claim subject to the Maximum Annual Payment, Claims Payment Ratio and Payment Percentage.

      **2.2**     **Claims Liquidation Procedures.**  Unsecured Asbestos Personal Injury Claims shall be processed based on their place in the FIFO Processing Queue to be established pursuant to Section 5.1(a).  The Asbestos Trust shall take all reasonable steps to resolve Unsecured Asbestos Personal Injury Claims as efficiently and expeditiously as possible at each stage of claims processing, including pro bono evaluation, mediation and arbitration, which steps may include, in the Asbestos Trust's sole discretion, conducting settlement discussions with claimants' representatives with respect to more than one claim at a time, provided that the claimants' respective positions in the FIFO Processing Queue are maintained, and each claim is individually evaluated pursuant to the valuation factors set forth in Section 5.3(b)(2).  The Asbestos Trust shall make every effort to resolve each year at least that number of Unsecured Asbestos Personal Injury Claims required to exhaust the Maximum Annual Payment for Category A Claims and Category B Claims, as those terms are defined below.

      The Asbestos Trust shall liquidate all Unsecured Asbestos Personal Injury Claims except Foreign Claims (as defined below) that meet the presumptive Medical/Exposure Criteria of Disease Levels I–V, VII and VIII under the Expedited Review Process described in Section 5.3(a).  Claims involving Disease Levels I–V, VII and VIII that do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may undergo the Asbestos Trust's Individual Review Process described in Section 5.3(b).  In such a case, notwithstanding that the claim does not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level,

the Asbestos Trust may offer the claimant an amount up to the Scheduled Value of that Disease Level if the Asbestos Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system.

Claimants holding claims involving Disease Levels II-VIII may alternatively seek to establish a liquidated value for the claim that is greater than its Scheduled Value by electing the Asbestos Trust's Individual Review Process.  However, the liquidated value of a claim that undergoes the Individual Review Process for valuation purposes may be determined to be less than the Scheduled Value for the applicable Disease Level, and in any event shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3), unless the claim qualifies as an Extraordinary Claim as defined in Section 5.4(a), in which case its liquidated value cannot exceed the maximum extraordinary value specified in Section 5.4(a) for such claims.  Disease Level VI (Lung Cancer 2) claims and all Foreign Claims may be liquidated only pursuant to the Asbestos Trust's Individual Review Process.

Based on ASARCO's claims settlement histories, applicable tort law, and current projections of present and future unliquidated claims, the Scheduled Values and Maximum Values set forth in Section 5.3(b)(3) have been established for each of the Disease Levels that are eligible for Individual Review of their liquidated values, with the expectation that the combination of settlements at the Scheduled Values and those resulting from the Individual Review Process should result in the Average Values also set forth in that provision.

All unresolved disputes over a claimant's medical condition, exposure history and/or the liquidated value of the claim may be submitted to pro bono evaluation and/or mediation and shall be subject to binding or non-binding arbitration as set forth in Section 5.10, at the election of the claimant, under the ADR Procedures that are provided in Attachment A hereto or that will be

attached as an exhibit to the Claims Materials to be prepared by the Asbestos Trust pursuant to Section 6.1. Unsecured Asbestos Personal Injury Claims that are the subject of a dispute with the Asbestos Trust that are not resolved by the ADR Procedures may enter the tort system as provided in Sections 5.11 and 7.5. However, if and when a claimant obtains a judgment in the tort system, the judgment shall be payable (subject to the Payment Percentage, Maximum Annual Payment, and Claims Payment Ratio provisions set forth below) as provided in Section 7.6.

Asbestos Premises Liability Claims shall be handled pursuant to the procedures set forth in Section 5.3(c) of this TDP.

**2.3    Application of the Payment Percentage.**  After the liquidated value of an Unsecured Asbestos Personal Injury Claim other than a claim involving Other Asbestos Disease (Disease Level I – Cash Discount Payment), as defined in Section 5.3(a)(3), is determined pursuant to the procedures set forth herein for Expedited Review, Individual Review, pro bono evaluation, mediation, arbitration, or litigation in the tort system, the claimant shall ultimately receive a pro-rata share of that value based on a Payment Percentage described in Section 4.2. The Payment Percentage shall also apply to all Pre-Petition Liquidated Unsecured Asbestos Personal Injury Claims as provided in Section 5.2 and to all sequencing adjustments paid pursuant to Section 7.4.

The initial Payment Percentage (the "**Initial Payment Percentage**") has been set at 42% for Unsecured Asbestos Personal Injury Claims. The Initial Payment Percentage has been calculated on the assumption that the Average Values set forth in Section 5.3(b)(3) shall be achieved with respect to existing present claims and projected future claims involving Disease Levels II–VIII.

The Payment Percentage may be adjusted upwards or downwards from time to time by the Asbestos Trust with the consent of the Asbestos Trust Advisory Committee (the "**TAC**") and the FCR to reflect then-current estimates of the Asbestos Trust's assets and its liabilities, as well as then-estimated values of then-pending and future claims.  Any adjustment to the Initial Payment Percentage shall be made only pursuant to Section 4.2.  If the Payment Percentage is increased over time, claimants whose claims were liquidated and paid in prior periods under the TDP shall receive additional payments as provided in Section 4.3.  Because there is uncertainty in the prediction of both the number and severity of future Unsecured Asbestos Personal Injury Claims, and the amount of the Asbestos Trust's assets, no guarantee can be made of any Payment Percentage of an Unsecured Asbestos Personal Injury Claim's liquidated value.

       **2.4**      **Asbestos Trust's Determination of the Maximum Annual Payment** .  The Asbestos Trust, in consultation with its advisors and with the consent of the TAC and FCR, shall estimate the amount of cash flow anticipated to be necessary over  the life of the Asbestos Trust by year and prepare a schedule setting forth the maximum annual payment (the "**Maximum Annual Payment**") to be distributed by the Asbestos Trust annually for the life of the Asbestos Trust to ensure that funds shall be available to treat all present and future holders of Unsecured Asbestos Personal Injury Claims as similarly as possible, and taking into account the Payment Percentage provisions set forth in Sections 2.3, 4.2 and 4.3.  The initial Maximum Annual Payment for each year of the life of the Asbestos Trust is **[TO BE DETERMINED]**.  The Maximum Annual Payment may be adjusted annually by the Trustees with the consent of the TAC and the FCR.  The Asbestos Trust's distributions to all claimants for a particular year shall not exceed the Maximum Annual Payment determined for that year plus any excess funds rolled over from earlier years as provided in Section 2.5.

In the event there are insufficient amounts in any year to pay the Asbestos Trust Determined Claims, the available funds shall be paid to the maximum extent to the holders of such claims based on their place in the FIFO Payment Queue. Asbestos Trust Determined Claims for which there are insufficient amounts shall maintain their place in the FIFO Payment Queue and shall be carried to the next year.

The Maximum Annual Payment does not apply to (i) Unsecured Asbestos Personal Injury Claims that arose prior to the entry of the Confirmation Order; (ii) Unsecured Asbestos Personal Injury Claims involving Other Asbestos Disease (Disease Level I) or (iii) Pre-Petition Liquidated Asbestos Personal Injury Claims where the claimant has elected to retain the liquidated value as provided in Section 5.2.

2.5     **Claims Payment Ratio.** Based on ASARCO's claims settlement histories and analysis of present and future claims, a Claims Payment Ratio for Unsecured Asbestos Personal Injury Claims that arise after the entry of the Confirmation Order has been determined which, as of the Effective Date, has been set at 90% for Category A Claims and at 10% for Category B Claims. Category A Claims consist of Unsecured Asbestos Personal Injury Claims involving severe asbestosis and malignancies (Disease Levels IV–VIII). Category B Claims consist of Unsecured Asbestos Personal Injury Claims involving non-malignant Asbestosis or Pleural Disease (Disease Levels II and III). The Claims Payment Ratio does not apply to (i) Unsecured Asbestos Personal Injury Claims that arose prior to the entry of the Confirmation Order, (ii)Unsecured Asbestos Personal Injury Claims involving Other Asbestos Disease (Disease Level I), or (iii) Pre-Petition Liquidated Asbestos Personal Injury Claims where the claimants have elected to retain the liquidated value as provided in Section 5.2.

In each year, after the determination of the Maximum Annual Payment described in Section 2.4, 90% of that amount shall be available to pay Category A Claims and 10% shall be available to pay Category B Claims that have been placed in the FIFO Payment Queue described in Section 5.1(b).  In the event there are insufficient funds in any year to pay the liquidated claims within either or both of the Categories, the available funds allocated to the particular Category shall be paid to the maximum extent to claimants in that Category based on their place in the FIFO Payment Queue.  Claims for which there are insufficient funds allocated to the relevant Category shall be carried over to the next year where they shall maintain their places in the FIFO Payment Queue.  If there are excess funds in either or both Categories, because there is an insufficient amount of Asbestos Trust Determined Claims to exhaust the respective Maximum Annual Payment allocated amount for that Category, then the excess funds for either or both Categories shall roll into the next year, remain dedicated to the respective Category to which they were originally allocated, and added to the Maximum Annual Payment for such next year subject to the Claims Payment Ratio.

The 90%/10% Claims Payment Ratio and its rollover provision shall apply to all Unsecured Asbestos Personal Injury Claims (except (i) Unsecured Asbestos Personal Injury Claims that arose prior to the entry of the Confirmation Order, (ii) Unsecured Asbestos Personal Injury Claims involving Other Asbestos Disease (Disease Level I – Cash Discount Payment), or (iii) Pre-Petition Liquidated Asbestos Personal Injury Claims where the claimants have elected to retain the liquidated value as provided in Section 5.2) and shall not be amended until the third anniversary of the date the Asbestos Trust first accepts for processing proof of claim forms and other materials required to file a claim with the Asbestos Trust.  Thereafter, both the Claims Payment Ratio and its rollover provision shall be continued absent circumstances, such as a

significant change in law or medicine, necessitating amendments to the Claims Payment Ratio to avoid a manifest injustice.  The accumulation, rollover and subsequent delay of payment of claims resulting from the application of the Claims Payment Ratio shall not, in and of itself, constitute such circumstances.  In addition, an increase in the numbers of Category B Claims beyond those predicted or expected at the time of entry of the Confirmation Order shall not be considered as a factor in deciding whether to reduce the percentage allocated to Category A Claims.

In considering whether to amend the Claims Payment Ratio and/or its rollover provisions, the Trustees shall consider the reasons for which the Claims Payment Ratio and its rollover provisions were adopted, the settlement histories that gave rise to its calculation, and the foreseeability or lack of foreseeability of the reasons why there would be any need to make an amendment.  In that regard, the Trustees should keep in mind the interplay between the Payment Percentage and the Claims Payment Ratio as it affects the net cash actually paid to claimants.

In any event, no amendment to the Claims Payment Ratio to reduce the percentage allocated to Category A Claims may be made without the unanimous consent of the TAC members and the consent of the FCR, and the percentage allocated to Category A Claims may not be increased without the consent of the TAC and the FCR.  The consent process set forth in Sections 5.7(b) and 6.6(b) of the Asbestos Trust Agreement shall apply in the event of any amendments to the Claims Payment Ratio.  The Trustees, with the consent of the TAC and the FCR, may offer the option of a reduced Payment Percentage to holders of claims in either Category A or Category B in return for prompter payment (the "**Reduced Payment Option**").

**2.6** **Indirect Asbestos Personal Injury Claims.** As set forth in Section 5.6, indirect Asbestos Personal Injury Claims, if any, shall be subject to the same categorization, evaluation, and payment provisions of this TDP as Unsecured Asbestos Personal Injury Claims.

## SECTION III

## TDP Administration

**3.1** **Trust Advisory Committee and Future Claims' Representative.** Pursuant to the Plan and the Asbestos Trust Agreement, the Asbestos Trust and this TDP shall be administered by the Trustees in consultation with the TAC, which represents the interests of holders of present Unsecured Asbestos Personal Injury Claims including Asbestos Premises Liability Claims, and the FCR, who represents the interests of holders of Unsecured Asbestos Personal Injury Claims including Asbestos Premises Liability Claims that may be asserted in the future. The Trustees shall obtain the consent of the TAC and the FCR on any amendments to this TDP pursuant to Section 8.1, on other matters required by the TDP and on matters provided by Section 2.2(f) of the Asbestos Trust Agreement. The Trustees shall also consult with the TAC and the FCR on such matters as are provided in the TDP and in Section 2.2(e) of the Asbestos Trust Agreement. The initial Trustees, the initial members of the TAC and the initial FCR are identified in the Asbestos Trust Agreement.

**3.2** **Consent and Consultation Procedures.** In those circumstances in which consultation or consent is required, the Trustees shall provide written notice to the TAC and the FCR of the specific amendment or other action that is proposed. The Trustees shall not implement the amendment nor take action unless and until the Trustees, TAC and FCR have engaged in the Consultation Process described in Sections 5.7(a) and 6.6(a), or the Consent Process described in Sections 5.7(b) and 6.6(b), of the Asbestos Trust Agreement, respectively.

## SECTION IV

## Payment Percentage; Periodic Estimates

**4.1**     **Uncertainty of ASARCO's Personal Injury Asbestos Liabilities.**  As discussed above, there is inherent uncertainty regarding ASARCO's total asbestos-related tort liabilities, as well as the total value of the assets available to the Asbestos Trust to pay Unsecured Asbestos Personal Injury Claims.  Consequently, there is inherent uncertainty regarding the amounts that holders of Unsecured Asbestos Personal Injury Claims shall receive.  To seek to ensure substantially equivalent treatment of all present and future Unsecured Asbestos Personal Injury Claims, the Trustees must determine from time to time the percentage of full liquidated value that holders of present and future Unsecured Asbestos Personal Injury Claims shall be likely to receive, *i.e.*, the "Payment Percentage" described in Sections 2.3 and 4.2.

**4.2**     **Computation of Payment Percentage.**  As provided in Section 2.3, the Initial Payment Percentage shall be 42**%** for Unsecured Asbestos Personal Injury Claims, unless the Trustees, with the consent of the TAC and the FCR, determine that the Initial Payment Percentage should be changed to assure that the Asbestos Trust shall be in a financial position to pay holders of claims in substantially the same manner.  Notwithstanding the foregoing, in no event shall the holder of an Unsecured Asbestos Personal Injury Claim that is liquidated by the Asbestos Trust receive a payment less than the product of the application of the Initial Payment Percentage to the liquidated value of the claim, if the claimant voted on the Plan pursuant to the voting procedures approved by the Bankruptcy Court.

The Payment Percentage shall be subject to change pursuant to the terms of this TDP and the Asbestos Trust Agreement if the Trustees with the consent of the TAC and FCR determine that an adjustment is required.  No less frequently than once every three (3) years, commencing

- 13 -

with the first day of January occurring after the third anniversary of the Effective Date, the Trustees shall reconsider the then applicable Payment Percentage to assure that the Payment Percentage is based on accurate and current information.  After such reconsideration, the Trustees may, if necessary, change the Payment Percentage with the consent of the TAC and the FCR.  The Trustees shall also reconsider the then applicable Payment Percentage at shorter intervals if they deem reconsideration to be appropriate or if requested to do so by the TAC or the FCR.

The Trustees must base their determination of the Payment Percentage on current estimates of the number, types, and values of present and future Unsecured Asbestos Personal Injury Claims, the value of the assets then available to the Asbestos Trust for payment of Asbestos Trust Determined Claims, all anticipated administrative and legal expenses, and any other material matters that are reasonably likely to affect the sufficiency of funds to pay a comparable percentage of full value to all holders of Unsecured Asbestos Personal Injury Claims.  When making these determinations, the Trustees shall exercise common sense and flexibly evaluate all relevant factors.  The Payment Percentage applicable to Category A Claims or Category B Claims may not be reduced to alleviate delays in payments of claims in the other Category; both Categories of claims shall receive the same Payment Percentage, but the payment may be deferred as needed, and a Reduced Payment Option may be instituted as described in Section 2.5.

**4.3     Applicability of the Payment Percentage.**  Except as otherwise provided in Section 5.1(b) for Asbestos Trust Determined Claims involving deceased or incompetent claimants for which approval of the Asbestos Trust's offer by a court or through a probate process is required, no holder of any Asbestos Trust Determined Claim, other than an Asbestos

Trust Determined Claim for Other Asbestos Disease (Disease Level I – Cash Discount Payment), shall receive a payment that exceeds the liquidated value of the claim times the Payment Percentage in effect at the time of payment. Asbestos Trust Determined Claims involving Other Asbestos Disease (Disease Level I – Cash Discount Payment) shall not be subject to the Payment Percentage, but shall instead be paid the full amount of their Scheduled Value as set forth in Section 5.3(a)(3).

If a redetermination of the Payment Percentage has been proposed in writing by the Trustees to the TAC and the FCR but has not yet been adopted, the claimant shall receive the lower of the current Payment Percentage or the proposed Payment Percentage.  However, if the proposed Payment Percentage was the lower amount but was not subsequently adopted, the claimant shall thereafter receive the difference between the lower proposed amount and the higher current amount.  Conversely, if the proposed Payment Percentage was the higher amount and was subsequently adopted, the claimant shall thereafter receive the difference between the lower current amount and the higher adopted amount.

There is uncertainty surrounding the amount of the Asbestos Trust's future assets.  There is also uncertainty surrounding the totality of the Unsecured Asbestos Personal Injury Claims to be paid over time, as well as the extent to which changes in existing federal and state law could affect the Asbestos Trust's liabilities under this TDP.  If the value of the Asbestos Trust's future assets increases significantly and/or if the value or volume of Unsecured Asbestos Personal Injury Claims actually filed with the Asbestos Trust is significantly lower than originally estimated, the Asbestos Trust shall use those proceeds and/or claims savings, as the case may be, first to maintain the Payment Percentage then in effect.

If the Trustees, with the consent of the TAC and the FCR, make a determination to increase the Payment Percentage due to a material change in the estimates of the Asbestos Trust's future assets and/or liabilities, the Trustees shall also make supplemental payments to all claimants who have previously been paid by the application of the lower Payment Percentage to the liquidated amount of their claims.  The amount of any supplemental payment shall be the liquidated value of the claim plus any sequencing adjustment paid under Section 7.4 times the newly adjusted Payment Percentage, less all amounts previously paid to the claimant with respect to the claim.

The Trustees' obligation to make a supplemental payment to a claimant shall be suspended in the event the payment in question would be less than $100.00, and the amount of the suspended payment shall be added to the amount of any prior supplemental payment that was also suspended because it would have been less than $100.00.  However, the Trustees' obligation shall resume and the Trustees shall pay any aggregate supplemental payments due the claimant when the total exceeds $100.00.

**SECTION V**

**Resolution of Unsecured Asbestos Personal Injury Claims.**

**5.1     Ordering, Processing and Payment of Claims.**

**5.1(a) Ordering of Claims.**

**5.1(a)(1)  Establishment of the FIFO Processing Queue.**  The Asbestos Trust shall order claims that are sufficiently complete to be reviewed for processing purposes on a FIFO basis except as otherwise provided herein (the "**FIFO Processing Queue**").  For all claims filed on or before the date that is six (6) months after the date that the Asbestos Trust first makes available the proof of claim forms and other claims materials required to file a claim with

- 16 -

the Asbestos Trust (such six month anniversary being referred to herein as the "**Initial Claims Filing Date**"), a claimant's position in the FIFO Processing Queue shall be determined as of the earliest of (i) the date prior to April 11, 2005 (the **"Petition Date of the Subsidiary Debtors"**) that the specific claim was either filed against ASARCO in the tort system or was actually submitted to ASARCO pursuant to an administrative settlement agreement; (ii) the date before the Petition Date of the Subsidiary Debtors that the asbestos claim was filed against another defendant in the tort system if at the time the claim was subject to a tolling agreement with ASARCO; (iii) the date after the Petition Date of the Subsidiary Debtors but before the date that the Asbestos Trust first makes available the proof of claim forms and other claims materials required to file a claim with the Asbestos Trust that the asbestos claim was filed against another defendant in the tort system; (iv) the date after the Petition Date of the Subsidiary Debtors but before the Effective Date that a proof of claim was filed by the claimant against ASARCO in this Chapter 11 proceeding; or (v) the date a ballot was submitted on behalf of the claimant for purposes of voting to accept or reject the Plan pursuant to the voting procedures approved by the Bankruptcy Court.  The Initial Claims Filing Date shall not apply to holders of Pre-Petition Liquidated Asbestos Personal Injury Claims who elect to retain the liquidated values of their claims nor shall it apply to holders of Asbestos Premises Liability Claims.

Following the Initial Claims Filing Date, the claimant's position in the FIFO Processing Queue shall be determined by the date the claim is filed with the Asbestos Trust.  If any claims are filed on the same date, the claimant's position in the FIFO Processing Queue shall be determined by the date of the diagnosis of the asbestos-related disease.  If any claims are filed and diagnosed on the same date, the claimant's position in the FIFO Processing Queue shall be

determined by the claimant's date of birth, with older claimants given priority over younger claimants.

        **5.1(a) (2)  Effect of Statutes of Limitations and Repose.**  All Unsecured Asbestos Personal Injury Claims other than Pre-Petition Liquidated Asbestos Personal Injury Claims must meet either (i) for claims first filed in the tort system against ASARCO prior to the Petition Date, the applicable federal, state or foreign statute of limitations or repose that was in effect at the time of the filing of the claim in the tort system, or (ii) for claims not filed against ASARCO in the tort system prior to the Petition Date, the applicable federal, state or foreign statute of limitations or repose that was in effect at the time of the filing of the claim with the Asbestos Trust.  However, the running of the relevant statute of limitations shall be tolled as of the earliest of (A) the actual filing of the claim against ASARCO prior to the Petition Date of the Subsidiary Debtors or the Petition Date of ASARCO LLC, as the case may be, whether in the tort system or by submission of the claim to ASARCO pursuant to an administrative settlement agreement; (B) the tolling of the claim against ASARCO prior to the Petition Date of the Subsidiary Debtors or the Petition Date of ASARCO LLC, as the case may be, by an agreement or otherwise, provided the tolling agreement was still in effect on the relevant Petition Date; or (C) the Petition Date of the Subsidiary Debtors or the Petition Date of ASARCO LLC, as the case may be.

        If an Unsecured Asbestos Personal Injury Claim meets any of the tolling provisions described in the preceding sentence and the claim was not barred by the applicable federal, state or foreign statute of limitations or repose at the time of the tolling event, it shall be treated as timely filed if it is actually filed with the Asbestos Trust within three (3) years after the Initial Claims Filing Date.  In addition, any claims that were first diagnosed after the Petition Date,

irrespective of the application of any relevant federal, state or foreign statute of limitations or repose, may be filed with the Asbestos Trust within three (3) years after the date of diagnosis or within three (3) years after the Initial Claims Filing Date, whichever occurs later.  The processing of any Unsecured Asbestos Personal Injury Claim by the Asbestos Trust may be deferred at the election of the claimant pursuant to Section 6.3.

**5.1(b)  Payment of Claims.**  Unsecured Asbestos Personal Injury Claims that have been liquidated by the Expedited Review Process as provided in Section 5.3(a), by the Individual Review Process as provided in Section 5.3(b), by pro bono evaluation, mediation or arbitration as provided in Section 5.10, or by litigation in the tort system provided in Section 5.11, shall be paid in FIFO order based on the date their liquidation became final (the "**FIFO Payment Queue**"), all payments being subject to the applicable Payment Percentage, the Maximum Annual Payment, the Claims Payment Ratio, and the sequencing adjustment provided for in Section 7.4, except as otherwise provided herein.

Where the claimant is deceased or incompetent, and the settlement and payment of his or her claim must be approved by a court of competent jurisdiction or through a probate process prior to acceptance of the claim by the claimant's representative, an offer made by the Asbestos Trust on the claim shall remain open so long as proceedings before that court or in that probate process remain pending, provided that the Asbestos Trust has been furnished with evidence that the settlement offer has been submitted to the court or in the probate process for approval.  If the offer is ultimately approved by the court or through the probate process and accepted by the claimant's representative, the Asbestos Trust shall pay the claim in the amount so offered, multiplied by the Payment Percentage in effect at the time the offer was first made.

If any claims are liquidated on the same date, the claimant's position in the FIFO Payment Queue shall be determined by the date of the diagnosis of the claimant's asbestos-related disease.  If any claims are liquidated on the same date and the respective holders' asbestos-related diseases were diagnosed on the same date, the position of those claims in the FIFO Payment Queue shall be determined by the Asbestos Trust based on the dates of the claimants' birth, with older claimants given priority over younger claimants.  For purposes of placement in the FIFO Payment Queue, the date of final liquidation shall be the date the Trustees of the Asbestos Trust approve the Unsecured Asbestos Personal Injury Claim for payment or as otherwise provided for in the ADR Procedures or litigation.

This Section 5.1(b) shall not apply to Asbestos Premises Liability Claims determined in the tort system.

**5.1(c)  Effect of Claims Filed in the Bankruptcy Case.**   Regardless of whether a claimant filed a proof of claim against ASARCO in the Chapter 11 Cases, a claimant must file a claim with the Asbestos Trust in accordance with this TDP in order to be compensated.  Proofs of claim filed against ASARCO in the Chapter 11 Cases shall not be processed and paid by the Asbestos Trust.  Failure to have filed a proof of claim against ASARCO in the Chapter 11 Cases shall not, in and of itself, bar or prohibit liquidation of a claim filed with the Asbestos Trust.

**5.2      Resolution of Pre-Petition Liquidated Asbestos Personal Injury Claims.**

**5.2(a)  Processing and Payment – ASARCO Identified.**  The holder of a Pre-Petition Liquidated Asbestos Personal Injury Claim may file a claim with the Asbestos Trust for the liquidated value of the Pre-Petition Liquidated Asbestos Personal Injury Claim or for a value to be determined under this TDP.

On or before the Effective Date, ASARCO shall deliver to the Asbestos Trust a schedule of the Pre-Petition Liquidated Asbestos Personal Injury Claims with the supporting database (the **"Approved Pre-Petition Liquidated Asbestos Personal Injury Claims"**). The Asbestos Trust shall provide each claimant on the schedule of Approved Pre-Petition Liquidated Asbestos Personal Injury Claims notice of (i) the liquidated amount of the claim, (ii) the right of the claimant to make the election provided in this Section 5.2(a), and (iii) instructions for making the election, and, if electing to retain the liquidated amount of the claim, instructions for executing and delivering the release provided under Section 7.7.

If the holder of the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim elects to retain the liquidated value of the claim, the Asbestos Trust shall pay the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim as soon as practical upon receipt by the Asbestos Trust of a release executed by the claimant. Payment of the liquidated value of the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim shall be subject to the Payment Percentage and the sequencing adjustment provided in Section 7.4, except as otherwise provided herein, but shall not be subject to the Maximum Annual Payment and the Claims Payment Ratio and shall not be subject to Section 5.3.

If the holder of the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim elects to file a claim with the Asbestos Trust to be liquidated under this TDP, the holder shall be deemed to waive the liquidated value of the Approved Pre-Petition Liquidated Asbestos Personal Injury Claim, and the claim shall be processed under Section 5.3.

**5.2(b)  Processing and Payment – Claimant Identified.** If the holder of an Unsecured Asbestos Personal Injury Claim files a claim with the Asbestos Trust for a Pre-Petition Liquidated Asbestos Personal Injury Claim that was not scheduled by ASARCO as an

Approved Pre-Petition Liquidated Asbestos Personal Injury Claim, the claimant must submit all documentation necessary to demonstrate to the Asbestos Trust that the claim was liquidated in the manner described in the definition of Pre-Petition Liquidated Asbestos Personal Injury Claim above, which documentation shall include (A) a court authenticated copy of the jury verdict (if applicable), a non-final judgment (if applicable), a final judgment (if applicable), or an executed settlement agreement (if applicable) and (B) the name, social security number and date of birth of the claimant and the name and address of the claimant's lawyer.

The liquidated value of a Pre-Petition Liquidated Asbestos Personal Injury Claim shall be the unpaid portion of the agreed amount in the binding settlement agreement, the unpaid portion of the amount awarded by the jury verdict or non-final judgment, or the unpaid portion of the amount of the final judgment, as the case may be, plus interest, if any, that has accrued on that amount in accordance with the terms of the agreement, if any, or under applicable state law for settlements or judgments as of the Petition Date of the Subsidiary Debtors; however, except as otherwise provided in Section 7.3, the liquidated value of a Pre-Petition Liquidated Asbestos Personal Injury Claim shall not include any punitive or exemplary damages. Payments of the liquidated values of Pre-Petition Liquidated Asbestos Personal Injury Claims shall be subject to the Payment Percentage and the sequencing adjustment provided in Section 7.4, except as otherwise provided herein, but shall not be subject to the Maximum Annual Payment and the Claims Payment Ratio. In the absence of a Final Order of the Bankruptcy Court determining whether a settlement agreement is binding and judicially enforceable, a dispute between the claimant and the Asbestos Trust over this issue shall be resolved pursuant to the same procedures in this TDP that are provided for resolving the validity and/or liquidated value of an Unsecured

Asbestos Personal Injury Claim (*i.e.*, pro bono evaluation, mediation, arbitration and litigation in the tort system as set forth in Sections 5.10 and 5.11).

Pre-Petition Liquidated Asbestos Personal Injury Claims filed by the claimants and not scheduled as an Approved Pre-Petition Liquidated Asbestos Personal Injury Claim shall be processed and paid in accordance with their order in the FIFO Processing Queue and the FIFO Payment Queue.  Pre-Petition Liquidated Asbestos Personal Injury Claims shall be placed in the FIFO Payment Queue upon a determination by the Asbestos Trust of the unpaid amount of a binding settlement, jury verdict, non-final judgment or final judgment or upon a resolution by mediation, arbitration or litigation. If any Pre-Petition Liquidated Asbestos Personal Injury Claims are filed on the same date, the claimants' position in the FIFO Processing Queue shall be determined by the date of the settlement agreement, jury verdict or judgment, as the case may be. If any Pre-Petition Liquidated Asbestos Personal Injury Claims are placed in either the FIFO Processing Queue or the FIFO Payment Queue on the same dates, the position of the claimants in the respective queue shall be determined by the dates of the claimants' birth, with older claimants given priority over younger claimants.

Pre-Petition Liquidated Asbestos Premises Liability Claims shall be tendered by the Asbestos Trust to the relevant insurer or insurers for handling as provided in the CIP Agreements or in the applicable policies.

**5.3    Resolution of Unliquidated Unsecured Asbestos Personal Injury Claims.**
Within six (6) months after the establishment of the Asbestos Trust, the Trustees, with the consent of the TAC and the FCR, shall adopt procedures for reviewing and liquidating all Unsecured Asbestos Personal Injury Claims other than Pre-Petition Liquidated Asbestos Personal Injury Claims, which shall include deadlines for processing the claims.  The procedures

shall also require that claimants seeking resolution of unliquidated Unsecured Asbestos Personal Injury Claims must file a proof of claim form, together with the required supporting documentation, in accordance with the provisions of Sections 6.1 and 6.2.  It is anticipated that the Asbestos Trust shall provide an initial response to the claimant within six (6) months of receiving a completed proof of claim form.

The proof of claim form shall require the claimant to assert his or her claim for the highest Disease Level for which the claim qualifies at the time of filing, and to select Expedited Review or Individual Review as provided below.  Irrespective of the Disease Level alleged on the proof of claim form, all claims shall be deemed to be a claim for the highest Disease Level for which the claim qualifies at the time of filing, and all lower Disease Levels for which the claim may also qualify at the time of filing or in the future shall be treated as subsumed into the higher Disease Level for both processing and payment purposes.

Upon filing of a valid proof of claim form with the required supporting documentation, the claimant shall be placed in the FIFO Processing Queue in accordance with the ordering criteria described in Section 5.1(a).

### 5.3(a)  Expedited Review Process.

**5.3(a)(1)  In General.**  The Asbestos Trust's Expedited Review Process is designed primarily to provide an expeditious, efficient and inexpensive method for liquidating Unsecured Asbestos Personal Injury Claims (except those involving Lung Cancer 2 – Disease Level VI and all Foreign Claims (as defined below), which shall only be liquidated pursuant to the Asbestos Trust's Individual Review Process), where the claim can easily be verified by the Asbestos Trust as meeting the presumptive Medical/Exposure Criteria for the relevant Disease Level.  Expedited Review thus provides claimants with a substantially less burdensome process

for pursuing Unsecured Asbestos Personal Injury Claims than does the Individual Review Process described in Section 5.3(b).  Expedited Review is also intended to provide qualifying claimants with fixed and certain claims payments.

Claims that undergo Expedited Review and meet the presumptive Medical/Exposure Criteria for the relevant Disease Level shall be paid the Scheduled Value for the relevant Disease Level set forth in Section 5.3(a)(3).  However, except for claims involving Other Asbestos Disease (Disease Level I), all claims liquidated by Expedited Review shall be subject to the applicable Payment Percentage, the Maximum Annual Payment, and the Claims Payment Ratio limitations set forth above.  Claimants holding claims that cannot be liquidated by Expedited Review because they do not meet the presumptive Medical/Exposure Criteria for the relevant Disease Level may elect the Asbestos Trust's Individual Review Process set forth in Section 5.3(b).

Subject to the provisions of Section 5.8, the claimant's eligibility to receive the Scheduled Value for his or her Unsecured Asbestos Personal Injury Claim pursuant to the Expedited Review Process shall be determined solely by reference to the Medical/Exposure Criteria set forth below for each of the Disease Levels eligible for Expedited Review.

**5.3(a)(2)  Claims Processing Under Expedited Review.**  All claimants seeking liquidation of their claims pursuant to Expedited Review shall file the Asbestos Trust's proof of claim form.  As a proof of claim form is reached in the FIFO Processing Queue, the Asbestos Trust shall determine whether the claim described therein meets the Medical/Exposure Criteria for one of the seven Disease Levels eligible for Expedited Review, and shall advise the claimant of its determination.  If the Medical and Exposure Criteria for a Disease Level are determined to have been met, the Asbestos Trust shall tender to the claimant an offer of payment

of the Scheduled Value for the relevant Disease Level multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos Trust.  If the claimant accepts the Scheduled Value and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Asbestos Trust shall disburse payment subject to the limitations of the Maximum Annual Payment and Claims Payment Ratio, if any.

       **5.3(a)(3)  Disease Levels, Scheduled Values and Medical/Exposure Criteria.**  The eight Disease Levels covered by this TDP, together with the Medical/Exposure Criteria for each and the Scheduled Values for the seven Disease Levels eligible for Expedited Review, are set forth below.  These Disease Levels, Scheduled Values, and Medical/Exposure Criteria shall apply to all Unsecured Asbestos Personal Injury Claims filed with the Asbestos Trust (except for a Pre-Petition Liquidated Asbestos Personal Injury Claim where the claimant has elected to retain the liquidated value) on or before the Initial Claims Filing Date provided in Section 5.1 for which the claimant elects the Expedited Review Process.  Thereafter, for purposes of administering the Expedited Review Process and with the consent of the TAC and the FCR, the Trustees may add to, change, or eliminate Disease Levels, Scheduled Values, or Medical/Exposure Criteria; develop subcategories of Disease Levels, Scheduled Values or Medical/Exposure Criteria; or determine that a novel or exceptional asbestos personal injury claim is compensable even though it does not meet the Medical/Exposure Criteria for any of the then current Disease Levels.

| **Disease Level** | **Scheduled Value** | **Medical/Exposure Criteria** |
| --- | --- | --- |
| Mesothelioma (Disease Level VIII) | $170,000 | (1) Diagnosis[11] of mesothelioma; and (2) ASARCO Exposure as defined in Section 5.7(b)(3). |

---

[11]     The requirements for a diagnosis of an asbestos-related disease that may be compensated under the provisions of this TDP are set forth in Section 5.7.

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| Lung Cancer 1 (Disease Level VII) | $70,000 | (1) Diagnosis of a primary lung cancer plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease[12], (2) six months ASARCO Exposure, (3) Significant Occupational Exposure[13] to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |
| Lung Cancer 2 (Disease Level VI) | None | (1) Diagnosis of a primary lung cancer; (2) ASARCO Exposure, and (3) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the lung cancer in question. |

---

[12]     Evidence of "Bilateral Asbestos-Related Nonmalignant Disease," for purposes of meeting the criteria for establishing Disease Levels I, II, III, V, and VII, means either (i) a chest X-ray read by a qualified B reader of 1/0 or higher on the ILO scale or (ii)(x) a chest X-ray read by a qualified B reader or other Qualified Physician, (y) a CT scan read by a Qualified Physician, or (z) pathology, in each case showing either bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification.  Evidence submitted to demonstrate (i) or (ii) above must be in the form of a written report stating the results (e.g., an ILO report, a written radiology report or a pathology report).  Solely for asbestos claims filed against ASARCO or another defendant in the tort system prior to the Petition Date, if an ILO reading is not available, either (i) a chest X-ray or a CT scan read by a Qualified Physician, or (ii) pathology, in each case showing bilateral interstitial fibrosis, bilateral pleural plaques, bilateral pleural thickening, or bilateral pleural calcification consistent with or compatible with a diagnosis of asbestos-related disease, shall be evidence of a Bilateral Asbestos-Related Nonmalignant Disease for purposes of meeting the presumptive medical requirements of Disease Levels I, II, III, V and VII.  Pathological proof of asbestosis may be based on the pathological grading system for asbestosis described in the Special Issue of the Archives of Pathology and Laboratory Medicine, "Asbestos-associated Diseases," Vol. 106, No. 11, App. 3 (October 8, 1982).  For all purposes of this TDP, a "Qualified Physician" is a physician who is board-certified (or in the case of Foreign Claims, a physician who is certified or qualified under comparable medical standards or criteria of the jurisdiction in question) in one or more relevant specialized fields of medicine such as pulmonology, radiology, internal medicine or occupational medicine; provided, however, subject to the provisions of Section 5.8, that the requirement for board certification in this provision shall not apply to otherwise qualified physicians whose X-ray and/or CT scan readings are submitted for deceased holders of Asbestos Personal Injury Claims.

[13]     The term "Significant Occupational Exposure" is defined in Section 5.7(b)(2).

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| | | Lung Cancer 2 (Disease Level VI) claims are claims that do not meet the more stringent medical and/or exposure requirements of Lung Cancer 1 (Disease Level VII) claims.  All claims in this Disease Level shall be individually evaluated.  The estimated likely average of the individual evaluation awards for this category is $15,000, with such awards capped at $40,000 unless the claim qualifies for Extraordinary Claim treatment. |
| | | Disease Level VI claims that show no evidence of either an underlying Bilateral Asbestos-Related Nonmalignant Disease or Significant Occupational Exposure may be individually evaluated, although it is not expected that such claims shall be treated as having any significant value, especially if the claimant is also a Smoker.[14] In any event, no presumption of validity shall be available for any claims in this category. |
| Other Cancer (Disease Level V) | $20,000 | (1) Diagnosis of a primary colorectal, laryngeal, esophageal, pharyngeal, or stomach cancer, plus evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease, (2) six months ASARCO Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the other cancer in question. |
| Severe Asbestosis (Disease Level IV) | $50,000 | (1) Diagnosis of asbestosis with ILO of 2/1 or greater, or asbestosis determined by pathological evidence of asbestos, plus (a) TLC less than 65%, or (b) FVC less than 65% and FEV1/FVC ratio greater than 65%, (2) six months ASARCO |

---

[14]       There is no distinction between Non-Smokers and Smokers for either Lung Cancer 1 (Disease Level VII) or Lung Cancer 2 (Disease Level VI), although a claimant who meets the more stringent requirements of Lung Cancer 1 (Disease Level VII) (evidence of an underlying Bilateral Asbestos-Related Nonmalignant Disease plus Significant Occupational Exposure), and who is also a Non-Smoker, may wish to have his or her claim individually evaluated by the Asbestos Trust.  In such a case, absent circumstances that would otherwise reduce the value of the claim, it is anticipated that the liquidated value of the claim might well exceed the $70,000 Scheduled Value for Lung Cancer 1 (Disease Level VII) shown above.  "Non-Smoker" means a claimant who either (a) never smoked or (b) has not smoked during any portion of the twelve (12) years immediately prior to the diagnosis of the lung cancer.

| Disease Level | Scheduled Value | Medical/Exposure Criteria |
|---|---|---|
| | | Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Nonmalignant Asbestos Disease (Disease Level III) | $8,500 | (1) Diagnosis of Bilateral Asbestos-Related Nonmalignant Disease, plus (a) TLC less than 80%, or (b) FVC less than 80% and FEV1/FVC ratio greater than or equal to 65%, and (2) six months ASARCO Exposure, (3) Significant Occupational Exposure to asbestos, and (4) supporting medical documentation establishing asbestos exposure as a contributing factor in causing the pulmonary disease in question. |
| Nonmalignant Asbestos Disease (Disease Level II) | $2,500 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease, (2) six months ASARCO Exposure, and (3) five years cumulative occupational exposure to asbestos. |
| Other Asbestos Disease (Disease Level I – Cash Discount Payment) | $750 | (1) Diagnosis of a Bilateral Asbestos-Related Nonmalignant Disease or an asbestos-related malignancy other than mesothelioma, and (2) ASARCO Exposure. |

**5.3(b)  Individual Review Process.**

**5.3(b)(1)  In General.**  Subject to the provisions set forth below, a claimant may elect to have his or her Unsecured Asbestos Personal Injury Claim reviewed for purposes of determining whether the claim would be compensable in the tort system even though it does not meet the presumptive Medical/Exposure Criteria for any of the Disease Levels set forth in Section 5.3(a)(3).  In addition or alternatively, a claimant may elect to have a claim undergo the Individual Review Process for purposes of determining whether the liquidated value of a claim involving Disease Levels II, III, IV, V, VII or VIII exceeds the Scheduled Value for the relevant Disease Level also set forth in said provision.  However, until the Asbestos Trust has

made an offer on a claim pursuant to Individual Review, the claimant may change his or her

Individual Review election and have the claim liquidated pursuant to the Asbestos Trust's

Expedited Review Process.  In the event of a change in the processing election, the claimant shall

nevertheless retain his or her place in the FIFO Processing Queue.

The liquidated value of all Foreign Claims payable under this TDP shall be established

only under the Asbestos Trust's Individual Review process.  A "**Foreign Claim**" is an

Unsecured Asbestos Personal Injury Claim with respect to which the claimant's exposure to an

asbestos-containing product or conduct for which ASARCO has legal responsibility occurred

outside of the United States and its Territories and Possessions.

In reviewing Foreign Claims, the Asbestos Trust shall take into account all relevant

procedural and substantive legal rules to which the claims would be subject in the Claimant's

Jurisdiction as defined in Section 5.3(b)(2), including the remedies available in the Claimant's

Jurisdiction.  The Asbestos Trust shall determine the liquidated value of Foreign Claims based

on historical settlements and verdicts in the Claimant's Jurisdiction as well as the other valuation

factors set forth in Section 5.3(b)(2).

For purposes of the Individual Review process for Foreign Claims, the Trustees, with the

consent of the TAC and the FCR, may develop separate Medical/Exposure Criteria and

standards, as well as separate requirements for physician and other professional qualifications,

which shall be applicable to all Foreign Claims channeled to the Asbestos Trust; provided

however, that the criteria, standards or requirements shall not effectuate substantive changes to

the claims eligibility requirements under this TDP, but rather shall be made only for the purpose

of adapting those requirements to the particular physician or other professional licensing

provisions and/or medical customs or practices of the foreign country in question.

When the Asbestos Trust has sufficient historical settlement, verdict and other valuation data for claims from a particular foreign jurisdiction, the Trustees, with the consent of the TAC and the FCR, may establish a separate valuation matrix for the particular Foreign Claims based on that data.

**5.3(b)(1)(A)  Review of Medical/Exposure Criteria.**  The Asbestos Trust's Individual Review Process provides a claimant with an opportunity for individual consideration and evaluation of an Unsecured Asbestos Personal Injury Claim that fails to meet the presumptive Medical/Exposure Criteria for Disease Levels I–V, VII or VIII.  In such a case, the Asbestos Trust shall either deny the claim or, if the Asbestos Trust is satisfied that the claimant has presented a claim that would be cognizable and valid in the tort system, the Asbestos Trust may offer the claimant a liquidated value amount up to the Scheduled Value for that Disease Level.

**5.3(b)(1)(B)  Review of Liquidated Value.**  Claimants holding claims in Disease Levels II–VIII shall also be eligible to seek Individual Review of the liquidated value of their claims, as well as of their medical/exposure evidence.  The Individual Review Process is intended to result in payments equal to the full liquidated value for each claim multiplied by the Payment Percentage; however, the liquidated value of any Unsecured Asbestos Personal Injury Claim that undergoes Individual Review may be determined to be less than the Scheduled Value the claimant would have received under Expedited Review.  Moreover, the liquidated value for a claim involving Disease Levels II–VIII shall not exceed the Maximum Value for the relevant Disease Level set forth in Section 5.3(b)(3), unless the claim meets the requirements of an Extraordinary Claim described in Section 5.4(a), in which case its liquidated value cannot exceed the maximum extraordinary value set forth in Section 5.4(a) for such claims.

Because the detailed examination and valuation process pursuant to Individual Review requires substantial time and effort, claimants electing to undergo the Individual Review Process may be paid the liquidated value of their Unsecured Asbestos Personal Injury Claims later than would have been the case had the claimant elected the Expedited Review Process.  Subject to the provisions of Section 5.8, the Asbestos Trust shall devote reasonable resources to the review of all claims to ensure that there is a reasonable balance maintained in reviewing all classes of claims.

### 5.3(b)(2)  Valuation Factors to Be Considered in Individual Review.

The Asbestos Trust shall liquidate the value of each Unsecured Asbestos Personal Injury Claim that undergoes Individual Review based on the historic liquidated values of other similarly situated claims in the tort system for the same Disease Level.  The Asbestos Trust shall take into consideration all of the factors that affect the severity of damages and values within the tort system including, but not limited to, credible evidence of (i) the degree to which the characteristics of a claim differ from the presumptive Medical/Exposure Criteria for the Disease Level in question; (ii) factors such as the claimant's age, disability, employment status, disruption of household, family or recreational activities, dependencies, special damages, and pain and suffering; (iii) whether the claimant's damages were (or were not) caused by asbestos exposure, including exposure to an asbestos-containing product, or to conduct that exposed the claimant to an asbestos-containing product, for which ASARCO has legal responsibility (for example, alternative causes, and the strength of documentation of injuries); (iv) the industry of exposure; (v) settlement and verdict histories and other law firms' experience in the Claimant's Jurisdiction for similarly situated claims; and (vi) settlement and verdict histories for the claimant's law firm for similarly situated claims.

For these purposes, the "**Claimant's Jurisdiction**" is the jurisdiction in which the claim was filed (if at all) against ASARCO in the tort system prior to the Petition Date of the Subsidiary Debtors.  If the claim was not filed against ASARCO in the tort system prior to the Petition Date of the Subsidiary Debtors, the claimant may elect as the Claimant's Jurisdiction either (i) the jurisdiction in which the claimant resides at the time of diagnosis or when the claim is filed with the Asbestos Trust; or (ii) a jurisdiction in which the claimant experienced exposure to an asbestos-containing product or to conduct for which ASARCO has legal responsibility.

With respect to the "Claimant's Jurisdiction," in the event a personal representative or authorized agent makes a claim under this TDP for wrongful death where the governing law of the Claimant's Jurisdiction could only be the Alabama Wrongful Death Statute, the Claimant's Jurisdiction for the claim shall be the Commonwealth of Pennsylvania.  In this situation, the claimant's damages shall be determined pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles.  This choice of law provision shall only govern the rights between the Asbestos Trust and the claimant including, but not limited to, suits in the tort system pursuant to Section 7.5.  To the extent the Asbestos Trust seeks recovery from any entity that provided insurance coverage to ASARCO, the Alabama Wrongful Death Statute shall govern.

With respect to the "Claimant's Jurisdiction," in the event a claimant makes a claim for compensatory damages that would otherwise satisfy the criteria for payment under this TDP, where the claimant would have been foreclosed from payment because the governing law of the Claimant's Jurisdiction (the "**Foreclosed Jurisdiction**") describes the claim as a claim for "exemplary" or "punitive" damages and the claimant would have no other remedy for compensation under the law of the Foreclosed Jurisdiction, the claimant may elect the

Commonwealth of Pennsylvania as the Claimant's Jurisdiction.  In this situation, the claimant's damages shall be determined pursuant to the statutory and common laws of the Commonwealth of Pennsylvania without regard to its choice of law principles.  This choice of law provision shall govern only the rights between the Asbestos Trust and the claimant including, but not limited to, suits in the tort system pursuant to Section 7.5.  To the extent the Asbestos Trust seeks recovery from any entity that provided insurance coverage to ASARCO, the law of the Foreclosed Jurisdiction shall govern.

**5.3(b)(3)  Scheduled, Average and Maximum Values.**  The Scheduled, Average and Maximum Values for claims involving Disease Levels I–VIII are the following.

| **Scheduled Disease** | **Scheduled Value** | **Average Value** | **Maximum Value** |
| --- | --- | --- | --- |
| Mesothelioma (Disease Level VIII) | $170,000 | $246,000 | $750,000 |
| Lung Cancer 1 (Disease Level VII) | $70,000 | $142,500 | $200,000 |
| Lung Cancer 2 (Disease Level VI) | None | $15,000 | $40,000 |
| Other Cancer (Disease Level V) | $20,000 | $32,000 | $100,000 |
| Severe Asbestosis (Disease Level IV) | $50,000 | $88,000 | $150,000 |
| Nonmalignant Asbestos Disease (Disease Level III) | $8,500 | $9,000 | $25,000 |
| Nonmalignant Asbestos Disease (Disease Level II) | $2,500 | $3,000 | $7,000 |
| Other Asbestos Disease – Cash Discount Payment (Disease Level I) | $750 | $750 | $750 |

These Scheduled Values, Average Values and Maximum Values shall apply to all

Unsecured Asbestos Personal Injury Claims filed with the Asbestos Trust (except for a Pre-

Petition Liquidated Asbestos Personal Injury Claim where the claimant has elected to retain the liquidated value) on or before the Initial Claims Filing Date as provided in Section 5.1. Thereafter, the Asbestos Trust, with the consent of the TAC and the FCR pursuant to Sections 5.7(b) and 6.6(b) of the Asbestos Trust Agreement, may change these valuation amounts for good cause and consistent with other restrictions on the amendment power.

      **5.3(b)(4)**      **Claims Processing Under Individual Review**.  At the conclusion of the Individual Review Process, the Asbestos Trust shall:  (1) determine the liquidated value, if any, of the claim; and (2) advise the claimant of its determination.  If the Asbestos Trust establishes a liquidated value, it shall tender to the claimant an offer of payment of the aforementioned determined value multiplied by the applicable Payment Percentage, together with a form of release approved by the Asbestos Trust.  If the claimant accepts the offer of payment and returns the release properly executed, the claim shall be placed in the FIFO Payment Queue, following which the Asbestos Trust shall disburse payment subject to the limitations of the Maximum Annual Payment and Claims Payment Ratio, if any.

      **5.3(c)**  **Handling, Litigation and Payment of Asbestos Premises Liability Claims.**  Notwithstanding anything to the contrary in this TDP or the Asbestos Trust Agreement, unless otherwise approved by the TAC and the FCR, this paragraph Section 5.3(c), shall govern the handling of the Asbestos Premises Liability Claims.

      Claimants holding Asbestos Premises Liability Claims who wish to recover on such claims must file a lawsuit against the Asbestos Trust in the federal or state court of the claimant's choosing as permitted under applicable federal or state law. All lawsuits brought against the Asbestos Trust involving Asbestos Premises Liability Claims must be filed by the claimant in his or her own right and name and not as a member of a class.  Service of process on the Asbestos

Trust may be made, pursuant to applicable federal or state law where the lawsuit is filed, on the following: **[insert when available]**.

Where a lawsuit was pending against ASARCO LLC prior to the Petition Date of ASARCO LLC, the lawsuit may proceed, subject, however, to all defenses, including those based on venue, forum non conveniens and jurisdiction; provided, however, that within 180 days of the Effective Date, the plaintiff in the lawsuit must file and serve an amendment to the lawsuit substituting the Asbestos Trust as successor to ASARCO LLC as party defendant.

The Asbestos Trust shall tender the lawsuit to the applicable Asbestos Insurance Company for defense and indemnification pursuant to the terms and conditions of the Asbestos In-Place Insurance Coverage and/or CIP Agreements.  The time within which the Asbestos Trust is required to answer or otherwise respond to any summons or complaint involving an Asbestos Premises Liability Claim that is served on the Asbestos Trust shall automatically be extended by twenty (20) days.

In the event that the Asbestos Insurance Company does not respond to the tender consistent with the terms and conditions of the Asbestos In-Place Insurance Coverage and/or CIP Agreements, the claimant may proceed against the Asbestos Trust for the entry of a judgment provided the claimant covenants not to execute on the judgment.

In exchange for the covenant not to execute on the judgment, the claimant may file a claim with the Asbestos Trust to be processed under Section 5.3(a) or 5.3(b).  The claimant shall file a proof of claim with supporting material as provided under Section 6.1, with the claim placed in the FIFO Processing Queue as of the date of the filing of the lawsuit against the Asbestos Trust.  The claim will be paid in the order of the FIFO Payment Queue.  The Payment Percentage shall apply to the payment of the claim.

In the situation when the Asbestos Insurance Company does not respond to the tender consistent with the terms and conditions of the Asbestos In-Place Insurance Coverage and/or CIP Agreements, the Asbestos Trust will assess the good faith of the Asbestos Insurance Company. If the Asbestos Trust concludes that the Asbestos Insurance Company did not act in good faith, the claimant may proceed against the Asbestos Insurance Company in accordance with any applicable dispute resolution procedures set forth in the Asbestos In-Place Insurance Coverage and/or CIP Agreements, with the Asbestos Trust subrogated to any recovery by the claimant from the Asbestos Insurance Company to the extent of a payment by the Asbestos Trust to the claimant under this Section 5.3(c).

In the event that the Asbestos Insurance Company accepts the tender of the lawsuit but there is a subsequent determination that the Asbestos Premises Liability Claim is not covered or only partially covered by the CIP Agreements or any other Asbestos Insurance Policy covering Asbestos Premises Liability Claims, the claimant may file a claim with the Asbestos Trust. The claim shall be placed in the FIFO Processing Queue as of the date of the filing of the lawsuit provided herein, processed under Section 5.3(a) or (b), and paid in the order of the FIFO Payment Queue. The Payment Percentage shall apply to the payment of the claim.

Notwithstanding any judgment obtained by a claimant in the tort system, no punitive or exemplary damages may be recovered from the Asbestos Trust.

The Asbestos Trust shall define or specify in the Claims Materials to be adopted pursuant to Section 6.1 the procedural mechanisms for the determinations to be made by the Asbestos Trust hereunder.

The holder of both an Asbestos Premises Liability Claim and an Unsecured Asbestos Personal Injury Claim may proceed under this Section 5.3(c) or under Section 5.3(a) or (b), at the

option of the holder of the claim.  An election to proceed under Section 5.3(a) or (b) shall

constitute an irrevocable waiver of the right to proceed under Section 5.3(c).  This Section 5.3(c)

shall not be amended without the approval of the TAC and the FCR.

      **5.4**     **Categorizing Claims as Extraordinary and/or Exigent Hardship.**

      **5.4(a)  Extraordinary Claims.**  "**Extraordinary Claim**" means an Unsecured

Asbestos Personal Injury Claim that otherwise satisfies the Medical Criteria for Disease Levels

II–VIII, and that is held by a claimant whose exposure to asbestos was at least 75% the result of

exposure to an asbestos-containing product or to conduct for which ASARCO has legal

responsibility, and there is little likelihood of a substantial recovery elsewhere.  All such

Extraordinary Claims shall be presented for Individual Review and, if valid, shall be entitled to

an award of up to a maximum extraordinary value of five (5) times the Scheduled Value set forth

in Section 5.3(b)(3) for claims qualifying for Disease Levels II–V, VII and VIII, and five (5)

times the Average Value for claims in Disease Level VI, multiplied by the applicable Payment

Percentage.

      Any dispute as to Extraordinary Claim status shall be submitted to a special panel

established by the Asbestos Trust with the consent of the TAC and the FCR (the "Extraordinary

Claims Panel").  All decisions of the Extraordinary Claims Panel shall be final as to the Asbestos

Trust and not subject to any further administrative or judicial review by the Asbestos Trust.  A

claimant may either accept or reject the decision of the Extraordinary Claims Panel.  In the event

the claimant rejects the decision of the Extraordinary Claims Panel, the claimant may proceed

under the ADR Procedures provided in Section 5.10.  An Extraordinary Claim, following its

liquidation, shall be placed in the FIFO Payment Queue ahead of all other Unsecured Asbestos

Personal Injury Claims except Disease Level I Claims and Exigent Claims, which shall be paid

first in that order in the FIFO Payment Queue, based on the date of liquidation, subject to the Maximum Annual Payment and Claims Payment Ratio described above.  For purposes of clarification, holders of Pre-Petition Liquidated Asbestos Personal Injury Claims who have elected to retain the liquidated values will be maintained and paid separately from the FIFO Payment Queue for Unsecured Asbestos Personal Injury Claims as provided in Section 5.2(a).

**5.4(b)  Exigent Claims.**  At any time the Asbestos Trust may liquidate and pay Unsecured Asbestos Personal Injury Claims that qualify as Exigent Health Claims or Exigent Hardship Claims as defined below ("Exigent Claim").  Exigent Claims may be considered separately no matter what the order of processing otherwise would have been under this TDP. An Exigent Claim, following its liquidation, shall be placed first in the FIFO Payment Queue ahead of all other liquidated Unsecured Asbestos Personal Injury Claims except Disease Level I Claims and shall be subject to the Maximum Annual Payment and Claims Payment Ratio described above.

(1)        **Exigent Health Claims**.  An Unsecured Asbestos Personal Injury Claim qualifies as an Exigent Health Claim if the claim meets the Medical/Exposure Criteria for Mesothelioma (Disease Level VIII) and the claimant is living when the claim is filed.  A claim in Disease Levels IV–VII qualifies as an Exigent Health Claim if the claim meets the Medical/Exposure Criteria for the Disease Level, and the claimant provides a declaration or affidavit, made under penalty of perjury by a physician who has examined the claimant within one hundred twenty (120) days of the date of declaration or affidavit, stating (a) that there is substantial medical doubt that the claimant will survive beyond six (6) months from the date of the declaration or affidavit, and (b) that the claimant's terminal condition is caused by the relevant asbestos-related disease.

(2)      **Exigent Hardship Claims**.  An Unsecured Asbestos Personal Injury Claim qualifies for payment as an Exigent Hardship Claim if the claim meets the Medical/Exposure Criteria for Severe Asbestosis (Disease Level IV) or an asbestos-related malignancy (Disease Levels V–VIII), and the Asbestos Trust, in its sole discretion, determines (i) that the claimant needs immediate financial assistance based on the claimant's expenses and all sources of available income, and (ii) that there is a causal connection between the claimant's dire financial condition and the claimant's asbestos-related disease.

**5.5      Secondary Exposure Claims.**  If a claimant alleges an asbestos-related disease resulting solely from exposure to an occupationally exposed person, such as a family member, the claimant must seek Individual Review of his or her claim pursuant to Section 5.3(b).  In such a case, the claimant must establish that the occupationally exposed person would have met the exposure requirements under this TDP that would have been applicable had that person filed a direct claim against the Asbestos Trust.  In addition, the claimant with secondary exposure must establish that he or she is suffering from one of the eight Disease Levels described in Section 5.3(a)(3) or an asbestos-related disease otherwise compensable under this TDP, that his or her own exposure to the occupationally exposed person occurred within the same time frame as the occupationally exposed person was exposed to asbestos mined by ASARCO or products manufactured, produced or distributed by ASARCO or to conduct for which ASARCO has legal responsibility, and that the secondary exposure was a cause of the claimed disease.  All other liquidation and payment rights and limitations under this TDP shall be applicable to the claims.

**5.6      Indirect Asbestos Personal Injury Claims.**  Indirect Asbestos Personal Injury Claims asserted against the Asbestos Trust based on theories of contribution or indemnification under applicable law shall be treated as valid and paid by the Asbestos Trust subject to the

applicable Payment Percentage if (a) the claim satisfied the requirements of any applicable Bar Date established by the Bankruptcy Court, and is not otherwise disallowed by Section 502(e) of the Bankruptcy Code or subordinated under Section 509(c) of the Bankruptcy Code, and (b) the holder of the claim (the "**Indirect Claimant**") establishes to the satisfaction of the Trustees that (i) the Indirect Claimant has paid the liability and obligation of the Asbestos Trust to the individual claimant to whom the Asbestos Trust would otherwise have had a liability or obligation under this TDP (the "**Direct Claimant**"), (ii) the Direct Claimant and the Indirect Claimant have released the Asbestos Trust from all liability to the Direct Claimant, and (iii) the claim is not otherwise barred by a statute of limitations or repose or by other applicable law.  In no event shall any Indirect Claimant have any rights against the Asbestos Trust superior to the rights of the related Direct Claimant against the Asbestos Trust, including any rights with respect to the timing, amount or manner of payment.  In addition, no indirect Asbestos Personal Injury Claim may be liquidated and paid in an amount that exceeds what the Indirect Claimant has actually paid the related Direct Claimant.

To establish a presumptively valid indirect Asbestos Personal Injury Claim, the Indirect Claimant's aggregate liability for the Direct Claimant's claim must also have been fixed, liquidated and paid fully by the Indirect Claimant by settlement (with an appropriate full release in favor of the Asbestos Trust) or a Final Order provided that the claim is valid under the applicable state law.  In any case where the Indirect Claimant has satisfied the claim of a Direct Claimant against the Asbestos Trust under applicable law by way of a settlement, the Indirect Claimant shall obtain for the benefit of the Asbestos Trust a release in form and substance satisfactory to the Trustees.

If an Indirect Claimant cannot meet the presumptive requirements set forth above, the Indirect Claimant may request that the Asbestos Trust review the indirect Asbestos Personal Injury Claim individually to determine whether the Indirect Claimant can establish under applicable state law that the Indirect Claimant has paid all or a portion of a liability or obligation that the Asbestos Trust had to the Direct Claimant as of the Effective Date. If the Indirect Claimant can show that it has paid all or a portion of a liability or obligation, the Asbestos Trust may reimburse the Indirect Claimant the amount of the liability or obligation so paid, times the then applicable Payment Percentage. However, in no event shall the reimbursement to the Indirect Claimant be greater than the amount to which the Direct Claimant would have otherwise been entitled. Further, the liquidated value of any indirect Asbestos Personal Injury Claim paid by the Asbestos Trust to an Indirect Claimant shall be treated as an offset to or reduction of the full liquidated value of any Unsecured Asbestos Personal Injury Claim that might be subsequently asserted by the Direct Claimant against the Asbestos Trust.

Any dispute between the Asbestos Trust and an Indirect Claimant over whether the Indirect Claimant has a right to reimbursement for any amount paid to a Direct Claimant shall be subject to the ADR Procedures provided in Section 5.10. If the dispute is not resolved pursuant to the ADR Procedures, the Indirect Claimant may litigate the dispute in the tort system pursuant to Sections 5.11 and 7.5.

The Trustees may develop and approve a separate proof of claim form for indirect Asbestos Personal Injury Claims. Indirect Asbestos Personal Injury Claims that have not been disallowed, discharged, or otherwise resolved by prior order of the Bankruptcy Court shall be processed in accordance with procedures to be developed and implemented by the Trustees consistent with the provisions of this Section 5.6, which procedures (a) shall determine the

validity, allowability and enforceability of the claims; and (b) shall otherwise provide the same liquidation and payment procedures and rights to the holders of the claims as the Asbestos Trust would have afforded the holders of the underlying valid Unsecured Asbestos Personal Injury Claims.

### 5.7     Evidentiary Requirements.

### 5.7(a)  Medical Evidence.

**5.7(a)(1)  In General.**  All diagnoses of a Disease Level shall be accompanied by either (i) a statement by the physician providing the diagnosis that at least ten (10) years have elapsed between the date of first exposure to asbestos or asbestos-containing products and the diagnosis, or (ii) a history of the claimant's exposure sufficient to establish a 10-year latency period.  A finding by a physician after the Effective Date that a claimant's disease is "consistent with" or "compatible with" asbestosis shall not alone be treated by the Asbestos Trust as a diagnosis.[15]

**5.7(a)(1)(A)  Disease Levels I–IV.**  Except for asbestos claims filed against ASARCO or any other defendant in the tort system prior to the Petition Date, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I–IV) shall be based in the case of a claimant who was living at the time the claim was filed on a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease.  All living claimants must also provide (i) for Disease Levels I–III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above); (ii) for Disease Level IV, an

---

[15]     All diagnoses of Asbestos/Pleural Disease (Disease Levels II and III) not based on pathology shall be presumed to be based on findings of bilateral asbestosis or pleural disease, and all diagnoses of Mesothelioma (Disease Level VIII) shall be presumed to be based on findings that the disease involves a malignancy.  However, the Asbestos Trust may rebut these presumptions.

ILO reading of 2/1 or greater or pathological evidence of asbestosis, and (iii) for Disease Levels III and IV, pulmonary function testing.[16]

In the case of a claimant who was deceased at the time the claim was filed, all diagnoses of a non-malignant asbestos-related disease (Disease Levels I–IV) shall be based upon (i) either (a) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease; (b) pathological evidence of the non-malignant asbestos-related disease; or (c) in the case of Disease Levels I–III, evidence of Bilateral Asbestos-Related Nonmalignant Disease (as defined in Footnote 4 above), and for Disease Level IV, either an ILO reading of 2/1 or greater or pathological evidence of asbestosis; and (ii) for either Disease Level III or IV, pulmonary function testing.

**5.7(a)(1)(B)  Disease Levels V–VIII.**  All diagnoses of an asbestos-related malignancy (Disease Levels V–VIII) shall be based upon either (i) a physical examination of the claimant by the physician providing the diagnosis of the asbestos-related disease, or (ii) a diagnosis of a malignant Disease Level by a board-certified pathologist or by a pathology report prepared at or on behalf of a hospital accredited by the Joint Commission on Accreditation of Healthcare Organizations ("**JCAHO**").

**5.7(a)(1)(C)  Exception to the Exception for Certain Pre-Petition Claims.**  If the holder of an Unsecured Asbestos Personal Injury Claim that was filed

---

[16]    "Pulmonary function testing" or "PFT" shall mean testing that is in material compliance with the quality criteria established by the American Thoracic Society ("**ATS**") and is performed on equipment which is in material compliance with ATS standards for technical quality and calibration. PFT performed in a hospital accredited by the JCAHO, or performed, reviewed or supervised by a board certified pulmonologist or other Qualified Physician shall be presumed to comply with ATS standards, and the claimant may submit a summary report of the testing. If the PFT was not performed in an JCAHO-accredited hospital, or performed, reviewed or supervised by a board certified pulmonologist or other Qualified Physician, the claimant must submit the full report of the testing (as opposed to a summary report); provided, however, that if the PFT was conducted prior to the Effective Date and the full PFT report is not available, the claimant must submit a declaration signed by a Qualified Physician or other qualified party, in the form provided by the Asbestos Trust, certifying that the PFT was conducted in material compliance with ATS standards.

against ASARCO or any other defendant in the tort system prior to the Petition Date has available a report of a diagnosing physician engaged by the holder or his or her law firm who conducted a physical examination of the holder as described in Sections 5.7(a)(1)(A), or if the holder has filed that medical evidence and/or a diagnosis of the asbestos-related disease by a physician not engaged by the holder or his or her law firm who conducted a physical examination of the holder with another asbestos-related personal injury settlement trust that requires such evidence, without regard to whether the claimant or the law firm engaged the diagnosing physician, the holder shall provide that medical evidence to the Asbestos Trust notwithstanding the exception in Section 5.7(a)(1)(A).

   **5.7(a)(2)  Credibility of Medical Evidence.**  Before making any payment to a claimant, the Asbestos Trust must have reasonable confidence that the medical evidence provided in support of the claim is credible and consistent with recognized medical standards. The Asbestos Trust may require the submission of X-rays or other diagnostic imaging, detailed results of pulmonary function tests, laboratory tests, tissue samples, results of medical examination or reviews of other medical evidence, and may require that medical evidence submitted comply with recognized medical standards regarding equipment, testing methods and procedures to assure that the evidence is reliable.  Medical evidence (i) that is of a kind shown to have been received in evidence by a state or federal judge at trial, (ii) that is consistent with evidence submitted to ASARCO to settle for payment similar disease cases prior to the Petition Date, or (iii) that is a diagnosis by a physician shown to have previously qualified as a medical expert with respect to the asbestos-related disease in question before a state or federal judge using the same methodology and standard, is presumptively reliable, although the Asbestos Trust may seek to rebut the presumption.  Notwithstanding the foregoing or any other provision of this

TDP, any medical evidence submitted by a physician or entity that the Asbestos Trust has determined, after consulting with the TAC and FCR, to be unreliable shall not be acceptable as medical evidence in support of any Unsecured Asbestos Personal Injury Claim.

In addition, claimants who otherwise meet the requirements of this TDP for payment of an Unsecured Asbestos Personal Injury Claim shall be paid irrespective of the results in any litigation at any time between the claimant and any other defendant in the tort system. However, any relevant evidence submitted in a proceeding in the tort system, other than any findings of fact, a verdict, or a judgment, involving another defendant may be introduced by either the claimant or the Asbestos Trust in any Individual Review proceeding conducted pursuant to 5.3(b) or any Extraordinary Claim proceeding conducted pursuant to 5.4(a).

**5.7(b)  Exposure Evidence.**

**5.7(b)(1)  In General.**  As set forth above in Section 5.3(a)(3), to qualify for any Disease Level, the claimant must demonstrate a minimum exposure to any products or materials containing asbestos that were mined, manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by ASARCO (or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products or operations ASARCO allegedly has liability or is otherwise liable). Claims based on conspiracy theories that involve no exposure to such products or materials are not compensable under this TDP.  To meet the presumptive exposure requirements of Expedited Review set forth in Section 5.3(a)(3), the claimant must show (i) for all Disease Levels, ASARCO Exposure as defined in Section 5.7(b)(3); (ii) for Nonmalignant Asbestos Disease Level II, six (6) months ASARCO Exposure, plus five years cumulative occupational asbestos exposure; and (iii) for Nonmalignant Asbestos

Disease (Disease Level III), Severe Asbestosis (Disease Level IV), Other Cancer (Disease Level V) or Lung Cancer 1 (Disease Level VII), the claimant must show six (6) months ASARCO Exposure, plus Significant Occupational Exposure to asbestos as defined below.  If the claimant cannot meet the relevant presumptive exposure requirements for a Disease Level eligible for Expedited Review, the claimant may seek Individual Review pursuant to Section 5.3(b) of his or her claim based on exposure to an asbestos-containing product or to conduct for which ASARCO has legal responsibility.

**5.7(b)(2)  Significant Occupational Exposure**.  "**Significant Occupational Exposure**" means employment for a cumulative period of at least five (5) years with a minimum of two (2) years in an industry and an occupation in which the claimant (a) handled raw asbestos fibers on a regular basis; (b) fabricated asbestos-containing products so that the claimant in the fabrication process was exposed on a regular basis to raw asbestos fibers; (c) altered, repaired or otherwise worked with an asbestos-containing product such that the claimant was exposed on a regular basis to asbestos fibers; or (d) was employed in an industry and occupation such that the claimant worked on a regular basis in close proximity to workers engaged in the activities described in (a), (b) and/or (c).

**5.7(b)(3)  ASARCO Exposure.**  The claimant must demonstrate meaningful and credible exposure:  (A) to any products or materials containing asbestos that were mined, manufactured, sold, supplied, produced, specified, selected, distributed or in any way marketed by CAPCO or ASARCO (or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products or operations ASARCO allegedly has liability or is otherwise liable) ("**CAPCO Exposure**"); (B) to any products or materials actually containing asbestos

mined or sold by LAQ or ASARCO (or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products or operations ASARCO allegedly has liability or is otherwise liable) ("**LAQ Exposure**"); or (C) to asbestos or asbestos-containing materials at premises owned, leased, rented, occupied or controlled by ASARCO (or any past or present ASARCO Protected Party or Affiliate, or any of the predecessors of ASARCO or any of their past or present Affiliates, or any other Entity for whose products or operations ASARCO allegedly has liability or is otherwise liable) ("**Premises Exposure**").  A holder of an Asbestos Personal Injury Claim attempting to establish Premises Exposure must demonstrate 30 days exposure to asbestos or asbestos-containing materials at premises owned, leased, rented, occupied or controlled by ASARCO.

Meaningful and credible exposure evidence under (A), (B) or (C) of this Section 5.7(b)(3) ("**ASARCO Exposure**") may be established by an affidavit or sworn statement of the claimant, by an affidavit or sworn statement of a co-worker or the affidavit or sworn statement of a family member in the case of a deceased claimant (providing the Asbestos Trust finds the evidence reasonably reliable), by invoices, employment, construction or similar records, or by other credible evidence.  The specific exposure information required by the Asbestos Trust to process a claim under either Expedited or Individual Review shall be set forth on the proof of claim form to be used by the Asbestos Trust.  The Asbestos Trust may also require submission of other or additional evidence of exposure when deemed necessary.

Evidence submitted to establish proof of ASARCO Exposure is for the sole benefit of the Asbestos Trust, not third parties or defendants in the tort system.  The Asbestos Trust has no need for, and therefore claimants are not required to furnish the Asbestos Trust with, evidence of

exposure to specific asbestos products other than those for which ASARO has legal responsibility, except to the extent such evidence is required elsewhere in this TDP.  Similarly, failure to identify ASARCO Exposure in the claimant's underlying tort action, or to other bankruptcy trusts, does not preclude the claimant from recovering from the Asbestos Trust, provided the claimant otherwise satisfies the medical and exposure requirements of this TDP.

**5.8**    **Claims Audit Program.**  The Asbestos Trust, with the consent of the TAC and the FCR, may develop methods for auditing the reliability of medical evidence, including additional reading of X-rays and other diagnostic imaging, and verification of pulmonary function tests, as well as the reliability of evidence of exposure to asbestos, including exposure to asbestos-containing products mined, manufactured or distributed by ASARCO prior to April 11, 2005.  In the event that the Asbestos Trust reasonably determines that any individual or entity has engaged in a pattern or practice of providing unreliable medical evidence to the Asbestos Trust, it may decline to accept additional evidence from the provider in the future.

Further, in the event that an audit reveals that fraudulent information has been provided to the Asbestos Trust, the Asbestos Trust may penalize any claimant or claimant's attorney by disallowing the Unsecured Asbestos Personal Injury Claim or by other means including, but not limited to, requiring the source of the fraudulent information to pay the costs associated with the audit and any future audit or audits, reordering the priority of payment of all affected claimants' Unsecured Asbestos Personal Injury Claims, raising the level of scrutiny of additional information submitted from the same source or sources, refusing to accept additional evidence from the same source or sources, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152, and seeking sanctions from the Bankruptcy Court.

**5.9** **Second Disease (Malignancy) Claims.** The holder of an Unsecured Asbestos Personal Injury Claim involving a non-malignant asbestos-related disease (Disease Levels I–IV) may assert a new Unsecured Asbestos Personal Injury Claim against the Asbestos Trust for a malignant disease (Disease Levels V–VIII) that is subsequently diagnosed. Any additional payments to which the claimant may be entitled with respect to the malignant asbestos-related disease shall not be reduced by the amount paid for the non-malignant asbestos-related disease, provided that the malignant disease had not been diagnosed by the time the claimant was paid with respect to the original claim involving the non-malignant disease.

**5.10** **Arbitration.**

**5.10(a) Establishment of ADR Procedures.** The Asbestos Trust, with the consent of the TAC and the FCR, shall institute pro bono evaluation, mediation and binding and non-binding arbitration procedures in accordance with the Alternative Dispute Resolution Procedures ("**ADR Procedures**"), included in Attachment A hereto or to be attached as an exhibit to the Claims Materials to be prepared by the Asbestos Trust under Section 6.1, for resolving disputes concerning whether a settlement agreement with ASARCO is binding and judicially enforceable in the absence of a Final Order of the Bankruptcy Court; determining whether the Asbestos Trust's rejection or denial of a claim was proper; determining whether the claimant's medical condition or exposure history meets the requirements of this TDP for purposes of categorizing a claim involving Disease Levels I–VIII; or determining any other dispute expressly made eligible for ADR Proceedings by this TDP. Pro bono evaluation, mediation, binding and non-binding arbitration shall also be available for resolving disputes over the liquidated value of a claim involving Disease Levels II–VIII, as well as disputes over the unpaid portion of a Pre-

Petition Liquidated Asbestos Personal Injury Claim described in Section 5.2 and disputes over the validity of an indirect Asbestos Personal Injury Claim.

In all arbitrations, the arbitrator shall consider the same medical and exposure evidentiary requirements that are set forth in Section 5.7.  In the case of an arbitration involving the liquidated value of a claim involving Disease Levels II–VIII, the arbitrator shall consider the same valuation factors that are set forth in Section 5.3(b)(2).  In order to facilitate the Individual Review Process, the Asbestos Trust may from time to time develop a valuation model that enables the Asbestos Trust to efficiently make initial liquidated value offers on those claims in the Individual Review Process.  In an arbitration involving any such claim, the Asbestos Trust shall neither offer into evidence or describe any such model nor assert that any information generated by the model has any evidentiary relevance or should be used by the arbitrator in determining the presumed correct liquidated value in the arbitration.  The underlying data that was used to create the model may be relevant and may be made available to the arbitrator but only if provided to the claimant or his or her counsel ten days prior to the arbitration proceeding. With respect to all claims eligible for arbitration, the claimant, but not the Asbestos Trust, may elect either non-binding or binding arbitration.  The ADR Procedures set forth in Attachment A hereto or to be attached as an exhibit to the Claims Materials may be modified by the Asbestos Trust with the consent of the TAC and the FCR.

   **5.10(b)  Claims Eligible for Arbitration**.  Except as otherwise provided herein, in order to be eligible for arbitration, the claimant must first complete the Individual Review Process with respect to the disputed issue. The claimant may elect to submit to pro bono evaluation or to mediate the disputed issue prior to arbitration as set forth in the ADR Procedures.  Individual Review shall be treated as completed for these purposes when the claim has been individually

reviewed by the Asbestos Trust, the Asbestos Trust has made an offer on the claim, the claimant has rejected the liquidated value resulting from the Individual Review, and the claimant has notified the Asbestos Trust of the rejection in writing.  Individual Review shall also be treated as completed if the Asbestos Trust has rejected the claim.

>    **5.10(c)  Limitations on and Payment of Arbitration Awards**.  In the case of a claim involving Disease Level I, the arbitrator shall not return an award in excess of the Scheduled Value for such claim.  In the case of a non-Extraordinary Claim involving Disease Levels II–VIII, the arbitrator shall not return an award in excess of the Maximum Value for the appropriate Disease Level as set forth in Section 5.3(a)(3), and for an Extraordinary Claim involving one of those Disease Levels, the arbitrator shall not return an award greater than the maximum extraordinary value for the claim as set forth in Section 5.4(a).  The claim of a claimant who submits to arbitration and who accepts the arbitral award shall be placed in the FIFO Payment Queue as of the date of the arbitral award, and paid subject to the application of the Maximum Annual Payment, Claims Payment Ratio and Payment Percentage, as applicable.

>    **5.11    Litigation.**

>    **5.11(a)  In General.**  Claimants who elect non-binding arbitration and then reject the arbitral award retain the right to institute a lawsuit in the tort system against the Asbestos Trust pursuant to Section 7.5.  The holder of an Asbestos Premises Liability Claim may recover any judgment from the Asbestos Insurer to the extent of coverage.  All other claimants shall be eligible for payment of a judgment for monetary damages obtained in the tort system from the Asbestos Trust's available cash only as provided in Section 7.6.

>    **5.11(b)  Unsecured Asbestos Personal Injury Claims Covered by Asbestos Insurance Policies.**  Notwithstanding any provision of this TDP, the holder of an Unsecured

Asbestos Personal Injury Claim who contends that the claim is covered by an Asbestos Insurance Policy may request that the Asbestos Trust suspend processing of the claim pending liquidation of the value of the claim by litigation in the tort system and the Asbestos Trust, with the consent of the TAC and the FCR, shall deal with that request appropriately.

**5.11(c)  The Right to Establish Certain Procedures.**  The Asbestos Trust has the right to establish procedures for claimants who hold direct action rights against an Asbestos Insurance Company other than a Settling Asbestos Insurance Company to pursue such rights in the tort system with the consent of the TAC and the FCR.

**SECTION VI**

**<ins>Claims Materials</ins>**

**6.1     Claims Materials.**  The Asbestos Trust shall prepare suitable and efficient claims materials ("**Claims Materials**") for all Asbestos Personal Injury Claims, and shall provide the Claims Materials to the claimants upon written request.  The proof of claim form shall require the claimant to assert the highest Disease Level for which the claim qualifies at the time of filing. The proof of claim form shall also include a certification by the claimant or his or her attorney sufficient to meet the requirements of Rule 11(b) of the Federal Rules of Civil Procedure.  In developing its claim filing procedures, the Asbestos Trust shall make every effort to provide claimants with the opportunity to utilize currently available technology at their discretion, including filing claims and supporting documentation over the internet or by other electronic means.  The proof of claim form to be used by the Asbestos Trust shall be developed by the Asbestos Trust and submitted to the TAC and the FCR for approval; it may be changed by the Asbestos Trust with the consent of the TAC and the FCR.  The Asbestos Trust shall also prepare procedures as otherwise mandated by this TDP.

**6.2     Content of Claims Materials.**  The Claims Materials shall include a copy of this TDP, instructions adopted by the Trustees, and a detailed proof of claim form.  If feasible, the forms used by the Asbestos Trust to obtain claims information shall be the same or substantially similar to those used by other asbestos claims resolution organizations.  The claimant may, but shall not be required to, provide the Asbestos Trust with evidence of recovery from other defendants and claims resolution organizations.

**6.3     Withdrawal or Deferral of Claims.**  A claimant can withdraw an Unsecured Asbestos Personal Injury Claim at any time upon written notice to the Asbestos Trust and file another claim subsequently, provided, however, that the subsequent claim must be filed within the applicable statute of limitations in effect at the time the claim was initially filed.  A claim filed after withdrawal shall be given a place in the FIFO Processing Queue based on the date of the subsequent filing.  A claimant can also request that the processing of his or her Unsecured Asbestos Personal Injury Claim by the Asbestos Trust be deferred for a period not to exceed two (2) years without affecting the status of the claim for statute of limitations purposes, in which case the claimant shall also retain his or her original place in the FIFO Processing Queue. During the period of deferral, a sequencing adjustment on the claimant's Unsecured Asbestos Personal Injury Claim as provided in Section 7.4 shall not accrue and payment of a sequencing adjustment shall be deemed waived by the claimant.  Except for Unsecured Asbestos Personal Injury Claims held by representatives of deceased or incompetent claimants for which court or probate approval of the Asbestos Trust's offer is required, or an Unsecured Asbestos Personal Injury Claim for which deferral status has been granted, a claim shall be deemed to have been withdrawn if the claimant neither accepts, rejects, nor initiates ADR Procedures within six (6) months of the Asbestos Trust's written offer of payment or rejection of the claim.  Upon written

request and good cause, the Asbestos Trust may extend the withdrawal or deferral period for an additional six (6) months.

**6.4    Filing Requirements and Fees.**  The Trustees shall have the discretion to determine, with the consent of the TAC and the FCR, (a) whether a claimant must have previously filed an asbestos-related personal injury claim in the tort system to be eligible to file the claim with the Asbestos Trust and (b) whether a filing fee should be required for any Asbestos Personal Injury Claims.

**6.5    Confidentiality of Claimants' Submissions.**  All submissions to the Asbestos Trust by a holder of an Unsecured Asbestos Personal Injury Claim or a proof of claim form and materials related to the claim shall be treated as made in the course of settlement discussions between the holder and the Asbestos Trust, and intended by the parties to be confidential and to be protected by all applicable state and federal privileges, including but not limited to those directly applicable to settlement discussions.  The Asbestos Trust will preserve the confidentiality of the claimant's submissions, and shall disclose the contents thereof only with the permission of the holder to another trust established for the benefit of asbestos personal injury claimants pursuant to Section 524(g) and/or Section 105 of the Bankruptcy Code or other applicable law, to such other persons as authorized by the holder, or in response to a valid subpoena.  Furthermore, the Asbestos Trust shall provide counsel for the holder a copy of any subpoena as soon as practical.  The Asbestos Trust shall on its own initiative or on request of the claimant take all necessary and appropriate steps to preserve the privileges.  Notwithstanding anything in the foregoing to the contrary, with the consent of the TAC and the FCR, the Asbestos Trust may, in specific limited circumstances, disclose information, documents or other materials reasonably necessary in the Asbestos Trust's judgment to preserve, litigate, resolve or settle

coverage, or to comply with an applicable obligation under an insurance policy or settlement agreement within the Asbestos Insurance Policies or the Asbestos Insurance Settlement Agreements; provided, however, that the Asbestos Trust shall take any and all steps reasonably feasible in its judgment to preserve the further confidentiality of such information, documents and materials, and prior to the disclosure of such information, documents or materials to a third party, the Asbestos Trust shall receive from the third party a written agreement of confidentiality that (a) ensures that the information, documents and materials provided by the Asbestos Trust shall be used solely by the receiving party for the purpose stated in the agreement and (b) prohibits any other use or further dissemination of the information, documents and materials by the third party.

## SECTION VII

### General Guidelines for Liquidating and Paying Claims

**7.1    Costs Considered.**  Notwithstanding any provisions of this TDP to the contrary, the Trustees shall give appropriate consideration to the cost of investigating and uncovering invalid Unsecured Asbestos Personal Injury Claims so that the payment of valid Unsecured Asbestos Personal Injury Claims is not further impaired by such processes with respect to issues related to the validity of the medical evidence supporting an Unsecured Asbestos Personal Injury Claim.  The Trustees shall have discretion regarding the amount of transaction costs to be expended by the Asbestos Trust so that valid Unsecured Asbestos Personal Injury Claims are not unduly further impaired by the costs of additional investigation.  Nothing herein shall prevent the Trustees, in appropriate circumstances, from contesting the validity of any claim against the Asbestos Trust whatever the costs, or declining to accept medical evidence from sources that the

Trustees have determined to be unreliable pursuant to Section 5.7(a)(2) or to the Claims Audit Program described in Section 5.8.

**7.2    Discretion to Vary the Order and Amounts of Payments in Event of Limited Liquidity.**  Consistent with the provisions hereof and subject to the FIFO Processing and Payment Queues, the Maximum Annual Payment and the Claims Payment Ratio requirements set forth above, the Trustees shall proceed as quickly as possible to liquidate valid Unsecured Asbestos Personal Injury Claims, and shall make payments to holders of claims in accordance with this TDP promptly as funds become available and as claims are liquidated, while maintaining sufficient resources to pay future valid claims in substantially the same manner.

Because the Asbestos Trust's income over time remains uncertain, and decisions about payments must be based on estimates that cannot be done precisely, payments may have to be revised in light of experiences over time, and there can be no guarantee of any specific level of payment to claimants.  However, the Trustees shall use their best efforts to treat similar claims in substantially the same manner, consistent with their duties as Trustees, the purposes of the Asbestos Trust, the established allocation of funds to claims in Categories A and B, and the practical limitations imposed by the inability to predict the future with precision.

In the event that the Asbestos Trust faces temporary periods of limited liquidity, the Trustees may, with the consent of the TAC and the FCR, suspend the normal order of payment and may temporarily limit or suspend payments altogether, and may offer a Reduced Payment Option as described in Section 2.5.

**7.3    Punitive Damages.**  In determining the value of any liquidated or unliquidated Unsecured Asbestos Personal Injury Claim, punitive or exemplary damages, *i.e.*, damages other

than compensatory damages, shall not be considered or allowed, notwithstanding their availability in the tort system.

Similarly, no punitive or exemplary damages shall be payable with respect to any claim litigated against the Asbestos Trust in the tort system pursuant to Sections 5.11 and 7.5.  The only damages that may be awarded pursuant to this TDP to Alabama claimants who are deceased and whose personal representatives pursue their claims only under the Alabama Wrongful Death Statute shall be compensatory damages determined pursuant to the statutory and common law of the Commonwealth of Pennsylvania, without regard to its choice of law principles.  Claims asserted by a claimant for compensatory damages that satisfy the criteria for payment under this TDP, where the claimant would have been foreclosed from payment because the governing law of the Foreclosed Jurisdiction defines the claim as "exemplary" or "punitive" damages and the claimant would have no other remedy for compensation under the law of the Foreclosed Jurisdiction, shall be treated as compensatory damages determined pursuant to the statutory and common law of the Commonwealth of Pennsylvania, without regard to its choice of law principles.

### 7.4     Sequencing Adjustment.

**7.4(a)  In General.**  Except for any Unsecured Asbestos Personal Injury Claim involving Other Asbestos Disease (Disease Level I – Cash Discount Payment) and subject to the limitations set forth below, a sequencing adjustment shall be paid on all Unsecured Asbestos Personal Injury Claims with respect to which the claimant has had to wait a year or more for payment following the date the claim was placed in the FIFO Processing Queue, or, with respect to certain holders of Pre-Petition Liquidated Asbestos Personal Injury Claims, the Petition Date, provided, however, that no claimant shall receive a sequencing adjustment for a period in excess

of seven (7) years.  The sequencing adjustment factor shall be three percent (3%) per annum for each of the first five (5) years after the Effective Date; thereafter, the Asbestos Trust shall have the discretion to change the sequencing adjustment factor with the consent of the TAC and the FCR.

**7.4(b)  Unliquidated Unsecured Asbestos Personal Injury Claims**.  A sequencing adjustment shall be payable on the Scheduled Value of any Unsecured Asbestos Personal Injury Claim that meets the requirements of Disease Levels II–V, VII and VIII, liquidated under this TDP by Expedited Review, Individual Review, or the ADR Procedures.  No sequencing adjustment shall be paid on any claim involving Disease Level I or on any claim liquidated in the tort system pursuant to Sections 5.3(c), 5.11 and 7.5.  The sequencing adjustment on an Unsecured Asbestos Personal Injury Claim liquidated under this TDP that meets the requirements of Disease Level VI shall be based on the Average Value for that Disease Level.  Sequencing adjustments on all claims under this Section 7.4(b) shall be measured from the date of payment back to the date that is one year after the date the claim was placed in the FIFO Processing Queue.

**7.4(c)  Pre-Petition Liquidated Asbestos Personal Injury Claims.**  A sequencing adjustment shall be payable on the liquidated value of a Pre-Petition Liquidated Asbestos Personal Injury Claim where the claimant has elected to retain the liquidated value as described in Section 5.2(a).  The sequencing adjustment shall be measured from the date of payment back to the date that is one year after the Petition Date.

**7.5     Suits in the Tort System.**  If the holder of a disputed claim disagrees with the Asbestos Trust's determination regarding the Disease Level of the claim, the claimant's exposure history or the liquidated value of the claim, and if the holder has first submitted the claim to non-

binding arbitration as provided in Section 5.10, the claimant may file a lawsuit in the Claimant's Jurisdiction as defined in Section 5.3(b)(2).  Any lawsuit must be filed by the claimant in her or her own right and name and not as a member or representative of a class, and no lawsuit may be consolidated with any other lawsuit.  All defenses (including, with respect to the Asbestos Trust, all defenses which could have been asserted by ASARCO) shall be available to both sides at trial; however, the Asbestos Trust may waive any defense and/or concede any issue of fact or law.  If the claimant was alive at the time the initial pre-petition complaint was filed or on the date the proof of claim form was filed with the Asbestos Trust, the case shall be treated as a personal injury case with all personal injury damages to be considered even if the claimant has died during the pendency of the claim.

      **7.6**     **Payment of Judgments for Money Damages.**  If and when a claimant obtains a judgment in the tort system, the claim shall be placed in the FIFO Payment Queue based on the date on which the judgment became final.  Thereafter, the claimant shall receive from the Asbestos Trust an initial payment (subject to the applicable Payment Percentage, the Maximum Annual Payment and the Claims Payment Ratio provisions set forth above) of an amount equal to the greater of (i) the Asbestos Trust's last offer to the claimant or (ii) the award that the claimant declined in non-binding arbitration; provided, however, that in no event shall the payment amount exceed the amount of the judgment obtained in the tort system.  The claimant shall receive the balance of the judgment, if any, in five (5) equal installments in years six (6) through ten (10) following the year of the initial payment (also subject to the applicable Payment Percentage, the Maximum Annual Payment and the Claims Payment Ratio provisions above in effect on the date of the payment of the subject installment).

In the case of a claim involving Disease Level I, the total amounts paid with respect to the claim shall not exceed the Scheduled Value for that Disease Level.  In the case of non-Extraordinary Claims involving Disease Levels II–VIII, the total amounts paid with respect to the claims shall not exceed the Maximum Values for the Disease Levels set forth in Section 5.3(b)(3). In the case of Extraordinary Claims, the total amounts paid with respect to the claims shall not exceed the maximum extraordinary values for the claims set forth in Section 5.4(a).  Under no circumstances shall (a) sequencing adjustments be paid pursuant to Section 7.4 or (b) interest be paid under any statute on any judgments obtained in the tort system.

**7.7    Releases.**  The Trustees shall have the discretion to determine the form and substance of the releases to be provided to the Asbestos Trust in order to maximize recovery for claimants against other tortfeasors without increasing the risk or amount of claims for indemnification or contribution from the Asbestos Trust.  As a condition to making any payment to a claimant, the Asbestos Trust shall obtain a general, partial, or limited release as appropriate in accordance with the applicable state or other law.  If allowed by state law, the endorsing of a check or draft for payment by or on behalf of a claimant may, in the discretion of the Asbestos Trust, constitute such a release.  Holders of Asbestos Premises Liability Claims paid by an Asbestos Insurance Company shall also execute any releases required by the Insurer.

**7.8    Third-Party Services.**  Nothing in this TDP shall preclude the Asbestos Trust from contracting with another asbestos claims resolution organization to provide services to the Asbestos Trust so long as decisions about the categorization and liquidated value of Unsecured Asbestos Personal Injury Claims are based on the relevant provisions of this TDP, including the Disease Levels, Scheduled Values, Average Values, Maximum Values, and Medical/Exposure Criteria set forth above.

**7.9** **Asbestos Trust Disclosure of Information**.  Periodically, but not less often than once a year, the Asbestos Trust shall make available to claimants and other interested parties, the number of claims by Disease Levels that have been resolved by the Individual Review Process and by the ADR Procedures as well as by litigation in the tort system indicating the amounts of the awards and the averages of the awards by jurisdiction.

# SECTION VIII

## Miscellaneous

**8.1** **Amendments.**  Except as otherwise provided herein and in the CIP Agreements, the Trustees may amend, modify, delete, or add to any provisions of this TDP (including, without limitation, amendments to conform this TDP to advances in scientific or medical knowledge or other changes in circumstances), provided they first obtain the consent of the TAC and the FCR pursuant to the Consent Process set forth in Sections 5.7(b) and 6.6(b) of the Asbestos Trust Agreement, except that the right to amend the Claims Payment Ratio is governed by the restrictions in Section 2.5, and the right to adjust the Payment Percentage is governed by Section 4.2.  Nothing herein is intended to preclude the TAC or the FCR from proposing to the Trustees, in writing, amendments to this TDP.  Any amendment proposed by the TAC or the FCR shall remain subject to Section 7.3 of the Asbestos Trust Agreement.

**8.2** **Severability.**  A determination that any provision contained in this TDP is unenforceable shall in no way limit or affect the enforceability and operative effect of any and all other provisions of this TDP.  Should any provision contained in this TDP be determined to be inconsistent with or contrary to ASARCO's obligations to any insurance company providing insurance coverage to ASARCO in respect of claims for personal injury based on exposure to an asbestos-containing product or to conduct for which ASARCO has legal responsibility, the

Asbestos Trust with the consent of the TAC and the FCR may amend this TDP and/or the Asbestos Trust Agreement to make the provisions of either or both documents consistent with the duties and obligations of ASARCO to the insurance company.

**8.3      Governing Law.**  Except for purposes of determining the liquidated value of any Unsecured Asbestos Personal Injury Claim, administration of this TDP shall be governed by, and construed in accordance with, the laws of the State of Delaware.  The law governing the liquidation of  Unsecured Asbestos Personal Injury Claims in the case of Individual Review, pro bono evaluation, mediation, arbitration or litigation in the tort system shall be the law of the Claimant's Jurisdiction as described in Section 5.3(b)(2).