**IN THE UNITED STATES BANKRUPTCY COURT
OF THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION**

ENTERED
09/29/2010

| | | |
|---|---|---|
| In re: | § | **Case No. 05-21207** |
| | § | |
| **ASARCO LLC,** *et al.*, | § | **Chapter 11** |
| | § | |
| Debtors. | § | **Jointly Administered** |
| | § | |

**MEMORANDUM OPINION ON APPLICATION OF THE UNITED STATES
AND THE STATES OF TEXAS, MONTANA AND WASHINGTON UNDER 11
U.S.C. SECTIONS 503(B)(3)(D)
AND (B)(4) FOR PAYMENT OF FEES AND REIMBURSEMENT
OF EXPENSES FOR SUBSTANTIAL CONTRIBUTION**

On this day came on for consideration: (i) the Environment and Natural Resources
Division of the United States Department of Justice's Motion and Application for an Allowed
Administrative Expense for Its Substantial Contribution to the Case Pursuant to Bankruptcy
Code § 503(b) [Docket No. 13893] (the "U.S. Application"); (ii) the Motion and Application of
Texas Attorney General's Office for an Allowed Administrative Expense Claim for Its
Substantial Contribution to Bankruptcy Case Pursuant to 11 U.S.C. § 503(b) [Docket No. 13872]
(the "Texas Application"); (iii) the State of Montana Motion and Application for Allowance of
an Administrative Expense Claim for Substantial Contribution Pursuant to 11 U.S.C. § 503(b)
[Docket No. 13916] (the "Montana Application"); and (iv) the State of Washington, Office of the
Attorney General's Motion and Application for Allowance of an Administrative Expense Claim
for Substantial Contribution Pursuant to 11 U.S.C. § 503(b) [Docket No. 13912] (the
"Washington Application") (collectively, the motions are referred to as the "Substantial
Contribution Claims" and the movants as the "Governmental Movants"), seeking recovery of
attorneys fees and expenses in the amounts of $3,834,399.05; $873,200.00; $1,372,254.00 and

$113,677.64, respectively. The Court, having heard the evidence and arguments of counsel, finds that the Substantial Contribution Claims should be denied in their entirety. In support thereof, the Court makes the following Findings of Fact and Conclusions of Law.

## BACKGROUND

On August 9, 2005, ASARCO LLC ("ASARCO") filed its voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in this Court. Thereafter, ASARCO's wholly owned direct or indirect subsidiaries filed their voluntary petitions in this Court. On August 31, 2009, this Court issued its report and recommendation on plan confirmation to the District court, recommending that the District Court confirm the plan put forth by the Debtors' Parent, ASARCO). On November 13, 2009, the District Court confirmed the Parent's Plan, which became effective on December 9, 2009. A detailed history of the case is set forth in this Court's Report and Recommendation on Plan Confirmation and is adopted herein. Among the significant issues in the Asarco Bankruptcy were the Governmental Movants' environmental claims.

Through a series of settlements among the Governmental Movants and the Debtors during the pendency of the bankruptcy cases, the Governmental Movants fully settled and resolved their rights to response costs under CERCLA and other applicable law. The governmental Movants' attorney's fees and expenses in this bankruptcy case are included in the settled response costs. Under the confirmed plan in the Debtors' bankruptcy cases, the Governmental Movants received payment and full satisfaction on account of their response cost legal services and expenses. The Governmental Movants cannot receive satisfaction twice on account of the same costs and expenses.

Thus, to recover additional fees and expenses, the Governmental Movants must prove by a preponderance of evidence that they made a substantial contribution to the estate and that the legal fees and expenses associated with that alleged contribution were not included in the settled environmental claims.  As more fully set forth below, the Court finds that the Governmental Movants did not meet their burden and therefore the Substantial Contribution Claims should be denied.

<b><u>DISCUSSION</u></b>

**1. The Governmental Movants' Claims**

The United States asserts that it provided a substantial contribution to the Debtors' bankruptcy cases in three major areas: (i) coordinating with state creditors and resolving claims, (ii) supporting the Debtors' asset sale process, and (iii) supporting the Debtors' plan proposals while opposing the Parent's plan.

The State of Texas asserts five bases for its claim that Texas made a substantial contribution to the Debtors' bankruptcy cases: (i) the asset liability transfer of the Federated Metals state superfund site allegedly saving the estate (as asserted by Texas) an estimated $52 million dollars; (ii) the Debtors' voluntary conversion of the Encycle Chapter 11 to a Chapter 7; (iii) helping organize an *ad hoc, de facto* environmental governmental regulatory committee and serving as bankruptcy co-counsel to the *ad hoc, de facto* committee; (iv) obtaining the Parent's agreement to modify its initial plan(s) of reorganization to incorporate wholesale without condition the environmental settlements previously reached with the Debtors, which allowed for the plan to meet the feasibility test under 11 U.S.C. §1129; and (v) helping the *de facto* committee reach consensus on not exercising the states' police and regulatory exception to the automatic stay under 11 U.S.C. § 362(b)(4).

The State of Montana asserts five bases for its claim that Montana made a substantial contribution to the Debtors' bankruptcy cases: (i) acting as liaisons with other states and the United States; (ii) formulating a global settlement of environmental claims; (iii) participating in negotiations of an overall global settlement which formed the basis of a plan of reorganization; (iv) participating in negotiations with other plan proponents to ensure there was full and fair competition in the plan process; and (v) formulating, advancing, and defending custodial trust agreements in which the non-operating real property assets could be placed to allow the valuable operating assets to be marketed unencumbered by the non-operating sites as part of the plan of reorganization.

The State of Washington asserts three bases as constituting a substantial contribution to the Debtors' bankruptcy cases: (i) work performed at the request of the Debtors in defending Washington's 9019 settlements that were challenged by the Parent; (ii) mediation sessions attended in New Orleans and Houston in 2008, and the plan proceedings (sometimes referred to as an "auction") held in Dallas in May of 2008; and (iii) telephone conferences with parent and the governments, internal discussion among the governmental environmental creditors aimed at advancing plan proceedings in a manner that would benefit all creditors, and discussions involving Washington, the Debtors, the United States, and other creditor groups related to advancing the plan confirmation process.

## 2. The Governmental Movants Failed to Prove Substantial Contribution

Section 503(b)(B)(D) grants an administrative expense priority to the actual necessary expenses incurred by a creditor in making a substantial contribution to a case under Chapter 11. Nothing in the Code defines "substantial contribution, however nearly all cases have held that the contribution must provide tangible, clearly demonstrable benefits to the estate.  Vol. 4

Colliers on Bankruptcy ¶ 503.10[5]. [5th Ed.].

A creditor's active participation in a case, even if positive to the overall outcome, will not be sufficient, unless the creditors can demonstrate that its actions provided a direct, significant and demonstrable benefit to the estate.  *Hall Fin. Group, Inc. v. DP Partners, L.P. (In re DP Partners, L.P.),* 106 F.3d 667 (5th Cir. 1997), *cert. denied*, 522 U.S. 815 (1997)*; In re Buttes Gas & Oil Co.,*112 BR 191, 194 (Bankr. S.D.Tex. 1989).

In this case the attorneys for the Governmental Movants provided exemplary representation for their clients.  They demonstrated exceptional expertise in both bankruptcy and environmental law.  In addition, they negotiated in good faith with the Debtor, the case fiduciaries and other parties in the case.  The net result of the attorneys' actions, as well as many others in the case, was settlement of the many environmental claims and ultimately the confirmation of a plan of reorganization which paid all creditors 100% of the claims with interest.  However, Section 503 (b)(3)(D) of the Bankruptcy Code is not meant simply to reward outstanding legal representation.  In fact, lawyers are expected to perform at a high level. Settlement and cooperation among attorneys in a Chapter 11 case is not only common, but encouraged.

All of these activities by the Governmental Movants, however, constitute routine actions to enhance recovery on a claim, which would be expected of any large creditor in a chapter 11 case. Accordingly, these activities fall short of the extraordinary conduct needed to establish a substantial contribution under section 503(b)(3)(D) of the Bankruptcy Code.

A "substantial contribution" is "a contribution that is considerable in amount, value or worth."  *In re DP Partners, L.P.,* 106 F.3d at.  Therefore, a substantial contribution claim requires a showing of a "direct, significant and demonstrable benefit to the estate."  *In re Buttes*

*Gas & Oil Co.*, 112 B.R. 191, 194 (Bankr. S.D. Tex. 1989).  "[C]ourts . . . narrowly construe the

substantial contribution statute granting applications in only unusual or rare circumstances."

*Eldercare*, 2007 Bankr. LEXIS 879 at *4; *In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 279

(Bankr. W.D. Tex. 2005).  "That narrow construction is also consistent with the general doctrine

that priority statutes, such as § 503(b), should be strictly construed to preserve the estate for the

benefit of creditors."  *In re Am. Plumbing*, 327 B.R. at 279 (citing *In re Federated Dep't Stores,

Inc.*, 270 F.3d 994, 1000 (6th Cir. 2001); *In re Commercial Fin. Servs., Inc.*, 246 F.3d 1291,

1293 (10th Cir. 2001)).  "The burden of proof is on the movant or applicant in establishing their

entitlement to an award under 11 U.S.C. § 503(b) and they must demonstrate by a preponderance

of the evidence that a substantial contribution was made."  *Eldercare*, 2007 Bankr. LEXIS 879 at

*1 (internal quotation marks and citation omitted).

This Court previously has noted that the term "substantial" is aimed at accommodating

the section's twin goals of "encouraging meaningful participation in the reorganization process,"

while "keeping fees and administrative expenses at a minimum so as to preserve as much of the

estate as possible for the creditors."  *Id.* at *2-3 (quoting *Lebron v. Mechem Fin. Inc.*, 27 F.3d

937, 944 (3d Cir. 1994)).  Thus, this Court has cautioned that § 503(b)(4) "should not become a

vehicle for reimbursing every creditor who elects to hire an attorney," *Id.*, and courts have

narrowly construed the substantial contribution statute and granted substantial contribution

applications only in unusual or rare circumstances.  *Id.* (citing *In re Jack Winter Apparel, Inc.*,

119 B.R. 629, 637 (E.D. Wis. 1990)); *see*, *e.g. Am. Plumbing & Mech.*, 327 B.R. at 279 (citing *In

re Randall's Island Family Golf Ctrs., Inc.*, 300 B.R. 590, 598 (Bankr. S.D.N.Y. 2003) ("rare*");

In re 9085 E. Mineral Office Bldg., Ltd.,* 119 B.R. 246, 250 (Bankr. D. Colo. 1990) ("unusual")).

Courts in this jurisdiction also have found that substantial contribution requires a "direct,

6 / 11

significant and demonstrable benefit to the estate." *Buttes Gas & Oil Co.*, 112 B.R., at 194.

To meet this high standard, "a substantial contribution applicant must show that his services have some causal relationship to the contribution." *In re Fortune Natural Res. Corp.*, 366 B.R. 549, 554 (Bankr. E.D. La. 2007); *In re Am. Plumbing & Mech., Inc.*, 327 B.R. at 279-80 ("Some courts have used a but-for test to determine whether that causal relationship exists [between the applicant's services and the contribution].").  Thus, "when a bankruptcy judge is determining whether there has been a substantial contribution, he should, 'at a minimum . . . weigh the cost of the claimed fees and expenses against the benefits conferred upon the estate which flow directly from those actions.'" *In re Fortune Natural Res.*, 366 B.R. at 553 (quoting *In re DP Partners*, 106 F.3d at 673).

Further, the Court observes that ordinary creditor conduct does not constitute the type of "extraordinary circumstances" associated with warranting the allowance of a substantial contribution claim.  Unlike the creditor who locates a valuable asset or engages in some other extraordinary behavior that brings in a benefit to the estate for all creditors, ordinary creditor conduct such as compromising of claims to obtain allowance in bankruptcy and assisting in obtaining court approval of such compromises is ineligible for compensation as a "substantial contribution."  In fact, using the "substantial contribution" provision of the Bankruptcy Code to extract additional consideration from a debtor's bankruptcy estate both diverts the benefit to the estate arising from such compromise in the first place and violates the fundamental precept that administrative priorities are narrowly construed in bankruptcy and this Court's mandate that "extraordinary circumstances" must be associated with warranting the allowance of a substantial contribution claim. *See Eldercare*, 2007 Bankr. LEXIS 879, *4 (substantial contribution should be granted only in extraordinary cases).

Similarly, providing comments on, or support for, a debtor's chapter 11 plan is not sufficient to constitute a substantial contribution.  *See In re Buttes Gas & Oil Co.,* 112 B.R. 191, 195 (Bankr. S.D. Tex. 1989) (creditor's assistance in facilitating consensual plan does not constitute substantial contribution); *In re Rockwood Computer Corp.,* 61 B.R. 961, 966 (Bankr. S.D. Ohio 1986) (providing assistance in connection with plan proposed by debtor insufficient to qualify as substantial contribution). For large creditors in a complex chapter 11 case, there is nothing extraordinary or unusual in reviewing, commenting on, supporting, or objecting to a chapter 11 plan.  Indeed, for a creditor holding over a billion dollars in claims, it would be extraordinary if such a creditor did *not* actively participate in the plan process.  Neither the United States nor the States were the proponent or primary drafter of any plan.  Rather, like numerous other constituencies in these cases, they merely supported one of the several plans proposed by other parties.  Such support does not rise to the level of a substantial contribution and neither does commenting on a plan, an expected or routine activity for a creditor with a large claim in a bankruptcy case.  *See In re American Plumbing & Mechanical, Inc.,* 327 B.R. 273, 283 (Bankr. W.D. Tex. 2005) ("[E]xpected or routine activities in the guise of extensive or active participation . . . cannot establish substantial contribution.").

Finally, any Governmental Movant's suggestion that substantial contributions took the form of service as the "voice of reason" is unavailing. While it is true that Mr. Tennenbaum's arguments and briefs were particularly helpful to the court because they were both well-reasoned and reasonable, the Court declines to follow *In re American Plumbing & Mechanical, Inc.,* 327 B.R. at 282-83, to the extent that it allows a substantial contribution claim without a direct and nonspeculative benefit to the estate.

**3. The Governmental Movants Claims Were Included in the Environmental Settlement**

CERCLA imposes liability on responsible parties for response costs incurred by federal and state governments stemming from the release or threatened release of hazardous substances. Specifically, Section 107(a) of CERCLA imposes liability on owners and operators of hazardous waste sites, generators of hazardous waste sites, and transporters of hazardous waste for "*all costs* of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan."  42 U.S.C. § 9607(a)(4)(A) (emphasis added).

In 1986, Congress further expanded the government's broad cost recovery rights; Congress amended the scope of the terms "respond" or "response" to ensure that EPA could recover costs for enforcement actions taken against responsible parties.  *Reardon v. United States*, 947 F.2d 1509, 1514 (1st Cir. 1991) (citing H.R. Rep. No. 253(I), 99th Cong., 2d Sess. 66-67, *reprinted in* 1986 U.S. Code Cong. & Admin. News 2835, 2848-49).   As amended, "respond" or "response" and its related terms, including "removal" and "remedial action," "include enforcement activities related thereto."  42 U.S.C. § 9601(25).

 "Enforcement activities," and thus response costs, include, *inter alia*, attorneys' fees and costs incurred by the United States in enforcing and responding to CERCLA violations.  *United States v. Dico*, 266 F.3d 864, 878 (8th Cir. 2001). Such recoverable attorney costs include both litigation and non-litigation related costs and expenses incurred by the EPA and the Department of Justice.  *United States v. Northernaire Plating Co.*, 685 F. Supp. 1410, 1418 (W.D. Mich. 1988); *United States v. E.I. du Pont de Nemours & Co.*, 341 F. Supp. 2d  215, 241 (W.D.N.Y. 2004).  CERCLA requires that those responsible for hazardous substances at each site must bear the full cost of response actions, necessarily including both direct costs and indirect costs. *United*

*States v. Gurley*, 317 F. Supp. 2d 870, 878 (E.D. Ark. 2004).   The United States, therefore as a matter of law and policy, routinely recovers direct *and indirect* response and enforcement costs incurred in connection with the Superfund program, even if such costs cannot be allocated directly to any one site.  *See United States v. Northernaire Plating Co.,* 685 F. Supp. 1410, 1418 (W.D. Mich. 1988).  Such indirect costs include overhead costs, such as rent and utilities for office space.  *United States v. Northernaire Plating Co.*, 685 F. Supp. 1410, 1418 (W.D. Mich. 1988).

CERCLA's broad remedial purpose and its statutory language support a "liberal interpretation" of Section 107(a).  *United States v. Northernaire Plating Co.,* 685 F. Supp. 1410, 1419 (W.D. Mich. 1988).  Thus, *all* response costs incurred by the government are recoverable. *United States v. Am. Cyanamid Co.,* 786 F. Supp. 152, 157 (D.R.I. 1992) ("It is worth reiterating that all costs incurred by the government are recoverable under this section."); *United States v. Hardage*, 750 F. Supp. 1460, 1497 (W.D. Okla. 1990) ("This section authorizes 'the government to recover *all* costs of its removal or remedial [response] actions.'") (quoting *United States v. R.W. Meyer, Inc.*, 889 F.2d 1497, 1504 (6th Cir. 1989) (emphasis in original)); *United States v. Northernaire Plating Co.*, 685 F. Supp. 1410, 1419 (W.D. Mich. 1988) ("Congress clearly intended that the United States recover *all* of the costs incurred in a remedial or removal action.").   In fact, long-standing EPA policy requires the United States to seek full recovery of *all* indirect costs as an allocation to each individual site, thus ensuring that the EPA can recover all of the United States' direct and indirect costs from the responsible parties.  *See* Guidance on Exercising CERCLA Enforcement Discretion in Anticipation of Full Cost Accounting Consistent with the "Statement of Federal Financial Accounting Standards No. 4."  65 Fed. Reg. 35,339 (June 2, 2000 *available at* http: //www.epa.gov/fedrgstr/EPA-Waste/2000/June/Day-

02/f13845.htm) (requiring allocation of *all* direct and indirect costs to each site to ensure recovery of all costs).  Further, there is nothing in CERCLA or in the law of any of the States that prohibits the recovery of bankruptcy attorneys' fees as response costs.

Given this framework, it is clear that the Governmental Movants could have recovered all of their response costs in connection with the Debtors' bankruptcy cases, including any "plan proceeding" work through which the Governmental Movants sought to maximize distributions under the plan.  Pursuant to the settlement agreements, the Governmental Movants received allowed claims in full satisfaction of their existing and future response costs, including but not limited to the response costs incurred in connection with the plan.  Because all of the response costs incurred by the Governmental Movants were allocable to and related to the underlying environmental sites, all of these response costs were fully resolved and satisfied.  Accordingly, all of the legal services provided by the counsel to the Governmental Movants in these bankruptcy cases have already been fully satisfied and resolved through the settlement agreements.

## **CONCLUSION**

For the reasons set forth above, the Court finds that the Applications for Administrative Expense for Substantial Contribution filed by the Governmental Movants should be denied. A separate order shall be entered for each Governmental Movant.

SIGNED 09/29/2010.

Richard S. Schmidt
United States Bankruptcy Judge

11 / 11